**KRISTIN K. MAYES**
**Attorney General**
(Firm State Bar No. 14000)

Hayleigh S. Crawford (Bar No. 032326)
Joshua A. Katz (Bar No. 039449)
Office of the Arizona Attorney General
2005 N. Central Avenue
Phoenix, AZ 85004-1592
(602) 542-3333
Hayleigh.Crawford@azag.gov
Joshua.Katz@azag.gov
ACL@azag.gov

*Attorneys for Defendant Arizona Attorney*
*General Kristin K. Mayes*

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Philip Potter,<br>individually and on behalf of all others similarly situated<br><br>Plaintiffs,<br>v.<br><br>Robert Meza, et al.,<br><br>Defendants. | No.CV25-00663-PHX-DWL<br><br>**ARIZONA ATTORNEY GENERAL'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT** |

1   Pursuant to Federal Rule of Civil Procedure 12(b), Defendant Arizona Attorney

2   General Kristin K. Mayes ("AG Mayes") moves to dismiss the First Amended Complaint.

### INTRODUCTION

4   Plaintiff is subject to an order pre-screening his future filings in pending civil

5   actions.  The order does not deprive Plaintiff of the right to file legitimate, non-frivolous

6   papers.  It only prevents him from 1) filing papers without leave of court in pending cases,

7   and 2) filing improper papers at all in those cases.  The question presented is whether the

8   Constitution protects Plaintiff from such an order.  It does not.

9   As the Supreme Court has held, there is no constitutional right to make improper

10  filings.  *Bill Johnson's Rests., Inc. v. N.L.R.B.*, 461 U.S. 731, 743 (1983) ("[B]aseless

11  litigation is not immunized by the First Amendment right to petition.").  Plaintiff's related

12  challenge to the statutory definition of "harass" both misstates the statute and grossly

13  expands the void for vagueness doctrine, and so fails as well.  In any event, AG Mayes is

14  the wrong party against whom to seek relief.  For both these reasons, AG Mayes

15  respectfully requests the Court dismiss the case.

### BACKGROUND

**I.  Plaintiff sues in state court following a public records request and is designated vexatious.**

19  This is Plaintiff's second trip to the District of Arizona following a public records

20  request and resulting state litigation.  *See* First Amended Complaint (FAC), Dkt. 14, ¶ 67.

21  Plaintiff sought documents from the Arizona House of Representatives, Representative

22  Robert Meza, and a private citizen.  *Id.*; *Potter v. Ariz. House of Reps.*, No. 23-0213, 2024

23  WL 368095, at *1 ¶ 4 (Ariz. App. Feb. 1, 2024).  Dissatisfied with their responses, he

24  filed a special action under A.R.S. § 39-121.02.  FAC ¶ 68; *Potter*, 2024 WL 368095, at

25  *1 ¶ 6.  On motion, the superior court dismissed the case.  *Potter*, 2024 WL 368095, at

26  *2 ¶¶ 9–10; Docket Sheet, *Potter v. Ariz. House of Reps.*, No. 2022-008626 (Ariz. Super.

27  Ct.) (Ex. 1), Nos. 19–21 & pg. 3.

28

1    The defendants then moved to designate Plaintiff a vexatious litigant under A.R.S.

2  § 12-3201.  *Potter*, 2024 WL 368095, at *2 ¶¶ 11–12; Minute Entry filed Feb. 27 2023,

3  *Potter v. Ariz. House of Reps.*, No. 2022-008626 (Ariz. Super. Ct.) (Ex. 2), at 1; Ex. 1,

4  Nos. 45–49.

5    Under A.R.S. § 12-3201, a court may declare a civil pro se litigant "vexatious" for,

6  among others, filing cases "solely or primarily" to harass others or without "substantial

7  justification," making "unreasonable, repetitive and excessive requests for information,"

8  or making "repeated filing[s] of documents or requests for relief that have been the subject

9  of previous rulings by the court in the same litigation."  A.R.S. § 12-3201(A), (E)(1).

10    The court held an evidentiary hearing on the vexatious litigant motion.  *Potter*,

11  2024 WL 368095, at *2 ¶ 14; Ex. 2, at 1; Ex. 1, Nos. 81–86.  The court considered, in

12  addition to his conduct in the case, Plaintiff's other "litigation activity," which "paint[ed]

13  a troubling picture."  Ex. 2, at 2.  The court found that Plaintiff "engaged in vexatious

14  conduct per A.R.S. § 12-3201 by: repeated filing of court actions without substantial

15  justification; and repeatedly filing documents or requests for relief that have been the

16  subject of previous rulings by the court in similar litigation."  *Potter*, 2024 WL 368095,

17  at *2 ¶ 14; Ex. 2, at 4.  Thus, the court barred Plaintiff from "fil[ing] any new pleading,

18  motion or other document in this case or any other pending civil action without prior leave

19  of the judge assigned to that case."  *Potter*, 2024 WL 368095, at *2 ¶ 14; Ex. 2, at 4.

