**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Phillip Potter,<br><br>           Plaintiff,<br><br>v.<br><br>Robert Meza, et al.,<br><br>           Defendants. | No. CV-25-00663-PHX-DWL<br><br>**ORDER** |

       In February 2023, an Arizona trial court issued an order declaring Plaintiff a vexatious litigant pursuant to A.R.S. § 12-3201. (Doc. 37-2.) Under that order, Plaintiff "may not file any new pleading, motion or other document in this case or any other pending civil action without prior leave of the judge assigned to that case." (*Id.* at 5.) In February 2024, the Arizona Court of Appeals unanimously affirmed. *Potter v. Ariz. House of Reps.*, 2024 WL 368095, *7 (Ariz. Ct. App. 2024) ("The Superior Court Did Not Abuse Its Discretion When It Designated Potter a Vexatious Litigant Under A.R.S. § 12-3201."). In June 2024, the Arizona Supreme Court denied review. *Id.*

       In February 2025, Plaintiff, who is proceeding *pro se*, initiated this action. (Doc. 1.) In Count One of his operative pleading, Plaintiff raises a "First Amendment Facial Challenge" to A.R.S. § 12-3201. (Doc. 14 ¶¶ 113-207.) As relevant here, Plaintiff names Arizona Attorney General Kris Mayes ("AG Mayes") as a defendant. (*Id.*)

       Now pending before the Court is Plaintiff's motion for a temporary restraining order ("TRO") and preliminary injunction. (Doc. 23.) In that motion, Plaintiff renews his "First

Amendment facial challenge to Arizona's vexatious litigant statute" and seeks an order enjoining AG Mayes "from enforcing the Statute in any manner." (Doc. 23 at 1, 4.)[1] The motion is fully briefed (Docs. 37, 40) and the Court concludes that oral argument is unnecessary.  For the reasons that follow, the motion is denied.

**DISCUSSION**

I. <u>Legal Standard</u>

Under Rule 65 of the Federal Rules of Civil Procedure, a party may seek injunctive relief if it believes it will suffer irreparable harm during the pendency of an action. There are two types of injunctions available under Rule 65: TROs and preliminary injunctions. Each type of request is governed by the same substantive standard. *Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001).  More specifically, each type of "injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012) (cleaned up). *See also Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) ("A preliminary injunction is an extraordinary remedy never awarded as of right.") (citation omitted).

"A plaintiff seeking a preliminary injunction must establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter*, 555 U.S. at 20.  However, "if a plaintiff can only show that there are serious questions going to the merits—a lesser showing than likelihood of success on the merits—then a preliminary injunction may still issue if the balance of hardships tips sharply in the plaintiff's favor, and the other two *Winter* factors are

---

[1] Plaintiff also seeks injunctive relief against Joseph Welty, in his capacity as the Presiding Judge of the Maricopa County Superior Court (Doc. 23), but this order does not address that request because Judge Welty has not been served. (Doc. 29.)  The Court notes that although Plaintiff recently filed a notice of service as to Judge Welty, the attached service declarations only relate to other defendants. (Docs. 39-1, 39-2.)  To the extent Plaintiff believes he properly effected service on Judge Welty by sending certain documents to Judge Welty "via U.S. first class mail" (Doc. 39), Plaintiff is mistaken.  At most, such a mailing may have started the process for obtaining a waiver of service under Rule 4(d).

satisfied." *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1291 (9th Cir. 2013) (cleaned up). *See also Assurance Wireless USA, L.P. v. Reynolds*, 100 F.4th 1024, 1031 (9th Cir. 2024) ("Serious questions are issues that cannot be resolved one way or the other at the hearing on the injunction because they require more deliberative investigation. Thus, parties do not show serious questions when they raise a merely plausible claim, nor can a district court forgo legal analysis just because it has not identified precedent that places the question beyond debate. This 'less demanding' merits standard requires serious factual questions that need to be resolved in the case.") (cleaned up). Additionally, "[w]here, as here, the government opposes a preliminary injunction, the third and fourth factors merge into one inquiry." *Porretti v. Dzurenda*, 11 F.4th 1037, 1047 (9th Cir. 2021).

Regardless of which standard applies, the movant "carries the burden of proof on each element of either test." *Env't. Council of Sacramento v. Slater*, 184 F. Supp. 2d 1016, 1027 (E.D. Cal. 2000).

II.   Analysis

The analysis begins with the first *Winter* factor—whether Plaintiff has shown a likelihood of success on the merits or at least serious questions going to the merits. *Roe v. Critchfield*, 137 F.4th 912, 922 (9th Cir. 2025) ("Likelihood of success on the merits is the most important *Winter* factor and is a threshold inquiry.") (cleaned up).

