1  Phillip Potter
2  2301 N. 66th Street
   Scottsdale, Arizona 85257
3  Phone: 480.459.0310
   E-Mail: phillip.t.potter@gmail.com
4  Plaintiff
5  Pro Se

6

7

8              IN THE UNITED STATES DISTRICT COURT

9                  FOR THE DISTRICT OF ARIZONA

10

11

12  | Phillip Potter,          | No. 2:25-cv-00663-PHX-DWL |
13  |                  Plaintiff, |                         |
14  | v.                       | **RESPONSE TO ARIZONA ATTORNEY GENERAL'S MOTION TO DISMISS FIRST AMENDED COMPLAINT** |
15  | Robert Meza, et al.,     |                         |
16  |                  Defendants. | (Oral Argument Requested) |
17

18

19

20

21

22

23

24

25

26

"[T]he right[] ... to petition for a redress of grievances [is] among the most precious of the liberties safeguarded by the Bill of Rights." *United Mine Workers of America v. Illinois State Bar Ass'n.,* 389 U.S. 217, 222, 88 S.Ct. 353, 19 L.Ed.2d 426 (1967). And "[t]he right of access to the courts is indeed but one aspect of the right of petition". *California Motor Transport v. Trucking Unlimited*, 404 U.S. 508, 510 (1972). Yet, Plaintiff is subject to an A.R.S. § 12-3201(B) blanket injunction permanently enjoining him from filing court papers absent leave of the court in two suits separately judged to be "well-founded" – patent Petition Clause violations. *See Bill Johnson's Rests., Inc. v. N.L.R.B.*, 461 U.S. 731, 742-43 (1983) ("[W]ell-founded lawsuits ... may not be enjoined"); *Ringgold-Lockhart v. County of Los Angeles,* 761 F.3d 1057, 1062 (9th Cir. 2014) ("[P]re-filing restrictions, [] must: ... [be] tailor[ed] narrowly so as 'to closely fit the specific vice encountered'"); First Amended Complaint (Doc. 14, "FAC" at 59, 60, 79, 98). Critically, by operation of § 12-3201, Plaintiff is now being threatened with civil and criminal enforcement of two "unconstitutional act[s] of the state legislature [and has] go[ne] into a Federal court [], in a case involving a violation of the Federal Constitution, and [seeks to] obtain[] a judicial investigation of the problem[s], and pending its solution [to] obtain freedom from suits, civil or criminal, by a temporary injunction, and, if the question[s] be finally decided favorably to the contention of the [plaintiff], a permanent injunction restraining all such actions or proceedings." *Ex parte Young,* 209 U.S. 123, 149 (1908). The instant motion to dismiss (Doc. 38, "MTD") should be denied in full.

**I. There Is No Basis For Rule 12(b)(1) Dismissal**

    A. Standing

        1. Legal Standard

        "Article III standing ... 'requires a plaintiff to have [1] suffered an injury-in-fact,

1

[2] caused by the defendant's conduct, that [3] can be redressed by a favorable result.'" *Planned Parenthood Great Nw. v. Labrador*, 122 F.4th 825, 835 (9th Cir. 2024). "For pre-enforcement plaintiffs, the injury is the anticipated enforcement of the challenged statute in the future." *Peace Ranch, LLC v. Bonta,* 93 F.4th 482, 486-87 (9th Cir. 2024). Such an injury exists "if: '(1) [the plaintiff] ha[s] alleged 'an intention to engage in a course of conduct arguably affected with a constitutional interest;' (2) but the conduct is 'proscribed by a statute;' and (3) 'there exists a credible threat of prosecution'". *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159, 134 S.Ct. 2334, 189 L.Ed.2d 246 (2014).

        2. There Exists a Credible Threat of Prosecution

The Attorney General ("AG Mayes") concedes the first two *Driehaus* factors but contends Plaintiff falls short on the third. She reasons no credible threat exists because "the Secretary of State has no criminal enforcement powers" despite labeling Plaintiff an A.R.S. § 13-3601 perpetrator due to §§ 13-2921 and 12-3201 violations. (MTD, pp. 6-7).

        a. Legal Standard

The third *Driehaus* factor "is a 'quite forgiving' requirement that sets up only a 'low threshold'". *Antonyuk v. Chiumento*, 89 F.4th 271, 334 (2d Cir. 2023); *Isaacson v. Mayes*, 84 F.4th 1089, 1100 (9th Cir. 2023) ("Our cases have taken a broad view of this factor"). The "low threshold" is crossed when the threat from statutorily authorized enforcers is not "imaginary or wholly speculative". *Driehaus,* 573 U.S. at 160.[1]

