**KRISTIN K. MAYES**
**Attorney General**
(Firm State Bar No. 14000)

Hayleigh S. Crawford (Bar No. 032326)
Joshua A. Katz (Bar No. 039449)
Office of the Arizona Attorney General
2005 N. Central Avenue
Phoenix, AZ 85004-1592
(602) 542-3333
Hayleigh.Crawford@azag.gov
Joshua.Katz@azag.gov
ACL@azag.gov

*Attorneys for Defendant Arizona Attorney General Kristin K. Mayes*

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Philip Potter, individually and on behalf of all others similarly situated<br><br>Plaintiffs,<br>v.<br><br>Robert Meza, et al.,<br><br>Defendants. | No. CV25-00663-PHX-DWL<br><br>**REPLY IN SUPPORT OF AG MAYES'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT** |

After Plaintiff lost a public records case, the Maricopa County Superior Court designated him a vexatious litigant under A.R.S. § 12-3201 and imposed a prefiling requirement. In addition to his conduct in that litigation, the court considered his broader pattern of repetitive and meritless litigation. On appeal, Plaintiff challenged both the appropriateness of his designation under the law and the law's constitutionality. The Arizona court of appeals affirmed. Undeterred, Plaintiff brought this sprawling case that includes First and Fourteenth Amendment facial challenges to the vexatious litigant statute and, derivatively, to A.R.S. § 13-2921, a statute criminalizing harassment.

But the First Amendment does not guarantee unrestricted access to courts, particularly not for abusive filings. *See Bill Johnson's Rests., Inc. v. N.L.R.B.*, 461 U.S. 731, 743 (1983) ("[B]aseless litigation is not immunized by the First Amendment right to petition."). As a result, this case is without merit. For that reason, and because Plaintiff lacks standing and AG Mayes enjoys sovereign immunity, AG Mayes moved to dismiss the First Amended Complaint as to her (Counts I and II). Plaintiff's Response has only confirmed that the Court should grant the motion.

## ARGUMENT

**I.  Plaintiff has not established the Court's subject-matter jurisdiction on Counts I (vexatious litigant statute) or II (harassment statute).**

While the Court must treat the Complaint's factual allegations as true, its legal allegations are not entitled to that treatment. *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014) ("The district court resolves a facial attack as it would a motion to dismiss under Rule 12(b)(6)"); *see Kwan v. SanMedica Int'l*, 854 F.3d 1088, 1096 (9th Cir. 2017) ("[c]onclusory allegations of law ... are insufficient to avoid dismissal" under Rule 12(b)(6) (cleaned up)). Presumptively, "a cause lies outside [the Court's] limited jurisdiction" until the "party asserting jurisdiction" establishes otherwise. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).

A. **Plaintiff lacks Article III standing.**

"Article III standing is a necessary component of subject matter jurisdiction." *In re Palmdale Hills Prop., LLC*, 654 F.3d 868, 873 (9th Cir. 2011). To meet his burden of establishing standing, Plaintiff must demonstrate a concrete, particularized injury that is actual or imminent, fairly traceable to the challenged action, and redressable by a favorable court decision. *Clapper v. Amnesty Int'l*, 568 U.S. 398, 409 (2013). "[I]n cases with multiple defendants," a plaintiff must show "standing as against each defendant." *Sullivan v. Ferguson*, 636 F. Supp. 3d 1276, 1283 (W.D. Wash. 2022). Plaintiff has not.

1. **Plaintiff's Response still does not show an injury in fact.**

Plaintiff relies on a pre-enforcement theory to supply his injury in fact. As the challenged statute is not a criminal law, he relies instead on other statutes, such as A.R.S. §§ 13-2810(A)(2) (interference with judicial proceedings) and 13-2921(A) (harassment) (hence, Count II challenging this statute).[1] Pltf's Resp. to AG's Mot. to Dismiss, Dkt. 49, at 4.[2] But none support his theory of standing.

To establish pre-enforcement standing, Plaintiff must show: (1) that "he has alleged an intention to engage in a course of conduct arguably affected with a constitutional interest"; (2) "but proscribed by a statute"; and (3) that "there exists a credible threat of prosecution thereunder." *See Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 160 (2014) (cleaned up); *see also Arizona v. Yellen*, 34 F.4th 841, 849 (9th Cir. 2022). "[T]he threat of future enforcement must be substantial." *Peace Ranch, LLC v. Bonta*, 93 F.4th 482, 487 (9th Cir. 2024) (cleaned up).

