Phillip Potter
2301 N. 66th Street
Scottsdale, Arizona 85257
Phone: 480.459.0310
E-Mail: phillip.t.potter@gmail.com
Plaintiff
Pro Se

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| Phillip Potter, | No. 2:25-cv-00663-PHX-DWL |
|---|---|
| Plaintiff, | |
| v. | **RESPONSE TO ALANE ORTEGA'S MOTION TO DISMISS FIRST AMENDED COMPLAINT** |
| Robert Meza, et al., | |
| Defendants. | (Oral Argument Requested) |

# ARGUMENT

Via her motion to dismiss (Doc. 52, "MTD"), "Defendant Alane Ortega moves under Federal Rule of Civil Procedure 12(b)(1) to dismiss the First Amended Complaint [Doc. 14, "FAC"] for lack of subject matter jurisdiction. ... Potter's state claims against Ortega do not meet the requirements for the Court to exercise supplemental jurisdiction". (MTD, pp. 1-2). The Court has original jurisdiction and supplemental jurisdiction arising under 28 U.S.C. §§ 1331 and 1367, and Ortega offers no reason to decline to exercise supplemental jurisdiction. "'Arising under' jurisdiction – more often known as federal-question jurisdiction – enables federal courts to decide cases founded on federal law. ... [T]he determination of jurisdiction is based only on the allegations in the plaintiff's 'well-pleaded complaint' – not on any issue the defendant may raise. That longstanding rule makes the complaint – the plaintiff's own claims and allegations – the key to 'arising under' jurisdiction. *Royal Canin U.S.A., Inc. v. Wullschleger*, 145 S. Ct. 41, 47, 604 US 22, 220 L. Ed. 2d 289 (2025) (citations omitted). "[J]urisdiction over a federal-law claim brings with it supplemental jurisdiction over a state-law claim arising from the same facts." *Id* at 48. "[28 U.S.C. § 1367](c) explains that the supplemental jurisdiction [] is in some measure discretionary. That subsection provides that a district court 'may decline to exercise supplemental jurisdiction' in three specific situations: (1) if the supplemental claim 'raises a novel or complex issue of State law'; (2) if the supplemental claim 'substantially predominates' over the claims within the court's original jurisdiction; and (3) if the district court 'has dismissed all claims over which it has original jurisdiction.' In all those contexts, federal law is not where the real action is." *Id* at 50. "A fourth, more general provision, which neither party thinks relevant here, allows a court to decline supplemental jurisdiction 'in exceptional circumstances,'". *Id* at 50, n. 4.

I. Legal Standard

"A court with jurisdiction has a 'virtually unflagging obligation' to hear and resolve questions properly before it." *Fed. Bureau of Investigation v. Fikre,* 601 U.S. 234, 240, 144 S. Ct. 771, 773, 218 L. Ed. 2d 162 (2024). "[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties." 28 U.S.C. § 1367(a). "By use of the word 'shall,' the statute makes clear that" Congress mandated a district court's initial exercise of supplemental jurisdiction, subject to any subsequent discretionary decision to decline that jurisdiction based on circumstances or events. *Exec. Software N. Am., Inc. v. U.S. Dist. Ct. for Cent. Dist. of California,* 24 F.3d 1545, 1555-56 (9th Cir. 1994).

II. Co-Defendants' Motions to Dismiss

To resolve Ms. Ortega's dismissal motion, it is worthwhile to touch on her co-defendants' dismissal motions. The latter informs the former on jurisdiction.

A. Attorney General Kris Mayes

Seeking to defeat Plaintiff's First Amendment facial challenges to A.R.S. §§ 12-3201 (Count One, FAC at 113-207) and 13-2921 (Count Two, FAC at 208-214), the Attorney General filed a combined Fed. R. Civ. P. 12(b)(1) and (6) motion (Doc. 38). Therein, Mayes argued the Court lacks original jurisdiction due to (1) causation factors regarding her "role" in the A.R.S. § 12-3201 civil and criminal "enforcement scheme" because "county attorneys" play a larger role (Doc. 38, p. 10); and (2) the lack of a "credible threat" of prosecution, meaning the facts supposedly suggest no imminent injury

