Phillip Potter
2301 N. 66th Street
Scottsdale, Arizona 85257
Phone: 480.459.0310
E-Mail: phillip.t.potter@gmail.com
Plaintiff
Pro Se

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| Phillip Potter, | No. 2:25-cv-00663-PHX-DWL |
| --- | --- |
| Plaintiff, | |
| v. | **RESPONSE TO KARRIN TAYLOR ROBSON'S AND ROBERT MEZA'S MOTION TO DISMISS FIRST AMENDED COMPLAINT** |
| Robert Meza, et al., | |
| Defendants. | (Oral Argument Requested) |

Plaintiff's access to the courts is not a privilege granted by the government, but his fundamental right guaranteed by the U.S. Constitution. In their joint motion to dismiss (Doc. 51, "JMTD"), Robert Meza and Karrin Taylor Robson ("Defendants") concede the First Amended Complaint (Doc. 14, "FAC") plausibly pleads a 42 U.S.C. § 1983 First Amendment retaliation claim against Meza for attacking that fundamental right (Count Three). Taylor Robson challenges whether she engaged in "joint action" with Meza sufficient to also hold her liable on that count, but her dispute is on the facts and thus is inappropriate for dismissal. Defendants also argue that Plaintiff does not, and cannot, plausibly plead the "not proper" and "ulterior improper purpose" elements on which Counts Four and Five rely. They threatened to, and later did, jointly invoke A.R.S. § 12-3201 when Plaintiff requested records implicating Meza's practice of trading his public office for private gain, and Taylor Robson's knowing facilitation of the same. The proper purpose of a vexatious litigant motion is for use as a defensive weapon – a litigation "shield" as they say – to prevent a defendant from enduring a "pattern of harassment" across multiple lawsuits. Plaintiff pleads Defendants, in contrast, improperly deployed § 12-3201 as an offensive weapon – a litigation "sword" – for the ulterior improper purpose of concealing unlawful conduct in a single public records lawsuit where there can be no "pattern" as a matter of fact, and no "harassment" of state actors for requesting records as matters of fact and law. Regardless of how persistently Meza and Taylor Robson feign victimhood, the state court found Plaintiff did <u>not</u> harass either defendant pursuant to § 12-3201(E)(1)(a). The First Amendment does not tolerate a state legislator or a public figure gubernatorial candidate misrepresenting to courts that they have been harassed by a private citizen whose only contact with them involves a request to inspect public records, just as A.R.S. § 39-121, *et seq*. contemplates and the Arizona Supreme Court recognizes.

That said, Plaintiff does not challenge the judgment finding him vexatious for other § 12-3201(E)(1) statutory reasons.  He does not dispute that the state court followed the statute's plain language.  His position is that the statute's language violates the Petition Clause in every application, as Defendants always knew and surprisingly admit in their JMTD.  The Ninth Circuit encountered these rather unusual dynamics in *Maldonado v. Harris,* 370 F.3d 945 (9th Cir. 2004), determined that neither *Rooker-Feldman* nor claim preclusion applied, and found that Maldonado's complaint survived a Fed. R. Civ. P. 12(b)(6) motion to dismiss.  This Court should reach the same conclusions in this case.

I. Legal Standard

To survive a Fed. R. Civ. P 12(b)(6) motion, a complaint must contain factual allegations sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a 'probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are 'merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949 (2009).  A plaintiff's allegations need only "nudge" claims "across the line from conceivable to plausible." *Id* at 1951.  When reviewing a complaint, courts must accept all allegations of material fact as true and construe those facts in the light most favorable to the plaintiff.  *See Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998).  "[A]nd a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards". *Erickson v. Pardus*, 551 U.S. 89, 94, 127 S.Ct. 2197, 2200 (2007).

II. Plaintiff's Allegations Survive Defendants' Joint Motion to Dismiss

Defendants seek dismissal of all claims "because (1) they are barred by the *Noerr-Pennington* doctrine, (2) they are barred by the doctrine of claim preclusion, (3) Plaintiff cannot state a constitutional claim against Ms. Taylor Robson – a private citizen – under 42 U.S.C. § 1983, and (4) Plaintiff has not pled – and cannot plead – the elements of an abuse of process or aiding-and-abetting claim." (JMTD, p. 8).

