Phillip Potter
2301 N. 66th Street
Scottsdale, Arizona 85257
Phone: 480.459.0310
E-Mail: phillip.t.potter@gmail.com
Plaintiff
Pro Se

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Phillip Potter, | No. 2:25-cv-00663-PHX-DWL |
| Plaintiff, | |
| v. | **MOTION TO TAKE LIMITED JURISDICTIONAL DISCOVERY** |
| Robert Meza, et al., | |
| Defendants. | |

## OVERVIEW

Defendants sued in their personal capacities are individuals who engaged in tortious acts for the purpose of concealing participation in a legislator's fraud scheme. That legislator concedes Plaintiff has plausibly pleaded a 42 U.S.C § 1983 First Amendment retaliation claim. Thus, there is an Article III "case or controversy" before the Court. The § 1983 count arises in large part from planned attacks on, and malicious threats to, Plaintiff's constitutional rights, including his fundamental rights of family association and of access to the courts. Of note, one method of attack involved the

improper invocation of an unconstitutional statute.  Defendants Alane Ortega and Attorney General Kris Mayes filed Fed. R. Civ. P. 12(b)(1) motions to dismiss.  Ortega – one of the legislator's associates – challenges supplemental jurisdiction on the basis that state claims brought against her somehow do not arise from "the same nucleus of facts" as federal claims. (Doc. 52).  Attorney General Mayes – brought to suit in her official capacity to challenge the forementioned statute – asserts Plaintiff lacks jurisdictional standing to mount a First Amendment facial challenge to A.R.S. § 12-3201 because she plays no role in the statute's enforcement scheme, and Plaintiff cannot prove a history of the statute's enforcement and prosecution. (Doc. 38).  Proving that "history" is not a burden that Plaintiff bears since there is a presumption of enforcement which the state must factually overcome.  Regardless, Plaintiff asks the Court to permit him to conduct limited jurisdictional discovery to demonstrate whether, in speaking for the state, the Attorney General (1) expressly disavows enforcement of § 12-3201, and if so on what grounds, including adherence to the *Noerr-Pennington* doctrine; and (2) can produce an actual "record of nonenforcement" showing § 12-3201 has been "commonly and notoriously violated" but has fallen into "desuetude".  This discovery could be easily accomplished with a handful of written interrogatories, or a simple affidavit containing sufficient factual content.  As to Ortega, Plaintiff asks the Court to permit limited jurisdictional discovery to establish whether her conduct meets the "joint action" test sufficient to add her as a defendant to the 42 U.S.C § 1983 federal claim and therefore invoke original jurisdiction.  This limited jurisdictional discovery can be accomplished with simple records production and an oral deposition lasting no more than two hours.

PERTINENT PROCEDURAL BACKGROUND

Plaintiff filed the First Amended Complaint ("FAC", Doc. 14) after conferring

with the Attorney General's counsel who indicated that adding damages claims to the original complaint might cure any jurisdictional defects. The Court reviewed the FAC *sua sponte* and issued an Order to Show Cause instructing Plaintiff to demonstrate "why this action should not be dismissed for lack of subject-matter jurisdiction." (Doc. 26). Citing Ninth Circuit precedent, Plaintiff explained why the court has jurisdiction, and why the complaint's does not implicate *Younger* abstention or the *Rooker-Feldman* doctrine.[1] (Doc. 27). The Court allowed the case to proceed. The Court is now fully briefed on Ortega's dismissal motion (Docs. 52; 54; 56) and Attorney General Mayes' dismissal motion (Docs. 38; 49, 53). But neither defendant submitted affidavits, exhibits, or records supporting their fact-based arguments against jurisdiction.

ARGUMENT

I. Legal Standard

"Jurisdictional discovery 'should ordinarily be granted where pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary.'" *Laub v. U.S. Dep't of Interior,* 342 F.3d 1080, 1093 (9th Cir. 2003); *LNS Enterprises LLC v. Cont'l Motors, Inc.,* 22 F.4th 852, 864 (9th Cir.

---

[1] In *Maldonado v. Harris*, 370 F.3d 945 (9th Cir. 2004), the Ninth Circuit established that neither the *Rooker-Feldman* doctrine nor claim preclusion apply to facts indistinguishable from those presented in this case. Maldonado engaged in state litigation against a state agency. The agency prevailed on a statutory claim and secured an injunction that the state court and the state agency could <u>separately</u> enforce. Maldonado then challenged the underlying statute's general constitutionality in federal court seeking to permanently enjoin the agency's enforcement of the statute, and to permanently enjoin the agency's enforcement of the injunction. Critically, like Plaintiff, Maldonado did not ask the federal court to enjoin the state court from judicially enforcing the injunction, or to overturn the state court's judgment. Also like Plaintiff, Maldonado's requested relief still made him subject to contempt proceedings in state court. The Ninth Circuit found Maldonado's complaint withstood Fed. R. Civ. P. 12(b)(1) and (6) dismissal motions. This Court should ultimately reach the same conclusion here. (Doc. 55, pp. 3-11).

