Brett W. Johnson (#021527)
Derek C. Flint (#034392)
Charlene A. Warner (#037169)
SNELL & WILMER L.L.P.
One East Washington Street
Suite 2700
Phoenix, Arizona 85004-2556
Telephone: 602.382.6000
Facsimile: 602.382.6070
Email: bwjohnson@swlaw.com
       dflint@swlaw.com
       cwarner@swlaw.com

*Attorneys for Defendant Karrin Taylor Robson*

Timothy A. Nelson (#016274)
THE NELSON LAW GROUP, PLLC
24 West Camelback
Suite A#541
Phoenix, Arizona 85013
Telephone: 602.421.2681
Facsimile: 602.456.9982
Email: tim@nelsonlawsolutions.com

*Attorney for Defendant Robert Meza*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Phillip Potter,<br><br>    Plaintiff,<br><br>v.<br><br>Robert Meza, et al.,<br><br>    Defendants. | Case No. 2:25-cv-00663-PHX-DWL<br><br>**REPLY IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT** |

Plaintiff's Response only confirms that his purported claims against Karrin Taylor Robson and Robert Meza ("Defendants") are nothing more than a frivolous continuation of the debunked arguments and litigation tactics that caused the Maricopa County Superior Court to designate him as a vexatious litigant in CV2022-008626 (the "State Proceeding"). Instead of contesting the bulk of the arguments in the Motion, the Response instead repackages irrelevant assertions from Plaintiff's various state court proceedings; falsely asserts that Defendants somehow "conceded" legal or factual issues; and provides misleading citations to cases that actually undermine Plaintiff's position. In doing so, the Response fails to adequately rebut any of the Motion's four grounds for dismissal.

<u>First</u>, despite the dispositive nature of Defendants' *Noerr-Pennington* argument, Plaintiff barely addresses it. Indeed, Plaintiff does not even attempt to contest that *Noerr-Pennington* bars his claims against Ms. Taylor Robson—a fact that, standing alone, warrants dismissal of all claims against her. As to Mr. Meza, Plaintiff attempts to argue that *Noerr-Pennington* does not apply to government officials, even though the very case on which he relies (*Manistee*)—and other Ninth Circuit precedent—confirm that it does.

<u>Second</u>, Plaintiff contends that claim preclusion does not bar his challenge to the constitutionality of the vexatious litigant proceedings. Yet he ignores the fact that he *did* raise constitutional challenges in those proceedings, and could have easily raised all the other claims he raises here, whether by amending or supplementing his pleadings.

<u>Third</u>, Plaintiff argues that Ms. Taylor Robson—a private citizen—somehow engaged in "joint action" sufficient to subject her to liability under 42 U.S.C. § 1983 by filing a joint motion in judicial proceedings with government parties. Yet he fails to explain how Ms. Taylor Robson somehow exercised the authority of the state by filing court documents related to legal arguments for which she agreed. He further neglects to address the actual legal cases cited in the Motion holding that the mere invocation of state legal procedures does not subject a private party to constitutional constraints.

<u>Fourth</u>, the Response contests the dismissal of Plaintiff's abuse of process claim by speculating about Defendants' motives in moving to designate him as a vexatious litigant.

- 1 -

But Plaintiff ignores that a party's motives in using the judicial process are irrelevant, so long as the process is used for the designated purpose—which it plainly was here.[1]

Accordingly, Defendants respectfully request that the Court dismiss all claims against them under Fed. R. Civ. P. 12(b)(6), without leave to amend, and enter an award of all attorneys' fees and costs under Fed. R. Civ. P. 11 and 42 U.S.C. § 1988(c).

## I.  Plaintiff's Claims Are Barred by *Noerr-Pennington.*

Despite the prominence—and dispositive nature—of the argument in the Motion that Plaintiff's claims are barred by *Noerr-Pennington*, the Response largely fails to address the issues presented. Indeed, Plaintiff does not make *any* argument as to how his claims against Ms. Taylor Robson somehow fall outside the purview of *Noerr-Pennington*. *See* Doc. 55 at 16–17. This alone warrants dismissing all claims against her.

