**KRISTIN K. MAYES**
**Attorney General**
(Firm State Bar No. 14000)

Hayleigh S. Crawford (Bar No. 032326)
Joshua A. Katz (Bar No. 039449)
Office of the Arizona Attorney General
2005 N. Central Avenue
Phoenix, AZ 85004-1592
(602) 542-3333
Hayleigh.Crawford@azag.gov
Joshua.Katz@azag.gov
ACL@azag.gov

*Attorneys for Defendant Arizona Attorney General Kristin K. Mayes*

# UNITED STATES DISTRICT COURT
# DISTRICT OF ARIZONA

| | |
|---|---|
| Phillip Potter, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br>v.<br><br>Robert Meza, et al.,<br><br>Defendants. | No. CV25-00663-PHX-DWL<br><br>**ATTORNEY GENERAL'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION TO TAKE LIMITED JURISDICTIONAL DISCOVERY** |

While Plaintiff's motion (Doc. 58) includes a large amount of irrelevant argument on other topics, the crux is a Rule 26(d)(1) request for early jurisdictional discovery.[1] The Court should deny the motion because it is untimely, the discovery Plaintiff requests is irrelevant and unduly burdensome, and the information he seeks is either privileged, publicly available, or non-existent.

In an effort to shift the burden of showing standing, Plaintiff also insists that AG Mayes must produce evidence to negate any prosecution he imagines possible and therefore fears. Not so. To establish pre-enforcement standing, Plaintiff bears the burden of showing a credible fear of prosecution. He has shown nothing but conjecture. As a matter of law, his allegations are insufficient, and so discovery will be of no avail.

Because a fishing expedition based on less than a hunch is not a valid discovery exercise, the Court should deny the motion.

## BACKGROUND

After an unsuccessful public records suit, Plaintiff was designated vexatious under A.R.S. § 12-3201 and barred from filing papers in any case in Arizona Superior Court without leave of the relevant court. *Potter v. Ariz. House of Reps.*, No. 23-0213, 2024 WL 368095, at *2 ¶ 14 (Ariz. App. Feb. 1, 2024); *see* Admin. Order No. 2023-159, Ex. 15 to Robson & Meza Mot. to Dismiss, Doc. 51 (July 11, 2025). On appeal to the Arizona Court of Appeals, he challenged both the statute's applicability to his case and constitutionality. *Potter*, 2024 WL 368095, at *8–10 ¶¶ 47–57. The court rejected both arguments and affirmed. *Id.*

Plaintiff then filed a federal court facial challenge to the vexatious litigant statute. *Potter v. Arizona*, No. 25-00016-PHX-KML (D. Ariz. filed Jan. 8, 2025). Plaintiff voluntarily dismissed that case. Doc. 24 (May 12, 2025).

---

[1] Although the parties have held a Rule 26(f) conference, the request is not moot, as Defendants all take the position that discovery should be delayed until after resolution of the motions to dismiss.

1

1    Separately, Plaintiff had already filed the present case as a § 1983 case against other defendants. After voluntarily dismissing his federal court facial challenge, he amended his existing complaint to add a facial challenge addressed to AG Mayes. First Am. Compl., Doc. 14 (May 12, 2025).

AG Mayes moved to dismiss the case on both jurisdictional and merits grounds. AG's Mot. to Dismiss, Doc. 38 (June 3, 2025). Specifically, AG Mayes challenged Plaintiff's standing and argued she had sovereign immunity. *Id.* at 6–11. That motion is fully briefed. *See* Docs. 49 (July 3, 2025), 53 (July 18, 2025).

As to standing, AG Mayes maintained that Plaintiff had demonstrated none of the three standing requirements. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992) (standing requires "injury in fact" that is "fairly traceable to the challenged action of the defendant" and that "likely" "will be redressed by a favorable decision" (cleaned up)).

