Phillip Potter
2301 N. 66th Street
Scottsdale, Arizona 85257
Phone: 480.459.0310
E-Mail: phillip.t.potter@gmail.com
Plaintiff
Pro Se

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| Phillip Potter, | No. 2:25-cv-00663-PHX-DWL |
|---|---|
| Plaintiff, | |
| v. | **REPLY TO MOTION TO TAKE LIMITED JURISDICTIONAL DISCOVERY** |
| Robert Meza, et al., | |
| Defendants. | |

Plaintiff provides a combined Reply to his Motion to Take Limited Jurisdictional Discovery (Doc. 58). Attorney General Kris Mayes' Response seems to provide facts sufficient for the Court to accept Plaintiff's jurisdictional standing, while Alane Ortega's Response confirms the Court should order the requested discovery. Otherwise, the Court would be wise to deny Ortega's Fed. R. Civ. P. 12(b)(1) motion and advance the case.

## REBUTTAL

### I. Attorney General Mayes Seems To Have Answered Jurisdictional Standing Questions

As the Court observed, the Attorney General has been somewhat evasive when it comes to providing facts sufficient to determine jurisdiction (Doc. 47). Specifically, she has taken ambiguous and contradictory positions as to whether she plays some role in enforcing A.R.S. § 12-3201, and whether Plaintiff faces a credible threat of enforcement from any combination of government officials and private parties authorized to enforce the challenged statute. *See Isaacson v. Mayes*, 84 F.4th 1089, 1100-01 (9th Cir. 2023) ("The combination of these potential threats – from the county attorneys, [] and private parties – satisfies the" credible threat element for imminent injury. The Court need only turn to the final two pages of the Attorney General's Response to recognize that Plaintiff has jurisdictional standing to challenge § 12-3201 because, as she expressly states, (1) "[t]he Attorney General is not going to disavow enforcement of harassment or domestic violence statutes"; and (2) "AG Mayes is not arguing that Plaintiff lacks pre-enforcement standing because the law is old, unenforced, and 'has fallen into desuetude.'" (Doc. 69, pp. 10-11). In direct terms, AG Mayes commits to enforcing the domestic violence statutes, including all A.R.S. § 13-3601 predicate proscribed conduct where A.R.S. § 12-3201 is not an unenforced statute that has fallen into "desuetude". Hence, she is now committed to the singular defense that she is not a "proper defendant" to bring to suit

because "the challenged statute simply contains no enforcement provision relevant to AG Mayes." (Doc. 69, p. 11). Her position now appears to be that § 12-3201 is not memorialized in the criminal code; therefore, the Court should ignore numerous state statutory and constitutional authorities which clearly outline her civil and criminal enforcement roles. (Doc. 14 at 98, 103, 110; Doc. 57, pp. 2-5).

A. Plaintiff Has Standing To Challenge A.R.S. § 12-3201; There Is A Credible Threat

"For pre-enforcement plaintiffs, the injury [that confers standing] is the anticipated enforcement of the challenged statute in the future." *Peace Ranch, LLC v. Bonta,* 93 F.4th 482, 486-87 (9th Cir. 2024). Such an injury exists "if: '(1) [the plaintiff] ha[s] alleged 'an intention to engage in a course of conduct arguably affected with a constitutional interest;' (2) but the conduct is 'proscribed by a statute;' and (3) 'there exists a credible threat of prosecution'". *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159, 134 S.Ct. 2334, 189 L.Ed.2d 246 (2014). The third *Driehaus* factor – credible threat – "is a 'quite forgiving' requirement that sets up only a 'low threshold'". *Antonyuk v. Chiumento*, 89 F.4th 271, 334 (2d Cir. 2023). The "low threshold" is crossed when the threat from statutorily authorized enforcers is not "imaginary or wholly speculative". *Driehaus,* 573 U.S. at 160. Here, the credible threat element is the only source of lingering dispute given that the Court previously recognized Plaintiff sufficiently pleads the first two *Driehaus* elements. (Doc. 47).

