**KRISTIN K. MAYES**
**Attorney General**
(Firm State Bar No. 14000)

Hayleigh S. Crawford (Bar No. 032326)
Joshua A. Katz (Bar No. 039449)
Office of the Arizona Attorney General
2005 N. Central Avenue
Phoenix, AZ 85004-1592
(602) 542-3333
Hayleigh.Crawford@azag.gov
Joshua.Katz@azag.gov
ACL@azag.gov

*Attorneys for Defendant Arizona Attorney*
*General Kristin K. Mayes*

*(Additional counsel on signature page)*

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Phillip Potter,<br>individually and on behalf of all others similarly situated<br><br>Plaintiff,<br><br>v.<br><br>Robert Meza, et al.,<br><br>Defendants. | No. CV25-00663-PHX-DWL<br><br>**JOINT RULE 26(f) REPORT** |

Pursuant to Federal Rule of Civil Procedure 26(f), the below-listed parties met and conferred by videoconference on August 5, 2025.  These parties now submit this joint discovery plan and report, following the format of the Court's standard Order Requiring a Rule 26(f) Report.  Proposed Case Management orders, setting forth the parties' respective proposals, are submitted herewith.  Defendants do not believe a Rule 16 conference with the Court is necessary.  Plaintiff, however, requests a Rule 16 conference with the Court.

**1.    The parties who attended the Rule 26(f) meeting and assisted in developing the Joint Case Management Report.**

The following parties attended the conference:

- On behalf of Plaintiff Phillip Potter: Mr. Potter, pro se.
- On behalf of Arizona Attorney General Kristin K. Mayes ("AG Mayes"): Mr. Joshua A. Katz.
- On behalf of Rep. Robert Meza: Mr. Timothy A. Nelson.
- On behalf of Karrin Taylor Robson: Mr. Derek Conor Flint.
- On behalf of Alane Michelle Ortega: Mr. Trevor B. Cook.

**2.    A list of all parties in the case, including any parent corporations or entities (for recusal purposes).**

The parties to the case are:

- Phillip Potter, Plaintiff; and
- AG Mayes;
- Rep. Robert Meza
- Karrin Taylor Robson
- Alane Ortega
- Does 1–60 inclusive (**terminated** by Court order 8/11/25); and
- The Honorable Joseph Welty (in his "official administrative capacity"), Defendants.

1

1

2

3

**3.      Any parties that have not been served and an explanation of why they have not been served, any parties that have been served but have not answered or otherwise appeared.**

4

5

6

7

**Plaintiff's Statement:** Counsel for the Presiding Judge of the Maricopa County Superior Court, Joseph Welty (in his official <u>*administrative*</u> capacity), has waived service and filed a Fed. R. Civ. P. 12(b)(1) and (6) motion hours after the August 5 meet and confer. (Doc. 67).

8

9

**Defendants' Statement:** The Honorable Joseph Welty did not participate in the conference and does not join this report.

10

11

**4.      A statement of whether any party expects to add additional parties to the case or otherwise amend pleadings.**

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**Plaintiff's Statement**: Plaintiff will amend pleadings as newly discovered facts dictate. For instance, should discovery reveal that Plaintiff is the only public records requestor that the House of Representatives, or Rep. Meza, has ever threatened with a vexatious litigant injunction, then Plaintiff could amend to add a 42 U.S.C. § 1983 "class of one" discrimination claim. *Village of Willowbrook v. Olech,* 528 U.S. 562, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000) (*per curiam*). Likewise, Plaintiff will amend should facts confirm that defendant Alane Ortega engaged in "joint action" with Rep. Meza sufficient to find her liable for any constitutional claims given that Meza concedes that Plaintiff plausibly pleads a 42 U.S.C. § 1983 First Amendment retaliation claim against him. *See Tsao v. Desert Palace, Inc.* 698 F.3d 1128, 1140 (9th Cir. 2012); *Ariz. Students' Ass'n v. Ariz. Bd. of Regents,* 824 F.3d 858, 867 (9th Cir. 2016). The Attorney General indicates Plaintiff can proceed with his First Amendment facial challenge to A.R.S. § 12-3201 should he add a "county attorney" as a "proper defendant". (Doc. 38).  Plaintiff will amend to add a county attorney as a defendant party should the Court deem it necessary.

26

27

**Defendants's Statements:**  AG Mayes has not yet entered an answer because of her pending motion to dismiss the case.  She does not expect to add additional parties to the

28

1    case or to otherwise amend her pleadings other than by filing an answer at an appropriate

2    time.  AG Mayes contests Plaintiff's above representations of her positions.

3    Rep. Meza has not entered an answer because of his pending joint motion to

4    dismiss the case.  He disputes the contention that he somehow conceded that Plaintiff

5    plausibly pleads a § 1983 claim against him. He does not expect to add additional parties.

6    Ms. Taylor Robson has not entered an answer because of her pending motion to

7    dismiss the case. She does not expect to add additional parties to the case.

8    Ms. Ortega has not entered an answer because of her pending motion to dismiss

9    the case. She does not expect to add additional parties to the case.

**5.    The names of any parties not subject to the Court's personal (or in rem) jurisdiction.**

No party to this report is aware of such parties.

**6.    A description of the basis for the Court's subject matter jurisdiction, citing specific jurisdictional statutes.**

**Plaintiff's Position:** The Court has original jurisdiction under 28 U.S.C. § 1331 based on a "federal question", while 28 U.S.C. § 2202 provides jurisdiction over Plaintiff's requests for prospective relief.  Additionally, 28 U.S.C. § 1343(a)(3) provides the Court with jurisdiction over 42 U.S.C. § 1983 allegations of "deprivation, under color of the laws and statutes of the State of Arizona, of fundamental rights secured by the United States Constitution."   The Court also has supplemental jurisdiction over state claims pursuant to 28 U.S.C. § 1367(a). (Docs. 14; 27; 49; 54; 55; 58; 64; 71).

