Phillip Potter
2301 N. 66th Street
Scottsdale, Arizona 85257
Phone: 480.459.0310
E-Mail: phillip.t.potter@gmail.com
Plaintiff
Pro Se

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Phillip Potter, | No. 2:25-cv-00663-PHX-DWL |
| Plaintiff, | |
| v. | **RESPONSE TO JOSEPH WELTY'S MOTION TO DISMISS FIRST AMENDED COMPLAINT** |
| Robert Meza, et al., | |
| Defendants. | (Oral Argument Requested) |

1
2
3
4       Plaintiff sued the Hon. Joseph Welty in his official *administrative* capacity as
5    Presiding Judge of the Maricopa County Superior Court seeking to prevent being added
6    to the state's vexatious litigant list. (Doc. 14, p. 71).  It has since been learned that Judge
7    Welty issued Administrative Order 2023-159 (the "AO") adding Plaintiff's name to that
8    list and ordering he "may not file any further pleading or motion in any of his current
9    lawsuits" absent leave of the court (Doc. 52, Exh. A; Doc. 54, Affid.), including in active
10   litigation separately adjudicated to be "well-founded" (Doc. 14 at 98, 242).  The AO fails
11   for several fundamental reasons.  For instance, the Arizona Supreme Court holds that
12   "the presiding judge has no authority to compel persons outside the judiciary to" act or to
13   refrain from acting.  *Maricopa County v. Dann,* 157 Ariz. 396, 401, 758 P.2d 1298, 1301
14   (1988).  More critical here, the Petition Clause ensures "well-founded lawsuits ... may not
15   be enjoined".  *Bill Johnson's Rests., Inc. v. N.L.R.B.*, 461 U.S. 731, 742-43 (1983).
16   Accordingly, the AO, as well as the vexatious litigant statute on which it relies, violates
17   the right to petition.  *California Motor Transport v. Trucking Unlimited*, 404 U.S. 508,
18   510 (1972) ("The right of access to the courts is indeed but one aspect of the right of
19   petition").  Although Plaintiff's First Amendment facial challenge to A.R.S. § 12-3201 is
20   directed toward legislative acts, not toward any order[1], the AO illuminates § 12-3201's
21   many substantive and procedural due process defects.  As examples, Judge Welty
22   administratively (1) found Plaintiff  "unreasonably expanded proceedings" in violation of
23   § 12-3201(E)(1)(b) although Plaintiff was never accused of violating that provision in the
24   trial court and thus was denied the right to be heard on that charge, *Ringgold-Lockhart v.*
25   *County of Los Angeles,* 761 F.3d 1057, 1063 (9th Cir. 2014) (pro se litigants are entitled
26

---

[1] *See Bianchi v. Rylaarsdam*, 334 F.3d 895, 898 (9th Cir. 2003) ("A general constitutional challenge [] is not 'inextricably intertwined' with the state court decision" because it asks a district court to review legislative acts, not judicial acts or administrative acts).

1

to notice and the right to be heard on all charges of vexatiousness); (2) reviewed non-final litigation in cases CV2021-005501[2], CV2021-013210[3], CV2021-017889[4], and CV2022-014146[5], *In re Powell,* 851 F.2d 427, 432 (D.C. Cir. 1988) ("court[s] should be careful not to review pending cases ... complaints that predated the [motion for an] injunction were still pending at the time the injunction was imposed and, as such, could not have been reviewed"); (3) disregarded that none of those four cases' defendants or claims were common to the CV2022-008626 case, *Ringgold,* 761 F.3d at 1064-66 (vexatious designations require serial baseless suits which <u>*also*</u> demonstrate a "pattern of harassment" against common defendants, or an "inordinate" number of "frivolous" suits on common claims sufficient to "essentially" <u>*also*</u> show an "improper purpose"); and (4) issued an unlawful permanent blanket injunction, *Id* at 1066 ("pre-filing restrictions, [] must: ... [be] tailor[ed] narrowly so as 'to closely fit the specific vice encountered'").

ARGUMENT

The motion to dismiss ("MTD", Doc. 67) relies entirely on judicial immunity as grounds for Fed. R. Civ. P. 12(b)(1) and (6) dismissal. Judicial immunity is a "personal immunity" which may be invoked as a defense in an "individual-capacity action", not in an "official-capacity action" such as this. *Lewis v. Clarke,* 137 S. Ct. 1285, 1291 (2017). Perhaps more importantly, Judge Welty performed no judicial act that could give rise to judicial immunity. He (1) never served as the trial judge assigned to any case involving Plaintiff; (2) did not hear or decide any controversy between the CV2022-008626 parties;

---

[2] CV2021-005501 has been deemed well-founded and is set for trial. (Doc. 14 at 242).
[3] Plaintiff recently secured a favorable judgment in CV2021-013210, demonstrating that the suit was active and not "objectively baseless". (Doc. 49, Affid.; Doc. 55, p. 6, n.2).
[4] CV2021-017889 was an active personal injury suit where those defendants admitted 100% fault and quickly settled all claims without controversy. (Doc. 14 at 76, n.20).
[5] CV2022-014146 was an active suit where those defendants misrepresented the terms of Medicaid contract YH19-001R to evade public records production. (Doc. 14 at 65-66).

