Phillip Potter
2301 N. 66th Street
Scottsdale, Arizona 85257
Phone: 480.459.0310
E-Mail: phillip.t.potter@gmail.com
Plaintiff
Pro Se

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| Phillip Potter, | No. 2:25-cv-00663-PHX-DWL |
|---|---|
| Plaintiff, | |
| v. | **SECOND MOTION TO TAKE JUDICIAL NOTICE RE: ATTORNEY GENERAL MAYES' MOTION TO DISMISS** |
| Robert Meza, et al., | |
| Defendants. | |

INTRODUCTION

Pursuant to Fed. R. Evid. ("Rule") 201, Plaintiff asks the Court to take judicial notice of undisputed facts described below and attached as Exhibit 1 and Exhibit 2.

I. Legal Standard

"The court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *Lee v. City of L.A.*, 250 F.3d 668, 689 (9th Cir. 2001); Rule 201(b). When notice is requested and the Court receives sufficient information, judicial notice is mandatory. Rule 201(c)(2). "The court may take judicial notice at any stage of the proceeding." Rule 201(d).

II. The Court Should Take Judicial Notice

To evaluate the sufficiency of a complaint under Fed. R. Civ. P. 12(b)(1) and (6), courts look to "the complaint itself and its attached exhibits, documents incorporated by reference, and matters properly subject to judicial notice". *In re NVIDIA Corp. Sec. Litig.,* 768 F.3d 1046, 1051 (9th Cir. 2014). Attorney General Kris Mays filed a combined Fed. R. Civ. P. 12(b)(1) and (6) motion to dismiss (Doc. 38) wherein she posited that Plaintiff failed to state a claim because he had applied the wrong legal standard toward deciding whether the facially challenged statute, A.R.S. § 12-3201, violates the Petition Clause. (Doc. 14 at 125). That motion is now fully briefed (Doc. 49; Doc. 53). Plaintiff and the Attorney General dispute what legal standard properly determines the scope of the Petition Clause. The proper standard, in turn, will be used to calculate whether "a substantial number of [the challenged statute's] applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep." *Moody v.*

*NetChoice, LLC,* 144 S. Ct. 2383, 2397 (2024). (Doc. 14 at 123). "The overbreadth dispute boils down to what legal standard defines the right of access to the courts." (Doc. 49, p. 14). Plaintiff asserted that, when deciding if instances of court petitioning lack First Amendment protection, both (1) objective baselessness and (2) a subjectively motivated improper purpose, in the conjunctive, must be demonstrated. This is because the Supreme Court established that to give First Amendment "freedoms ... 'breathing space' essential to their fruitful exercise", the Petition Clause "*limited regulation* to suits that were *both* objectively baseless *and* subjectively motivated by an unlawful purpose", in conjunctive fashion. *BE & K Constr. Co. v. NLRB,* 536 U.S. 516, 524, 531, 122 S.Ct. 2390, 153 L.Ed.2d 499 (2002) (italics with underline emphasis added). (Doc. 14 at 125).

The Attorney General asked the Court to reject this conjunctive standard because "baseless litigation is not immunized by the First Amendment right to petition" (Doc 38, p. 1). Citing *Ringgold-Lockhart v. County of Los Angeles,* 761 F.3d 1057, 1062 (9th Cir. 2014) as basis, she posited "'findings of frivolousness or harassment' is disjunctive. *Id*. at 1062. '[A] pattern of harassment" is an "alternative to frivolousness.' *Id*. at 1064." (Doc. 38, p. 14). She continued to advocate for a "harassment" or "frivolousness"[1] disjunctive legal standard in her response, arguing the Petition Clause does not extend to lawsuits which show "either a pattern of harassment or frivolousness". (Doc. 53, p. 9).

