Phillip Potter
2301 N. 66th Street
Scottsdale, Arizona 85257
Phone: 480.459.0310
E-Mail: phillip.t.potter@gmail.com
Plaintiff
Pro Se

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| Phillip Potter, | No. 2:25-cv-00663-PHX-DWL |
|---|---|
| Plaintiff, | |
| v. | **REPLY TO MOTION TO TAKE LIMITED JURISDICTIONAL DISCOVERY FROM PRESIDING JUDGE PAMELA GATES** |
| Robert Meza, et al., | |
| Defendants. | |

As Plaintiff noted in his Motion to Take Limited Jurisdictional Discovery, "Fed. R. Civ. P. 12(b)(1) motions are classified as 'facial' or 'factual'" but any factual attack on jurisdictional standing requires "affidavits, exhibits, records, or independently verifiable facts outside the operative complaint" to be introduced. (Doc. 84, p. 6.).  Despite asking the court to "take judicial notice" of "Administrative Order 2023-159" in her combined Fed. R. Civ. P. 12(b)(1) and (6) dismissal motion (Doc. 67, p. 9, n. 1), the Presiding Judge "did not produce facts contained either in court records or in administrative records to support the basis for the conclusion that Administrative Order 2023-0159 is a judicial

order" (Doc. 84, p. 5; *see also* Doc. 79, pp. 2-11). Objecting to jurisdictional discovery, the Hon. Pamela Gates expressly confirms her "Motion to Dismiss does not cite to or rely on any extraneous documents or records. ... The Judicial Defendant relied entirely upon facts in the <u>record</u> for her Motion to Dismiss briefing." (Doc. 86, pp. 3-4) (emphasis added). The Court should take Judge Gates at her word and determine that, as a matter of law, Judge Gates cannot demonstrate "judicial immunity" (Doc. 67, pp. 7-9) since dismissal motions at the pleading stage evaluate the sufficiency of well-pled facts as alleged in "the complaint" (Doc. 79, pp. 1-3), not decide between disputed versions of facts – including jurisdictional facts – contained in "the record". *See Khoja v. Orexigen Therapeutics, Inc*., 899 F.3d 988 (9th Cir. 2018). "Defendants face an alluring temptation to pile on numerous documents to their motions to dismiss to undermine the complaint, and hopefully dismiss the case at an early stage. Yet the unscrupulous use of extrinsic documents to resolve competing theories against the complaint risks premature dismissals of plausible claims that may turn out to be valid after discovery." *Id* at 998. It seems Judge Gates has succumbed to this "temptation". To be clear, Plaintiff was not aware of Administrative Order 2023-159 prior to July 2025 as he swore on affidavit (Doc. 54, Affid.; Doc. 79, p. 1) and as evidenced by the fact that he did not reference that administrative order in his complaint. (Doc. 14). Because Plaintiff did not reference that document and because the Presiding Judge expressly and unambiguously did "not cite to or rely on any extraneous documents" in her dismissal motion, the Court cannot evaluate the sufficiency of the complaint with Administrative Order 2023-159 in mind.

The Ninth Circuit "address[ed] and clarif[ied] when and how the district court should consider materials extraneous to the pleadings at the motion to dismiss stage via judicial notice and the incorporation-by-reference doctrine." *Khoja*, 899 F.3d at 993.

"[J]udicial notice and incorporation-by-reference do have roles to play at the pleading stage. ... [However], [i]f defendants are permitted to present their own version of the facts at the pleading stage – and district courts accept those facts as uncontroverted and true – it becomes near impossible for even the most aggrieved plaintiff to demonstrate a sufficiently 'plausible' claim for relief." *Id* at 998-99. "[I]ncorporation-by-reference is a judicially created doctrine that treats certain documents as though they are part of the complaint itself. ... [A] defendant may seek to incorporate a document into the complaint 'if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim.' [But] 'the mere mention of the existence of a document is insufficient to incorporate the contents of a document'. ... [I]f the document merely creates a defense to the well-pled allegations in the complaint, then that document did not necessarily form the basis of the complaint" and should not be considered when evaluating a Fed. R. Civ. P. 12(b) motion to dismiss. *Id* at 1002. Administrative Order 2023-159 classifies as an "extraneous" document that does nothing more than create a potential "defense to the well-pled allegations in the complaint" and, thus, cannot form the factual basis for Fed. R. Civ. P. 12(b)(1) or (6) dismissal as a matter of law. *Id*.

