Phillip Potter
2301 N. 66th Street
Scottsdale, Arizona 85257
Phone: 480.459.0310
E-Mail: phillip.t.potter@gmail.com
Plaintiff
Pro Se

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Phillip Potter,<br><br>                    Plaintiff,<br><br>v.<br><br>Robert Meza, et al.,<br><br>                 Defendants. | No. 2:25-cv-00663-PHX-DWL<br><br><br>**MOTION TO TAKE JUDICIAL NOTICE RE: PRESIDING JUDGE GATES' MOTION TO DISMISS** |

This case involves a First Amendment facial challenge to A.R.S. § 12-3201 for overbreadth wherein the Hon. Joseph Welty, in his official *administrative* capacity as Presiding Judge of the Maricopa County Superior Court, is identified as "a proper defendant" per *Ex Parte Young*, 209 U.S. 123 (1908). (Doc. 14).  The Hon. Pamela Gates, who replaced Judge Welty as Presiding Judge (Doc. 77), hinges combined Fed. R. Civ. P. 12(b)(1) and (6) motion defenses on sovereign immunity and judicial immunity. (Doc. 67; Doc. 81).  But the Ninth Circuit held that "a state official in his or her official capacity, when sued for injunctive relief, [is] a person under § 1983, because 'official-

capacity actions for prospective relief are not treated as actions against the State.' ... [W]hether judges are proper defendants in a § 1983 action depends on whether they are acting as adjudicators or as 'administrators, enforcers, or advocates.' ... Section 1983 only contemplates judicial immunity from suit for injunctive relief for acts taken in a judicial capacity. ... Since [Plaintiff] sued [Judge Welty] in [his] administrative capacity as [Presiding Judge of the Maricopa County Superior Court], we conclude that dismissal is not warranted on the basis of judicial immunity [or sovereign immunity]". *Wolfe v. Strankman,* 392 F.3d 358, 365-66 (9th Cir. 2004).  Presiding Judge Welty asked the Court to treat the acts he expressly took in an administrative capacity as acts taken in a "judicial capacity" because he "was acting in his judicial capacity when he entered the [administrative] order declaring Plaintiff a vexatious litigant" (Doc. 67, p. 9).  On reply, Presiding Judge Gates asserted that issuing the "Administrative Order [wa]s 'a general function normally performed by a judge'" in Arizona and "is therefore entitled to judicial immunity". (Doc. 81, p. 5).  Facts and the law say otherwise on these defenses.  "[T]he 'touchstone' for the [judicial immunity] doctrine's applicability has been 'performance of the function of resolving disputes between parties, or of authoritatively adjudicating private rights.'" *Burns v. Reed,* 500 U.S. 478, 500 (1991) (Scalia, J., concurring in judgment in part and dissenting in part).  Entitlement to judicial immunity thus requires, at a minimum, that a judge demonstrate she was assigned to, and therefore was "presiding over", a case in which the plaintiff was party.  *Duvall v. County of Kitsap,* 260 F.3d 1124, 1134 (9th Cir. 2001).  This is because "absolute judicial immunity does not apply to non-judicial acts, i.e. the administrative, legislative, and executive functions that judges may on occasion be assigned to perform." *Id*.  And the indisputable facts here show Presiding Judge Welty never presided over any case involving Plaintiff and never judicially decided

any dispute involving Plaintiff because, by law, he had no jurisdiction while operating in an administrative capacity. Judicially noticeable facts described herein, together with well-pled facts described in the operative complaint, defeat the Presiding Judge's sovereign immunity and judicial immunity defenses. Per Fed. R. Evid. ("Rule") 201, Plaintiff asks the Court to take judicial notice as follows.

I. Legal Standard

"The court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *Lee v. City of L.A.,* 250 F.3d 668, 689 (9th Cir. 2001); Rule 201(b). When a party adequately requests notice and the Court receives sufficient information, judicial notice is mandatory. Rule 201(c)(2). "The court may take judicial notice at any stage of the proceeding." Rule 201(d).

