Phillip Potter
2301 N. 66th Street
Scottsdale, Arizona 85257
Phone: 480.459.0310
E-Mail: phillip.t.potter@gmail.com
Plaintiff
Pro Se

### IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF ARIZONA

| Phillip Potter, | No. 2:25-cv-00663-PHX-DWL |
|---|---|
| Plaintiff, | |
| v. | **NOTICE RE:** **ATTORNEY GENERAL MAYES'** **AND PRESIDING JUDGE GATES'** **EXPRESS REFUSAL TO DISAVOW** **ENFORCEMENT OF A.R.S. § 12-3201** |
| Robert Meza, et al., | |
| Defendants. | |

Plaintiff herein provides Notice to the Court that state officer defendants Attorney General Kris Mayes, in her official capacity, and Presiding Judge Pamela Gates, in her official administrative capacity, have expressly refused to disavow enforcement of A.R.S. § 12-3201 going to the Count One First Amendment facial challenge for overbreadth and vagueness. (Doc. 14 at 113-207). On November 24, 2025, Plaintiff wrote the counsels for Attorney General Mayes and Presiding Judge Gates asking "if your clients would agree not to enforce A.R.S. § 12-3201 until the case is complete. For Attorney General Mayes, that would take the form of not civilly or criminally enforcing any perceived

violation of § 12-3201(B), including any perceived violation of Administrative Order 2023-159.[1]  For Presiding Judge Gates, that would involve exercising her plenary administrative authority to rescind Administrative Order 2023-159 and remove my name from the state's online vexatious litigant list."  On November 28, 2025, attorney Joshua Katz responded: "I write to inform you that neither defendant agrees".  *See* Exhibit A.  This express refusal to disavow administrative, civil, and criminal enforcement of § 12-3201 confirms (1) Plaintiff has demonstrated jurisdictional standing to bring a First Amendment challenge against the state officers; and (2) the state officers are sufficiently connected to the statute's enforcement scheme that sovereign immunity does not apply.

I. Plaintiff Has Jurisdictional Standing To Sue Attorney General Mayes

Plaintiff filed suit seeking declaratory relief and prospective injunctive relief to prevent the Attorney General from civilly or criminally enforcing any perceived violation of A.R.S. § 12-3201(B), including as an A.R.S. § 13-3601 predicate. (Doc. 14, pp. 70-71).  "To establish Article III standing, an injury must be 'concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling.'"  *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013).  Attorney General Mayes' Fed. R. Civ. P. 12(b)(1) jurisdictional defenses attacked imminent injury, traceability, and redressability (Doc. 38, pp. 6-11).

---

[1] Plaintiff's complaint does not cite, nor do any of his claims rely on, Administrative Order 2023-159.  Plaintiff did not even know administrative order existed when filing suit (Doc. 54, Affid.; Doc. 79, p. 1, 5-11) although Presiding Judge Gates referenced it in her Fed. R. Civ. P. 12(b)(1) and (6) dismissal motion. (Doc. 67).  When challenged, Presiding Judge Gates declared her "Motion to Dismiss does not cite to or rely on any extraneous documents or records" (Doc. 86, pp. 3-4), undermining what otherwise appeared to be a factual defense to standing. (Doc. 88, pp. 1-3).  The Court should therefore consider the Presiding Judge's judicial immunity defense abandoned or withdrawn insofar as it is based "on any extraneous documents or records". (Doc. 90, pp. 3-5; Doc. 92, pp. 5-10).

2

Regarding causation (i.e., traceability and redressability), the Attorney General posited that "[w]hile [civil and/or criminal] prosecution is unlikely, any such prosecution would be more likely to come from a county attorney than from AG Mayes. ... [Plaintiff's] requested relief here would not 'likely' redress his problem because enjoining AG Mayes would not prevent a county attorney from prosecuting him, nor the courts from enforcing their injunctions." (Doc. 38, p. 9-10). But the Ninth Circuit has made clear that "'[r]edressability is satisfied so long as the requested remedy would amount to a significant increase in the likelihood that the plaintiff would obtain relief that directly redresses the injury suffered.' Partial amelioration of a harm also suffices for redressability. In discussing injury, the Supreme Court highlighted that a plaintiff need only show redress of 'an injury,' not 'every injury.' [Attorney General Mayes] offers a variation on [her] standing argument that redressability fails because county prosecutors would retain authority to bring prosecutions even if the attorney general were enjoined from enforcement of [§ 12-3201, including as a § 13-3601 predicate]. Where a state statute [such as § 13-3601] specifically grants enforcement powers to multiple government authorities, an injunction against the exercise of those powers by any one of those authorities suffices to establish redressability." *Matsumoto v. Labrador*, 122 F.4th 787, 798-99 (9th Cir. 2024). Plaintiff also demonstrates traceability where enjoining the Attorney General's enforcement of § 12-3201 disrupts the "unattenuated statutory chain of causation whereby, once deemed 'vexatious', by 'operation' of A.R.S. § 12-3201 a litigant who files court papers absent leave of the court violates § 12-3201(B) and becomes subject to [] civil and criminal 'enforcement' per §§ 13-2810(A)(2), 13-2921, 13-3601, and 13-3602". *See Lujan v. Defenders of Wildlife,* 504 U.S. 555, 580, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) (Kennedy, A. concurring) (A State Legislature "has the

power to ... articulate chains of causation that will give rise to a case or controversy"). (Doc. 49, pp. 5-7). Causation is shown.

