Phillip Potter
2301 N. 66th Street
Scottsdale, Arizona 85257
Phone: 480.459.0310
E-Mail: phillip.t.potter@gmail.com
Plaintiff
Pro Se

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Phillip Potter,<br><br>                              Plaintiff,<br><br>v.<br><br>Robert Meza, et al.,<br><br>                              Defendants. | No. 2:25-cv-00663-PHX-DWL<br><br>**SECOND MOTION FOR NOTICED TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**<br><br>(Expedited Evidentiary Hearing Requested) |

Plaintiff asks the Court to issue a Temporary Restraining Order and schedule Preliminary Injunction proceedings based on new and newly discovered jurisdictional facts.  The record is sufficiently developed to grant those requests in this case of public concern involving a First Amendment facial challenge to A.R.S. § 12-3201. (Doc. 14 at 113-207).  Plaintiff sued Attorney General Kris Mayes, in her official capacity, and Presiding Judge Pamela Gates, in her official administrative capacity, (Doc. 14 at 110-111) seeking declaratory and injunctive relief to enjoin civil, criminal, and administrative enforcement of § 12-3201. (Doc. 14, pp. 70-71).  Attorney General Mayes moved for Fed. R. Civ. P. ("Rule") 12(b)(1) dismissal contending Plaintiff lacked standing (Doc. 38, pp. 5-9) and she had sovereign immunity (Doc. 38, pp. 10-11).  But she foreclosed the latter defense when admitting her office and "county attorneys" can prosecute Plaintiff. (Doc. 38, pp. 8-9; Doc. 49, pp. 8-9).  The Court still separately questioned whether Plaintiff met the "credible threat of enforcement" element to establish an imminent ("pre-enforcement") injury. (Doc. 47, pp. 10-13).  On November 28, 2025, for the first time, the Attorney General expressly refused to disavow civil or criminal enforcement of § 12-3201 against Plaintiff (Doc. 93, pp. 1-2, 5-6), thus conceding credible threat. (Doc. 93, pp. 2-5).  *Peace Ranch, LLC v. Bonta,* 93 F.4th 482, 490 (9th Cir. 2024) (The credible threat element "often rises or falls with the enforcing authority's willingness to disavow enforcement.").  Presiding Judge Gates, in her Rule 12(b)(1) motion, requested the Court judicially notice "Administrative Order 2023-159" (Doc. 67, p. 9, n.1), declared the Presiding Judge's "only action here was to review and approve the application to certify Plaintiff as a vexatious litigant" (Doc. 67, p. 3), and asked the Court to treat acts the Presiding Judge took in an administrative capacity as acts taken in a "judicial capacity" (Doc. 67, p. 9).  She posited the Court lacked jurisdiction due to sovereign immunity

because the Presiding Judge does not "enforce[] the law" (Doc. 67, p. 3-5).  However, the complaint does not reference Administrative Order 2023-159 or rely on that document as the basis for any claim. (Doc. 90, pp. 3-5).  *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir.2018) (Extraneous documents may be made part of "the complaint [only] 'if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim.'").  Plaintiff did not even know that <u>*administrative*</u> order existed when filing suit. (Doc. 54, Affid.; Doc. 79, p. 1, 5-11).  Rather than support dismissal, the extraneous document provides an independent factual source of standing for an actual injury.  That document also confirms Presiding Judges can and do enforce § 12-3201 in an administrative (i.e., non-judicial) capacity.  *See* A.R.S. § 12-109(B)(1); Ariz. R. Sup. Ct. 123(b)(18)(A).  (Doc. 92, pp. 2-9).  Facing the prospect of jurisdictional discovery, Presiding Judge Gates altered her defense posture on October 23rd when declaring the "Motion to Dismiss does not cite to or rely on any extraneous documents or records" (Doc. 86, pp. 3-4), and expressly limiting herself to a "facial attack" on the complaint as written.  (Doc. 88, pp. 2-5).  *See Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004) ("A Rule 12(b)(1) jurisdictional attack may be facial or factual.").  Regardless, sovereign immunity does not apply to judges sued in their "administrative capacity".  *Wolfe v. Strankman*, 392 F.3d 358, 365-66 (9th Cir. 2004) ("Since [Plaintiff] sued [Judge Gates] in [her] administrative capacity as [Presiding Judge], we conclude that dismissal [for sovereign immunity] is not warranted".). (Doc. 49, pp. 4-5, 11; Doc 90, pp. 1-3).  Perhaps just as important, Plaintiff obtained documents and admissions from Presiding Judge Gates on October 21, 2025 as part of an Ariz. R. Sup. Ct. 123(f) public records request.  The Presiding Judge (1) could not produce copies of the supposed "application" from any source including the pertinent case's trial court judge, the Hon.

