Phil Potter <phillip.t.potter@gmail.com>

## Case No. 2:25-cv-00663-PHX-DWL, Potter v. Meza, et al.
2 messages

---

**Phil Potter** <phillip.t.potter@gmail.com>      Mon, Nov 24, 2025 at 6:33 PM
To: "Crawford, Hayleigh" <Hayleigh.Crawford@azag.gov>, "Katz, Joshua" <Joshua.Katz@azag.gov>, "Karlson, Kara" <Kara.Karlson@azag.gov>

Ms. Crawford, Mr. Katz, and Ms. Karlson,
Please see the attached correspondence involving the above referenced case..
Regards,
Phillip Potter

 **TRO PI Letter _ Nov 24 2025.pdf**
317K

---

**Katz, Joshua** <Joshua.Katz@azag.gov>      Fri, Nov 28, 2025 at 4:05 PM
To: Phil Potter <phillip.t.potter@gmail.com>
Cc: "Crawford, Hayleigh" <Hayleigh.Crawford@azag.gov>, "Karlson, Kara" <Kara.Karlson@azag.gov>

Mr. Potter,

Thank you for providing this notice of your intent to file a motion.

I write to inform you that neither defendant agrees to the request on page 11 of your letter.

As you are of course aware, your request for preliminary relief was denied, and there are several motions to dismiss the case fully briefed and pending.  We will respond to any further motions in due course, as appropriate.

Sincerely,

**Joshua A. Katz (he/him)**

Assistant Attorney General



Arizona Attorney General Kris Mayes

Solicitor General's Office

2005 N. Central Ave., Phoenix, AZ 85004

Desk: (602) 542-8053

Joshua.Katz@azag.gov

http://www.azag.gov

NOTICE: This email, including any attachments, may contain privileged or confidential information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please notify the sender and destroy all copies of the original message. Thank you.

[Quoted text hidden]

November 24, 2025

VIA EMAIL

Hayleigh S. Crawford
Joshua A. Katz
Arizona Attorney General
2005 N. Central Ave.
Phoenix, AZ 85004-1592
(602) 542-3333
Hayleigh.Crawford@azag.gov
Joshua.Katz@azag.gov

Kara Karlson
Arizona Attorney General
2005 N. Central Ave.
Phoenix, AZ 85004-1592
(602) 542-8323
Kara.Karlson@azag.gov

RE: Case No. 2:25-cv-00663-PHX-DWL, *Potter v. Meza*, et al.

Ms. Crawford, Mr. Katz, and Ms. Karlson,

I will soon move for a Temporary Restraining Order and Preliminary Injunction based in part on the recently discovered Administrative Order 2014-134 which bears markings of an unapproved local procedural rule used to deprive Arizonans of their fundamental rights. To avoid that motion, and consistent with Fed. R. Civ. P. 65, I write to ask if your clients would agree not to enforce A.R.S. § 12-3201 until the case is complete. For Attorney General Mayes, that would take the form of not civilly or criminally enforcing any perceived violation of § 12-3201(B), including any perceived violation of Administrative Order 2023-159. For Presiding Judge Gates, that would involve exercising her plenary administrative authority to rescind Administrative Order 2023-159 and remove my name from the state's online vexatious litigant list. I hope we can convey this limited agreement to the Court as means to conserve judicial resources.

## COUNT ONE OVERVIEW

Your state officer clients are named in their official capacities as *Ex Parte Young*, 209 U.S. 123 (1908) "proper defendants" in a First Amendment facial challenge to A.R.S. § 12-3201 for overbreadth. (Doc. 14 at 110-111, 113-207). "The Constitution gives significant protection from overbroad laws that chill [expression] within the First Amendment's vast and privileged sphere. Under this principle, [§ 12-3201] is unconstitutional on its face if it prohibits a substantial amount of protected expression." *Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 244 (2002) (citing *Broadrick* v. *Oklahoma,* 413 U. S. 601, 612 (1973)). Petitioning the courts for redress,

1

like engaging in political speech, is indeed an exercise in free expression as all First Amendment rights are "libert[ies] safeguarded by the due process clause of the Fourteenth Amendment from invasion by state action [and may be exercised] without any prior restraint". *Near v. Minnesota ex rel. Olson,* 283 U.S. 697, 707, 714 (1931); *NAACP v. Button,* 371 U.S. 415, 428-29, 83 S.Ct. 328, 339, 9 L.Ed.2d 405 (1963) (the Speech and Petition Clauses provide "modes of expression ... protected by the First and Fourteenth Amendments which [states] may not prohibit"); *McDonald v. Smith,* 472 U.S. 479, 482, 105 S.Ct. 2787, 86 L.Ed.2d 384 (1985) ("The right to petition is cut from the same cloth as the other guarantees of that [First] Amendment, and is an assurance of a particular freedom of expression.").

