Phillip Potter
2301 N. 66th Street
Scottsdale, Arizona 85257
Phone: 480.459.0310
E-Mail: phillip.t.potter@gmail.com
Plaintiff
Pro Se

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Phillip Potter,<br><br>      Plaintiff,<br><br>v.<br><br>Robert Meza, et al.,<br><br>      Defendants. | No. 2:25-cv-00663-PHX-DWL<br><br>**MOTION FOR RECONSIDERATION RE: ATTORNEY GENERAL MAYES**<br><br>(Oral Argument Requested) |

A motion for reconsideration may be brought pursuant to Fed. R. Civ. P. 59(e) or 60(b). *Taylor v. Knapp*, 871 F.2d 803, 805 (9th Cir. 1989). Such motions may be filed within twenty-eight days of entry of an appealable decision. *See Am. Ironworks & Erectors*, *Inc. v. N. Am. Constr. Corp.,* 248 F.3d 892, 898-99 (9th Cir. 2001). Local Rules requires these motions be filed within fourteen days where a non-final decision being rendered. LRCiv. 7.2(g). Based on "clear error", Plaintiff timely asks the Court to reconsider its Order dismissing Arizona Attorney General Mayes. (Doc. 100).

I. The Court Should Reconsider

Plaintiff alleges the Attorney General is but one member of a collection of statutorily authorized state officials and private persons who have threatened him, and continue to threaten him, with irreparable injuries suffered through the operation and enforcement of two "unconstitutional act[s] of the state legislature" where Plaintiff has "go[ne] into a Federal court [], in a case involving a violation of the Federal Constitution, and [seeks to] obtain[] a judicial investigation of the problem[s], and pending its solution [to] obtain freedom from suits, civil or criminal, by a temporary injunction, and, if the question[s] be finally decided favorably to the contention of the [plaintiff], a permanent injunction restraining all such actions or proceedings." *Ex parte Young,* 209 U.S. 123, 149 (1908). Seeking declaratory relief and prospective injunctive relief, Plaintiff brought the Attorney General to suit to mount First Amendment facial challenges to A.R.S. §§ 12-3201 ("Count One"; Doc. 14 at ¶¶ 113-207) and 13-2921 ("Count Two"; Doc. 14 at ¶¶ 208-214) for overbreadth and vagueness. In a non-final decision, the Court dismissed those claims against Arizona Attorney General Kris Mayes for lack of standing "to raise a facial challenge to § 12-3201 based on his fear of future prosecution by AG Mayes under other statutes" (Doc. 100, p. 31) and for lack of standing for failing "to meet his burden

1

of establishing that he has standing to pursue a pre-enforcement challenge to the constitutionality of A.R.S. § 13-2921." (Doc. 100, p. 36). This is "clear error" in both instances. Ninth Circuit decisions, including a very recently released opinion directly on point, expressly address these issues of standing, including pre-enforcement injury in a First Amendment facial challenge where the fear of prosecution stretches across multiple statutes. Specifically, *Am. Encore v. Fontes,* 152 F.4th 1097 (9th Cir. 2025) controls.

A. Legal Standard

A motion for "[r]econsideration is appropriate if the district court (1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law." *Sch. Dist. No. 1J v. AC and S, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993).

B. There Was Clear Error In Deciding Count One

The Court wrestled with the questions of standing and pre-enforcement injury, in particular. (Doc. 47). Ultimately, it found "Plaintiff has not identified, nor has the Court located, any authority that would allow him to invoke the pre-enforcement framework where the statute he seeks to challenge on constitutional grounds is not the statute under which he fears criminal prosecution." (Doc. 100, p. 30). The Ninth Circuit authority confirming Plaintiff's standing to challenge a state civil law based on credible fear of criminal prosecution under a separate state criminal statute is *Am. Encore v. Fontes,* 152 F.4th 1097 (9th Cir. 2025). Of note, (1) Attorney General Mayes was an *Am. Encore* defendant; and (2) the Ninth Circuit issued this opinion on September 16, 2025, more than two months after Plaintiff responded (Doc. 49) to the Attorney General's dismissal motion in this case (Doc. 38), and three months after the Court issued a tentative ruling on these same issues in the form of a June 20, 2025 injunction denial. (Doc. 47).