20    Plaintiff appealed his vexatious litigant designation, raising three issues.  *Potter*,

21  2024 WL 368095, at *7–10 ¶¶ 44–59.  First, he argued that the vexatious litigant order

22  was not justified under A.R.S. § 12-3201.  *Id.* at *8 ¶¶ 47–48.  Second, he raised a

23  constitutional due process challenge.  *Id.* at *9 ¶¶ 51–55.  Third, he raised a First

24  Amendment challenge.  *Id.* ¶ 56.  The court of appeals affirmed.  *Id.* at *10 ¶ 61.

25  **II.    Plaintiff files a facial challenge in federal court.**

26    Undeterred, Plaintiff then filed a facial challenge in the District of Arizona against

27  AG Mayes and Judge Welty, the Chief Judge of the Maricopa County Superior Court

28  (who was never served).  *Potter v. Arizona*, No. 25-00016-PHX-KML (D. Ariz. filed Jan.

1    8, 2025).  He challenged A.R.S. §§ 12-3201 (vexatious litigants), 13-2921(E) (statutory

2    definition of harass), and 12-349(A)(2) (sanctions).    After Plaintiff amended his

3    complaint, AG Mayes moved to dismiss the case.  *Potter v. Arizona*, No. 25-00016-PHX-

4    KML, Dkt. 12 (Jan. 31, 2025), 18 (Feb. 14, 2025).

5    **III.    Plaintiff files the present federal court suit.**

6           Meanwhile, Plaintiff filed the Complaint in this case, which did not name AG

7    Mayes.  Complaint, *Potter v. Meza*, No. 25-00663-PHX-DWL (Feb. 27, 2025), Dkt. 1.

8           Plaintiff then voluntarily dismissed his first case and filed a First Amended

9    Complaint in this case naming AG Mayes and adding facial challenges to A.R.S. §§ 12-

10   3201 (vexatious litigants) and 13-2921 (harassment).  Notice of Dismissal, *Potter v.*

11   *Arizona*, No. 25-00016-PHX-KML (D. Ariz. May 12, 2025), Dkt. 24; FAC, *Potter v.*

12   *Meza*, No. 25-00663-PHX-DWL (May. 13, 2025), Dkt. 20.  Also pending in this case is

13   a motion for preliminary relief.  *See* Dkt. 23, 37.

14   **IV.    Plaintiff's ex-wife participates in Arizona's address confidentiality program.**

15          Plaintiff's ex-wife ("TD" per FAC at ¶ 43) participates in the address

16   confidentiality program established under A.R.S. § 41-161 *et seq*. and administered by

17   the Secretary of State.  FAC ¶¶ 92–94, 95.  Participation in the program requires

18   "[e]vidence that the applicant is a victim of domestic violence, a sexual offense or

19   stalking."  § 41-163(C)(3).  For purposes of the program, harassment under A.R.S. § 13-

20   2921 can qualify as "domestic violence" entitling a victim to address protections if certain

21   additional conditions are met, such as a marital or former marital relationship between

22   the defendant and the victim.  *See* A.R.S. § 41-161(5) (incorporating by reference

23   definition of "domestic violence" in A.R.S. § 13-3601); A.R.S. § 13-3601(A) (defining

24   "domestic violence").

25          Plaintiff alleges that his ex-wife presented his vexatious litigant designation as

26   evidence and was accepted into the program.  Therefore, he concludes, "the Arizona

27   Secretary of State now holds official records identifying Plaintiff as an A.R.S. § 13-3601

28   Domestic Violence perpetrator, although Plaintiff has never committed an act of domestic

3

1  violence."  FAC ¶ 97.  Various iterations of this assertion appear throughout his motion.
2  *See, e.g.*, Motion for Preliminary Relief (Mot.), Dkt. 23, at 8.  ("[T]he State of Arizona
3  now deems Plaintiff to have violated A.R.S. § 12-3201, and thus to have perpetrated §§
4  13-3601/3602 Domestic Violence, for filing motion papers in well-founded lawsuits
5  absent leave of the court.").

6                                    **LEGAL STANDARD**

7      **Rule 12(b)(1).**  Presumptively, "a cause lies outside [the Court's] limited
8  jurisdiction" until the "party asserting jurisdiction" establishes otherwise.  *Kokkonen v.*
9  *Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  A party bringing a case in
10 federal court must demonstrate federal jurisdiction.  *See Sw. Ctr. for Biological Diversity*
11 *v. FERC*, 967 F. Supp. 1166, 1172 (D. Ariz. 1997).

12     When ruling on a motion to dismiss for lack of subject-matter jurisdiction under
13 Fed. R. Civ. P. 12(b)(1), the court may take judicial notice of "matters of public record"
14 and other evidence "capable of accurate and ready determination by resort to sources
15 whose accuracy cannot be reasonably questioned."  *In re White Elec. Designs Corp. Sec.*
16 *Lit.*, 416 F. Supp. 2d 754, 760 (D. Ariz. 2006).

17     **Standing.**   "Article III standing is a necessary component of subject matter
18 jurisdiction."  *In re Palmdale Hills Prop., LLC*, 654 F.3d 868, 873 (9th Cir. 2011).  Article
19 III standing requires concrete, particularized injury that is actual or imminent, fairly
20 traceable to the challenged action, and redressable by a favorable ruling.  *Clapper v.*
21 *Amnesty Int'l*, 568 U.S. 398, 409 (2013).