A.   **Standing**

One of AG Mayes's bases for opposing Plaintiff's motion is that he lacks standing. (Doc. 37 at 6-10.) Although Plaintiff asserts in his reply that "[t]he Court would be wise to reserve these jurisdictional challenges for dismissal proceedings" (Doc. 40 at 6), Plaintiff overlooks that "[t]he first [*Winter*] factor incorporates an assessment of both the plaintiff's standing and the merits of the underlying claim." *Arizona v. Mayorkas*, 584 F. Supp. 3d 783, 789 (D. Ariz. 2022). *See also LA Alliance for Human Rights v. Cnty. of Los Angeles*, 14 F.4th 947, 958 (9th Cir. 2021) (reversing preliminary injunction in part because "Plaintiffs have not made the required 'clear showing' that any individual Plaintiff has standing to bring the . . . claim"); *Mitchell v. City of Cincinnati*, 2022 WL 4546852, *4 (6th

Cir. 2022) ("[W]hether plaintiffs had standing . . . is a component of the likelihood of success on the merits."); *Memphis A. Philip Randolph Institute v. Hargett*, 978 F.3d 378, 386 (6th Cir. 2020) ("[A] party who fails to show a substantial likelihood of standing is not entitled to a preliminary injunction.") (cleaned up).

"[T]he irreducible constitutional minimum of standing contains three elements. First, the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (cleaned up).

One of the alleged injuries identified in Plaintiff's motion is "the ongoing deprivation of his First Amendment rights" caused by his inability to file court documents, at least without leave of court. (Doc. 23 at 13.) However, AG Mayes has nothing to do with this alleged injury—under the vexatious litigant statute, "the court" is tasked with determining whether to allow a particular filing. *See* A.R.S. § 12-3201(B) ("A pro se litigant who is designated a vexatious litigant may not file a new pleading, motion or other document without prior leave of the court."). Thus, Plaintiff's first alleged injury is not fairly traceable to AG Mayes.

The other alleged injury identified in Plaintiff's motion is a threat of criminal prosecution. Although Plaintiff's briefing on this point is not a model of clarity, Plaintiff appears to advance two theories of why he now faces such a risk. First, Plaintiff contends that if he attempts to make future court filings without obtaining leave of court, he may be charged with violating A.R.S. § 13-2810(A)(2), which makes it a misdemeanor to interfere with judicial proceedings by knowingly "[d]isobey[ing] or resist[ing] the lawful order, process or other mandate of a court." (*See, e.g.*, Doc. 23 at 8 ["AG Mayes now threatens

Plaintiff with criminal and civil prosecution for § 13-2810(A)(2) Interfering With Judicial Proceedings . . . ."]; *id.* at 8 n.6 ["Filing motion papers absent leave of court allegedly 'disobeys or resists' an A.R.S. § 12-3201 order, in supposed violation of A.R.S. § 13-2810(A)(2)."]; *id.* at 12 ["[T]he State has unlawfully accepted that filing papers in well-founded lawsuits absent prior leave of the court constitutes conduct ripe for the Attorney General to civilly and criminally prosecute Plaintiff."].) Second, Plaintiff contends that his ex-wife recently enrolled in an address confidentiality program administered by the Arizona Secretary of State, the purpose of which is to protect victims of domestic violence, and cited Plaintiff's vexatious litigant order as her basis for enrolling in the program. According to Plaintiff, this development shows that he is now considered a "perpetrator" of domestic violence by the State of Arizona and faces prosecution under A.R.S. § 13-2921(A), which makes it a misdemeanor to engage in various forms of harassment. (*See, e.g.*, Doc. 23 at 8 ["AG Mayes now threatens Plaintiff with criminal and civil prosecution for . . . § 13-2921 Harassment violations . . . ."]; *id.* at 14 ["[T]he Secretary of State has now entered official records expressly asserting Plaintiff committed A.R.S. § 13-3601 Domestic Violence. The State of Arizona now considers Plaintiff's former spouse and young son to be victims of criminal domestic violence, with Plaintiff the perpetrator."].) In his reply, Plaintiff emphasizes that AG Mayes has publicly announced that "domestic violence prosecution is a priority." (Doc. 40 at 8.)

The type of claim that Plaintiff seeks to advance is known as a pre-enforcement challenge. *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014). Such a claim arises "when the threatened enforcement of a law creates an Article III injury." *Id.* "When an individual is subject to such a threat, an actual arrest, prosecution, or other enforcement action is not a prerequisite to challenging the law." *Id.* *See also Peace Ranch, LLC v. Bonta*, 93 F.4th 482, 487 (9th Cir. 2024) ("Pre-enforcement injury is a special subset of injury-in-fact. . . . [T]he injury is the anticipated enforcement of the challenged statute in the future. One need not violate a criminal law and risk prosecution in order to challenge the law's constitutionality. This principle applies equally in the civil context.").

An initial conceptual difficulty here is that the statute whose constitutionality Plaintiff seeks to challenge—Arizona's vexatious litigant statute, codified at A.R.S. § 12-3201—has already been enforced against Plaintiff, as evidenced by the entry of the vexatious litigant order against him in February 2023. Plaintiff is thus left to argue that his intent to commit future violations of that court order, which he effectively contends is unconstitutional, exposes him to a threat of criminal prosecution under other statutes, such as A.R.S. § 13-2810(A)(2) and A.R.S. § 13-2921(A), whose constitutionality he does not independently challenge.