---

[1] The Attorney General cites *Libertarian Party of Los Angeles Cnty. v. Bowen*, 709 F.3d 867 (9th Cir. 2013) as the pre-enforcement injury legal standard (MTD, pp. 6-9). *Bowen* traces back to *Thomas v. Anchorage Equal Rts. Comm'n,* 220 F.3d 1134, 1139 (9th Cir. 2000) (en banc) on injury "ripeness". "Though our circuit 'has toggled between' the *Thomas* and *Driehaus* formulations, we have 'adopt[ed] the Supreme Court's framework' in *Driehaus*". *Planned Parenthood Great Nw.*, 122 F.4th at 836. Likewise, *Driehaus* provides a superior framework to resolve this pre-enforcement injury dispute for the same reason as *Planned Parenthood* – the alleged credible threat is not "contingent upon the

### b. The Credible Threat Element Is Met

A credible threat is demonstrated when (1) the plaintiff has endured "past enforcement against the same conduct" including via judicial proceedings, *Id*; (2) "a challenged 'provision on its face proscribes' the conduct in which a plaintiff wishes to engage, and the state 'has not disavowed any intention of invoking the ... provision'", *U.S.* v. *Sup. Ct. of N.M.,* 839 F.3d 888, 901 (10th Cir. 2016); (3) any of the state's "enforcement authorities [, including private parties,] have communicated a specific warning or threat", *Tingley v. Ferguson,* 47 F.4th 1055, 1067 (9th Cir. 2022); or (4) sufficient "other circumstances" exist in First Amendment cases. *Id* at 1068; *see also LSO, Ltd. v. Stroh*, 205 F.3d 1146, 1154-55 (9th Cir. 2000) (When the threat "implicates First Amendment rights, the inquiry tilts dramatically toward a finding of standing").

Each criterion is met here. *First*, Plaintiff was previously judged to have violated § 12-3201. (FAC at 79). *Second*, he pleads § 12-3201(B), "on its face" proscribes filing court papers absent leave of court and, in a statutorily defined chain of causation, that AG Mayes can "invoke the provision" to prosecute per §§ 13-2921, 13-2810(A)(2), 13-3601, and/or 13-3602 (*see* Count One, FAC at 113-207; Count Two, FAC at 208-214). Saying she "is unlikely" to prosecute (MTD, p. 9) does not disavow the prosecution that Plaintiff "reasonably fears". (FAC at 92, 98). *Peace Ranch,* 93 F.4th at 490 (A credible threat determination "often rises or falls with the enforcing authority's willingness to disavow enforcement."). Also, AG Mayes cannot speak for all state officers and "private parties" who possess statutory authority to prosecute Plaintiff, although every potential enforcer must disavow before it can be said that "the state/government" disavows.[2] *See Planned*

---

[future] occurrence of unforeseeable events". *Thomas,* 220 F.3d at 1141. Here, Plaintiff has already been declared to have violated §§ 12-3201 and 13-2921. (FAC at 79, 92-97).
[2] Defendant Alane Ortega, as the legal agent of Plaintiff's ex-wife, would need to disavow

*Parenthood Great Nw.*, 122 F.4th at 838 (Standing confers when "county prosecutors d[o] not submit such declarations" disavowing enforcement); *Isaacson*, 84 F.4th at 1100-01 ("The combination of these potential threats – from the county attorneys, [] and private parties – satisfies the third prong of *Driehaus*"); *Tingley,* 47 F.4th at 1068 ("We have, however, interpreted *the government's* failure to disavow enforcement of the law as weighing in favor of standing."); *Cal. Trucking Ass'n v. Bonta,* 996 F.3d 644, 653 (9th Cir. 2021) ("Here, *the state*'s refusal to disavow enforcement ... is strong evidence that *the state* intends to enforce the law and that [plaintiffs] face a credible threat."). AG Mayes offers no evidence of comprehensive disavowal; hence, "the state/government" has not overcome the presumption of enforcement.[3] *Third*, Plaintiff pleads a credible threat based on "a specific warning or threat" from his ex-spouse and the Secretary of State (the "Secretary") who, as an executive officer with state constitutional authority to speak for the state, is not "some third party". (MTD, p. 6, 8; FAC at 92-95). *See* Ariz. Const. art. 5, § 1 ("The executive department shall consist of the ..., secretary of state, attorney general, ... "); A.R.S. § 41-121(A)(9) ("The Secretary of State shall: ... [p]erform other duties imposed on the secretary of state by law"); A.R.S. § 41-162(A) ("[T]he secretary of state shall establish the address confidentiality program to allow persons who have been subjected to domestic violence offenses, ... to keep their residence addresses confidential".). Pursuant to A.R.S. § 41-161, *et seq*., the Secretary has found that Plaintiff violated § 13-3601 based on conduct expressly traced to the Count One and Count Two challenged statutes. *See* A.R.S. §§ 41-161(5) and 41-163. Further, the

---

enforcement under A.R.S. § 13-3602(A). This private party has shown a strong intent to prosecute Plaintiff, even if she must fabricate facts. (FAC at 56-60, 83-98, 102).