Expanding on the third prong, the Ninth Circuit has "developed a framework to evaluate whether a claimed threat of enforcement is genuine enough to confer standing." *Yellen*, 34 F.4th at 850. Under that framework, courts consider: (1) whether the plaintiff has a "concrete plan" to violate the law, (2) whether the enforcement authority has issued

---

[1] Because Plaintiff's challenge to the harassment statute is derivative of his challenge to the vexatious litigant statute, the standing analysis is the same for both counts.

[2] Citations to court filings use the ECF pagination, not the document's internal pagination.

2

a "specific warning or threat," and (3) whether there is a "history of past prosecution or enforcement under the challenged statute." *Libertarian Party of Los Angeles Cnty. v. Bowen*, 709 F.3d 867, 870 (9th Cir. 2013). Although the Court (Dkt. 47, at 10) found that Plaintiff likely satisfies the first factor, his failure to satisfy the latter two is weightier.

This framework survived the Circuit's decision in *Peace Ranch* adopting the *Driehaus* approach; both *Peace Ranch* and the later *Planned Parenthood Great Nw., Haw., Alaska, Ind., Ky. v. Labrador*, 122 F.4th 825, 836 (9th Cir. 2024) cite *Yellen*'s use of this third-prong framework. *See* 93 F.4th at 487; 122 F.4th at 836.

### i.   Absence of a specific warning or threat of prosecution.

The warning or threat factor concerns "whether the authorities in charge of enforcing the challenged law have communicated a specific warning or threat to initiate proceedings." *Tingley v. Ferguson*, 47 F.4th 1055, 1068 (9th Cir. 2022) (citation and quotation marks omitted). Plaintiff has not alleged that AG Mayes or any other authority has actually threatened him with prosecution under A.R.S. §§ 13-2810 (interference with judicial proceedings), 13-2921 (harassment), or 13-3601 (domestic violence).

Instead, Plaintiff (at 3–6) relies on the Secretary of State's acceptance of his ex-wife into the Address Confidentiality Program to show a threat. But the Secretary has no criminal enforcement powers. *See* A.R.S. §§ 41-121 to -121.02. The existence of evidence against Plaintiff does not equate to a threat of prosecution.

Plaintiff suggests further (at 6) that standing is supported by AG Mayes's refusal to disavow future enforcement. The Court has suggested he might be right as to A.R.S. §§ 13-2810(A)(2) and 13-2921(A). Dkt. 47 at 11.

The case law does not yield that conclusion. For starters, the Ninth Circuit has made clear that the absence of a disavowal, standing alone, does not establish jurisdiction. *See LSO, Ltd. v. Stroh*, 205 F.3d 1146, 1155 (9th Cir. 2000) ("[W]e cannot go so far as to say that a plaintiff has standing whenever the Government refuses to rule out use of the challenged provision."). And "[i]t is well settled that evidence of past instances of

enforcement is important in a standing inquiry." *Id*. Thus, the *absence* of past enforcement must also be important. *See San Diego Cnty. Gun Rights Comm. v. Reno*, 98 F.3d 1121, 1128 (9th Cir. 1996) ("absence of any past prosecutions … undercuts" a "genuine threat of prosecution"), *overruled in part on other grounds*, *District of Columbia v. Heller*, 554 U.S. 570 (2008). And that absence is especially important where, as here, statutes have been in place for many years.

Of course, "[i]n challenging a *new* law whose history of enforcement is *negligible or nonexistent* ... a 'failure to disavow enforcement' is sufficient to establish a credible threat of prosecution." *Matsumoto v. Labrador*, 122 F.4th 787, 797 (9th Cir. 2024) (emphases added) (quoting *Tingley*, 47 F.4th at 1068). But that is nowhere near what we have here. Sections 13-2810, 12-3201, and 13-2921 have been on the books since 1977, 2014, and 1992, respectively.[3] By contrast, the law at issue in *Matsumoto* was "less than six months old." 122 F.4th at 798. Enough time has lapsed to rely on history.