(Doc. 38, p. 6). She also attacked the FAC's sufficiency, asserting the challenged statutes are facially constitutional (Doc. 38, p. 11). To reach that erroneous conclusion, she misconstrued the legal standard which the Court must use to conduct a requisite "plainly legitimate sweep" analysis. *Moody v. NetChoice, LLC*, 144 S. Ct. 2383, 2398-99 (2024). (FAC at 123-187). The Attorney General staked out the position that court petitioning is protected under the First Amendment except for "frivolous" (i.e., objectively baseless) *or* "harassing" (i.e., improperly motivated) suits. Critically, Mayes asserted that this phrase can only be read in the "disjunctive", thereby endorsing a legal standard which narrows the Petition Clause's scope and broadens § 12-3201's sweep. (Doc. 38, pp. 11-14).

In Response (Doc. 49), Plaintiff argued the Court has original jurisdiction because (1) per *Isaacson v. Mayes*, 84 F.4th 1089, 1100 (9th Cir. 2023), the Ninth Circuit previously heard and rejected the Attorney General's exact causation defenses (Doc. 49, p. 4); and (2) Plaintiff sufficiently alleged a "credible threat" to confer standing under *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159, 134 S.Ct. 2334, 189 L.Ed.2d 246 (2014), including for reasons that Plaintiff is presently under a specific threat of civil and criminal prosecution from a combination of state officers and private parties by operation of § 12-3201, that he is under an imminent threat of such enforcement should he violate § 12-3201(B), and that the state constitution and statutes provide the Attorney General a sufficient role in the legislatively defined enforcement "chain". (Doc. 49, pp. 2-5).

Moving on to the merits, Plaintiff argued § 12-3201 is facially unconstitutional because the Petition Clause protects all petitioning with the exception being suits that are objectively baseless *and* improperly motivated – read in the "conjunctive". (Doc. 49, pp. 10-14). He asserted that the Court must conduct the required *Moody* analysis using this conjunctive legal standard per Supreme Court and Ninth Circuit precedent. (Doc. 49, pp.

3

9-11). At bottom, Plaintiff's well-founded position is that the Petition Clause's scope is far broader, and § 12-3201's legitimate sweep is far narrower, than the state's chief legal officer contends.[1] The Court has jurisdiction to decide this key dispute as to which legal standard applies to deciding whether § 12-3201 violates the First Amendment.

B. Robert Meza and Karrin Taylor Robson

In their joint Fed. R. Civ. P. 12(b)(6) motion (Doc. 51), defendants Meza and Taylor Robson seek dismissal of all claims against them "because (1) they are barred by the *Noerr-Pennington* doctrine[2], (2) they are barred by the doctrine of claim preclusion, (3) Plaintiff cannot state a constitutional claim against Ms. Taylor Robson – a private citizen – under 42 U.S.C. § 1983[3], and (4) Plaintiff has not pled – and cannot plead – the elements of an abuse of process or aiding-and-abetting claim." (Doc. 51, p. 8).

Pertinent to Ortega's MTD, Meza conceded Plaintiff sufficiently pleaded Count Three (FAC at 215-237), meaning Meza can be sued under 42 U.S.C. § 1983 for actions taken under color of state law. Meza's defense relies entirely on a supposed claim to

---

[1] Plaintiff highlights the far-reaching ramifications of the Attorney General misconstruing the Petition Clause's scope, which the U.S. Supreme Court and Ninth Circuit have unambiguously established. Her position illuminates the risk of wrongful prosecution that every Arizonan faces for petitioning their government. The Court should use this case to put a hard stop to that threat and that First Amendment chill.

[2] In an unusual twist, the "barred by the *Noerr-Pennington* doctrine" defense shows these defendants side with Plaintiff in his dispute with the Attorney General regarding whether the Petition Clause's scope is defined by a "conjunctive" or a "disjunctive" legal standard. (Doc. 51, p. 9). And by endorsing the conjunctive standard, Meza and Taylor Robson implicitly admit § 12-3201 lacks a "plainly legitimate sweep". In other words, they admit having knowledge that § 12-3201 violates the Petition Clause. (FAC at 216-218).