A. Neither Claim Preclusion Nor *Rooker-Feldman* Applies

Plaintiff begins with the "doctrine of claim preclusion" defense (JMTD, pp. 10-12), within which Defendants half-heartedly invoke *Rooker-Feldman* (JMTD, p. 11, n. 3). They point to "a final judgment [] entered in the State Proceeding ['CV2022-008626'] on July 11, 2023" as the basis for both claim preclusion and *Rooker-Feldman*. (JMTD, p. 12).

1. *Maldonado v. Harris* (2004) Is Dispositive In Plaintiff's Favor

The Ninth Circuit addressed and dispositively decided the claim preclusion and *Rooker-Feldman* arguments in *Maldonado v. Harris*. There, Maldonado engaged in state litigation against a state agency. The agency prevailed on a statutory claim and secured an injunction that the state court *and* the state agency could *separately* enforce. Maldonado then challenged the underlying statute's general constitutionality in federal court seeking to permanently enjoin the agency's enforcement of the statute, and to permanently enjoin the agency's enforcement of the injunction. Critically, like Plaintiff, Maldonado did *not* ask the federal court to enjoin the state court from judicially enforcing the injunction, or to overturn the state court's judgment. Also like Plaintiff, Maldonado's requested relief still made him subject to contempt of state court. Indistinguishable facts are at play here.

a. The *Rooker-Feldman* Doctrine Does Not Apply

Per *Maldonado,* 370 F.3d at 950, "[t]he basic premise of *Rooker-Feldman* is that 'a

3

federal district court does not have subject matter jurisdiction to hear a direct appeal from the final judgment of a state court.' *Noel v. Hall,* 341 F.3d 1148, 1154 (9th Cir.2003). *Rooker-Feldman* recognizes the implicit statutory structure established by Congress, which has determined that the United States Supreme Court is the only federal court with jurisdiction to hear appeals from state courts. ... In *Noel,* we set forth a general formulation of *Rooker-Feldman* to attempt to clarify the scope of the doctrine. We explained that ... [i]f a federal plaintiff asserts as a legal wrong an allegedly erroneous decision by a state court, and seeks relief from a state court judgment based on that decision, *Rooker-Feldman* bars subject matter jurisdiction in federal district court. If, on the other hand, a federal plaintiff asserts as a legal wrong an allegedly illegal act or omission by an adverse party, *Rooker-Feldman* does not bar jurisdiction. ... When we apply the *Noel* formulation of the *Rooker-Feldman* doctrine to the facts of this case, it becomes clear that the doctrine does not deprive the district court of jurisdiction over any of [Potter's] claims. The legal wrong that [Potter] asserts in this action is not an erroneous decision by the state court [on] the [A.R.S. § 12-3201(A) motions] brought against [him] by [Meza, Taylor Robson, and Ortega], but the continued enforcement by [a combination of the Attorney General, county attorneys, and private parties] of a statute [Potter] asserts is unconstitutional. In other words, [Potter] asserts as a legal wrong 'an allegedly illegal act ... by an adverse party.' *Noel,* 341 F.3d at 1164. Under these circumstances, *Noel* makes clear that the *Rooker-Feldman* doctrine does not apply."[1]

---

[1] Plaintiff is presently subject to three vexatious litigant injunctions arising from three different authorities: (1) a *judicial* injunctive "Order" which the state court issued (FAC at 79); (2) an *administrative* injunctive order Judge Welty issued (JMTD, Exh. 15; Doc. 54, Affid.); and (3) an A.R.S. § 12-3201(B) *statutory* injunctive order mandated whenever an Arizonan is found vexatious. In Count One, Plaintiff brings Attorney General Kris Mayes to suit to challenge the constitutionality of the A.R.S. § 12-3201(B) statutory injunctive order, and § 12-3201 in general. He does *not* challenge the *judicial* injunctive Order, and

Disposing of any residual concern that Plaintiff "is seeking to bring a forbidden de facto appeal, ... [a] federal suit is not a forbidden appeal because it is 'inextricably intertwined' with something. Rather, it is simply a forbidden de facto appeal. Only when there is already a de facto appeal in federal court does the 'inextricably intertwined' test come into play: Once a federal plaintiff seeks to bring a forbidden de facto appeal, as in *Feldman,* the federal plaintiff may not seek to litigate an issue that is 'inextricably intertwined' with the state judicial decision from which the forbidden de facto appeal is brought. *Noel,* 341 F.3d at 1158. In this case, [Potter] is not bringing a forbidden de facto appeal because he is not alleging as a legal wrong an erroneous decision from the state court. Therefore, the 'inextricably intertwined' test does not come into play. Our conclusion remains the same even though [Potter's] complaint seeks relief from [non-judicial enforcement of] the injunction entered by the state court." *Maldonado,* 370 F.3d at 949-50. Once more, *Rooker-Feldman* is inapplicable. (FAC at 107, n. 26).