3

2022).

II. Jurisdictional Discovery is Warranted

Ms. Ortega "controvert[s]" facts which "bear[] on the question of jurisdiction" while Attorney General Mayes refers to "pertinent facts bearing on the question of jurisdiction" but that require "a more satisfactory showing".

A. The Attorney General Must Provide a More Satisfactory Showing of Facts

The Attorney General contends Plaintiff lacks jurisdictional standing because he does not have a "credible fear" of prosecution, asserting Plaintiff has not sufficiently demonstrated a "history of past prosecution or enforcement under the challenged statute" (Doc. 38, pp. 6-7). *See Chandler v. State Farm Mut. Auto. Ins. Co.,* 598 F.3d 1115, 1122 (9th Cir. 2010) ("standing ... pertain[s] to federal courts' subject matter jurisdiction."). The Court signaled it may be open to this argument (Doc. 47). However, precedential cases across circuit courts are clear and contrary. When a state officer calls to a statute's history of enforcement, the officer must produce facts sufficient to overcome the inherent presumption of enforcement. *See Antonyuk v. Chiumento*, 89 F.4th 271, 334 (2d Cir. 2023) ("Courts have not placed the burden on the plaintiff to show an intent by the government to enforce the law against it but rather presumed such intent in the absence of a disavowal by the government"). (Doc. 49, p. 3). Indeed, the Ninth Circuit holds that the state, not a plaintiff, must produce a factual "record of nonenforcement" therein proving two elements – that the challenged statute (1) has been "commonly and notoriously violated", and (2) "has fallen into desuetude". *S.F. Cnty. Democratic Cent. Comm. v. Eu,* 826 F.2d 814, 822 & n. 15 (9th Cir.1987) (quoting *Poe v. Ullman,* 367 U.S. 497, 502, 81 S.Ct. 1752, 6 L.Ed.2d 989 (1961)); *Libertarian Party of Los Angeles Cnty. v. Bowen*, 709 F.3d 867 (9th Cir. 2013). Arizona's Attorney General cleverly attempts to put the factual

burden for documenting "nonenforcement' on Plaintiff when, as a matter of law, the state has an obligation to overcome the presumption of enforcement, and she has not produced the requisite factual "record of nonenforcement". Any such record is solely under her control. The Court thus would greatly benefit from reviewing the actual "record of nonenforcement" if it exists, and from requiring Ms. Mayes to overcome the presumption of enforcement on the two necessary elements on factual grounds if she can do so.

Attorney General Mayes has also taken the position that jurisdiction lacks because she plays "no role" in the A.R.S. § 12-3201 "enforcement scheme" and, thus, is not a "proper defendant" (Doc. 38, p. 10). Yet, she contradicts herself on those same facts by also proclaiming she is "unlikely" to prosecute Plaintiff, and that Plaintiff's "prosecution would be more likely to come from a county attorney than from AG Mayes" (Doc, 38, p. 9). This inconsistency suggests the Attorney General recognizes that she plays some "role" but minimizes that role to avoid well-founded litigation. Critically, at no point has the Attorney General ever unequivocally disavowed enforcement. *See Peace Ranch, LLC v. Bonta,* 93 F.4th 482, 490 (9th Cir. 2024) (a credible threat determination "often rises or falls with the enforcing authority's willingness to disavow enforcement."). (Doc. 49, p. 3). Altogether, Mayes both denies a connection, and admits a connection, to enforcement of the challenged statute. Her ambiguous position is problematic since the applicable legal test requires the Court to determine whether the Attorney General has <u>any</u> connection to the enforcement of the unlawful statute – a "mere scintilla of connection" is sufficient. *Matsumoto v. Labrador*, 122 F.4th 787, 802 (9th Cir. 2024). (Doc. 49, p. 8). The Court would benefit from a "more satisfactory showing" of pertinent facts to clearly establish whether the Attorney General has a "scintilla of enforcement" connection to the challenged statute, and whether she unambiguously plays any role in

the statute's enforcement.