With respect to Mr. Meza, Plaintiff contends (at 16) that *Noerr-Pennington* does not bar his claims because he alleges the doctrine only applies to government actors when they engage in "political activity" in support of their "constituents." But the case that Plaintiff cites for support, *Manistee Town Center v. City of Gilbert*, 227 F.3d 1090 (9th Cir. 2000), actually stands for the opposite proposition. In *Manistee*, the plaintiff argued that *Noerr-Pennington* did not apply to the defendants because they were "not private citizens but a government entity and government officials acting in their official capacities." *Id.* at 1093. The court expressly rejected this argument, holding that "the principle that led the Supreme Court to adopt the immunity principle in *Noerr* is *equally applicable to the petitioning by the Glendale city officials*." *Id.* (emphasis added).

To the extent Plaintiff is arguing that the holding of *Manistee* does not extend to a government official's litigation activity, that argument fails too. The Ninth Circuit has squarely addressed this issue, explaining that "[i]n *Kearney*, we extended *Manistee* to litigation activities by government actors and their attorneys by holding that conduct related to an eminent domain suit, which allegedly violated § 1983, was protected

---

[1] Plaintiff also attaches an affidavit to his Response, Doc. 55-1, that is irrelevant, save for its confirmation that Plaintiff was on notice that his claims against Defendants are frivolous—but forced Defendants to incur the expense of briefing this Motion anyway.

- 2 -

petitioning." *B&G Foods N. Am., Inc. v. Embry*, 29 F.4th 527, 536 (9th Cir. 2022) (citing *Kearney v. Foley & Lardner, LLP*, 590 F.3d 638, 644–45 (9th Cir. 2009)). These holdings contradict Plaintiff's position that *Noerr-Pennington* does not apply to Mr. Meza.[2]

Plaintiff also makes the conclusory statement (at 17), citing the FAC, that the narrow "sham" litigation exception precludes the application of *Noerr-Pennington*. Yet Plaintiff does not even attempt to address the arguments and case law set forth in the Motion explaining why the sham litigation exception does not apply: namely, that Defendants *prevailed* on the vexatious litigant motion. *See* Doc. 51 at 8–10; *Pro. Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 60 n.4 (1993) (a "winning lawsuit is by definition a reasonable effort at petitioning and therefore not a sham"). Again, judicially noticeable facts and records in the Motion show that Defendants prevailed on their vexatious litigant motion at every level. Doc. 51 at 5–7, 10. Plaintiff does not (and cannot) contest this fact, nor does he contest that it is judicially noticeable. *See* Doc. 55 at 17–18; Doc. 57 at 5 (acknowledging that judicial decisions are judicially noticeable). Accordingly, *Noerr-Pennington* requires dismissal of all claims against Defendants.

## II. Plaintiff's Claims Against Defendants are Barred by Claim Preclusion.

Because Plaintiff's claims must be dismissed under *Noerr-Pennington*, the Court need not address any of the remaining arguments in the Motion. Nevertheless, Plaintiff's Response confirms (at 6) that the § 1983 and abuse of process claims in the FAC stem from the same puzzling conspiracy that was considered and rejected by several Arizona courts. *See* Doc. 15, Ex. 10 at 15–16 ¶ 56. Under these circumstances, Plaintiff cannot contest that he had ample opportunity to raise these claims in state court, that the State Proceeding resulted in a final judgment, that he sought and was denied appellate relief, and that both

---

[2] Plaintiff's reliance on *Chamberlain v. Mathis*, 151 Ariz. 551, 554 (1986), is similarly misguided. *Chamberlain* was *not* a *Noerr-Pennington* case. The issue in *Chamberlain* was whether the immunity afforded to an Arizona cabinet official with respect to statements he made in a press release that the plaintiffs alleged were defamatory would be qualified or absolute. Significantly, the *Chamberlain* court specifically distinguished potentially defamatory press release statements from statements made in the context of a judicial proceeding, and made clear that the latter was subject to absolute immunity. *Id.* Thus, to the extent *Chamberlain* has any bearing on this case, it supports Defendants.