First, AG Mayes maintained Plaintiff had not sufficiently alleged an injury. Doc. 38, at 6–7. He grounded his injury in perceived threats of enforcement, attempting to make out a pre-enforcement challenge. *See Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014) (discussing pre-enforcement challenges). That required him to allege "a credible threat of prosecution." Doc. 38, at 6; *see Driehaus*, 573 U.S. at 159. In turn, that called for a "concrete plan," a "specific warning or threat," and a "history of past prosecution or enforcement." Doc. 38, at 6; *see Libertarian Party of L.A. Cnty. v. Bowen*, 709 F.3d 867, 870 (9th Cir. 2013). AG Mayes argued he had shown none of those things. Doc. 38, at 6–7. Indeed, the statute he challenged was not a criminal statute, and so he was left to, implausibly, allege that a violation would serve as a predicate act for prosecution under statutes requiring compliance with court orders or prohibiting harassment or domestic violence.[2] *Id.*

---

[2] In addition, Plaintiff also raised the specter of prosecution for contempt, by way of a separate filing asking the Court to take "judicial notice" of that statute in a separate filing. Mot. for Jud. Notice, Doc. 57 (July 25, 2025). AG Mayes declined to respond to that filing. *See* Notice, Doc. 60 (Aug. 5, 2025).

2

1    AG Mayes also argued Plaintiff had not shown any injury to be fairly traceable to AG Mayes, nor had he shown that the relief he sought (enjoining AG Mayes) would redress his supposed injuries. Doc. 38, at 7–9.

Next, AG Mayes maintained that she was entitled to sovereign immunity because she lacked "some" "fairly direct" "connection" to the challenged statute's enforcement scheme. Doc. 38, at 10–11; *see Coal. to Def. Affirmative Action v. Brown*, 674 F.3d 1128, 1134 (9th Cir. 2012).

Separately, Plaintiff filed, and the Court denied, a motion for preliminary relief. Mot. for Prelim. Relief, Doc. 23 (May 14, 2025); Order, Doc. 47 (June 20, 2025). In denying that motion, the Court found Plaintiff had not "established a likelihood of success with respect to his standing to pursue a pre-enforcement challenge." |Doc. 47, at 13.

One difficulty was that the challenged statute had "already been enforced against Plaintiff," *id.* at 6, unusual for a pre-enforcement challenge. Plaintiff therefore was "left to argue that his intent to commit future violations of that court order … exposes him to a threat of criminal prosecution under other statutes." *Id.* Those statutes included laws requiring compliance with court orders and laws prohibiting domestic violence and harassment. But the Court was skeptical that Plaintiff could "invoke the pre-enforcement challenge framework under these unusual circumstances." *Id.*

The Court was also concerned that it may lack jurisdiction under the *Rooker-Feldman* doctrine. *Id.* at 7. And, should *Rooker-Feldman* not apply, the Court reasoned, it may be because Plaintiff lacks standing to bring a facial challenge at all. *Id.* at 9 ("For this reason, courts that have declined to apply *Rooker-Feldman* to facial challenges to vexatious litigant statutes have simply dismissed those challenges due to … a lack of standing to raise the facial challenge."). After all, Plaintiff's only connection to the statute is his vexatious litigant order, and he had the opportunity to challenge that. *Id.* at 6.

Finally, the Court took up Plaintiff's "credible threat of enforcement" on the assumption that the pre-enforcement challenge doctrine applied. *Id.* at 10 (quoting *Arizona v. Yellen*, 34 F.4th 841, 850 (9th Cir. 2022)). Of the three factors courts in the

Ninth Circuit consider when deciding on this third prong of the *Driehaus* test, the third was likely not satisfied because Plaintiff had not "go[ne] further and show[ed] that AG Mayes" had prosecuted domestic violence cases "where the underlying conduct giving rise to the criminal charge was the unauthorized filing of court documents in violation of a vexatious litigant order." *Id.* at 12.