1. Plaintiff Has Demonstrated A Credible Threat

The Attorney General argues that Plaintiff is trying to "shift the burden" of demonstrating standing to her (Doc. 69, p. 9). That is not the case. The Ninth Circuit "take[s] a broad view of this [credible threat] factor", *Isaacson*, 84 F.4th at 1100, and established that there is a "presumption of enforcement" (Doc. 58, pp. 4-5) which the

state, not a plaintiff, must overcome. It is often said that the "credible threat" element "rises or falls with the enforcing authority's willingness to disavow enforcement." *Peace Ranch,* 93 F.4th at 490. (Doc. 49, p. 3). <u>*Disavowal is considered "an attitudinal factor" susceptible to discovery and to direct examination at trial for the purposes of deciding "credible threat"*</u>. *Id*. In other words, the Attorney General is obligated to state her position on the record. "Here, the state's refusal to disavow enforcement ... is strong evidence that the state intends to enforce the law and that [Plaintiff] face[s] a credible threat." *California Trucking Ass'n v. Bonta,* 996 F.3d 644, 653 (9th Cir. 2021). Again, the Attorney General makes it clear that she "is not going to disavow enforcement of harassment or domestic violence statutes." This statement is material because "[d]isobey[ing] or resist[ing] [a] lawful order, process or other mandate" violates § 13-2810(A)(2), which is listed as an A.R.S. § 13-3601 domestic violence predicate.

<u>a. A.R.S. § 12-3201 Operates As a Domestic Violence Statute In This Case; There Is Nothing "Fanciful" Or "Imagined" About The Threat Of Prosecution</u>

AG Mayes does not disavow enforcement of any domestic violence statutes but somehow, without explanation, retreats to the notion that "those are simply not the right statutes for the situation." (Doc. 68, p. 10). Ignoring the pleaded facts (Doc. 14 at 83-98) and the plain language of § 13-3601, she goes on to offer that Plaintiff has a "fanciful belief that the [vexatious litigant] statute will form an underlying action for prosecution under other [domestic violence] statutes [which] lacks any precedent." (Doc. 68, p. 10). The Attorney General then declares that she "need not refute every imagined application of each [] statute on the books; it is Plaintiff who must show a credible fear of prosecution, not simply throw together potential schemes without a demonstration any has ever been used." (Doc. 68, p. 11). Those are strong words. But her aggressive stance

cannot overcome the pertinent facts.  Those facts being that the Arizona Legislature has defined a statutory chain of causation beginning with an A.R.S. § 12-3201(B) violation and leading in unattenuated fashion to the Attorney General's civil and/or criminal prosecution of such "disobedience" or "resistance" as § 13-2810(A)(2) violations which, in turn, serve as § 13-3601 predicates.  AG Mayes is not at liberty to ignore or discredit a legislatively defined enforcement scheme as "thrown together".  This statutory chain makes the prosecution threat inherently plausible and credible as a matter of law (Doc. 49, pp. 6-7), and therefore is neither "fanciful" nor "imagined".  Indeed, Plaintiff does not "imagine" official records held in the Secretary of State's office declaring him a domestic violence perpetrator guilty of criminal harassment for filing court papers, and he does not "imagine" a private party's incessant threats to take his child should he continue to pursue well-founded litigation in civil court and family court. (Doc. 14 at 50-60, 83-98).

If the Attorney General's enforcement of § 12-3201 "lacks any precedent" (Doc. 68, p. 10), then this brings us right back to asking whether the law (1) has been "commonly and notoriously" violated but (2) "has fallen into desuetude", since those are the only two criteria capable of undermining the presumption of enforcement.  But we already know the answers because AG Mayes expressly does not, and cannot, rely on any declaration that the statute has been commonly and notoriously violated, but has fallen into desuetude (Doc. 68, p. 11).  Accordingly, she does not even attempt to overcome the presumption of § 12-3201 enforcement, meaning Plaintiff demonstrates a credible threat.  If the Attorney General's enforcement of the vexatious litigant statute "lacks any precedent" for other reasons – perhaps because the statute violates the Petition Clause, then AG Mayes should be required to make those reasons clear through written or verbal testimony in the name of judicial efficiency and the First Amendment.  Providing

4

ambiguous or contradictory responses in motion papers, actively avoiding discovery, arguing in circles, and mischaracterizing the legislature's enforcement scheme as "thrown together" or "fanciful" does not serve justice or judicial administration.