**AG Mayes's Position:** As stated in her motion to dismiss the case, AG Mayes disputes jurisdiction because Plaintiff lacks standing and because one count is barred by sovereign immunity.  *See* Doc. 38, at 5–11.  On a statutory basis, however, 28 U.S.C. § 1331 provides the Court with "federal question" jurisdiction, and 28 U.S.C. § 2202 provides the Court with jurisdiction over Plaintiff's request for declaratory relief.  Additionally, 28 U.S.C. § 1343(a)(3) provides the Court with jurisdiction over the complaint's allegations

3

of "deprivation, under color of the laws and statutes of the State of Arizona, of fundamental rights secured by the United States Constitution."

**Rep. Robert Meza's Position:**  Rep. Meza concurs with AG Mayes' position as to subject matter jurisdiction.  In addition, as explained in Rep. Meza's and Ms. Taylor Robson's  joint motion to dismiss, the dismissal of Plaintiff's claim against Rep. Meza under 42 U.S.C. § 1983 deprives the Court of subject matter jurisdiction over any of Plaintiff's remaining state law claims.  *See* Doc. 51 at 13.

**Karrin Taylor Robson's Position:** Ms. Taylor Robson concurs with AG Mayes' position as to subject matter jurisdiction. In addition, as Ms. Taylor Robson explained in her motion to dismiss, the dismissal of Plaintiff's claim against her under 42 U.S.C. § 1983 deprives the Court of subject matter jurisdiction over Plaintiff's remaining state law claims. *See* Doc. 51 at 13.

**Alane Ortega's Position:** As argued in her briefing on her motion to dismiss, [Doc. 52 (Motion) and Doc. 56 (Reply)], Ms. Ortega contends the Court does not have supplemental jurisdiction over Mr. Potter's state-law claims against her pursuant to 28 U.S.C. § 1332, and there is no other basis for the Court's subject-matter jurisdiction over them.

**7.     A short statement of the nature of the case (no more than three pages), including a description of each claim, defense, and affirmative defense.**

**Plaintiff's Statement:** Plaintiff mounts First Amendment facial challenges to A.R.S. § 12-3201 for overbreadth and vagueness, and to A.R.S. § 13-2921 for vagueness.  The Court found Plaintiff satisfies traceability and redressability to prove standing (Doc. 47). Attorney General Mayes disputes the imminent injury element but now expressly refuses to disavow enforcement of either statute, meaning Plaintiff has shown a "credible threat" of enforcement and imminent injury to seek prospective relief confers. (Doc. 72).  *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159, 134 S.Ct. 2334, 189 L.Ed.2d 246 (2014).

Seeking prospective relief, Plaintiff claims § 12-3201 "lacks a plainly legitimate sweep", *Moody v. NetChoice, LLC,* 144 S. Ct. 2383, 2397 (2024), because each § 12-

3201(E)(1)(a)-(f) "vexatious conduct" definition is "*protected* petitioning activity" under the Petition Clause. *B&G Foods N. Am., Inc. v. Embry*, 29 F.4th 527, 535-41 (9th Cir. 2022). To lose First Amendment protection, petitioning must be *both* objectively baseless *and* improperly motivated. *Sosa v. DIRECTV, Inc*., 437 F.3d 923 (9th Cir. 2006). No § 12-3201(E)(1)(a)-(f) provision meets that *conjunctive* legal standard. *See USS-POSCO Indus. v. Contra Costa Cnty. Bldg. & Const. Trades Council, AFL-CIO*, 31 F.3d 800, 810-11 (9th Cir. 1994) ("The two parts of the [] test operate in succession: Only if the suit is found to be objectively baseless does the court proceed to examine the litigant's subjective intent." Misinterpreting *Bill Johnson's Rests., Inc. v. N.L.R.B.*, 461 U.S. 731 (1983), AG Mayes has tried to save the vexatious litigant statute by applying a *disjunctive* legal standard by taking the position that "baseless litigation is not immunized by the First Amendment right to petition". (Doc. 38).  Clarifying that exact passage, the U.S. Supreme Court held "in *Bill Johnson's* that [an adjudicative body] could enjoin baseless retaliatory [i.e., baseless *and* retaliatory] suits because they fell outside of the First Amendment and thus were analogous to 'false statements.' We concluded that '[j]ust as false statements are not immunized by the First Amendment right to freedom of speech, *baseless litigation is not immunized by the First Amendment right to petition*.' While this analogy is helpful, it does *not* suggest that the class of baseless litigation is *completely* unprotected: *At most*, it indicates such litigation should be unprotected 'just as' false statements are.  And while false statements may be unprotected for their own sake, '[t]he First Amendment *requires* that we protect some falsehood in order to protect *speech that matters*.' ... It is at least consistent with these 'breathing space' principles that we have *never* held that the *entire* class of objectively baseless litigation *may be enjoined or declared unlawful* ... Instead, in cases like *Bill Johnson's* [], our holdings *limited regulation* to suits that were *both* objectively baseless *and* subjectively motivated by an unlawful purpose." *BE & K Constr. Co. v. N.L.R.B.*, 536 U.S. 516, 530-31, 122 S.Ct. 2390, 153 L.Ed.2d 499 (2002).

A.R.S. § 13-2921 unconstitutionally lacks intent and has no saving clause.