(3) administratively reviewed an "application" that did not originate from the parties; and (4) acted in an administrative capacity, not a judicial capacity, when issuing and now maintaining the AO.  There exists "an intelligible distinction between judicial acts [which are afforded judicial immunity] and" non-judicial acts where judicial immunity does not apply.  *Forrester v. White,* 484 U.S. 219, 227, 108 S.Ct. 538, 98 L.Ed.2d 555 (1988).  "Administrative decisions, even though they may be essential to the very functioning of the courts, have not [] been regarded as judicial acts." *Id* at 228.  Plaintiff now suffers actual injuries caused by Judge Welty's non-judicial acts, and he continues to be threatened with other imminent irreparable injuries arising from the enforcement of an "unconstitutional act of the state legislature [where Plaintiff has] go[ne] into a Federal court [], in a case involving a violation of the Federal Constitution, and [seeks to] obtain[] a judicial investigation of the problem[s], and pending its solution [to] obtain freedom from suits, civil or criminal, by a temporary injunction, and, if the question[s] be finally decided favorably to the contention of the [plaintiff], a permanent injunction restraining all such actions or proceedings." *Ex parte Young,* 209 U.S. 123, 149 (1908).  Such federal cases are "appropriate when there is a realistic possibility the official will take [or has taken] ... *administrative* actions against the plaintiff's interests."  *Doe v. DeWine,* 910 F.3d 842, 848-49 (6th Cir. 2018) (citing *Ex parte Young*) (emphasis added).

I. There Is No Basis for Fed. R. Civ. P. 12(b)(1) Dismissal

Judge Welty wrongly claims sovereign immunity and that Plaintiff lacks standing; both as a function of non-existent judicial immunity. (MTD, pp. 4-5).  He also declares "Plaintiff cannot state a claim for which relief can be granted because the Judicial Defendant has judicial immunity". (MTD, p. 7).  However, judicial immunity does not extend to the performance of "administrative" acts.  *Forrester,* 484 U.S. at 227-28.

1

2

A. Legal Standard

3

"A Rule 12(b)(1) jurisdictional attack may be facial or factual.  In a facial attack,

4

the challenger asserts that the allegations contained in a complaint are insufficient on

5

their face to invoke federal jurisdiction.  By contrast, in a factual attack, the challenger

6

disputes the truth of the allegations that, by themselves, would otherwise invoke federal

7

jurisdiction." *Safe Air for Everyone v. Meyer,* 373 F.3d 1035, 1039 (9th Cir. 2004).

8

Judge Welty's attack is "facial" as he seeks immunity per the complaint's allegations.

9

B. The Defendant Has No Judicial Immunity

10

"[J]udicial immunity ... bars suits seeking damages." *Moore v. Urquhart,* 899

11

F.3d 1094, 1104 (9th Cir. 2018).  But Plaintiff seeks "prospective relief against Presiding

12

Judge Welty" in the form of injunctive and declaratory relief. (Doc. 14 at 111).  And once

13

more, "[j]udicial immunity *only* applies to judicial acts, and *not* to 'the *administrative*, ...

14

functions that judges may on occasion be assigned by law to perform.'" *Forrester,* 484

15

U.S. at 227 (emphasis added).  When deciding immunity, courts must determine whether

16

the acts in question are "truly judicial acts, for which immunity is appropriate, [or] acts

17

that simply happen to have been done by judges.  Here, as in other contexts, immunity is

18

... defined by the *functions* it protects and serves, not by the person to whom it attaches."

19

*Id* (emphasis original).  Facts show Judge Welty performed no "judicial acts".

20

21

1. Defendants Sued In Their Administrative Capacity Have No Judicial Immunity

22

The Ninth Circuit decided "judicial immunity" in the specific context of another

23

state's vexatious litigant statute, and determined judicial immunity does not apply to

24

judges sued in their "administrative capacity". *Wolfe v. Strankman*, 392 F.3d 358, 365-66

25

(9th Cir. 2004).  "Section 1983 only contemplates judicial immunity from suit for

26

injunctive relief for acts taken in a judicial capacity.  The statute provides that 'injunctive

4

relief shall not be granted' in an action brought against 'a judicial officer for an act or omission *taken in such officer's judicial capacity* ... 42 U.S.C. § 1983.  Since [plaintiff] sued [the defendant judge] in his administrative capacity ..., we conclude that dismissal is not warranted on the basis of judicial immunity." *Id* (emphasis original).  As a matter of law, Judge Welty has no judicial immunity for the straightforward reason that he is sued in his "administrative capacity".  *Id*; *Forrester,* 484 U.S. at 228.