Deciding a separate but related issue, the Court wrote "that *Ringgold-Lockhart* [i]s 'not applicable' because it 'addressed federal vexatious litigant [procedural] rules [under court's inherent authority] and expressly d[oes] not consider" statutory authorities (quoting *Sargent v. Cantil-Sakauye,* 812 F. App'x 682, 683 (9th Cir. 2020)). *See* Doc. 47,

---

[1] *See Moore v. Keegan Mgmt. Co. (In re Keegan Mgmt. Co., Sec. Litig.),* 78 F.3d 431, 434 (9th Cir. 1996) (Litigation is "frivolous" if it "is *both* baseless *and* made without a reasonable and competent inquiry.") (Emphasis original).

n.7. However, the Court seemed willing to entertain the idea that "frivolous litigation" alone defines the outer edges of the Petition Clause, and that the Attorney General's understanding of substantive due process through *Ringgold* was accurate, such that her proposed disjunctive standard should be adopted (Doc. 47, p. 16-17). As justification, pointing to a case finding California state courts ruled California's vexatious litigant statute constitutional, this Court singled out the quote, "[j]ust as false statements are not immunized by the First Amendment right to freedom of speech, baseless litigation is not immunized by the First Amendment right to petition." (Doc. 47, p. 17).

  Here, Plaintiff asks the Court to take judicial notice of facts based on, and in support of, the conjunctive legal standard. He reiterates the Supreme Court clarified the forementioned quote when explaining "that [a court] could enjoin baseless retaliatory [i.e., baseless *and* retaliatory] suits because they fell outside of the First Amendment and thus were analogous to 'false statements.' We concluded that '[j]ust as false statements are not immunized by the First Amendment right to freedom of speech, baseless litigation is not immunized by the First Amendment right to petition.' While this analogy is helpful, it does *not* suggest that the class of baseless litigation is *completely* unprotected: *At most*, it indicates such litigation should be unprotected 'just as' false statements are. And while false statements may be unprotected for their own sake, '[t]he First Amendment *requires* that we protect some falsehood in order to protect *speech that matters*.' ([N]oting the need to protect some falsehoods to ensure that 'the freedoms of speech and press [receive] that 'breathing space' essential to their fruitful exercise'). ... It is at least consistent with these 'breathing space' principles that we have *never* held that the *entire* class of objectively baseless litigation *may be enjoined or declared unlawful* even though such suits may advance no First Amendment interests of their own. Instead,

in cases like *Bill Johnson's* and *PREII*, our holdings <u>*limited regulation*</u> to suits that were <u>*both*</u> objectively baseless *and* subjectively motivated by an unlawful purpose", in conjunctive fashion. *BE & K,* 536 U.S. 516 at 531 (italics with underline emphasis added).[2] (Doc. 49, p. 11-12; Doc 14 at 213).

     *BE & K* is not the only binding precedent which confirms district courts in this circuit must apply the conjunctive legal standard on all matters implicating the Petition Clause. For example, the Ninth Circuit distinguishes "protected petitioning activity [from related litigation] activity which [also] must be protected to afford breathing space to the right of petition guaranteed by the First Amendment". *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 933 (9th Cir. 2006). "Protected petitioning activity" – what one could think of as core petitioning – involves the filing of pleadings (i.e., a "complaint", petition, "answer", etc.) to seek redress vindicating *substantive* rights. *See* Fed. R. Civ. P. 7(a); Ariz. R. Civ. P. 7. While not considered core petitioning, "conduct incidental to a petition" encompasses all *procedural* conduct (i.e., motion practice, settlement communications, disclosure and discovery matters, etc.). *Sosa*, 437 F.3d at 935.

---

[2] The *BE & K* "entire class of objectively baseless litigation" consists of at least three "classes" of "objectively baseless" suits, including suits whose filing was (1) genuinely arguable under the filing circumstances; (2) not "subjectively motivated" by an "improper purpose"; and (3) "subjectively motivated by an improper purpose". Suits in the first "class" are not subject to sanction, much less injunction or other regulation of petitioning rights. The second "class" of objectively baseless suits are those negligently filed (i.e., *objectively* motivated) when viewed in the light of a reasonable person standard. *Townsend v. Holman Consulting Corp.,* 929 F.2d 1358, 1362 (9th Cir. 1990) (*en banc*) ("The standard governing both [baselessness and negligence] inquiries is objective"). This "class" may be subject to sanctions as a form of litigation-related misconduct per Fed. R. Civ. P. 11(c) if recklessly, knowingly or intentionally maintained after proper notice of unreasonableness. Finally, the last "class" of objectively baseless suits are *subjectively* motivated by an improper purpose. This "class" is not just sanctionable but also actionable because the petitioning falls outside the Petition Clause's conjunctive protections unlike the other "classes" of suits which fall within those protections.