For similar reasons, as it stands, the Court cannot consider Administrative Order 2023-159 under Fed. R. Evid. 201. "Judicial notice under Rule 201 permits a court to notice an adjudicative fact if it is 'not subject to reasonable dispute.' ... Accordingly, '[a] court may take judicial notice of matters of public record without converting a motion to dismiss into a motion for summary judgment.' But a court cannot take judicial notice of disputed facts contained in such public records. ... Just because the document itself is susceptible to judicial notice does not mean that every assertion of fact within that document is judicially noticeable for its truth." *Id* at 999 (citations omitted). Judge Gates

asked the Court to take judicial notice of Administrative Order 2023-159 but "did not clearly specify what fact or facts" – including jurisdictional facts – she believes are undisputed and dispositive. Further, Plaintiff disputes facts contained in that document. (Doc. 79, pp. 1-3). Indeed, in his version of the facts, the existence and contents of Administrative Order 2023-159 support Plaintiff's claims for damages against Defendants Robert Meza and Karrin Taylor Robson who secured the order through false presentations and material omissions of fact (Doc. 14 at 61-86, 215-237), and against Defendants Robert Meza, Karrin Taylor Robson, and Alane Ortega who abused judicial processes in pursuit of such an order. (Doc. 14 at 83-95, 112, 238-269). In sum, that administrative order cannot serve as the factual or legal basis for dismissal because "there is a reasonable dispute as to what the [order] establishes." *Id* at 1001. That dispute also includes "what the [order] establishes" as it pertains to Judge Gates; specifically, as to whether the administrative order classifies a judicial order. Plaintiff brings to the Court's attention that the Presiding Judge makes two contradictory statements on this issue. She first admits jurisdictional discovery should be granted when the "facts upon which federal jurisdiction hinged were disputed". (Doc. 86, p. 1). But she then goes on to claim her Motion to Dismiss should "be decided as a matter of law" because the mere existence of Administrative Order 2023-159 somehow makes that document a judicial order issued in a judicial capacity, rather than an administrative order issued in an administrative capacity. (Doc. 86, p. 2). Seeking to withhold relevant jurisdictional facts described as the "the innerworkings of the court" (Doc. 86, p. 4), Judge Gates asks the Court to deny jurisdictional discovery. However, the U.S. Supreme Court held that <u>*administrative*</u> innerworkings are actionable since "[j]udicial immunity only applies to judicial acts, and not to 'the administrative, ... functions that judges may on occasion be assigned by law to

perform.' ... Administrative decisions, even though they may be essential to the very functioning of the courts, have not generally been regarded as judicial acts." *Forrester v. White,* 484 U.S. 219, 227-28, 108 S.Ct. 538, 98 L.Ed.2d 555 (1988). (Doc. 79, pp. 3-5). In the end, the Court should grant Plaintiff's request for jurisdictional discovery to ascertain facts determinative of whether the administrative order is what its title suggests it is – an <u>*administrative*</u> order that does not give rise to judicial immunity or any other jurisdictional defense.

REBUTTAL

The Court should grant jurisdictional discovery so that Plaintiff can defeat any jurisdictional defense which hinges on judicial immunity, and so that he can bring all potential claims against all potential defendants in a single action under Article III jurisdiction. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966).