II. The Court Should Take Judicial Notice

To evaluate jurisdictional standing and the sufficiency of a complaint courts look to "the complaint itself and its attached exhibits, documents incorporated by reference, and matters properly subject to judicial notice". *In re NVIDIA Corp. Sec. Litig.,* 768 F.3d 1046, 1051 (9th Cir. 2014). Whether through the complaint, incorporation-by-reference or judicial notice at the dismissal stage, "the official seeking absolute immunity bears the burden of showing that such immunity is justified for the function in question." *Burns*, 500 U.S. at 486. In an apparent attempt to carry this burden, the Presiding Judge asked the Court to "take judicial notice" of "Administrative Order 2023-159" in a combined Fed. R. Civ. 12(b)(1) and (6) dismissal motion (Doc. 67, p. 9, n. 1) and referenced that "Administrative Order" document on reply (Doc. 81, pp. 5-6), *yet failed to identify any*

*specific undisputed fact(s) that the Court could glean from that document*.  Seeming to recognize this procedural deficiency, Presiding Judge Gates modified her defense when faced with the prospect of limited jurisdictional discovery, asserting she had not mounted a "factual attack" on jurisdiction because the "Motion to Dismiss does not cite to or rely on any extraneous documents or records." (Doc. 86, pp. 3-4).  *See Safe Air for Everyone v. Meyer,* 373 F.3d 1035, 1039 (9th Cir. 2004) ("A Rule 12(b)(1) jurisdictional attack may be facial or factual.  In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction.  By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction.").  Accordingly, the Court would be wise to deny the defendant's patently deficient request to take judicial notice of any fact contained in Administrative Order 2023-159 since (1) Presiding Judge Gates admittedly "does not rely on any extraneous documents"; and (2) Plaintiff never referenced that administrative order in his complaint[1], that document does not form the basis for any claim, and no part of the complaint relies on it.  *See Khoja v. Orexigen Therapeutics, Inc.,* 899 F.3d 988, 998 (9th Cir.2018) (per the "incorporation-by-reference doctrine", documents may be incorporated "into the complaint 'if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim.'");  *Lee*, 250 F.3d at 688 ("documents ... not physically attached to the complaint, ... may be considered if ... 'the plaintiff's complaint necessarily relies' on them").  Regardless, out of an abundance of caution, Plaintiff presents undisputed facts for judicial notice to demonstrate the defendant has no claim to judicial immunity for acts taken in an

---

[1] The existence of Administrative Order 2023-159 was only revealed through the course of this litigation, and affects no claim. (Doc. 88, pp. 4, 6, 9-10).

administrative capacity.  Plaintiff files the instant motion based on the premise that, although Presiding Judge Gates should not be considered to have done so, a movant can convert a "motion to dismiss into a factual motion by presenting affidavits or other evidence properly brought before the court, [meaning] the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction." *Meyer*, 373 F.3d at 1039.

A. The Court Should Take Judicial Notice of Undisputed Facts Contained in A.R.S. § 12-109(B)(1), Ariz. R. Sup. Ct. 92, an Arizona Supreme Court December 13, 2024 News Release, and the CV2022-008626 Case Record

When deciding motions to dismiss, federal courts may take "judicial notice of ... statutes, ... not included in the plaintiff's complaint." *Navajo Nation v. Dep't of the Interior,* 876 F.3d 1144, 1153 n.3 (9th Cir. 2017).  Courts may also take judicial notice of materials available on government websites. *Gustavson v. Wrigley Sales Co.*, 961 F. Supp. 2d 1100, 1113 n.1 (N.D. Cal. 2013).  Finally, district courts "may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue". *Rancheria Citizens Council v. Borneo,* 971 F.2d 244, 248 (9th Cir. 1992).

1. The Undisputed Facts Are Relevant

Presiding Judge Welty initially asserted, and Presiding Judge Gates continues to maintain, that the Presiding Judge "is a party to this action solely because of [sic] he entered an [administrative] order determining the rights of parties as presiding judge in Maricopa County". (Doc. 67, p. 8).  But undisputed facts show Presiding Judge Welty never presided over case CV2022-008626, while the attached statute and procedural rule demonstrates, and the attached press release confirms, that Presiding Judges in Arizona

have no authority to issue administrative orders which affect "the rights of parties".  To

be sure, the state supreme court has established that an administrative "matter [i]s *not* a

civil [judicial] proceeding [for a host of substantive and procedural reasons]. ... In civil

and criminal matters, [for example,] we have long adhered to the notion that a party may

disqualify one judge and have the case transferred to another judge.  There is no

procedure for change of judge in an administrative proceeding before the [P]residing

[J]udge.  As we view the situation, such a procedure is not necessary because the

[P]residing [J]udge has *no authority* to compel persons outside the judiciary to" do

anything as a function of the Arizona constitution, including its separation of powers and

due process provisions.  *Maricopa County v. Dann,* 157 Ariz. 396, 400-01, 758 P.2d

1298, 1301 (1988) (emphasis added).  *Dann* is critical precedent given that federal

judicial immunity decisions involving a state judge are in part a function of that state's

constitution, statutes, and procedural rules.  *See Forrester v. White,* 484 U.S. 219, 230

(1988) ("Under Virginia law, only that State's judges could promulgate and enforce a Bar

Code, but we nonetheless concluded that neither function was judicial in nature.").