Regarding imminent injury, "[t]o establish a pre-enforcement injury-in-fact, [a plaintiff] must satisfy the requirements listed in *Susan B. Anthony List v. Driehaus,* 573 U.S. 149 (2014)." *Peace Ranch, LLC v. Bonta,* 93 F.4th 482, 487 (9th Cir. 2024). "Under *Driehaus,* a plaintiff demonstrates injury-in-fact by showing '[1] an intention to engage in a course of conduct arguably affected with a constitutional interest, but [2] proscribed by a statute, and [3] there exists a credible threat of prosecution thereunder.'" *Planned Parenthood Great Nw., Haw., Alaska, Ind., Ky. v. Labrador,* 122 F.4th 825, 836 (9th Cir. 2024) (alterations in original) (quoting *Driehaus,* 573 U.S. at 159). The Court found Plaintiff met the first two *Driehaus* prongs. (Doc. 47). Attorney General Mayes took issue with the third prong which "is a 'quite forgiving' requirement that sets up only a 'low threshold'". *Antonyuk v. Chiumento*, 89 F.4th 271, 334 (2d Cir. 2023). That "low threshold" is crossed when the threat from statutorily authorized enforcers is not "imaginary or wholly speculative". *Driehaus,* 573 U.S. at 160; *see also Isaacson v. Mayes*, 84 F.4th 1089, 1101 (9th Cir. 2023) ("The combination of these potential threats – from the county attorneys, [] and private parties – satisfies the" credible threat prong). Attorney General Mayes argued Plaintiff does not face a "credible fear of prosecution" because he has not "demonstrated any instance where a person was prosecuted" for conduct proscribed under § 12-3201(B). (Doc. 38, pp. 6-7). But that burden is not Plaintiff's to carry. Instead, to prevail on a credible threat defense, the Attorney General must overcome a presumption of enforcement by factually demonstrating the challenged statute (1) has been "commonly and notoriously violated"; and (2) has fallen into "desuetude". *S.F. Cnty. Democratic Cent. Comm. v. Eu,* 826 F.2d 814, 822 & n. 15 (9th

Cir.1987) (quoting *Poe v. Ullman,* 367 U.S. 497, 502, 81 S.Ct. 1752, 6 L.Ed.2d 989 (1961)).  When, as here, the state officer cannot factually overcome the presumption of enforcement, the third *Driehaus* prong "rises or falls with the enforcing authority's willingness to disavow enforcement." *Peace Ranch,* 93 F.4th at 490.  Faced with this dilemma, the Attorney General implicitly abandoned "credible threat" as a defense declaring she "is not arguing that Plaintiff lacks pre-enforcement standing because the law is old, unenforced, and 'has fallen into desuetude.'" (Doc. 69, p. 11).  Via this Notice's contents, Attorney General Mayes expressly refuses to disavow enforcement.  And "the state's refusal to disavow enforcement ... is strong evidence that the state intends to enforce the law and that [Plaintiff] face[s] a credible threat." *California Trucking Ass'n v. Bonta,* 996 F.3d 644, 653 (9th Cir. 2021).  Notice confirms Plaintiff has demonstrated standing to bring Count One against the Attorney General.  *See also LSO, Ltd. v. Stroh*, 205 F.3d 1146, 1154-55 (9th Cir. 2000) (When the case "implicates First Amendment rights, the inquiry tilts dramatically toward a finding of standing".).

II. Attorney General Mayes Has No Sovereign Immunity

In her dismissal motion, the Attorney General contended she "lacks a sufficiently direct connection to the vexatious litigant statute's enforcement scheme" because her connection was not "fairly direct" (Doc. 38, pp. 10-11).  She then "maintained that she was entitled to sovereign immunity because she lacked 'some' 'fairly direct' 'connection' to the challenged statute's enforcement scheme." (Doc. 69, p. 3).  But, as Plaintiff argued in his dismissal Response, the "some connection" standard established in *Ex parte Young* "presents "a low bar. ... [A] mere scintilla of enforcement" connection is sufficient. *Matsumoto*, 122 F.4th at 802-04." (Doc. 49, p. 8).  He also pointed out that "Arizona's constitution and pertinent statutes ([Doc 14] at 95, 102-104, 121) give [Attorney General

Mayes] the authority to 'deputize' herself (1) to criminally prosecute Plaintiff for conduct deemed unlawful, including any perceived resistance to the § 12-3201(B) injunction[2] or § 13-2921 violation; and (2) to civilly prosecute him for that same conduct pursuant to §§ 13-3602 and 13-4433(D). ([Doc. 14] at 103, 110.). *See Planned Parenthood of Idaho, Inc. v. Wasden*, 376 F.3d 908, 919-20 (9th Cir. 2004). There can be no genuine dispute that the Arizona 'attorney general has the authority, at the attorney general's sole discretion, to prosecute a person for a criminal violation of this section'. *Matsumoto*, 122 F.4th at 802. This statutorily [and constitutionally] defined enforcement role satisfies the plain meaning of *Ex parte Young*'s 'some connection' standard,". *Id*. And because there is no requirement that she be the 'primary authority to enforce', *Id* at 802-04, her [sovereign] immunity defense failed when she admitted county attorneys can also prosecute Plaintiff." (Doc. 49, pp. 8-9). In sum, the Attorney General's refusal to disavow enforcement shows she can enforce the statute and, therefore, has a sufficient "connection" to the statute's enforcement scheme. There is no sovereign immunity.