John Blanchard; (2) conceded a Presiding Judge's "'administrative authority' does not include 'authority over' private parties"; (3) stated "[t]he only communications [to or from Presiding Judge Welty[1]] are attorney and judicial work product emails between [Judge Gates] and Judge Welty or his staff when [Judge Gates] drafted the A.O. declaring Phillip Potter as a vexatious litigant"; and (4) admitted Presiding Judge Welty was never the assigned judge in the pertinent state case and never issued any judicial order entered into that case's docket. (Doc. 90, pp. 7-12).  No record of the "application" exists.  And the Presiding Judge's concessions and admissions cannot support the legal conclusion that Presiding Judge Welty acted "in a judicial capacity".  With these facts in hand, Plaintiff asked defendants' counsels on November 24, 2025 "if your clients would agree not to [administratively, civilly or criminally] enforce A.R.S. § 12-3201 until the case is complete."  On November 28th, attorney Joshua Katz responded: "I write to inform you that neither defendant agrees". (Doc. 93, pp. 1-2).  The developed record now contains new and newly discovered jurisdictional facts which show no state officer is entitled to sovereign immunity, and Plaintiff has standing to sue the state officers as *Ex parte Young* "proper defendants".  *See* attached Affidavit.  The Court has Article III jurisdiction.[2]

Per Rule 65, Plaintiff moves the Court to enjoin Attorney General Mayes and

---

[1] The Hon. Pamela Gates replaced the Hon. Joseph Welty as Presiding Judge of the Maricopa County Superior Court in July 2025. (Doc. 77).

[2] The *Rooker-Feldman* doctrine is inapplicable here because a "facial challenge [i]s not 'inextricably intertwined' with the judicial decision of the local court [and presents] a general challenge to the constitutionality of" a statute seeking review of legislative acts, not judicial acts or any state court decision.  *Noel v. Hall*, 341 F.3d 1148, 1157 (9th Cir. 2003); *Maldonado v. Harris*, 370 F.3d 945, 949-50 (9th Cir. 2004). (Doc. 27, pp. 1-6; Doc. 54, pp. 15-17; Doc. 55; pp. 3-5).  In addition, no defendant, including the two state officer defendants, can benefit from claim preclusion, especially given the newly discovered Administrative Order 2023-159.  *See Power Rd.-Williams Field LLC v. Gilbert*, 14 F. Supp. 3d 1304, 1309 (D. Ariz. 2014); *Lawrence T. v. Dep't. of Child Safety*, 438 P.3d 259, 262-64 (Ariz. Ct. App. 2019). (Doc. 55, pp. 5-11).

Presiding Judge Gates from civilly, criminally or administratively enforcing A.R.S. § 12-3201 until the case is complete.  He asks the Court to issue a Temporary Restraining Order ("TRO") and to schedule Preliminary Injunction ("PI") proceedings as he meets TRO and PI requirements.  The developed record shows Plaintiff is likely to succeed on the merits or at least raises "serious questions".  He suffers irreparable injuries in the form of threatened and ongoing fundamental rights deprivations.  Both the balance of equities and the public interest strongly favor granting requested relief.  Plaintiff satisfied Rule 65 notice requirements by providing written notice of this Motion to Attorney General Mayes and Presiding Judge Gates on November 24, 2025.  No further notice should be required.  *See* Rule 65(b)(1)(A) and (B).  Plaintiff also requests the Court waive any security requirement.  *See* Rule 65(c).  This Motion is based on the following Memorandum in Support and all supporting written motions, court papers, documents and exhibits on the record, and other evidence and arguments which may be presented.

MEMORANDUM IN SUPPORT

""The right of access to the courts is indeed but one aspect of the right of petition".  *California Motor Transport v. Trucking Unlimited*, 404 U.S. 508, 510 (1972).

I. CASE STATUS

Facts show Plaintiff never filed a baseless petition (Doc. 14 at 61-76, 242; Doc. 49, Affid.).  However, he faces administrative enforcement of § 12-3201, and credible threats of civil and criminal prosecution for constitutionally protected court petitioning.  Motion practice is now complete at the dismissal stage. (Doc. 38; Doc. 49; Doc. 53; Doc. 67; Doc. 79; Doc. 81).  Questions of jurisdiction and standing have been answered in Plaintiff's favor.  The Supreme Court expressly rejected the Attorney General's Rule 12(b)(6) defense that § 12-3201(E)(1) definitions of "vexatious conduct" do not reach

1  constitutionally protected activities.  Tellingly, Presiding Judge Gates' Rule 12(b)(6)

2  motion includes no argument that the Petition Clause permits A.R.S. § 12-3201.[3]

3  ## II. LAW AND DISCUSSION

4        Courts apply the same approach to TRO requests as to PI motions.  *Stuhlbarg Int'l*

5  *Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). "The Supreme

6  Court has explained that plaintiffs seeking a preliminary injunction must establish that (1)

7  they are likely to succeed on the merits, (2) they are likely to suffer irreparable harm

8  absent preliminary relief, (3) the balance of equities tips in their favor, and (4) an

9  injunction is in the public interest." *Where Do We Go Berkeley v. California Dep't. of*

10 *Transportation,* 32 F.4th 852, 859 (9th Cir. 2022) (citing *Winter v. Nat. Res. Def.*

11 *Council, Inc.,* 555 U.S. 7, 20 (2008)).  Courts *"*evaluate 'these factors on a sliding scale,

12 such 'that a stronger showing of one element may offset a weaker showing of another.'