Court petitioning is primarily regulated through judicially promulgated rules of procedure. The Supreme Court creates federal rules while district courts may adopt local rules not in conflict. *See* 28 U.S.C. §§ 2071 and 2072; Fed. R. Civ. P. 83(a). In Arizona, the state constitution and complementary statutes place the onus on the judiciary's highest echelon to promulgate rules that procedurally regulate court petitioning. *See* Ariz. Const. art. 6, § 5(5) ("The supreme court shall have: ... [p]ower to make rules relative to all procedural matters in any court"); A.R.S. § 12-109(A) ("The supreme court, by rules or administrative orders, shall regulate pleading, practice and procedure in judicial proceedings in all courts of this state"); R. Sup. Ct. Ariz. 28.1(c) ("Local rules and amendments must be consistent with rules of statewide application and must be approved by the Supreme Court"). Of course, procedural rules and statutes may not abridge or provide pretext to punish, prohibit, regulate or otherwise chill substantive petitioning rights, including the "right of access to courts [which] is indeed but one aspect of the right of petition". *California Motor Transport v. Trucking Unlimited*, 404 U.S. 508, 510 (1972).

That said, when it comes to making or enforcing statutes that reach court petitioning or related conduct, the U.S. Supreme Court has "limited regulation to suits that [a]re both objectively baseless *and* subjectively motivated by an unlawful purpose,". *BE & K Constr. Co. v. N.L.R.B.,* 536 U.S. 516, 530-31 (2002) (emphasis original). Akin to the legal standard requiring public figures to demonstrate <u>both</u> "falsity" <u>and</u> "actual malice" to bring defamation claims (*see New York Times Co.* v. *Sullivan,* 376 U. S. 254, 279-280, 285 (1964)), the *BE & K* "both ... and" conjunctive[1] legal standard serves a valuable constitutional function as it ensures sufficient "breathing space essential to [the Petition Clause's] fruitful exercise." *Id*. The Ninth Circuit observed "*BE & K* made this breathing room protection explicit" such that the Petition Clause "immune[izes]" all core "petitioning activities" (i.e., the filing of an Ariz. R. Civ. P. 7 "pleading allowed" such as a "complaint", "answer", "counterclaim", etc.) and all "conduct incidental to a petition" (i.e., settlement demand letters, motion filings, disclosure and discovery matters, etc.) which fall within those conjunctive boundaries.[2] *Sosa v. DIRECTV, Inc*., 437 F.3d 923, 932-38

---

[1] *See* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* (2012) ("Under the conjunctive/disjunctive canon, *and* combines items while *or* creates alternatives. Competent users of the language rarely hesitate over their meaning.").

[2] In a Fed. R. Civ. P. 12(b)(6) motion (Doc. 38), the Attorney General contended the applicable legal

(9th Cir. 2006). Put another way, the conjunctive standard determines whether, as a matter of constitutional law, court petitioning and related conduct enjoy "immunity" under the Petition Clause, or are an actionable, non-immunized "sham". *Id* at 938; *United States* v. *Koziol,* 993 F.3d 1160, 1171 (9th Cir. 2021) ("requiring both objective baselessness and an improper motive ... ensure[s] citizens may enjoy the right of access to the courts").[3] To be sure, the Ninth Circuit applies "a strict two-step analysis to assess whether a single action constitutes sham petitioning. ... The two parts of the test operate in succession: Only if the suit is found to be objectively baseless does the court proceed to examine the litigant's subjective intent." *USS-POSCO Indus. v. Contra Costa Cnty. Bldg. & Const. Trades Council, AFL-CIO*, 31 F.3d 800, 810-11 (9th Cir. 1994). State laws which operate entirely or substantially within these conjunctive boundaries are overbroad and, thus, void unless precisely written and narrowly tailored to serve a sufficient government interest. *Button,* 371 U.S. at 438 ("Broad prophylactic rules in the area of free expression are suspect. ... Precision of regulation must be the touchstone in an area so closely

---

standard is "a pattern of harassment or frivolousness" to be read in the "disjunctive" per "*Ringgold*", and that "baseless litigation is not immunized by the First Amendment right to petition" per "*Bill Johnson's*". These are not the proper legal standards for two reasons. First, the Court explained that *Ringgold* is expressly not applicable to statutory authorities. (Doc. 47). Second, as I explained in my response (Doc. 49), the Supreme Court expressly held "in *Bill Johnson's* that [courts] could enjoin baseless retaliatory [i.e., baseless *and* retaliatory] suits because they fell outside of the First Amendment and thus were analogous to 'false statements.' We concluded that '[j]ust as false statements are not immunized by the First Amendment right to freedom of speech, baseless litigation is not immunized by the First Amendment right to petition.' While this analogy is helpful, it does <u>not</u> suggest that the class of baseless litigation is *completely* unprotected: <u>At most</u>, it indicates such litigation should be unprotected 'just as' false statements are. And while false statements may be unprotected for their own sake, '[t]he First Amendment <u>requires</u> that we protect some falsehood in order to protect *speech that matters*.' ([N]oting the need to protect some falsehoods to ensure that 'the freedoms of speech and press [receive] that 'breathing space' essential to their fruitful exercise'). ... It is at least consistent with these 'breathing space' principles that we have <u>never</u> held that the <u>entire</u> class of objectively baseless litigation <u>may be enjoined or declared unlawful</u> even though such suits may advance no First Amendment interests of their own. Instead, in cases like *Bill Johnson's ...,* our holdings <u>limited regulation</u> to suits that were <u>both</u> objectively baseless *and* subjectively motivated by an unlawful purpose." *BE & K,* 536 U.S. at 530-31, 122 S.Ct. 2390 (Italics with underline emphasis added).