2

1. The Court Committed Clear Error To Find Plaintiff Lacked Standing

The Court found no standing since "the threatened prosecution must be contained within the same statute proscribing the alleged conduct".[1] (Doc. 100, p. 30). *Am. Encore*

---

[1] A Google Scholar search of federal cases containing this phrase produced two results – the "*Splonskowski v. White*, 714 F. Supp. 3d 1099, 1104 (D.N.D. 2024)" case cited in the Order and the Court's December 16, 2025 Order itself, indicating the phrase is *dicta* at best. The phrase is also inapplicable to the facts of this case. As "Burleigh County Auditor", Mr. Splonkowski sought to challenge portions of "North Dakota's ballot receipt and counting requirements". He believed adhering to North Dakota state law on that subject would put him at risk for federal criminal prosecution. The plaintiff voiced an "intent to choose federal law and disregard state law". *Id* at 1102. That court found plaintiff "fail[ed] to allege a constitutional interest", much less a First Amendment interest. *Id* at 1104. Instead, seeking to cripple the state's ballot counting law, that plaintiff alleged following that civil law in the natural course of his state employment would put him at odds with federal criminal law. This was Mr. Splonkowski's "bank-shot". (Doc. 100, p. 30). At bottom, refusing to perform the ministerial tasks he was required to perform as part of his state government position did not create a 42 U.S.C. § 1983 First Amendment case no matter how creatively his legal team tried to conjure the threat of an imagined federal prosecution. Likewise, a New York district court found Mr. "Kearns' [state] role in the issuance of driver's licenses is purely ministerial and concluded that he failed to plausibly allege a scenario where he would have any personal interaction with a standard-license applicant so as to expose him to criminal liability" under a federal statute, the "Immigration and Nationality Act". *Kearns v. Cuomo*, 415 F. Supp. 3d 319 (W.D.N.Y. 2019), *aff'd*, 981 F.3d 200 (2d Cir. 2020). As such, "Kearns had failed to plead either a credible threat of prosecution for complying with the state law or an injury to his office." *Id*. Also like *Splonskowski*, *Kearns* raised no constitutional issue, much less a First Amendment claim. (Doc. 100, p. 29). These same litigation dynamics appear in "*Mohr v. Erie Cnty. Legislature*, 2023 WL 3075956, *6 (W.D.N.Y. 2023)". (Doc. 100, p. 30). Mr. Mohr, as "one of two Election Commissioners on the Erie County Board of Elections", sought to have local district boundaries redrawn out of supposed fear that performing his associated ministerial tasks "would be aiding and abetting voter fraud" somehow in violation of the "Due Process Clause". That district court dismissed, finding there was no credible threat and, therefore, no pre-enforcement injury. At bottom, Mr. Mohr's, Mr. Kearns', and Mr. Splonkowski's imagined fears of federal prosecution for performing ministerial state tasks were too "chimerical" to be deemed a "credible threat of prosecution". *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 151 (2014). Those common facts and party dynamics do not appear in this case, meaning those Second Circuit and Eighth Circuit authorities do not apply. The Court also cited to "*Penkoski v. Bowser*, 548 F. Supp. 3d 12, 30 (D.D.C. 2021)" from the DC Circuit. Alleging a First

*v. Fontes,* 152 F.4th 1097 (9th Cir. 2025) is the applicable, controlling Ninth Circuit authority that allows Plaintiff "to invoke the pre-enforcement framework where the statute he seeks to challenge on constitutional grounds is not the statute under which he fears criminal prosecution." In *Am. Encore*, Arizona state officials, including Attorney General Mayes, as she does here, challenged those plaintiffs' standing to void legislation on the basis that they "failed to show a specific or credible threat of enforcement of the [challenged] Speech Provision[2] against them." *Am. Encore v. Fontes,* 152 F.4th at 1113. The district court and the Ninth Circuit disagreed. Critically, and dispositively, the Ninth Circuit held that the "Speech Provision" could be challenged on First Amendment grounds, and a credible threat of enforcement was demonstrated, on the basis that conduct proscribed by that provision could be criminally prosecuted under separate criminal statutes not contained within the challenged provision. Specifically, and tellingly, Attorney General Mayes acknowledged criminal "prosecutions by our office"