22     **Immunity.**  Pursuant to the 11th Amendment, federal courts lack jurisdiction over
23 suits against states, unless Congress or the state waive immunity.  *Green v. Mansour*, 474
24 U.S. 64, 68 (1985).  However, state officers may be sued in their official capacities for
25 equitable relief addressing a constitutional violation.  *Id.* ("[A] suit challenging the
26 constitutionality of a state official's action in enforcing state law is not one against the
27 State."); *see Ex Parte Young*, 209 U.S. 123, 159–60 (1908).

28

                                           4

1    **Rule 12(b)(6).**  When deciding a motion to dismiss for failure to state a claim

2    under Fed. R. Civ. P. 12(b)(6), "a court must take all allegations of material fact as true

3    and construe them in the light most favorable to the nonmoving party."  *Kwan v.*

4    *SanMedica Int'l,* 854 F.3d 1088, 1096 (9th Cir. 2017) (cleaned up).  But "conclusory

5    allegations of law and unwarranted inferences" will not spare a complaint from dismissal.

6    *Id.*  A court may dismiss under this rule for either of "lack of a cognizable legal theory"

7    or "absence of sufficient facts alleged under a cognizable legal theory."  *Johnson v.*

8    *Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121–22 (9th Cir. 2008).

9    ## ARGUMENT

10       Plaintiff brings this facial challenge to Arizona's vexatious litigant statute, A.R.S.

11   § 12-3201; and the statutory definition of "harass" in A.R.S. § 13-2921(E).  But the court

12   lacks jurisdiction, for two reasons.  First, Plaintiff lacks standing as to AG Mayes because

13   Plaintiff cannot tie any of his claimed injuries to AG Mayes, nor can the relief he seeks

14   against AG Mayes redress them.  Second, Plaintiff's challenge to the vexatious litigant

15   statute is a not proper *Ex Parte Young* action because AG Mayes lacks a sufficiently direct

16   connection to its enforcement scheme.

17       Even if the Court had jurisdiction, Plaintiff fails to state a claim.  Because this is a

18   facial challenge, he must show each of these laws has no constitutional application

19   (except as to his overbreadth challenge, addressed below).  He cannot.  Ultimately, he

20   seeks constitutional protection for, first, filing vexatious papers, and second, continuing

21   to file them.  There is no such constitutional protection.  *Bill Johnson's Restaurants, Inc.*,

22   461 U.S. at 743 ("[B]aseless litigation is not immunized by the First Amendment right to

23   petition.");  *accord Wolfe v. George*, 486 F.3d 1120, 1125 (9th Cir. 2007) (upholding

24   California prefiling requirement).  The law Plaintiff challenges requires him to receive

25   preclearance before filing papers, so that the judge may allow proper papers as defined

26   by A.R.S. § 12-3201(E)(1).  Only those proper filings are protected.

27   ## I.    The Court lacks jurisdiction over this action as to AG Mayes.

28       The Court lacks subject-matter jurisdiction for two reasons.  First, Plaintiff lacks

1    standing for all his claims.  Second, AG Mayes is immune from Plaintiff's challenges to

2    the vexatious litigant statute.

3        **A.**    **Standing**

4        Article III standing is jurisdictional.  *In re Palmdale Hills Prop., LLC*, 654 F.3d at

5    873.  To establish standing, Plaintiff must demonstrate both (1) injury that fairly can be

6    traced to the challenged action of the defendant, not injury that results from the

7    independent action of some third party not before the court, *Bennett v. Spear*, 520 U.S.

8    154, 167 (1997), and (2) that "it is likely . . . that the injury will be redressed by a favorable

9    decision."  *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167,

10   181 (2000).  "[I]n cases with multiple defendants," a plaintiff must have "standing as

11   against each defendant."  *Sullivan v. Ferguson*, 636 F. Supp. 3d 1276, 1283 (W.D. Wash.

12   2022).  Plaintiff does not reach this bar.

13
14       **1.**    **Plaintiff lacks standing to assert his challenge to the vexatious litigant statute (Count 1).**

15           **a.**    **Plaintiff fails to allege a credible fear of prosecution.**

16       Plaintiff relies heavily on perceived threats of prosecution, making a pre-

17   enforcement challenge.  A pre-enforcement challenge requires Plaintiff to allege "an

18   intention to engage in a course of conduct arguably affected with a constitutional interest,

19   but proscribed by a statute, and [that] there exists a credible threat of prosecution

20   thereunder."  *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 160 (2014) (quoting

21   *Babbitt v. Farm Workers*, 442 U.S. 289, 298 (1979)).  Crucially, the fear of prosecution

22   "must at least be 'credible.'"  *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d

23   1134, 1140 (9th Cir. 2000) (citation omitted).  This he fails to do.

24       The credibility of a fear of prosecution rests on three factors: 1) a "concrete plan"

25   to violate the law; 2) "a specific warning or threat to initiate proceedings;" and 3) a

26   "history of past prosecution or enforcement under the challenged statute."  *Libertarian*

27   *Party of Los Angeles Cnty. v. Bowen*, 709 F.3d 867, 870 (9th Cir. 2013).

28       Plaintiff alleges little to support these factors.  First, while Plaintiff generally

alleges his intent to file court papers without leave, he has not specified which papers he plans to file.  FAC ¶ 98.  Second, not only is there no threat or warning, but also the vexatious litigant statute is, by its terms, not a criminal statute.  Third, Plaintiff has not pointed to a single such prosecution, directly or indirectly under A.R.S. § 13-2810.  *Cf., e.g.*, *McKee v. Lamore*, No. 21-0413, 2022 WL 517911, at *3 ¶ 12 (Ariz. App. Feb. 22, 2022) (sanctions, but no mention of criminal prosecution, after vexatious litigant filed "more than a dozen documents without permission").  He alleges just the "existence of a proscriptive statute," "insufficient to satisfy the 'case or controversy' requirement." *Libertarian Party of Los Angeles Cnty.*, 709 F.3d at 871.