The parties have not cited, nor is the Court aware of, any authority that would permit Plaintiff to invoke the pre-enforcement challenge framework under these unusual circumstances. Nor is it obvious that Plaintiff may do so. After all, "[o]ne purpose of pre-enforcement standing is to ensure that no law is practically unchallengeable." *Peace Ranch*, 93 F.4th at 489. But this principle is not implicated here because Plaintiff already had a full and fair opportunity to challenge the constitutionality of A.R.S. § 12-3201 during the state-court litigation that led to the issuance (and affirmance) of the vexatious litigant order against him. In a related vein, in a pre-enforcement challenge, "the injury is the anticipated enforcement of the challenged statute *in the future*." *Id.* at 487 (emphasis added). Thus, the Ninth Circuit has held (albeit without expressly referencing the pre-enforcement challenge framework) that a plaintiff who is not currently the subject of a state-court vexatious litigant order but reasonably fears the future issuance of such an order may raise a prospective, facial challenge to the constitutionality of the state's vexatious litigant statute. *Wolfe v. Strankman*, 392 F.3d 358, 363-64 (9th Cir. 2004) (concluding that the plaintiff's request for "declaratory and injunctive relief against the threatened future enforcement of the Vexatious Litigant Statute" was ripe because he had "previously engaged in the sort of activity in which he now claims he will engage again if not prohibited by the statute he seeks to challenge" and that the lawsuit was not barred by the *Rooker-Feldman* doctrine because "since there was no vexatious litigant order entered against Wolfe at the time he filed in district court, there was no state court judgment from which

he could have been seeking relief"). But that is not the situation here. Plaintiff does not claim to fear the issuance of a future vexatious litigant order. Instead, he seeks to raise what is effectively a collateral attack on an existing state-court judgment so that his planned violation of that judgment cannot provide the foundation for a future criminal prosecution.[2]

During an earlier stage of this case, the Court issued an order to show cause ("OSC") requiring Plaintiff to explain why such a request should not be dismissed for lack of subject-matter jurisdiction under the *Rooker-Feldman* doctrine. (Doc. 26.) The order cited various decisions in which courts concluded that federal lawsuits purporting to bring constitutional challenges to state-court vexatious litigant orders were, in substance, forbidden de facto appeals of state-court judgments and thus barred by *Rooker-Feldman*. (*Id.* at 2-3.) Plaintiff then filed a response to the OSC, arguing that *Rooker-Feldman* is inapplicable because he is suing an executive branch official and raising a facial challenge to A.R.S. § 12-3201. (Doc. 27 at 2.) The Court, in turn, issued an order explaining that although it was "not necessarily persuaded by Plaintiff's response to the OSC, . . . the jurisdictional and other issues raised by Plaintiff's FAC and motion for TRO are better resolved through the adversarial process." (Doc. 29 at 1-2.) The Court thus ordered AG Mayes to file a response to the motion for TRO. (*Id.*) However, AG Mayes did not address the *Rooker-Feldman* doctrine in her response brief. (Doc. 37.) Nor did AG Mayes raise this doctrine in her recently filed motion to dismiss for lack of subject-matter jurisdiction. (Doc. 38.)

Even assuming that *Rooker-Feldman* is inapplicable here,[3] the Court still harbors

---

[2] As noted, A.R.S. § 13-2810(A)(2) makes it a misdemeanor to interfere with judicial proceedings by knowingly "[d]isobey[ing] or resist[ing] the *lawful order*, process or other mandate of a court." *Id.* (emphasis added). Plaintiff's theory is that if he makes future court filings without leave of court, this will violate the vexatious litigant order that was issued against him in February 2023 and expose him to prosecution under § 13-2810(A). Plaintiff is thus effectively seeking a determination that the February 2023 vexatious litigant order is not a "lawful order," as required under § 13-2810(A). It is difficult to see how this does not qualify as a collateral attack on a prior state-court judgment.

[3] The Court acknowledges that facial challenges ordinarily do not trigger *Rooker-Feldman* in the same manner as as-applied challenges. *See, e.g.*, *Moore v. Urquhart*, 899 F.3d 1094, 1102 (9th Cir. 2018) ("The doctrine does not apply here because plaintiffs are not asking the district court to review and reject the judgment entered against them in state court. The state court judgment merely resolved the landlord's unlawful detainer action; it

concern that Plaintiff's challenge does not really qualify as a pre-enforcement challenge and that Plaintiff lacks standing to raise a facial challenge to A.R.S. § 12-3201 in this context. Assume, for example, that Plaintiff had never been deemed a vexatious litigant by the Arizona courts, did not intend to engage in future conduct that placed him at risk of being deemed a vexatious litigant, and simply wished to raise a facial challenge to Arizona's vexatious litigant statute as a matter of principle. In that scenario, Plaintiff would lack standing. *Bianchi v. Rylaarsdam*, 334 F.3d 895, 900 n.4 (9th Cir. 2003) ("Although Facio claimed . . . that he was bringing a general constitutional challenge, . . . if Mr. Facio is not able to set aside the state court judgment against him, he would lack standing to assert his constitutional claim. This is so, because unless the state court judgment is overturned, Facio's only interest in the state's procedures is prospective and hypothetical in nature.") (cleaned up). Indeed, but-for the existing state-court judgment against Plaintiff, there would be no foundation for Plaintiff's claimed fears of future