[3] "Courts have not placed the burden on the plaintiff to show an intent by *the government* to enforce the law against it but rather presumed such intent in the absence of a disavowal by *the government*." *Antonyuk*, 89 F.4th at 334 (emphasis added).

Attorney General admits the Secretary has administrative enforcement powers (MTD, p. 3), including to find Plaintiff has, or has not, engaged in criminal conduct. *See* A.R.S. § 41-164(D) ("If the secretary of state determines that there is one or more grounds for canceling certification of a program participant ..., the secretary of state shall send notice of cancellation"). Actions taken by the ex-wife and Secretary, coupled with AG Mayes' refusal to disavow future state prosecution, constitute a specific warning or threat. *See Planned Parenthood Great Nw.*, 122 F.4th at 838 ("[T]argeting' of the plaintiff and the Attorney General's failure to disavow enforcement [a]re 'enough to substantiate the threat and satisfy the final *Driehaus* prong.'"). <u>Fourth</u>, at minimum, these events meet the "other circumstances" test in a First Amendment case. (FAC at 113-214).

### 3. Traceability And Redressability Are Met for Counts One and Two

AG Mayes concedes § 13-2921 is a criminal statute subject to her enforcement. But she contends the "vexatious litigant statute is, by its terms, not a criminal statute", and from this she argues that "any injury would not be fairly traceable to AG Mayes ... because county attorneys carry out the vast majority of criminal prosecutions in Arizona, [thus] enjoining AG Mayes would not 'likely' redress any injury." (MTD, pp. 7-10).

#### a. Legal Standard

The traceability "and 'redressability' components for standing overlap and are 'two facets of a single causation requirement.'" *Washington Env't Council v. Bellon,* 732 F.3d 1131, 1146 (9th Cir. 2013). A plaintiff satisfies traceability when the alleged "chain of causation" connecting the defendant's alleged unlawful acts to the plaintiff's imminent injuries goes beyond the "hypothetical or tenuous." *Nat'l Audubon Soc'y, Inc. v. Davis,* 307 F.3d 835, 849 (9th Cir.2002). "What matters is not the 'length of the chain of causation, but rather the plausibility of the links that comprise the chain.'" *Id*. On the

other hand, to demonstrate redressability, a plaintiff "need[s] only show a substantial likelihood that the relief sought would redress the injury." *M.S. v. Brown,* 902 F.3d 1076, 1083 (9th Cir. 2018). This burden is "relatively modest." *Bennett v. Spear,* 520 U.S. 154, 171, 117 S.Ct. 1154, 137 L.Ed.2d 281 (1997). "Partial amelioration of [any] harm" will suffice. *Matsumoto v. Labrador*, 122 F.4th 787, 802 (9th Cir. 2024).

        b. Traceability Is Met

Defeating any possible "hypothetical or tenuous" defense, a legislature "has the power to ... articulate chains of causation that will give rise to a case or controversy". *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 580, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) (Kennedy, A. concurring). Arizona legislators enacted an unattenuated statutory chain of causation whereby, once deemed "vexatious", by "operation" of A.R.S. § 12-3201 a litigant who files court papers absent leave of the court violates § 12-3201(B) and becomes subject to (1) civil and criminal "enforcement" per §§ 13-2810(A)(2), 13-2921, 13-3601, and 13-3602; and (2) administrative "enforcement" per §§ 12-3201(A) and 41-161, *et seq.*. *See Ariz. Right to Life Political Action Comm. v. Bayless*, 320 F.3d 1002, 1006 (9th Cir. 2003) ("[A] realistic danger of sustaining a direct injury [can be shown] as a result of the statute's operation *or* enforcement") (emphasis added). (FAC at 56-60, 76-98, 102-104, 110). Proving both "facets" of causation, if § 12-3201 does not operate for lack of constitutionality, then AG Mayes cannot enforce §§ 13-2810(A)(2), 13-2921, 13-3601, or 13-3602, and the Secretary cannot enforce § 41-161 *et seq.*. As AG Mayes notes (MTD, pp. 8-9), "there's no requirement that the defendant's conduct comprise the last [or first] link in the chain". *Mendia v. Garcia,* 768 F.3d 1009, 1012 (9th Cir. 2014). Dancing around the traceability issue, she eventually resorts to the bald assertion that Plaintiff pleads an "an indirect chain of statutes". (MTD, p. 8.). The Attorney General