### ii. No history of comparable prosecutions.

Relatedly, Plaintiff (at 3–6) also fails to establish a history of past enforcement under the relevant, long-lived statutes for the conduct at issue—filing documents in violation of a vexatious litigant order. As the Court observed, "it is irrelevant that AG Mayes may have, in general, pursued past prosecutions" under the relevant statutes; Plaintiff must show prosecutions "where the underlying conduct ... was the unauthorized filing of court documents in violation of a vexatious litigant order." Dkt. 47 at 12.

The absence of both a specific threat of enforcement and a history of enforcement outweigh Plaintiff's possession of a plan to violate his prefiling order. Plaintiff has not established a credible fear of prosecution and lacks pre-enforcement standing.

### 2. The Response fails to trace any injury to AG Mayes.

Even if Plaintiff could establish injury in fact, he fails to show that any injury is fairly traceable to AG Mayes. Traceability requires a causal connection between the

---

[3] Section 13-2810 is unmodified. Section 12-3201 was amended in 2015. Section 13-2921 has been amended several times, the latest in 2022.

4

defendant's conduct and the plaintiff's injury, not the conduct of "some third party not before the court." *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (cleaned up).

But Plaintiff's filing restrictions were imposed by a court, not AG Mayes, who played no role in Plaintiff's designation. And, if he were to file papers in violation of the order, it is the court that would enforce them in the first instance. Plaintiff's opposition confirms that he still cannot show "a reasonable expectation that [AG Mayes] might bring an enforcement action against" him. *Ariz. Contractors Ass'n v. Napolitano*, No. 07-1355-PHX-NVW, 07-1684-PHX-NVW, 2007 WL 9723967, at *9 (Dec. 10, 2007).

Plaintiff (at 6–7) misapprehends his burden in pointing out that a chain of causation may be long and need only be plausible. The problem here is the lack of a "direct" chain (and in fact, any chain at all) linking AG Mayes to any act or omission relevant to Plaintiff. *See Skyline Wesleyan Church v. Cal. Dep't of Managed Health Care*, 968 F.3d 738, 748 (9th Cir. 2020). His proposed chain, instead, begins with his vexatious actions, proceeds to a motion and decision by others, and may someday (he says) reach some sort of enforcement action by someone. *Cf. Clapper*, 568 U.S. at 414 ("speculation about the decisions of independent actors" is insufficient).

As AG Mayes previously explained (MTD, Dkt. 38, at 9–10), all Plaintiff has to go on to reach her is a general supervisory power over county attorneys and that AG Mayes may generally take or assist in enforcement actions "at the direction of the governor" or "if deemed necessary by" AG Mayes. A.R.S. § 41-193(A)(2), (4), (5). But general supervisory power is insufficient. *See S. Pac. Transp. Co. v. Brown*, 651 F.2d 613, 614–15 (9th Cir. 1980) ("The attorney general's power to direct and advise does not make the alleged injury fairly traceable to his action."). And Plaintiff makes no effort to show that AG Mayes's involvement in such a prosecution would be "directed" or "deemed necessary."

Plaintiff responds that it does not matter who would prosecute him, because "standing is not short-circuited by the fact that there are multiple authorized enforcers of the statute." Dkt. 49, at 7 (quoting *Matsumoto*, 122 F.4th at 798). The Court suggests he

may be right. Dkt. 47, at 12 n.5. But this fails for three reasons. First, *Matsumoto* was discussing injury in fact, not traceability. Second, as discussed above, Plaintiff has failed to show his chain terminates in *any* enforcer. Third, *Matsumoto* involved multiple officials with direct enforcement authority over a criminal statute; each was a "vessel[] through which the statute's effects—by its own terms—flow[ed]." 122 F.4th at 799. AG Mayes is not such a vessel; the statute's "own terms" make no mention of her, and any enforcement powers she may have would be indirect. This case is thus more like *Clapper*, where standing would have required the Court to speculate about decisions by "independent actors," here the courts and county attorneys. *See* 568 U.S. at 414.

Accordingly, Plaintiff has not shown that his alleged injury would be fairly traceable to AG Mayes.