[3] Plaintiff alleges Ms. Taylor Robson is liable for damages under § 1983 based on her "joint action" with the Arizona House of Representatives and Mr. Meza in his official capacity, including for joint action taken with intent to deprive Plaintiff of his constitutional rights. (FAC at 218). The question of whether Taylor Robson is liable for those actions ultimately will be decided on the facts following adequate discovery, but her alleged status as a joint actor must be taken as true at the pleadings stage.

*Noerr-Pennington* immunity. But that species of immunity only extends to government officials when serving as "ombudsmen for their constituents. In this capacity, they intercede, lobby, and generate publicity to advance their constituents' goals, ... [Courts] decline to interpret § 1983 as regulating this quintessentially 'political activity.'" *Manistee Town Ctr. v. City of Glendale,* 227 F.3d 1090, 1093-94 (9th Cir. 2000). Mr. Meza was no way engaged in "political activity" supporting his "constituents" when he knowingly and systematically misrepresented facts to state courts, and when aiding and abetting others to misrepresent facts to state courts, in a concerted bad faith effort to feign personal harassment and attack Plaintiff's First Amendment rights as unlawful means to evade public records disclosure. *Noerr-Pennington* does not immunize state legislators who perform such self-serving administrative acts.[4] In other words, Meza does not enjoy *Noerr-Pennington* immunity. Further, Meza's petitioning is subject to the sham litigation exception. (FAC at 230, n. 38). So even if such immunity was potentially available, his petitioning conduct falls squarely under an exception. This 42 U.S.C. § 1983 claim creates a federal question which confers original jurisdiction and survives dismissal on any disputed facts, including immunity. *See Chamberlain v. Mathis,* 151 Ariz. 551, 554 (1986) ("Once an immunity defense has been raised properly, the court determines whether defendants are entitled to immunity. If the existence of immunity turns on disputed factual issues, the jury determines the facts and the court then determines whether those facts are sufficient to establish immunity.").

With original jurisdiction to decide Count Three against Meza, the Court also has supplemental jurisdiction to decide Counts Four and Five (FAC at 238-269) against both

---

[4] *See Fann v. Kemp in & for Cty. of Maricopa,* 515 P.3d 1275 (Ariz. 2022) for how Arizona differentiates between state legislators' political acts and administrative acts.

Ortega and Meza.[5]  *See Royal Canin*, 145 S. Ct. at 48 ("jurisdiction over a federal-law claim brings with it supplemental jurisdiction over a state-law claim arising from the same facts").  Neither Mr. Meza nor Ms. Taylor Robson argued to the contrary on that crucial point, therefore conceding that the state claims (Count Four and Count Five) arise from "the same facts" as the Count Three federal claim, and that there is no 28 U.S.C. § 1367(c) basis for the Court to decline supplemental jurisdiction.

III. The Court Has Supplemental Jurisdiction; The "Real Action Is" in Federal Court

Against the backdrop of original jurisdiction to adjudicate federal claims for prospective relief (Counts One and Two) and for damages (Count Three), Ms. Ortega declares in her defense against state Counts Four and Five that "Potter alleges no facts sufficient to show that his state law claims derive from the same nucleus of operative fact [sic] as his federal-question claims or that the state and federal claims – against different defendants – would be expected to be tried in the same judicial proceeding. ... Whether Ortega engaged in abuse of process while representing Potter's ex-wife in these matters has no relevance to the federal constitutional claims he has asserted against the other defendants." (MTD, p. 5).  But she provides absolutely nothing of substance to explain what facts or legal authority supports her position.  Her inadequately developed argument seems to be that the state claims brought against Ms. Ortega (1) arise from a stand-alone "nucleus of operative facts"; and (2) would produce evidence that would be of "no relevance" to the federal claim brought against Robert Meza or Karrin Taylor Robson.

---

[5] Meza and Taylor Robson ask the Court to dismiss Counts Four and Five, relying on whether Plaintiff can prove the second element of Abuse of Process – "an ulterior purpose not proper in the regular conduct of the proceedings".  *See Crackel v. Allstate Ins. Co.*, 92 P.3d 882, 887 ¶ 11 (Ariz. App. 2004).  (Doc. 51, pp. 14-16).  Their shared defense is subject to discovery and a jury trial, not dismissal, as Plaintiff will separately explain in his forthcoming Response to Meza's and Tayor Robson's Fed. R. Civ. P. 12(b)(6) motion.