b. Claim Preclusion Does Not Apply

"[C]laim preclusion ... bars litigation in a subsequent action of any claims that were raised or could have been raised in the prior action." *W. Radio Servs. Co. v. Glickman*,

---

therefore remains subject to state contempt proceedings, as did *Maldonado*. In Counts Three, Four, and Five, Plaintiff brings Meza and Taylor Robson to suit partly on the basis that they misrepresented material facts to secure the judicial and statutory injunctive orders. Again, Plaintiff does *not* directly challenge the *judicial* injunctive Order, although he contends it was fraudulently secured. (FAC at 230-234, n. 38). *See Kougasian v. TMSL, Inc.,* 359 F.3d 1136, 1140-41 (9th Cir. 2004) ("A plaintiff alleging extrinsic fraud on a state court is not alleging a legal error by the state court; rather, he or she is alleging a wrongful act by the adverse party"). Further, Counts Three, Four, and Five are unaffected by the favorable or unfavorable nature of any state court judgment, and therefore remain cognizable claims even if extrinsic fraud had not been involved or ultimately cannot be proven. That said, the Court should take note that (1) no defendant disputes that extrinsic fraud is plausibly pleaded (Doc. 38; Doc. 51; Doc. 52), and (2) defendant Alane Ortega concedes that Counts Four and Five are plausibly pleaded (Doc. 54). In the end, Plaintiff's claims are not subject to the *Rooker-Feldman* doctrine.

123 F.3d 1189, 1192 (9th Cir. 1997).  "To determine the preclusive effect of a state court judgment, federal courts look to state law". *Intri-Plex Techs., Inc. v. Crest Group, Inc.*, 499 F.3d 1048, 1052 (9th Cir.2007).  Claim preclusion requires "(1) an identity of claims in the suit in which a judgment was entered and the current litigation, (2) a final judgment on the merits in the previous litigation, and (3) identity or privity between parties in the two suits." *Lawrence T. v. Dep't of Child Safety*, 438 P.3d 259, 262 (Ariz. Ct. App. 2019).

### i. There Is No "Identity of Claims"

There is no "identity of claims" between CV2022-008626 and this suit.  CV2022-008626 was a statutory special action involving public records where Defendants used an A.R.S. § 12-3201(A) joint motion to secure an injunctive order after the court determined they were not obligated to produce records beyond those produced shortly after that suit commenced. (FAC at 71-74, 223).  Defendants moved for that injunction pursuant to A.R.S. §§ 12-3201(E)(1)(a), (c), and (f) on the basis that Plaintiff was harassing them and prosecuting baseless "court actions", pointing to active litigation elsewhere.[2]  Plaintiff raised an as-applied defense on political speech grounds.  Rejecting the A.R.S. § 12-3201(E)(1)(a) allegation, the state court found Plaintiff vexatious per §§ 12-3201(E)(1)(c) and (f).  Defendants did not cross-appeal the § 12-3201(E)(1)(a) decision, thus <u>*forever waiving any claim or defense asserting Plaintiff harassed Meza or Taylor Robson*</u>.  See Ariz. R. Civ. App. P. 8(b) and 9(b).  The appellate court initially stayed the injunction but

---

[2] This Court can now see how A.R.S. § 12-3201 facially violates procedural due process for permitting Arizona courts to review non-final litigation when determining whether "court actions" reveal objective baselessness since Plaintiff recently secured a settlement proving CV2021-013210 was "active" and not "objectively baseless". (Doc. 49, Affid.; FAC at 136, 138) ("*In re Powell*, 851 F.2d 427, 432 (D.C. Cir. 1988) ('[T]he [reviewing c]ourt should be careful not to review pending cases … complaints that predated the [motion for an] injunction were still pending at the time the injunction was imposed and, as such, could not have been reviewed' for being a past baseless suit").

later affirmed on the sole basis that Plaintiff violated § 12-3201(E)(1)(c).[3]  Against this backdrop, there is no "identity of claims" for four dispositive reasons.