### B. Defendant Ortega Creates a Factual Controversy Which Bear on Jurisdiction

Ms. Ortega "controverts" facts which go to jurisdiction. She posits the frivolous defense that the case's state and federal counts do not arise from the same nucleus of facts. (Doc. 52). She advocates this position despite other defendants conceding that the case constitutes one "civil action" under 28 U.S.C. § 1367(a). (Doc. 51). Further, the Court already acted on its "independent obligation to determine whether subject-matter jurisdiction exists". *Ruhrgas AG* v. *Marathon Oil Co.,* 526 U. S. 574, 583 (1999). (Doc. 26). And the Court gave every indication that the complaint's facts and claims present "one constitutional case". *See Exxon Mobil Corp. v. Allapattah Services, Inc.,* 545 U.S. 546, 552, 559 (2005) ("[T]he jurisdictional statutes should be read broadly, on the assumption that in this context Congress intended to authorize courts to exercise their full Article III power to dispose of an 'entire action before the court [which] comprises but one constitutional case,' ... If the court has original jurisdiction over a single claim in the complaint, it has original jurisdiction over a 'civil action' within the meaning of § 1367(a), ... Section 1367(a) applies by its terms to any civil action of which the district courts have original jurisdiction, and the last sentence of § 1367(a) expressly contemplates that the court may have supplemental jurisdiction over additional parties.").

That said, despite her express focus on supplemental jurisdiction, Ortega creates a factual controversy going to original jurisdiction. This is because she seeks dismissal for lack of supplemental jurisdiction. (Doc. 52; Doc. 56). But a district court cannot dismiss a *pro se* complaint unless no amendment could possibly cure any defects including jurisdictional defects. *See Cato v. United States*, 70 F.3d 1103, 1106 (9th Cir. 1995) (a "pro se litigant must be given leave to amend his or her complaint, and some notice of its

deficiencies" before dismissal may be granted). Ortega's requested relief suggests no factual basis exists for Plaintiff to add her to the admittedly plausible 42 U.S.C § 1983 count although any such facts are exclusively in her possession. In other words, she has manufactured a controversy that goes to "pertinent facts bearing on the question of [original] jurisdiction." *Laub,* 342 F.3d at 1093. It is entirely possible that discoverable facts can show that Ortega is liable under the forementioned federal count based on a "joint action" theory. "The joint action test asks 'whether state officials and private parties have acted in concert in effecting a particular deprivation of constitutional rights.'" *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1140 (9th Cir. 2012). Joint action "can be satisfied either "by proving the existence of a conspiracy or by showing that the private party was 'a willful participant in joint action with the State or its agents.' Ultimately, joint action exists when the state has 'so far insinuated itself into a position of interdependence with [a private entity] that it must be recognized as a joint participant in the challenged activity.'" *Id* (citations omitted); *see also Collins v. Womancare*, 878 F.2d 1145, 1154 (9th Cir. 1989).

Jurisdictional "interdependence" can be shown (1) by "a substantial degree of cooperative action" between the state and a private party to accomplish a constitutional deprivation, *Id*; (2) when "the state knowingly accepts the benefits derived from unconstitutional behavior", *Gorenc v. Salt River Project Agric. Improvement & Power Dist.*, 869 F.2d 503, 507 (9th Cir. 1989); (3) where the state "has provided [the private party] significant encouragement, either overt or covert" to deprive a constitutional right, *Rawson v. Recovery Innovations, Inc.*, 975 F.3d 742, 748 (9th Cir. 2020); or (4) where facts show a "prearrangement between [a private party] and [the state], or that they were somehow acting as a team" when depriving a constitutional right, *Collins*, 878 F.2d at

1155-56 (quoting *Lee v. Town of Estes Park*, 820 F.2d 1112, 11145 (10th Cir. 1987)). While each of the four tests very well may be applicable once discovery is complete, the FAC puts tests one and four on the cusp. Jurisdictional discovery could identify facts sufficient to add Ortega as a defendant to Count Three. For instance, Plaintiff's allegations indicate a "prearrangement between [Ortetga] and [Meza], or that [those defendants] were somehow acting as a team". *See* FAC at 83 ("On August 25, 2021, and with full knowledge of the Scheme and of the NP1 CEO's disclosure to the House two days prior (which Meza attended), Ortega and Meza's counsel (and Meza himself, on information and belief) conferred via phone and email. During that communication, and in a series of communications dating back to April 2020, Ortega and Meza agreed (1) to intimidate Plaintiff, and (2) to pre-emptively discredit and damage him via factual misrepresentations presented in court filings; both in attempt to prevent criminal investigations into Meza and TD, and both serving as an extension of the Scheme agreement's second object. These efforts included the concerted use of, and the overt acts of filing, A.R.S. § 12-3201(A) motions across suits."). In addition, Plaintiff's allegations point to "a substantial degree of cooperative action" between Ortega and Meza. *See* FAC at 83-97. The Court would benefit from jurisdictional discovery to establish whether the FAC could be amended with a small number of discovered facts. Should additional facts show Ortega falls under the Court's original jurisdiction as a Count Three defendant, her supplemental jurisdiction defense would become moot.