- 3 -

matters share the same parties. *See ProShipLine Inc. v. Aspen Infrastructures Ltd.*, 609 F.3d 960, 968 (9th Cir. 2010).

### A.   There is an "Identity of Claims" Between the Proceedings.

Plaintiff initially protests (at 6) that there is no "identity of claims" because he never had a "full and fair opportunity" to challenge Defendants' conduct related to the vexatious litigant proceedings, which he alleges would somehow involve different evidence than the public records litigation. To be clear, however, the relevant transaction is *not* between the underlying federal claims and State Proceeding as a whole. Rather, the common thread underlying both lawsuits is Plaintiff's theory that Defendants somehow jointly conspired to designate him as vexatious in an effort to retaliate against Plaintiff and deprive him of his constitutional rights. *See* Doc. 14 ¶¶ 80–81, 218, 223.

With this clarification, Plaintiff cannot meaningfully dispute that his claims against Defendants arose under the "same transactional nucleus of facts." *In re Imperial Corp. of Am.*, 92 F.3d 1503, 1506 (9th Cir. 1996). In both cases, Plaintiff would be required to provide the same evidence establishing that Defendants' motives for bringing the vexatious litigant motion were anything other than a good faith effort to stop Plaintiff from engaging in further vexatious actions. And, on multiple occasions in the State Proceeding, Plaintiff emphatically argued that "the order unconstitutionally infringes his First Amendment political speech rights" and operated as "retaliation for exercising his fundamental right to engage in core political speech." *See* Doc. 51, Ex. 10 at 15–16 ¶ 56; Doc. 55 at 6 (admitting that Plaintiff raised constitutional arguments during vexatious litigant proceedings). Because that question was already extensively litigated (and appealed) and resolved, Plaintiff is not permitted to retread that same ground here simply because he has repackaged the issue under tort law and a different constitutional provision.

Additionally, Plaintiff's suggestion that he did not have an opportunity to bring certain claims in the State Proceeding ignores that preclusion applies both to claims that were actually raised in the prior action *and to claims that could have been raised*. *See Stewart v. U.S. Bancorp*, 297 F.3d 953, 956 (9th Cir. 2002). Stated differently, "[i]t is

- 4 -

immaterial whether the claims asserted subsequent to the judgment were actually pursued in the action that led to the judgment; rather the relevant inquiry is whether they could have been brought." *Howell v. Hodap*, 221 Ariz. 543, 547 (App. 2009) (citation omitted, emphasis removed). And importantly, so long as a claim arises under the same nucleus of facts, claim preclusion still applies even if different legal theories are involved. *Id.* at 548 (noting that state tort claims were barred because they "[arose] out of the same transactional nucleus of facts, even though the legal theories [were] different" from the federal action). Thus, it does not matter that Plaintiff did not raise a Petition Clause challenge,[3] or any other as-applied challenges against Defendants, in the State Proceeding. Plaintiff undoubtedly had a "full and fair opportunity" opportunity to litigate each of those claims after Defendants filed their vexatious litigant motion, but failed to do so.

Rather than engage with the preclusion analysis in the Motion, Plaintiff attempts to circumvent it by raising several unconvincing counterarguments. All fail.