The Court then found Plaintiff's case likely deficient on the merits, and denied preliminary relief without considering the remaining *Winter v. Natural Resources Defense Council, Inc.* factors. 555 U.S. 7, 20 (2008) (discussing four requirements for preliminary equitable relief, "that he is likely to succeed on the merits" first among them); Doc. 47, at 18 (citing *Roe v. Critchfield*, 137 F.4th 912, 922 (9th Cir. 2025)).

## ARGUMENT

Plaintiff has failed to show an entitlement to early jurisdictional discovery for three reasons.

First, his motion is untimely.

Second, the discovery he seeks is mostly irrelevant, and in any event privileged. *See* Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense."). What little is relevant is, to the extent it exists, publicly available; the purposes of discovery are not served by requiring AG Mayes to sift through information Plaintiff can access.

Third, more broadly, Plaintiff's argument for discovery is premised on AG Mayes bearing the burden to disprove his standing, and therefore the issue being the comparative weight of evidence. But Plaintiff bears the burden of showing he has standing, and the jurisdictional question here is legal. As a result, no discovery is proper.

### I. Plaintiff's motion is untimely.

"When a defendant has moved to dismiss a complaint on jurisdictional grounds, the appropriate time to request jurisdictional discovery is in opposition to the defendant's motion[.]" *Arizona v. Mayorkas*, 600 F. Supp. 3d 994, 1015 (D. Ariz. 2022) (quoting

1  *Cockrum v. Donald J. Trump for President, Inc.*, 319 F. Supp. 3d 158, 187–88 (D.D.C. 2018)) (alteration rejected).

Here, like the plaintiff in *Mayorkas*, Plaintiff did not request jurisdictional discovery in his opposition. He waited not only until after the motion was fully briefed, but also until after, like in *Mayorkas*, "the Court issued a detailed order that analyzed the sufficiency of the [] jurisdictional-related evidence for purposes of the [] request for preliminary injunctive relief." *Id.* As in *Mayorkas*, that order "strongly indicated" that Plaintiff "would ultimately be found to lack standing." *Id.* And, just as in *Mayorkas*, the request is therefore too late.

**II.     The discovery Plaintiff seeks is irrelevant, unduly burdensome, and privileged.**

Jurisdictional discovery should be denied where, as here, "it is clear that further discovery would not demonstrate facts sufficient to constitute a basis for jurisdiction." *Am. W. Airlines, Inc. v. GPA Grp., Ltd.*, 877 F.2d 793, 801 (9th Cir. 1989) (citation omitted); *see Laub v. U.S. Dep't of Int.*, 342 F.3d 1080, 1093 (9th Cir. 2003) (noting no abuse of discretion in such circumstances). In order to receive jurisdictional discovery, Plaintiff must "show why discovery would demonstrate facts sufficient to constitute a basis for subject matter jurisdiction." *Dearing v. Magellan Health Inc.*, No. 20-747-PHX-SPL, 2020 WL 7041048, at *2 (D. Ariz. Sept. 29, 2020).

To do so, he is required to "articulate the specific discovery [he] seek[s] to conduct and how such discovery will enable [him] to make a prima facie showing of jurisdictional facts with respect to" AG Mayes. *See MG Freesites Ltd. v. DISH Techs.*, 712 F. Supp. 3d 1318, 1335 (N.D. Cal. 2024) (citation omitted). The request must be based on more than a "mere hunch." *LNS Enters. LLC v. Cont'l Motors, Inc.*, 22 F.4th 852, 865 (9th Cir. 2022) (cleaned up). Nor are "bare allegations in the face of specific denials" enough. *Terracom v. Valley Nat'l Bank*, 49 F.3d 555, 562 (9th Cir. 1995) (citation omitted). Where public information is expected to be available, jurisdictional discovery is harder

1  to obtain, particularly without some factual predicate. *See MG Freesites*, 712 F. Supp. 3d at 1335.