### b. The Attorney General Is A Proper Defendant

AG Mayes next contends, again without explanation, that "the vexatious litigant statute is enforced by refusing to file papers or by striking them, not by calling the Attorney General". (Doc. 68, p. 11).  This misguided statement appears to suggest that she plays no role in the § 12-3201 enforcement scheme.  As Plaintiff demonstrated through an unopposed motion to take judicial notice, any § 12-3201(B) violation can, for instance, trigger criminal contempt proceedings requiring the Attorney General's prosecutorial enforcement. (Doc. 57, pp. 2-5; Doc. 60).  And AG Mayes indisputably plays a state statutory and state constitutional role in enforcing all domestic violence statutes, including all listed predicates.  Nowhere in the plain language of § 12-3201, nor anywhere else in Arizona statutes, does it suggest that enforcement of the vexatious litigant statute is limited to "refusing to file court papers or by striking" court papers.  Indeed, as Plaintiff plausibly pleads, enforcement of the vexatious litigant statute goes far beyond that, including to criminal enforcement by "county attorneys" as the Attorney General already correctly observed. (Doc. 38, pp. 8-10).  AG Mayes also expressly recognized that she is but one of many government officials and private parties with individual and combined authority to prosecute Plaintiff for violations of § 12-3201(B) when declaring in her motion to dismiss that "prosecution would be more likely to come from a county attorney than from AG Mayes" (Doc, 38, p. 9).  There should be no doubt that Plaintiff plausibly pleads he faced and defeated domestic violence prosecutions only to have new prosecution threats emerge; the latest of which includes discovery of the

*non-judicial* Administrative Order No. 2023-159 only learned about in July 2025.  That Administrative Order patently violates the First Amendment as it enjoins two lawsuits (CV2021-005501 and FC2020-090224) separately deemed well-founded in state trial and appellate courts. (Doc. 14 at 58, 59, 86-88, 242).  *Bill Johnson's Rests., Inc. v. N.L.R.B.*, 461 U.S. 731, 742-43 (1983) (the Petition Clause guarantees "well-founded lawsuits ... may not be enjoined").  As such, Plaintiff is now enduring *actual* irreparable injuries by the "operation" of § 12-3201, in addition to being threatened with *imminent* irreparable injuries from the Attorney General's "enforcement" of the statute. (Doc. 69, p. 10).  He therefore demonstrates jurisdictional standing to bring suit against those who play any non-judicial role in the statute's enforcement scheme, including the Attorney General.

B. Plaintiff Has Standing To Challenge A.R.S. § 13-2921; There Is A Credible Threat

There was never any real doubt that Plaintiff had demonstrated jurisdictional standing to facially challenge A.R.S. § 13-2921.  Again, Plaintiff has defeated civil charges of § 13-2921 harassment but later was declared guilty of criminal harassment by the Secretary of State when defendant Alane Ortega orchestrated an unlawful plan to fabricate allegations as means to thwart discovery in FC2020-090224 and CV2021-005501. (Doc. 14 at 87-98).  The Attorney General has made it clear that she "is not going to disavow enforcement of [§ 13-2921] harassment". (Doc. 69, pp. 10).  All jurisdictional standing elements therefore are met for Plaintiff to challenge this statute.

C. Plaintiff Faces Credible Threats To Challenge A.R.S. §§ 12-3201 and 13-2921

At bottom, a credible threat is demonstrated when (1) the plaintiff has endured "past enforcement against the same conduct" including via judicial proceedings, *Driehaus,* 573 U.S. at 160; (2) "a challenged 'provision on its face proscribes' the conduct in which a plaintiff wishes to engage, and the state 'has not disavowed any

intention of invoking the ... provision'", *U.S.* v. *Sup. Ct. of N.M.,* 839 F.3d 888, 901 (10th Cir. 2016); (3) any of the state's "enforcement authorities [, including private parties,] have communicated a specific warning or threat", *Tingley v. Ferguson,* 47 F.4th 1055, 1067 (9th Cir. 2022); or (4) sufficient "other circumstances" exist in First Amendment cases. *Id* at 1068; *see also LSO, Ltd. v. Stroh*, 205 F.3d 1146, 1154-55 (9th Cir. 2000) (When the threat "implicates First Amendment rights, the inquiry tilts dramatically toward a finding of standing"). Each criterion is met in this case.