1    Seeking damages, including punitive damages, Plaintiff claims Robert Meza, as a

2  government official, and Karrin Taylor Robson, as a state actor engaged in "joint action"

3  with Meza, unlawfully retaliated against Plaintiff for exercising his petitioning rights in a

4  mandamus action seeking public records that would shed light on Meza's corruption and

5  Medicaid fraud scheme. *Transp. Co. of Ariz. L.L.C. v. Carman in and for County of*

6  *Yavapai,* 253 Ariz. 499 (2022). He also claims Alane Ortega, pursuant to an agreement

7  with Meza, engaged in improper litigation conduct in family court and civil court to

8  prevent investigations into Meza and other scheme participants. Defendants are guilty of

9  Abuse of Process, and Aiding and Abetting. Restatement (Second) of Torts § 682 (1977).

10  **AG Mayes' Statement:** Plaintiff challenges the constitutionality of two Arizona statutes:

11  the vexatious litigant statute (A.R.S. § 12-3201) and the harassment statute (A.R.S. § 13-

12  2921). The vexatious litigant statute allows state courts to designate litigants "vexatious"

13  and impose a requirement that, prior to filing papers, designated litigants have their papers

14  approved by the court. A.R.S. § 13-2921 defines and criminalizes harassment.

15    AG Mayes has laid out her defenses in her motion to dismiss (Doc. 38), and briefly

16  summarizes them here. She contests Plaintiff's above representations of her positions.

17    First, Plaintiff lacks standing for all his claims, as he has not shown any of the

18  three elements of standing. As regards the vexatious litigant statute, Plaintiff argues his

19  injury arises from feared prosecution, but he has not shown that fear to be credible. *See*

20  *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1140 (9th Cir. 2000).

21    In his challenge to the harassment statute, Plaintiff's only allegation is that his ex-

22  wife was able to obtain address confidentiality, *see* A.R.S. § 41-161 *et seq.* That is not

23  an "invasion of a legally protected interest" belonging to Plaintiff. *See Lujan v. Defs. of*

24  *Wildlife*, 504 U.S. 555, 560 (1992).

25    Next, Plaintiff fails to allege that any injury is fairly traceable to any act or

26  omission of AG Mayes's, *see Bennett v. Spear*, 520 U.S. 154, 167 (1997), or how

27  enjoining AG Mayes will prevent the specific harms he alleges, arising from the actions

28  of, variously, the courts and the Secretary of State, *see Lujan*, 504 U.S. at 561.

1    Second, Plaintiff's challenge to the vexatious litigant statute is barred by sovereign

2    immunity.  *See Matsumoto v. Labrador*, 122 F.4th 787, 802 (9th Cir. 2024).

3    Third, and finally, the complaint fails to state a claim.  Arizona courts interpret the

4    vexatious litigant statute as carrying the same due process requirements imposed by the

5    Ninth Circuit on prefiling orders.  *See Madison v. Groseth*, 230 Ariz. 8, 14 ¶ 18 (App.

6    2012) (Timmer, J.).  The "plainly legitimate sweep," *United States v. Hansen*, 599 U.S.

7    762, 770 (2023) is far larger than any interference with protected speech, precluding an

8    overbreadth challenge.  *See Bill Johnson's Rests., Inc. v. N.L.R.B.*, 461 U.S. 731, 743

9    (1983) ("[B]aseless litigation is not immunized by the First Amendment right to

10   petition.").  And the statute gives fair warning of the prohibited conduct, at least in the

11   "vast majority of its intended applications."  *Tucson v. City of Seattle*, 91 F.4th 1318,

12   1330 (9th Cir. 2024) (cleaned up).

13   The harassment statute is not vague, particularly in light of its scienter

14   requirements.  *Accord State v. Brown*, 207 Ariz. 231, 237–38 ¶¶ 20–21 (App. 2004)

15   (Pelander, J.) (turning away similar challenge).

16   **Rep. Robert Meza's Position:** Plaintiff has brought claims against Rep. Meza for a

17   purported violation of the U.S. Constitution under 42 U.S.C. § 1983, and for abuse of

18   process and conspiracy to commit abuse of process. The sole factual basis for all of

19   Plaintiff's claims against Rep. Meza is the fact that he and Ms. Taylor Robson

20   successfully moved to designate Plaintiff as a vexatious litigant in Maricopa County

21   Superior Court. For the reasons set forth in the joint motion to dismiss (Doc. 51) and reply

22   in support of the motion to dismiss (Doc. 59), Plaintiff's claims are frivolous and subject

23   to dismissal. Rep. Meza therefore requests an award of attorneys' fees and costs under

24   Fed. R. Civ. P. 11 and 42 U.S.C. § 1988(c).

25   **Karrin Taylor Robson's Position:** Plaintiff has brought claims against Ms. Taylor

26   Robson for a purported violation of the U.S. Constitution under 42 U.S.C. § 1983, and

27   for abuse of process and conspiracy to commit abuse of process. The sole factual basis

28   for all of Plaintiff's claims against Ms. Taylor Robson is the fact that she successfully

7

moved to designate Plaintiff as a vexatious litigant in Maricopa County Superior Court. For the reasons set forth in Ms. Taylor Robson's motion to dismiss (Doc. 51) and reply in support of the motion to dismiss (Doc. 59), Plaintiff's claims are frivolous and subject to dismissal. Ms. Taylor Robson therefore requests an award of attorneys' fees and costs under Fed. R. Civ. P. 11 and 42 U.S.C. § 1988(c).

**Alane Ortega's Position:** Plaintiff has brought against Ms. Ortega state-law claims of abuse of process and aiding and abetting alleged abuse of process by Mr. Meza. The only factual basis for the abuse-of-process claims is actions Ms. Ortega took as the attorney for Mr. Potter's ex-wife in a family and civil litigation matters with absolutely no connection to Rep. Meza. The only factual basis for the aiding and abetting claim is alleged communications with Rep. Meza about public-records litigation in which he was a party and in which Ms. Ortega neither participated in nor affected in any way. Ms. Ortega believes the claims against her should be dismissed because this Court lacks subject-matter jurisdiction to hear them.