2. There Is No Judicial Immunity For Administrative Acts

"[T]he official seeking absolute immunity bears the burden of showing that such immunity is justified for the function in question".  *Burns v. Reed*, 500 U.S. 478, 486 (1991).  When considering judicial immunity, "[t]o determine whether an act is judicial, we consider these factors: whether '(1) the precise act is a normal judicial function; (2) the events occurred in the judge's chambers; (3) the controversy centered around a case then pending before the judge; and (4) the events at issue arose directly and immediately out of a confrontation with the judge in his or her official capacity.'"  *Lund v. Cowan*, 5 F.4th 964, 971 (9th Cir. 2021).

a. The Precise Act Is Not A Normal Judicial Function

Judge Welty says he "review[ed] and approve[d] the application to certify Plaintiff as a vexatious litigant, as allowed by Arizona law." (MTD, p. 3).  But no "Arizona law" mentions, or permits a Presiding Judge to act on, any such "application".  And nowhere does Judge Welty explain how his administrative acts were a "normal judicial function".

i. The Acts Described Were Not "Allowed By Arizona Law"

"Article VI § 11 of the Arizona Constitution sets forth the powers of the presiding judge".  *Dann,* 157 Ariz. at 400.  Yet, Judge Welty expressly issued the AO "[p]ursuant to A.R.S. § 12-3201". (Doc. 52, Exh. A).  Per § 12-3201(A), "at the request of a party or

on the court's own motion, the presiding judge of the superior court or a judge designated by the presiding judge of the superior court may designate a pro se litigant a vexatious litigant." This language grants a Presiding Judge the authority *either* (1) to conduct legally sufficient judicial proceedings[6] from which he or she may "designate a pro se litigant a vexatious litigant"; "*or*" (2) to "designate" another "judge" to conduct legally sufficient judicial proceedings from which that judge may "designate a pro se litigant a vexatious litigant". Nothing in the statute permits a trial court to submit to a Presiding Judge an "application to certify" anything. And nothing in the statute allows a Presiding Judge to review a trial court's ruling on "application" and issue an administrative order, especially on disputed facts as part of active litigation. *See* Ariz. R. Evid. 201.[7] The only undisputed fact here is that the Hon. John Blanchard – the trial court judge assigned the CV2022-008626 case – conducted judicial proceedings and issued an appealable ruling, *not* Welty.[8] The underlying CV2022-008626 case was also on appeal when Judge Welty

---

[6] Despite § 12-3201 being silent on procedural due process (Doc. 14 at 193-194), the Attorney General has declared the statute requires a hearing because "the Ninth Circuit has held that courts must provide notice and chance for a hearing, [and] Arizona law requires the same process [because] Arizona's courts of appeals interpret A.R.S. § 12-3201 as requiring the procedural steps the Ninth Circuit imposes". (Doc. 38, pp. 14-15).

[7] *See Lee v. City of L.A.,* 250 F.3d 668, 689-90 (9th Cir. 2001) ("[W]hen a court takes judicial notice of another court's opinion, it may do so not for the truth of the facts recited therein, but for the existence of the opinion").

[8] Judge Welty administratively found Plaintiff "engaged in vexatious conduct by filing claims or requests for relief that have been subject to previous rulings in previous litigation; has unreasonably expanded court proceedings; and has brought court actions without 'substantial justification'" in supposed violation of §§ 12-3201(E)(1)(b), (c), and (f). (Doc. 52, Exh. A). But Plaintiff was only accused of §§ 12-3201E)(1)(a), (c), and (f) violations while Judge Blanchard found Plaintiff only violated §§ 12-3201(E)(1)(c) and (f). (Doc. 55, pp. 6-7). The Court of Appeals affirmed a § 12-3201(E)(1)(c) violation but not the § 12-3201(E)(1)(f) violation which requires "Repeated filing of documents or requests for relief ... in the same litigation". Judge Blanchard wrongly found a violation "... in similar litigation" and Judge Welty wrongly found a violation "... in previous litigation". Judges cannot re-write statutes. In the end, the Petition Clause protects

issued the November 2, 2023 AO despite the Court of Appeals issuing a stay of Judge Blanchard's judicial order on October 2, 2023. (Doc. 14 at 82).  No judicial act may be performed in a lower court while a case is under appellate jurisdiction.  *See* A.R.S. § 12-2101(A); Ariz. R. Civ. App. P. 24(a) ("An appellate court retains jurisdiction of an appeal until it issues the mandate"); *Sw. Gas Corp. v. Irwin,* 229 Ariz. 198, ¶ 8 (App. 2012) (filing a timely Ariz. R. Civ. P. 8 notice of appeal divests a trial court of jurisdiction). Whatever this "application" was, it did not permit Judge Welty to perform judicial acts when reviewing it or acting on it.[9]  And the CV2022-008626 case record confirms he performed no judicial act as that record is devoid of this "application" and of the AO, further demonstrating those documents were products of administrative functions, not judicial functions.  *See* Ariz. R. Sup. Ct. 123 (distinguishing administrative records from judicial records, differentiating an "administrative order" from a "court order", and requiring every judicial proceeding to be entered into a "case record" available for public inspection).  The fact that Judge Welty claims to have acted "pursuant to A.R.S. § 12-3201", combined with facts detailed below, strongly supports complaint allegations that the statute "impermissibly delegates basic policy matters to ..., judges, ..., with the attendant dangers of arbitrary and discriminatory application". (Doc. 14 at 123, 193-207).

ii. None Of The Acts Described Were "A Normal Judicial Function"

The *Lund* "precise act" – issuing an administrative order – is not "a normal judicial function", by definition, but rather an administrative function.  The "precise act"

---

[9] "baseless" litigation absent an additional determination of an "improper purpose" (Doc. 49, pp. 10-14), and Plaintiff judicially defeated the improper purpose allegations.