"[T]hose who petition any department of the government for redress are generally immune from statutory liability for their petitioning conduct" whether that conduct be displayed by filing a petition (i.e., core "petitioning activity") or through prosecuting the petition (i.e., "conduct incidental to a petition"). *Id* at 929. This distinction between core petitioning and "incidental" conduct provides an avenue to manage litigation-related misconduct via procedural rules, and legislatures to enact laws which proscribe such misconduct. That said, the Petition Clause ensures such *procedural* measures are not transformed into means, or used as pretext, to abridge *substantive* petitioning.

The conjunctive standard establishes a bright line between permissible procedural sanctions and impermissible substantive infringement that manifests, for instance, in how courts interpret Fed. R. Civ. P. 11 to avoid sanctioning substantive petitioning unless the "complaint" is *both* objectively baseless (i.e., frivolous) *and* subjectively motivated by an improper purpose. *See e.g., Hudson v. Moore Business Forms, Inc.,* 836 F.2d 1156, 1159 (9th Cir.1987) ("a complaint that is found to be well-grounded in fact and law cannot be sanctioned as harassing, regardless of the attorney's subjective intent"); *CrossFit Inc. v. Martin*, No. 2:14-CV-02277-PHX-JJT, 2017 WL 4236968 * 8 (D. Ariz. Sept. 22, 2017) ("the [Fed. R. Civ. P. 11(b)(1)] 'improper purpose' inquiry subsumes the 'frivolousness inquiry' when applied to the filing of complaints. In other words, 'complaints are not filed for an improper purpose if they are non-frivolous.'"). (Doc. 49, p. 11).

Likewise, absent both conjunctive conditions, the Petition Clause guarantees legislators may not enact statutory burdens on substantive petitioning. But that is precisely what § 12-3201 does since no § 12-3201(E)(1)(a)-(f) "vexatious conduct" provision involves "both objectively baseless and subjectively motivated by an improper purpose" before petitioning is permanently enjoined. *See* A.R.S. § 12-3201(B) ("A pro

se litigant who is designated a vexatious litigant may not file a new *pleading*, motion or other document without prior leave of the court"). (Doc. 14 at 188-192).  Such indiscriminate abridgement makes the statute unconstitutional.  *See Sosa*, 437 F.3d at 936 (the "breathing space" requirement protects "petitioning activity" and "conduct incidental to a petition" under the First Amendment "unless the underlying petition itself fell outside" those conjunctive protections).  To be sure, the Supreme Court has long held that state government officials have no authority to pass laws, enforce laws, or interpret laws (even the common law) in ways which serve to punish, chill or otherwise abridge First Amendment expression, most often in the form of speech[3], unless that expression is *both* objectively false *and* subjectively motivated by malice.  *See e.g.*, *N.Y. Times Co. v. Sullivan,* 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964). (Doc. 14 at 125-128).

      Again, Attorney General Mayes misinterprets the *Ringgold* phrase "a pattern of harassment or frivolousness" in the "either ... or" disjunctive. (Doc. 38; Doc. 53).  Her misinterpretation openly conflicts with *Sosa* and *BE & K* which "limited regulation to suits that were both objectively baseless and subjectively motivated by an unlawful purpose", in conjunctive fashion.  Her misinterpretation would also impose the same disjunctive legal standard for substantively infringing on core petitioning that courts use to procedurally sanction litigation-related misconduct in a "written motion, or other paper".  Fed. R. Civ. P. 11(b)(2) and (c).  But a higher standard is required to sanction a "pleading" than a "motion" because of the Petition Clause.  Indeed, as a basic matter of rules interpretation, courts apply the conjunctive standard, not the disjunctive, when considering sanctions for a "complaint".  *CrossFit Inc,* WL 4236968 * 8 ("complaints are

---

[3] *See Borough of Duryea v. Guarnieri*, 564 U.S. 379, 393 (2011) ("The rights of speech and petition 'share substantial common ground'").

not filed for an improper purpose if they are non-frivolous.'"). If a disjunctive standard cannot form the basis to sanction core petitioning under a procedural authority, it surely cannot form the basis to infringe on those same petitioning rights under a statutory authority. The disjunctive standard collapses under the weight of the conflicts it creates.