<u>I. The Court Should Grant Jurisdictional Discovery</u>

When deciding a combined Fed. R. Civ. P. 12(b)(1) and (6) dismissal motion, district courts are instructed to look to the operative "complaint itself and its attached exhibits, documents incorporated by reference, and matters properly subject to judicial notice". *In re NVIDIA Corp. Sec. Litig.,* 768 F.3d 1046, 1051 (9th Cir. 2014). Courts are "to take as true all material allegations in the complaint and construe the complaint in favor of the plaintiff." *Arizona v. Yellen,* 34 F.4th 841, 849 (9th Cir. 2022). Furthermore, a "pro se litigant must be given leave to amend his or her complaint, and some notice of its deficiencies" before dismissal may be granted. *Cato v. United States*, 70 F.3d 1103, 1106 (9th Cir. 1995). Adherence to these principles show (1) Plaintiff has jurisdictional standing to pursue a claim for declaratory relief against the Presiding Judge, in an official administrative capacity; (2) the Court should permit jurisdictional discovery so that

Plaintiff can defeat any immunity defense, and amend his complaint to include a claim for prospective injunctive relief in the form of a "positive injunction" rather than the current "negative injunction" sought; and (3) the Court should permit jurisdictional discovery so that Plaintiff can ascertain facts necessary to amend his complaint to add a claim for damages, if appropriate.

### A. Plaintiff Has Jurisdictional Standing To Bring A Claim For Declaratory Relief

Plaintiff's operative complaint makes it clear he sought both declaratory relief and injunctive relief against the Presiding Judge in an official administrative capacity under 42 U.S.C. § 1983 where there can be no judicial immunity against declaratory relief. (Doc. 14 at 113-207, pp. 70-71). "Section 1983 only contemplates judicial immunity from suit for *injunctive* relief for acts taken in a *judicial* capacity. ... Since [Plaintiff] sued [Judge Welty, and now Judge Gates] in [their] *administrative* capacity as [Presiding Judge of the Maricopa County Superior Court], we conclude that dismissal is not warranted on the basis of judicial immunity." *Wolfe v. Strankman,* 392 F.3d 358, 366 (9th Cir. 2004) (emphasis added); *see also* Doc. 79, p. 4. In *Wolfe*, the circuit decided "judicial immunity" in the specific context of another state's vexatious litigant statute, noted § 1983 does not preclude declaratory relief, and determined judicial immunity does not apply to judicial officers sued in their "administrative capacity" for injunctive relief.

Regardless, in her Reply to her Motion to Dismiss, Judge Gates contended "*Munoz*, applying *Whole Woman's Health*, explained that state judicial officers were not subject to suit in federal court and overruled *Wolfe v. Strankman*, 392 F.3d 358 (9th Cir. 2004)." (Doc. 81, p. 3). The legal contention that *Munoz* "overruled" *Wolfe* on the issue of judicial immunity when a judge is brought to suit in their administrative capacity is simply not true. The Ninth Circuit held in *Wolfe* that "[t]he role of a judge under the

Vexatious Litigant Statute cannot be characterized simply. Some activities that judges take pursuant to the statute are clearly adjudicative. For example, a judge acts as a neutral adjudicator in determining whether a plaintiff is a vexatious litigant upon a motion by a defendant, and in deciding whether to require the litigant to post a security bond. Cal. Civ. Proc. Code § 391.1. However, the statute also grants a judge the power to impose, on his or her own motion, a prefiling order prohibiting a vexatious litigant from filing new litigation without the court's permission. *Id.* § 391.7(a). Such an action may not be purely that of a neutral adjudicator." Ultimately, the circuit did not address the question of whether two trial judges potentially acting in a judicial capacity could be sued to challenge California's vexatious litigant law. While it discussed supportive rationale, the court never decided that issue as it affirmed dismissal of those two judges since "complete relief" was available when suing the "Chief Judge" in his "administrative capacity". The Chief Judge had no "judicial immunity" precisely because he was sued in his administrative capacity, not in his judicial capacity. *Wolfe,* 392 F.3d at 1065-66.