Because, as the Arizona supreme court explained in *Dann*, Presiding Judges have no

subject matter jurisdiction to hear legal disputes and no personal jurisdiction over private

individuals, the Presiding Judges enjoy no judicial immunity, but can be brought to suit

per 42 U.S.C. § 1983 for reasons that one Presiding Judge "acted in the clear absence of

all jurisdiction" when issuing the administrative order while another continues to do so

when maintaining that order.  *Stump v. Sparkman*, 435 U.S. 349, 356-57 (1978).

> 2. Exhibits

>> a. Exhibit 1: A.R.S. § 12-109

Plaintiff asks the Court to take judicial notice of A.R.S. § 12-109(B)(1) plain

language which holds that "administrative orders shall not do any of the following: 1. Abridge, enlarge or modify substantive rights of a litigant."  The language can be found in A.R.S. § 12-109 (*see* Exhibit 1), which the Court can also review on the Arizona Legislature's website accessible online at https://www.azleg.gov/ars/12/00109.htm.

b. Exhibit 2: Rules of the Supreme Court of Arizona Rule 92

Plaintiff asks the Court to take judicial notice of the entirety of plain language contained in the Rules of the Supreme Court of Arizona Rule 92 which articulates a Presiding Judge's authority which goes no farther than, for instance, "general supervision over all court personnel".  The Court is asked to judicially notice the undisputed fact that nowhere in this rule does it suggest, or can it be read to indicate, that Presiding Judges may decide the rights of parties through administrative proceedings.  The rules language can be found in R. Sup. Ct. Ariz. 92 (*see* Exhibit 2), which the Court can also review on the Westlaw website accessible online at https://govt.westlaw.com/azrules/Document/NEE2A4F70717A11DAA16E8D4AC7636430?viewType=FullText&originationContext=documenttoc&transitionType=CategoryPageItem&contextData=(sc.Default), which links from the Arizona supreme court's rules website accessible online at https://www.azcourts.gov/rules.

c. Exhibit 3: December 13, 2024 Arizona Supreme Court News Release

Plaintiff asks the Court to take judicial notice of the undisputed factual statements contained in the December 13, 2024 News Release issued by the Arizona supreme court which states, in pertinent part, that "Presiding Judges in Arizona serve as the chief *executive* officer of the county courts, having *administrative* authority over the courts, judicial officers, and court employees in their county." (Emphasis added).  The Court should judicially notice that this "administrative authority" does not include "authority

7

over" private parties as per *Dann*. This language can be found in the News Release (*see* Exhibit 3) which the Court can also review on the Arizona supreme court's website accessible online at https://www.azcourts.gov/Portals/0/201/News%20Release%20-%20Judge%20Pamela%20Gates%20Appointed%20Presiding%20Judge%20for%20Maricopa%20County.pdf.

### d. Exhibit 4: Official Case Record for CV2022-008626

Plaintiff asks the Court to take judicial notice of the contents of the CV2022-008626 case record, and specifically the undisputed facts that Judge Welty was never the assigned judge in that case and never issued an order entered into that case's docket. A copy of the civil case record is attached (*see* Exhibit 4) which the Court can review on the Maricopa County Superior Court's website accessible online at https://www.superiorcourt.maricopa.gov/docket/CivilCourtCases/caseSearch.asp.

### 3. Summary

Issuing and/or maintaining an administrative order, especially an administrative order affecting substantive rights, is not a "normal judicial function" because as the attached documents and forementioned undisputed facts contained therein demonstrate, (1) only Presiding Judges acting in an administrative capacity are permitted to issue administrative orders under the state's constitution, statutes, and procedural rules; (2) the state legislature through A.R.S. § 12-109 expressly prohibits administrative orders which affect a litigant's substantive rights; and (3) the Arizona supreme court has articulated through press releases and binding caselaw that Presiding Judges acting in their administrative capacity only have "authority over the courts, judicial officers, and court employees in their county", not jurisdictional authority to hear and decide disputes between private parties, to conduct judicial proceedings, or to issue orders granting any

form of relief or compelling private party action.

B. The Court Should Take Judicial Notice Of Plaintiff's Public Records Request and Presiding Judge Gates' Response

"Under Fed. R. Evid. 201, a court may take judicial notice of 'matters of public record.'" *Lee*, 250 F.3d at 689.  Written correspondence between private parties and Arizona public officials, including court officials, are matters of public record.  *See* Ariz. R. Sup. Ct. 123(b)(18) ("'Record' means all existing documents, papers, letters, maps, books, tapes, photographs, films, sound recordings or other materials, regardless of physical form or characteristics, *made or received* pursuant to law or in connection with the transaction of any official business by the court, and preserved or appropriate for preservation by the court as evidence of the organization, functions, policies, decision, procedures, operations or other governmental activities.").