III. Plaintiff Has Standing To Sue The Presiding Judge Who Has No Sovereign Immunity

Plaintiff brought to suit the Presiding Judge of the Maricopa County Superior Court in an official *administrative* capacity seeking declaratory relief and prospective injunctive relief to prevent the Presiding Judge from administratively enforcing A.R.S. § 12-3201, including by exercising plenary administrative authority to place Plaintiff on the state's online vexatious litigant list. (Doc. 14 at 70-71). In a combined Fed. R. Civ. P. 12(b)(1) and (6) motion, Presiding Judge Gates relied entirely on absolute "judicial immunity" to challenge jurisdictional standing (Doc. 67, pp. 3-4) and to assert sovereign

---

[2] See A.R.S. § 13-2810(A)(2) ("A person commits interfering with judicial proceedings if such person knowingly: ... [d]isobeys or resists the lawful order, process or other mandate of a court"). (FAC at 103).

immunity. (Doc. 67, pp. 4-5).  But Ninth Circuit precedent holds that "[s]ince [Plaintiff] sued [Judge Gates] in [her] administrative capacity as [Presiding Judge of the Maricopa County Superior Court], we conclude that dismissal [for sovereign immunity] is not warranted on the basis of judicial immunity".  *Wolfe v. Strankman*, 392 F.3d 358, 365-66 (9th Cir. 2004).  Simply put, the Presiding Judge cannot defeat jurisdictional standing or assert sovereign immunity on judicial immunity grounds when sued in an administrative capacity.  *See Duvall v. County of Kitsap*, 260 F.3d 1124, 1134 (9th Cir. 2001) ("[A]bsolute judicial immunity does not apply to nonjudicial acts, i.e. the administrative, … functions that judges may on occasion be assigned to perform."); *Forrester v. White*, 484 U.S. 219, 228, 108 S.Ct. 538, 98 L.Ed.2d 555 (1988) ("Administrative decisions, even though they may be essential to the very functioning of the courts, have not [] been regarded as judicial acts.").  Likewise, suits against judges acting in an <u>*administrative*</u> capacity are permitted per the plain language of 42 U.S.C. § 1983 ("Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... , subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's <u>*judicial capacity*</u>, injunctive relief shall not be granted ...").  Presiding Judge Gates cannot assert judicial immunity or claim she does not administratively enforce § 12-3201 when this Notice shows she acknowledges her administrative enforcement authority but expressly refuses to disavow administrative enforcement against Plaintiff.[3]

---

[3] The Court should also note that, among other things, Presiding Judge Gates very recently

CONCLUSION

This Notice confirms (1) Plaintiff has demonstrated standing against both state officer defendants; (2) neither state officer defendant can claim sovereign immunity; and (3) Presiding Judge Gates has no grounds to challenge jurisdictional standing or to assert sovereign immunity on the basis of absolute judicial immunity. *See Burns*, 500 U.S. at 486 ("[T]he official seeking absolute immunity bears the burden of showing that such immunity is justified for the function in question."). With the Court having Article III jurisdiction involving the state officers, the Court also has supplemental jurisdiction over state claims involving Defendant Alane Ortega (*see* Doc. 52; Doc. 54; Doc. 56). Defendants Robert Meza and Karrin Taylor Robson did not challenge jurisdiction (*see* Doc. 51; Doc. 55). There also is no claim preclusion (Doc. 55, p. 5-11), especially given Administrative Order 2023-159 which serves as newly discovered factual grounds for a 42 U.S.C. § 1983 damages claim against multiple defendants. And the *Rooker-Feldman* doctrine is inapplicable to a First Amendment facial challenge. (Doc. 55, pp. 3-5). In sum, the Court has Article III jurisdiction and should move the case to discovery.

DATED this 1st day of December 2025.

By: /s/
Phillip Potter
Plaintiff
Pro Se

---

admitted that no Presiding Judge ever acted in a judicial capacity in this cases' subject matter. For instance, Presiding Judge Gates conceded the Presiding Judge of the Maricopa County Superior Court "was never the assigned judge in that case and never issued an order entered into that case's docket." (Doc. 92, pp. 2-4, n.3). *See Burns v. Reed,* 500 U.S. 478, 500 (1991) (The factual "'touchstone' for the [common law judicial immunity] doctrine's applicability has been 'performance of the function of resolving disputes between parties, or of authoritatively adjudicating private rights.").