13 When the balance of equities 'tips sharply in the plaintiff's favor,' the plaintiff must raise

14 only 'serious questions' on the merits – a lesser showing than likelihood of success."

15 *Fellowship of Christian Athletes v. San Jose Unified Sch. Dist. Bd. of Educ.,* 82 F.4th

16 664, 684 (9th Cir. 2023) (en banc).

---

[3] Presiding Judge Gates' Rule 12(b)(6) defense rests on absolute "judicial immunity". (Doc. 67, pp. 6-9).  This fails altogether since "[j]udicial immunity only applies to judicial acts".  *Forrester v. White,* 484 U.S. 219, 227 (1988).  "[A]bsolute judicial immunity does not apply to nonjudicial acts, i.e. the administrative, ... functions that judges may on occasion be assigned to perform." *Duvall v. County of Kitsap*, 260 F.3d 1124, 1134 (9th Cir. 2001).  The "'touchstone' for the [judicial immunity] doctrine's applicability has been 'performance of the function of resolving disputes between parties, or of authoritatively adjudicating private rights." *Burns v. Reed,* 500 U.S. 478, 500 (1991).  But again, the Presiding Judge recently admitted Presiding Judge Welty "was never the assigned judge in that [CV2022-008626] case and never issued an order entered into that case's docket." (Doc. 92, pp. 2-4, n.3).  Indeed, Arizona's constitution, statutes, and court rules preclude Presiding Judges from resolving disputes between parties or adjudicating private rights via administrative proceedings or administrative orders since their "'administrative authority' does not include 'authority over' private parties'". (Doc. 90, pp. 1-8; Doc. 92, pp. 5-9).

1    A. Factor One: Plaintiff Is Likely To Succeed On The Merits

2        State laws which operate entirely, or substantially and unjustifiably, within the

3    First Amendment's scope may be challenged as overbroad.  *Broadrick v. Oklahoma,* 413

4    U.S. 601, 613 (1973).  A statute which "lacks a plainly legitimate sweep" is void.  *Moody*

5    *v. NetChoice, LLC,* 603 U.S. 707, 721 (2024).  "[L]itigants mounting a facial challenge to

6    a statute normally 'must establish that *no set of circumstances* exists under which the

7    [statute] would be valid.'"  *U.S. v. Hansen,* 599 U.S. 762, 769 (2023) (emphasis original).

8    Alternatively, First Amendment facial challenges also may be successful if a plaintiff can

9    show that "a substantial number of [the law's] applications are unconstitutional, judged in

10   relation to the statute's plainly legitimate sweep." *Id*; *Ashcroft v. Free Speech Coalition*,

11   535 U.S. 234, 255 (2002) ("The overbreadth doctrine prohibits the Government from

12   banning unprotected [expression] if a substantial amount of protected [expression] is

13   prohibited or chilled in the process.").  "[I]n facial challenges under ... the First

14   Amendment, like this one, courts set the bar lower out of respect for the value of free

15   expression."  *Arizona Attorneys for Crim. Just. v. Mayes,* 127 F.4th 105, 107 (9th Cir.

16   2025).  Statutes which abut against core court petitioning "expression" or reach protected

17   petitioning-related conduct cannot suffer vagueness[4] and must be "narrowly tailored" to

18   
19   
_____

20   [4] "As the overbreadth doctrine has developed, it has 'almost wholly merged' with the
     vagueness doctrine as applied to 'statutes covering [F]irst [A]mendment activities.'" *U.S.*
21   *v. Sineneg-Smith,* 590 U.S. 371, 381 (2020) (Thomas, J. concurring).  "When First
     Amendment freedoms are at stake, courts apply the vagueness analysis more strictly,
22   requiring statutes to provide a greater degree of specificity and clarity than would be
     necessary under ordinary due process principles." *Cal. Teachers Ass'n v. State Bd. of*
23   *Educ.,* 271 F.3d 1141, 1149-50 (9th Cir. 2001). "[A] law is void for vagueness if it
     'lack[s] any ascertainable standard for inclusion and exclusion,' thereby authorizing or
24   encouraging 'the authorities [to] arbitrarily prosecute" for ambiguously proscribed
     conduct.  *Tucson v. City of Seattle,* 91 F.4th 1318, 1323 (9th Cir. 2024).  Of note,
25   "vagueness allegations must be taken as true for the purpose of determining standing."
     *Isaacson v. Mayes,* 84 F.4th 1089, 1099 (9th Cir. 2023). (Doc. 14 at 123, 195-207).
26

justifiably serve a "compelling" or "substantial" "government interest". *NAACP v. Button,* 371 U.S. 415, 438 (1963) ("Broad prophylactic rules in the area of free expression are suspect. ... Precision of regulation must be the touchstone in an area so closely touching our most precious freedoms."); *U.S. v. O'Brien*, 391 U.S. 367, 377 (1968) ("We hold that a government regulation is sufficiently justified if it is within the constitutional power of the Government; if it furthers a[] [compelling] or substantial governmental interest; if the governmental interest is unrelated to the suppression of free expression; and if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest."); *Ward v. Rock Against Racism,* 491 U.S. 781, 791 (1989) ("[A] restriction on speech or expression must be 'narrowly tailored to serve a significant governmental interest.'").