[3] Courts honor the *BE & K* conjunctive standard even when deciding Fed. R. Civ. P. 11(c) motions that target "complaints", construing those motions to avoid implicating the right to petition. *See CrossFit Inc. v. Martin*, No. 2:14-CV-02277-PHX-JJT, 2017 WL 4236968 (D. Ariz. Sept. 22, 2017) ("the 'improper purpose' inquiry subsumes the 'frivolousness inquiry' when applied to the filing of complaints. In other words, 'complaints are not filed for an improper purpose if they are non-frivolous.'"); *Hudson v. Moore Business Forms, Inc.,* 836 F.2d 1156, 1159 (9th Cir.1987) ("because of the objective standard applicable to Rule 11 analyses, a complaint that is found to be well-grounded in fact and law cannot be sanctioned as harassing, regardless of the attorney's subjective intent"). Within the context of Fed. R. Civ. P. 11, courts interpret "harass" as a legal term of art to safeguard the First Amendment and to prevent civil defendants from feigning victimhood to avoid a plaintiff's "legitimate purpose" of holding defendants liable for their misdeeds. *See* Black's Law Dictionary (12th ed. 2024) ("Harassment" means "[w]ords, conduct, or action . . . that, being directed at a specific person, annoys, alarms, or causes substantial emotional distress to that person and serves no legitimate purpose").

touching our most precious freedoms.").

## OVERBREADTH ANALYSIS

The overbreadth doctrine holds that a statute is overbroad if a plaintiff can show it "lacks a plainly legitimate sweep." *Moody v. NetChoice, LLC,* 603 U.S. 707, 721, 144 S. Ct. 2383, 2397, 219 L.Ed.2d 1075 (2024). This means "litigants mounting a facial challenge to a statute normally 'must establish that *no set of circumstances* exists under which the [statute] would be valid.'" *United States v. Hansen,* 599 U.S. 762, 769, 143 S.Ct. 1932, 216 L.Ed.2d 692 (2023) (emphasis original). However, when a facial suit is based on the First Amendment, the challenged law is alternatively void if the plaintiff can demonstrate "a substantial number of applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep." *Id*; *see also Ashcroft,* 535 U.S. at 255 ("The overbreadth doctrine prohibits the Government from banning unprotected [expression] if a substantial amount of protected [expression] is prohibited or chilled in the process."). "[I]n facial challenges under ... the First Amendment, like this one, courts set the bar lower out of respect for the value of free expression." *Arizona Attorneys for Crim. Just. v. Mayes,* 127 F.4th 105, 107 (9th Cir. 2025).

The "first step in the proper facial analysis is to assess the state law's scope. What activities, by what actors, do the laws prohibit or otherwise regulate?" *Moody*, 603 U.S. at 724, 144 S. Ct. 2383. A.R.S. § 12-3201 leaves little, if anything, to speculation on these subjects. The "actors" are "pro se litigant[s]" involved in any "noncriminal case". See § 12-3201(A). The "activities" that the "law[] prohibit[s] or otherwise regulate[s]" are those defined as "vexatious conduct" by "any" § 12-3201(E)(1)(a)-(f) provision.[4] *See United States v. Williams,* 553 U.S. 285, 292, 128 S.Ct. 1830, 170 L.Ed.2d 650 (2008) (courts generally analyze statutes on a provision-by-provision basis when adjudicating overbreadth). At this step, I needed only plead the statute "reaches some protected" First Amendment freedoms to proceed past the dismissal stage. *See Arizona Attorneys for Crim. Just. v. Mayes,* 127 F.4th 105, 110 (9th Cir. 2025) (courts considering a First Amendment facial challenge "may assume without deciding that the statute 'reaches some protected [expression]'"). I accomplished that minimal task when pointing to statutory text (i.e., "court actions", "pleading", "motion", etc.) defining prohibited and regulated activities under § 12-3201(E)(1)(a)-(f) (Doc. 14 at 121) and mandating a permanent blanket injunction for "any" violation per § 12-3201(B) (Doc. 14 at 188-192), while also articulating the proper conjunctive legal standard for determining whether the Petition Clause protects those activities. (Doc. 14 at 125). *See Virginia v. Hicks,* 539 U.S. 113, 122, 123 S.Ct. 2191, 156

---

[4] "For the purposes of this section: 1. "Vexatious conduct" includes any of the following: (a) Repeated filing of court actions solely or primarily for the purpose of harassment. (b) Unreasonably expanding or delaying court proceedings. (c) Court actions brought or defended without substantial justification. (d) Engaging in abuse of discovery or conduct in discovery that has resulted in the imposition of sanctions against the pro se litigant. (e) A pattern of making unreasonable, repetitive and excessive requests for information. (f) Repeated filing of documents or requests for relief that have been the subject of previous rulings by the court in the same litigation." (Doc. 14 at 121).