---

Amendment claim, those plaintiffs took issue with a Black Lives Matter "Mural" erected on government grounds. That district court held the Mural constituted permissible "Government Speech", not a "public forum". Thus, no First Amendment right of citizens who objected to that government speech was actually implicated. Seeking to conjure a pre-enforcement injury, plaintiffs alleged "the Mayor's 'decision to authorize construction of' the Mural 'directly injured' them by 'entitl[ing] BLM members to harass, stalk, threaten, libel, and harm' them." The court found any such potential criminal violations, and plaintiff's resulting injuries, were irrelevant because the violations and resulting injuries would "stem from third-party 'BLM Members'" actions rather than from private parties authorized to act on the state's behalf. In sum, the *Penkoski* plaintiffs did not, and could not, suffer a pre-enforcement injury sufficient to demonstrate standing.

[2] Part of the state's Election Manual, "the Speech Provision provides: Any activity by a person with the intent or effect of threatening, harassing, intimidating, or coercing voters (or conspiring with others to do so) inside or outside the 75-foot limit at a voting location is prohibited." *Am. Encore v. Fontes,* 152 F.4th at 1107. Like A.R.S. § 12-3201(B), the Speech Provision was a piece of legislation that prohibits private persons from engaging in activities arguably related to the expression of First Amendment rights, and whose violation triggers a host of possible civil or criminal allegations.

for engaging in conduct proscribed by the Speech Provision "would be brought under A.R.S. §§ 16-1013 and -1017 or other applicable statutes,". *Id* at 1108. Despite the Speech Provision containing no enforcement mechanism, enforcement via "other" statutes sufficiently established a credible threat in a First Amendment facial challenge. *Id*. Further, just as she admitted in this case (Doc. 47, pp. 11-12), the Attorney General's express admission "that county prosecutors may also enforce the [Speech] [P]rovision" through criminal statutes housed outside the challenged provision only enhanced the threat's credibility. *Id*. In the end, the entirety of the state's pertinent statutory scheme must be considered when evaluating the credible threat component for a pre-enforcement injury, not just the challenged statute when standing to bring a First Amendment facial challenge is presented. And every statutorily authorized enforcer or prosecutor, including all state officers and private persons, are evaluated "collectively" in the credible threat analysis.[3] *Id* at 1113-1119.

---

[3] Consistent with the "collective" approach to *Ex parte Young*, in deciding whether a set of criminal laws known as the "Reason Regulations" withstood constitutional muster, the Ninth Circuit previously found a credible threat was demonstrated based on state officers' direct connections to those provisions and other state officers' indirect connection to the enforcement of related, but separate, civil and administrative statutes. Those indirect connections enabled numerous state officials to potentially take injurious action should plaintiffs engage in conduct proscribed by the Reason Regulations. Analyzing the entirety of pertinent Arizona statutes, read in conjunction, the Ninth Circuit approvingly permitted plaintiffs to bring those indirect enforcers to suit pursuant to what it referred to as the "Reason Scheme" of comprehensive enforcement. The circuit recognized "Attorney General [Mayes] is only one of the many enforcers of the Reason Scheme – including the Arizona Department of Health Services, the Arizona Medical Boards, and the County Attorneys". Ultimately, the Ninth Circuit held "[t]he *combination* of these potential threats – from the county attorneys, the Arizona health agencies, and private parties - satisfies the third prong of *Driehaus* and is sufficient to allege an imminent future injury." *Isaacson v. Mayes*, 84 F.4th 1089, 1109-11 (9th Cir. 2023). The *Isaacson* plaintiffs suffered pre-enforcement injuries and, therefore, had standing to sue every direct and indirect enforcer of the challenged Reason Regulations.