Plaintiff attempts to ground his fear in his ex-wife's participation in the address confidentiality program described above.  *See* FAC ¶¶ 92–98.  From her participation he concludes, for instance, in his motion for preliminary relief, that "the State of Arizona now deems Plaintiff to have violated A.R.S. § 12-3201, and thus to have perpetrated §§ 13-3601/3602 Domestic Violence, for filing motion papers in well-founded lawsuits absent leave of the court."  Mot., Dkt. 23, at 8.

But this, too, fails.  The Secretary of State's acceptance of a vexatious litigant designation as evidence is not a threat or warning of future enforcement because the Secretary of State has no criminal enforcement powers, and can give no such warning. *See* A.R.S. §§ 41-121, -121.02 (duties of Secretary of State and Department of State). Nor has Plaintiff demonstrated any instance where a person was prosecuted for filing papers without leave because of someone else's address confidentiality order.  *Cf. Libertarian Party of Los Angeles Cnty*, 709 F.3d at 870 (requirements for credible fear).

### b.    Any injury cannot be fairly traced to AG Mayes, nor redressed by the relief sought against her.

Plaintiff has not sufficiently alleged injury under the vexatious litigant statute.  In any event, any injury he does allege fails to confer Article III standing as to AG Mayes for two reasons.

**First**, Plaintiff must show that "the injury [is] fairly traceable to the challenged action of [AG Mayes], and not the result of the independent action of some third party." *Bennett*, 520 U.S. at 167. When suing officers to challenge a statute, plaintiffs need "a reasonable expectation that the defendants might bring an enforcement action against them." *Ariz. Contractors Ass'n v. Napolitano*, Nos. 07-1355-PHX-NVW, 07-1684-PHX-NVW, 2007 WL 9723967, at *9 (Dec. 10, 2007).

A causal chain beginning with a challenged action can establish that harm is fairly traceable, even if there are "multiple links in the chain." *Skyline Wesleyan Church*, 968 F.3d at 748. But the chain must be "direct." *Id.*

Here, Plaintiff fails to provide any reason any enforcement would directly involve AG Mayes. AG Mayes has only such powers as are given in statute. Ariz. Const. art. V, § 9; *see also, e.g.*, A.R.S. §§ 21-422 (detailing powers relating to grand juries), 41-193 (detailing powers). And elected county attorneys, who prosecute the vast majority of criminal cases in Arizona's state courts, likewise have powers detailed in statute. *See, e.g.*, A.R.S. § 11-532. And those powers make clear that, in the unlikely event Plaintiff were prosecuted, it would be by a county attorney.

Plaintiff's consequence, a bar from "fil[ing] any new pleading, motion or other document . . . without prior leave of the judge assigned to that case," *Potter*, 2024 WL 368095, at *2 ¶ 14, is enforced by the court. At most, through an indirect chain of statutes, he alleges he could be prosecuted by someone. *See* FAC ¶ 103. But even that speculative belief is a far leap from tying the envisioned prosecution to AG Mayes. *Cf. Clapper v. Amnesty Int'l. USA*, 568 U.S. 398, 414 (2013) (mere "speculation about the decisions of independent actors" is insufficient for fair traceability).

AG Mayes's general supervisory power over county attorneys, in A.R.S. § 41-193(4–5), is not enough to bridge the gap. *See S. Pac. Transp. Co. v. Brown*, 651 F.2d 613, 614–15 (9th Cir. 1980) (feared prosecution not fairly traceable to attorney general who lacked power to prosecute challenged statute but would "advise and direct the district attorneys to prosecute"). Nor has Plaintiff shown that the Governor or AG Mayes is likely

8

1    to "deem[]" his case one where the Attorney General's involvement is "necessary."

2    A.R.S. § 41-193(2).  In short, Plaintiff needs to allege why AG Mayes, specifically, might

3    reasonably be expected to prosecute him.  He has not.

4        **Second**, relatedly, Plaintiff's asserted injury cannot be redressed by any relief he

5    seeks against AG Mayes.  Standing requires that a favorable decision be likely to actually

6    redress the injury; mere speculation is not enough.  *Lujan v. Defs. of Wildlife*, 504 U.S.

7    555, 561 (1992).

8        Here, an order enjoining AG Mayes from enforcing A.R.S. § 12-3201 would have

9    no practical effect because courts could still impose prefiling requirements on vexatious

10   litigants.  As discussed, while prosecution is unlikely, any such prosecution would be

11   more likely to come from a county attorney than from AG Mayes.  Thus, even setting all

12   the other problems with Plaintiff's arguments aside, his requested relief here would not

13   "likely" redress his problem because enjoining AG Mayes would not prevent a county

14   attorney from prosecuting him, nor the courts from enforcing their injunctions.  *See*

15   *Friends of the Earth, Inc.*, 528 U.S. at 181.