---

did not resolve whether § 375 is facially constitutional, the challenge plaintiffs seek to litigate here. Thus, rather than seek to overturn the state court judgment itself, plaintiffs have instead challenged the facial validity of the statute under which their state court proceedings were conducted, an independent claim that encounters no *Rooker-Feldman* shoal. . . . [A] state-court decision is not reviewable by lower federal courts, but a statute or rule governing the decision may be challenged in a federal action. Even if plaintiffs could have litigated their constitutional challenge in the unlawful detainer proceedings, as the district court appeared to assume, that fact might be relevant to preclusion analysis, but it would not trigger application of the *Rooker-Feldman* doctrine.") (cleaned up); *Noel v. Hall*, 341 F.3d 1148, 1157-58 & n.6 (9th Cir. 2003). Thus, courts outside the Ninth Circuit have concluded that *Rooker-Feldman* does not bar a facial challenge to a state vexatious litigant statute. *See, e.g.*, *Nunu v. Texas*, 2022 WL 820744, *2 (5th Cir. 2022) ("Paul also seeks a declaration that Texas' vexatious litigant statute is 'facially unconstitutional' and a permanent injunction barring the law's enforcement. As the district court correctly recognized, the *Rooker-Feldman* doctrine bars collateral challenges to state judgments, but does not bar facial challenges to the underlying rules of law on which those judgments are based. The district court nonetheless held that this qualification did not help Paul because his allegations did not set forth a facial challenge, but rather stemmed only 'from the vexatious litigant statute's application to him.' We disagree. Paul's complaint calls the statute 'facially' unconstitutional at least five times, and requests prospective declaratory and injunctive relief against the law's enforcement. These claims are not barred by *Rooker-Feldman*, and the district court should have recognized as much."); *Hall v. Callahan*, 727 F.3d 450, 454-57 (6th Cir. 2013) (affirming the district court's conclusion "that the *Rooker-Feldman* doctrine barred [the plaintiff's] as-applied constitutional challenge" to Ohio's vexatious litigant statute but considering, and rejecting, the plaintiff's facial challenge to the statute on the merits); *Grundstein v. Ohio*, 2006 WL 3499990, *8 (N.D. Ohio 2006) ("While Mr. Grundstein's facial challenge to the vexatious litigant statute may arguably be unaffected by the *Rooker-Feldman* doctrine, his claims regarding the application of this statute to him are barred.").

prosecution. For this reason, courts that have declined to apply *Rooker-Feldman* to facial challenges to vexatious litigant statutes have simply dismissed those challenges due to a different jurisdictional defect—a lack of standing to raise the facial challenge. *See, e.g.*, *Nunu v. Texas*, 2022 WL 820744, *2-3 (5th Cir. 2022) (although the district court should not have dismissed the plaintiff's facial challenges to Texas's vexatious litigant statute under *Rooker-Feldman*, those claims failed on the "alternate grounds" of "lack of standing" because there was no substantial likelihood that a future vexatious litigant order would be issued); *Jones v. Heuer*, 2024 WL 1664789, *9 (W.D. Tex. 2024) (although the plaintiff's request for "a declaratory judgment that the Texas vexatious litigant statute is unconstitutional on its face" was not precluded because "*Rooker-Feldman* . . . does not bar facial challenges," the request was still subject to dismissal for lack of jurisdiction because "[a]ll of Jones's allegations stem from the vexatious litigant statute's application to him"). *See also Mosby v. Ligon*, 418 F.3d 927, 932 (8th Cir. 2005) ("Mosby also asserts that *Rooker-Feldman* should not apply because she mounts only a 'facial' challenge to the administration of the Rules. We agree that the *Rooker-Feldman* doctrine does not bar the district court from exercising jurisdiction over general challenges to the constitutionality of a State's disciplinary rules and processes . . . [b]ut *Feldman* does not relieve Mosby of the requirement that she demonstrate Article III standing, and we conclude that Mosby does not have standing to bring what she describes as her facial challenge . . . ."); *Roshan v. Lawrence*, 689 F. Supp. 3d 697, 705-07 (N.D. Cal. 2023) (in lawsuit by disbarred attorney raising facial challenges to the California State Bar's rules and procedures, concluding that "to the extent that Roshan's facial constitutional claims seek to overturn Roshan's own prior disciplinary order, the Court is barred by *Rooker-Feldman* from hearing such claims" and to the extent the "facial challenges . . . are not barred by *Rooker-Feldman*," such as in relation to the plaintiff's request for "declaratory relief that the rules and procedures are unconstitutional," the plaintiff lacked standing because he was already subject to an existing disciplinary order and thus had only a hypothetical interest in how the State Bar's rules and procedures might be applied in a future case).