gives no explanation how a legislatively defined, unattenuated chain of statutes causing injuries could be considered "indirect". That said, the actual question is whether the chain of causation is "plausible". *See Nat'l Audubon Soc'y.,* 307 F.3d at 849. The alleged chain is not only plausible, but it forced AG Mayes to declare "county attorneys" are "more likely" to prosecute Plaintiff – a meritless defense since "standing is not short-circuited by the fact that there are multiple authorized enforcers of the statute[s]". *Matsumoto*, 122 F.4th at 802. Traceability is met for Counts One and Two.

### c. Redressability Is Met

When AG Mayes says her office's "prosecution is unlikely", she tacitly admits she can prosecute for conduct proscribed by A.R.S. § 12-3201(B) as § 13-2810(A)(2) and/or § 13-2921 violations which are §§ 13-3601/3602 predicates. The frequency with which she might "carry out" those feared prosecutions relative to "county attorneys" has no bearing on the redressability analysis.[4] The question is not who speculatively is more "likely" to prosecute, but whether enjoining AG Mayes from enforcing either of the disputed Count One or Count Two statutes is "likely" to redress any imminent injury. Enjoining AG Mayes from enforcing A.R.S. § 12-3201(B) violations as any § 13-3601 predicate makes it more likely that Plaintiff will not suffer injuries such as incarceration or loss of access to his young son. Redressability is met for Count One and Count Two.

### B. Sovereign Immunity

AG Mayes claims sovereign immunity on the supposed basis that she "lacks a sufficiently direct connection to the vexatious litigant statute's enforcement scheme [and]

---

[4] The Attorney General's argument is better understood as an observation that Plaintiff might obtain fuller relief by including county attorneys as "proper defendants" under *Ex parte Young*. She argues, in essence, that Plaintiff should amend his complaint to add county attorneys as defendants. But adding defendants would not warrant her dismissal. *See e.g., Isaacson* and its defendants list which includes AG Mayes and county attorneys.

has no role in ... enforcing [§ 12-3201]" (MTD, pp. 10-11).  She has a role in the scheme.

### 1. Legal Standard

"[S]overeign immunity limits the grant of [federal] judicial authority".  *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 98 (1984).  "[A]n exception [exists] under *Ex parte Young* that allows 'actions for prospective declaratory or injunctive relief against state officers in their official capacities for their alleged violations of federal law,'".  *Matsumoto*, 122 F.4th at 802.  An attorney general is a "proper defendant" in pre-enforcement challenges if she has "some connection", *Id*, to the administrative, civil, or criminal enforcement of challenged statutes.  *See Doe v. DeWine*, 910 F.3d 842, 848-49 (6th Cir. 2018) (citing *Ex Parte Young*).  "[S]ome connection" presents "a low bar. ... [A] mere scintilla of enforcement" connection is sufficient.  *Matsumoto*, 122 F.4th at 802-04.

### 2. There Is No Sovereign Immunity

AG Mayes has far more than a "scintilla" of connection to the disputed statutes' collective "enforcement scheme".  Arizona's constitution and pertinent statutes (FAC at 95, 102-104, 121) give her the authority to "deputize" herself (1) to criminally prosecute Plaintiff for conduct deemed unlawful, including any perceived resistance to the § 12-3201(B) injunction[5] or § 13-2921 violation; and (2) to civilly prosecute him for that same conduct pursuant to §§ 13-3602 and 13-4433(D). (FAC at 103, 110.).  *See Planned Parenthood of Idaho, Inc. v. Wasden,* 376 F.3d 908, 919-20 (9th Cir. 2004).  There can be no genuine dispute that the Arizona "attorney general has the authority, at the attorney general's sole discretion, to prosecute a person for a criminal violation of this section'".  *Matsumoto*, 122 F.4th at 802.  "This statutorily [and constitutionally] defined

---

[5] *See* A.R.S. § 13-2810(A)(2) ("A person commits interfering with judicial proceedings if such person knowingly: ... [d]isobeys or resists the lawful order, process or other mandate of a court").  (FAC at 103).

8

enforcement role satisfies the plain meaning of *Ex parte Young*'s 'some connection' standard,". *Id*. And because there is no requirement that she be the "primary authority to enforce", *Id* at 802-04, her immunity defense failed when she admitted county attorneys can <u>also</u> prosecute Plaintiff. Her "role" in the § 12-3201 "enforcement scheme" defeats sovereign immunity regardless of whether her conduct serves as the first *Mendia* "link".