        **3.**      **The Response fails to explain how an injunction against AG Mayes would redress any injury.**

Plaintiff also cannot show that any relief against AG Mayes would "likely" redress his alleged injuries. *See Lujan*, 504 U.S. at 561 ("It must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" (citations omitted)). Here, as explained in the motion to dismiss (at 9–10), enjoining AG Mayes would not prevent courts from designating litigants vexatious or from refusing to receive papers from vexatious litigants without leave, nor would it prevent any (unlikely) prosecutions by county attorneys under either challenged statute.

Plaintiff's assertion (at 8) that AG Mayes "tacitly admits" her authority by calling the prosecution "unlikely" misstates the issue. The relevant question is not whether prosecution is theoretically possible, but whether enjoining AG Mayes would likely provide Plaintiff the relief he seeks. It would not.

    **B.**    **The Response does not resolve the sovereign immunity issues.**

As AG Mayes previously explained (MTD at 11–12), she is not a proper defendant as to Count I under *Ex Parte Young*. Sovereign immunity generally bars suits against a state. *See generally* U.S. Const. amend. 11. A plaintiff may challenge the

6

constitutionality of a statute, though, by seeking injunctive relief against a state officer. *Green v. Mansour*, 474 U.S. 64, 68 (1985); *see Ex Parte Young*, 209 U.S. 123, 159–60 (1908). But that officer must have "some connection" to the law's enforcement. *Matsumoto*, 122 F.4th at 802. Plaintiff's only response (at 8–9) to AG Mayes's argument that she lacks such a connection is to gesture at general prosecutorial and supervisory powers, despite her powers being limited to those granted by statute. *See* Ariz. Const., art. 5, § 9 ("The powers and duties of … attorney general … shall be as prescribed by law."). This fails, much as it does for standing. *See Coal. to Defend Affirmative Action v. Brown*, 674 F.3d 1128, 1134 (9th Cir. 2012) ("a generalized duty to enforce state law" does not establish the requisite connection to enforcement).

Plaintiff's citation (at 9) to *Matsumoto* for the proposition that the Arizona Attorney General "has the authority … to prosecute a person for a criminal violation of this section" fares no better. 122 F.4th at 802. *Matsumoto* involved a statute that explicitly authorized the attorney general to initiate enforcement. *Id.* That is not the case here. Similarly, *Planned Parenthood of Idaho, Inc. v. Wasden*, 376 F.3d 908, 919–20 (9th Cir. 2004) dealt with an attorney general empowered to "do every act that the county attorney can perform." *Id.* at 920. And the law in question explicitly provided for civil and criminal penalties. *See* Idaho Code § 18-605, *held unconstitutional on other grounds*, *McCormack v. Hiedeman*, 900 F. Supp. 2d 1128 (D. Idaho 2015). As noted, AG Mayes has only those powers given her by statute, and the vexatious litigant statute does not provide for any penalties beyond a prefiling requirement

Nor is Plaintiff's theory (at 9) that AG Mayes might theoretically prosecute him under other statutes a "fairly direct" connection to § 12-3201's enforcement. *See Coal. to Defend Affirmative Action*, 674 F.3d at 1134 (citation omitted).

**II.     Plaintiff fails to state a claim for which he is entitled to relief.**

In deciding a Fed. R. Civ. P. 12(b)(6) motion, allegations of material fact are taken as true and viewed favorably to the nonmoving party, while "conclusory allegations of law and unwarranted inferences" are not. *Kwan*, 854 F.3d at 1096 (cleaned up). A court

7

must dismiss once shown either the "lack of a cognizable legal theory" or the "absence of sufficient facts alleged under a cognizable legal theory." *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121–22 (9th Cir. 2008).

### A. Plaintiff's challenge to the vexatious litigant statute fails to state a claim.

Plaintiff fails to state a claim that A.R.S. § 12-3201 facially violates the First or Fourteenth Amendments. The statute (1) does not infringe the First Amendment, (2) is not void for vagueness, and (3) does not infringe procedural due process guarantees. Plaintiff's response does not demonstrate he can establish otherwise.