A. The State and Federal Claims Arise From a Common Nucleus of Operative Facts

To recap, (1) Mr. Meza conceded that federal Count Three and state Court Four against him arise from common facts; and (2) Ms. Ortega concedes that state Counts Four and Five against her are sufficiently pleaded.[6] Ortega merely seeks a state venue rather than a federal venue given federal courts' intolerance for the types of discovery abuses and serial misconduct that led to her history of professional discipline. (FAC at 102). *See Hosea v. Langley,* No. 04-0605, 2006 WL 314454, at *5 (S.D. Ala. Feb. 8, 2006), *aff'd,* 226 F. App'x 863 (11th Cir. 2007) ("Discovery in federal court is not a game of hide the ball"); *Moses v. United Parcel Serv., Inc.,* No. 21-670, 2022 WL 912589, at *3 (W.D. Pa. Mar. 29, 2022) ("[T]he spirit of the rules is violated when advocates attempt to use discovery tools as tactical weapons rather than to expose the facts and illuminate the issues by ... unnecessary use of defensive weapons or evasive responses.") (quoting Fed. R. Civ. P. 26(b) advisory committee's note to 1983 amendment).

1. Ms. Ortega's Secondary Liability in Count Five

"[A]iding and abetting is a theory of secondary liability" making one liable for tortious acts committed by another primary tortfeasor – in this instance, Meza. *See Fargo Bank v. Ariz. Laborers, Teamsters and Cement Masons Local No. 395 Pension Trust Fund,* 201 Ariz. 474, 485, ¶ 36, 38 P.3d 12, 23 (2002). Given that Ortega's secondary liability (state Count Five) ties to Meza's primary liability (federal Count Three and state Count Four) as a matter of law, one can only conclude that Counts Three, Four, and Five arise from a common nucleus of facts and will share common relevant evidence. Thus,

---

[6] Ms. Ortega makes no Fed. R. Civ. P. 8 or 12(b)(6) argument; thus, conceding the FAC provides her adequate notice of the claims, is well-pleaded as to all elements of those claims, and is plausible on its face. *See Armstrong v. Reynolds*, 22 F.4th 1058, 1070 (9th Cir. 2022). As such, the FAC is more than sufficient to advance to discovery. *Whitaker v. Tesla Motors, Inc.*, 985 F.3d 1173, 1177 (9th Cir. 2021).

the Court has original jurisdiction and lacks any basis to decline to exercise supplemental jurisdiction. The Court's MTD review should end right here with a quick denial.

### 2. Ms. Ortega's Primary Liability in Count Four

As to her primary liability, Ortega floats what is best described as an "identity of claims" defense when asking the Court to accept that the Abuse of Process state claim (Count Four) against her and the federal claim (Count Three) against others are distinct. But she gives no reasons why. She opts instead for the blanket, non-descript statement that Plaintiff "alleges no facts sufficient to show that his state law claims derive from the same nucleus of operative fact as his federal-question claims". (MTD, p. 5.). Ortega essentially ignores the FAC's factual allegations and attempts to place the burden once again on Plaintiff to re-assert facts and conduct a more in-depth analysis despite him already carrying his jurisdictional burden. Out of caution, Plaintiff re-asserts these facts and re-carries his burden for Count Four, as follows.

Although generally argued within the context of claim preclusion where a previous lawsuit had been decided, the same principles apply to this supplemental jurisdiction issue. In determining an "identity of claims", courts consider whether (1) the disputed claims arise out of the same transactional nucleus of facts, meaning the claims contain operative facts[7] transactionally related in time, space, origin, or motivation; (2) any of the same rights or remedies are implicated in both the state and federal claims; and (3) substantially the same evidence will be discovered and entered at trial. *Costantini v. Trans World Airlines,* 681 F.2d 1199, 1201-02 (9th Cir.1982).