First, Plaintiff asserted a constitutional defense to a motion under the Speech Clause in CV2022-008626, not a "constitutional claim" under the Petition Clause in a pleading as he does here. (JMTD, p. 11).  Mounting a defense to a motion was all that Plaintiff could do and all that the state court, procedural rules, and A.R.S. § 12-3201 permitted.[4]  It should go without saying but the Speech Clause is not the Petition Clause, and a "defense" is not a "claim".  There can be no "identity of claims" without there being a prior "claim".  And Plaintiff will not use the "same evidence" to prove the claims in this suit that he used to inspect public records, or that he used when forced to mount an A.R.S. § 12-3201(A) motion defense, in the CV2022-008626 court.[5]

Second, Plaintiff had no obligation to hurriedly file a federal 42 U.S.C. § 1983 claim or a state common law Abuse of Process claim in the immediate wake of

---

[3] The appellate court declined to address whether the trial court erred when expressly re-writing § 12-3201(E)(1)(f) to read "... in similar litigation" instead of "... the same litigation" language which the state legislature enacted (FAC at 82, 121).

[4] Any suggestion that A.R.S. § 12-3201 required or permitted anything more is evidence that the statute violates due process for vagueness, not evidence of claim preclusion.

[5] "Arizona courts apply the 'same evidence' test" to evaluate the "identity of claims" between two suits.  *Lawrence*, 438 P.3d at 264.  "For an action to be barred, it must be based on the same cause of action asserted in the prior proceeding.  Arizona has applied a rather restrictive test to resolve this question: If no additional evidence is needed to prevail in the second action than that needed in the first, then the second action is barred." *Phoenix Newspapers, Inc. v. Dep't of Corr., State of Ariz.*, 934 P.2d 801, 804 (Ariz. Ct. App. 1997).  "Two causes of action which arise out of the same transaction or occurrence are not the same for purposes of res judicata if proof of different or additional facts will be required to establish them." *E.C. Garcia and Co., Inc. v. Ariz. Dep't of Revenue*, 875 P.2d 169, 179 (Ariz. Ct. App. 1993).  "Th[is] 'same evidence'' test is quite liberal, and permits a plaintiff to avoid preclusion 'merely by posturing the same claim as a new legal theory,' even if both theories rely on the same underlying occurrence." *Power Rd.-Williams Field LLC v. Gilbert*, 14 F. Supp. 3d 1304, 1309 (D. Ariz. 2014).

Defendants' § 12-3201(A) joint motion filed after a decision on the core of the public records case had been made (JMTD, p. 5; FAC at 223). The joint motion was just that – a motion. By rules of procedure, the motion could not be construed to be a complaint, an answer to Plaintiff's complaint, or a counterclaim for reasons including that the motion did not classify as any form of pleading. In simple terms, a motion is not a pleading. *See Parker v. United States,* 110 F.3d 678, 682, n. 9 (9th Cir.1997); Ariz. R. Civ. P. Rule 7 and 7.1 (distinguishing motions from pleadings, and motion practice from pleading practice). Nowhere do Defendants cite legal authority to support the unfounded inference that FAC Counts Three, Four, and Five must have been filed in some sort of compulsory claim or counterclaim to a motion. Plaintiff was not required to, and was not even able to, assert a claim or counterclaim against Defendants under the circumstances at hand. As a general matter, public records litigation does not provide a proper forum to assert civil claims for damages arising from events that occur during litigation, especially late in litigation. Again, courts adjudicate public records disputes as statutory special actions – i.e., writs of mandamus – pursuant to Ariz. R. Spec. Act. P. 2(b) and 3. *See* A.R.S. § 39-121.02(A). Defendants had not injured Plaintiff as described in Counts Three, Four, and Five when he first filed CV2022-008626. They resorted to First Amendment retaliation and abuse of judicial processes four months after the CV2022-008626 pleadings were closed, and after their misrepresentations[6] had helped secure a decision on records production. There is no compulsory claim or counterclaim under those circumstances.[7]

---

[6] *See State v. Coddington,* 135 Ariz. 480, 481, 662 P.2d 155, 156 (App.1983) (the term "misrepresentation" means the "concealment of what is true as well as the assertion of what is false"; i.e., fraudulent acts and fraudulent omissions).