III. Limited Jurisdictional Discovery is Warranted

A plaintiff may move for, and be granted, jurisdictional discovery by "describing with any precision how such discovery could be helpful to the Court." *LNS Enters. LLC v. Cont'l Motors, Inc.*, 22 F.4th 852, 858 (9th Cir. 2022).

8

A. Discovery Involving the Attorney General Could Be Helpful to the Court

Fed. R. Civ. P. 12(b)(1) motions are classified as "facial" or "factual." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). However, through her dismissal motion papers, the Attorney General disregards or subverts that classification system. She provides the narrative of a "factual" attack. But she does not support that narrative with any attached affidavits, exhibits, records, or verifiable facts outside the FAC. Accordingly, Attorney General Mayes has put the Court in a difficult position. On one hand, a defendant who factually challenges jurisdiction may present pertinent facts outside the complaint for the Court's consideration. *Id.* On the other hand, in the absence of a defendant actually presenting those independently verifiable facts, a plaintiff is entitled to have a complaint's facts accepted as true and construed in the light most favorable to him. *Mecinas v. Hobbs,* 30 F.4th 890, 895-966 (9th Cir. 2022).

Against this backdrop, limited jurisdictional discovery could be quite helpful to the Court, as follows. First, Plaintiff has requested a hearing to decide the dismissal motions. Hearings are time- and resource-expensive propositions for the Court and the parties. Discovery would be helpful to conserve those judicial resources and "to secure the just, speedy, and inexpensive determination of [this] action and [these dismissal] proceeding[s]". Fed. R. Civ. P. 1. The Attorney General's factual statements implicate the existence and availability of pertinent facts. She should have an actual "record of nonenforcement". Jurisdictional discovery would be helpful to the Court because it would produce that evidentiary record or force the Attorney General to acknowledge that no such record exists, meaning her statements were speculative and therefore of no value to the Court at this stage. The result would permit the Court to decide the Attorney General's dismissal request on the briefing papers rather than through a resource-

expensive hearing. In the ideal scenario, the Attorney General would withdraw this jurisdictional defense when faced with the specter of discovery.

Second, jurisdictional discovery would provide a factual record supporting or undercutting her position that A.R.S. § 12-3201 has been "commonly and notoriously violated", and "has fallen into desuetude". Absent evidence of these two factors, any "record of nonenforcement" is factually insufficient to grant dismissal. *S.F. Cnty. Democratic Cent. Comm.,* 826 F.2d at 822, n. 15. Once again, discovery would be helpful to the Court because it would produce the necessary evidentiary record or force the Attorney General to acknowledge that no such record exists, thus allowing the Court to decide the dismissal motion without any need for a hearing.

Third, jurisdictional discovery would create a factual record that also goes to the heart of Count One. Attorney General Mayes states she is "unlikely" to prosecute, and therefore Plaintiff lacks jurisdictional standing. The question then becomes what are the reasons that she is unlikely to prosecute. If the Attorney General is unlikely to prosecute because, at least in part because, as Plaintiff alleges, *Noerr-Pennington* immunity defeats A.R.S. § 12-3201 in a "substantial number of applications", then the challenged statute is facially unconstitutional. *See Moody v. NetChoice, LLC*, 144 S. Ct. 2383, 2398-99 (2024). (FAC at 123). Under these circumstances, jurisdictional discovery is intertwined with merits discovery, meaning jurisdictional discovery could be quite helpful to the Court because it also streamlines the case considerably. *See Mecinas*, 30 F.4th at 896 ("When 'deciding standing at the pleading stage, and for purposes of ruling on a motion to dismiss for want of standing, ... [if] the jurisdictional issue and substantive issues are so intertwined that the question of jurisdiction is dependent on the resolution of factual issues going to the merits, the jurisdictional determination should await a determination

of the relevant facts on either a motion going to the merits or at trial.").