<u>First</u>, Plaintiff asserts (at 6–7) that he did not file new claims in the State Proceeding because he could not have been expected to assert "compulsory counterclaims" against the vexatious litigant motion, which is not a "pleading."[4] But this argument misunderstands the relevant procedure. If the vexatious litigant designation action resulted in any new "claims," he could have easily raised them by amending his complaint, or by supplementing it. *See* Ariz. R. Civ. P. 15(a), (d). In fact, Rule 15(d) expressly permits a party to file a supplemental pleading "setting forth any transaction, occurrence, or event that happened *after the date of the pleading to be supplemented*," even if the "original

---

[3] Although Plaintiff's Petition Clause challenge does not concern Defendants, Plaintiff nonetheless suggests (at 10) that his facial challenge to A.R.S. § 12-3201 is somehow exempt from the preclusion analysis. But facial challenges are subject to the same preclusion analysis as any other claim, and the case he cites for that premise, *Noel v. Hall*, says nothing to that effect. *See* 341 F.3d 1148, 1167 (9th Cir. 2003) (finding that several non-facial claims were precluded as unasserted compulsory counterclaims).

[4] Plaintiff's reliance on *Anspach v. Meyer*, CV-13-01877-PHX-DGC, 2014 WL 345676, at *7 (D. Ariz. Jan. 30, 2014), actually supports Defendants' position. In that case, the court recognized that a counterclaim is not compulsory if it had not yet accrued by the time the party filed its pleading under Rule 13(a). *Id.* Thus, even if the filing of a vexatious litigant motion was an event that somehow triggered the accrual of Plaintiff's counterclaim, he could and should have added it to the lawsuit after the motion was filed. He did not.

- 5 -

pleading is defective in stating a claim for relief or defense." Ariz. R. Civ. P. 15(d). Plaintiff offers no reason why he could not have availed himself of an amendment or supplemental pleading, and his failure to do so when he had the chance is fatal to his claims here.

Second, Plaintiff suggests (at 7–8) that he had no obligation to "hurriedly" file the claims "in the immediate wake of" the joint motion—presumably meaning before the state court issued its final judgment. But once a new claim accrues, that is exactly what the law requires—no matter whether a party is represented or is operating *pro se*. *Flynn v. Campbell*, 243 Ariz. 76, 83 (2017) ("courts hold unrepresented litigants in Arizona to the same standards as attorneys," including compliance with procedural rules). Contrary to Plaintiff's suggestion (at 8), the State Proceeding was not "closed" after the court dismissed his Complaint; the vexatious litigant motion was litigated for several months after the Complaint was dismissed. *See* Doc. 51 at 5–7. Thus, because Plaintiff has made clear that his supposed "injury" occurred after he filed the State Proceeding, but before the court issued its final judgment under ARCP 54(c), *see* Doc. 55 at 8, Plaintiff could have amended his complaint or filed a supplemental pleading at any time within that window.

Plaintiff also attempts to evade this obligation by asserting (at 8), without authority, that "public records litigation does not provide a proper forum to assert civil claims for damages arising from events that occur during litigation, especially late in litigation." However, nothing in A.R.S. § 39-121.02, or anywhere else, prohibits a party from bringing a public records lawsuit concurrently with other claims. In fact, parties frequently bring multiple claims for relief within the same litigation—which Plaintiff undoubtedly understands, given his litany of claims over the last several years. *E.g.*, *Moulton v. Napolitano*, 205 Ariz. 506, 515 ¶ 31 (App. 2003) (evaluating A.R.S. § 39-121.02 public records claim alongside other claims related to tax credits).

Third, Plaintiff harkens back to his bizarre conspiracy (at 9) by arguing that Defendants' "tortious and fraudulent conduct" is ongoing. But the merits of these accusations, even if taken as true (which they are not), are wholly irrelevant to the question of whether he had a "full and fair opportunity" to litigate issues arising from the vexatious

- 6 -

litigant proceedings during the State Proceeding.