Because this is a pre-enforcement challenge, Plaintiff must demonstrate that discovery will support "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder," needed to sufficiently allege that he "satisfies the injury-in-fact requirement." *Driehaus*, 573 U.S. at 159 (citation omitted). Here, Plaintiff has made no such demonstration; he has only a hunch. And even if the evidence he seeks existed, it would be publicly available, with no need to discover it from AG Mayes. And what he hopes to find is largely privileged, mostly irrelevant, and in any case the discovery is unduly burdensome. *See* Fed. R. Civ. P. 26(b)(1).

To wit, Plaintiff seeks the following specific discovery:

> **1) Produce any and all "record of nonenforcement" of A.R.S. § 12-3201, including records showing that the statute (a) has been "commonly and notoriously violated," and (b) "has fallen into desuetude.**

This request is irrelevant, and in any event impossible to fulfill. AG Mayes does not argue that the statute is unenforced, the premise of this discovery request (discussed at III.A). Rather, she argues that it is not enforceable by her on its own terms. She need not prove a negative by producing evidence to counter every scheme Plaintiff dreams up by which the statute could form a predicate for prosecution under other statutes.

The request cannot be fulfilled because it assumes exactly what Plaintiff must show to survive dismissal. Namely, that the Attorney General has some role in enforcement of A.R.S. § 12-3201, such that violations of that law, prosecuted or not, produce some sort of record to which she has non-public access.

This is incorrect. A.R.S. § 12-3201 is not, by its terms, a criminal statute. Violations of the law—that is, filings made without leave in violation of a vexatious litigant order—are not reported to the Attorney General. They just are struck from the record, at least as the initial response. AG's Mot. to Dismiss, Doc. 38, at 8; *see, e.g.*,

*McKee v. Lamore*, No. 21-0413, 2022 WL 517911, at *3 ¶ 12 (Ariz. App. Feb. 22, 2022) (sanctions, but no criminal prosecution, after vexatious litigant filed "more than a dozen documents without permission"). AG Mayes, consequently, has no "record of nonenforcement" to which Plaintiff does not have access through public court records.

> **2)** **Respond to an interrogatory asking how she came to the conclusion that A.R.S. § 12-3201 (a) has been "commonly and notoriously violated," and (b) "has fallen into desuetude."**

The interrogatory described here is irrelevant. Litigants state their legal positions, and reasons for those positions, in their briefing. *See United States ex rel. Amphastar Pharms, Inc. v. Aventis Pharma S.A.*, No. 09-23, 2013 WL 12138605, at *7 (C.D. Cal. 2013) ("Defendants do not have to respond with any of their legal conclusions."); *see also In re Convergent Techs. Secs. Litig.*, 108 F.R.D. 328, 338 (N.D. Cal. 1985) ("[I]f a complaint is not facially deficient, early discovery should focus on generating real world data and not on examining the parties' contentions about the legal implications of that data."). AG Mayes has done so. Plaintiff has not identified any way in which the Court's conclusion depends on how AG Mayes determined her legal position, as opposed to whether the Court agrees with that position.

To the extent this interrogatory would seek information about AG Mayes's conversations with her attorneys, or how those attorneys reached their conclusions, those are privileged as attorney-client communication and work product. Fed. R. Civ. P. 26(b)(3) (attorney mental impressions); Fed. R. Evid. 502 (attorney-client privilege and work product).

> **3)** **Respond to an interrogatory asking whether she has any role in the civil and/or criminal enforcement of A.R.S. § 12-3201, and what are the state constitutional and statutory authorities for that enforcement role.**

The interrogatory described here only seeks legal conclusions and is thus irrelevant. To the extent this interrogatory would seek information about AG Mayes's conversations with her attorneys, or how those attorneys reached their conclusions, what

7

it seeks is privileged as attorney-client communications and work product. Fed. R. Civ. P. 26(b)(3) (attorney mental impressions); Fed. R. Evid. 502 (attorney-client privilege and work product).