D. Jurisdictional Discovery Is Not Privileged, Burdensome, Irrelevant, Or Untimely

The Attorney General has abandoned her "record of nonenforcement" defense. *See* Doc. 69, p. 11 ("AG Mayes is not arguing that Plaintiff lacks pre-enforcement standing because the law is old, unenforced, and 'has fallen into desuetude.'"). Not only should this admission resolve the question of jurisdictional standing, but it also streamlines the case. Accepting the Attorney General's admission means Plaintiff no longer requires jurisdictional discovery (i.e., records production or interrogatories) going to any "record of nonenforcement" defense, including discovery of associated facts regarding "common and notorious" violations and "desuetude". However, AG Mayes now claims to have no enforcement role in A.R.S. § 12-3201. The Court should reject her ever-changing litigation posture altogether given that the defense is untenable on its face, and clearly contradicts her previously declared position that she had a lesser role in the statute's enforcement, not "no role". As such, if the Court requires additional jurisdictional facts to decide standing, it should order the Attorney General to answer the last three proposed interrogatories speaking to the reasons she is "unlikely" to prosecute Plaintiff for § 12-3201 violations. That discovery is relevant to the issues before the Court, is not burdensome in any way, and is timely. *See Arizona v. Mayorkas,* 600 F.

Supp. 3d 994, 1004, n.2 (D. Ariz. 2022) (While a "plaintiff [has[ the burden of proof [on complaint] that jurisdiction does in fact exist, ... [a]n exception to this rule arises 'where the jurisdictional issue and substantive issues are so intertwined that the question of jurisdiction is dependent on the resolution of factual issues going to the merits,' in which case 'the jurisdictional determination should await a determination of the relevant facts on either a motion going to the merits or at trial.'"). Furthermore, this discovery is not privileged. Again, the Ninth Circuit has determined that facts reflecting an Attorney General's statutory enforcement decisions go to discoverable "attitudinal factors". *Peace Ranch,* 93 F.4th at 490. The chance that AG Mayes' attitude toward enforcement may be shaped in some part through consultation with her attorneys does not convert discoverable facts into privileged attorney-client communications or work product.

II. The Court Should Order Alane Ortega To Provide Jurisdictional Discovery

Defendant Ortega acknowledges that she mounts a "facial attack" on jurisdiction. (Doc. 66, p. 2). In other words, Ortega does not challenge the factual accuracy or plausibility of the operative complaint's allegations which include allegations that (1) Meza devised a Medicaid fraud and public corruption scheme; (2) Ortega's client – Plaintiff's former spouse – was a knowing participant in Meza's scheme; (3) Meza inappropriately "helped" Ortega in litigation beginning at least by April 2020; (4) Ortega communicated with Meza in August 2021 in a pre-planned, coordinated effort to have Plaintiff found vexatious; (5) Ortega communicated Plaintiff's pending CV2021-013210 suit to a nonprofit's complicit CEO to enable Meza and the CEO to avoid investigations; (6) Ortega twice moved for Plaintiff to be found vexatious to intimidate Plaintiff and to assist Meza avoid criminal investigations; and (7) Ortega took a number of improper actions in FC2020-090224 and CV2021-005501 litigation pursuant to the object of a

tortious agreement she made with Meza (Doc 14 at 83).  These facts alone may be sufficient to plead Ortega's 42 U.S.C. § 1983 liability pursuant to a "joint action" theory with former State Representative Meza, in which case the Court would have 28 U.S.C. § 1332 original jurisdiction in addition to 28 U.S.C. § 1367 supplemental jurisdiction.

      Ms. Ortega believes the Court should accept the complaint's unchallenged factual allegations as true and should construe those allegations in a light most favorable to Plaintiff, yet somehow conclude that the allegations do not arise from the "same nucleus of operative facts" as those against Meza, including the operative facts that the two defendants unlawfully acted in concert under the terms of a pre-planned, conspiratorial agreement. (Doc. 14 at 60, 83-98, 249-255).  It is difficult to comprehend how Ortega can ask the Court to disregard factual evidence going to supplemental jurisdiction under those circumstances.  And her Fed. R. Civ. P. 12(b)(1) motion fails to explain how the Court could reach such a conclusion.  The undeveloped argument covers barely one paragraph and consists of the following: "But Potter alleges no facts sufficient to show that his state law claims [Abuse of Process, and Aiding and Abetting Robert Meza's Abuse of Process] derive from the same nucleus of operative fact as his federal-question claims or that the state and federal claims – against different defendants – would be expected to be tried in the same judicial proceeding.  None of Ortega's actions have any bearing on the federal claims, including the constitutionality of any Arizona statute.  The claims are not 'intertwined' as Potter alleges and would not be tried in the same proceeding." (Doc. 52, p. 5).  Those words contain no discernible argument against jurisdiction, just unsupported declarations and legal conclusions barely dressed up as facts.  The Court would be wise to (1) deny Ortega's dismissal motion as factually and legally insufficient; (2) proceed directly to discovery; and (3) moot Plaintiff's motion for limited jurisdictional discovery.