**8.    A listing of contemplated motions and a statement of the issues to be decided by those motions.**

**Plaintiff's Anticipated Motions:** Plaintiff has moved for jurisdictional discovery and for the Court to take judicial notice of certain facts establishing jurisdiction for prospective relief. (Docs. 57; 58; 60; 72). He has also asked the Court to summarily strike Robert Meza's and Karrin Taylor Robson's joint motion to dismiss for non-compliance with LRCiv 12.1(c) and the Court's preliminary order. (Docs. 64; 71). Plaintiff will likely file a preliminary injunction asking the Court to order his name be removed from the state's vexatious litigant list, and _non-judicial_ Administrative Order No. 2023-159 (only learned about in July 2025) to be revoked as it patently violates the First Amendment for enjoining two lawsuits (CV2021-005501 and FC2020-090224) separately deemed well-founded in state trial and appellate courts. (Doc. 14 at 58, 59, 86-88, 242). _Bill Johnson's Rests_., _Inc. v. N.L.R.B._, 461 U.S. 731, 742-43 (1983) (the Petition Clause guarantees "well-founded lawsuits...may not be enjoined"). Plaintiff will seek discovery pending defendants'

dismissal motions despite their declared intention to request a stay of discovery. "The Federal Rules of Civil Procedure do not provide for automatic or blanket stays of discovery when a potentially dispositive motion is pending." *Reveal Chat Holdco, LLC v. Facebook, Inc.,* No. 20-CV-00363-BLF, 2020 WL 2843369, at *1 (N.D. Cal. Apr. 10, 2020). "A party seeking a stay of discovery carries the heavy burden of making a `strong showing' why discovery should be denied." *Gray v. First Winthrop Corp.,* 133 F.R.D. 39, 40 (N.D. Cal. 1990). A stay request is often filed "where the party seeking a stay raises jurisdictional or immunity issues." *Calvary Chapel San Jose v. Cody,* No. 20-CV-03794-BLF, 2021 WL 5353883, at *1 (N.D. Cal. Nov. 12, 2021). District courts in the Ninth Circuit apply a two-part test to determine whether to stay discovery pending the resolution of a dispositive motion. "First, a pending motion must be potentially dispositive of the entire case, or at least dispositive on the issue at which discovery is directed. Second, the court must determine whether the pending motion can be decided absent additional discovery. If the Court answers these two questions in the affirmative, a protective order may issue. However, if either prong of this test is not established, discovery proceeds. In applying this two-factor test, the court must take a preliminary peek at the merits of the pending motion to assess whether a stay is warranted." *Reveal Chat Holdco,* 2020 WL 2843369, at *2 (cleaned up). Defendants will not be able to establish either prong. Their dismissal motions are not dispositive of the case or any issue. Meza has conceded Plaintiff plausibly pleads a 42 U.S.C. § 1983 First Amendment retaliation claim, meaning the case will move to the discovery stage. For the Attorney General, her jurisdictional defense has been lost on her own declaration (Doc. 72), while Ms. Ortega inappropriately asks the Court not to exercise supplemental jurisdiction. Meza is not eligible for his requested *Noerr-Pennington* immunity as a government official who admittedly engaged in litigation to achieve private goals, not to "advance public goals". *See B&G Foods.* Taylor Robson's requested immunity is fact-dependent and therefore requires discovery. Judge Welty's recent dismissal motion relies entirely on whether issuing Administrative Order 2023-150 was a "judicial act". But "[j]udicial immunity *only* applies to judicial acts, and

*not* to 'the *administrative*, legislative, or executive functions that judges may on occasion be assigned by law to perform.'" *Forrester v. White,* 484 U.S. 219, 227, 108 S.Ct. 538, 98 L.Ed.2d 555 (1988) (emphasis added).

**Defendants' Anticipated Motions:**

If Plaintiff serves discovery prior to resolution of their motions to dismiss, all Defendants anticipate moving to stay discovery.

AG Mayes's motion to dismiss the case is pending.  Should the case proceed to discovery, AG Mayes anticipates the need for various discovery motions, including for protective orders, and from third parties to quash subpoenas.  These would likely relate to privilege or to undue burden.  AG Mayes would also anticipate filing a motion for summary judgment at an appropriate time, should the case proceed to that point. Additionally, in the event that Plaintiff files any motions that implicate AG Mayes prior to the Court's ruling on her pending joint motion to dismiss, AG Mayes will request the Court enter an order relieving her of the obligation to respond to any of Plaintiff's filings unless the Court orders a response or unless the filing relates to her pending motion.

Ms. Taylor Robson and Rep. Meza anticipate filing a motion to designate Plaintiff as a vexatious litigant. Additionally, in the event that Plaintiff files any motions that implicate Ms. Taylor Robson or Rep. Meza prior to the Court's ruling on their pending joint motion to dismiss, Ms. Taylor Robson and/or Rep. Meza will request that the Court enter an order relieving them of the obligation to respond to any of Plaintiff's filings unless the Court orders a response. Of note, similar orders were entered by the Maricopa County Superior Court to mitigate the time and expense of responding to Plaintiff's vexatious filings.

Ms. Ortega will also request that the Court enter an order relieving her of the obligation to respond to any of Plaintiff's filings implicating her while her motion to dismiss is pending, unless the filings are related to the motion. If the Court finds and exercises supplemental jurisdiction over Plaintiff's state-law claims against Ortega and the matter proceeds to discovery, Ms. Ortega anticipates the need for a protective order

and discovery motions related to protection of privilege and avoiding undue burden. In that case, she also anticipates filing a motion for summary judgment at the appropriate time.