[9] Under Arizona law, judicial relief must be the result of a complaint, pleading, or motion involving adverse parties, not an "application" originating from another judge.  *See* Ariz. R. Civ. P. 1 ("There is one action – the civil action"); Ariz. R. Civ. P. 3 (A civil action is initiated by "filing a complaint with the court"); Ariz. R. Civ. P. 7 (defining pleadings, including complaints); Ariz. R. Civ. P. 7.1 (describing motion practice).

of reviewing non-final litigation to consider an administrative order also is not "a normal judicial function". Finally, the "precise act" of reviewing an "application" referenced nowhere in Arizona statutes or procedural rules also is not "a normal judicial function".

### b. The Events Did Not Occur In The Presiding Judge's Chambers

No *Lund* "events" involving any dispute between the parties took place in Judge Welty's "chambers". Even if any act Judge Welty performed "took place in a judge's chambers, it did not occur while the [CV2022-008626] court was in session." *Meek v. Cnty. of Riverside,* 183 F.3d 962, 967 (9th Cir. 1999). Again, that underlying case was on appeal, meaning the trial court could not have been "in session" as a matter of law.

### c. The Parties Had No Case and No Controversy Pending Before Judge Welty

The parties never had a "case", much less a "controversy centered around" a case then "pending", before Judge Welty.[10] *Lund,* 5 F.4th at 971. Judge Blanchard had decided all controversies months before Welty issued the AO, meaning nothing was "pending" before the trial court since the case was on appeal.[11] And appellate courts cannot exercise appellate jurisdiction over administrative orders. *Madison v. Groseth,* 230 Ariz. 8, 13, ¶ 16 n.8 (App. 2012) (administrative orders are not appealable under Arizona law); *see also Gregory v. Thompson,* 500 F.2d 59, 64 (9th Cir. 1974) ("A judicial act within the meaning of the [immunity] doctrine [is one that] may normally be corrected on appeal"). Since judicial immunity exists in large part to "help[] to establish appellate procedures as the standard system for correcting judicial error", *Forrester,* 484 U.S. at 227, there is no reason why judicial immunity could extend to acts involving

---

[10] In a document produced September 8, 2025, defendant Robert Meza characterized the functions that Judge Welty performed as "administrative proceedings" (*see* Exhibit A).
[11] The AO notes, "[t]his matter was referred by the Honorable John Blanchard to consider issuing an *administrative* order declaring Phillip Potter a vexatious litigant." Welty did not consider any judicial controversy. He expressly made an "administrative" decision.

unappealable administrative orders which, by definition, do not decide a pending controversy between the parties in the trial court.

### d. The Parties Did Not "Confront" Judge Welty

The AO did not result "directly and immediately out of a confrontation with the judge in his or her official capacity". *Lund*, 5 F.4th at 971. Judge Blanchard issued an order "out of [the parties'] confrontation" with the trial court in February 2023, while Judge Welty issued the AO many months later. The parties had no "confrontation" with Welty, much less a "direct" confrontation. And the AO certainly was not "immediately" the result of anything the parties argued, nor does the order even list the parties in its caption. The AO can only be characterized as its title expressly and unambiguously indicates – as an "administrative" order which cannot give rise to judicial immunity.

### C. Plaintiff Has Standing

#### 1. Legal Standard

"Article III standing ... 'requires a plaintiff to have [1] suffered an injury-in-fact, [2] caused by the defendant's conduct, that [3] can be redressed by a favorable result.'" *Planned Parenthood Great Nw. v. Labrador*, 122 F.4th 825, 835 (9th Cir. 2024). "For pre-enforcement plaintiffs, the injury is the anticipated enforcement of the challenged statute in the future." *Peace Ranch, LLC v. Bonta,* 93 F.4th 482, 486-87 (9th Cir. 2024). Such an injury exists "if: '(1) [the plaintiff] ha[s] alleged 'an intention to engage in a course of conduct arguably affected with a constitutional interest;' (2) but the conduct is 'proscribed by a statute;' and (3) 'there exists a credible threat of prosecution'". *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 134 S.Ct. 2334, 189 L.Ed.2d 246 (2014). And "a history of past enforcement against" a plaintiff provides "good evidence that the threat of enforcement is not 'chimerical'", meaning there exists a "credible threat". *Id* at 2336.