In contrast, reading the applicable legal standard in the conjunctive creates no conflicts. U.S. Const. amends. I and XIV prohibit states from enacting or enforcing laws which abridge court petitioning unless the underlying suit is a "sham". *Sosa*, 437 F.3d at 931-32. The Ninth Circuit applies "a strict two-step analysis to assess whether a single action constitutes sham petitioning." *USS-POSCO Indus. v. Contra Costa Cnty. Bldg. & Const. Trades Council, AFL-CIO*, 31 F.3d 800, 810-11 (9th Cir. 1994). Court petitioning is considered a "sham" only when <u>both</u> of two conditions are met: "where the lawsuit is objectively baseless and the [litig]ant's motive in bringing it was unlawful." *Sosa*, 437 F.3d at 938. "The two parts of the test operate in succession: Only if the suit is found to be objectively baseless does the court proceed to examine the litigant's subjective intent." *USS-POSCO Indus.*, 31 F.3d at 810. Given that the Supreme Court directly addressed this issue, the conjunctive standard must be used to differentiate "protected petitioning activity" from unprotected conduct in bright line fashion as "*BE & K* made ... explicit". *Sosa*, 437 F.3d at 934. This legal standard gives the Petition Clause "breathing space" and is otherwise known as the "sham litigation" test. *Id*. (Doc. 14 at 126, 230, n.38).

With that test in mind, the *Ringgold* reference to "harassment" (*see Ringgold*, 761 F.3d at 1064-65) traces to *In re Powell,* 851 F.2d 427 (D.C.Cir.1988) (per curiam) which made clear that in the vexatious litigant context, like all other contexts, cases reviewed for the "improper purpose" of "harassment" must also display "obvious lack of merit" as a precursor. *Id* at 432. Put another way, a meritorious (i.e., non-baseless) complaint

cannot give rise to a vexatious "harassment" consideration, much less an actual determination. *B&G Foods N. Am., Inc. v. Embry,* 29 F.4th 527, 538-39 (9th Cir. 2022) ("Only if challenged litigation is objectively meritless may a court examine the litigant's subjective motivation"). The Attorney General's contention that *Ringgold* somehow permits a one-part legal standard to evaluate for the improper purpose of "harassment" absent objective baselessness cannot be reconciled with *BE & K*, *Sosa*, or any of their predecessor or progeny caselaw, but the conjunctive standard creates no such conflicts.

Furthermore, *Ringgold* never held that "frivolousness" in a single action, or even in a small number of actions, suffices as a stand-alone condition to deprive free access to the courts. The Ninth Circuit's legal standard for vexatious "frivolousness" expressed in *Ringgold* requires (1) an "inordinate" number of (2) frivolous suits. *Ringgold,* 761 F.3d at 1064 ("To determine whether the litigation is frivolous, district courts must 'look at *both* the number *and* content of the filings as indicia of the frivolousness of the litigant's claims. While we have not established a numerical definition for frivolousness, we have said that 'even if [a litigant's] *petition* is *frivolous*, the court [must] make a finding that the *number of complaints* was inordinate. Litigiousness alone is not enough. ... [T[wo cases is *far fewer* than what other courts have found 'inordinate.'") (internal citations omitted) (emphasis added). Taken together, the *Ringgold* vexatious "frivolousness" test for an "inordinate" number of what *Moore*, 78 F.3d at 434, defines as "baseless" suits filed "without a reasonable and competent inquiry" can alternatively be described as a test for "a series of lawsuits 'brought pursuant to a policy of starting legal proceedings without regard to the merits'". *Sosa*, 437 F.3d at 938. That alternative phrasing is what *Sosa* calls the "second sham litigation exception" test. *Id*. The "second" test complements the "first shame litigation exception" test which, again, is simply another name for the *BE*