Turning now to *Munoz*, the Ninth Circuit cited *Wolfe* but not for reasons that Judge Gates claims, and the circuit did not provide the immunity defense the Presiding Judge seeks. That court held only "[t]o the extent *Wolfe* can be read to hold that the *Ex parte Young* exception allows <u>*injunctions*</u> against judges acting in their <u>*judicial*</u> capacity, that conclusion is 'clearly irreconcilable' with *Jackson* and thus overruled." *Munoz v. Super. Ct. of Los Angeles Cty.,* 91 F.4th 977, 981 (9th Cir. 2024) (emphasis added). The *Munoz* circuit court then made clear "[i]n *Wolfe,* we allowed some claims against judicial defendants to go forward when sued in their administrative, as opposed to judicial, capacity. 392 F.3d at 366. Because this issue is not before us, we do not address whether this narrow holding is consistent with *Jackson*." *Id* at 981, n. 1. *Munoz* expressly did not

go beyond recognizing that the intervening *Jackson* precedent had overturned *Wolfe* on the specific holding that "the *Ex parte Young* exception allows injunctions against judges acting in their judicial capacity." The legal contention that *Munoz* "overruled *Wolfe*" when it comes to the ruling that a Presiding Judge can be sued in their administrative capacity for declaratory relief is not warranted by existing law. Binding precedent still holds that Judge Gates has no judicial immunity in this scenario. If the Court denies jurisdictional discovery, it should only do so because it determines that Plaintiff has proven jurisdictional standing and has defeated the judicial immunity defense.

B. The Court Should Grant Jurisdictional Discovery For a Positive Injunction

Defendants' four collective dismissal motions now before the Court (Doc. 38; Doc. 51; Doc. 52; Doc. 67) do not only raise questions of whether the complaint factually suffices to invoke jurisdictional standing and/or to plausibly plead a claim for relief against the particular movant defendant, but also inherently raise questions of whether an amended complaint containing additional facts could lead to jurisdictional standing and to other plausible claims. *Cato*, 70 F.3d at 1106. As to Judge Gates' motion (Doc. 67), the answer to all these questions is "yes".

Against the Presiding Judge, in an official administrative capacity, the operative complaint requests two forms of prospective relief: (1) declaratory relief to find A.R.S. § 12-3201 violates the Petition Clause due to overbreadth and vagueness, and (2) injunctive relief in the form of a "negative injunction" as authorized per *Ex parte Young* to prevent administrative enforcement of that statute in the form of entry on the state's vexatious litigant list. *See Virginia Office for Protection and Advocacy v. Stewart,* 563 U.S. 247, 262, 131 S.Ct. 1632, 179 L.Ed.2d 675 (2011) (Kennedy, J., concurring). Disregarding the claim for declaratory relief in her dismissal motion, Judge Gates posited that Plaintiff

cannot seek "injunctive relief" because Presiding Judge Welty was "acting in his judicial capacity when he entered the [administrative] order declaring Plaintiff a vexatious litigant) in reference to Administrative Order 2023-159, of which she asked the Court to "take judicial notice". (Doc. 67, p. 9, n. 1).  While the existence of that administrative order may deprive Plaintiff of the ability to seek a negative injunction preventing administrative enforcement action, he can now pursue a "positive injunction" (i.e., a "mandatory injunction") requiring his name be removed from the state's vexatious litigant list and the Administrative Order 2023-159 be rescinded. *See Garcia v. Google, Inc.*, 786 F.3d 733 (9th Cir. 2015) (en banc).  Plaintiff would simply need to amend the complaint to add facts to bring the "positive injunction" claim given that new facts were discovered after Plaintiff filed the complaint; specifically, that Presiding Judge Welty issued Administrative Order 2023-159 which causes an ongoing fundamental rights deprivation.  Ariz. Const. art. 6, § 11 and Ariz. R. Sup. Ct. 92(a) provide Presiding Judge Gates plenary authority to rescind that administrative order and to preliminarily and permanently remove Plaintiff's name from the vexatious litigant list so causation and redressability are met.  The Court should grant jurisdictional discovery to ascertain additional facts to demonstrate there are no immunity barriers to granting these "positive" forms of prospective injunctive relief.