1. The Undisputed Facts Are Relevant

Apparently seeking to carry the burden to demonstrate immunity, Presiding Judge Welty factually posited that his "only action here was to review and approve the application to certify Plaintiff as a vexatious litigant." (Doc. 67, p. 3).  Because § 12-3201 references no such "application" (Doc. 14 at 121), the Presiding Judge did not provide evidence of that application, and no application is docketed in the CV2022-008626 case record (*see* Exhibit 4), Plaintiff submitted a public records request to inspect that "application" document, which only could have been submitted to the Presiding Judge by the Hon. John Blanchard – the assigned trial judge.

2. Exhibits

a. Exhibit 5: Plaintiff's Public Records Request

Plaintiff asks the Court to judicially notice Plaintiff's September 9, 2025 public

records request sent via email to Presiding Judge Gates through Kara Karlson, the attorney of record for the Presiding Judge(s).  This request includes the undisputed fact that Plaintiff asked Presiding Juge Gates to provide "copies of all records maintained in any storage medium (e.g., email, text message, voicemail, physical papers, digital files, etc.) which: ... 2. Contain, or reference, an 'application' from the Hon. John Blanchard to the Presiding Judge to certify Phillip Potter as a vexatious litigant through case CV2022-008626. [and] 3. Contain communications the Hon. Joseph Welty made with any other person regarding the previously referenced 'application'."  A copy of this public record request is attached (*see* Exhibit 5).

> b. Exhibit 6: Presiding Judge Gates' Response

Plaintiff asks the Court to judicially notice the contents of Presiding Judge Gates' October 12, 2025 response to the forementioned public records request sent via email to Plaintiff.  The contents include undisputed facts that (1) the response to public records request "2" was "see attached Minute Entry" where the "attached Minute Entry" contains no reference to an "application"; (2) the response to public records request "3" was "The only communications are attorney and judicial work product emails between me [Judge Gates] and Judge Welty or his staff when I [Judge Gates] drafted the A.O. declaring Phillip Potter as a vexatious litigant. (Protected by Supreme Court Rule 123(d)(4) and (e)(9)"; and (3) there exists no document evidencing communication of an "application" originating from Judge Blanchard and being sent to Presiding Judge Welty.  A copy of those responses is attached (*see* Exhibit 6).

> 3. Summary

Presiding Judge Welty posited in the dismissal motion that he "review[ed] and approve[d] [an] application to certify Plaintiff as a vexatious litigant."  But Presiding

1

2    Judge Gates could not produce documentation of the "application" while the plain

3    language of A.R.S. § 12-3201 contains no reference to such an "application".  Judicial

4    notice indicates that Ms. Karlson's factual statements made in a written motion, and in

5    pursuit of judicial immunity, have no evidentiary support.

6                                         CONCLUSION

7          Government officials are "absolutely immune ... for conduct within [their]

8    exclusive sphere of constitutional authority".  *Trump v. United States,* 144 S. Ct. 2312,

9    2319 (2024).  Accordingly, the nation's chief executive enjoys absolute immunity for

10   executive acts.  *Id*.  State and federal legislators also enjoy absolute immunity for acts

11   taken in their "legislative sphere" but "not ... beyond".  *Gravel* v. *United States,* 408 U. S.

12   606, 624-25 (1972); *Bogan v. Scott-Harris*, 523 U.S. 44 (1998) ("It is well established

13   that federal, state, and regional legislators are entitled to absolute immunity from civil

14   liability for their legislative activities").  Likewise, state and federal judges entitled to

15   absolutely immunity from civil suits for acts taken "in a judicial capacity" but not for acts

16   taken pursuant to "the administrative, ... functions that judges may on occasion be

17   assigned by law to perform."  *Forrester*, 484 U.S. at 227.  When, as here, there is a

18   dispute about whether a government official has acted under their "exclusive sphere of

19   constitutional authority" as per *Trump*, courts must first factually "examine the nature of

20   the functions with which a particular official" engaged so as to determine how to properly

21   classify those functions before deciding absolute immunity since "the [Supreme] Court

22   has been careful not to extend the scope of the [absolute judicial immunity] protection

23   further than its purposes require."  *Forrester*, 484, U.S. at 224.  Undisputed facts Plaintiff

24   presents in the instant motion confirm Presiding Judge Gates cannot meet her burden to

25   demonstrate immunity on the complaint, via the incorporation of any document by

26

reference, or through the Presiding Judges' deficient request for judicial notice offered in their dismissal motion.

DATED this 9th day of November 2025.

By: //s//
Phillip Potter
Plaintiff
Pro Se