    1. A.R.S. § 12-3201(E) Reaches Constitutionally Protected Activities; *BE & K* (2002) Outlined The Petition Clause's Scope When Petitioning Courts For Redress

    Attorney General Mayes contended "baseless litigation is not immunized by the First Amendment right to petition" per "*Bill Johnson's Rests.*, *Inc. v. N.L.R.B.*, 461 U.S. 731, 743 (1983)". (Doc. 38, p. 1).  From that truncated phrase, she posited § 12-3201(E) "does not encompass constitutionally protected speech or activities" because "there is no constitutional right to file frivolous (i.e., objectively baseless)[5] litigation". (Doc. 38, p. 12).  This attempt to limit the Petition Clause's scope to "[non]baseless litigation" is untenable since the Supreme Court *directly* addressed and unambiguously *rejected* the Attorney General's interpretation of the exact *Bill Johnson's* phrase upon which her defense relied.  *See Fidelity Exploration and Prod. Co. v. U.S.*, 506 F.3d 1182, 1186 (9th Cir.2007) ("[W]e must follow the Supreme Court precedent that directly controls.").

---

[5] *See Moore v. Keegan Mgmt. Co.,* 78 F.3d 431, 434 (9th Cir. 1996) (A complaint is "frivolous" if it "is both baseless and made without a reasonable and competent inquiry.").

1

a. The U.S. Supreme Court Established The Petition Clause's Scope

2

When deciding whether "conduct falls under the protection of the Petition Clause, we must give adequate 'breathing space' to the right of petition".  *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 932 (9th Cir. 2006).  The Supreme Court emphasized the importance of this "breathing space" principle when it explained "in *Bill Johnson's* that [courts] could enjoin baseless retaliatory [i.e., baseless *and* retaliatory] suits because they fell outside of the First Amendment and thus were analogous to 'false statements.'  We concluded that '[j]ust as false statements are not immunized by the First Amendment right to freedom of speech, baseless litigation is not immunized by the First Amendment right to petition.' While this analogy is helpful, it does *not* suggest that the class of baseless litigation is *completely* unprotected: *At most*, it indicates such litigation should be unprotected 'just as' false statements are.  And while false statements may be unprotected for their own sake, '[t]he First Amendment *requires* that we protect some falsehood in order to protect *speech that matters.*'  ([N]oting the need to protect some falsehoods to ensure that 'the freedoms of speech and press [have] '*breathing space*' essential to their fruitful exercise'). ... It is at least consistent with these 'breathing space' principles that we have *never* held that the *entire* class of objectively baseless litigation may be enjoined *or declared unlawful* even though such suits may advance no First Amendment interests of their own.  Instead, in cases like *Bill Johnson's ...,* our holdings *limited regulation* to suits that were *both* objectively baseless *and* subjectively motivated by an unlawful purpose". *BE & K Constr. Co. v. N.L.R.B.,* 536 U.S. 516, 530-31 (2002) (Italics with underline emphasis added). (Doc. 49, pp. 11-12).  The Ninth Circuit found "*BE & K* made this breathing room protection explicit" such that the scope of the Petition Clause reaches, protects, and "immunizes" core court "petitioning activities" (i.e., filing Ariz. R. Civ. P. 7

"pleadings allowed" such as a "complaint", "answer", etc.) and all "conduct incidental to a petition" (i.e., motion practice, settlement communications, etc.) from statutory regulation "unless the underlying petition itself fell outside" the *BE & K* "both ... and" conjunctive[6] parameters. *Sosa*, 437 F.3d at 932-938. Only when the "underlying petition f[alls] outside" those parameters can a suit be treated as an actionable, non-immunized "sham" pursuant to the "sham litigation exception". *Id*; *U.S. v. Koziol,* 993 F.3d 1160, 1171 (9th Cir. 2021) ("requiring both objective baselessness and an improper motive ... ensure[s] citizens may enjoy the right of access to the courts"). (Doc 14 at 113-187). The Ninth Circuit applies "a strict two-step analysis to assess whether a single action constitutes sham petitioning. ... The two parts of the test operate in succession: Only if the suit is found to be objectively baseless does the court proceed to examine the litigant's subjective intent." *USS-POSCO Indus. v. Contra Costa Cnty. Bldg. & Const. Trades Council, AFL-CIO*, 31 F.3d 800, 810-11 (9th Cir. 1994). Contrary to the Attorney General's unsupported legal contention, the Petition Clause's reach captures all core court "petitioning activities" and all "conduct incidental", including "baseless litigation", provided the "underlying" suit is not a conjunctively demonstrated "sham".[7]

   b. The Arizona Supreme Court Determined § 12-3201 Reaches Constitutionally Protected Activities; That Construal Is Binding On Federal Courts