4

L.Ed.2d 148 (2003) (a plaintiff can plead and prove a law is unconstitutional "from the text of [the law]"). There can be no reasonable doubt that § 12-3201 "reaches some protected" conduct.

My next burden was to plead the statute is unconstitutional in every application or, alternatively, in a substantial number of applications. The operative complaint (Doc. 14) and notice of relevant court records (Doc. 85) show I overcame this burden on the well-pled facts and the applicable law. Fortunately, the Arizona supreme court settled this legal framework per *Ariz. Republican Party v. Richer*, 257 Ariz., 210 (2024). (Doc. 14, 128-131). Analyzing the plainly legitimate (i.e., demonstrably lawful) sweep of § 12-3201(E) expressly calls to A.R.S. § 12-349 where *Richer* found § 12-3201(E)(1)(c) language addresses no more than "groundless" (i.e., baseless)[5] suits brought or defended "without substantial justification" (i.e., in negligent fashion judged against "what a reasonable attorney would do")[6] while the other provisions provide independent mechanisms to evaluate "<u>separate</u> bad faith" in the form of the § 12-3201(E)(1)(a)[7] subjectively motivated[8] purpose of harassment, or any § 12-3201(E)(1)(b), (d), or (e) objectively motivated[9]

---

[5] *See* Black's Law Dictionary (7th Ed, 1999) ("baseless" means "without legal or factual basis; groundless").

[6] *See* A.R.S. § 12-3201(E)(2) ("'Without substantial justification' has the same meaning prescribed in section 12-349"); A.R.S. § 12-349 ("For the purposes of this section, 'without substantial justification' means that the claim or defense is groundless and is not made in good faith"). The term "without substantial justification" is functionally equivalent to the term "objectively baseless".

[7] In addition to the overbreadth claim, I included a claim that § 12-3201(E)(1)(a) and (c) provisions are impermissibly vague for, among other things, not identifying the number of "court actions" required before certain conduct becomes actionable. (Doc. 14 at 199, 201). "[F]acial vagueness challenges are appropriate if the statute clearly implicates [First Amendment] rights ... When First Amendment freedoms are at stake, courts apply the vagueness analysis more strictly, requiring statutes to provide a greater degree of specificity and clarity than would be necessary under ordinary due process principles." *Cal. Teachers Ass'n v. State Bd. of Educ.,* 271 F.3d 1141, 1149-50 (9th Cir. 2001). "'The terms of a law cannot require wholly subjective judgments without statutory definitions, narrowing context, or settled legal meanings.' As for the arbitrary enforcement theory of unconstitutional vagueness, a law is void for vagueness if it 'lack[s] any ascertainable standard for inclusion and exclusion,' thereby authorizing or encouraging 'the authorities [to] arbitrarily prosecute one class of persons instead of another.'" *Tucson v. City of Seattle,* 91 F.4th 1318, 132-3- (9th Cir. 2024) (internal citations omitted).

[8] A.R.S. § 12-3201(E)(1)(a) ("Repeated filing of court actions solely or primarily for the purpose of harassment") presents the lone specific type of possible <u>subjectively</u> motivated improper purpose (i.e.., subjective bad faith) "separate" from a suit's objective merits. *Richer* established "harassment" in this context reflects ordinary language generally indicating annoyance rather than a legal term of art which inherently considers the "legitimate purpose" of bringing a meritorious lawsuit. *See United States v. Cabaccang,* 332 F.3d 622, 626 (9th Cir.2003) (en banc) ("When Congress does not define a term in a statute, we construe that term 'according to [its] ordinary, contemporary, common meaning[].'"); *see also* Black's Law Dictionary (12th ed. 2024) ("Harassment" means "[w]ords, conduct, or action . . . that, being directed at a specific person, annoys, alarms, or causes substantial emotional distress to that person and serves no legitimate purpose"). At bottom, *Richer* held § 12-3201(E)(1)(a) does not include consideration for the presence of an objectively baseless suit as the First Amendment requires. *See USS-POSCO*, 31 F.3d at 811 ("Only if the suit is found to be objectively baseless does the court proceed to examine the litigant's subjective intent.").

[9] A.R.S. §§ 12-3201(E)(1)(b) ("<u>Unreasonably</u> expanding or delaying court proceedings"), (d) ("A pattern of making <u>unreasonable</u>, repetitive and excessive requests for information"), and (e) ("A pattern of

improper purpose.[10]  *Richer*, 257 Ariz. at 222-23, ¶¶ 37-44 (emphasis added).  To construe those provisions otherwise would wrongly render A.R.S. § 12-3201(E)(1)(c) "superfluous".[11]  *Id* at ¶ 37.  This construal "extricates [Arizona] courts from the morass of attempting to discern the subjective motives of attorneys and parties in bringing a case and avoids conflating motive and the objective reasonableness of litigation".  *Id* at ¶ 40.  In the end, *Richer* ensured no § 12-3201(E)(1)(a)-(f) provision can be construed to regulate suits that are *both* objectively baseless *and* subjectively motivated by an unlawful (i.e., improper) purpose.  Critically, *Richer* binds the parties and the Court on this statutory construal.  *See Commissioner v. Estate of Bosch,* 387 U.S. 456, 465 (1967) ("state law as announced by the highest court of the State is to be followed [in federal courts since] [t]he state's highest court is the best authority on its own law").  Therefore, as a matter of settled law, the challenged statute prohibits or regulates core "petitioning" and "conduct incidental" considered together to be "protected petitioning activity or ['incidental'] activity which must be protected to afford breathing space to the right of petition guaranteed by the First Amendment".  *Sosa*, 437 F.3d at 933.  Put another way, *all Moody* "activities ... [that §§ 12-3201(E)(1)(a)-(f) provisions] prohibit or otherwise regulate" are *all Sosa* "activit[ies] which