The *Am. Encore* "collective" premise can be seen in *Whole Woman's Health v. Jackson*, 595 U.S. 30 (2021) where the First Amendment was not the driving constitutional force. In that case, which alleged the challenged statute (the "Act") created "an 'undue burden' on women seeking abortions" in violation of the Fourteenth Amendment, *Id* at 34, Texas abortion providers challenged "S.B. 8. The Act prohibits physicians from 'knowingly perform[ing] or induc[ing] an abortion on a pregnant woman if the physician detected a fetal heartbeat for the unborn child' unless a medical emergency prevents compliance. But the law generally does not allow state officials to bring criminal prosecutions or civil enforcement actions. Instead, S.B. 8 directs enforcement 'through ... private civil actions' culminating in injunctions and statutory damages awards against those who perform or assist prohibited abortions." *Id* at 34. Presumably to avoid *Ex parte Young* pre-enforcement challenges, and taking advantage of strict limits the state's constitution places on the Texas Attorney General's authority to civilly or prosecute its residents, the Texas Legislature sought to statutorily shield all state officials from the reach of *Ex parte Young* and instead statutorily "'delegate[d]' the enforcement of public policy to private parties and [sought to] reward those who bring suits with 'bount[ies]' like exemplary or statutory damages and attorney's fees." *Id* at 39. Because federal courts cannot "lawfully enjoin the world at large," this legislative strategy enabled individual private parties to disavow enforcement at any point and moot any federal pre-enforcement challenges for lack of an Article III case or controversy. The *Whole Woman's Health* plaintiffs, and other abortion providers proceeding in parallel litigation, sought to challenge the Act but struggled to identify an *Ex parte Young* "proper defendant". The Supreme Court ultimately ruled (1) the Texas Attorney General could not be sued under *Ex parte Young* due to the statute's express language limiting the

office's prosecutorial authority combined with the state constitution's restrictions on the Attorney General's prosecutorial authorities, *Id* at 32; (2) one specific private party could not be sued for prospective relief related to her statutory authority to mount civil prosecutions because she disavowed enforcement, *Id*; and (3) sovereign immunity required dismissal of state judges and a state clerks, although the Article III "case or controversy" requirement also prohibited those state court judges and state court clerks from being sued to prospectively enjoin them from hearing or "docketing S.B. 8 cases", respectively, because doing so would hamper the state's ability to decide "judicial disputes" and would grind the gears of the state court's judicial machinery.  The plaintiffs, however, could proceed against state "executive licensing official[s] who may or must take [administrative] enforcement actions against the petitioners if the petitioners violate the terms of Texas's Health and Safety Code, including S.B. 8." *Id*.  Had those health provider plaintiffs violated the challenged statute's prohibitions on certain conduct, the downstream risk to their medical licenses arising from "collateral" statutes was sufficient to invoke the *Ex parte Young* exception because the challenged Act did not "limit the enforceability of *any other laws* that regulate or prohibit" conduct proscribed by the Act itself. *Id* at 42.  Absent specific language "barring any *collateral* enforcement mechanisms", plaintiffs were able to sue state officials responsible for pre-enforcement injuries resulting from such collateral enforcement. *Id* at 40, n.4.  Describing this as a "residual enforcement authority", Justice Thomas dissented, arguing it was improper to find a pre-enforcement injury can emanate from "these '*other* laws' ... [including] § 164.055 of the Texas Occupations Code."  That said, Justice Thomas limited his dissent to the particular facts of that case, noting he believed the Act's express language and the "collateral" Texas Occupational Code's express language, read together, did preclude the

licensing officials from administratively enforcing conduct proscribed by the Act. In that sense, Justice Thomas recognized that the existence of so-called "collateral enforcement" statutes and associated "residual" enforcement authorities can collectively meet standards to invoke standing under a pre-enforcement injury theory.