16   2.    **Plaintiff also lacks standing to challenge the harassment statute**
17         **(Count 2).**

18       Nor does any asserted injury under A.R.S. § 13-2921, which he challenges as void

19   for vagueness, spell out standing for Plaintiff.  That statute defines the crime of

20   harassment.  Subsection (E) defines "harass" as "conduct that is directed at a specific

21   person and that would cause a reasonable person to be seriously alarmed, annoyed,

22   humiliated or mentally distressed and the conduct in fact seriously alarms, annoys,

23   humiliates or mentally distresses the person."  But not everything defined by that

24   subsection is criminalized; subsection (A), instead, criminalizes a subset.

25       Plaintiff lacks standing here for three reasons.  First, Plaintiff lacks any injury

26   connected to this statute.  Although Plaintiff alleges that his ex-wife was able to have her

27   address deemed confidential as a result of his litigation being deemed "harassing," a third

28

party having their address treated as confidential is not an "invasion of a legally protected interest" belonging *to Plaintiff*. *See Lujan*, 504 U.S. at 560.

Second and third, any injury would not be fairly traceable to AG Mayes and could not be redressed by the relief sought. AG Mayes does not administer the program; any harm resulting from the acceptance of an application has no connection to her. And, as discussed earlier, because county attorneys carry out the vast majority of criminal prosecutions in Arizona, enjoining AG Mayes would not "likely" redress any injury. *See Friends of the Earth, Inc.*, 528 U.S. at 181. Additionally, AG Mayes does not enforce § 41-161 *et seq.* The only colorable role of AG Mayes in the program appears at § 41-165, which provides criminal penalties for intentionally or knowingly obtaining or disclosing protected information. But that is unrelated to Plaintiff's supposed injury. Consequently, an injunction against AG Mayes as relates to the definition of "harassment" would not redress Plaintiff's alleged injury.

### B.  Plaintiff's challenge to the vexatious litigant statute is precluded by sovereign immunity.

In addition to Plaintiff's lacking standing, AG Mayes lacks a sufficiently direct connection to the vexatious litigant statute's enforcement scheme, rendering Plaintiff's challenge to that statute barred by sovereign immunity.

The vexatious litigant statute, A.R.S. § 12-3201, allows courts to limit filings from litigants who behave in a vexatious manner, described earlier. Following a designation, the litigant "may not file a new pleading, motion or other document without prior leave of the court." *Id.* (B). As noted, the statute is enforced by the court, not AG Mayes.

A suit challenging the constitutionality of a state statute may seek prospective injunctive relief against a state officer. *Green*, 474 U.S. at 68; *see Ex Parte Young*, 209 U.S. at 159–60. The suit must, though, be asserted against a state officer with "some connection" to the law's enforcement. *Matsumoto v. Labrador*, 122 F.4th 787, 802 (9th Cir. 2024) (quoting *Ex Parte Young*, 209 U.S. at 157). That connection must "go[] beyond a generalized duty to enforce state law," *id.* (cleaned up), and "be fairly direct." *Coal. to*

1    *Defend Affirmative Action v. Brown*, 674 F.3d 1128, 1134 (9th Cir. 2012) (quoting *L.A.*

2    *Cnty. Bar Ass'n v. Eu*, 979 F.2d 697, 704 (9th Cir. 1992)).

3    AG Mayes lacks the requisite "fairly direct" connection here. First, she had no

4    role in Plaintiff's designation, neither requesting a designation nor granting one. Second,

5    she has no role in enforcing the statute or Plaintiff's order, for the reasons given earlier.

6    **II.    Plaintiff fails to state a claim for which he is entitled to relief.**

7    In deciding a 12(b)(6) motion, the Court must "take all allegations of material fact

8    as true and construe them in the light most favorable to the nonmoving party." *Kwan*,

9    854 F.3d at 1096 (cleaned up). But "conclusory allegations of law and unwarranted

10   inferences" do not receive this presumption of truth. *Id.* A court must dismiss once shown

11   either of the "lack of a cognizable legal theory" or the "absence of sufficient facts alleged

12   under a cognizable legal theory." *Johnson*, 534 F.3d at 1121–22.

13   **A.    Plaintiff fails to state a claim in his challenge to the vexatious litigant**
14   **statute (Count 1).**

15   **1.    The statute is not overly broad.**

16   A.R.S. § 12-3201 also does not facially violate the First Amendment. Ordinarily,

17   facial invalidation of a law requires that there be no constitutional applications. *United*

18   *States v. Hansen*, 599 U.S. 762, 769 (2023). But a special, narrow exception exists for

19   First Amendment overbreadth. *Id.* at 770. A law may be facially overbroad if it "prohibits

20   a substantial amount of protected speech relative to its plainly legitimate sweep." *Id.*

21   (cleaned up). The overbreadth doctrine is meant to prevent chilling effects. *Comite de*

22   *Jornaleros v. City of Redondo Beach*, 657 F.3d 936, 944 (9th Cir. 2011).