Nevertheless, even assuming Plaintiff may assert a constitutional challenge to A.R.S. § 12-3201 under these unusual circumstances, Plaintiff would still need to establish "a credible threat of enforcement" in order to possess standing. *Arizona v. Yellen*, 34 F.4th 841, 850 (9th Cir. 2022). The Ninth Circuit has "developed a framework to evaluate whether a claimed threat of enforcement is genuine enough to confer standing. We consider (1) whether the plaintiffs have articulated a concrete plan to violate the law in question, (2) whether the prosecuting authorities have communicated a specific warning or threat to initiate proceedings, and (3) the history of past prosecution or enforcement under the challenged statute." *Id.* (cleaned up).

The first element is likely satisfied here based on Plaintiff's assertions in his motion papers that he intends to make future court filings without seeking leave of court, which would violate the February 2023 vexatious litigant order and thus also constitute disobedience of a lawful court order, which A.R.S. § 13-2810(A)(2) proscribes. (Doc. 23 at 16 ["Plaintiff filed court papers in the past, and will continue to file court papers in the future, as part of an ongoing family law case and in a civil suit now set for trial."]; Doc. 40 at 7-8.) Although AG Mayes correctly notes that Plaintiff's representations on this point are somewhat vague and imprecise, it still seems clear that Plaintiff intends to disobey the vexatious litigant order. *Yellen*, 34 F.4th at 850 ("A concrete plan need not be cast in stone but must be more than a hypothetical intent to violate the law.") (cleaned up).

One way to establish the second element is to show that "the authorities in charge of enforcing the challenged law have communicated a specific warning or threat to initiate proceedings." *Tingley v. Ferguson*, 47 F.4th 1055, 1068 (9th Cir. 2022) (cleaned up). However, there is no suggestion—let alone evidence—that AG Mayes has ever threatened to prosecute Plaintiff for violating A.R.S. § 13-2810(A)(2) or A.R.S. § 13-2921(A) or for some other unspecified domestic violence offense. (*See also* Doc. 40 at 8-9 [Plaintiff's reply brief, not identifying any specific threats toward him].)[4]

---

[4] Although Plaintiff previously asserted, in a different filing in this case, that AG Mayes made a veiled threat of prosecution via email correspondence (Doc. 25 at 3-4), Plaintiff does not raise this argument in his motion. At any rate, AG Mayes persuasively explains in her response brief why the email correspondence cannot be reasonably

- 10 -

Even if there has been no direct warning or threat of prosecution, "the government's failure to *disavow* enforcement of the law . . . weigh[s] in favor of standing." *Tingley*, 47 F.4th at 1068. Plaintiff contends this principle is implicated here because AG Mayes "acknowledges she could enforce the law" and "nowhere . . . disavow[s] enforcement of A.R.S. § 12-3201 as Plaintiff describes and reasonably fears." (Doc. 40 at 8.) On the one hand, Plaintiff ignores that AG Mayes specifically disavowed, in her response brief, any authority or intent to directly enforce A.R.S. § 12-3201 and any authority or intent to bring an enforcement action based on the address confidentiality program. (Doc. 37 at 6-7 ["[N]ot only is there no threat or warning, but also the vexatious litigant statute is, by its terms, not a criminal statute. . . . Plaintiff [also] attempts to ground his fear in his ex-wife's participation in the address confidentiality program . . . [b]ut this, too, fails. The Secretary of State's acceptance of a vexatious litigant designation as evidence is not a threat or warning of future enforcement because the Secretary of State has no criminal enforcement powers, and can give no such warning."].) On the other hand, it does not appear that AG Mayes has specifically disavowed any intention to prosecute Plaintiff for violating A.R.S. § 13-2810(A)(2), should he engage in future acts of disobeying court orders, or for violating A.R.S. § 13-2921(A), should he engage in future acts of harassment. Instead, AG Mayes merely emphasizes the absence of prior prosecutions under those statutes where the underlying conduct involved the violation of a vexatious litigant order. (Doc. 37 at 7 ["Plaintiff has not pointed to a single such prosecution, directly or under A.R.S. § 13-2810."].) The problem with this approach is that the absence of past prosecutions is the inquiry contemplated under the third element of the standing test and is not tantamount to an affirmative disavowal of any intention to pursue a future prosecution for purposes of the second element. Furthermore, although AG Mayes emphasizes that county attorneys (rather than the attorney general) have primary authority under Arizona law for bringing criminal prosecutions under the statutes in question, her statements on that topic suggest,

---

construed as a threat of prosecution (Doc. 37 at 7 n.1) and Plaintiff does not dispute AG Mayes's arguments on this point in his reply.