**II. There Is No Basis For Rule 12(b)(6) Dismissal**

A. Legal Standard

A Rule 12(b)(6) motion should be denied if a plaintiff alleges "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Courts are "to take as true all material allegations in the complaint and construe the complaint in favor of the plaintiff." *Arizona v. Yellen,* 34 F.4th 841, 849 (9th Cir. 2022). Furthermore, a "pro se litigant must be given leave to amend his or her complaint, and some notice of its deficiencies" before dismissal may be granted. *Cato v. United States*, 70 F.3d 1103, 1106 (9th Cir. 1995).

B. Plaintiff Sufficiently Pleads Counts One and Two

AG Mayes declares bottom-line positions that A.R.S. § 12-3201 "does not facially violate the First Amendment" and § 13-2921 is not "void for vagueness". (MTD, pp. 11, 16.). To arrive at those far-reaching conclusions, she improperly asks the Court to decide disputes of applicable law, statutory interpretation, and constitutional interpretation in her favor at the pleading stage. *See Lynch v. Rank,* 604 F. Supp. 30, 39 (N.D. Cal.), *aff'd,* 747 F.2d 528 (9th Cir. 1984) (Disputes of statutory interpretation and applicable canons of statutory construction are not proper subjects for Rule 12(b)(6) motions on the pleadings); *Moody v. NetChoice, LLC*, 144 S. Ct. 2383, 2398-99 (2024) (District courts "must" develop a sufficient factual record on First Amendment overbreadth claims).

### 1. Count One

#### a. A.R.S. § 12-3201 Facially Violates the Petition Clause

Facial challenges for overbreadth require courts to develop a full factual record to establish a disputed statute's "plainly legitimate sweep", and if any such sweep exists, to determine whether "a substantial number of [the law's] applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep." *Id*. (FAC at 123.). "The first step in the proper facial analysis is to assess the state laws' scope. What activities, by what actors, do the laws prohibit or otherwise regulate? ... The next order of business is to decide which of the laws' applications violate the First Amendment, and to measure them against the rest. ... [District] courts *must* explore the law's full range of applications – the constitutionally impermissible and permissible both – and compare the two sets. ... [Otherwise,] the record is underdeveloped". *Id* (emphasis added).

As to that first step, the parties agree the scope of A.R.S. § 12-3201 primarily prohibits pro se litigants from filing suits that are *either* objectively baseless *or* filed for an improper purpose, in "disjunctive" fashion. (MTD, p. 14; FAC at 125-138).

Now the Court "must" tend to the "next order of business [which] is to decide which of the laws' applications violate the First Amendment". *Id*. This Circuit outlined the "scope of the Petition Clause" and its specific "right of access to the courts" in *Sosa v. DIRECTV, Inc.*, 437 F.3d 923 (9th Cir. 2006). Accordingly, the First Amendment is violated where § 12-3201's "applications" of "vexatious" petitioning, as defined by § 12-3201(E)(1)(a)-(f), do not also constitute "sham" petitioning as defined by "*Professional Real Estate Investors, Inc. v. Columbia Pictures Industries, Inc.,* 508 U.S. 49, 113 S.Ct. 1920, 123 L.Ed.2d 611 (1993) ['*PRE II*'] ... PRE II recognized the applicability of the first aspect of the breathing space principle when it defined the *Noerr-Pennington*

doctrine's 'sham litigation' exception as requiring *both* objective baselessness and an improper motive." *Sosa*, 437 F.3d at 930-31.  For ultimate Petition Clause clarity, in *conjunctive* fashion, "[t]he two parts of the [*PRE II*] test operate in succession: Only if the suit is found to be objectively baseless does the court proceed to examine the litigant's subjective intent." *USS-POSCO Indus. v. Contra Costa Cnty. Bldg. & Const. Trades Council, AFL-CIO*, 31 F.3d 800, 810-11 (9th Cir. 1994).  The *PRE II* "definition *over-protects* baseless petitions so as to ensure citizens may enjoy *the right of access to the courts without fear of prosecution*." *Sosa*, 437 F.3d at 934 (emphasis added).