#### 1. Plaintiff cannot make out a case that the statute violates the First Amendment.

##### a. The Response confirms that the statute is not overbroad.

As discussed in the motion to dismiss (at 11), and by the Court (Dkt. 47, at 17), a law survives an overbreadth challenge if it has a "plainly legitimate sweep" not "substantially outweigh[ed]" by any unconstitutional applications. *Moody v. NetChoice, LLC*, 603 U.S. 707, 723–24 (2024). Prefiling review allows a vexatious litigant to file protected, but not unprotected, papers. *See Wolfe v. George*, 486 F.3d 1120, 1125 (9th Cir. 2007) (noting "the courthouse doors are not closed" to a vexatious litigant). The plainly legitimate sweep includes unprotected filings that are stopped on prefiling review. *Id.* ("[T]here is no constitutional right to file frivolous litigation."). *Accord Grundstein v. Ohio*, No. 06-2381, 2006 WL 3499990, at *4 (N.D. Ohio Dec. 5, 2006) (upholding Ohio prefiling requirement because it "does not regulate conduct protected by the First Amendment"). Only when a court mistakenly blocks a protected filing does the law impact protected speech. Plaintiff gives no reason to think such mistakes will "substantially" outweigh constitutional applications. Indeed, there is every reason to think the vast majority of applications will be to block unprotected papers. And even when such mistakes occur, a litigant may seek special action review, introducing yet a third opportunity for judicial scrutiny.

Plaintiff gives two responses (at 15–16), neither meritorious. First, he argues that any prefiling requirement is overbroad if it "is designed to prevent [a plaintiff] from filing any complaint in any case without leave of court" (quoting *Moy v. United States*, 906 F.2d 467, 471 (9th Cir. 1990) (alteration in original)). But *Moy* held only that where the litigant had restricted his vexatious conduct to "facts and issues involved" in a particular case, the injunction should have been so limited. *Moy*, 906 F.2d at 470. And other prefiling requirements with the same effect have been upheld. *See, e.g.*, *Wolfe*, 486 F.3d at 1124 (prefiling order "prohibits a vexatious litigant from filing any new litigation in the courts of th[e] state in propria persona without first obtaining leave of the presiding judge").

Second, he posits every judge, trial and appellate, will get it wrong and prohibit constitutionally protected filings by applying the statute's plain language. But this puts the cart before the horse by assuming what Plaintiff must prove.

### b. Plaintiff continues to misread *Ringgold-Lockhart*.

Plaintiff (at 12–15) attempts to bolster his First Amendment case by looking to *Ringgold-Lockhart v. County of Los Angeles*, 761 F.3d 1057 (9th Cir. 2014). But he continues to misread that case as imposing a heightened two-part standard for prefiling orders. As discussed in the motion to dismiss (at 13–14) and confirmed by the Court (Dkt. 47, at 13), that case permits courts to impose prefiling restrictions based on either a pattern of harassment or frivolousness, rather than demanding both. *Id*. at 1062, 1064 ("As an alternative to frivolousness, the district court may make an alternative finding that the litigant's filings 'show a pattern of harassment.'" (quoting *De Long v. Hennessey*, 912 F.3d 1144, 1148 (9th Cir. 1990)).

### c. Plaintiff's reliance on the *Noerr-Pennington* doctrine remains misplaced.

Plaintiff also cannot rescue his claims by relying (at 11–15) on the *Noerr-Pennington* doctrine. As explained in the motion to dismiss (MTD at 13–14), the *Noerr-Pennington* doctrine is a "rule of statutory construction," not a substantive constitutional test. *See United States v. Koziol*, 993 F.3d 1160, 1171 (9th Cir. 2021). The doctrine

9

instructs courts to "construe federal statutes so as to avoid burdening" petitioning rights. *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 931 (9th Cir. 2006). But in a facial challenge, a narrowing construction avoids, not creates, constitutional difficulties. *See id.* at 931 n.5 (doctrine is "a specific application of the rule of statutory construction known as the canon of constitutional avoidance"). Plaintiff's choice to launch a facial challenge has consequences. And that choice was his stated reason the case does not run afoul of *Rooker-Feldman*. Pltf's Resp. to OSC, Dkt. 27, at 2; *see also* Dkt. 47, at 7–8 & n.3.