---

[7] "Operative facts" are those facts that relate to the underlying action giving rise to the instant issue. *See Ctr. for Biological Diversity v. Kempthorne,* No. C 08-1339 (CW), 2008 WL 4543043, at *3 (N.D. Cal. Oct. 10, 2008). Black's Law Dictionary (9th ed., 2009) defines an "operative fact" as "[a] fact that affects an existing legal relation, esp. a legal claim" or "a fact that constitutes the transaction or event on which a claim ... is based."

a. The Claims Relate In Time, Space, Origin, and Motivation

The first "of these [three] criteria is the most important" in an identify of claims analysis. *Id.* at 1202; *see also Frank v. United Airlines, Inc.,* 216 F.3d 845, 851 (9th Cir. 2000) ("The central criterion in determining whether there is an identity of claims [] is 'whether the [disputed claims] arise out of the same transactional nucleus of facts.'"). "[T]he inquiry into the 'same transactional nucleus of facts' is essentially the same as whether the [disputed] claim[s] could [be] brought in [one] action." *United States v. Liquidators of European Fed. Credit Bank,* 630 F.3d 1139, 1151 (9th Cir.2011). Phrasing this "inquiry" as a question of whether the state and federal claims "could be brought" in a single action provides an obvious answer. Yes. Those claims could be brought in one action because they have been brought in one action – this action. Indeed, had any claims been previously brought in district court, then preclusion principles very well might apply as a matter of federal law. *See Turtle Island Restoration Network v. U.S. Dep't of State,* 673 F.3d 914, 918 (9th Cir. 2012) (If "claims arise from the same factual circumstances, a plaintiff must bring all related claims together or forfeit the opportunity to bring any omitted claim in a subsequent proceeding."). There should be little doubt that had such circumstances presented here, Ms. Ortega would be vigorously arguing in favor of a common identity of claims, rather than against a common identity. But the reality is that none of the disputed claims have ever been brought in state or federal court.

That said, courts use a 'transaction test to determine whether ... two suits share a common nucleus of operative fact.' 'Whether two events are part of the same transaction or series depends on whether they are related to the same set of facts and whether they could conveniently be tried together.'" *Western Sys., Inc. v. Ulloa,* 958 F.2d 864, 871 (9th Cir. 1992); *see also* Restatement (Second) of Judgments § 24 (1982) ('What factual

grouping constitutes a 'transaction', and what groupings constitute a 'series', are to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations'").

To reiterate, defendants Meza and Taylor Robson do not dispute that the federal claim (Count Three) and two state claims (Counts Four and Five) share a common nucleus of operative facts. Furthermore, Ortega's counsel admits that Plaintiff's allegations sufficiently demonstrate that Ortega and Meza shared a common "motivation" for comitting tortious acts. To be sure, counsel did not overlook that that those operative facts are "related in ... motivation". *See* MTD, p. 6 ("Ortega conspired with Meza's counsel by phone and email and a 'series of communications' to 'intimidate' Potter and 'discredit and damage him via factual misrepresentations' in court filings so as to 'prevent criminal investigations into' Defendants Meza and Doctor and 'maintain secrecy and prevent investigations into the Scheme.' FAC at 44 ¶ 83; *see also* FAC at 3 ¶ 5 (describing referenced 'second object' of the 'Scheme')." As Plaintiff made clear with specific, non-conclusory allegations identifying a transactional series of "facts related in time, space, origin, and motivation" (*see* FAC at 83-97, 254) leading to the summation that Ortega "act[ed] in concert with Meza" to commit criminal and tortious acts where "[c]ivil litigation becomes a criminal matter when defense tactics go beyond 'a general, legal denial of guilt' and conceal prior criminal conduct". (FAC at 85, n.22). Plaintiff also factually demonstrates that Ortega's primary tort meets every element necessary to prove his state claims and to recover damages, including punitive damages based on intentional joint acts with Meza reflecting malice (FAC at 249-259, 262-269). Nowhere in her MTD does Ortega deny (1) the plausibility or overall sufficiency of those transactional series of

facts; (2) that those facts are "related in time, space, origin, or motivation"; or (3) that those facts would "form a convenient trial unit". In the end, Count Four against Ortega arises out of the same transactional nucleus of operative facts as the federal and state claims against Meza.

### b. The Claims Implicate the Same Rights and Remedies

Plaintiff seeks common remedies on the state claims and pertinent federal claim; specifically, damages jointly and severally assessed against Ortega and Meza for their concerted actions (FAC at 269). The Aiding and Abetting claim (Count Five) against Ortega ensures all claims must be heard in federal court under supplemental jurisdiction, especially since the Abuse of Process claim (Count Four) against Meza presents common operative facts as those that give rise to the 42 U.S.C. § 1983 claim (Count Three) against both Meza and Taylor Robson. The recoverable state claims are "factually intertwined" with the recoverable federal claim just as Plaintiff alleges. (MTD, p. 5).