[7] *See e.g., Anspach v. Meyer*, 2014 WL 345676 (D. Ariz. Jan. 30, 2014) ("When a party's counterclaim matures after the party files its pleading under Rule 13(a), the counterclaim is not considered compulsory although it may arise from the same transaction or occurrence as the opposing party's claim, and it is not subject to dismissal for failure to

Third, Defendants' tortious and fraudulent conduct continued during appeal, and persists even today where their stance shows no signs of pending candor. Defendants know, for instance, that (1) Meza's associates misrepresented a Medicaid contract's factual terms before the CV2022-014146 trial court to withhold records, but refused to admit their misrepresentation once discovered (FAC at 63-66); (2) Meza misrepresented facts before the CV2021-013210 court when, for instance, he said he was only paid as an "advisor" although a senior executive "client" later confirmed she paid him for "services as a fundraiser" (FAC at 77, 78, n. 21); (3) Meza's nonprofit "clients" repeatedly endured internal turmoil once unwary Board members discovered Meza's unlawful involvement (FAC at 22); (4) those same nonprofits abandoned Meza once the Medicaid fraud "Scheme" (FAC at 1-13) came to public light (FAC at 14-21); and (5) Meza has admitted what was always true but had been denied – Ameliorate, LLC is a "lobbying" firm (FAC at 7-10, 27, 28, n. 12) thru which Meza receives private pay to influence government acts.

Fourth, had Plaintiff attempted to bring civil claims in CV2022-008626 after the state court communicated its February 27, 2023 decision, he would have become subject to contempt of court proceedings and possible incarceration. Plaintiff can find no statute, rule, or common law doctrine which requires a *pro se* litigant to immediately bring claims or counterclaims for damages within a case initiated as a statutory special action,[8]

---

plead the claim at the time the initial Rule 13(a) pleading is served. Rule 13(a) does not require the defendant to file as a compulsory counterclaim a claim that hasn't accrued").
[8] A statutory special action to compel public records production is a vehicle that the state legislature created to provide a private cause of action for purposes of vindicating the public's right to monitor their government. *See Spokeo, Inc. v. Robins,* 578 U.S. 330 (2016) for a discussion of the distinction between vindicating private rights versus vindicating public rights. Private civil suits to vindicate private rights can produce compulsory counterclaims. But private causes of action to vindicate public rights are not conducive to compulsory counterclaims. A state actor who attacks a party's constitutional rights during public records litigation would not require, or even provide an appropriate

9

especially when opposing parties included anything like a public figure seeking to occupy the Governor's office, an entire legislative chamber, and a sitting legislator.[9] This totality of circumstances did not provide a "full and fair opportunity to litigate" any claims presented in this action. (JMTD, pp. 10-11). There is no claim preclusion.

### ii. The Judgment References a Statute Subject to General Challenge

Plaintiff brings a First Amendment facial challenge to A.R.S. § 12-3201; a general challenge which the Ninth Circuit permits. *See Noel v. Hall*, 341 F.3d 1148, 1157 (9th Cir. 2003) (a "facial challenge [i]s not 'inextricably intertwined' with the judicial decision of the local court [when] it [i]s a general challenge to the constitutionality of" a statute).

### iii. There Is No Identity or Privity Between Parties in the Two Suits

As to "identity or privity between parties in the two suits", Meza brought the § 12-3201(A) motion in CV2022-008626 where he was party in his official capacity, but Meza is sued here in his personal capacity. *See Adler v. Lewis,* 675 F.2d 1085, 1098 (9th Cir. 1982) ("State officials must be sued in their individual capacity in an action for monetary damages."). Meza thus lacks the common party "identity" requirement across both suits. As to "privity, that "is a legal conclusion designating a person so identified in interest with a party to former litigation that he represents precisely the same right in respect to the subject matter involved." *In re Schimmels,* 127 F.3d 875, 881 (9th Cir. 1997). It is well-established that a state official is not in privity with himself when, as here, he is sued in two different capacities in two different suits. *See Love v. Macomber*, No. 2:23-cv-00790-DJC-EFB (PC), 2023 WL 3645515 (E.D. Cal. May 25, 2023) ("res judicata does not

---

avenue for, the attacked party to file anything that could be construed to be a private counterclaim to vindicate private rights, much less a compulsory counterclaim. A separate civil suit to vindicate a party's private rights is required, as is the case here.

[9] CV2022-008626 involved Meza in his official capacity. Any possible claim or counterclaim for damages would have required naming Meza in his personal capacity.

apply where the parties in the two suits are sued in different capacities"); *Andrews v. Daw,* 201 F.3d 521, 525-526 (4th Cir.2000) (persons sued in their official capacity are not in privity with themselves in their personal capacity for purposes of claim preclusion).