### B. Discovery Involving Ms. Ortega Could Be Helpful to the Court

Ortega seeks a pointless and wasteful dismissal. She concedes Plaintiff plausibly pleads state claims including Abuse of Process (Count Four) and Aiding and Abetting Abuse of Process (Count Five). Count Five creates secondary liability for her based on the legislator's conduct as a primary tortfeasor. The nucleus of facts giving rise to the legislator's primary tort under Count Four are the same as those which give rise to the 42 U.S.C. § 1983 claim (Count Three). And the legislator concedes that the federal claim is plausibly pleaded. (Doc. 55, p. 11). There is no factual or legal basis for Ortega to raise a supplemental jurisdiction defense, especially since the Court has already reviewed the complaint for potential jurisdictional defects and concluded the supposed defect does not exist. Regardless, dismissal proceedings are ultimately pointless for any reason other than delay. Even if the Court somehow found it lacked supplemental jurisdiction, original jurisdiction is still quite possible with jurisdictional discovery. And "[d]ismissals for lack of subject-matter jurisdiction ... must be without prejudice, because a lack of jurisdiction deprives the dismissing court of any power to adjudicate the merits of the case." *Hampton v. Pac. Inv. Mgmt. Co.,* 869 F.3d 844, 846 (9th Cir. 2017). There is no point in the Court dismissing the case, or even considering dismissal, unless jurisdictional discovery can rule out, or rule in, any possibility of original jurisdiction under Count Three. Therefore, the proposed jurisdictional discovery could be helpful to the Court to save precious time and resources, and to permit Plaintiff to exercise his right to bring a single civil action against all possible tortfeasors.

### IV. Specific Discovery Requested

A request for jurisdictional discovery should "articulate the specific discovery [a

plaintiff] seek to conduct and how such discovery will enable them to make a prima facie showing of jurisdictional facts with respect to [the Defendant]." *Sharma v. Volkswagen AG,* 524 F. Supp. 3d 891, 905 (N.D. Cal. 2021).

The "specific discovery" Plaintiff seeks to take from the Attorney General is the production of records combined with responses to written interrogatories requiring her to (1) produce any and all "record of nonenforcement" of A.R.S. § 12-3201, including records showing that the statute (a) has been "commonly and notoriously violated", and (b) "has fallen into desuetude"; (2) respond to an interrogatory asking how she came to the conclusion that A.R.S. § 12-3201 (a) has been "commonly and notoriously violated", and (b) "has fallen into desuetude"; (3) respond to an interrogatory asking whether she has any role in the civil and/or criminal enforcement of A.R.S. § 12-3201, and what are the state constitutional and statutory authorities for that enforcement role; (4) respond to an interrogatory asking what are all the reasons she is "unlikely" to civilly and/or criminally prosecute Plaintiff for an A.R.S. § 12-3201 violation, including for reasons that Plaintiff is immune from prosecution under the *Noerr-Pennington* doctrine; and (5) respond to an interrogatory asking whether she is "unlikely" to civilly and/or criminally prosecute anyone for an A.R.S. § 12-3201 violation due to *Noerr-Pennington* immunity. This discovery will enable Plaintiff to demonstrate a prima facie showing that the Attorney Geneal is a proper defendant to bring to suit and that the state cannot overcome a presumption of enforcement, thus demonstrating imminent injury.

The specific discovery Plaintiff seeks to take from Ms. Ortega is the production of records (emails, text messages, encrypted messages, voicemail, etc.) documenting any communications between her and Defendant Robert Meza or his agents beginning in January 2020 and going to any "preplanned arrangement" or "cooperative action" on the

subjects of Plaintiff's petitioning rights (i.e., A.R.S. § 12-3201) or rights of family association (i.e., accusations of harassment and/or domestic violence).  Plaintiff also seeks to take an oral deposition of Ms. Ortega on the same subjects where that deposition should last no more than two hours with non-evasive responses.  This discovery will enable Plaintiff to demonstrate a prima facie showing that Ms. Ortega is liable for the 42 U.S.C. § 1983 count, meaning the Court has original jurisdiction and the defendant's supplemental jurisdiction defense is moot.

## CONCLUSION

Plaintiff is not required, and carries no burden, to prove a history of the challenged statute's enforcement and prosecution.  As a matter of law, the Attorney General must provide a factual "record of nonenforcement".  Jurisdictional discovery thus is warranted to determine whether that record exists.  Attorney General Mayes is also unclear as to whether she maintains any role in the enforcement of A.R.S. § 12-3201.  Jurisdictional discovery would provide requisite clarity.  Finally, Ms. Ortega offers the pointless and baseless defense that the Court lacks supplemental jurisdiction.  Jurisdictional discovery could provide grounds for original jurisdiction and efficiently moot that defense.

DATED this 28th day of July 2025.

By: //s//
Phillip Potter
Plaintiff
Pro Se