And finally, Plaintiff excuses his failure (at 9–10) to raise all claims in the State Proceeding because he believes that, under the vexatious order, doing so would have subjected him to "contempt of court proceedings and possible incarceration." That claim is absurd on its face. Under Administrative Order No. 2023-159, the *only* restriction on Plaintiff's ability to bring new civil claims is that he must seek leave of court. *See* Doc. 51, Ex. 15. The order does not subject Plaintiff to contempt proceedings for attempting to file a new lawsuit; it merely gives the court discretion to reject the filing. *Id.* And even if it did, such a consequence would be speculative and entirely self-imposed.[5]

### B. Defendants Satisfy the Remaining Elements of Claim Preclusion.

As to the remaining elements, Plaintiff does not dispute that the State Proceedings resulted in a final judgment, or that there is an identity between the parties as to Ms. Taylor Robson. Instead, Plaintiff claims (at 10–11) that there is no identity or privity between the parties because Mr. Meza was named in his official capacity during the State Proceeding, but in his private capacity here. In essence, Plaintiff's theory is that he can sue a public official in his official capacity, lose, and then sue the same official in his personal capacity for having successfully defended the suit against him in his official capacity.

But Plaintiff cites no authority for this novel proposition. In fact, the cases he cites undermine it—and would require dismissal of Plaintiff's claims if they apply. For instance, in *Love v. Macomber*, 2023 WL 3645515, at *3 (E.D. Cal. May 25, 2023), the Court explained that individual liability under § 1983 "depends on personal participation in the alleged deprivation of rights." *Id.* Here, Plaintiff concedes (at Doc. 14 ¶ 26) that his records request to then-Rep. Meza was in Mr. Meza's official capacity. The same is true regarding

---

[5] On a related note, the Motion included a single-sentence footnote explaining that if the FAC is attempting to invalidate the vexatious litigant order—a proposition that is unclear on the face of the FAC—that challenge is barred. *See* Doc. 51 at 11 n.3. In the Response, Plaintiff seemingly disavows such an argument, stating that he "does not challenge the judgment finding him vexatious" under § 12-3201, and is not "ask[ing] the federal court to enjoin the state court from judicially enforcing" the vexatious litigant order. *See* Doc. 55 at 1, 3. These concessions obviate the need to address Plaintiff's straw-man argument (at 3–5) as to why *Rooker-Feldman* does not bar his claims.

- 7 -

his public records lawsuit against Mr. Meza. *See* Doc. 51 at Ex. 6. So even accepting Plaintiff's allegations as true (they are not), Mr. Meza's "alleged deprivation of rights" involved only official, not *personal* action. Thus, as with the public employees in *Love*, "any individual capacity claims against [Mr. Meza] must be dismissed for failure to state a claim." *Love*, 2023 WL 3645515, at *3. Because Plaintiff had a "full and fair opportunity" to litigate each of his claims, his attempt to resurrect them now is precluded.

### III.     Plaintiff Cannot State a Constitutional Claim Against Ms. Taylor Robson.

The Response continues to push Plaintiff's frivolous theory that Ms. Taylor Robson, a private citizen, is somehow subject to constitutional constraints and liability under § 1983. He even claims (at 11) that Ms. Taylor Robson somehow "conceded" that she was acting "under color of law" by filing the vexatious litigant motion—despite an entire section in the Motion to the contrary. *See, e.g.*, Doc. 51 at 13–14. She plainly was not.

As an initial matter, Plaintiff does not attempt to distinguish or otherwise address any of the cases cited in the Motion. He does not distinguish *Franklin v. Fox*, where the Ninth Circuit held that "private conduct abridging individual rights" does not implicate § 1983. *See* 312 F.3d 423, 444–45; Doc. 51 at 12. Nor does he distinguish *Hoai v. Vo*, where the court held that "mere recourse to state or local court procedures does not by itself constitute 'joint activity' with the state sufficient to subject a private party to liability under section 1983." 935 F.2d 308, 313 (D.C. Cir. 1991); Doc. 51 at 13; *see also Schucker v. Rockwood*, 846 F.2d 1202, 1205 (9th Cir. 1988) ("Invoking state legal procedures does not constitute 'joint participation' or 'conspiracy' with state officials sufficient to satisfy section 1983's state action requirement."). These cases are directly on point, and foreclose any claim that a private citizen like Ms. Taylor Robson can be subjected to liability under § 1983 merely by filing a joint motion with a government actor.