  **4) Respond to an interrogatory asking what are all the reasons she is "unlikely" to civilly and/or criminally prosecute Plaintiff for an A.R.S. § 12-3201 violation, including for reasons that Plaintiff is immune from prosecution under the *Noerr-Pennington* doctrine.**

The interrogatory described here only seeks legal conclusions and is therefore irrelevant. Indeed, it appears to be simply an argument dressed up as a discovery request. In any case, litigants state their legal positions and supporting argumentation in their briefing, not their discovery responses. To the extent this interrogatory would seek information about communications between AG Mayes and her attorneys, or information about how those attorneys reached their conclusions, those are privileged as attorney-client communication and work product. Fed. R. Civ. P. 26(b)(3) (attorney mental impressions); Fed. R. Evid. 502 (attorney-client privilege and work product).

  **5) Respond to an interrogatory asking whether she is "unlikely" to civilly and/or criminally prosecute anyone for an A.R.S. § 12-3201 violation due to *Noerr-Pennington* immunity.**

The interrogatory described here asks whether a specific legal doctrine applies to a hypothetical factual scenario. This is a pure legal conclusion, and AG Mayes's beliefs on this legal question are not relevant. Courts, not litigants, decide cases; litigants argue their positions in briefs, as AG Mayes has done and will continue to do. To the extent this interrogatory seeks information about AG Mayes's conversations with her attorneys, or how those attorneys reached their conclusions, those are privileged as attorney-client communications and work product. Fed. R. Civ. P. 26(b)(3) (attorney mental impressions); F.RE. 502 (attorney-client privilege and work product).

Thus, Plaintiff has identified no non-privileged, relevant evidence that he has a reason to think AG Mayes possesses.

**III.   Plaintiff's unsupported attempt to shift the burden does not support his request for discovery.**

   **A.   Plaintiff bears the burden to demonstrate standing.**

The Court can, and should, deny Plaintiff's motion solely because the discovery he seeks is inappropriate. But Plaintiff is also incorrect to cast the jurisdictional question as one dependent on evidence in the first place, providing another reason to deny his motion. In support of this mischaracterization, he also attempts to shift the burden of persuasion on standing.

"The party invoking federal jurisdiction bears the burden of establishing" the three elements of standing. *Lujan*, 504 U.S. at 560–61 (describing the "irreducible constitutional minimum of standing" as calling for "injury in fact" that is "fairly traceable to the challenged action of the defendant" and "likely" able to be "redressed by a favorable decision" (cleaned up)). At each stage of litigation, "each element must be supported in the same way as any other matter *on which the plaintiff bears the burden of proof*." *Id.* (emphasis added). Here, that means sufficiently pleading every element.

In a pre-enforcement challenge, a plaintiff "satisfies the injury-in-fact requirement where he alleges an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder." *Driehaus*, 573 U.S. at 159 (cleaned up). In this pre-enforcement challenge, then, Plaintiff must allege facts supporting each of these three prongs.

Each prong is therefore an element of standing, and so, at the pleading stage, Plaintiff must sufficiently allege that each is met. The third requires Plaintiff to "demonstrate a 'substantial threat' of enforcement." *Peace Ranch, LLC v. Bonta*, 93 F.4th 482, 489–90 (9th Cir. 2024) (quoting *Driehaus*, 573 U.S. at 164). This in turn "requires [him] to show" that three factors together weigh in favor of a credible threat: the presence of a "'concrete plan' to violate the law," "a specific warning or threat" from "the enforcement authorities, and a "history of past prosecution or enforcement." *Isaacson v.*

*Mayes*, 84 F.4th 1089, 1099 (9th Cir. 2023) (quoting *Thomas v. Anchorage Equal Rts. Comm'n*, 220 F.3d 1134, 1139 (9th Cir. 2000)) (en banc).

Plaintiff, then, cannot shift the burden by positing that a violation of his order will be prosecuted under some other law and demanding AG Mayes disprove his claim.

Plaintiff faults AG Mayes for failure to disavow, suggesting that this failure shifts the burden. But by pressing his arguments through non-challenged statutes, Plaintiff makes disavowal impossible. The Attorney General is not going to disavow enforcement of harassment or domestic violence statutes. Instead, those are simply not the right statutes for the situation.