However, if the Court is open to entertaining Ortega's motion to dismiss, her Response objecting to the motion for jurisdictional discovery should be rejected. Ortega takes the position that she could not have engaged in "joint action" with Rep. Meza because (1) she "was not trained by Meza or authorized to perform his state functions"; (2) "[n]one of her actions in the family and civil law actions that underly her alleged abuse of process can conceivably have benefited Meza"; and (3) "Ortega's legal practice does not and cannot operate under color of state law". From these points, Ortega asks the Court to conclude that her "conduct in litigation – completely independent of any action or influence of Meza – on behalf of a private client in her private practice fails as a matter of law to satisfy the joint activity test". (Doc. 66, p. 5).

As an initial matter, "defendants are [not] permitted to present their own version of the facts at the pleading stage". *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018). The Court should reject Ortega's argument on this basis alone. That said, whether Meza "trained" Ortega is irrelevant to whether she engaged in joint activity with Meza in his role as an elected official. Members of the legislature are elected officials who undergo no "training" themselves. *See* Ariz. Const. art. IV. Next, Arizona legislators perform a variety of "official acts" which are performed under color of state law, by definition. *See Fann v. Kemp in & for Cty. of Maricopa,* 515 P.3d 1275 (Ariz. 2022). Among those official acts are "administrative acts" which include (1) maintaining public records that document constituent support, and (2) making those records available for inspection upon request as state law demands, as well as (3) defending against records requests in court. *See* A.R.S. § 39-121, *et seq.*. When he mistakenly thought it benefitted him, Meza admitted in court proceedings that his personal involvement with nonprofits was performed as a legislator for the express purpose of "constituent" support. (Doc 14 at

2, 13, 67, 77). Ortega's client in FC2020-090224, CV2021-005501, and CV2021-013210 was a key fraud scheme facilitator and personal recipient of illegal monies derived from that constituent support in the form of corporate sponsorships and state-administered Medicaid funds. (Doc. 14 at 1-13, 22, 29-43). And given the documents which Plaintiff was able to access despite Meza's and Ortega's Herculean efforts to actively conceal, there can be no doubt that this client covertly authorized funds to be passed onto Meza as an executive with three nonprofits and as the founder of a private "consulting" company. (Doc. 14 at 40). The suggestion that Ortega's unlawful efforts to conceal records revealing the extent and full nature of Meza's financial relationship with her client could not "conceivably have benefitted Meza" can easily be rejected on its face. Indeed, Meza has no legal background. He also experienced a falling out with Ortega's client because of his criminal activities (Doc. 14 at 30-42), yet somehow "helped" Ortega in litigation. *See* Exhibit A. There would be no conceivable reason for Ortega's client to seek out Meza to secure family court representation, no reason for Meza to "help" Ortega in any proceeding, no reason for Ortega to accept that "help", and no reason for Ortega to "cooperate" so closely with Meza over time had Ortega's litigation conduct not mutually "benefitted" both Meza and Ortega's client. That conduct was unlawful and performed for the primary purpose of concealing Meza's criminal activities as a state legislator. A private party's conspiratorial actions in concert with a government official performing official acts classifies as "under color of state law". *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1140 (9th Cir. 2012). The fact that Ortega's overt acts were in furtherance of the conspiracy is relevant to the "joint action" test. *Id*. The Court should order discovery to establish whether Ortega's "joint action" with Meza, committed both outside of litigation and inside of litigation regardless of case number, invokes original jurisdiction.

```
 1
 2                                          DATED this 18th day of August 2025.
 3
                                            By:  //s//
 4                                               Phillip Potter
                                                 Plaintiff
 5                                               Pro Se
 6
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
```

# Exhibit A

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

**azcentral.**

Business   E-Edition   Politics   USA TODAY   Obituaries   Travel                84°F

"I know his ex-wife," Meza said when asked why Potter made the claims against him. "I found her a lawyer and helped (the lawyer)."