**9.      The prospects for settlement, including whether the case is suitable for reference to a United States Magistrate Judge for a settlement conference.**

Plaintiff is willing to settle, prefers to settle, and believes the case is suitable for reference to a private mediator or to a Magistrate Judge for a confidential settlement conference.  Defendants do not see a prospect of settlement.

**10.     The status of any related cases pending before this or other courts.**

The parties are not aware of any pending related cases.

**11.     A discussion of any issues relating to preservation, disclosure, or discovery of electronically stored information ("ESI"), including the parties' preservation of ESI and the form or forms in which it will be produced.**

**Plaintiff's Position:** Plaintiff expects there will be considerable discovery, including in the form of ESI, some of which may need to be professionally recovered given the nature of the claims, certain defendants' demonstrated tendency to mislead courts, clear motive to keep evidence from coming to light, and indications that certain defendants and/or third parties have already attempted to conceal or destroy ESI.

**Defendants' Position:** Defendants do not anticipate large amounts of ESI discovery, and believe the rules in Fed. R. Civ. P. 34, supplemented by the Court's standard protective order, are sufficient.  The parties will meet and confer to suggest any changes to that order prior to its entry, particularly in light of Plaintiff's pro se status.

**12.     A discussion of any issues relating to claims of privilege or work product.**

**Plaintiff's Position:** Plaintiff anticipates certain defendants will raise claims of privilege or work product. The Attorney General recently raised those issues in her Response for jurisdictional discovery. (Doc. 66). Plaintiff also anticipates Ms. Ortega will argue attorney-client privilege, but she and her client waived those defenses through their own communications with third parties, and that privilege is subject to the crime-fraud

exception given that Ms. Ortega's legal services were used to further crimes and/or frauds, and to commit intentional torts. Plaintiff anticipates numerous and ongoing discovery disputes, repeated hearings, multiple challenges to privilege logs, and the likely need for *in camera* document review. These concerns call to the need for a Rule 16 conference to ensure efficient use of judicial resources.

**Defendants' Position:** Based on Plaintiff's representations as to what he will seek in discovery, and the nature of the case, Defendants anticipate a number of privilege claims in the course of discovery, and will appropriately produce a privilege log. The parties will confer regarding privilege disputes, and will file dispute summaries if unable to reach agreement.

**13.    A discussion of necessary discovery, which should take into account the December 1, 2015 amendments to Rule 26(b)(1) and should include:**

        **a.    The extent, nature, and location of discovery anticipated by the parties and why it is proportional to the needs of the case.**

**Plaintiff's Position:** Plaintiff anticipates and requires extensive discovery to make his case, which is of far greater proportion than Defendants will acknowledge. The Arizona Legislature re-labeled a sanctions statute into a vexatious litigant statute which government entities and politically powerful persons are now weaponizing to chill and to punish pro se litigants' First Amendment right to petition. A.R.S. § 12-3201 lacks substantive and procedural due process per Ninth Circuit and Supreme Court precedent. If the Court finds the statute constitutional, then we can expect other states to follow Arizona's lead in enacting a constitutionally deficient statute rather than follow California's lead where that state's vexatious litigant statute provides robust substantive and procedural due process. Accordingly, the Attorney General and Judge Welty must provide discovery and endure the crucible of trial to defend the indefensible or, in the desirable alternative, fulfill their professional oaths to defend the Constitution and admit the statute violates the Petition Clause. So far, Attorney General Mayes has chosen to defend the statute, and do so by invoking a *disjunctive* legal standard that the U.S. Supreme Court expressly rejected. Applying the proper *conjunctive* legal standard wins

the day for Plaintiff. Ideally, Judge Welty will concede that § 12-3201 violates the Petition Clause but that is yet to be seen.  However. Judge Welty did not argue in his dismissal motion that the statute is compatible with the Petition Clause, which is an excellent sign. (Doc. 67). Judge Welty's discovery and testimony will be vital, as will the Attorney General's. Arizonans' petitioning rights are under attack, which makes the First Amendment facial challenge of great statewide importance and, hence, of considerable proportions for extensive discovery.

The claims for damages, including punitive damages, are also of considerable proportion, not just to Plaintiff, but to the state and even to the nation as a whole. As explained in the operative complaint (Doc. 14), former Rep./Sen. Meza devised a scheme to defraud Phoenix's philanthropic community and the state's Medicaid system. Under the artifice of a benevolent legislator voluntarily supporting constituents, Meza systematically solicited private funds and public funds under color of office on behalf of Medicaid-approved nonprofits while intentionally omitting the material facts that those nonprofits' executives were covertly paying him for those solicitations. When the fraud scheme came to light, (1) Governor Ducey publicly admitted that Meza, acting in his legislative role, solicited public funds from the Governor's office to benefit nonprofits participating in the scheme; (2) those nonprofits released Meza from their "consulting" contracts; (3) one nonprofit CEO provided actual notice of his organization's participation in the scheme to the House to avoid culpability; (4) the House secretly conducted an internal investigation to block those nonprofits from receiving public funds; (5) an honest legislative staffer anonymously alerted the press who secured admissions that Meza had deceived certain legislators and the Governor; and (6) the Chair of the Senate Ethics Committee publicly declared there was good cause to believe Meza's actions in office were criminal. But public records and other acquired documents indicate Meza was not the only elected official who knowingly participated in the scheme, or who may have assisted and encouraged Meza to engage in unlawful retaliatory attacks. Plaintiff deserves, and all Arizonans deserve, to identify every elected official and complicit

private person who may be liable to Plaintiff and who engaged in corrupt practices so that damages, including punitive damages, can be fully and accurately assessed. Ortega is jointly and severally liable for those damages based on her concerted actions with Meza.