<u>2. Plaintiff Has Suffered An Ongoing, Redressable Injury-in-Fact</u>

Judge Welty does not deny that Plaintiff currently suffers an ongoing irreparable injury-in-fact caused by his conduct when issuing and maintaining the AO, and which is redressable by enjoining enforcement of that non-judicial, administrative order.  He concedes Plaintiff has standing.  *Planned Parenthood Great Nw.*, 122 F.4th at 835.

<u>3. Plaintiff Is Being Threatened With A Redressable Imminent Injury</u>

Plaintiff is also being threatened with irreparable imminent injuries caused by Welty's non-judicial acts, where those injuries are redressable by enjoining enforcement of the AO.  *Peace Ranch*, 93 F.4th at 486-87.  Judge Welty argues that he does not "enforce[] the law that the Plaintiff believes violates his rights". (MTD, p. 3).  But we know by his words and acts that he enforced, and continues to enforce, § 12-3201 via the AO and by administratively maintaining Plaintiff's name on a vexatious litigant list.  He has full authority to rescind that AO and to remove Plaintiff's name from that list.  The possibility of him taking "administrative actions against the plaintiff's interest", *see Doe*, has been realized, and demonstrates the "combination of" administrative, civil, and criminal enforcement threats at hand.  *Isaacson v. Mayes*, 84 F.4th 1089, 1100-01 (9th Cir. 2023) (any "combination of these potential threats" suffices to demonstrate an imminent injury).  Judge Welty has caused ongoing irreparable injuries and is part of a group that threatens even greater irreparable injuries.  Plaintiff has standing.  *See LSO, Ltd. v. Stroh*, 205 F.3d 1146, 1154-55 (9th Cir. 2000) (when a suit "implicates First Amendment rights, the inquiry tilts dramatically toward a finding of standing").

<u>D. Sovereign Immunity Does Not Apply</u>

<u>1. Legal Standard</u>

"[S]overeign immunity limits the grant of judicial authority".  *Pennhurst State*

*Sch. & Hosp. v. Halderman,* 465 U.S. 89, 98 (1984).  However, "an exception [exists] under *Ex parte Young* that allows 'actions for prospective declaratory or injunctive relief against state officers in their official capacities for their alleged violations of federal law,'". *Matsumoto v. Labrador*, 122 F.4th 787, 802 (9th Cir. 2024).

    2. There Is No Sovereign Immunity

Sovereign immunity is exercised through state officers sued in an official capacity while judicial immunity is a common law personal immunity against suits defended in a personal capacity.  *Lewis,* 137 S.Ct. at 1291.  By law, personal immunities cannot generate sovereign immunity which arises from the Eleventh Amendment.  *Id*.  *Ex parte Young* only requires a state officer to have "some connection with the enforcement of the [disputed] act".  *Matsumoto*, 122 F.4th at 802.  "[A] mere scintilla of enforcement" connection overcomes sovereign immunity.  *Planned Parenthood of Idaho, Inc. v. Wasden*, 376 F.3d 908, 919 (9th Cir. 2004).  "Connection" presents "a low bar", *Matsumoto*, which can be cleared simply by demonstrating the potential for redressable relief.  *Mecinas v. Hobbs,* 30 F.4th 890, 903-04 (9th Cir. 2022) ("whether there is the requisite 'connection' between the sued official and the challenged law implicates an analysis that is 'closely related – indeed overlapping' – with ... redressability").  Even "[p]artial amelioration of a [constitutional] harm" is enough to trigger the *Ex parte Young* exception.  *Matsumoto*, 122 F.4th at 799.  Judge Welty is "a proper defendant" with at least a "scintilla" of connection to the statute's enforcement, including an undeniable connection to enforcement of the AO.  The Court can grant prospective injunctive and declaratory "relief that serves directly to bring an end to a present violation of federal law".  *Lund*, 5 F.4th at 970.  Such redressable relief is "not barred by the Eleventh Amendment".  *Id*.  There is no sovereign immunity.

II. There Is No Basis For Rule 12(b)(6) Dismissal

"On a motion to dismiss, it is the defendant's burden to demonstrate that plaintiff has failed to state a claim", and the defendant must do more than "provide summary arguments and analyses seeking dismissal". *Shay v. Apple Inc.*, 512 F. Supp. 3d 1066, 1071 (S.D. Cal. 2021). Judge Welty did not, and cannot, meet his burden.

A. Legal Standard

When deciding Fed. R. Civ. P. 12(b)(6) motions, courts must "take as true all material allegations in the complaint and construe the complaint in favor of the plaintiff." *Arizona v. Yellen,* 34 F.4th 841, 849 (9th Cir. 2022).