*& K* conjunctive legal standard for *both* objective baselessness *and* a subjectively motivated improper purpose. *Id*. The Ninth Circuit reads the "first sham litigation exception" and the "second sham litigation exception" tests together "as applying to different situations" and thus consistent with *BE & K*. *Relevant Grp., LLC v. Nourmand,* 116 F.4th 917, 929 (9th Cir. 2024). (Doc. 14 at 230, n.38). Although this circuit has "occasionally blurred the lines concerning which [sham exception] test should apply and when", the first exception test applies "when there is 'a single sham lawsuit (or *a small number of such suits*)" and the second exception test applies to a "series" of suits although there is no hard delineation between what constitutes a "small number" or a "series".[4] *Id* (emphasis original). The "rarity" of case law addressing a "series" of suits is considered "a feature rather than a bug" of the second sham litigation exception test. *Id* at 931. In other words, this circuit purposefully made the second sham test difficult to prove. Critically, the unit of analysis for either sham litigation exception test is the "lawsuit" (i.e., the "civil action"), not filings within a suit. *Id*. And the Ninth Circuit does not consider "four actions" to be "inordinate" enough to constitute a "series". *Id*; *Ringgold,* 761 F.3d at 1065 ("two cases is far fewer than what other courts have found 'inordinate'"). In the vexatious litigant context, the number of suits required to prove the second sham litigation exception test reaches into double digits where "thirty-five actions" is the minimum number affirmed. *Id* at 1066. *Ringgold* cites *BE & K* so the *Ringgold* circuit court was aware of the conjunctive legal standard made explicit therein. *Ringgold,* 761 F.3d at 1061. (Doc. 14 at 137-138). The Attorney General's contention

---

[4] The "second sham litigation test" permits suits that are both objectively baseless and *objectively* motivated (i.e., negligently frivolous) to lose Petition Clause protection provided that the number of such suits is sufficiently "inordinate" to constitute a "series". The "series" concept serves as an alternative indicator that the litigant is actually "subjectively motived" to accomplish "an unlawful purpose". *Sosa*, 437 F.3d *at* 938.

that "baseless litigation [alone] is not immunized by the First Amendment right to petition" and her interpretation the Petition Clause permits a determination of "either" harassment "or" frivolousness as a disjunctive standard, cannot be reconciled with binding precedent or procedural rules.  The conjunctive legal standard harmonizes all.

In sum, when deciding whether litigation "conduct falls under the protection of the Petition Clause, we must give adequate 'breathing space' to the right of petition". *Sosa*, 437 F.3d at 931-32. (Doc. 14 at 126, 213).  The "breathing space" principle requires the Court evaluate A.R.S. § 12-3201 against the true scope of the Petition Clause defined by the *BE & K* conjunctive legal standard.  Attorney General Mayes asks the Court to apply a disjunctive legal standard based on misunderstood quotes taken out of context.  Providing clarity on those exact quotes, the U.S. Supreme Court made the conjunctive legal standard "explicit".  When applying that proper legal standard, the challenged statute is facially overbroad in violation of the First Amendment.  Federal rules interpretation, Ninth Circuit caselaw, and on-point Supreme Court precedent all support Plaintiff's position that the Court must apply the conjunctive legal standard to give the Petition Clause "breathing space essential to [its] fruitful exercise".  With the conjunctive standard in mind, Plaintiff asks the Court to grant judicial notice, as follows.

A. The Court Should Take Judicial Notice of California's Vexatious Litigant Statute

When deciding motions to dismiss, federal courts may take "judicial notice of ... statutes, ... not included in the plaintiff's complaint." *Navajo Nation v. Dep't of the Interior,* 876 F.3d 1144, 1153 n.3 (9th Cir. 2017).

1. Calif. Code Civ. P. §§ 391-391.8 Is Relevant

The Court alluded to "California's vexatious litigant statute" (Calif. Code Civ. P. §§ 391-391.8) and associated caselaw in a preliminary ruling. (Doc. 47, p. 17).  It is well

known that California's statute has been challenged on First Amendment grounds in state courts up to the California Supreme Court which found that statute constitutional. *See e.g.*, *Moran v. Murtaugh Miller Meyer & Nelson, LLP,* 40 Cal. 4th 780 (2007). As such, federal courts must accept the state supreme court's construal and findings. *Mullaney v. Wilbur,* 421 U.S. 684, 691 (1975) ("state courts are the ultimate expositors of state law, and [] we are bound by their constructions"). Only the U.S. Supreme Court remains in position to review and override the California Supreme Court. U.S. Const., art. III, § 2; 28 U.S.C. § 1257. That said, Arizona's supreme court has also spoken on how to construe its statute's language, and federal courts must also adopt that construal. *See Ariz. Republican Party v. Richer*, 257 Ariz. 210 (2024). (Doc. 14 at 128-131).