C. The Court Should Grant Jurisdictional Discovery To Evaluate a Damages Claim

Pursuant to Ariz. R. Sup. Ct. 123(e), Plaintiff separately requested public access to administrative records in the Presiding Judge's custody on this matter of great public concern. *See* Exhibit A.  Judge Gates' counsel, Kara Karlson, responded six weeks later. Counsel acknowledged that responsive administrative records exist but, per Ariz. R. Sup. Ct. 123(e)(9), would be withheld as "judicial work product" under a qualified deliberative

9

process privilege. *See NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 150 (1975). Consistent with Arizona public records law, Plaintiff requested a "privilege log" for each withheld administrative record but Ms. Karlson has not responded to that request in three business days. *See Fann v. Kemp in & for Cty. of Maricopa,* 515 P.3d 1275, 1285-86 (Ariz. 2022). Regardless, Judge Gates' minimal public records disclosure and invocation of judicial work product make clear that Plaintiff is not operating on a "hunch" that administrative records containing jurisdictional facts exist. (Doc. 86, pp. 2-3). Such records do exist and should be subject to jurisdictional discovery. As it stands, Judge Gates is very much aware that Administrative Order 2023-159 violates Plaintiff's fundamental rights under the Petition Clause, causes Plaintiff an actual irreparable injury, and that she has plenary authority to rescind that administrative order at any time. The maintenance of that administrative order under these circumstances constitutes an intentional act which has "exceeded the bounds of reasonable governmental action and violated [Plaintiff's] First Amendment rights." *White v. Lee,* 227 F.3d 1214, 1231 (9th Cir. 2000). Accordingly, this conduct gives rise to a claim for damages against Judge Gates in her personal capacity under 42 U.S.C. § 1983 provided she lacks judicial immunity. The Court should grant Plaintiff's motion for jurisdictional discovery to resolve any immunity defense, and it should permit Plaintiff to amend his complaint and add any suitable claim for damages. Such a claim would resolve any jurisdictional standing issues regarding the Presiding Judge. *See Laub v. U.S. Dep't of Interior,* 342 F.3d 1080, 1093 (9th Cir. 2003) ("Jurisdictional discovery 'should ordinarily be granted where pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary'").

DATED this 30th day of October 2025.

By: //s//
Phillip Potter
Plaintiff
Pro Se

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

# Exhibit A

VIA E-MAIL ONLY

September 9, 2025

Kara Karlson
Senior Litigation Counsel
State Government Division - Elections
Office of the Arizona Attorney General
15 South 15th Avenue
Phoenix, AZ 85007

Re: Public Records Request

Ms. Karlson,

I am contacting you to request your client(s), the Presiding Judge(s) of the Maricopa County Superior Court (the Hon. Joseph Welty and the Hon. Pamela Gates), make records available for inspection pursuant to Ariz. R. Sup. Ct. 123 and A.R.S. § 39-121, *et seq.*.  Specifically, I ask for copies of all records maintained in any storage medium (e.g., email, text message, voicemail, physical papers, digital files, etc.) which:

1. The Presiding Judge created, or relied on, to "designate" any authority to the Hon. John Blanchard to "designate a pro se litigant a vexatious litigant".  *See* A.R.S. § 12-3201(A).
2. Contain, or reference, an "application" from the Hon. John Blanchard to the Presiding Judge to certify Phillip Potter as a vexatious litigant through case CV2022-008626.
3. Contain communications the Hon. Joseph Welty made with any other person regarding the previously referenced "application".
4. Reference, or contain communications the Hon. Joseph Welty and/or the Hon. Pamela Welty made with any other person regarding, Administrative Order 2023-159.

This request is not made for any commercial use.  Please let me know if there will be any production costs prior to actual production.

The requested records are in your clients' actual and constructive possession as the Presiding Judge[s] of the Maricopa County Superior Court, and should be readily available with minimal efforts through a search of government e-mail servers, personal devices, and digital files.

I ask that your client furnish an index of records or categories of records that are being withheld, if any, and the reasons those records or categories of records are being withheld, if any.

If possible, please provide digital copies of the requested records to phillip.t.potter@gmail.com.  Your client is welcome to provide a rolling response to expedite production and preserve resources.  If you have any questions, or if I can clarify any matter, you are welcome to contact

me via the forementioned email address or via phone at 480-459-0310.  I thought it best to route this request through you given current litigation.  Thank you for your help with this.