   The Arizona supreme court construed § 12-3201(E) language[8] and, as Plaintiff

---

[6] *See* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* (2012) ("Under the conjunctive/disjunctive canon, *and* combines items while *or* creates alternatives. Competent users of the language rarely hesitate over their meaning.").
[7] The *BE & K* conjunctive standard applies when adjudicating a "single action" and "*a small number of such suits*" while a long "series" of baseless suits alternatively infers the requisite subjectively motivated element. *Relevant Grp., LLC v. Nourmand,* 116 F.4th 917, 929 (9th Cir. 2024) (emphasis original). (Doc. 14 at 230, n.38; Doc 85, pp. 8-10).
[8] For "purposes of this section: 1. 'Vexatious conduct' includes any of the following: (a) Repeated filing of court actions solely or primarily for the purpose of harassment. (b)

alleged (Doc 14 at 121-194), found every § 12-3201(E)(1)(a)-(f) "vexatious conduct" definition reaches constitutionally protected activities which fall well within the *BE & K* conjunctive boundaries.[9]  *Ariz. Republican Party v. Richer*, 257 Ariz., 210 (2024). (Doc. 14, 128-131).  Per *Richer*, § 12-3201(E)(1)(c) only regulates actions brought "without substantial justification" ("groundless"[10] petitions negligently filed as judged against the standard of "what a reasonable attorney would do")[11] while the other § 12-3201(E)(1) "subsections" evaluate "*separate* bad faith"; i.e., the § 12-3201(E)(1)(a) subjectively motivated improper "purpose of harassment"[12] and any § 12-3201(E)(1)(b), (d), (e) or (f)

_____

Unreasonably expanding or delaying court proceedings. (c) Court actions brought or defended without substantial justification. (d) Engaging in abuse of discovery or conduct in discovery that has resulted in the imposition of sanctions against the pro se litigant. (e) A pattern of making unreasonable, repetitive and excessive requests for information. (f) Repeated filing of documents or requests for relief that have been the subject of previous rulings by the court in the same litigation. 2. 'Without substantial justification' has the same meaning prescribed in section 12-349.  Per 'section 12-349[F]', 'without substantial justification' means that the claim or defense is groundless and is not made in good faith."
[9] Courts "may assume without deciding that the [challenged] statute 'reaches some [First Amendment] protected'" activities when deciding issues at the dismissal or preliminary injunction stages.  *Arizona Attorneys for Crim. Just.,* 127 F.4th at 110.  In addition, a plaintiff can sufficiently allege a statute reaches protected activities simply "from the text of [the law]".  *Virginia v. Hicks,* 539 U.S. 113, 122 (2003). (Doc. 14 at 121, n.28).
[10] "Groundless" and "baseless" are synonymous terms.  *See* Black's Law Dictionary (7th Ed, 1999) ("Baseless" means "without legal or factual basis; groundless".).
[11] "Objectively baseless", "frivolous", and "without substantial justification" are functionally equivalent terms.
[12] Per *Richer*, courts must treat statutorily undefined § 12-3201(E)(1)(a) "harassment" as "separate" from the § 12-3201(E)(1)(c) merits.  Thus, "harassment" in this context has its "ordinary, contemporary, common meaning" of annoyance.  *United States v. Cabaccang,* 332 F.3d 622, 626 (9th Cir.2003) (en banc) ("When Congress does not define a term in a statute, we construe that term 'according to [its] ordinary, contemporary, common meaning").  This sharply contrasts with how courts must treat "harassment' under procedural rules, for instance, where "harassment" is read as a legal term of art which inherently includes (i.e., "subsumes") a finding of no "legitimate purpose" for the underlying "complaint'.  *Hudson v. Moore Business Forms, Inc.,* 836 F.2d 1156, 1159 (9th Cir.1987) ("[B]ecause of the objective standard applicable to Rule 11 analyses, a

motivation[13] or purpose, which are not "moored" to the merits. *Id* at ¶¶ 35-44 (emphasis added). (Doc. 14, 128-131).  Relying on the anti-surplusage canon, the state's highest court explained that to conclude otherwise would wrongly render § 12-3201(E)(1)(c) "superfluous".  *Id* at ¶ 37.  *See Am. Vantage Cos. v. Table Mountain Rancheria,* 292 F.3d 1091, 1098 (9th Cir.2002) ("legislative enactments should not be construed to render their provisions mere surplusage").  This construal "extricates our courts from the morass of attempting to discern the subjective motives of attorneys and parties in bringing a case and avoids conflating motive and the objective reasonableness of litigation".  *Id* at ¶ 40.

"When interpreting state law, a federal court is bound by the decision of the highest state court."  *In re Kirkland,* 915 F.2d 1236, 1238 (9th Cir. 1990).  *Richer* is binding precedent when it comes to questions of how to construe the statute's language and whether the statute reaches constitutionally protected activities.  Per *Richer* construal, the Arizona Legislature enacted a law which reaches "protected petitioning activity or

---

complaint that is found to be well-grounded in fact and law cannot be sanctioned as harassing, regardless of the attorney's subjective intent".); *CrossFit Inc. v. Martin,* No. 2:14-CV-02277-PHX-JJT, 2017 WL 4236968 (D. Ariz. Sept. 22, 2017) ("[T]he 'improper purpose' inquiry subsumes the 'frivolousness inquiry' when applied to the filing of complaints.  In other words, 'complaints are not filed for an improper purpose if they are non-frivolous.'"); Black's Law Dictionary (12th ed. 2024) ("Harassment" means "[w]ords, conduct, or action . . . that, being directed at a specific person, annoys, alarms, or causes substantial emotional distress to that person and serves *no legitimate purpose*.").  In sum, the word "harassment" under Rule 11(b)(1) procedural authority has a different meaning from the word "harassment" under § 12-3201(E)(1)(a) statutory authority.