---

making *unreasonable*, repetitive and excessive requests for information") each present an *objectively* motivated improper purpose (i.e., objective bad faith), not a *subjectively* motivated improper purpose (i.e., subjective bad faith) since the legal standard for determining what a "reasonable" attorney or person would do is objective, not subjective.  A "subjectively motivated" litigant must be proven to have "subjective intent" to achieve an improper purpose.  *See Professional Real Estate Investors, Inc. v. Columbia Pictures Industries, Inc.*, 508 U.S. 49, 60-61 (1993).  But an "objectively motivated" litigant has negligently acted in a way that no reasonable attorney would have acted although the associated conduct lacks the requisite *mens rea* element to rise to the level of subjective intent to do a wrong.
[10] A.R.S. §§ 12-3201(b) ("Unreasonably expanding or delaying court proceedings"), (d) ("Engaging in abuse of discovery or conduct in discovery that has resulted in the imposition of sanctions against the pro se litigant"), (e) ("A pattern of making unreasonable, repetitive and excessive requests for information"), and (f) ("Repeated filing of documents or requests for relief that have been the subject of previous rulings by the court in the same litigation") reference "conduct incidental to a petition" (i.e., motion practice, settlement communications, etc.) which is protected under the Petition Clause "unless the underlying petition itself fell outside" those protections.  *Sosa*, 437 F.3d at 936.  These four subsections thus require an objectively baseless "court action" (i.e., lawsuit) before any associated conduct could fall outside the Petition Clause's protections.  Accordingly, like § 12-3201(E)(1)(a), none of the § 12-3201(b) and (d)-(f) subsections can be read to include the requisite "objectively baseless" element because to do so would render § 12-3201(E)(1)(c) "superfluous" per *Richer,* 257 Ariz. at ¶ 37.  *See USS-POSCO*, 31 F.3d at 811 ("Only if the suit is found to be objectively baseless does the court proceed to examine the litigant's subjective intent.").  Rather than actionable "vexatious conduct", these subsections reach, and wrongly prohibit, constitutionally protected *Sosa* "conduct incidental to a petition".
[11] "[C]ourts must presume that a legislature says in a statute what it means and means in a statute what it says there."  *Conn. Nat'l Bank v. Germain,* 503 U.S. 249, 253-54, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992).  Should a statute's language be reasonably susceptible to differing interpretations, courts turn to canons of "statutory construction" to determine legislative intent, including the "anti-surplusage" canon which holds "that legislative enactments should not be construed to render their provisions mere surplusage."  *Am. Vantage Cos. v. Table Mountain Rancheria,* 292 F.3d 1091, 1098 (9th Cir.2002); *see also Boise Cascade Corp. v. EPA,* 942 F.2d 1427, 1432 (9th Cir.1991) (Courts "must interpret statutes as a whole, giving effect to each word and making every effort not to interpret a provision in a manner that renders other provisions of the same statute inconsistent, meaningless or superfluous.").

must be protected" under the Petition Clause. As I sufficiently pled, A.R.S. §§ 12-3201(E)(1)(a)-(f) all reach constitutionally protected activities and are ultimately void for violating the Petition Clause "in every application". Per *Hansen*, I carried my burden at the dismissal stage (and beyond) to demonstrate "that *no set of circumstances* exists under which [any § 12-3201(E)(1)(a)-(f) provision] would be valid'" as a matter of law.

Should there be any imaginable constitutional application of the challenged statute, I also factually demonstrated via court records that the statute was unconstitutional in "a substantial number of applications" (85% of cases) where only a small number of "applications" (15% of cases) involved *incidental* co-occurring violations of *both* a § 12-3201(E)(1)(c) court action "without substantial justification" (i.e., objectively baseless) *and* a § 12-3201(E)(1)(a) court action filed for "purpose of harassment" (i.e., subjectively motivated by an improper purpose). (Doc. 85). Although the statute does not contemplate self-represented litigants to be found vexatious for co-occurring violations, even my generous reading of court records show past applications are unconstitutional in a vast majority of instances even when incidental co-occurring violations are included in the analysis. *See Tucson v. City of Seattle,* 91 F.4th 1318, 1328 (9th Cir. 2024) ("In determining whether an unconstitutional application is realistic, courts may consider whether that application has occurred in the past."). In other words, although the statute only proscribes the disjunctive prosecution of objectively baseless "court actions" *or* "filing of court actions" subjectively motivated by improper harassment purposes *or* court filings objectively motivated by improper purposes, a small number of pro se litigants filed objectively baseless suits *and* did so for subjectively motivated improper purposes of "conflated" harassment as *Richer*, 257 Ariz. at ¶ 40 put it.