This makes sense given the nature and purpose of the *Ex parte Young* exception, which provides "the availability of prospective relief of the sort awarded in *Ex Parte Young* gives life to the Supremacy Clause," as "[r]emedies designed to end a continuing violation of federal law are necessary to vindicate the federal interest in assuring the supremacy of that law." *Green v. Mansour,* 474 U.S. 64, 68 (1985). *Ex parte Young* authorizes private persons to vindicate "federal interests" in "the Supremacy Clause", including, and especially, the ultimate supremacy of the First Amendment when state officials might operate under color of state laws, including under the color of a combination of state laws, to undermine First Amendment rights. *See In re Ellett,* 254 F.3d 1135, 1138 (9th Cir.2001) ("The [Supreme] Court has recognized that the *Ex Parte Young* doctrine is based upon the 'fiction' that a state officer who violates federal law in his official capacity, pursuant to his authority under state law, is nonetheless not a state agent for sovereign immunity purposes. The Court has embraced this fiction to vindicate the supremacy of federal law."). The *Whole Woman's Health* case acknowledges the premise, while *Am. Encore* loudly and directly upholds the premise, that state officials cannot so much as chill, much less prohibit or punish, the exercise of citizens' First Amendment rights via "operation or enforcement" of state legislation. *See Babbitt v. Farm Workers,* 442 U.S. 289, 298 (1979) ("A plaintiff who challenges a statute must demonstrate a realistic danger of sustaining a direct injury as a result of the statute's operation <u>or</u> enforcement".) (Emphasis added). In a First Amendment case, the credible

threat test does not rest on whether the challenged statute contains a punitive provision. Rather, it asks whether the statute, and the totality of its enforcement scheme, "creates a chilling effect on First Amendment conduct." *Id* at 1117 ("But even if the Speech Provision sits outside of the ambit of A.R.S. § 16-452(A), and is not backed by criminal prohibition, it likely still creates a chilling effect on First Amendment conduct."). At bottom, the Court "committed clear error" when concluding "the threatened prosecution must be contained within the same statute proscribing the alleged conduct".

### a. Per *Am. Encore*, Plaintiff Has Standing to Sue the Attorney General

"Article III standing ... 'requires a plaintiff to have [1] suffered an injury-in-fact, [2] caused by the defendant's conduct, that [3] can be redressed by a favorable result.'" *Planned Parenthood Great Nw. v. Labrador*, 122 F.4th 825, 835 (9th Cir. 2024). "For pre-enforcement plaintiffs, the injury is the anticipated enforcement of the challenged statute in the future." *Peace Ranch, LLC v. Bonta,* 93 F.4th 482, 486-87 (9th Cir. 2024).

#### i. Plaintiff Suffers Pre-Enforcement Injuries In a First Amendment Case

The Ninth Circuit has "long recognized that 'First Amendment cases raise unique standing considerations,' ... that 'tilt[] dramatically toward a finding of standing. This is because 'a chilling of the exercise of First Amendment rights is, itself, a constitutionally sufficient injury.' 'Because of the sensitive nature of constitutionally protected expression, we have not required that all of those subject to overbroad regulations risk prosecution to test their rights.'" *Am. Encore,* 152 F.4th at 1113-18 (citations omitted). Pre-enforcement injuries exist "if: '(1) [the plaintiff] ha[s] alleged 'an intention to engage in a course of conduct arguably affected with a constitutional interest;' (2) but the conduct is 'proscribed by a statute;' and (3) 'there exists a credible threat of prosecution'". *Driehaus*, 573 U.S. at 159.

Plaintiff Meets *Driehaus* Factor One:  The "concept of 'intention' [to engage in a course of conduct arguably affected with a constitutional interest] is more counterfactual than practical.  That is to say, courts must ask whether the plaintiff would have the intention to engage in the proscribed conduct, were it not proscribed.'"  *Am. Encore,* 152 F.4th at 1115.  If so, Factor One is met on that point.  Here, Plaintiff alleged his intent to file court pleadings and motion papers absent leave of the court in ongoing court cases, including in those deemed well-founded in state trial and appellate courts, is sufficient to articulate a court of conduct arguably affected with a constitutional interest. (Doc. 14, ¶ 98; Doc. 23, p. 16).  His intent to "engage in First Amendment [petitioning] is sufficient" without the need for any additional specificity "given the vagueness and overbreadth of the [statute] itself".  *Id*.  Factor One is met.