23   The doctrine is "strong medicine that is not to be casually employed." *Hansen*,

24   599 U.S. at 770 (cleaned up). "[T]here comes a point at which the chilling effect of an

25   overbroad law, significant though it may be, cannot justify prohibiting all enforcement of

26   that law—particularly a law that reflects legitimate state interests in maintaining

27   comprehensive controls over harmful, constitutionally unprotected conduct." *Virginia v.*

28   *Hicks*, 539 U.S. 113, 119 (2003) (cleaned up). To survive, therefore, a law needs only a

11

"plainly legitimate sweep" that is not "substantially outweigh[ed]" by its unconstitutional applications. *Moody v. NetChoice, LLC*, 603 U.S. 707, 723–24 (2024). A law is also "upheld if (1) it is not aimed at, and does not encompass constitutionally protected speech or activities, and (2) it 'furthers an important or substantial government interest.'" *Grundstein v. Ohio*, No. 06-2381, 2006 WL 3499990, at \*5 (quoting *O'Brien v. United States*, 391 U.S. 367, 377 (1968)).

Here, Plaintiff cannot make the required showing. With its two judicial screening steps, the vast majority of the law's applications will prevent filings not protected by the First Amendment because "there is no constitutional right to file frivolous litigation." *Wolfe*, 486 F.3d at 1125 (upholding California prefiling requirement for vexatious litigants against overbreadth challenge). Should the court mistakenly block a filing, the litigant may seek special action review. *See* Ariz. R. Proc. Special Actions 11. Therefore, most of its applications are within the law's "plainly legitimate sweep" and are neither aimed at, nor encompass, protected activity.

Put another way, the Court need only decide whether judges, in orders subject to discretionary interlocutory review, are likely to prohibit substantially more protected filings than unprotected. To ask it is to answer.

Further, A.R.S. § 12-3201 is a poor fit for the overbreadth doctrine because it sits outside the doctrine's purposes. Only improper filings would be chilled by a limited ability to engage in unprotected speech, an effect that is not cognizable. *See Hicks*, 539 U.S. at 124 ("doctrine's concern" is "with 'chilling' protected speech" (citation omitted)).

A.R.S. § 12-3201 regulates only unprotected activity by requiring prefiling review to ensure a designated litigant files only proper papers, and is therefore not overbroad.

### a. The *Noerr-Pennington* doctrine does not save Plaintiff's overbreadth theory.

Plaintiff alleges that the *Noerr-Pennington* doctrine supports his case by demonstrating that there is no "plainly legitimate sweep" to the statute. This misconceives the doctrine, which stands for a generic "rule of statutory construction."

1  *United States v. Koziol*, 993 F.3d 1160, 1171 (9th Cir. 2021). It requires courts to

2  "construe federal statutes so as to avoid burdening conduct that implicates the protections

3  afforded by the Petition Clause unless the statute clearly provides otherwise." *Sosa v.*

4  *DIRECTV, Inc.*, 437 F.3d 923, 931 (9th Cir. 2006). It is, in effect "a specific application

5  of the rule of statutory construction known as the canon of constitutional avoidance." *Id.*

6  at 931 n.5. It protects rights by interpreting statutes so as not to infringe on them, and

7  that is not the issue here.

8      The doctrine grew out of concerns about the use of one statute to deny individuals

9  rights guaranteed under other statutes or constitutional provisions. Specifically, in

10  *Eastern Railroad Presidents Conference v. Noerr*, truck operators and their union sued a

11  group of railroads, their presidents, and a public relations firm, alleging a "conspir[acy]

12  to restrain trade" through a publicity campaign against truckers. 365 U.S. 127, 129

13  (1961). The Supreme Court read the Sherman Act as not extending to this conduct. A

14  broader reading would apply the Sherman Act to "political activity," which would "raise

15  important constitutional questions," an intent not "lightly impute[d] to Congress." *Id.* at

16  138. Similarly, the Sherman Act does not extend to "[j]oint efforts to influence public

17  officials." *United Mine Workers of America v. Pennington*, 381 U.S. 657, 670 (1965).

18      Thus, federal statutes are generally interpreted in ways that do not infringe on the

19  Petition Clause. But the doctrine does not extend to "sham litigation," which is litigation

20  that is "objectively baseless and the defendant's motive in bringing it was unlawful."

21  *Koziol*, 993 F.3d at 1171.

22      The doctrine does not do what Plaintiff needs it to here. It is a rule for reading

23  statutes and is of no help to a plaintiff raising a facial challenge. If Plaintiff were seeking

24  to *narrow* the scope of Arizona's law, *Noerr-Pennington* may of help to him. But

25  narrowing the law hurts, not helps, his facial challenge.

26          **b.    Nor does *Ringgold-Lockhart* compel a different outcome.**

27      Plaintiff alleges that *Ringgold-Lockhart v. County of Los Angeles*, 761 F.3d 1057

28  (9th Cir. 2014) establishes the overbreadth of the statute, again by rendering it without

any legitimate sweep. FAC ¶ 140–44. He argues that *Ringgold-Lockhart* requires a court to find both "serial objectively baseless litigation" *and* an "improper . . . motive of harassment." FAC ¶ 141. And, he asserts, a recent Arizona Supreme Court case, *Arizona Republican Party v. Richer*, 257 Ariz. 237 (2024), suggests that Arizona's vexatious litigant statute does not require these dual findings and thus violates *Ringgold-Lockhart*. *See* FAC ¶ 160.