- 11 -

if anything, that she has *not* definitively disavowed any intention to prosecute Plaintiff in the future under those statutes. (Doc. 37 at 8-9, emphasis added ["[W]hile prosecution is unlikely, any such prosecution would be *more likely* to come from a county attorney than from AG Mayes."].)[5] "That the . . . government has not disavowed enforcement . . . is evidence of an intent to enforce it." *Yellen*, 34 F.4th at 850.

The third element, as noted, is "the history of past prosecution or enforcement under the challenged statute." *Id*. The parties disagree over whether such a track record exists here—AG Mayes contends that "Plaintiff has not pointed to a single such prosecution, directly or under A.R.S. § 13-2810" (Doc. 37 at 7), while Plaintiff contends that "the Attorney General has a history of civilly and criminally enforcing the domestic violence statute and all predicates including A.R.S. § 13-2810(A)(2). Appeals records show seven cases where her office has brought such prosecutions in the past ten years. Plaintiff has no way to know how many times enforcement was initiated but never reached appeal." (Doc. 40 at 9.)

AG Mayes has the better of this argument. Due to the unusual derivative nature of the pre-enforcement challenge that Plaintiff seeks to raise, it is irrelevant that AG Mayes may have, in general, pursued past prosecutions under A.R.S. § 13-2810(A)(2) or A.R.S. § 13-2921(A). Instead, Plaintiff must go further and show that AG Mayes pursued those prosecutions in cases where the underlying conduct giving rise to the criminal charge was the unauthorized filing of court documents in violation of a vexatious litigant order. Plaintiff has not come forward with evidence of any such past prosecutions, by AG Mayes or indeed by any Arizona prosecutor at any level.[6]

---

[5] Additionally, the Ninth Circuit has rejected the argument that a state attorney general is not the proper defendant in pre-enforcement challenge to a criminal statute simply because other state law enforcement officials have primary (although not exclusive) enforcement authority related to that statute. *Matsumoto v. Labrador*, 122 F.4th 787, 798 (9th Cir. 2024) ("While Idaho downplays the extent of the attorney general's enforcement authority . . . it has never disavowed his authority. . . . Challengers' standing is not short-circuited by the fact that there are multiple authorized enforcers of the statute."); *id.* at 802 ("Facing the threat of prosecution by an enforcer with statutory authority to bring suit, Challengers have satisfied both the traceability and redressability prongs of the standing requirement.").

[6] Although Plaintiff contends that unspecified "Appeals records" support his claims

- 12 -

In light of these conclusions, the Court cannot say that Plaintiff has established a likelihood of success with respect to his standing to pursue a pre-enforcement challenge. The novelty of Plaintiff's theory alone creates significant doubt, Plaintiff's showing as to the second element of the standing test is weak (even if it raises some questions), and Plaintiff has not satisfied the third element of the standing test. With that said, the failure to establish the third element of the standing test "alone is not dispositive" when the other two elements are satisfied. *Libertarian Party of Los Angeles Cnty. v. Bowen*, 709 F.3d 867, 872 (9th Cir. 2013).

B. **Merits**

1. The Parties' Arguments

Plaintiff contends that *Ringgold-Lockhart v. County of Los Angeles*, 761 F.3d 1057 (9th Cir. 2014), sets forth the relevant standard for assessing the constitutionality of a vexatious litigant order, imposing "certain procedural and substantive requirements," and that A.R.S. § 12-3201 violates both sets of requirements. (Doc. 23 at 2-3.) More specifically, as for procedural due process, Plaintiff contends that "the Statute contains no hearing provision on a matter affecting First Amendment rights." (*Id.* at 6.) As for substantive due process, Plaintiff contends that "any suit sparking a vexatious inquiry must be objectively baseless, but the pro se litigant also must demonstrate a serial history of bringing objectively baseless suits, provided those suits reached finality so judicial notice could be properly taken. . . . [I]f those conditions are all met, past and present baseless litigation may then be reviewed for evidence of serial subjective 'improper motives' in the form of either (1) an 'inordinate' amount of 'frivolous' lawsuits, or (2) a 'pattern of harassment' involving common parties and claims. Only then does the First Amendment permit a pro se plaintiff to be deemed vexatious . . . ." (*Id.* at 7, citations omitted). According to Plaintiff, "[b]ecause no A.R.S. § 12-3201(E)(1)(a)-(f) provision meets the U.S. Supreme Court's two-prong conditional requirement for enjoining a single suit, or

regarding the third element, Plaintiff has not provided those records or identified them in a manner that would enable the Court to independently locate and review them.

- 13 -

even approaches the Ninth Circuit's *Ringgold* Standard needed to abridge or burden the fundamental right of access to the courts, the Statute violates substantive due process in every application." (*Id.*) Finally, Plaintiff contends that, for related reasons, A.R.S. § 12-3201 also "violates the overbreadth doctrine" and is "unconstitutionally vague and overbroad." (*Id.* at 10-12.)