In *Sosa*, the Ninth Circuit formally (1) granted *Noerr-Pennington* immunity to all petitioning subject only to "the sham litigation exception", *Id* at 938; and (2) established that "[t]he *Noerr-Pennington* doctrine stands for a generic rule of statutory construction, applicable to *any* statutory interpretation that could implicate the rights protected by the Petition Clause." *Id* at 931 (emphasis added).  Consequently, "in this Circuit, there is a three-step test to determine whether conduct that allegedly violates a statute is immunized from liability [and culpability].  Under the test, the court asks: '(1) whether the lawsuit imposes a burden on petitioning rights,' '(2) *whether the alleged activities constitute protected petitioning activity,' in other words, 'neither the Petition Clause nor the Noerr-Pennington doctrine protects sham petitions,'* and '(3) whether the statute at issue may be construed to [avoid] that burden.  If the answer at each step is 'yes,' then a defendant's conduct is immunized under *Noerr-Pennington*.'" *Pyankovska v. Abid*, 65 F.4th 1067, 1077 (9th Cir. 2023) (emphasis added).  This "test" recognizes that the bright line scope of the Petition Clause's right of free access to the courts covers *all* "petitioning activity" *not* subject to the sham litigation exception, and sets conditions for the *Moody* analysis.

Recognizing her dilemma, AG Mayes simply rejects *Sosa* with no justification

beyond a truncated and misread passage from *Bill Johnson's Rests*. – "baseless litigation is not immunized by the First Amendment right to petition" (MTD, p. 1).  Clarifying that exact passage, the Supreme Court expressly held "in *Bill Johnson's* that [an adjudicative body] could enjoin baseless retaliatory [i.e., baseless *and* retaliatory] suits because they fell outside of the First Amendment and thus were analogous to 'false statements.'  We concluded that '[j]ust as false statements are not immunized by the First Amendment right to freedom of speech, *baseless litigation is not immunized by the First Amendment right to petition*.'  While this analogy is helpful, it does *not* suggest that the class of baseless litigation is *completely* unprotected: *At most*, it indicates such litigation should be unprotected 'just as' false statements are.  And while false statements may be unprotected for their own sake, '[t]he First Amendment *requires* that we protect some falsehood in order to protect *speech that matters*.'  ([N]oting the need to protect some falsehoods to ensure that 'the freedoms of speech and press [receive] that 'breathing space' essential to their fruitful exercise'). ... It is at least consistent with these 'breathing space' principles that we have *never* held that the *entire* class of objectively baseless litigation *may be enjoined or declared unlawful* even though such suits may advance no First Amendment interests of their own.  Instead, in cases like *Bill Johnson's* and [*PRE II*]*,* our holdings *limited regulation* to suits that were *both* objectively baseless *and* subjectively motivated by an unlawful purpose." *BE & K Constr. Co. v. N.L.R.B.,* 536 U.S. 516, 530-31, 122 S.Ct. 2390, 153 L.Ed.2d 499 (2002) (Italics with underline emphasis added).  At bottom, the Supreme Court addressed, and dispensed with, AG Mayes' attempt to redefine the sham litigation exception with a "disjunctive" standard.

       The Attorney General also fails to explain what legal principle could ever permit A.R.S. § 12-3201 to evade "[t]he *Noerr-Pennington* doctrine [which is] applicable to *any*

statutory interpretation that could implicate the rights protected by the Petition Clause." *Sosa*, 437 F.3d at 931-32 (emphasis added). Again, in this Circuit, the Petition Clause "over-protects" all petitioning activities except "sham litigation". *Id* at 934. *Ringgold* did not abrogate *Sosa*. (MTD, pp. 13-14). To the contrary, when properly read, *Ringgold* aligns with *Sosa* and the *Noerr-Pennington* doctrine such that § 12-3201 violates the First Amendment in every application because "[n]o A.R.S. § 12-3201(E)(1)(a)-(f) provision meets the Ninth Circuit's heightened standard for vexatious litigant injunctions ... requiring <u>both</u> serial objectively baseless litigation <u>and</u> an improper purpose in the form of either an 'inordinate' number of 'frivolous' suits or a demonstrated 'pattern of harassment' involving common defendants and claims." (FAC at 139-187). In sum, AG Mayes' arguments are fatally flawed because (1) the Supreme Court and this Circuit foreclosed her interpretation of the *Bill Johnson's Rests.* phrase upon which she relies; and (2) *Ringgold* must be read to be consistent with *Sosa*, the Petition Clause's right of access to the courts, and the *Noerr-Pennington* doctrine's sham litigation exception.[6]