### 2. Plaintiff cannot establish his vagueness claim.

Plaintiff's facial vagueness challenge to A.R.S. § 12-3201 fails as a matter of law. "[P]erfect clarity is not required even when a law regulates protected speech." *Human Life of Wash. Inc. v. Brumsickle*, 624 F.3d 990, 1019 (9th Cir. 2010). A law's language need not yield "mathematical certainty." *Id.* (citation omitted). Rather, it is enough that "ordinary people have fair notice of the conduct that a statute proscribes." *Sessions v. Dimaya*, 584 U.S. 148, 155–56 (2018) (cleaned up).

As the Court previously noted (Dkt. 47, at 18), the vexatious litigant statute is clear in the "vast majority of its intended applications." *Tucson v. City of Seattle*, 91 F.4th 1318, 1330 (9th Cir. 2024). This includes Plaintiff's case. *See United States v. Goyette*, 458 F.2d 992, 993 (9th Cir. 1972) ("[A] statute will not be ruled void for vagueness when it is sufficient to give the particular defendant notice that his conduct is illegal.").

Plaintiff responds (at 16) that A.R.S. § 12-3201(E) is facially invalid because it lacks an "objective standard"; specifically, a required number of prior filings. But he cites no authority for this hypothesized requirement.

### 3. The lack of an express hearing requirement does not violate procedural due process.

AG Mayes previously demonstrated (MTD at 15–17), and the Court acknowledged (Dkt. 47, at 15–16), that the vexatious litigant statute meets procedural due process requirements to the degree a liberty interest is at stake. Arizona courts have adopted the procedural protections required by the Ninth Circuit. *See, e.g.*, *Contreras v. Bourke*, 556

P.3d 291, 300 ¶ 28 (Ariz. App. 2024) (Ninth Circuit procedural requirements "apply to pre-filing restrictions entered under either § 12-3201 or the court's inherent authority" (citing *Madison v. Groseth*, 230 Ariz. 8, 14 ¶ 18 (App. 2012) (Timmer, J.)); *see also Potter v. Ariz. House of Reps.*, No. 23-0213, 2024 WL 368095, at *7 ¶ 44 (Feb. 1, 2024).

Plaintiff responds in two ways, neither meritorious. Plaintiff first responds (at 15) that the law lacks an express hearing provision. But it is the construction given by Arizona courts, not Plaintiff, that the Court should heed. *See Easyriders Freedom F.I.G.H.T. v. Hannigan*, 92 F.3d 1486, 1494 n.4 (9th Cir. 1996).

Plaintiff next responds (at 16) that this is a disputed matter of law and so may not be resolved on the pleadings. But that misstates the Rule 12(b)(6) standard, which calls for dismissal when a complaint lacks a viable legal theory.

**B.    The Response's citation of a floor debate is not sufficient to show the harassment statute vague.**

Plaintiff also fails to state a claim in his void for vagueness challenge to A.R.S. § 13-2921, and his response (at 18) does not address the deficiencies identified in the motion to dismiss (at 18). *See State v. Brown*, 207 Ariz. 231, 237–38 ¶¶ 20–21 (Ariz. App. 2004) (Pelander, J.) (rejected vagueness challenge to harassment statute as satisfied by scienter requirements in (A)).

Plaintiff's reliance (at 17) on floor statements by two Arizona legislators to show that the statute was "controversial" does not change this result. As courts have repeatedly held, individual legislators' views do not control the constitutional analysis. *See N.L.R.B. v. SW Gen., Inc.*, 580 U.S. 288, 307 (2017) (noting "floor statements by individual legislators rank among the least illuminating forms of legislative history"). Two lawmakers' comments are not evidence that § 13-2921 is unconstitutionally vague.

## CONCLUSION

Plaintiff fails to establish a basis for federal jurisdiction and does not state a claim for which relief may be granted. The court should therefore dismiss the First Amended Complaint with prejudice.

**RESPECTFULLY SUBMITTED** this 18th day of July, 2025.

          **KRISTIN K. MAYES**
          **ATTORNEY GENERAL**

          By  /s/ *Joshua A. Katz*
             Hayleigh S. Crawford
             *Deputy Solicitor General*
             Joshua A. Katz
             *Assistant Attorney General*
             Office of the Arizona Attorney General
             2005 N. Central Ave.
             Phoenix, Arizona 85004

          *Attorneys for Defendant Arizona Attorney*
            *General Kristin K. Mayes*