### c. Substantially the Same Evidence Will Be Used to Prove the Claims

Courts generally hold that claims share a common core of operative facts if "the plaintiff will rely on the same evidence to prove each claim." *Williams v. Boeing Co.,* 517 F.3d 1120, 1133 (9th Cir. 2008). Ortega makes no mention of the evidence Plaintiff is expected to use to prove claims. She thus waived any supplemental jurisdiction defense on those grounds. Regardless, as described above, Plaintiff will rely on substantially the same relevant evidence for the state and federal claims to prove, *inter alia*, that Ortega and Meza (1) knowingly worked in concert to commit tortious acts and advance common unlawful objectives; (2) repeatedly and intentionally made material misrepresentations of fact to courts, including intentional misstatements and omissions to achieve common improper objectives; (3) for improper reasons, pursued unconstitutional A.R.S. § 12-

3201(A) motions to cause irreparable First Amendment injuries, and other compensable injuries; (4) substantially aided and encouraged one another to commit primary torts; and (5) acted with "evil motive or intent" to injure Plaintiff. (FAC at 235-237).

### B. There Is No Basis for the Court To Decline To Exercise Supplemental Jurisdiction

A district court "will not manufacture arguments for [a party]". *Greenwood v. F.A.A.,* 28 F.3d 971, 977 (9th Cir. 1994). But that is precisely what Ms. Ortega asks the Court to do when she suggests it should decline to exercise supplemental jurisdiction without developing any factual argument or citing any legal authority to buttress her position. She merely asks the Court to "decline to exercise supplemental jurisdiction over the [state counts] in the interest of judicial economy, fairness, convenience, and comity". (MTD, p. 6). Ms. Ortega fails to adequately explain how the requested relief could possibly meet any such "interests", meaning the argument should be deemed waived. *See United States v. Sineneng-Smith,* 140 S.Ct. 1575, 1579 (2020) (holding district courts should "normally decide only questions presented by the parties"). That said, her justification for the requested relief also fails for the following reasons.

#### 1. Declining Supplemental Jurisdiction Does Not Serve Judicial Economy

Declining to exercise supplemental jurisdiction would result in Plaintiff filing suit against Ms. Ortega in state court. She offers no explanation how parallel proceedings in state and federal courts would serve the interests of judicial economy in either court. Common sense proves the opposite. Regardless of whether Ortega remains a federal defendant, this Court will also still be in the position to adjudicate the same number of claims and evaluate the same evidence. The relief would only convert Ortega from a defendant to a lay witness in that scenario. The state court likewise would receive no benefit of judicial economy by being forced to adjudicate a complex civil case which

otherwise would never appear on its docket. Finally, because Ortega has asked the Court to decline supplemental jurisdiction and essentially split the claims, she would be prohibited under Arizona law from ever invoking claim preclusion in either the state court or federal court. *See In re Gen. Adjudication of All Rights to Use Water in Gila River Sys. & Source,* 212 Ariz. 64, 72 ¶¶ 24-26, 127 P.3d 882, 890-91 (2006); Restatement (Second) of Judgments § 24(1) and § 26(1)(a). The request serves no interest of judicial economy.

2. Declining Supplemental Jurisdiction Does Not Serve Fairness

Declining supplemental jurisdiction also does not serve the interest of fairness to any party given that time and expense to adjudicate claims in two separate courts would functionally double those resource demands on every party and on both courts. Further, the suggested parallel proceedings enhance the chances of contradictory orders, decisions, and/or judgments between the two courts, and such possibilities hardly enhance fairness.

3. Declining Supplemental Jurisdiction Does Not Serve Convenience

The interests of parties' convenience also would not be served by conducting proceedings in a state court venue which is a short distance away from the federal court.