### B. Plaintiff Can, and Does, State a Constitutional Claim Against Taylor Robson

Critically, Defendants concede Plaintiff plausibly pleads a 42 U.S.C. § 1983 First Amendment retaliation claim against Meza (Count Three; FAC at 76-82, 215-237). Regarding Taylor Robson, Defendants admit that Plaintiff pleads she "operated under color of law as a willful participant in joint activity with [Mr.] Meza and the House" but summarily assert that Plaintiff failed to "establish the requisite connection between Ms. Taylor Robson's litigation activities and any resulting constitutional claim". (JMTD, p. 13). They attack Plaintiff's theory of liability as "attenuated". (JMTD, p. 14).

"On a motion to dismiss, it is the defendant's burden to demonstrate that plaintiff has failed to state a claim." *Shay v. Apple Inc.*, 512 F. Supp. 3d 1066, 1071 (S.D. Cal. 2021). Defendants must do more than "provide summary arguments and analyses seeking dismissal". *Id*. Absent more, a court must conclude that movants "fail to meet [their] burden under Rule 12(b)(6) to prove that no claim has been presented". Here, Defendants merely provide insufficient "summary arguments" denying Plaintiff's "joint action" theory and thus fail to carry their burden to dismiss Taylor Robson from Count Three.

"The joint action test asks 'whether state officials and private parties have acted in concert in effecting a particular deprivation of constitutional rights.'" *Tsao v. Desert Palace, Inc.,* 698 F.3d 1128, 1140 (9th Cir. 2012). Joint action "can be satisfied either [1] 'by proving the existence of a conspiracy or [2] by showing that the private party was 'a willful participant in joint action with the State or its agents.'" *Id*. Although he pleads both (FAC at 223), Plaintiff focuses on the second condition - that Taylor Robson acted

11

with "intent" to cause a constitutional deprivation where, again, she was "a willful participant in joint activity with Meza and the [Arizona] House [of Representatives] when filing and prosecuting the A.R.S. § 12-3201(A) motion through appeal." (FAC at 218).

"[T]he joint action inquiry focuses on whether the state has 'so far insinuated itself into a position of interdependence with [the private party] that it must be recognized as a joint participant in the challenged activity." *Collins v. Womancare,* 878 F.2d 1145, 1154 (9th Cir. 1989). "Interdependence" can be shown (1) by "a substantial degree of cooperative action" between the state and a private party to accomplish a constitutional deprivation, *Id;* (2) when "the state knowingly accepts the benefits derived from unconstitutional behavior", *Gorenc v. Salt River Project Agric. Improvement & Power Dist.*, 869 F.2d 503, 507 (9th Cir. 1989); (3) where the state "has provided [the private party] significant encouragement, either overt or covert" to deprive a constitutional right, *Rawson v. Recovery Innovations, Inc.*, 975 F.3d 742, 748 (9th Cir. 2020); or (4) where facts show a "prearrangement between [a private party] and [the state], or that they were somehow acting as a team" when depriving a constitutional right, *Collins,* 878 F.2d at 1155-56 (*quoting Lee v. Town of Estes Park*, 820 F.2d 1112, 11145 (10th Cir. 1987)).

Each indicator is met for Taylor Robson, especially given that Defendants concede Count Three against Meza (FAC at 76-82 215-237). Plaintiff plausibly pleads "Meza's intentional acts caused <u>*irreparable*</u> and compensable injuries, making him liable for compensable and punitive damages for acting with malicious <u>*intent*</u> to <u>*retaliate against*</u>, obstruct, and chill <u>*Plaintiff's rights under the Petition Clause*</u>." (FAC at 217). "<u>*With the same intent and result, Robson also operated under color of law as a willful participant in joint activity with Meza and the House when filing and prosecuting the A.R.S. § 12-3201(A) motion through appeal*</u>." (FAC at 218). "<u>*Meza and Robson*</u> had no reason to file

and prosecute the A.R.S. § 12-3201(A) motion other than to chill Plaintiff's First Amendment rights given that Meza's factual misrepresentations on affidavit had already induced the trial court to grant summary judgment in defendants' favor." (FAC at 223). "*Meza's and Robson's joint* A.R.S. § 12-3201(A) motion and prosecution, including their efforts to uphold the resulting Order on appeal, were not legitimate petitioning activity immunized by the Petition Clause or the *Noerr-Pennington* doctrine. ... Again, there was no 'favorable judgment' to win in a public records lawsuit after the trial court denied additional records production, but *Meza and Robson proceeded with efforts to forever deny and deprive Plaintiff of his fundamental right of access to courts*." (FAC at 230). These facts demonstrate "joint action" between the state (Meza and the House) and Taylor Robson to deprive a right where (1) she and Meza "act[ed] as a team"; (2) Meza and the House provided her "significant encouragement"; (3) Meza and the House "knowingly accept[ed] the benefits derived from [her] unconstitutional behavior"; and (3) there was a "substantial degree of cooperation" to file and prosecute the § 12-3201(A) joint motion.