Plaintiff nevertheless contends (at 11–13), based on a patchwork of selective quotations from four cases, that Ms. Taylor Robson engaged in "joint activity" by "filing and prosecuting the A.R.S. § 12-3201(A) motion through appeal." But none of the cases Plaintiff cites support his position. The <u>first</u> case, *Tsao v. Desert Palace, Inc.*, 698 F.3d

1128 (9th Cir. 2012), is factually inapposite. *Tsao* involved a claim against a private corporation, Desert Palace, that received training from the local police department, received information from the police department's records unit, and had the department's authority to make arrests. *Id.* at 1140–41. That is a far cry from simply filing a joint motion.

The second case, *Collins v. Womancare*, 878 F.2d 1145 (9th Cir. 1989), actually undermines Plaintiff's position. There, the court held that the defendant, an abortion clinic, did *not* engage in "joint activity" with the state when it effected a citizen's arrest of the plaintiff, and a police officer issued citations based on the citizen's arrest. *Id.* at 1155–56. If anything, conducting an arrest has a far closer nexus to the state than filing a motion.

The third case Plaintiff cites, *Gorenc v. Salt River Project Agricultural Improvement & Power District*, 869 F.2d 503 (9th Cir. 1989), similarly harms his cause. That case held that the Salt River district—a political subdivision of Arizona—was not subject to liability under § 1983 as a state actor. *Id.* at 509. The court expressly rejected the argument that Salt River engaged in "joint action" with the state even though it has "limited sovereign powers" because the district's benefit "runs to private landowners and not the public generally." *Id.* at 507–08. Again, this case presents a much easier question, given that Ms. Taylor Robson is a private citizen with no formal connections to the government.

Finally, the fourth case on which Plaintiff relies, *Rawson v. Recovery Innovations, Inc.*, 975 F.3d 742 (9th Cir. 2020), is readily distinguishable. The plaintiff brought a § 1983 claim against a "nominally private" mental health facility and several individual providers based on his forcible commitment to the facility and involuntary injection of medications. *Id.* at 745, 750. The court found that the defendants were "clothed with the authority of the state" when they exercised the power to forcibly detain and treat the plaintiff—a factual scenario that is irrelevant on its face. *See id.* at 752.

Ultimately, "the inquiry" for purposes of determining whether a private party is subject to § 1983 is whether the defendant "exercised power 'possessed by virtue of state law and made possible *only because* the wrongdoer is clothed with the authority of state law." *Id.* at 748 (internal citations omitted) (emphasis added). Plaintiff plainly cannot make

- 9 -

this showing with respect to Ms. Taylor Robson; all claims against her must be dismissed.[6]

### IV. **Plaintiff Has Not and Cannot Plead a Plausible Abuse of Process Claim**.

Plaintiff's response to the abuse of process argument in the Motion does little more than recite the debunked arguments that he raised in the State Proceeding—ignoring the fact that Defendants prevailed at every stage of that litigation. *See* Doc. 55 at 13–16. Yet Plaintiff fails to address the fundamental flaw in this claim: that the Defendants plainly had a logical, legitimate explanation for filing the vexatious litigant motion.

As the Motion explains, to prevail on an abuse of process claim, Plaintiff must establish both a willful act in the judicial process *and* an ulterior purpose not proper in the regular conduct of the proceedings. *See* Doc. 51 at 14. To establish an improper ulterior purpose, Plaintiff must show both that the process has been used primarily to accomplish a purpose for which the process was not designed *and* that Defendants' actions "could not logically be explained without reference to the defendant's improper motives." (*Id.* (citing *Crackel v. Allstate Ins. Co.*, 92 P.3d 882, 887 ¶ 11 (Ariz. App. 2004); *Rahn v. City of Scottsdale*, 2016 WL 7508085, at *4 (Ariz. App. Dec. 30, 2016)). And "there is no action for abuse of process when the defendant uses the process for its authorized or intended purpose, 'even though with bad intentions,' or if 'there is an incidental motive of spite.'" *Morn v. City of Phoenix*, 730 P.2d 873, 875 (Ariz. App. 1986) (citations omitted).