The cases Plaintiff cites in his effort to shift the burden are inapposite. In *Antonyuk v. Chiumento*, the plaintiff did not need to show a specific intent by the government, directed at him, to prosecute for entering a sensitive location with a firearm. 89 F.4th 271, 334 (2d Cir. 2023), *cert. granted, vacated on other grounds sub nom. Antonyuk v. James*, 144 S. Ct. 2709 (2024). But the plaintiff there still showed evidence of a "realistic threat of arrest and prosecution" under statutes that he intended to break, and that were generally enforced in the circumstances. *Id.* at 335. Indeed, the defendants there had "announced their intention to enforce" the relevant law, and the police had warned of a "zero tolerance" policy. *Id.* Here, by contrast, the law at issue is not criminal and contains no provision for enforcement by AG Mayes. On its own terms, it simply disallows court filings. And Plaintiff's fanciful belief that the statute will form an underlying action for prosecution under other statutes lacks any precedent.

Nor did *San Francisco County Democratic Centennial Committee v. Eu*, 826 F.2d 814, 822 & n.15 (9th Cir. 1987), "hold[] that the state … must produce a factual 'record of nonenforcement,'" to deny standing to a plaintiff. *Cf.* Doc. 58, at 4 (quoting *Eu*, 826 F.2d at 822 & n.15). Instead, it repeated that "[a] plaintiff who challenges a statute must demonstrate a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement." *Eu*, 826 F.2d at 821 (cleaned up). That is precisely what Plaintiff has not shown. He challenges a statute that does not, by its terms, empower

10

anyone to prosecute him. Imagining that a violation could serve as a predicate act for another statute, he insists that AG Mayes search the books and determine that this has never been done, even though he himself cannot cite a single case. That is not what the law requires.

Plaintiff points to *Eu*'s discussion of *Poe v. Ullman*, 367 U.S. 497 (1961), where a challenge "was not justiciable because the ban had never been enforced" during a long history, and where the law was "commonly and notoriously" violated. *Eu*, 826 F.2d at 822. But AG Mayes is not arguing that Plaintiff lacks pre-enforcement standing because the law is old, unenforced, and "has fallen into desuetude." *Id.* at 822 n.15. *Cf.* Doc. 58, at 4. Rather, the challenged statute simply contains no enforcement provision relevant to AG Mayes. AG Mayes need not refute every imagined application of each other statute on the books; it is Plaintiff who must show a credible fear of prosecution, not simply throw together potential schemes without a demonstration any has ever been used.

**B.    Even if Plaintiff could shift the burden, the discovery he seeks would be inappropriate.**

In any case, shifting the burden would not make the discovery Plaintiff seeks appropriate. Even if AG Mayes had to prove she would not prosecute Plaintiff on his various theories, the information he seeks would be irrelevant to that question. AG Mayes's personal legal understanding, the reasons she believes what she believes on legal questions, and her musings on *Noerr-Pennington* shed no light on the subject not already shed by her arguments in her briefs. As to the enforcement record, the vexatious litigant statute is enforced by refusing to file papers or by striking them, not by calling the Attorney General; shifting the burden would not change that. The appropriate record remains the public court databases, and discovery is an inappropriate way to search for the evidence he needs.

## CONCLUSION

The Court should deny Plaintiff's motion for jurisdictional discovery.

**RESPECTFULLY SUBMITTED** this 15th day of August, 2025

                          **KRISTIN K. MAYES**
                          **ATTORNEY GENERAL**

By  /s/ *Joshua A. Katz*
     Hayleigh S. Crawford
     *Deputy Solicitor General*
     Joshua A. Katz
     *Assistant Attorney General*
     Office of the Arizona Attorney General
     2005 N. Central Ave.
     Phoenix, Arizona 85004

*Attorneys for Defendant Arizona Attorney General Kristin K. Mayes*