Plaintiff thought it likely that Taylor Robson had been duped into supporting Meza and at least two of the nonprofits. But public records acquired via CV2022-008626 and actions she subsequently took in litigation indicate that she was a knowing participant who provided funds to Meza through nonprofits to increase her chances at elected office and, specifically, to enhance her "branding" among those living in Meza's district. As a viable candidate for Governor, undoubted public figure, and private person "state actor" uniquely capable of influencing legislators' official acts, Plaintiff and other Arizonans deserve to know the extent of her knowing involvement in Meza's schemes. Likewise, given her primary role in threatening, injuring, and chilling Plaintiff's First Amendment rights, Plaintiff needs to document the full extent of her scheme involvement and intentional attacks to establish damages, including calculation of punitive damages.

Other than verbal and written testimony, Defendants' discoverable documents are located in (1) Meza's emails, texts, computer files, phone records, and bank records; (2) Ameliorate, LLC contracts, business documents, phone records, financial documents, and bank records; (3) Taylor Robson's emails, texts, computer files, and phone records; (4) Ortega's emails, texts, computer files, and phone records; and (5) Ortega & Ortega, PLLC contracts, business documents, phone records, financial documents, and bank records.

Third-party discovery will be crucial, and likely extensive given the expectation that Meza and Taylor Robson will pursue "hide the ball" discovery tactics, and, in Meza's case, engage in factual misrepresentations given the well-documented evidence of such. Records show Meza's schemes nearly came to public light on several occasions, only to be buried via the unlawful use of personal threats, factual misrepresentations, civil litigation, and "mergers" facilitated by complicit nonprofits' executives and Mercy Care's now-CEO. Relevant discoverable documents exist in (1) each of those six nonprofits' contracts, business documents, phone records, financial documents, bank records, emails,

1    and computer records; (2) each complicit executive's emails, texts, computer files, phone

2    records, and bank records; (3) Mercy Care contracts, business documents, business

3    documents, phone records, financial documents, bank records, emails, and computer

4    records; (4) Arizona House of Representatives' emails and computer files; and (5) the

5    contracts, business documents, phone records, financial documents, bank records, emails,

6    texts, and computer records of at least two private companies' founders who acquired

7    their business revenue and/or business concepts via participation in Meza's schemes.

8    **AG Mayes's Position:** AG Mayes does not anticipate a large amount of discovery will

9    be necessary, and in fact considers it likely no discovery is needed.  The remainder of AG

10   Mayes's responses are subject to this disclaimer, and assume discovery does take place.

11        In an earlier case making the same claims against AG Mayes (since voluntarily

12   dismissed), Plaintiff informed AG Mayes as follows: "Among other things, I'd like to

13   engage in fact-finding regarding how the trial courts are applying the vexatious litigant

14   statute, how the counties' presiding judges are approaching trial court orders regarding

15   the statute, and how the statute progressed through the legislature."  Email of Mar. 28,

16   2025.  Plaintiff has now informed AG Mayes that this statement applies in this case.

17        AG Mayes believes that, to the extent these materials are relevant, most are

18   publicly available.  It is also likely that a good deal of what Plaintiff seeks that is not

19   publicly available will be privileged, such as inquiries into how judges decide what orders

20   to issue or private conversations of legislators.  *See Adams v. Comm. On Judicial Conduct*

21   *& Disability*, 165 F. Supp. 3d 911, 925 (N.D. Cal. 2016) (discussing judicial deliberative

22   privilege); *Lee v. City of Los Angeles*, 908 F.3d 1175, 1178 (9th Cir. 2018) (discussing

23   state legislative privilege).  The means Plaintiff anticipates using, such as depositions of

24   high-ranking elected officials, are unduly burdensome and not proportionate to the needs

25   of the case, as required by Fed. R. Civ. P. 26(b)(2).  *See Andrich v. Dusek*, No. 17-173-

26   TUC-RM, 2019 WL 2775472, at *2 (D. Ariz. July 2, 2019) (discussing limits on

27   discovery from, and depositions of, "high-ranking government officials").

28

15

1    Plaintiff has also sought early, jurisdictional discovery. Doc. 58. AG Mayes

2    opposes that request. Doc. 69.

3    **Rep. Robert Meza's Position:** Rep. Meza does not anticipate that any discovery will be

4    needed due to the frivolous nature of Plaintiff's claims against him.

5    **Karrin Taylor Robson's Position:** Ms. Taylor Robson does not anticipate that any

6    discovery will be needed due to the frivolous nature of Plaintiff's claims against her.

7    Pursuant to Fed. R. Civ. P. 26(a)(1)(C), Ms. Taylor Robson also objects to the service of

8    an initial disclosure statement prior to the Court's disposition of her motion to dismiss.

9    An initial disclosure statement is not appropriate prior to that time due to the frivolous

10    nature of Plaintiff's claims and the fact that they do not warrant any discovery.

11    **Alane Ortega's Position:** Ms. Ortega does not anticipate any discovery will be needed

12    due to the frivolous nature of the Plaintiff's claims against her, even if the Court finds and

13    exercises supplemental jurisdiction over Plaintiff's state-law claims against Ortega.