B. There Is No Judicial Immunity; Injunctive and Declaratory Relief Are Permitted

Judge Welty's argument is mistakenly premised on the position that issuing and maintaining an administrative order is a judicial act for which he has judicial immunity. Citing *Mullis v. U.S. Bankr. Ct. for D. of Nev.*, 828 F.2d 1385 (9th Cir. 1987), Judge Welty asks the Court to believe "that when a person ... can successfully assert judicial or quasi-judicial immunity from damages, that immunity also will bar declaratory and injunctive relief." (MTD, p. 7). That phrase is deceptively edited. The *Mullis* passage reads in full: "We hold that when a person who is alleged to have caused a deprivation of constitutional rights while acting under color of *<u>federal</u>* law can successfully assert judicial or quasi-judicial immunity from damages, that immunity also will bar declaratory and injunctive relief". *Id. Mullis* involved a plaintiff who brought a bankruptcy petition in federal court and then sued the bankruptcy judge and court clerks in another federal action for how they handled the petition. The plaintiff "mistakenly designate[d] his action ... as an action under 42 U.S.C. § 1983 [but] [b]ecause appellees were all acting under color of federal law, *<u>not state law</u>*, the constitutional violations alleged in the

complaint [were] more properly characterized as alleging direct constitutional tort claims under *Bivens*". *Id* at 1387 (emphasis added). *Mullis* did not involve a state officer or a state law, meaning it did not involve a 42 U.S.C. § 1983 claim so the case is inapplicable. The Ninth Circuit also made clear "that judicial immunity does *not* bar declaratory or injunctive relief in actions under § 1983." *Id* at 1391 (emphasis added). "In 1996, Congress amended 42 U.S.C. § 1983 to limit the circumstances in which injunctive relief may be granted against judges. As a statutory matter, Congress expanded the scope of judicial immunity by providing that in any action brought against a judicial officer for an act or omission taken in such officer's *judicial capacity*, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.'" *Moore*, 899 F.3d at 1104 (emphasis added). While prospective *injunctive* relief may have been curtailed when "judicial" acts are involved, Judge Welty acted in an administrative capacity, not in a "judicial capacity". Further, the amended § 1983 did not alter claims for prospective *declaratory* relief. *Lund*, 5 F.4th at 970, n.2 (citing *Justice Network, Inc., v. Craighead County,* 931 F.3d 753, 763 (8th Cir. 2019) ("Currently, most courts hold that the amendment to § 1983 does not bar declaratory relief against judges"). In the end, the *Mullis* case stands for the principle that declaratory relief and injunctive relief are unavailable in a federal case when a plaintiff takes issue with proceedings that occurred in another federal court. This case involves no such facts. Applicable here, *Lund* held that judges can be sued for declaratory relief, especially when fundamental rights deprivations are ongoing. Further, Judge Welty acted in an administrative capacity under color of state law so all forms of § 1983 relief are available. There is no immunity.

C. Plaintiff Sufficiently Pleads A.R.S. § 12-3201 Facially Violates the Petition Clause

Judge Welty does not argue that § 12-3201 comports with *Ringgold* or the Petition

Clause.  He thus concedes the statute is unconstitutional for vagueness and overbreadth.

### 1. A.R.S. § 12-3201 Is Overly Vague In Violation Of The Fourteenth Amendment

"[I]f arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them.  A vague law impermissibly delegates basic policy matters to ..., judges, ... for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application.  [A statute is also vague if it] 'abut[s] upon sensitive areas of basic First Amendment freedoms,' [and] it 'operates to inhibit the exercise of [those] freedoms.'  Uncertain meanings inevitably lead citizens to 'steer far wider of the unlawful zone ... than if the boundaries of the forbidden areas were clearly marked.'" (Doc. 14 at 123, 193-207).  Judge Welty does not deny that he engaged in "arbitrary and discriminatory application" of § 12-3201.  He instead seeks judicial immunity.  But no judicial immunity exists because those "arbitrary and discriminatory" actions were administrative in nature.  The challenged statute also not only "abuts upon sensitive areas of basic First Amendment freedoms" but it specifically targets those "freedoms", including free access to the courts.

### 2. A.R.S. § 12-3201 Is Overbroad In Violation Of The First Amendment

In addition to being overly vague, the challenged statute is overbroad.  (Doc. 14 at 113-192). A statute is overbroad if it "lacks a plainly legitimate sweep. ... [W]hen a facial suit is based on the First Amendment, ... [the law is also void if] 'a substantial number of [its] applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep.'" *Moody v. NetChoice, LLC*, 144 S. Ct. 2383, 2397 (2024).  Judge Welty does not dispute that the statute is overbroad for at least two reasons.  First, it "lacks a plainly legitimate sweep" because A.R.S. § 12-3201(B) requires a permanent blanket injunction be applied in every application, rather than a narrowly tailored injunction.  *See Ringgold,*

761 F.3d at 1066 ("pre-filing restrictions, [] must: ... [be] tailor[ed] narrowly so as 'to closely fit the specific vice encountered'").  (Doc. at 188-192).