The plain language of those two statutes differs considerably. That said, the Court need not wrestle with any perceived discrepancies. It can simply give nod to the California Supreme Court's findings while adopting the Arizona Supreme Court's *Richer* findings, apply the proper legal standard to decide what instances of petitioning the Petition Clause protects, and determine whether the challenged statute operates within, or infringes on, First Amendment protections. To be clear though, the substantive language of California's statute holds that California state courts cannot find a litigant vexatious unless "after hearing evidence on the motion, the court determines that the litigation has no merit *and* has been filed for the purposes of harassment or delay". Calif. Code Civ. P. § 391.3(b). California's legislature expressly wrote the conjunctive legal standard into its statute to ensure applications do not run afoul of the Petition Clause. Arizona's did not.

2. Exhibit 1: Calif. Code Civ. P. §§ 391-391.8

Plaintiff asks the Court to take judicial notice of Calif. Code Civ. P. § 391.3(b) plain language which says California courts may find a pro se litigant vexatious only

"[i]f, after hearing evidence on the motion, the court determines that the litigation has no merit *and* has been filed for the purposes of harassment or delay". This language can be found in Calif. Code Civ. P. §§ 391-391.8 (*see* Exhibit 1), which the Court can also review on the California Legislature's government website accessible online at https://leginfo.legislature.ca.gov/faces/codes_displaySection.xhtml?sectionNum=391.3.&nodeTreePath=5.4&lawCode=CCP.

B. The Court Should Take Judicial Notice of Arizona's Vexatious Litigant List

Courts may take judicial notice of materials available on government websites. *Gustavson v. Wrigley Sales Co.*, 961 F. Supp. 2d 1100, 1113 n.1 (N.D. Cal. 2013). Courts also "may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue". *Rancheria Citizens Council v. Borneo,* 971 F.2d 244, 248 (9th Cir. 1992)

1. Arizona's Vexatious Litigant List Is Relevant

The Arizona Supreme Court maintains an online list of litigants publicly designated vexatious per A.R.S. § 12-3201. The online list also links to case records, including judicial orders and administrative orders which allow the parties and the Court to ascertain facts from which can be used to calculate the number and ratio of case outcomes which violate the Petition Clause. Those calculations, in turn, reveal whether "a substantial number of applications are unconstitutional" to decide Count One.

On motion, § 12-3201 mandates state courts impose a blanket injunction on pro se litigants who demonstrates "any" evidence of "vexatious conduct". *See* A.R.S. §§ 12-3201(A), (B), (C), and (E)(1)(a)-(f). This includes a general prohibition on filing any future "pleading" absent "leave of court" per § 12-3201(B). However, the Ninth Circuit held that any vexatious injunction, like all injunctions implicating First Amendment

rights, "must be narrowly tailored to the vexatious litigant's wrongful behavior". *Molski v. Evergreen Dynasty Corp.,* 500 F.3d 1047, 1061 (9th Cir.2007) (per curiam). As explained in the operative complaint (Doc. 14 at 125) and Plaintiff's response (Doc. 49) to the Attorney General's motion to dismiss (Doc. 38), the Petition Clause "limit[s] regulation to suits that [a]re both objectively baseless *and* subjectively motivated by an unlawful purpose", in conjunctive fashion per *BE & K*. The question then becomes whether § 12-3201(E)(1)(a)-(f) proscribed conduct classifies as protected petitioning under the Petition Clause. If so, at least in "a substantial number of applications", then the statute violates the First Amendment. Consequently, the online list and facts contained therein are relevant to deciding Attorney General's motion to dismiss.

<u>2. Exhibit 2: Records From Arizona's Vexatious Litigant List Website</u>

Plaintiff asks the Court to take judicial notice of facts drawn from case records on Arizona's vexatious litigant list entered after January 1, 2015 (*see* Exhibit 2). The Court can also review these records on the Arizona Supreme Court website accessible online at https://www.azcourts.gov/Vexatious-Litigants/List-of-Vexatious-Litigants.