Regards,
Phillip Potter



Phil Potter <phillip.t.potter@gmail.com>

## PRR Response
2 messages

**Karlson, Kara** <Kara.Karlson@azag.gov>  Tue, Oct 21, 2025 at 3:05 PM
To: Phil Potter <phillip.t.potter@gmail.com>

Mr. Potter:

Judge Gates' public records response is as follows:

1. The Presiding Judge created, or relied on, to "designate" any authority to the Hon. John

Blanchard to "designate a pro se litigant a vexatious litigant". See A.R.S. § 12-3201(A).

Pursuant to Administrative Order 2014-124 (see attached, it is the Presiding Judge that has the authority to designate a litigant as "vexatious" across the board in the Superior Court. However, a judge in an individual case can issue a minute entry declaring the litigant vexatious in their specific case, and requiring the litigant to seek permission from the judge before filing any further pleadings in the case. The judge then forwards the minute entry to the Presiding Judge for consideration to designate the litigant vexatious across the board.) (Also, see attached minute entry from Judge Blanchard.)

2. Contain, or reference, an "application" from the Hon. John Blanchard to the Presiding

Judge to certify Phillip Potter as a vexatious litigant through case CV2022-008626.

See attached minute entry.

3. Contain communications the Hon. Joseph Welty made with any other person regarding

the previously referenced "application".

The only communications are attorney and judicial work product emails between me and Judge Welty or his staff when I drafted the A.O. declaring Phillip Potter as a vexatious litigant. (Protected by Supreme Court Rule 123(d)(4) and (e)(9).

4. Reference, or contain communications the Hon. Joseph Welty and/or the Hon. Pamela

Welty made with any other person regarding, Administrative Order 2023-159.

Same answer as to number 3 above.

--

## Kara Karlson

Senior Litigation Counsel

State Government Division-Elections



Arizona Attorney General Kris Mayes

15 S 15th Ave

Phoenix, AZ 85007

Desk: 602-542-8118

Kara.Karlson@azag.gov

http://www.azag.gov

CONFIDENTIALITY NOTICE:  This e-mail message, including any attachments, is for the sole use of the intended recipient(s) and may contain confidential and privileged information.  Any unauthorized review, use, disclosure or distribution is prohibited.  If you are not the intended recipient, please contact the sender by reply e-mail and destroy all copies of the original message.

**2 attachments**

 **Admin Order 2014-134 Vexatious Litigants.pdf**
14K

 **Potter vexatious minute entry.pdf**
210K

---

**Phil Potter** <phillip.t.potter@gmail.com>                                                            Mon, Oct 27, 2025 at 8:36 AM
To: "Karlson, Kara" <Kara.Karlson@azag.gov>

Ms. Karlson,
First, for purposes of clarity, are you saying that records (emails, written correspondence, etc.) documenting the "application" consist solely of the attached Minute Entry?  It would seem that if a trial court judge "forwards" a Minute Entry to a Presiding Judge, then there would be an email string or some other record of that correspondence.

Second, Judge Gates says she "drafted the A.O."  But she cites "judicial work product" to withhold documents without explanation, detail or affidavit.  My understanding is that judicial work product refers to a deliberative privilege, which is a qualified privilege that can be overcome under certain circumstances, many of which, if not all, are present here.  As with every public records request, any denial must identify every withheld document and provide specificity justifying each record withheld.  In the federal context, I'm told this takes the form of a "Vaughn Index" with affidavits and document-by-document particularized explanations as to why an exemption or privilege applies.  Here in Arizona, the state supreme court in *Fann v, Kemp* (2022) described that index as a "privilege log" which must be provided "when a party claims a privilege or work-product protection and withholds information or documents" as part of a public records request.  That court went on to write that state officials "must identify in a privilege log the information or document(s)

being withheld and describe the nature of the item 'in a manner that - without revealing information that is itself privileged or protected - will enable other parties to assess the claim.'"  I asked the Presiding Judge(s) to prepare an index of all withheld records in my September 9, 2025 request.  Please let me know if the Presiding Judge(s) will be providing that privilege log for all "emails between [Judge Gates] and Judge Welty or his staff" and for all other responsive documents.