[13] No provision under §§ 12-3201(E)(1)(b) ("*Unreasonably* expanding or delaying court proceedings"), (d) ("A pattern of making *unreasonable,* repetitive and excessive requests for information"), or (e) ("A pattern of making *unreasonable,* repetitive and excessive requests for information") presents a subjectively motivated improper purpose since the negligence standard for determining what a "reasonable" attorney or person would do is objective, not subjective.  *See Prof. Real Estate Investors, Inc. v. Columbia Pictures Industries, Inc.,* 508 U.S. 49, 60-61 (1993). (A "subjectively motivated" litigant has a "subjective intent" to achieve an improper purpose.).  A.R.S. §§ 12-3201(E)(1)(b), (d), and (e), therefore, also lack the "subjectively motivated" element that *BE & K* requires.

activity which must be protected to afford breathing space to the right of petition guaranteed by the First Amendment". *Sosa*, 437 F.3d at 933.

    2. A.R.S. § 12-3201(E) Lacks A Plainly Legitimate Sweep; The Statute Violates The Petition Clause In Every Application

The "first step in the proper facial analysis is to assess the state law's scope.  What activities, by what actors, do the laws prohibit or otherwise regulate?" *Moody*, 603 U.S. at 724.  A.R.S. § 12-3201 "actors" are "pro se litigant[s]" involved in any "noncriminal case".  The "activities" that the challenged provisions "prohibit or otherwise regulate" are "any" activities defined as "vexatious conduct" per §§ 12-3201(E)(1)(a)-(f).

    a. A.R.S. § 12-3201(E) Exclusively Prohibits and Otherwise Regulates Constitutionally Protected Activities, But Does Not Reach *Unprotected* Activities

When deciding whether the First Amendment protects activities related to court petitioning, "proof of a lawsuit's objective baselessness is the 'threshold prerequisite': a court may not even consider the defendant's allegedly illegal objective unless it first determines that his lawsuit was objectively baseless." *White v. Lee*, 227 F.3d 1214, 1233 (9th Cir. 2000).  Each § 12-3201(E)(1) (a), (b), (d), (e), and (f) provision purports to present a motive or purpose for filing suit which *Richer* held is "separate' from, and not "moored" to, any § 12-3201(E)(1)(c) merits considerations.  But again, courts "may not even" consider any filing motive or purpose unless the suit's merits are first found to be objectively absent.  Defining various "separate" motives and purposes behind litigation, §§ 12-3201(E)(1)(a), (b), (d), (e), and (f) only regulate protected "conduct incidental" per *Sosa* since those provisions do not "subsume" the presence of a baseless petition.  And A.R.S. § 12-3201(E)(1)(c) addresses nothing beyond whether an objectively baseless "action" was filed.  Per *Sosa* and *Richer*, each § 12-3201(E)(1)(a)-(f) provision only

1    reaches constitutionally protected activities, not *unprotected* activities. In other words,

2    "in every application", the *Moody* "activities ... that [§§ 12-3201(E)(1)(a)-(f)] prohibit or

3    otherwise regulate" are *all* Sosa "activities which must be protected" under the Petition

4    Clause's conjunctive scope. The statute thus "lacks a plainly legitimate sweep".

5          b. Pro Se Litigants Have *Noerr-Pennington* Immunity In Every Application

6          "Under the *Noerr-Pennington* doctrine, those who petition any department of the

7    government for redress are generally immune from statutory liability for their petitioning

8    conduct. ... [The] doctrine stands for a generic rule of statutory construction, applicable to

9    any statutory interpretation that could implicate the rights protected by the Petition

10   Clause." *Sosa*, 437 F.3d at 929-31; *White*, 227 F.3d at 1239 ("The *Noerr-Pennington*

11   doctrine sharply limits [Government] officials' ability to treat [] state-court lawsuit[s] as a

12   possible violation of [civil or criminal] law"). The U.S. Supreme "Court... extended

13   *Noerr-Pennington* immunity to the use of 'the channels and procedures of state ...

14   courts.'" *Sosa*, 437 F.3d at 929. For reasons stated, pro se litigants can defeat every

15   A.R.S. § 12-3201(A) motion by asserting *Noerr-Pennington* immunity as an affirmative

16   defense. (Doc. 14 at 124-139). *See 360 Mortg. Grp., LLC v. Fortress Inv. Grp. LLC,* No.

17   19-CV-8760, 2020 WL 5259283, at *4 (S.D.N.Y. Sept. 3, 2020) ("The *Noerr-Pennington*

18   doctrine is generally raised as an affirmative defense."). "To determine whether a

19   [litig]ant's conduct, ..., is immunized under *Noerr-Pennington,* we apply a three-step

20   analysis to determine: (1) 'whether the lawsuit imposes a burden on petitioning rights,'

21   (2) 'whether the alleged activities constitute protected petitioning activity,' and (3)

22   'whether the statute[] at issue may be construed to [avoid] that burden.' If the answer at

23   each step is 'yes,' then a defendant's conduct is immunized under *Noerr-Pennington*."