Beyond factually evaluating past applications for overbreadth, courts are also instructed to consider hypothetical applications which are "realistic, not fanciful". *Hansen,* 599 U.S. at 770, 143 S.Ct. 1932. Under that requirement, I pled that pro se litigants can defeat all future applications of § 12-3201 by asserting *Noerr-Pennington* immunity as an affirmative defense. (Doc. 14 at 124-139). *See 360 Mortg. Grp., LLC v. Fortress Inv. Grp. LLC,* No. 19-CV-8760, 2020 WL 5259283, at *4 (S.D.N.Y. Sept. 3, 2020) ("The *Noerr-Pennington* doctrine is generally raised as an affirmative defense"). "Under the *Noerr-Pennington* doctrine, those who petition any department of the government for redress are generally immune from statutory liability[12] for their petitioning conduct. ... [The] doctrine stands for a generic rule of statutory construction, applicable to any statutory interpretation that could implicate the rights protected by the Petition Clause." *Sosa*, 437 F.3d at 929-31; *see also White v. Lee*, 227 F.3d 1214, 1239 (9th Cir. 2000) ("The *Noerr-Pennington* doctrine sharply limit[s] [government] officials' ability to treat [] state-court lawsuit[s] as a possible violation of law"). "To determine whether a [litig]ant's conduct, ..., is immunized under *Noerr-Pennington,* we apply a three-step analysis to determine: (1) 'whether

---

[12] "Liability" means "[t]he quality, state, or condition of being bound or obliged by law or justice to do, pay, or make good something; legal responsibility to another or to society". Black's Law Dictionary (11th Ed., 2019).

the lawsuit imposes a burden on petitioning rights,' (2) 'whether the alleged activities constitute protected petitioning activity,' and (3) 'whether the statute[] at issue may be construed to [avoid] that burden.' If the answer at each step is 'yes,' then a defendant's conduct is immunized under *Noerr-Pennington*." *B&G Foods N. Am., Inc. v. Embry*, 29 F.4th 527, 536 (9th Cir. 2022). As to that first step, any § 12-3201(A) motion requesting a § 12-3201(B) "pre-clearance requirement imposes a substantial burden on the free-access guarantee". *Ringgold-Lockhart v. County of Los Angeles,* 761 F.3d 1057, 1061-62 (9th Cir. 2014). The "focus at step two" is on whether disputed activities qualify as "*protected* petitioning activity". *B&G Foods*, 29 F.4th at 536 (emphasis original). Here, those activities are "vexatious conduct" as defined in §§ 12-3201(E)(1)(a)-(f) which, again, are constitutionally "protected" as core "petitioning activity" or as "conduct incidental to a petition" which are not subject to the "sham exception". *Sosa*, 437 F.3d at 933. Moving to third step, the *Noerr-Pennington* doctrine immunizes all instances of "vexatious conduct" as a matter of constitutional law because, per *Richer*, each § 12-3201(E)(1)(a)-(f) provision can be, and definitively has been, "construed to [avoid] that [First Amendment] burden". *B&G Foods*, 29 F.4th at 536. Because every pro se litigant accused in any and every § 12-3201(A) motion of engaging in "any" § 12-3201(E) "vexatious conduct" can successfully assert *Noerr-Pennington* immunity, A.R.S. § 12-3201 is "patently unconstitutional" in every application and, most certainly, in at least substantial number of applications. *See Saenz v. Roe,* 526 U.S. 489, 499 n.11, 119 S.Ct. 1518, 143 L.Ed.2d 689 (1999) ("If a law has no other [demonstrable] purpose ... than to chill the assertion of constitutional rights by penalizing those who choose to exercise them, then it is patently unconstitutional.").

At the pleading stage, I have demonstrated (1) standing to sue Attorney General Mayes[13] and Presiding Judge Gates[14]; and (2) the statute reaches constitutionally protected activities and is

---

[13] The Attorney General initially attacked "redressability" in her Fed. R. Civ. P. 12(b)(1) motion positing that "an order enjoining AG Mayes from enforcing A.R.S. § 12-3201 would have no practical effect because courts could still impose prefiling requirements on vexatious litigants. As discussed, while prosecution is unlikely, any such prosecution would be more likely to come from a county attorney than from AG Mayes." (Doc. 38). This position acknowledged at least a "scintilla" of enforcement connection to the statute, undercutting any possible sovereign immunity defense. (Doc. 49). The Attorney General has since reframed her redressability defense to argue § 12-3201 "contains no enforcement provision relevant to AG Mayes" and therefore no "credible threat of enforcement" exists to invoke standing. (Doc. 69). But she expressly does not "disavow" enforcement of that statute, or any provision of that statute, which she previously admitted both she and "county attorneys" could enforce, although county attorneys "would be more likely" to enforce. The Attorney General's defenses show she has no sovereign immunity and Plaintiff has standing to bring suit against her to enjoin civil and/or criminal enforcement of the challenged statute. *See LSO, Ltd. v. Stroh*, 205 F.3d 1146, 1154-55 (9th Cir. 2000) (When the case "implicates First Amendment rights, the inquiry tilts dramatically toward a finding of standing".).