Plaintiff Meets *Driehaus* Factor Two:  For Factor Two, a "plaintiff must only show that their 'future conduct ... [is] 'arguably ... proscribed by [the] statute' it wishes to challenge.'  And for the purposes of standing, we accept Plaintiffs' interpretation of the statute so long as it is an arguable interpretation."  *Id* at 1116. "Arguable" simply means "susceptible to debate, challenge, or doubt; questionable." *U.S. v. Rodriguez*, 398 F.3d 1291, 1304 (11th Cir. 2005).  Plaintiff facially challenges § 12-3201.  Under his interpretation of the statute, Plaintiff's stated intention to file court papers in ongoing litigation absent prior court approval is more than "arguably proscribed" by § 12-3201(B) ("A pro se litigant who is designated a vexatious litigant may not file a new pleading, motion or other document without prior leave of the court.").  Accordingly, Plaintiff meets *Driehaus* Factor Two.

Plaintiff Meets *Driehaus* Factor Three:  *Am. Encore* saw a portion of Arizona's Election Procedural Manual struck down for violating the First Amendment

where plaintiffs largely had standing because conduct proscribed in that manual made a person "subject to criminal liability" based on separate criminal statutes where authorized private persons and/or other state officers could "nonetheless report [litigants] to police" for criminal "harassment" due to engaging in conduct proscribed under the challenged statute.[4] *Am. Encore,* 152 F.4th at 1115. This just reiterates the point that a plaintiff needs only "show[] a credible threat of adverse government action" from any source, including authorized private persons, in response to conduct proscribed by the statute. *Id*.

"In determining whether a plaintiff has shown a credible or substantial threat of enforcement, we have identified a number of factors that may support the reasonableness of a plaintiff's fear of prosecution. These include: (1) 'whether the enforcement authorities have 'communicated a specific warning or threat to initiate proceedings,' (2) whether the enforcing authority has disavowed enforcement, and (3) 'whether there is a history of past prosecution or enforcement'. Ultimately, the touchstone of our inquiry is whether Plaintiffs have adduced enough evidence to show that there is a realistic threat that the law in question may be enforced against them. ... In evaluating the threat of enforcement, we look to 'the threat posed *collectively* by the entire 'universe of potential complainants.'" *Am. Encore,* 152 F.4th Id at 1118-19 (emphasis original); *see also White v. Lee,* 227 F.3d 1214, 1228 (9th Cir. 2000) ("Informal measures, such as 'the threat of invoking legal sanctions and other means of coercion, persuasion, and intimidation,' can violate the First Amendment also." (quoting *Bantam Books, Inc. v. Sullivan,* 372 U.S. 58, 67, 83 S.Ct. 631, 9 L.Ed.2d 584 (1963)).

---

[4] Language contained in A.R.S. § 12-2810(A)(2) and in § 13-2921 does not prohibit state officials or private parties from civilly or criminally prosecuting Plaintiff for engaging in First Amendment conduct which. § 12-3201(B) proscribes. And nothing in § 12-3201 language prohibits any "collateral enforcement" action. *See Whole Woman's Health*.