But *Ringgold-Lockhart* does not say what Plaintiff claims it does. *Cf.* 761 F.3d at 1064 ("As an alternative to frivolousness, the district court may make an alternative finding that the litigant's filings 'show a pattern of harassment.'") To the contrary, *Ringgold-Lockhart* is explicit that "substantive findings of frivolousness or harassment" is disjunctive. *Id*. at 1062. "[A] pattern of harassment" is an "alternative to frivolousness." *Id.* at 1064. Thus, even taking as true Plaintiff's assertion that *Richer* shows the vexatious litigant statute does not require finding *both* baseless litigation *and* an improper motive, the statute does not violate *Ringgold-Lockhart*.

## 2. The statute comports with procedural due process.

A.R.S. § 12-3201 provides constitutionally sufficient procedural due process. Under the Fourteenth Amendment's due process clause, states must provide "fair procedure" when state action deprives a citizen of "a constitutionally protected interest in 'life, liberty, or property.'" *Zinermon v. Burch*, 494 U.S. 113, 125 (1990). Once a protected interest is at stake, "[p]arties whose rights are to be affected are entitled to be heard; and in order that they may enjoy that right they must first be notified." *Wilkinson v. Austin*, 545 U.S. 209, 226 (2005) (quoting *Fuentes v. Shevin*, 407 U.S. 67, 80 (1972)). Applying these requirements in the prefiling requirement context, the Ninth Circuit has held that courts must provide notice and chance for a hearing, and must compile an adequate record for review, before requiring prefiling review. *Molski v. Evergreen Dynasty Corp.*, 500 F.3d 1047, 1057 (9th Cir. 2007) (citing *De Long v. Hennessey*, 912 F.2d 1144, 1147–48 (9th Cir. 1990)).

14

Arizona law requires the same process. "In the absence of convincing evidence that the state supreme court would decide differently, a federal court is obligated to follow the decisions of the state's intermediate courts." *Easyriders Freedom F.I.G.H.T. v. Hannigan*, 92 F.3d 1486, 1494 n.4 (9th Cir. 1996) (cleaned up). Arizona's courts of appeals interpret A.R.S. § 12-3201 as requiring the procedural steps the Ninth Circuit imposes on prefiling requirements. *Madison v. Groseth*, 230 Ariz. 8, 14 ¶ 18 (App. 2012) (Timmer, J.) ("We agree adherence to these principles is appropriate to ensure that a litigant's access to courts is not inappropriately infringed upon, and we therefore adopt them."); *see also, e.g.*, *Contreras v. Bourke*, 556 P.3d 291, 300 ¶ 28 (Ariz. App. 2024) (stating it "necessarily follows that" *De Long*'s requirements "apply to pre-filing restrictions entered under either § 12-3201 or the court's inherent authority"); *Potter*, 2024 WL 368095, at *7 ¶ 44 (applying *Madison* to A.R.S. § 12-3201 designation). Thus, "the litigant must be afforded notice and an opportunity to oppose the order" and "the court must create an adequate record" for appeal. *Madison*, 230 Ariz. at 14 ¶ 18 (quoting *De Long*, 912 F.2d at 1147–48). Also, the order must be narrowly tailored. *Id.*

Additionally, the only consequence of a designation is a prefiling review requirement. The court must still permit proper filings. *See Potter*, 2024 WL 368095, at *9 ¶ 56 ("[T]he order will not bar Potter from filing pleadings made in good faith."). *Cf. Wolfe*, 486 F.3d at 1126–27 (prefiling orders do "little more than require *sua sponte* review of a [vexatious litigant's] complaint"). Therefore, the statute "does not regulate conduct protected by the First Amendment." *Grundstein*, 2006 WL 3499990, at *4 (upholding Ohio prefiling requirement for vexatious litigants).

This is illustrated by Plaintiff's own case. He received due process, including notice, briefing, and a hearing prior to his designation, based on substantive findings required by law, on a record suitable for appeal. *See Potter*, 2024 WL 368095, at * 9 ¶ 51–53. His order was narrowly tailored, applying only to cases pending at the time it was issued. *Id.* ¶ 54. Because these matters were actually litigated and essential to the final judgment against Plaintiff, that determination has preclusive effect. *See Sharifi*

15

1    *Takieh v. Banner Health*, 515 F. Supp. 3d 1026, 1037 (D. Ariz. 2021) (discussing Arizona

2    issue preclusion rules as applied to Arizona judgments in federal court).

### 3.    The statute is not void for vagueness.

4        Nor is A.R.S. § 12-3201 void for vagueness.  The vagueness doctrine "guarantees

5    that ordinary people have fair notice of the conduct that a statute proscribes." *Sessions v.*

6    *Dimaya*, 584 U.S. 148, 155–56 (2018) (cleaned up).  The doctrine prevents government

7    from forcing citizens to "steer far wider of the unlawful zone than if the boundaries of the

8    forbidden areas were clearly marked." *Grayned v. City of Rockford*, 408 U.S. 104, 109

9    (1972) (cleaned up).  "A law is void for vagueness if it is impermissibly vague in all of

10   its applications" and "cause[s] persons of common intelligence necessarily to guess at its

11   meaning and to differ as to its application." *United States v. Makowski*, 120 F.3d 1078,

12   1080 (9th Cir. 1997) (cleaned up).  But "a statute will not be ruled void for vagueness

13   when it is sufficient to give the particular defendant notice that his conduct is illegal."

14   *United States v. Goyette*, 458 F.2d 992, 993 (9th Cir. 1972).