In response, AG Mayes first argues that "A.R.S. § 12-3201 provides constitutionally sufficient procedural due process" because "Arizona's courts of appeals interpret A.R.S. § 12-3201 as requiring the procedural steps the Ninth Circuit has imposed on prefiling requirements." (Doc. 37 at 10-11.) AG Mayes also notes that "the only consequence of a designation is a prefiling review requirement, not inability to file"; that the only conduct thus prohibited by the statute—improper filings—is not protected by the First Amendment; and that, at any rate, litigants have a procedural remedy (special action relief) should a trial court erroneously decline to accept a particular filing. (*Id.* at 11-12.) Turning to substantive due process, AG Mayes argues that Plaintiff misinterprets *Ringgold-Lockhart* as requiring findings of both frivolousness and harassment, when in fact "*Ringgold-Lockhart* is explicit that 'substantive findings of frivolousness or harassment' is disjunctive." (*Id.* at 12.) Finally, AG Mayes argues that A.R.S. § 12-3201 is not facially overbroad because it only sweeps in "prohibited filings that are unprotected under the First Amendment" and is not void for vagueness because "there is no real confusion as to the core of what litigants may not do—they simply must avoid making improper filings. That is no new requirement. It is required of them before a designation, and enforced prospectively after." (*Id.* at 12-15.)

In reply, Plaintiff argues that under *BE & K Constr. Co. v. N.L.R.B.*, 536 U.S. 516 (2002), a lawsuit cannot be enjoined unless it is both objectively baseless and subjectively motivated by an improper purpose. (Doc. 40 at 1-3.) Plaintiff contends that A.R.S. § 12-3201 fails to satisfy this standard because no statutory provision "defines 'vexatious conduct' in terms that meet the two-pronged standard for both (1) objective baselessness and (2) a subjective improper purpose." (*Id.* at 3-4.) Next, Plaintiff contends the statute is

overbroad because it requires a "permanent blanket injunction as the universal remedy for any . . . infraction." (*Id.* at 4.) Finally, Plaintiff contends the statute is vague because "objective standards appear nowhere in the statute." (*Id.* at 4-6.)

### 2. Analysis

Plaintiff is unlikely to succeed on the merits of his challenge to A.R.S. § 12-3201. In *Ringgold-Lockhart v. County of Los Angeles*, 761 F.3d 1057 (9th Cir. 2014), the Ninth Circuit addressed "a federal court's authority to impose pre-filing restrictions against so-called vexatious litigants." *Id.* at 1060. The Ninth Circuit held that, "[o]ut of regard for the constitutional underpinnings of the right to court access, pre-filing orders should rarely be filed, and only if courts comply with certain procedural and substantive requirements. When district courts seek to impose pre-filing restrictions, they must: (1) give litigants notice and an opportunity to oppose the order before it is entered; (2) compile an adequate record for appellate review, including a listing of all the cases and motions that led the district court to conclude that a vexatious litigant order was needed; (3) make substantive findings of frivolousness or harassment; and (4) tailor the order narrowly so as to closely fit the specific vice encountered." *Id.* at 1062 (cleaned up). "The first and second of these requirements are procedural, while the latter two factors are substantive considerations that help the district court define who is, in fact, a 'vexatious litigant' and construct a remedy that will stop the litigant's abusive behavior while not unduly infringing the litigant's right to access the courts." *Id.* (cleaned up).

One of Plaintiff's contentions is that A.R.S. § 12-3201 fails to comply with the first procedural requirement under *Ringgold-Lockhart*—that is, the right to notice and an opportunity to be heard in opposition—because "the Statute contains no hearing provision." (Doc. 23 at 6.) But even assuming the requirements articulated in *Ringgold-Lockhart* also apply to state vexatious litigant statutes,[7] Plaintiff ignores that the Arizona

---

[7] *But see Sargent v. Cantil-Sakauye*, 812 F. App'x 682, 683 (9th Cir. 2020) (rejecting First Amendment facial challenge to California's vexatious litigant statute, because that challenge was foreclosed by existing Ninth Circuit law, and explaining that *Ringgold-Lockhart* was "not applicable" because it "addressed federal vexatious litigant rules and expressly did not consider the [California statute]").

1 courts have construed A.R.S. § 12-3201 as requiring notice and a hearing before a vexatious litigant order may be entered. *Madison v. Groseth*, 279 P.3d 633, 639 (Ariz. Ct. App. 2012) ("[T]he Ninth Circuit [has] set forth principles for courts to observe when ordering pre-filing restrictions . . . [including that] the litigant must be afforded notice and an opportunity to oppose the order. . . . We agree adherence to these principles is appropriate to ensure that a litigant's access to courts is not inappropriately infringed upon, and we therefore adopt them.") (citation omitted). Tellingly, Plaintiff received such a hearing before the entry of the vexatious litigant order against him. *Potter*, 2024 WL 368095 at *2 ("In February 2023, the court held an evidentiary hearing on the motion to designate Potter as a vexatious litigant.").