---

[6] "[W]e identified three circumstances in which the sham litigation exception might apply: first, where the lawsuit is objectively baseless <u>and</u> the defendant's motive in bringing it was unlawful; second, where the conduct involves a series of lawsuits 'brought pursuant to a policy of starting legal proceedings without regard to the merits' <u>and</u> for an unlawful purpose; and third, if the allegedly unlawful conduct 'consists of making intentional misrepresentations to the court, litigation can be deemed a sham if 'a party's knowing fraud upon, or its intentional misrepresentations to, the court deprive the litigation of its legitimacy.'" *Sosa,* 437 F.3d at 938 (emphasis added). *Ringgold* held litigants cannot be designated vexatious, and their lawsuits enjoined, unless they (1) engage in "a pattern of harassment" against common defendants through baseless lawsuits, or (2) file a "series" of "frivolous" suits where the number of baseless lawsuits is so "inordinate" that a court can only infer an improper purpose. (FAC at 136-138.). Regarding this first "*Ringgold* Standard*", "[t]o establish that serial objectively baseless litigation is of a 'harassing nature', every suit in a long series of suits must found to be both objectively baseless and filed for an improper purpose, thus demonstrating a heightened "pattern of harassment" affecting common defendants. *Ringgold*, 761 F.3d at 1060-64." (FAC at 137). The "alternative" second "*Ringgold* Standard" holds that "[i]n the highly unusual alternative,

The overbreadth dispute boils down to what legal standard defines the right of access to the courts. AG Mayes asks the Court to adopt a disjunctive standard that the Supreme Court rejected and contradicts *Sosa*. Plaintiff asks the Court to accept the conjunctive standard that the Supreme Court affirmed, and this Circuit adopted in *Sosa*. *Fidelity Exploration and Prod. Co. v. U.S.,* 506 F.3d 1182, 1186 (9th Cir.2007) (Courts "must follow the Supreme Court precedent that directly controls"); *Human Life of Wash., Inc. v. Brumsickle,* 624 F.3d 990, 1016 (9th Cir.2010) ("[W]e are bound to follow circuit precedent"). He alleges "the improper purpose 'frivolous or harassing' consideration does not come into play unless the current litigation is first determined to be 'objectively baseless'", (FAC at 135), and that the legal definition of "harassment" only implicates suits filed for "no legitimate purpose" (i.e., objectively baseless suits). (FAC at 203). He will argue in post-pleading proceedings that *Sosa* applies, and *Ringgold* supports *Sosa*. AG Mayes must somehow (1) square her contrary position with *PRE II*, *BE & K Constr.*, *Sosa*, and *Ringgold*; and (2) overcome *Noerr-Pennington*, the Petition Clause, and the Supremacy Clause ("This Constitution, and the Laws of the United States ..., shall be the supreme Law of the Land") – quite a tall task since each precludes state legislators from enacting laws that abridge petitioning rights or in any way threaten access to the courts.

### b. A.R.S. § 12-3201(E) Facially Violates the Vagueness Doctrine

Again, vexatious designations are permitted in the face of an "inordinate number" of "frivolous" suits indicating a "series" because such petitioning conduct also inherently demonstrates an improper purpose. (FAC at 138, n. 38.). In civil tort cases, this test has

---

serial objectively baseless litigation of a 'frivolous ... nature' exists when records review demonstrates an 'inordinate' number of finalized frivolous suits" which can only infer an improper purpose. (FAC at 138, n. 38). When read properly, the two *Ringgold* tests for vexatious litigation (FAC at 124-139, 213, 221, 230-233) align with the first two *Noerr-Pennington* tests for the "sham litigation" exception. *Sosa,* 437 F.3d at 938; Affidavit.

"relied on a fact pattern that involved twenty-nine lawsuits. Perhaps due to the rarity of that number, its infrequent application in our case law is a feature rather than a bug." *Relevant Grp., LLC v. Nourmand,* 116 F.4th 917, 931 (9th Cir. 2024). In the vexatious context, mere "litigiousness alone is not enough". *Ringgold,* 761 F.3d at 1064. To pass that "inordinate" threshold and affirm an actionable frivolous "series", "thirty-five actions" have been needed. *Id.* This "alternative" test is quantitative but § 12-3201 lacks any such objective standard, making the provision facially vague. (FAC at 195-207). AG Mayes' defense is that the need for objectivity is a "quibble". (MTD, p. 16.). But "[w]hen First Amendment freedoms are at stake, courts apply the vagueness analysis more strictly, requiring statutes to provide a greater degree of specificity and clarity than would be necessary under ordinary due process principles." *Cal. Teachers Ass'n v. State Bd. of Educ.,* 271 F.3d 1141, 1150 (9th Cir. 2001). This dispute requires further adjudication.