4. Declining Supplemental Jurisdiction Does Not Serve the Interests of Comity

Rather than serve the interests of federal-state comity, declining to exercise supplemental jurisdiction and promoting parallel proceedings would work against the interests of comity. "In general, the principle of 'comity' is that the courts of one state or jurisdiction will give effect to the laws and judicial decisions of another state or jurisdiction, not as a matter of obligation, but out of deference and mutual respect." *Brown v. Babbitt Ford, Inc.,* 117 Ariz. 192, 198, 571 P.2d 689, 695 (App. 1977). There can be no comity shown for Arizona's "laws" in this instance because Plaintiff challenges the constitutionality of the only laws in question, and the U.S. Supreme Court declared

long ago that federal courts give no "deference" under those circumstances. *See Ex parte Young,* 209 U.S. 123, 149 (1908). Also, soon after acquiring statehood, the Arizona Supreme Court issued a "judicial decision" declaring the state judiciary's disdain for parallel proceedings as a matter of public policy. "A party asking the courts to assist him in settling his differences with another, in all <u>fairness to the courts and all adverse parties</u>, ought to make a full and complete exposition of his case so that it may be ended with one trial and one decision. It is against public policy to split a cause of action and to make two or more suits of it when one is sufficient." *Williams v. Williams*, 32 Ariz. 164, 168, 256 P. 356, 357 (1927) (emphasis added). Arizona courts have not wavered on those points in nearly one-hundred years. *See e.g., Musa v. Adrian,* 130 Ariz. 311, 312 (1981) ("In Arizona, ... [p]ublic policy is against deciding cases piecemeal"). Ortega's request to have Arizona courts adjudicate the state claims brought against her while this Court separately adjudicates the federal and state claims brought against Meza and Taylor Robson on a common nucleus of facts only sets the stage to "[dis]respect" the Arizona Supreme Court's "judicial decisions". She actually asks the Court to violate federal-state comity, not promote it. In the end, Ortega does not come close to establishing factual or legal grounds for the Court to decline to exercise supplemental jurisdiction.

C. There Is No "Res Judicata"

Ms. Ortega makes a feeble attempt to invoke "res judicata", positing that her "alleged misconduct was, or could have been, addressed by these [state] [c]ourts. Potter is seeking to relitigate these issues while circumventing the order restraining him from filing any further vexatious actions in Arizona state courts." (MTD, p. 6). But Plaintiff made it clear he will file papers in state court as need arises. (FAC at 98). And Ortega identifies no judgment against which "res judicata" could possibly apply because no such judgment

exists. To be sure, no claims in this case meet any preclusion element under Arizona law or federal law. *See Power Road-Williams Field LLC v. Gilbert*, 14 F. Supp. 3d 1304, 1309 (D. Ariz. 2014); *Intri-Plex Techs., Inc. v. Crest Group, Inc.,* 499 F.3d 1048, 1052 (9th Cir.2007) ("To determine the preclusive effect of a state court judgment, federal courts look to state law").

### D. *Maldonado v. Harris* (2004) Is Dispositive on Jurisdiction and *Rooker-Feldman*

In *Maldonado v. Harris,* 370 F.3d 945 (9th Cir. 2004), the Ninth Circuit addressed and dispositively decided the issues collectively raised in defendants' motions to dismiss. There, Maldonado engaged in state litigation against a state agency. The agency prevailed on a statutory claim and secured an injunction that the state court *and* the state agency could *separately* enforce. Maldonado challenged the underlying statute's constitutionality in district court seeking to permanently enjoin the agency's enforcement of the statute, and to permanently enjoin the agency's enforcement of the injunction. Critically, Maldonado did *not* ask the district court to enjoin the state court from judicially enforcing the injunction, or to overturn the state court's judgment. His requested relief made Maldonado subject to contempt of state court, and the state court actually did find him in contempt for violating the injunction. Very similar dynamics are at play here.