C. Plaintiff Can, and Does, Plausibly Plead Abuse of Process and Aiding and Abetting

Defendants challenge the plausibility of Counts Four and Five on the basis that Plaintiff cannot demonstrate (1) a "willful act in the use of judicial process ... not proper in the regular conduct of the proceedings", or (2) "an improper ulterior purpose" (JMTD, pp. 14-16). Attacking Count Four, they contend the Court should "give great weight" to their version of the facts (JMTD. p. 15). But courts do not weigh disputed evidence in favor of a dismissal movant in the summary judgment stage, much less the pleading stage. *See Anderson v. Liberty Lobby,* 477 U.S. 242, 257 (1986) ("the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge"). Courts also do not consider a defendant's version of the facts in a pleading. *See*

13

*Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018) ("defendants are [not] permitted to present their own version of the facts at the pleading stage").

The Court should have little problem concluding Plaintiff plausibly pleads both Defendants committed a "willful act" with the filing and prosecution of the joint § 12-3201(A) motion (FAC at 76-82).  As to the "not proper in the regular conduct of the proceedings" component, Meza and Taylor Robson prosecuted that motion on the basis that Plaintiff harassed them per § 12-3201(E)(1)(a) in a single public records suit.  This is "not proper in the regular conduct" of public records litigation for at least three reasons. <u>First</u>, it is "not proper" to request a vexatious litigant injunction that can only be issued upon a showing of a "pattern of harassment" (FAC at 137).  Parties to one suit cannot cite a "pattern".  And "harassment" is defined, "in a legal context", as "'[w]ords, conduct, or action . . . that, being directed at a specific person, annoys, alarms, or causes substantial emotional distress to that person and serves no legitimate purpose.'" (FAC at 203, 241).  Harassment allegations require examination of the "legitimate purpose" and motives behind the accused's actions.  This conflicts with public records law mandating record production and prohibiting examination of the requestor's purpose or motives.  *See* A.R.S. § 39-121 ('Public records and other matters in the custody of any officer shall be open to inspection by any person at all times during office hours.')"; *Bolm v. Custodian of Records of Tucson Police Dep't,* 193 Ariz. 35, ¶ 10, 969 P.2d 200, 204 (App.1998) (the "right to public records under [§ 39-121] is not conditioned on [a requestor's] showing, or a court finding, that the documents are relevant to anything") (FAC at 175-176).  <u>Second</u>, it is "not proper" for state actors to move for a vexatious litigant injunction in the "regular conduct of" public records "proceedings", especially after securing a favorable decision on disclosure (FAC at 223) because such motions violate the record requestor's right to

petition. In other words, as a matter of constitutional law, *Noerr-Pennington* immunity applies to every records request and requestor. (FAC at 213). A party's motives also must be examined to classify petitioning as "sham litigation", meaning § 12-3201(A) motions are "not proper" in public records litigation where, again, motives and purpose cannot be examined, by law. (FAC at 173-177). Record custodians instead may ask a court to grant a disclosure exception only if disclosure "might lead to substantial and irreparable private or public harm." *Carlson v. Pima Cty.,* 141 Ariz. 487, 491, 687 P.2d 1242, 1246 (1984). But any question of "harm" does not apply to the custodians. *Id*. Third, appellate court records show no instance, other than CV2022-008626, where a state actor, including a legislator or a legislative chamber, ever brought a § 12-3201(A) motion within A.R.S. § 39-121, *et seq*. proceedings.[10] This is strong evidence that vexatious injunctions do not reflect the "regular conduct of [public records litigation] proceedings". The § 12-3201(A) motion was "not proper' and quite "irregular". In sum, the "willful act" and the "not proper in the regular conduct of the proceedings" element prongs are plausibly pleaded.

Next, allegations of the "improper ulterior purpose" element plausibly speak to Defendants' malicious motives and intent for the following reasons. *First*, "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. Rule 9(b). *Second*, the admission that Plaintiff plausibly pleads Count Three against Meza confirms Plaintiff also plausibly pleads Abuse of Process (Count Four) against Meza, as those arise from the same facts evidencing ulterior improper purposes. *Third*, the state court found Plaintiff did not harass Defendants. *Fourth*,

---

[10] Should discovery reveal that no House member ever brought, or the House as a whole never brought, an § 12-3201(A) motion in a trial court during public records litigation, then Plaintiff would have factual and legal grounds to amend the FAC to add a 42 U.S.C. § 1983 "class of one" discrimination claim. *See Gerhart v. Lake Cnty., Mont.*, 637 F.3d 1013, 1021-23 (9th Cir.2011). *See* attached Affidavit.