The Response fails to make any showing that the vexatious litigant motion was brought for an improper purpose. The minute entries of the trial courts that considered the motions to find Plaintiff vexatious and the orders of the appellate courts that affirmed the vexatious designation make clear that the motion was filed for the precise purpose for which the vexatious litigant statute was designed—to put an end to expensive, wasteful, and vexatious litigation. And in any event, Defendants' conduct in filing the motion is "logically explained" by the desire to be free from having to respond to further vexatious filings from Plaintiff and the duty to limit taxpayer expense for unnecessary legal fees.

---

[6] Plaintiff does not contest that dismissal of the § 1983 claim against would deprive the Court of subject matter jurisdiction over the remaining claims against her. Doc. 51 at 14.

- 10 -

1   Thus, Defendants used the vexatious litigant motion for its "intended purpose"; Plaintiff's
2   conspiratorial musings about their motivations for doing so are irrelevant. *See id.*

3         Instead of attempting to rebut the actual arguments in the Motion, Plaintiff attempts
4   to inject irrelevant factual disputes into the disposition of this claim. For instance, he
5   contends (at 14) that "Meza and Taylor Robson prosecuted [the vexatious litigant] motion
6   on the basis that Plaintiff harassed them per § 12-3201(E)(1)(a) in a *single public records*
7   *suit*." (emphasis added). The falsity of this unsupported and speculative statement is
8   evident from the extensive, judicially noticeable litigation record before the Court.

9         <u>First</u>, Plaintiff's public records suit was his second frivolous lawsuit *against*
10  *Defendant Meza alone* in as many years. In fact, Plaintiff filed the public records case in
11  which the vexatious litigant order was issued *just one day* after the court in *Potter v. Doctor*
12  *et al.* (from which all of Plaintiff's fraud claims against Mr. Meza were dismissed with
13  prejudice) reluctantly denied a separate vexatious litigant motion filed against Plaintiff that
14  was brought by other parties to the *Doctor* litigation, and ordered that "all remaining
15  Defendants will be relieved of their traditional obligation to respond to Plaintiff's motions
16  unless specifically directed to do so by this Court." *See* Doc. 51, Ex. 5 at 2.

17        <u>Second</u>, it is undisputed that Plaintiff has filed numerous other lawsuits—including
18  the present one—in which he has falsely alleged that Mr. Meza engaged in various corrupt
19  activity. *See, e.g.*, Maricopa County case nos. CV2021-005501, CV2021-013210, CA-CV
20  2022-0441, and CV2022-014146. In each case, Plaintiff's allegations have been dismissed,
21  and he has been ordered to pay sanctions or attorneys' fees (which he never has done). *See*
22  Doc. 51, Ex. 8 at 4. As such, the State Proceeding was far from an isolated incidence of
23  vexatious conduct: it was part of a clear "pattern" of vexatious behavior that needed to be
24  curtailed, and there is no basis for Plaintiff's assertion that filing a vexatious litigant motion
25  in the State Proceeding was somehow an abuse of process.

## Conclusion

27        For the foregoing reasons, this Court should dismiss each of Plaintiff's claims
28  against Defendants and enter an award of attorneys' fees and costs in Defendants' favor.

Dated: July 30, 2025

SNELL & WILMER L.L.P.

By: */s/ Brett W. Johnson*
Brett W. Johnson
Derek C. Flint
Charlene A. Warner
One East Washington Street
Suite 2700
Phoenix, Arizona 85004-2556
Telephone:   602.382.6000
Facsimile:   602.382.6070

*Attorneys for Defendant Karrin Taylor Robson*

THE NELSON LAW GROUP, PLLC

By: */s/ Timothy A. Nelson (with Permission)*
Timothy A. Nelson
24 West Camelback
Suite A#541
Phoenix, Arizona 85013
Telephone:   602.421.2681
Facsimile:   602.456.9982

*Attorney for Defendant Robert Meza*