14             **b.    Suggested changes, if any, to the discovery limitations imposed by the
15                     Federal Rules of Civil Procedure.**

16    **Plaintiff's position:** Plaintiff believes the two First Amendment facial challenges can be

17    addressed via four depositions per party per claim, 20 interrogatories, 15 RFAs, and 20

18    RFPs. However, Plaintiff's damages claims, including for punitive damages, will require

19    far more extensive discovery, including extensive third-party discovery. He has suffered

20    irreparable injuries, extensive reputational harm, considerable lost income and lost

21    business value, and other valuable compensable and non-compensable injuries well into

22    the millions of dollars caused by intentional acts. He deserves the full benefit of

23    comprehensive discovery to comprehensively document Defendants' concerted actions

24    and to calculate their liability for damages, including punitive damages. Accordingly, and

25    to accommodate third-party discovery, Plaintiff asks the Court to authorize 25 depositions

26    per party, 150 interrogatories, 150 RFAs, and 150 RFPs, knowing those discovery needs

27    might be expanded for good cause as newly discovered facts emerge.

28

**Defendants' Position:** Defendants envision large deviations from the Federal Rules of Civil Procedure, as follows:

- The number of depositions should be lowered from 10 to 4 per party.
- The number of interrogatories should be lowered from 25 to 5 per party.
- The number of RFAs should be limited to 10 per party.
- The number of RFPs should be limited to 10 per party.

   **c.    The number of hours permitted for each deposition.**

**Plaintiff's Position:** Plaintiff believes the standard seven hours per deposition should be sufficient provided deponents are non-evasive, except for Robert Meza given his primacy and the nature of the allegations. Meza's deposition should be increased to 10 hours to sufficiently inquire as to (1) the extent of his involvement with, and promotion of, the nonprofits in question; (2) the nature of communications and agreements made with those nonprofits' executives; (3) his solicitation of private funds and public funds on behalf of those nonprofits; (4) his involvement in driving business revenue and business concepts to private company founders who provided him financial and non-financial benefits for that involvement; (5) the history, nature, function, purpose, and dealings of Ameliorate, LLC; (6) his various responses to unwary nonprofit Board members who discovered his financial arrangement with nonprofit executives; (7) his relationship and involvement with defendants Ortega and Taylor Robson; and (8) his involvement in attacks directed toward Plaintiff (and others), made both inside and outside of litigation, *inter alia*.

**Defendants' Position:** Depositions should be limited to seven hours, with a total of 20 hours per side.

**14.    Proposed deadlines for each of the following events.**

**Plaintiff's Position:** Plaintiff believes there is no reason to delay discovery, especially given that Defendant Robert Meza has conceded the 42 U.S.C. § 1983 First Amendment retaliation claim is plausibly pleaded against him. (Doc. 55). As an elected legislator who participated in mandamus litigation to advance no public goal, he enjoys no form of

immunity, including *Noerr-Pennington* immunity. Plaintiff has also suffered injuries from tortious acts committed outside of litigation.

**Defendants' position:** Defendants believe that discovery deadlines should not begin to run until after the motions to dismiss are resolved. At the moment, "[i]t is not clear whether [Plaintiff's amended complaint] state[s] any claims for relief." *Watson v. Fin. Ctr. First Credit Union*, No. 24-469-PHX-KML, 2024 WL 4041855, at *1 (D. Ariz. Sept. 4, 2024) (staying discovery after submission of Rule 26(f) report pending resolution of motion to dismiss). Therefore, postponing discovery until after resolution of the motion to dismiss "furthers the goals of efficiency for the courts and litigants." *Id.* (quoting *Lazar v. Charles Schwab & Co. Inc.*, No. 14-1511-PHX-DLR, 2014 WL 12551210, at *1 (D. Ariz. Sept. 19, 2014)). If the Court believes it necessary, Defendants will file motions to stay discovery. Should the case proceed to discovery, Defendants indicate here and in their proposed order the length of time they consider proper between discovery highlights.

> a. **A deadline for the completion of fact discovery, which will also be the deadline for pretrial disclosures pursuant to Rule 26(a)(3). This deadline is the date by which all fact discovery must be completed. Discovery requests must be served and depositions noticed sufficiently in advance of this date to ensure reasonable completion by the deadline, including time to resolve discovery disputes. Absent extraordinary circumstances, the Court will not entertain discovery disputes after this deadline.**

**Plaintiff's Position:** Plaintiff believes fact discovery for the First Amendment facial challenges should conclude six weeks (42 days) after the disposition of any motion to dismiss, where that fact discovery should be conducted during the Court's consideration of those motions. Fact discovery for the claims for damages, including the claim for punitive damages, should conclude 26 weeks (180 days) after the disposition of any motion to dismiss, where that fact discovery should be conducted during the Courts consideration of those motions.

**Defendants' Position:** Fact discovery should conclude five weeks (35 days) after the disposition of the motion to dismiss. This would also be the deadline for pretrial disclosures.

**b.      Dates for full and complete expert disclosures and rebuttal expert disclosures, if any.**

The parties agree that fact discovery should precede expert discovery. Otherwise, the parties' positions are as follows:

**Plaintiff's Position:** Expert disclosure should be completed six weeks (42 days) after the close of fact discovery, with rebuttal disclosures due three weeks (21 days) after the expert disclosures are due.

**Defendants' Position:** Expert disclosures should be completed no later than three weeks (21 days) after the close of fact discovery, for both the party with the burden of proof on an issue and the responding party. Rebuttal disclosures from the party with the burden of proof should be due two weeks (14 days) after disclosures are due.

**c.      A deadline for completion of all expert depositions.**

**Plaintiff's Position:** Expert depositions should be completed no later than four weeks (28 days) after the deadline for rebuttal disclosures.

**Defendants' Position:** Expert depositions should be completed no later than two weeks (14 days) after the deadline for rebuttal disclosures.

**d.      A date by which any Rule 35 physical or mental examination will be noticed if such an examination is required by any issues in the case:**

The parties agree that no such examination is required by any issues in this case.

**e.      A deadline for filing dispositive motions.**

**Plaintiff's Position:** Plaintiff believes dispositive motions for the First Amendment facial challenges should be due six weeks (42 days) after the close of that discovery, while dispositive motions for the claims for damages, including for punitive damages, should be due twelve weeks (84 days) after the close of that discovery.