Second, as fully described in *Sosa v. DIRECTV, Inc*., 437 F.3d 923, 931-32 (9th Cir. 2006), to determine whether litigation-related petitioning "falls under the protection of the Petition Clause, we must give adequate 'breathing space' to the right of petition". To that end, "protected petitioning activity" encompasses all private litigation-related activity except that which is subject to any of the "three [] sham litigation exception[s]". *Id* at 934-36.  Those exceptions are "first, where the lawsuit is objectively baseless *and* the defendant's motive in bringing it was unlawful; second, where the conduct involves a series of lawsuits brought pursuant to a policy of starting legal proceedings without regard to the merits *and* for an unlawful purpose; and third, if the [litigation] consists of making intentional misrepresentations to the court, litigation can be deemed a sham if a party's knowing fraud upon, or its intentional misrepresentations to, the court deprive the litigation of its legitimacy." *Id* at 938 (emphasis added).  "Under the first exception, ... 'Only if challenged litigation is objectively meritless may a court examine the litigant's subjective motivation.'" *B&G Foods N. Am., Inc. v. Embry,* 29 F.4th 527, 538-39 (9th Cir. 2022).  This "exception" corresponds to the category of vexatious litigation that *Ringgold* calls "harassment". (Doc. 14 at 137, 139).  "[T]he second sham exception applies 'where the defendant is accused of bringing a whole series of legal proceedings' without regard to the merits ... To determine whether the [second] exception applies, we ask: 'Were the legal filings made, not out of a genuine interest in redressing grievances, but as part of a pattern or practice of successive filings undertaken essentially for purposes of harassment?'" *Id.*  This "exception" corresponds to the "frivolous"[12]

---

[12] A pleading is "frivolous" if it is "both [objectively] baseless and made without a

category of vexatious litigation per *Ringgold*. (Doc. 14 at 138).  At no point has any court ever rightfully held that "frivolous" or "baseless litigation [alone] is not immunized by the First Amendment right to petition".  The Supreme Court made this _exact_ point crystal clear in *BE & K Constr. Co. v. N.L.R.B.,* 536 U.S. 516, 530-31, 122 S.Ct. 2390, 153 L.Ed.2d 499 (2002).  *See* Doc. 49, pp. 10-14.  In sum, under the First Amendment, "objectively baseless" litigation is considered "protected petitioning activity" unless that baseless litigation is _also_ determined to be (1) motivated by an "improper purpose", or (2) filed "without regard for the merits" such that a sufficiently long "series" of "frivolous" suits _also_ indicates an "improper purpose".[13]  *BE & K Constr.*; *Sosa*; *B&G Foods*. (Doc. 14 at 134-187).  Although co-defendant Attorney General Mayes seeks to subvert this bedrock standard of constitutional law (Doc. 38, p. 1; Doc. 49), Judge Welty does not expressly endorse the same dangerous disregard for the First Amendment.

III. The Court Should Grant Leave To File An Amended Complaint

Judge Welty deserves credit for not voicing a position abhorrent to the Petition Clause.  But he acted at least recklessly when issuing the AO.  And he now acts intentionally when maintaining the AO and retaining Plaintiff on the vexatious litigant list despite knowledge of the applicable law and operative facts.  In addition to the Petition Clause's broad protections, Judge Welty is also now fully aware (1) of Meza's fraudulent representations and omissions (Doc. 14 at 1-40, 60, 72, 77-78); and (2) that the

---

reasonable and competent inquiry".  *Townsend v. Holman Consulting Corp.,* 929 F.2d 1358, 1362 (9th Cir. 1990) (en banc)

[13] The first two "sham" exceptions "apply[] to different situations [although] cases in our circuit [] have occasionally blurred the lines concerning which test should apply and when".  *Relevant Group, LLC v. Nourmand,* 116 F.4th 917, 929 (9th Cir. 2024).  While the "lawsuit" is the "counting method" unit of analysis for evaluating a "series", in both exceptions litigation is considered a "sham" only "(1) 'where the lawsuit is objectively baseless,' and (2) where 'the defendant's motive in bringing it was unlawful.'".  *Id.*

CV2022-014146 state agency and state contractor defendants misrepresented the facts of a Medicaid contract to avoid public records production where that contractor has been adjudicated to be an agent of the state. (Doc. 14 at 65).  *See J.K. v. Dillenberg,* 836 F.Supp. 694, 697-99 (D.Ariz.1993) (finding Mercy Care to be an agent of the state); *see also Fann v. Kemp in and for the County of Maricopa*, 515 P. 3d 1275 (2022) (agents of the state must comply with public records requests). (Doc. 14 at 61, n.15).  Judge Welty's non-judicial actions cause ongoing irreparable injuries which give rise to a § 1983 claim. Plaintiff requests, and should be permitted, amendment to add Welty as a Count Three defendant. (Doc. 14 at 215-237).  *See Cato v. United States*, 70 F.3d 1103, 1106 (9th Cir. 1995) (a "pro se litigant must be given leave to amend his or her complaint, and some notice of its deficiencies" before dismissal may be granted).  With focused discovery as to targeted facts, and should those facts prove sufficient, the Court should also permit Plaintiff (1) to add Alane Ortega as a Count Three defendant (Doc. 58, pp. 6-8), and (2) to bring a "class of one" claim against Meza. (Doc. 55, p. 15, n.10; Doc. 73, p. 2).  *Id*.