<u>3. A Substantial Number of Applications Are Unconstitutional</u>

As a matter of substantive due process, a vexatious litigant injunction must be narrowly tailored to fit a specific vice and can only regulate petitioning conduct which falls outside the Petition Clause's "breathing space" safeguards – i.e., "sham" litigation.

Of the seventeen (17) Maricopa County court records (Exhibit 1, pdf pp. 1-135), four (4) do not contain blanket language generally prohibiting the self-represented litigant from ever filing any new lawsuit (i.e., "court action") without leave of the court. Those cases are Administrative Order 2015-095 (pdf pp. 1-3, "Mr. Fishman may not file any new causes of action in any of the Maricopa County *Justice Courts* after the date of this

order"); Administrative Order 2017-028 (pdf pp. 4-6, "Mr. Ariav may not file any new causes of action against Barbara Dalicandro after the date of this order without leave of the Civil Presiding Judge"); Administrative Order 2022-053 (pdf pp. 101-103, "Mr. Meilleur may not file any new causes of action against Lisa Posada after the date of this order without leave of the Civil Presiding Judge"); and Administrative Order 2024-046 (pdf pp. 130-135, "Mr. Lewis may not file any new causes of action as a pro se litigant in any way related to his criminal arrest, prosecution, or conviction, including the issuance of any alleged bonds, after the date of this order without leave of the Civil Presiding Judge or his/her designee").  Of those four (4) cases, the litigant in question was found the have violated both § 12-3201(E)(1)(c) (i.e., objective baselessness) and (a) (i.e., the subjectively motivated improper purpose of harassment)[5] in three (3) cases; specifically, Administrative Order 2017-028 (pdf pp. 4-6, "the Court found Mr. Ariav brought his lawsuit without substantial justification; Mr. Ariav's intention was to harass, embarrass and intimidate the defendant"); Administrative Order 2022-053 (pdf pp. 101-103, "The Court finds that the lawsuits against Ms. Posada are brought without substantial justification and are intended primarily for the purpose of harassing her"), and Administrative Order 2024-046 (pdf pp. 130-135, "the Court finds that Mr. Lewis has engaged in vexatious conduct by the repeated filing of court actions solely or primarily for the purpose of harassment and brought actions without "substantial justification" as defined in A.R.S. § 12-349").

     Of the thirty-eight (38) records on the list from other county courts (see Exhibit 1,

---

[5] The Arizona Supreme Court found § 12-3201(E)(1)(c) language only reaches objective baselessness while § 12-3201(a) only reaches the improper purpose of harassment.  This construal "extricates [Arizona] courts from the morass of attempting to discern the subjective motives of attorneys and parties in bringing a case and avoids conflating motive and the objective reasonableness of litigation".  *Richer*, 257 Ariz. 210 at ¶ 40.

14

pdf pp. 136 - 264), seventeen (17) cases do not include blanket language prohibiting the litigant from ever filing any new lawsuit (i.e., "court action") without leave of the court. Those cases are Yuma Administrative Order 2016-001 (pdf pp. 136-139, "Ordering the Riendeaus not file any new pleadings, motions or other documents in S1400CV201001521 *Riendeau v Thomas*, *Thomas and Markson P.C.* et al without prior leave of the court"); Yavapai case 1300DO201380058 (pdf pp. 149-150, "Petitioner shall also be required to obtain the Court's permission to file any future pleadings in this case"); Yavapai case S1300DO202480044 (pdf pp. 160-162)[6]; Yavapai case P1300DO20060917 (pdf pp. 163-167)[7]; Pima case SP20200416 (pdf pp. 168-175, "Cody Alan Castro, shall utilize the following procedure in order to obtain permission to file pleadings in this matter..."); Yavapai case V1300CV202180348 (pdf pp. 177-178, "he is precluded from filing any documents in this case without first obtaining leave of the Court"); Pima case C20174102 (pdf pp. 179-184, "Plaintiff shall be enjoined from filing any future lawsuits in Pina County against Defendant"); Pima case D20181014 (pdf pp. 191-197, "Respondent shall not file any more pleadings, motions or requests for relief in this divorce action"); Yavapai case V1300DO201580241 (pdf pp. 198-201, "Petitioner shall not file any pleadings in this case without first obtaining leave of the Judge"); Yavapai case P1300CV201800284 (pdf pp. 211-212, "before she is able to file another pleading against or involving Defendants she needs to file a motion for permission of the court"); Pima case SP2015-1002 (pdf pp. 213-215)[8]; Pima case D20201386 (pdf pp. 219-228, "Respondent shall not file any more pleadings, motions or requests for relief in this divorce action without a Court order accepting a proposed filing"); Pima case C20155817