Finally, can you confirm that Judge Welty searched for responsive documents, and concurs with Judge Gates' October 21, 2025 response?

Thanks for your help with this.
Regards,
Phillip Potter

[Quoted text hidden]

 Phil Potter <phillip.t.potter@gmail.com>

## 2:25-cv-00663-PHX-DWL Potter v. Meza, et al.
5 messages

---

**Phil Potter** <phillip.t.potter@gmail.com>  Tue, Sep 9, 2025 at 4:37 PM
To: "Karlson, Kara" <Kara.Karlson@azag.gov>

Ms. Karlson,
Attached you'll find a public records request for your client(s). I thought it best to route this through you.
Regards,
Phillip Potter

 **September 9 2025 Letter to Kara Karlson.pdf**
79K

---

**Karlson, Kara** <Kara.Karlson@azag.gov>  Tue, Sep 9, 2025 at 4:42 PM
To: Phil Potter <phillip.t.potter@gmail.com>

Thank you. This email confirms receipt.


--

# Kara Karlson

Senior Litigation Counsel

State Government Division-Elections



Arizona Attorney General Kris Mayes

15 S 15th Ave

Phoenix, AZ 85007

Desk: 602-542-8118

Kara.Karlson@azag.gov

http://www.azag.gov

CONFIDENTIALITY NOTICE: This e-mail message, including any attachments, is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply e-mail and destroy all copies of the original message.

[Quoted text hidden]

**Phil Potter** <phillip.t.potter@gmail.com>  Tue, Sep 23, 2025 at 7:54 AM
To: "Karlson, Kara" <Kara.Karlson@azag.gov>

Ms. Karlson,
The Maricopa County court's website says public records requests will be acted on within ten days. Could you let me know if the documents I asked to inspect will be provided, or if the request is denied. Thank you for your help with this.
Regards,
Phillip Potter

[Quoted text hidden]

---

**Phil Potter** <phillip.t.potter@gmail.com>  Thu, Sep 25, 2025 at 8:11 AM
To: "Karlson, Kara" <Kara.Karlson@azag.gov>

Ms. Karlson,
Under Ariz. R. Sup. Ct. 123, your client maintains a non-discretionary duty to respond to public record requests for "case records" and "administrative records". Ariz. R. Sup. Ct. 123(d), (e), and (f). She must communicate "in writing" whether she intends to provide the responsive documents or deny document production. Ariz. R. Sup. Ct. 123(f)(4). And that response must be "timely". Ariz. R. Sup. Ct. 123(f)(2). The Maricopa County court's website indicates a public records request will be acted on, or at least acknowledged, by the records custodian within ten days. I have received no responsive records and no explanation from your client since I made my request sixteen days ago. Please let me know by close of business if your client will be providing responsive records or if she has denied the request. Thank you for your help with this.
Regards,
Phillip Potter

[Quoted text hidden]

---

**Phil Potter** <phillip.t.potter@gmail.com>  Mon, Oct 27, 2025 at 11:06 AM
To: "Karlson, Kara" <Kara.Karlson@azag.gov>

Ms. Karlson,
Your client responded to my September 9, 2025 public records request on October 21, 2025 (*see* attached). Therein, the Hon. Pamela Gates, pointed to "Administrative Order 2014-134". That administrative order describes a "process". As a supplemental records request subject to the same considerations as the September 9th request, could you please have your client provide records documenting (1) the development and implementation of Administrative Order 2014-134; (2) communications any Presiding Judge made with trial court judges and/or staff regarding Administrative Order 2014-134; and (3) that Administrative Order 2014-134 was submitted to the Arizona Supreme Court for review and approval?
Regards,
Phillip Potter

[Quoted text hidden]

---

📄 **Judge Welty PRR Response.pdf**
137K