24   *B&G Foods N. Am., Inc. v. Embry*, 29 F.4th 527, 536 (9th Cir. 2022). Meeting that first

step, any § 12-3201(A) motion that might result in a "finding that a lawsuit was illegal 'is a burden'". *Sosa*, 436 F.3d at 930. The "focus at step two" is on whether any "alleged" A.R.S. § 12-3201(E)(1)(a)-(f) violation would qualify as *protected* petitioning activity" not subject to the "sham" litigation exception. *B&G Foods*, 29 F.4th at 536 (emphasis original); *Sosa*, 437 F.3d at 933. Per *Richer*, every alleged § 12-3201(E)(1)(c) violation could not take into consideration any "separate" subjective motives or improper purposes, while every other alleged § 12-3201(E)(1) violation would involve motives or purposes "[un]moored" to the case's objective merits, meaning all possible "alleged activities" would, in every instance, be "protected petitioning activities" in the form of core "petitioning activity" or "conduct incidental to a petition" per *BE & K* and *Sosa*. Moving to third step, the *Noerr-Pennington* doctrine immunizes every instance of A.R.S. § 12-3201(E)(1)(a)-(f) "vexatious conduct" because, per *Richer*, each provision can be, and has been, "construed to [avoid] that [First Amendment] burden". *B&G Foods*, 29 F.4th at 536. All three steps required to demonstrate *Noerr*-Pennington immunity are satisfied in every possible application of the challenged statute. As a matter of constitutional law, every self-represented litigant who could be accused of engaging in "vexatious conduct" through a § 12-3201(A) motion would be entitled to *Noerr-Pennington* immunity. (Doc. 14 at 115-119). A.R.S. § 12-3201 is "patently unconstitutional". *See Saenz v. Roe,* 526 U.S. 489, 499 n.11 (1999) ("If a law has no other [demonstrable] purpose ... than to chill the assertion of constitutional rights by penalizing those who choose to exercise them, then it is patently unconstitutional.").

### 3. A.R.S. § 12-3201(E) Violates The Petition Clause At Least In A Substantial Number of Applications

Plaintiff also factually demonstrated via court records that, in a conservative

calculation, 85% of the statute's applications resulted in orders which violated the Petition Cluse; a "substantial number" sufficient to find the law unconstitutional. (Doc 85, pp. 13-17). The number is not 100% because, in a handful of cases, judges found co-occurring §§ 12-3201(E)(1)(a) *and* (c) violations but declined to enter the requisite § 12-3201(B) blanket injunction. Orders compliant with the Petition Clause only resulted from judges who violated the § 12-3201(B) requirement after encountering litigants who (unwittingly) failed to invoke the *Noerr-Pennington* doctrine as an affirmative defense.

### 4. A.R.S. § 12-3201(B) Is A Content-Based, Permanent Blanket Prior Restriction

Per § 12-3201(B), litigants found vexatious "may n[ever] file a new [Ariz. R. Civ. P. 7] pleading, ... without prior leave of the court" even in active "well-founded" suits. *See Bill Johnson's Rests.*, 461 U.S. at 742-43 (1983) ("well-founded lawsuits ... [may] not be enjoined"). The § 12-3201(B) mandatory blanket injunction serves (1) as a "prior restraint" on the fundamental right to petition, *Bantam Books, Inc.* v. *Sullivan,* 372 U.S. 58, 70 (1963) ("Any system of prior restraints of expression comes to this Court bearing a heavy presumption against its constitutional validity."); and (2) as a "content based" regulation of a fundamental right, *Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155, 164 (2015) ("[R]egulations [are] considered content based if they 'cannot be justified without reference to the content of the regulated speech' [or petitioning]."). Restrictions and regulations on fundamental rights are "justified only if the government proves that they are narrowly tailored to serve compelling state interests". *Id* at 158. Defendants cannot overcome the rigors of "strict scrutiny", or even intermediate scrutiny, since a permanent blanket injunction could never be considered "narrowly tailored". *Id*. (Doc. 188-192).

### B. Factor Two: Plaintiff Is Likely To Suffer, And Has Suffered, Irreparable Injuries

"The loss of [and threats to] First Amendment freedoms, for even minimal periods

15

of time, unquestionably constitutes irreparable injury." *Roman Cath. Diocese of Brooklyn v. Cuomo,* 592 U.S. 14, 19 (2020). "'Irreparable harm is relatively easy to establish in a First Amendment case' because the party seeking the injunction 'need only demonstrate the existence of a colorable First Amendment claim.'" *Fellowship of Christian Athletes,* 82 F.4th at 694-95. Plaintiff presents a "colorable First Amendment claim" that the enforcement and operation of A.R.S. § 12-3201 abridges, impermissibly prohibits or otherwise regulates, and chills constitutionally protected activities in the form of core court petitioning and conduct incidental to a petition. Plaintiff is threatened with, and currently experiences, ongoing irreparable injuries. Factor Two is met.