[14] Administrative Order 2023-159 was discovered during this litigation. (Doc. 72). Maintaining that patently unconstitutional administrative order causes me ongoing actual injuries, is traceable to the Presiding Judge, is redressable by a favorable ruling, "exceed[s] the bounds of reasonable governmental action and violate[s] [my] First Amendment rights." *White,* 227 F.3d at 1231. Presiding Judge Gates' Fed. R. 12(b)(1) reliance on "judicial immunity" (Doc. 67) therefore fails since, per the Ninth Circuit, "absolute judicial immunity does not apply to nonjudicial acts, i.e. the administrative, legislative, and

unconstitutional in every application. Should there be a scenario where a constitutional application exists, I also sufficiently pled the statute is unconstitutional in a substantial number of applications. And "[i]f the challenger demonstrates that the statute 'prohibits a substantial amount of protected [First Amendment expression]' relative to its 'plainly legitimate sweep,' then society's interest in free expression outweighs its interest in the statute's lawful applications, and a court will hold the law facially invalid." *Hansen,* 599 U.S. at 770, 143 S.Ct. 1932. In sum, the statute is facially invalid for being unconstitutional in every application or at least in a substantial number of applications demonstrated via the statute's text, existing records of past applications, and all realistic scenarios of future applications. *See Hicks,* 539 U.S. at 122, 123 S.Ct. 2191) (plaintiff can plead a law is substantially unconstitutional "from actual fact").

The burden has now shifted to your "government" clients to show <u>on the proofs</u> that the statute can be "fairly" construed to avoid First Amendment safeguards, or that the statute is "narrowly" tailored to serve a sufficient (i.e., "significant" or "compelling"] "government interest" based on the proper level of scrutiny due. *Reno v. American Civil Liberties Union,* 521 U.S. 844, 884 (1997) ("The Government has the burden of proving that a construction narrowing the statute to constitutionally permissible applications is 'fairly possible.'"); *United States v. Playboy Entertainment Group, Inc.*, 529 U.S. 803, 816-17 (2000) ("When the Government restricts [protected expression], the Government bears the burden of proving the constitutionality of its actions. … If a statute regulates [expression] based on its content, it must be narrowly tailored to promote a compelling Government interest. If a less restrictive alternative would serve the Government's purpose, the legislature must use that alternative. ... The Government has not met that burden here."); *McCullen v. Coakley,* 573 U.S. 464, 495, 134 S.Ct. 2518, 189 L.Ed.2d 502 (2014) ("To meet the requirement of narrow tailoring, the government must demonstrate that alternative measures that burden substantially less speech would fail to achieve the government's [significant] interests, not simply that the chosen route is easier.); *see also Porter v. Martinez,* 68 F.4th 429, 438 (9th Cir. 2023) ("In 'quintessential public forums' such as [courts][15], streets, parks, and other 'places which by long tradition ... have been devoted to assembly and debate, the rights of the state to limit expressive activity are sharply circumscribed.' 'The government bears the burden of justifying the regulation of expressive activity in a public forum.'"). Neither Presiding Judge Gates nor Attorney General Mayes will be able to carry the government's burden to demonstrate narrow tailoring, significant or compelling government interests, or least

---

executive functions that judges may on occasion be assigned to perform." *Duvall v. County of Kitsap*, 260 F.3d 1124, 1134 (9th Cir. 2001); *see also Glazer v. State,* 237 Ariz. 160, 164 ¶ 10, 347 P.3d 1141, 1145 (2015) (For state officials in Arizona, "the rule is liability and immunity is the exception."). Presiding Judge Gates' immunity defense raises a factual dispute not amenable to dismissal at the pleading stage. *See Arizona v. Mayorkas,* 600 F. Supp. 3d 994, 1004, n.2 (D. Ariz. 2022) ("'[W]here the jurisdictional issue and substantive issues are so intertwined that the question of jurisdiction is dependent on the resolution of factual issues going to the merits,' in which case 'the jurisdictional determination should await a determination of the relevant facts on either a motion going to the merits or at trial.'").
[15] A "court is a public forum". *Universal Entertainment Corp. v. Aruze Gaming America, Inc.* (D. Nevada January 17, 2023).

restrictive alternative. *See Mountain States Tel. & Tel. Co. v. Arizona Corp. Comm'n*, 160 Ariz. 350, 357, 773 P.2d 455, 463 (1989) ("[G]overnmental convenience [including purported administrative efficiency] and certainty cannot prevail over constitutionally guaranteed rights."). I have raised significant questions going to this First Amendment overbreadth claim, and I am confident I will eventually prevail on the merits.