11

As sufficiently alleged, Plaintiff credibly fears statutorily authorized private persons and/or state officers will investigate, indicate and prosecute him for violations of A.R.S. §§ 13-2921 and/or 13-2810(A)(2) for filing court papers absent prior leave of the court in violation of § 12-3201(B). (Doc 14 at ¶¶ 98-103; Doc. 23, p. 12). That A.R.S. § 12-3201(B) provides no direct "enforcement" mechanism is largely immaterial to the *Ex parte Young* "proper defendant" analysis. By its "operation", that challenged provision can be, and has been "collectively" levered, by statutorily authorized state officers and private persons to continuously threaten irreparable injuries including incarceration via "collateral enforcement" of criminal harassment statutes for engaging in First Amendment conduct which § 12-3201(B) specifically proscribes. Plaintiff's fear should be considered more credible than the *Am. Encore* plaintiffs because the Arizona Secretary of State not only may, but actually has, administratively enforced § 12-3201(B) when labeling Plaintiff an A.R.S. § 13-2921 and § 13-3601 perpetrator while the Presiding Judge of the Maricopa County Superior Court also administratively enforced A.R.S. § 12-3201(B) against Plaintiff when placing his name on the state's online vexatious litigant list. (Doc 14 at ¶¶ 83-97). *See Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561-562 (1992) (When a plaintiff is "an object of the action ... at issue, ... there is ordinarily little question that the action ... has caused [that party] injury' – *i.e.,* that the injury is traceable to that action – and that a judgment preventing... the action will redress it."); *In re Ellett,* 254 F.3d at 1139 ("*Ex Parte Young* relief is available to remedy continuing violations of federal statutory as well as constitutional law".). Further, Plaintiff's former spouse continues to threaten administrative, civil, and criminal enforcement of A.R.S. § 12-3201(B) via "collateral enforcement" of A.R.S. § 13-3602. (Doc 14 at ¶¶ 83-112). And as it stands, the Attorney General acknowledges both she and "county attorneys"

could prosecute (Doc. 47, p. 11) but expressly refuses to disavow enforcement of the challenged statute (Doc. 93, pp. 1-2, 5-6; Doc. 94, p. 1). *See Peace Ranch,* 93 F.4th at 490 (Credible threat "often rises or falls with the enforcing authority's willingness to disavow enforcement".). There is nothing "chimerical" about Plaintiff's fear. Rather than being "imaginary or wholly speculative", *Driehaus,* 573 U.S. at 160, his fear of enforcement is quite credible given that he has faced continuous threats of administrative, civil, and criminal enforcement for years. *Driehaus* Factor Three is met based on credible threats from a "universe of potential complainants", including the Attorney General. The Court applied the wrong legal authority to decide otherwise.

### ii. Traceability and Redressability Are Met

"Government regulations that require or forbid some action by the plaintiff almost invariably satisfy both the injury in fact and causation [traceability and redressability] requirements." *Mirabelli v. Olson*, 761 F. Supp. 3d 1317, 1324 (S.D. Calif. 2025). Again, Attorney General Mayes belongs to a "universe of potential complainants" who "collectively" threaten administrative, civil, and/or criminal enforcement of conduct proscribed under § 12-3201(B), thus giving Appellant standing to sue her as an *Ex Parte Young* proper defendant. *Am. Encore,* 152 F.4th at 1118. As to traceability, Plaintiff would suffer irreparable injuries if criminally investigated, prosecuted, and/or incarcerated for exercising his First Amendment rights. Going to redressability, enjoining the Attorney General would foreclose Plaintiff's involvement with the criminal justice system and send a strong signal to all other private persons and state officers authorized to civilly or criminally prosecute Plaintiff that they will not succeed.

### iii. Summary

"Courts sometimes make standing law more complicated than it needs to be."

*Thole* v. *U. S. Bank N. A.*, 590 U. S. 538, 547 (2020). "At the pleading stage, a plaintiff must allege facts demonstrating each element of Article III standing. But a plaintiff need not satisfy the *Iqbal/Twombly* plausibility standard. An Article III standing inquiry does not touch directly on the merits of the case. ... Rather, 'the jurisdictional question of standing precedes, and does not require, analysis of the merits.' 'Standing is emphatically not a doctrine for shutting the courthouse door to those whose causes we do not like. Nor can standing analysis, which prevents a claim from being adjudicated for lack of jurisdiction, be used to disguise merits analysis, which determines whether a claim is one for which relief can be granted if factually true.'" *Mirabelli*, 761 F. Supp. 3d at 1324 (citations omitted). Plaintiff sufficiently demonstrates standing to sue Attorney General Mayes given that he sufficiently alleges a credible fear of prosecution rooted in his intention to engaged in First Amendment conduct proscribed under A.R.S. § 12-3201(B), such that First Amendment injuries are implicated.