15       Plaintiff can show no risk of an unclear requirement.  Whether or not a litigant

16   could quibble over how many harassing filings are "repeated," or if harassment always

17   means without "legitimate purpose," the vagueness doctrine is not about minute details,

18   but rather whether people, in total, know what they may and may not do.  *Human Life of*

19   *Wash. Inc. v. Brumsickle*, 624 F.3d 990, 1019 (9th Cir. 2010) ("[P[erfect clarity is not

20   required even when a law regulates protected speech.").  After all, "we can never expect

21   mathematical certainty from our language." *Id.* (citation omitted).  Here, there is no real

22   confusion as to the core of what litigants may not do—they simply must avoid making

23   improper filings.  That is no new requirement.  It is required of them before a designation,

24   and enforced prospectively after.  As with the Ohio statute at issue in *Grundstein*, the

25   statute leaves no one to guess what may not be done.  2006 WL 3499990, at *4.

26       At bottom, "speculation about possible vagueness in hypothetical situations not

27   before the Court will not support a facial attack on a statute when it is surely valid in the

28   vast majority of its intended applications." *Tucson v. City of Seattle*, 91 F.4th 1318, 1330

16

(9th Cir. 2024) (quoting *Hill v. Colorado*, 530 U.S. 703, 733 (2000)) (alteration accepted). And the Arizona court of appeals had no difficulty finding the law to clearly apply to Plaintiff's own filings.  *Cf. Goyette*, 458 F.2d at 993 (law not held vague when clearly applicable to challenger's own case).

**B.    Plaintiff's harassment statute challenge fails to state a claim (Count 2).**

In his void for vagueness attack on A.R.S. § 13-2921, Plaintiff again fails to state a claim.  His claim rests on a misconception about what the law criminalizes.  Subsection (E) defines "harass."  But A.R.S. § 13-2921 criminalizes only "knowingly and repeatedly commit[ting] an act or acts that harass another person" and "knowing commit[ting] any one of" specified acts, "in a manner that harasses."  *Id.* (A).    These "scienter requirement[s]" may "mitigate [any] vagueness," *Makowski*, 120 F.3d at 1081, because they "limit[] the discretion of law enforcement" and prevent prosecution of those who lack notice.  *United States v. Wyatt*, 408 F.3d 1257, 1261 (9th Cir. 2005); *see Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 503 n.21 (1982).

This dispels Plaintiff's idea that all litigation is, under the statutory definition, harassment.  FAC ¶¶ 210–12.  *See State v. Brown*, 207 Ariz. 231, 237–38 ¶¶ 20–21 (Ariz. App. 2004) (Pelander, J.) (intent requirements in (A) kept statute from criminalizing various common interactions, such as "delivery of bad news," an interpretation that would "exceed[] [the statute's] valid reach"); *see also State ex rel. Montgomery v. Harris*, 237 Ariz. 98, 101 ¶ 13 (2014) (in Arizona courts, laws are "construed sensibly").

Finally, even if subsection (A) could reach the act of filing a lawsuit without more as Plaintiff alleges, that would not be Plaintiff's case.  "[T]he summary of Plaintiff's claims includes . . . plain attempts to harass parties and/or unnecessarily expand litigation matters."  *Potter*, 2024 WL 368095, at *8 ¶ 47; s*ee Goyette*, 458 F.2d at 993.

## CONCLUSION

Plaintiff neither establishes federal jurisdiction nor states a valid claim for relief. Amendment would be futile as Plaintiff seeks constitutional protection for unprotected conduct.  The Court should dismiss the First Amended Complaint with prejudice.

RESPECTFULLY SUBMITTED this 3rd day of June, 2025.

**KRISTIN K. MAYES**
**ATTORNEY GENERAL**


By  /s/ *Joshua A. Katz*
      Hayleigh S. Crawford
      *Deputy Solicitor General*
      Joshua A. Katz
      *Assistant Attorney General*
      Office of the Arizona Attorney General
      2005 N. Central Ave.
      Phoenix, Arizona 85004

      *Attorneys for Defendant Arizona Attorney*
        *General Kristin K. Mayes*

**CERTIFICATE OF CONFERRAL**

Pursuant to LRCiv. 12.1(c), undersigned counsel certifies that the parties have conferred to determine whether the issues identified in the motion to dismiss the First Amended Complaint as to Kristin K. Mayes, Arizona Attorney General, could be cured by a permissible amendment offered by the Plaintiff.

Counsel for AG Mayes conferred with self-represented Plaintiff via email on May 30 and June 2, 2025, to discuss the issues and arguments raised in the Motion to Dismiss the First Amended Complaint, namely that the Plaintiff has failed to state a claim on each of his counts and that subject-matter jurisdiction is lacking. Plaintiff did not propose any amendments to his complaint, and the parties were therefore unable to agree that Plaintiffs' complaint is curable in any part by a permissible amendment.

RESPECTFULLY SUBMITTED this 3rd day of June, 2025.

**KRISTIN K. MAYES**
**ATTORNEY GENERAL**


By  /s/ *Joshua A. Katz*
     Hayleigh S. Crawford
     *Deputy Solicitor General*
     Joshua A. Katz
     *Assistant Attorney General*
     Office of the Arizona Attorney General
     2005 N. Central Ave.
     Phoenix, Arizona 85004

     *Attorneys for Defendant Arizona Attorney*
      *General Kristin K. Mayes*