Another of Plaintiff's theories is that, as a matter of substantive due process as recognized in *Ringgold-Lockhart*, a vexatious litigant order can only issue upon findings that the litigant's claims were objectively baseless *and* that the litigant was motivated by an unlawful purpose—a standard that Plaintiff refers to as "two-pronged conditional requirement." (Doc. 23 at 1, 7.) Operating from that premise, Plaintiff argues that A.R.S. § 12-3201 is invalid because it only requires a finding of objective baselessness or an improper purpose. (*Id.*) This argument lacks merit because, as AG Mayes correctly notes, it rests on a misunderstanding of *Ringgold-Lockhart*. 761 F.3d at 1064 ("Before a district court issues a pre-filing injunction it is incumbent on the court to make substantive findings as to the frivolous *or* harassing nature of the litigant's actions. To determine whether the litigation is frivolous, district courts must look at both the number and content of the filings as indicia of the frivolousness of the litigant's claims. . . . *As an alternative to frivolousness*, the district court may make an alternative finding that the litigant's filings show a pattern of harassment.") (cleaned up) (emphases added).

Plaintiff also contends that A.R.S. § 12-3201 facially "violates the overbreadth doctrine" because it "functions as a blanket injunction with no narrowly tailored solution to remedy any specific problem before the court." (Doc. 23 at 10-11.) However, such "facial challenges [are] hard to win," as a law needs only a "plainly legitimate sweep" that

- 16 -

is not "substantially outweigh[ed]" by its unconstitutional applications. *Moody v. NetChoice, LLC*, 603 U.S. 707, 723-24 (2024). Thus, in *Wolfe v. George*, 486 F.3d 1120 (9th Cir. 2007), the Ninth Circuit rejected an overbreadth challenge to California's vexatious litigant statute, explaining that "[i]t is not overbroad, because there is no constitutional right to file frivolous litigation. Just as false statements are not immunized by the First Amendment right to freedom of speech, baseless litigation is not immunized by the First Amendment right to petition. Under the California statute, a vexatious litigant may file potentially meritorious claims not intended solely to harass or delay, so the courthouse doors are not closed to him." *Id.* at 1125 (cleaned up). This reasoning forecloses Plaintiff's overbreadth challenge to Arizona's statute, which has the same relevant features as California's statute. *See also Sargent v. Cantil-Sakauye*, 812 F. App'x 682, 683 (9th Cir. 2020) ("Sargent's argument that the CVLS [California vexatious litigant statute] violates the First Amendment is foreclosed by [*Wolfe*], which rejected the same facial constitutional challenges to the CVLS raised by Sargent. Sargent's argument that the CVLS impermissibly chills the First Amendment right to access the courts is meritless, given *Wolfe*'s holding that there is no constitutional right to file the sort of frivolous litigation barred by the CVLS. Because *Wolfe* stated that it was addressing an '[o]verbreadth' challenge, which by definition is a facial challenge, Sargent's argument that *Wolfe* addressed only an as-applied challenge also fails. We are therefore bound by the decision in *Wolfe*.") (citations omitted). As AG Mayes correctly argues in a related filing: "With its two judicial screening steps, the vast majority of the law's applications will prevent filings not protected by the First Amendment because there is no constitutional right to file frivolous litigation. Should the court mistakenly block a filing, the litigant may seek special action review. Therefore, most of its applications are within the law's plainly legitimate sweep and are neither aimed at, nor encompass, protected activity." (Doc. 38 at 12, citations omitted.)

Plaintiff also contends that A.R.S. § 12-3201 is unconstitutionally vague because "objective standards appear nowhere in the statute." (Doc. 23 at 11-12; Doc. 40 at 4-6.)

But this argument is once again foreclosed by *Wolfe*, which rejected a vagueness challenge to California's statute: "The California vexatious litigant statute is not unconstitutionally vague, because it gives fair notice to those who might violate the statute." *Wolfe*, 486 F.3d at 1125 (cleaned up). At any rate, Plaintiff's vagueness challenge falters on the principle that "[s]peculation about possible vagueness in hypothetical situations not before the Court will not support a facial attack on a statute when it is surely valid in the vast majority of its intended applications." *Tucson v. City of Seattle*, 91 F.4th 1318, 1330 (9th Cir. 2024) (cleaned up).

### C. **Summary As To The First *Winter* Factor**

It is unclear whether Plaintiff has standing to pursue the claim giving rise to his request for injunctive relief, both because A.R.S. § 12-3201 has already been enforced against him (which renders the very notion of a pre-enforcement challenge anomalous) and because it is questionable whether he can establish a credible threat of enforcement as to AG Mayes. And even if Plaintiff could somehow survive those jurisdictional hurdles, he has not shown a likelihood of success on the merits of his claim or even serious questions going to the merits of that claim. Given these conclusions, it is unnecessary to address the remaining *Winter* factors. *Roe*, 137 F.4th at 922 ("In the absence of serious questions going to the merits, the court need not consider the other factors.") (cleaned up).

Accordingly,

**IT IS ORDERED** that Plaintiff's motion for a temporary restraining order and preliminary injunction (Doc. 23) is **denied**.

Dated this 20th day of June, 2025.

_____
Dominic W. Lanza
United States District Judge