<u>c. A.R.S. § 12-3201(B) Facially Violates the Overbreadth Doctrine</u>

A.R.S. § 12-3201(B) mandates a permanent blanket injunction for "any" § 12-3201(E)(1)(a)-(f) infraction. But even if any § 12-3201(E) provision could be construed to be constitutional, the resulting statutory injunction would be unconstitutional since any such provision has been deemed "overbroad [if] it is designed to prevent [a plaintiff] from filing any complaint in any case without leave of court". *Moy v. U.S.*, 906 F.2d 467, 471 (9th Cir. 1990). (FAC at 188-192). Facing this decided issue of law, AG Mayes points to rules of special action and asks the Court to rely on Arizona's appellate judges to fix trial errors. (MTD, p. 12). She misses the obvious legal fallacy – every judge would use the statute's "disjunctive" plain language to render unconstitutional decisions.

<u>d. A.R.S. § 12-3201 Is Facially Vague for Lack of a Hearing Requirement</u>

The Attorney General argues that a civil statute admittedly implicating the Petition

Clause, but lacking any hearing language, somehow provides adequate procedural due process. (MTD, pp. 14-15.). Again, she is free to argue in post-pleading proceedings what canons of statutory construction permit such a conclusion, but her defense is not grounds for dismissal at the pleading stage. The Court must analyze the statute for vagueness to determine whether the state's judiciary can fill such a large legislative gap. (FAC at 193).

### 2. Count Two

The current iteration of A.R.S. § 13-2921 "was not enacted without controversy". *McCormack v. Hiedeman,* 694 F.3d 1022 (9th Cir.2012). The Court should take judicial notice[7] that (1) the Arizona Legislature revised that statute during the 2022 legislative session, eliminated intent as an element while maintaining the A.R.S. § 13-2921(E) "harassment" definition which has no "saving clause" (FAC at 202-214), and on the day Democrat Senator Martin Quezada voted against the 2022 revision, he explained on the chamber floor that § 13-2921 "violates the First Amendment"[8]; and (2) Republican Senator Alexander Kolodin sponsored significant revisions in the 2025 session because the statute "violates the First Amendment".[9] Like Plaintiff, those two attorney legislators from both sides of the political aisle consider the current version of A.R.S. § 13-2921 Harassment to be facially unconstitutional. Accordingly, Plaintiff sufficiently alleges state judges and prosecutors have been forced to engage in "arbitrary and discriminatory enforcement" of this challenged statute which "abuts against First Amendment freedoms". (FAC at 123, 202-214). A.R.S. § 13-2921 is facially vague on the pleadings.

## CONCLUSION

The Petition Clause safeguards free "access to the courts". Giving life to that

---

[7] *See Lee v. City of Los Angeles,* 250 F.3d 668, 689 (9th Cir. 2001).
[8] *See* https://apps.azleg.gov/BillStatus/BillOverview/77621.
[9] *See* https://apps.azleg.gov/BillStatus/BillOverview/81701?SessionId=129.

16

"precious" right, the Ninth Circuit immunizes all petitioning activities pursuant to the *Noerr-Pennington* doctrine, subject only to the "sham litigation exception". *See Sosa*. Yet, A.R.S. § 12-3201 permits litigation to be enjoined in blanket fashion, and litigants to be deemed "vexatious", based on petitioning that AG Mayes acknowledges does not meet this Circuit's settled definition of "sham litigation". In other words, § 12-3201 punishes a heavy volume of petitioning activity which warrants First Amendment protection. By operation of that statute, AG Mayes belongs to a combination of state officer and private party enforcers who threaten Plaintiff with civil and criminal prosecution for A.R.S. § 12-3201(B) violations as § 13-3601 Domestic Violence predicates, including § 13-2921 Harassment which is also void for vagueness. Pre-enforcement injuries are traceable to the Attorney General's alleged misconduct through an unattenuated, legislatively defined chain of causation. And because Plaintiff seeks redressable relief, he has standing. AG Mayes also tacitly admits her *Ex Parte Young* connection to enforcement of the disputed statutes, making her a "proper defendant" and giving the Court Article III jurisdiction. Plaintiff pleads sufficient facts to bring plausible First Amendment facial challenges to § 12-3201 in Count One and to § 13-2921 in Count Two. Count One's overbreadth claim turns largely on which legal standard applies to the *Moody* analysis. Under the Ninth Circuit's ubiquitous embrace of the *Noerr-Pennington* doctrine's conjunctive "sham litigation exception" standard, the vexatious litigant statute has no "plainly legitimate sweep". Thus, it is unconstitutional in every application. In opposition, AG Mayes takes the position that the Court should apply a disjunctive standard which the Supreme Court expressly rejected, that misreads *Ringgold*, and that conflicts with *Noerr-Pennington* and *Sosa*. The parties have genuine disputes of fact and law requiring adjudication on a fully developed record. There is no basis for Rule 12(b)(1) or (6) dismissal.

DATED this 3rd day of July 2025.

By: <u>//s//</u>
Phillip Potter
Plaintiff
Pro Se