The Ninth Circuit explained that the district court had original jurisdiction because *Rooker-Feldman* did not apply under such circumstances. "The basic premise of *Rooker-Feldman* is that 'a federal district court does not have subject matter jurisdiction to hear a direct appeal from the final judgment of a state court.' *Noel v. Hall,* 341 F.3d 1148, 1154 (9th Cir.2003). *Rooker-Feldman* recognizes the implicit statutory structure established by Congress, which has determined that the United States Supreme Court is the only federal court with jurisdiction to hear appeals from state courts. ... In *Noel,* we set forth a general

formulation of *Rooker-Feldman* to attempt to clarify the scope of the doctrine. We explained that ... [i]f a federal plaintiff asserts as a legal wrong an allegedly erroneous decision by a state court, and seeks relief from a state court judgment based on that decision, *Rooker-Feldman* bars subject matter jurisdiction in federal district court. If, on the other hand, a federal plaintiff asserts as a legal wrong an allegedly illegal act or omission by an adverse party, *Rooker-Feldman* does not bar jurisdiction. ... When we apply the *Noel* formulation of the *Rooker-Feldman* doctrine to the facts of this case, it becomes clear that the doctrine does not deprive the district court of jurisdiction over any of [Potter's] claims. The legal wrong that [Potter] asserts in this action is not an erroneous decision by the state court [on] the [A.R.S. § 12-3201(A) motions] brought against [Potter] by [Meza, Taylor Robson, and Ortega], but the continued enforcement by [a combination of the Attorney General and private parties] of a statute [that Potter] asserts is unconstitutional. In other words, [Potter] asserts as a legal wrong 'an allegedly illegal act ... by an adverse party.' *Noel,* 341 F.3d at 1164. Under these circumstances, *Noel* makes clear that *Rooker-Feldman* does not apply." *Maldonado,* 370 F.3d at 949-50.

Regarding any concern that Potter "is seeking to bring a forbidden de facto appeal, ... [a] federal suit is not a forbidden appeal because it is 'inextricably intertwined' with something. Rather, it is simply a forbidden de facto appeal. Only when there is already a de facto appeal in federal court does the 'inextricably intertwined' test come into play: Once a federal plaintiff seeks to bring a forbidden de facto appeal, as in *Feldman,* the federal plaintiff may not seek to litigate an issue that is 'inextricably intertwined' with the state judicial decision from which the forbidden de facto appeal is brought. *Noel,* 341 F.3d at 1158. In this case, [Potter] is not bringing a forbidden de facto appeal because he is not alleging as a legal wrong an erroneous decision from the state court. Therefore, the

'inextricably intertwined' test does not come into play. Our conclusion remains the same even though [Potter's] complaint seeks relief from [non-judicial enforcement of] the injunction entered by the state court." *Maldonado,* 370 F.3d at 950. (FAC at 107, n. 26).

### E. Plaintiff's References to State Court Proceedings Only Present Facts to Confirm Jurisdiction, Invoke the Sham Litigation Exception, and Advance the *Moody* Analysis

In addition to the forementioned reasons why *Rooker-Feldman* is inapplicable, when a party alleges extrinsic fraud by an adverse party in procuring a state court judgment, the *Rooker-Feldman* doctrine also does not apply since such a claim does not challenge the state court decision directly. *Kougasian v. TMSL, Inc.,* 359 F.3d 1136, 1140-41 (9th Cir. 2004). Fraud is "not an error by [a] court," but instead is "a wrongful act committed by the party or parties who engaged in the fraud". *Id*. Defendants' fraud and other intentional litigation misconduct also deprive them of any possible *Noerr-Pennington* immunity under the third "sham litigation exception". (FAC at 230, n. 38).

Further, FAC references to state proceedings do not allege an "erroneous court decision", *Id*, but rather prove an imminent injury to give Plaintiff standing. *See Wolfe v. Strankman*, 392 F.3d 358, 363-64 (9th Cir. 2004) (the threat of injury is not speculative when a plaintiff has been previously charged under the challenged statute). "We construe [Potter's] references to the prior judicial actions enumerated above in this light." *Id*.

Finally, the vexatious litigant label attached to Plaintiff only confirms that § 12-3201 lacks any *Moody* "legitimate sweep". *See* attached Affidavit. The bottom line in this case is that every § 12-3201(E) provision defines "vexatious conduct" as petitioning conduct which enjoys *Noerr-Pennington* immunity, meaning § 12-3201 violates the Petition Clause in every application. Defendants improperly weaponized that statute and perpetrated fraud to serve unlawful personal interests. The Court should deny the MTD.

1                     DATED this 18th day of July 2025.

2

3                              By:  //s//

                                        Phillip Potter

4                                    Plaintiff

                                        Pro Se

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26