Defendants concede Plaintiff plausibly pleads their extrinsic fraud on state courts, and Meza's and his associates' fraud Scheme. (FAC at 1-13, 98, n. 24). Thus, it is quite plausible that the "primary" and "ulterior improper purpose" of the § 12-3201(A) motion was to conceal the Scheme and intimidate Plaintiff (FAC at 222-224, 244). *Fifth*, Defendants offer no "proper" purpose beyond pointing in circular fashion to a "history of vexatious conduct" (JMTD, p. 15). But that "conduct" is "vexatious" per unconstitutional § 12-3201(E)(1) standards only. (FAC at 121, 128-187). That conduct is not "vexatious" per the constitutional *Ringgold* legal standards (FAC at 134-192; Doc. 49, pp. 10-14). And Plaintiff has *Noerr-Pennington* immunity for that same conduct because the Petition Clause protects it (FAC at 124-128). Plaintiff plausibly pleads Counts Four and Five.

### D. Defendants Do Not Have *Noerr-Pennington* Immunity

Defendants now embrace the virtues of *Noerr-Pennington* immunity seeking to invoke its Petition Clause guarantees. (JTMD, p. 8-10). The only thing this defense does is confirm Defendants always knew the Petition Clause's true scope, which § 12-3201 violates in every application. (FAC at 113-207, 217). That said, the First Amendment protects the people from its government, not the government from its people. Hence, *Noerr-Pennington* immunity only extends to state actors when genuinely performing "ombudsmen [services] for their constituents. In this capacity, they intercede, lobby, and generate publicity to advance their constituents' goals, ... [Courts] decline to interpret § 1983 as regulating this quintessentially 'political activity.'" *Manistee Town Ctr. v. City of Glendale,* 227 F.3d 1090, 1093-94 (9th Cir. 2000). Meza was in no way engaging in "political activity" in support of "constituents" when he devised the Scheme, intentionally and systematically defrauded Medicaid, made misrepresentations to state courts, aided and abetted others' misrepresentations to state courts, and mounted attacks on Plaintiff's First

Amendment rights. To the contrary, he and Taylor Robson prosecuted the § 12-3201(A) joint motion to conceal their unlawful activities. *Noerr-Pennington* does not immunize legislators who perform such self-serving administrative acts.[11] Further, Defendants' petitioning is subject to the sham litigation exception. (FAC at 230, n. 38). So even if immunity was potentially available, their petitioning conduct falls squarely under that exception. "In the adjudicatory sphere, ..., information supplied by the parties is relied on as accurate for decision making and dispute resolving. The supplying of fraudulent information thus threatens the fair and impartial functioning of these agencies and does not deserve [*Noerr-Pennington*] immunity" ... There is no [F]irst [A]mendment protection for furnishing with predatory intent false information to an ... adjudicatory body." (FAC at 232). Counts Three, Four, and Five survive dismissal on Plaintiff's plausible allegations, and on any dispute going to Defendants' undeveloped version of the facts, including facts which speak to immunity. *See Chamberlain v. Mathis,* 151 Ariz. 551, 554 (1986) ("If the existence of immunity turns on disputed factual issues, the jury determines the facts and the court then determines whether those facts are sufficient to establish immunity").

III. Comment On Docket Entry No. 47

The JMTD references Doc. 47 which cites California's vexatious litigant statute. That statute differs from § 12-3201 on language, legislative history, and due process. For example, Cal. Code Civ. Proc. § 391.7(a) permits a narrowly tailored judicial injunction, but A.R.S. § 12-3201(B) mandates a blanket statutory injunction. *See Moy v. U.S.*, 906 F.2d 467, 471 (9th Cir. 1990) (injunctions are constitutionally "overbroad [if] designed to prevent [a plaintiff] from filing any complaint in any case without leave of court").

---

[11] *See Fann v. Kemp in & for Cty. of Maricopa,* 515 P.3d 1275 (Ariz. 2022) describing how the Arizona Supreme Court distinguishes between state legislators' political acts and administrative acts.

DATED this 23rd day of July 2025.

By: <u>//s//</u>
Phillip Potter
Plaintiff
Pro Se