1    **Defendants' Position:** Dispositive motions should be due three weeks (21 days) after the

2    close of discovery.

3              f.      **Case-specific deadlines and dates, such as the deadline to file a motion for class certification or a date on which the parties are available for a**

4                      ***Markman* (patent claim construction) hearing.**

5    **Plaintiff's Position:** Plaintiff does not believe there will be a need for such motions or

6    related deadlines, although there remains a very slight chance that discovery could yield

7    a sufficient number of First Amendment retaliation victims to consider a class action

8    against Meza, or perhaps the House as a whole.

9    **Defendants' Position:** Defendants do not understand Plaintiff to have current plans to

10   file a motion for class certification, and are aware of no other case-specific dates the Court

11   should set.

12             g.     **A date by which the parties shall have engaged in face-to-face good faith settlement talks.**

13

14   **Plaintiff's Position:** Plaintiff is willing to engage in settlement talks to guarantee his, and

15   all Arizonans', First Amendment right to petition. The Court would be wise to order those

16   settlement talks at the parties' earliest mutual convenience.

17   **Defendants' Position:** Consistent with their positions above, Defendants do not believe

18   face-to-face settlement talks are necessary or would be helpful.

19             h.     **Whether a jury trial has been requested and whether the request for a jury trial is contested, setting forth the reasons if the request is**

20                    **contested.**

21   **Plaintiff's Position:** Plaintiff has requested a jury trial, although the First Amendment

22   facial challenges should be appropriate for summary judgment. Again, Plaintiff demands

23   a jury trial on the claims for damages, including punitive damages.

24   **Defendants' Position:** Defendants believe that there is no right to a jury trial under the

25   Seventh Amendment in this case.

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

      **i.     Any other matters that will aid the Court and parties in resolving this case in a just, speedy, and inexpensive manner as required by Federal Rule of Civil Procedure 1.**

**Plaintiff's Position:** Many discoverable documents are also subject to Arizona's public records law. For instance, documents in Meza's and Taylor Robson's actual possession, as well as those in the possession of third parties including the House of Representatives, Mercy Care, the six nonprofits in question, certain corporate sponsors of nonprofit events, and complicit executives classify as public records requiring "prompt" production for "inspection" pursuant to A.R.S. § 39-121, et *seq*. *See Fann v. Kemp in & for Cty. of Maricopa,* 515 P.3d 1275 (Ariz. 2022). The public records law requires no formal request, and the Court could enforce that law to encourage speedy documents production.

**Defendants' Position:** Defendants' proposal to postpone discovery until the motion to dismiss is resolved will aid in reaching a just, speedy, and inexpensive resolution of this case. *See Watson*, 2024 WL 4041855, at *1 ("A stay of discovery pending resolution of a motion to dismiss furthers the goals of efficiency for the courts and litigants." (cleaned up)). In addition, to the extent Plaintiff directs future filings toward them, each Defendant submits that an order relieving that Defendant of the obligation to respond (absent an order from the Court) would aid in reaching a just, speedy, and inexpensive resolution.

**15.    A statement indicating whether the parties would prefer that the Court hold a case management conference before issuing a scheduling order—and, if so, an explanation of why the conference would be helpful.**

**Plaintiff's Position:** Plaintiff believes the Court should hold a case management conference, which would be helpful to encourage case resolution and discourage "hide the ball" discovery tactics.

**Defendants' Position:** Defendants do not believe a case management conference is necessary or would be helpful at this time.

1    **RESPECTFULLY SUBMITTED** this 19th day of August, 2025.

2                                           **KRISTIN K. MAYES**
                                           **ATTORNEY GENERAL**
3

4
                                 By  /s/ *Joshua A. Katz*
5                                      Hayleigh S. Crawford
                                      *Deputy Solicitor General*
6                                      Joshua A. Katz
                                      *Assistant Attorney General*
7                                      Office of the Arizona Attorney General
                                      2005 N. Central Ave.
8                                      Phoenix, AZ  85004
9

10                                     *Attorneys for Defendant Arizona Attorney*
                                      *General Kristin K. Mayes*
11

12
                                 By  /s/ (by permission)
13                                     Phillip Potter
                                      2301 N. 66th St.
14                                     Scottsdale, Arizona 85257
                                      (480) 459-0310
15                                     Phillip.t.potter@gmail.com
16

17                                     *Pro se Plaintiff*

18
                                      THE NELSON LAW GROUP, PLLC
19

20                               By: /s/ *Timothy A. Nelson* (by permission)
                                      Timothy A. Nelson
21                                     24 West Camelback
                                      Suite A#541
22                                     Phoenix, Arizona 85013
                                      Telephone:    602.421.2681
23                                     tim@nelsonlawsolutions.com
24                                     *Attorney for Defendant Robert Meza*

25

26

27

28

                                           22

SNELL & WILMER L.L.P.


By: */s/ Brett W. Johnson (with permission)*
Brett W. Johnson
Derek C. Flint
Charlene A. Warner
One East Washington Street
Suite 2700
Phoenix, Arizona 85004-2556
Telephone:    602.382.6000
Facsimile:    602.382.6070

*Attorneys for Defendant Karrin Taylor Robson*


SILENCE LAW GROUP


By  */s/ Trevor Cook*  (with permission)
Trevor Cook
trevor@silencelaw.com
602-932-5868
Jeff Silence
jeff@silencelaw.com
602-932-8358
Silence Law Group, PLLC
20235 N. Cave Creek Rd. Ste. 104 # 460
Phoenix, AZ 85024

*Attorneys for Defendant Alane Ortega*