## CONCLUSION

The Arizona Legislature did little more than re-label a fee-shifting statute to create A.R.S. § 12-3201 (Doc. 14 at 121-122) which "lacks a plainly legitimate sweep" and violates the First Amendment in a "substantial number of applications".  *Moody*, 144 S. Ct. at 2397. (Doc. 14 at 123-192).  The statute also violates the Fourteenth Amendment for lacking procedural due process and being impermissibly vague as it invites "arbitrary and discriminatory application" from "judges".  *Grayned v. Rockford*, 408 U.S. 104, 92 S.Ct. 2294, 2298-99, 33 L.Ed.2d 222, 227 (1972). (Doc. 14 at 193-207).  Judge Welty is a "proper defendant" to be sued for declaratory relief, and for enjoining enforcement of § 12-3201 and the non-judicial AO.  The Court should deny the MTD in full.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

DATED this 9th day of September 2025.

By: _//s//_
    Phillip Potter
    Plaintiff
    Pro Se

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

# Exhibit A

Timothy A. Nelson (#016274)
THE NELSON LAW GROUP, PLLC
24 West Camelback
Suite A#541
Phoenix, Arizona 85013
Telephone:    602.421.2681
Facsimile:     602.456.9982
Email:   tim@nelsonlawsolutions.com

*Attorney for Defendant Robert Meza*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

|  |  |
|---|---|
| Phillip Potter, | Case No. 2:25-cv-00663-PHX-DWL |
| Plaintiff, | |
| v. | **DEFENDANT ROBERT MEZA'S INITIAL DISCLOSURE** |
| Robert Meza, et al, | (Hon. Dominic W. Lanza) |
| Defendant. | |

Defendant Rep. Robert Meza objects to having to make any disclosure at this stage of the litigation given his pending joint motion to dismiss and the frivolous nature of Plaintiff's claims.  Subject to, and without waiving this objection, and in an effort to avoid further unnecessary motions practice threatened by Plaintiff, Rep. Meza makes the following initial disclosures pursuant to Rule 26(a)(1), Fed. R. Civ. P. These disclosures are based upon information reasonably available to Rep. Meza at this early stage of the litigation. Rep. Meza anticipates that any necessary pretrial preparation and future discovery will lead to additional relevant information, and reserves the right to supplement these disclosures as appropriate and necessary to comply with applicable rules. Furthermore, these disclosures are made without waiving any objections as to privilege, relevance, and materiality, or admissibility of evidence in this or any other proceeding.

## I. INDIVIDUALS LIKELY TO HAVE DISCOVERABLE INFORMATION

Rep. Meza discloses the following individual as likely to have discoverable information that he may use to support his defense in this case:

a. Phillip Potter, pro se Plaintiff.
2301 North 66th Street
Scottsdale, Arizona 85257
(480) 459-0310
Phillip.t.potter@gmail.com

Mr. Potter is likely to have discoverable information regarding the facts and circumstances surrounding his vexatious conduct in various cases in state court, including but not limited to *Potter v. Arizona House of Representatives*, No. 22-8626 (Ariz. Sup. Ct. filed July 8, 2022), *Potter v. Arizona House of Representatives*, No. 23-0213, 2024 WL 368095(Ariz. App. Feb. 1, 2024), *Potter v. Doctor et al.,* No. CV2021-013210 (Ariz. Sup. Ct. filed Aug. 23, 2021), and *Potter v. Meza, et al.,* No. 1-CA-CV 22-0441(Ariz. App. Filed Oct. 17, 2023).

b. Any witness listed by another party, whether or not later withdrawn.

## II. DOCUMENTS, ELECTRONICALLY STORED INFORMATION, AND TANGIBLE THINGS

Rep. Meza discloses the following documents and may use these documents to support his defenses in this case:

a. The record of proceedings in each of Mr. Potter's state court cases, including but not limited to *Potter v. Arizona House of Representatives*, No. 22-8626 (Ariz. Sup. Ct. filed July 8, 2022), *Potter v. Arizona House of Representatives*, No. 23-0213, 2024 WL 368095(Ariz. App. Feb. 1, 2024), *Potter v. Doctor et al.,* No. CV2021-013210 (Ariz. Sup. Ct. filed Aug. 23, 2021), and *Potter v. Meza, et al.,* No. 1-CA-CV 22-0441(Ariz. App. Filed Oct. 17, 2023).

b. Any record of administrative proceedings in Arizona state court regarding Mr. Potter's vexatious litigant designation.

c. All documents and materials listed by any party in this matter.

III. COMPUTATION OF DAMAGES

Rep. Meza has not asserted a claim for damages at this time, and denies that he has caused any damages to the Plaintiff.

IV. INSURANCE INFORMATION

There are no relevant insurance agreements to disclose.

Dated: September 8, 2025.

THE NELSON LAW GROUP, PLLC

By: /s/ Timothy A. Nelson
Timothy A. Nelson
24 West Camelback
Suite A#541
Phoenix, Arizona 85013
Telephone:    602.421.2681
Facsimile:    602.456.9982

*Attorney for Defendant Robert Meza*