---

[6] This Court issued no pre-filing restrictions but merely labeled the litigant vexatious.
[7] This Court issued no pre-filing restrictions but merely labeled the litigant vexatious.
[8] This Court issued no pre-filing restrictions but merely labeled the litigant vexatious.

(pdf pp. 229-238, "Mel M. Marin is enjoined from filing any lawsuit, in which he is self-represented, in any Arizona Superior Court or any Justice Center against any Defendant in this action"); Pima case C20232864 (pdf pp. 239-247, "Plaintiff Mark W. McCune is enjoined from filing any pro se lawsuit in any Arizona Superior Court regarding the property located at 2131 N. Frannea Drive"); Pima case P1300DO201200632 (pdf pp. 248-249, "Respondent Deborah Sue Pomeroy is precluded from filing any document in this case without first obtaining leave of the Court"); Yavapai case P1300CV202100126 (pdf pp. 256-257, "Peter Strojnik is precluded from filing any documents in any of the following cases ... without first obtaining leave of the Court"; Yavapai case P1300PB201700254 (pdf pp. 258-259, "Respondent shall not file into the probate matter or any related civil matter without further order of the Superior Court").  Of those seventeen (17) cases, the litigant was found the have violated both § 12-3201(E)(1)(c) and (a) in five (5) cases; specifically, Yuma Administrative Order 2016-002 (pdf pp. 136-139, "Plaintiff's conduct in both lawsuits clearly evidences their intent to harass ... Plaintiff's entire conduct, the undersigned concludes is without any justification, not just 'without substantial justification'"); Pima case C20202169 (pdf pp. 151-159, "Accordingly, at least the Third and Fourth Lawsuit were brought without substantial justification. ... Given the totality of the conduct, the Court finds that the purpose of the conduct was to harass Defendant."); Pima case SP20200416 (pdf pp. 168-175, "Respondent's motions are frivolous and harassing")[9]; Pima case C20155817 (pdf pp. 229-238, "Plaintiff has filed frivolous and meritless cases against various parties throughout the country. ... Plaintiff's practice of filing repetitive lawsuits against these

---

[9] This court found motion practice was "frivolous and harassing", not the dissolution case. This record is included based primarily on its overall narrative rather than a specific §§ 12-3201(E)(1)(a) or (c) finding regarding a complaint or court action.

and other Defendants is abusive, harassing, and contrary to the interests of justice"); Pima case P1300DO201200632 (pdf pp. 248-249, "All of these pleadings are designed to harass and disparage ... The Petition to Modify Child Support, as well as many of the legal points in his "Notices" to the Court were brought without substantial justification").

## CONCLUSION

The Court should judicially notice facts from plain language in California's vexatious litigant statute. Those facts support the conjunctive legal standard. The Court should also judicially notice factual quotes from case records. Those facts show three (3) of seventeen (17) Maricopa County cases on the vexatious litigant list are constitutional, meaning just three (3) regulate "sham" litigation. As such, 82% of the challenged statute's applications in Maricopa County violate the Petition Clause. Elsewhere, only five (5) out of thirty-eight (38) cases on the list are constitutional. In other words, 87% of the challenged statute's applications outside of Maricopa County violate the Petition Clause. Altogether, when applying the proper conjunctive legal standard, of the fifty-five (55) total cases appearing on the state's vexatious litigant list, only eight (8) impose a narrowly tailored injunction which regulates sham petitioning. Consistent with the *Moody* analysis, 85% of vexatious litigant injunctions issued per A.R.S. § 12-3201 violate the Petition Clause, meaning "a substantial number of applications ... are unconstitutional" in relation to any legitimate sweep. The challenged statute is facially overbroad. The Court should permanently enjoin its operation and enforcement.

DATED this 16th day of October 2025.

By: //s//
    Phillip Potter
    Plaintiff
    Pro Se