    C. Factors Three and Four: The Balance of Equities Tip Sharply In Plaintiff's Favor, While An Injunction Is In The Public's Interest

        "Where, as here, the party opposing injunctive relief is a government entity, the third and fourth factors – the balance of equities and the public interest – 'merge.'" *Id* at 695. Both "the balance of equities" and "the public interest" independently favor granting injunctive relief. *Winter*, 555 U.S. at 20. Government defendants "cannot suffer harm from an injunction that merely ends an unlawful practice." *Rodriguez v. Robbins*, 715 F.3d 1127, 1145 (9th Cir. 2013). And "it is always in the public interest to prevent the violation of a party's constitutional rights." *Melendres v. Arpaio,* 695 F.3d 990, 1002 (9th Cir. 2012). "[B]y establishing a likelihood that [the challenged statute] violates the U.S. Constitution, Plaintiff[] ha[s] also established that both the public interest and the balance of the equities favor [injunctive relief]." *Ariz. Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1069 (9th Cir. 2014). Factors Three and Four tip sharply in Plaintiff's favor.

III. CONCLUSION

        The Petition Clause protects core court "petitioning activities" and all "conduct

incidental to a petition" unless the "underlying petition" is found to be "*both* objectively baseless *and* subjectively motivated by an unlawful purpose".  The Ninth Circuit and Supreme Court are clear on this point of constitutional law.  In binding fashion, Arizona's supreme court construed §§ 12-3201(E)(1)(a)-(f) to "avoid conflating [the subjective] motive and the objective reasonableness of litigation".  A.R.S. § 12-3201(E)(1)(c) thus addresses a petition's objective merits but does not consider any "separate" subjective motive or purpose behind the suit, while no § 12-3201(E)(1)(a), (b), (d), (e) or (f) filing motive or purpose provision may "subsume" consideration for the "threshold perquisite" of an underlying "objectively baseless" suit.  Per these conditions, *Noerr-Pennington* immunity defeats all § 12-3201(A) motions "in every application".  The statute therefore "lacks a plainly legitimate sweep" as court records confirm.  A.R.S. § 12-3201(B) also unconstitutionally imposes an unjustifiable "content based" "prior restriction" where "any" § 12-3201(E) infraction results in a permanent blanket injunction mandating the Government review and approve every "pleading" before a litigant may exercise their fundamental right to petition in any ongoing or future suit.  Such injunctions violate the First Amendment as they are not "narrowly tailored" and can serve no justifiable "government interest".  "[N]o set of circumstances exists under which this law would be valid".  In sum, new and newly discovered jurisdictional facts show Plaintiff has standing and confirm neither Attorney General Mayes nor Presiding Judge Gates may benefit from sovereign immunity or judicial immunity.  The Court has Article III jurisdiction.  The Attorney General's and Presiding Judge's Rule 12(b)(6) defenses all fail as a matter of law.  Plaintiff is "highly likely to succeed on the merits", and he at least raises "serious questions" going to the merits of a "colorable First Amendment claim".  The Court should grant Plaintiff's request for a TRO and schedule PI proceedings.

1

2          DATED this 12th day of December 2025.

3                    By: //s//
                         Phillip Potter
4                        Plaintiff
                         Pro Se
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

1

<u>CERTIFICATE OF SERVICE</u>

2

3    Plaintiff hereby certifies that on December 12, 2025, he electronically delivered the
attached documents via the PACER system to the District of Arizona Clerk's Office at:

4

5    401 W. Washington St.
Suite 130

6    SPC 1
Phoenix, AZ 85003

7    602-322-7200

8
Copies of the same documents were electronically transmitted this same day via the

9    PACER CM/ECF system to all parties, including to:

10
Joshua Katz

11   Hayleigh Crawford
Office of the Attorney General

12   2005 N. Central Ave.
Phoenix, AZ 85004-1592

13   602-542-5025

14   *Attorneys for Defendant Arizona Attorney General Kris Mayes*

15
Kara Karlson

16   Office of the Arizona Attorney General
2005 N. Central Ave.

17   Phoenix, AZ 85004-1592
(602) 542-8323

18   *Attorney for Defendant Presiding Judge Pamela Gates*

19
Brett W. Johnson

20   Derek C. Flint
Charlene A. Warner

21   One East Washington Street
Suite 2700

22   Phoenix, Arizona 85004-2556
Telephone: 602.382.6000

23   Facsimile: 602.382.6070

24   *Attorneys for Defendant Karrin Taylor Robson*

25

26

Timothy Nelson
24 West Camelback
Suite A#541
Phoenix, Arizona 85013
Telephone: 602.421.2681
Facsimile: 602.456.9982
*Attorney for Defendant Robert Meza*

Trevor Cook
Jeffrey Silence
20235 N. Cave Creek Rd.
Ste 104 # 460
Phoenix, AZ 85024
Telephone: (602) 932-8358
*Attorneys for Defendant Alane Ortega*


By:  //s//
Phillip Potter
Plaintiff
Pro Se