TEMPORARY RESTRAINING ORDER / PRELIMINARY INJUNCTION

"The Supreme Court has explained that plaintiffs seeking a preliminary injunction must establish that (1) they are likely to succeed on the merits, (2) they are likely to suffer irreparable harm absent preliminary relief, (3) the balance of equities tips in their favor, and (4) an injunction is in the public interest." *Where Do We Go Berkeley v. California Dep't of Transportation,* 32 F.4th 852, 859 (9th Cir. 2022) (citing *Winter v. Nat. Res. Def. Council, Inc.,* 555 U.S. 7, 20 (2008)). Factors three and four "merge when [as here] the Government is the opposing party". *Nken v. Holder,* 556 U.S. 418, 435, 129 S.Ct. 1749, 173 L.Ed.2d 550 (2009). Further, the Ninth Circuit employs a "sliding scale" approach to the four *Winter* factors, under which a strong showing on the balance of hardships may compensate for a lesser showing of likelihood of success. *See Where Do We Go Berkeley,* 32 F.4th at 859. That said, in cases arising under the First Amendment, showing a "likelihood of success on the merits" generally results in a finding that the three remaining *Winter* factors are satisfied as well. *See Am. Beverage Ass'n v. City & Cnty. of San Francisco,* 916 F.3d 749, 757-58 (9th Cir. 2019). Where a plaintiff has made "a colorable First Amendment claim, they have demonstrated that they likely will suffer irreparable harm". *Id.* at 758. In addition, a finding that a plaintiff has raised a "serious" First Amendment question compels a finding that the balance of hardships tips sharply in their favor. *Id.* Finally, there is a "significant public interest in upholding First Amendment principles," and "it is always in the public interest to prevent the violation of a party's constitutional rights." *Id.* (internal quotation marks and citations omitted); *Ariz. Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1069 (9th Cir. 2014) ("by establishing a likelihood that [the challenged statute] violates the U.S. Constitution, Plaintiff[] ha[s] also established that both the public interest and the balance of the equities favor [injunctive relief]").

On the merits, and as explained above, the U.S. Supreme Court's holding in "*BE & K* made ... explicit" that the Petition Clause safeguards "protected petitioning activities" (i.e., all core "petitioning" and all "conduct incidental to a petition") unless the underlying "suit[] [is] both objectively baseless *and* subjectively motivated by an unlawful purpose", in conjunctive fashion. In *Richer*, the Arizona supreme court relied on the "anti-surplusage canon" when construing statutory language to find no § 12-3201(E)(1)(a)-(f) provision meets that conjunctive legal standard. Instead, § 12-3201(E)(1)(c) proscribes objectively baseless "court actions" but does not include any "separate bad faith" subjectively improper purposes such as § 12-3201(E)(1)(a) "harassment". And § 12-3201(E)(1)(a) "harassment" does not include or subsume the element of § 12-3201(E)(1)(c) objectively baseless "court actions" because to do so would render that latter provision "superfluous". For that same reason, §§ 12-3201(E)(1)(b), (d), (e), and (f) do not

10

include or subsume objectively baseless "court actions". Based on the *Richer* binding precedent, the challenged statute reaches, abridges, punishes, prohibits, otherwise regulates, and chills "protected petitioning activities" "in every application". Given the statute prohibits and regulates conduct entirely within the Petition Clause's broad protections, pro se litigants can claim *Noerr-Pennington* immunity to defeat each and every A.R.S. § 12-3201(A) motion. *See Sosa*, 437 F.3d at 929 (The Supreme "Court... extended *Noerr-Pennington* immunity to the use of 'the channels and procedures of state ... courts.'"). Your clients have not argued to save, and cannot save, the statute on the basis that it is narrowly tailored, meets a significant or compelling government interest, or is the least restrictive option available. Indeed, the § 12-3201(B) mandatory blanket injunction functions as an indiscriminate "prior restraint" on a First Amendment right of expression. *See Bantam Books, Inc.* v. *Sullivan,* 372 U. S. 58, 70 (1963) ("Any system of prior restraints of expression comes to this Court bearing a heavy presumption against its constitutional validity."). In sum, each *Winter* factor favors a temporary restraining order and preliminary injunction on the current record.

CONCLUSION

Please let me know before close of business on **November 28, 2025** if either, or both, of your clients will agree to not administratively, civilly, or criminally enforce A.R.S § 12-3201. Again, I would like to convey to the Court that, until the case is decided, Presiding Judge Gates has agreed to exercise her administrative authority and rescind Administrative Order 2023-159 while Attorney General Mayes has agreed to exercise her prosecutorial authority and not civilly or criminally prosecute, or aid in any such prosecution, of any perceived § 12-3201 violation. Beyond that, my hope is that your clients will recognize the challenged statute violates the First Amendment, abandon any defense of A.R.S. § 12-3201, and use this case to re-affirm their Ariz. Const. art. 6, § 27 and A.R.S. § 38-231 oaths of office to "support the Constitution of the United States". *See* U.S. Const. Amend. I (there shall be "no law ... abridging ... the right of the people ... to petition the Government for a redress of grievances"); U.S. Const. amend. XIV ("No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States"); *see also* Ariz. Const. art. 2, § 5 ("The right of petition, ..., shall never be abridged"). Feel free to contact me with any questions.

Regards,

Phillip Potter
2301 N. 66th Street
Scottsdale, AZ 85257
480-459-0310
phillip.t.potter@gmail.com