### b. Plaintiff Prevails On The Merits

As explained in more detail in the accompanying Motion for Reconsideration Re: Presiding Judge Gates (Doc. 102), the Presiding Judge concedes on appeal that Plaintiff prevails on the merit should he have standing. This concession only heightens the stakes to rule in Plaintiff's favor on standing to bring a First Amendment claim. *See LSO, Ltd. v. Stroh*, 205 F.3d 1146, 1154-55 (9th Cir. 2000) (When the threat "implicates First Amendment rights, the inquiry tilts dramatically toward a finding of standing").

### C. There Was Clear Error In Deciding Count Two

"The Court thus [expressly] turn[ed[ to the merits of the [Count Two] standing analysis" because "it is unclear whether the act of filing court papers would qualify as 'conduct that is directed at a specific person,' as required under § 13-2921(E)." (Doc 100,

14

pp. 31-33). Based on that merits analysis, the Court questioned whether Plaintiff's "anticipated course of conduct is 'proscribed by statute'" (*Driehaus* Factor Two) and whether he faces the "credible threat of prosecution" (*Driehaus* Factor Three) at the hands of the Attorney General, and the Attorney General alone. Again, *Am. Encore* controls.

### 1. The Court Committed Clear Error In The Factor Two Analysis

The Court found "Plaintiff has failed to establish that his anticipated course of conduct is "proscribed by a statute" as required under the second *Driehaus* factor" and proceeded to interpret specific elements of A.R.S. § 13-2921 to determine whether Plaintiff's stated course of conduct violated that statute. (Doc. 100, p. 32). This was clear error. Again, to satisfy Factor Two, a "plaintiff must only show that their 'future conduct ... [is] 'arguably ... proscribed by [the] statute' it wishes to challenge.' And for the purposes of standing, we accept Plaintiffs' interpretation of the statute so long as it is an arguable interpretation." *Am. Encore,* 152 F.4th at 1116. Once more, "arguable" simply means "susceptible to debate, challenge, or doubt; questionable." *Rodriguez*, 398 F.3d at 1304. Under Plaintiff's interpretation of the statute, Plaintiff's stated intention to file court papers in ongoing litigation absent prior court approval is "arguably proscribed" by. § 13-2921. Indeed, the fact that the Arizona Secretary of State maintains state records claiming Plaintiff violated A.R.S. § 13-2921 for filing court papers is enough. (Doc. 14 at ¶ 97). And the fact that the Court was "unclear whether the act of filing court papers would qualify" as an A.R.S. § 13-2921(E) confirms arguable debate exists around Plaintiff's interpretation.[5] The Court should reject the temptation to "tangle standing

---

[5] The Court's admitted uncertainty whether Plaintiff's intended course of conduct violates A.R.S. § 13-2921 only supports Plaintiff's assertions on the claim's merits that the statute is overly vague and "impermissibly delegates basic policy matters to policemen, judges,

15

with the merits" to assess Factor Two. *Peace Ranch, LLC v. Bonta,* 93 F.4th at 489. Plaintiff meets *Driehaus* Factor Two.

### 2. The Court Committed Clear Error In The Factor Three Analysis

The Court erred assessing Factor Three for Count Two for the same reasons that the Court erred in assessing Factor Three for Count One. *Am Encore* is controlling authority. Plaintiff sufficiently alleged a credible threat of enforcement from a number of state officials and authorized private persons "collectively" to demonstrate standing to sue the Attorney General per *Ex parte Young*. *See Am. Encore,* 152 F.4th at 1110-1120.

## II. Requested Relief

The Court should reconsider its basis for dismissing Attorney General Mayes. Plaintiff believes the result will be the denial of a dismissal when the proper legal authorities are considered. If the Court has any doubt, it would also be wise to issue the Attorney General an Order To Show Cause why the Court should not look to *Am. Encore v. Fontes,* 152 F.4th 1097 (9th Cir. 2025) as controlling authority on these issues of standing and deny her dismissal motion.

DATED this 20th day of January 2026.

By: //s//
Phillip Potter
Plaintiff
Pro Se

---

and juries for resolution on an *ad hoc* and subjective basis, with the attendant dangers of arbitrary and discriminatory application." (Doc. 14 at ¶ 123). The Court's uncertainty reflects the strengths of Count Two's merits, not a weakness in standing.