Phillip Potter
2301 N. 66th Street
Scottsdale, Arizona 85257
Phone: 480.459.0310
E-Mail: phillip.t.potter@gmail.com
Plaintiff
Pro Se

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Phillip Potter, | No. 2:25-cv-00663-PHX-DWL |
| Plaintiff, | |
| v. | **MOTION FOR RECONSIDERATION RE: PRESIDING JUDGE GATES** |
| Robert Meza, et al., | (Oral Argument Requested) |
| Defendants. | |

A motion for reconsideration may be brought pursuant to Fed. R. Civ. P. 59(e) or 60(b). *Taylor v. Knapp*, 871 F.2d 803, 805 (9th Cir. 1989). Such motions may be filed within twenty-eight days of entry of an appealable decision. *See Am. Ironworks & Erectors*, *Inc. v. N. Am. Constr. Corp.,* 248 F.3d 892, 898-99 (9th Cir. 2001). Local Rules requires these motions be filed within fourteen days where a non-final decision being rendered. LRCiv. 7.2(g). Based on "clear error", Plaintiff timely asks the Court to reconsider its Order dismissing Presiding Judge Pamela Gates. (Doc. 100).

I. The Court Should Reconsider

Plaintiff alleges the Presiding Judge is one of several statutorily authorized state officials and private persons who have threatened him with, continue to threaten him with, and in the case of the Presiding Judge has caused, irreparable injuries suffered through the operation and enforcement of an unconstitutional act of the state legislature. Plaintiff has "go[ne] into a Federal court [], in a case involving a violation of the Federal Constitution, and [seeks to] obtain[] a judicial investigation of the problem[s], and pending its solution [to] obtain freedom from suits, civil or criminal, by a temporary injunction, and, if the question[s] be finally decided favorably to the contention of the [plaintiff], a permanent injunction restraining all such actions or proceedings." *Ex parte Young,* 209 U.S. 123, 149 (1908). Seeking declaratory relief and prospective injunctive relief to enjoin the Presiding Judge's pertinent administrative acts (Doc. 14, p. 71), Plaintiff sued the Presiding Judge of the Maricopa County Superior Court to mount a First Amendment facial challenge to A.R.S. § 12-3201 for overbreadth and vagueness. ("Count One"; Doc. 14 at ¶¶ 113-207). In a non-final decision, and pointing to past actions the Presiding Judge committed but that were only discovered during litigation,

and which create ongoing[1] fundamental rights deprivations, the Court dismissed claims against Presiding Judge Pamela Gates on grounds that "no Article III controversy exists because the challenged actions taken by the Presiding Judge were adjudicatory.  Thus, the Court lacks subject-matter jurisdiction over Plaintiff's claim against the Presiding Judge. This determination makes it unnecessary to reach the Presiding Judge's remaining arguments regarding sovereign immunity and judicial immunity." (Doc. 100, p. 61).

### A. Legal Standard

A motion for "[r]econsideration is appropriate if the district court (1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law."  *Sch. Dist. No. 1J v. AC and S, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993).

### B. There Was Clear Error

The Supreme Court instructs federal courts to be "particularly liberal in allowing pre-enforcement challenges to statutes imposing criminal sanctions when the challenge is based on the first amendment".  *Sable Commc'ns of California, Inc. v. FCC,* 827 F.2d 640, 644 (9th Cir.1987) (citing *Dombrowski v. Pfister,* 380 U.S. 479, 486-87, 85 S.Ct. 1116, 1120-21, 14 L.Ed.2d 22 (1965)).  In First Amendment facial challenges, it matters not whether those criminal sanctions are embedded within the statute itself or operate as collateral criminal enforcement for the same proscribed conduct.  *See Am. Encore v. Fontes,* 152 F.4th 1097, 1108-1119 (9th Cir. 2025).  An Article III "case or controversy"

---

[1] *See Green v. Mansour,* 474 U.S. 64, 68 (1985) ("*Ex parte Young*, ... assert[ed] that a suit challenging the constitutionality of a state official's action in enforcing state law is not one against the State.  The theory of *Young* was that an unconstitutional statute is void, and therefore does not 'impart to [the official] any immunity from responsibility to the supreme authority of the United States'.  *Young* also held that the Eleventh Amendment does not prevent federal courts from granting prospective injunctive relief to prevent a <u>continuing</u> violation of federal law.") (Emphasis added).

exists between private citizens and their state government officers provided the controversy does not violate the Eleventh Amendment.  Articulating an exception to Eleventh Amendment sovereign immunity, *Ex parte Young* established the framework permitting citizens to sue state officers for prospective injunctive relief to enjoin the enforcement of unconstitutional statutes provided those officers' actions are performed in some *executive* capacity.  *See Ex parte Young*, 209 U.S. at 125 ("While the [federal] courts cannot control the exercise of the discretion of an *executive* officer, an injunction preventing such [state] officer from enforcing an unconstitutional statute is not an interference with his discretion.") (Emphasis added).  Federal courts, however, have no authority to enjoin the judicial actions of judicial officers acting in their *judicial* capacity, as that type of relief does not fall within the exception.  *Id*.  That said, members of a state judicial branch can, and do, serve in executive capacities when performing certain "administrative" tasks, especially when the judicial officer holds a unique administrative position with unique administrative authorities.  *See* Ariz. Const. art. 6, § 11; *Maricopa County v. Dann,* 157 Ariz. 396, 400 (1988).  When a 42 U.S.C. § 1983 suit is brought to challenge a state statute and a judicial officer is a named defendant, federal courts are instructed to look to the details of (1) the official capacity in which those judges are sued, *Wolfe v. Strankman,* 392 F.3d 358, 365-66 (9th Cir. 2004) (a state judge sued in his "administrative capacity" for the purpose of securing prospective relief to enjoin administrative acts does not offend the Eleventh Amendment); and (2) the requested relief, *Courthouse News Serv. v. Gilmer*, 48 F.4th 908, 911 (8th Cir. 2022) (analyzing the requested relief, "we conclude this case checks all the *Ex parte Young* boxes").  These instructions are nothing more than clarification on the directive that courts must conduct a "straightforward inquiry" to decide if an *Ex parte Young* suit may proceed to the merits

under the *Ex parte Young* exception. *Idaho* v. *Coeur d'Alene Tribe of Idaho,* 521 U. S. 261, 296 (1997) ("In determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a 'straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'"); *Whole Woman's Health v. Jackson*, 595 U.S. 30, 40 (2021).

1. The Court Did Not Conduct A Straightforward Inquiry; *Wolfe v. Strankman* (2004) Controls On Sovereign Immunity

In *Whole Woman's Health*, "the Supreme Court <u>reemphasized</u> *Ex parte Young*'s conclusion that 'an injunction against a state court or its machinery would be a violation of the whole scheme of our Government.' As such, state court judges cannot be sued in federal court in their judicial capacity under the Eleventh Amendment." *Munoz v. Superior Ct. of Los Angeles Cnty.,* 91 F.4th 977, 981 (9th Cir. 2024) (emphasis added). The Supreme Court merely "reemphasized" that judicial officers cannot be sued in their <u>*judicial*</u> capacity. It did not create new law. Federal courts must conduct the same "straightforward inquiry" the Supreme Court has always required, just paying particular attention to the requested relief when a state judicial officer is a named defendant. *See Fidelity Exploration and Prod. Co. v. U.S.,* 506 F.3d 1182, 1186 (9th Cir.2007) (All courts "must follow the Supreme Court precedent that directly controls".).

District courts in the Ninth Circuit similarly "are bound to follow circuit precedent". *Human Life of Wash., Inc. v. Brumsickle,* 624 F.3d 990, 1016 (9th Cir.2010). The Ninth Circuit established that state court judges sued in their official <u>*administrative*</u> capacity to challenge a state's vexatious litigant statute qualify as proper defendants to invoke the *Ex parte Young* exception, provided the plaintiff seeks prospective injunctive

relief of administrative (i.e., non-judicial) acts. *Wolfe*, 392 F.3d at 366 ("Since [Plaintiff] sued [Pamela Gates] in [her] administrative capacity as [Presiding Judge], we conclude that dismissal [for sovereign immunity] is not warranted".)[2]  Plaintiff expressly sued the Presiding Judge in an official <u>*administrative*</u> capacity. (Doc. 14 at ¶ 104).  This is proper procedure per *Wolfe*.  This is also permitted as a matter of Arizona state constitutional law because, while Arizona judicial officers derive their judicial authority from Governor appointment (*see* Ariz. Const. art. 6, § 37; Ariz. Const. art. 5, § 1), a Presiding Judge holds a distinct administrative (i.e., executive) officer position created by the Arizona Constitution.  Ariz. Const. art. 6, § 11.  A Presiding Judge's administrative authority when exercising that administrative officer position derives from the Arizona Supreme Court's administrative authority bestowed on the state's highest court by the state constitution.  Ariz. Const. art. 6, § 3.  In sum, a Presiding Judge holds two distinct state officer positions – a judicial officer and an administrative (i.e., executive) officer.  Those two positions, and their respective judicial and administrative authorities, cannot be concurrently exercised per the Arizona Supreme Court.  *Maricopa County v. Dann,* 157 Ariz. 396 (1988); *Maricopa County v. Tinney,* 183 Ariz. 412 (1995).  Per *Wolfe*, a "case and controversy" exists and the *Ex parte Young* exception triggers when an Arizona Presiding Judge named in their official administrative capacity is alleged to act in an administrative (i.e., executive) capacity.  The Court committed clear error when concluding Presiding Judges can perform judicial acts while exercising the authority of

---

[2] The Court redesignated the defendant Presiding Judge as not being sued in an official administrative capacity. (Doc. 100, p. 57) ("Plaintiff purports to sue the Presiding Judge 'in his official *administrative* capacity only.' (Doc. 14 ¶ 104, emphasis in original.)  But this is a bare 'legal conclusion' and, as such, it is 'not entitled to the assumption of the ruth.'").  Plaintiff is unaware of any rule permitting courts to reclassify defendants *sua sponte* absent mistake (Fed. R. Civ. P. 21) or automatic substitution (Fed. R. Civ. P. 25).

their administrative office.  The Court should reconsider, find Presiding Judge Gates

enjoys no sovereign immunity, and proceed to the merits.[3]

---

[3] The parties have an active Ninth Circuit case (No. CV-25-7977) regarding the denial of a
temporary order and preliminary injunction.  28 U.S.C. § 1292(a)(1).  Presiding Judge
Gates sidestepped all A.R.S. § 12-3201 merit defenses in the trial court.  However, in the
Ninth Circuit, Presiding Judge Gates for the first time on January 5, 2026 in an appellate
Response (see Ninth Circuit No. CV-25-7977 Dkt. 7.1) expressly refused to defend the
constitutional merits of A.R.S. § 12-3201.  As Plaintiff – Appellant noted in his January
12, 2026 Ninth Circuit Reply filing (see Ninth Circuit No. CV-25-7977 Dkt. 10.1, p. 1;
Attached): "Per her one-page 'joinder' Response (Dkt. 7.1), Presiding Judge Pamela Gates
'joins the arguments in sections I, II, and III.A.1. in the Arizona Attorney General's
Response' (see Dkt. 6.1).  She '[a]dditionally' posits that 'Eleventh Amendment
[sovereign immunity] and judicial immunity preclude[] federal jurisdiction over' her
office while also calling to 'Whole Woman's Health v. Jackson, 595 U.S. 30, 40 (2021)' to
float an Article III 'case or controversy' jurisdictional defense.  Presiding Judge Gates
makes no effort to develop her defenses.  Critically, her joinder goes no farther than
'III.A.1' where Attorney General Mayes argues 'Appellant Lacks Standing' to sue the
Attorney General's office but makes no mention of standing relative to the Presiding
Judge's office (Dkt. 6.1, p. 12).  Indeed, the record shows Presiding Judge Gates has never
argued Appellant lacks standing to sue her as means to challenge A.R.S. § 12-3201 for
overbreadth and vagueness, instead arguing that enjoining her administrative enforcement
of the statute would somehow improperly serve as 'a vehicle for the vindication of the
value interests of concerned bystanders'.  (ER-256).  Further, and to be clear, Presiding
Judge Gates does _not_ join with the Attorney General on any defense going to the merits.
She does _not_ take the position that 'Appellant lacks a likelihood of success on the merits'
(Id., III.A.2), 'Appellant's reliance on Noerr-Pennington fails' (Id, III.A.2.a), 'The statute
does not violate substantive due process guarantees' (Id, III.A.2.b), 'The law does not
violate the First Amendment' (Id, III.A.2.c), or 'Appellant fails to show the remaining
injunctive relief factors' (Id, III.B).  Hence, the Maricopa County Superior Court's chief
executive officer and Arizona's chief legal officer hold conflicting positions regarding the
constitutionality of A.R.S. § 12-3201.  The Presiding Judge's joinder provides strong
evidence – perhaps even an admission – that the statute violates the First Amendment.
Thus, the Court should find a 'likelihood of success on the merits' of, or at least that
Appellant 'raises serious questions' going to, 'a colorable First Amendment claim' such
that all other injunctive 'factors' are met.  Fellowship of Christian Athletes v. San Jose
Unified Sch. Dist. Bd. of Educ., 82 F.4th 664, 684-95 (9th Cir. 2023).  If two chief officers
disagree on whether legislation violates the Petition Clause then 'serious questions' surely
exist."  Presiding Judge Gates' merits position, declared in the Ninth Circuit for the first
time on January 5th, qualifies as "newly discovered evidence" justifying independent
grounds for reconsideration.  Sch. Dist. No. 1J., 5 F.3d at 1263.

1

2

     2. The Court Did Not Conduct the Proper Judicial Immunity Analysis; *Mireles v. Waco* (1991) And Arizona Law Controls

3

4

     The Court analyzed whether certain acts a Presiding Judge performs in their

5

administrative capacity should be classified as judicial acts or as administrative acts.

6

(Doc. 100, pp. 55-61).  On the face of Administrative Order 2023-159, although "not

7

tak[ing] judicial notice of the truth of any of the statements contained in this

8

Administrative Order" (*see* Doc. 100, p. 19, n.11), and based on statements Presiding

9

Judge Gates' counsel made in motion papers, the Court classified administrative acts in

10

as judicial acts.  From there, the Court dismissed for lack of "subject matter jurisdiction"

11

commenting "[t]his determination makes it unnecessary to reach the Presiding Judge's

12

remaining arguments regarding sovereign immunity and judicial immunity". (Doc. 100,

13

p. 61).  But analyzing whether acts classify as judicial acts or as administrative acts goes

14

to the merits in the context of a judicial immunity analysis controlled by *Mireles v. Waco,*

15

502 U.S. 9 (1991), the Arizona constitution, and Arizona supreme court precedent.

16

     a. State Law Controls Whether It Is Legally Possible for a Presiding Judge To Engage in Judicial Acts

17

18

     Before determining whether acts classify as judicial acts, federal courts must look

19

20

to state law to frame the analysis.  *See Forrester v. White,* 484 U.S. 219, 227-230 (1988)

21

("Under Virginia law", the acts in question were administrative, non-judicial acts.).

22

"Article VI § 11 of the Arizona Constitution sets forth the powers of the [P]residing

23

[J]udge." *Dann,* 157 Ariz. at 400.  "The state constitution grants the [Arizona] supreme

24

court 'administrative supervision over all the courts of the State.'  Ariz. Const. art. 6, § 3.

25

The [state] supreme court has authorized each county's presiding judge to 'exercis[e]

26

general administrative supervision over the court and the judges thereof'. ...

Administrative '[c]onnotes of or pertains to administration, especially management, as by managing or conducting, directing, or superintending, the execution, application or conduct of persons or things. Particularly, having the character of *executive* or ministerial action. In this sense, *administrative functions or acts are distinguished from such as are judicial*.' *In re Shannon,* 179 Ariz. 52, 76, [] (1994)". *Clark v. Campbell,* 219 Ariz. 66, 71 ¶ 20 (App. 2008) (emphasis added). Presiding Judges' administrative powers are confined to the power to "manag[e] the conduct of [elected, appointed or hired] court personnel", *Id*, to manage "its own officers" of the court (i.e. attorneys), *State ex rel. Andrews v. Superior Court,* 39 Ariz. 242, 248 (1931), and to manage court facilities and resources per Rules of the Arizona Supreme Court 92(a). Their "'administrative authority' does *not* include 'authority over' private parties'" since neither the Arizona constitution nor the Arizona supreme court gave Presiding Judges jurisdictional "authority to compel persons outside the judiciary to" do, or to refrain from doing, anything. *Dann,* 157 Ariz. at 400 (emphasis added). Put another way, when acting in the capacity of their administrative office, Presiding Judges lack judicial power to issue summons, enforce subpoenas, enter orders compelling litigants' action or inaction, grant any form of judicial relief, or even hear or decide any controversy. Indeed, the Arizona supreme court held it would be constitutionally, statutorily, and procedurally "inappropriate" for a Presiding Judge to conduct any form of "adversarial" proceeding or associated task.[4] *Tinney,* 183 Ariz. at 414. And while each state may

---

[4] Arizona's constitution and procedural rules require a Presiding Judge to, in essence, "take off the cap" of their appointed office and formally be assigned to a case as an everyday judicial officer in order to possess authority to act in a judicial capacity. In Arizona, these steps guarantee notice to litigants to give them an opportunity to request a change of judge as a matter of right. *See* Ariz. R. Civ. P. 42.1 ("In any action in superior court, ..., each side is entitled as a matter of right to a change of one judge."). "In civil

establish their own general court procedures, the U.S. Constitution requires states to follow an "adversarial system of adjudication" for the substantive redress of grievances through those courts. *Sineneng-Smith,* 590 U.S. at 375. Perhaps that is why the Arizona Legislature statutorily restrained the judicial branch, on top of the state constitution's inherent restraints, to ensure administrative authorities and power could never be deployed to affect substantive rights.[5] *See* A.R.S. § 12-109(B)(1) ("[A]dministrative orders shall not do any of the following: 1. Abridge, enlarge or modify substantive rights of a litigant."). At bottom, when a Presiding Judge exercises her office's administrative authority, the Arizona supreme court has established that she exclusively acts in an administrative capacity and lacks all jurisdictional authority to act in a judicial capacity. The Court committed clear error when not conducting an analysis within state law confines, and when concluding it was legally possible for a Presiding Judge to perform judicial acts while exercising their administrative office.

> b. State Law Controls Whether Judicial Immunity Applies

Even if it were possible for a Presiding Judge to perform judicial acts while exercising her administrative office, that would not end the inquiry. Not every judicial

---

and criminal matters we have long adhered to the notion that a party may disqualify one judge and have the case transferred to another judge. There is no procedure for change of judge in an administrative proceeding before the presiding judge. As we view the situation, such a procedure is not necessary because the presiding judge has <u>*no authority*</u> to compel persons outside the judiciary to become involved in such matters." *Dann,* 157 Ariz. at 400-01 (emphasis added).

[5] Arizona's constitution broadens and zealously safeguards First Amendment rights perhaps more than any other state. *See e.g.*, *Brush & Nib Studio, LLC v. City of Phoenix*, 247 Ariz. 269, 281 ¶¶ 45-47 (2019) ("Whereas the First Amendment is phrased as a constraint on government ... our state's provision, by contrast, is a guarantee of the individual right"). Indeed, Arizona's founders framed the right to petition courts as an absolute such that "[t]he right of petition, ..., shall never be abridged." Ariz. Const. art. 2, § 5.

act enjoys judicial immunity, because "a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction." *Mireles,* 502 U.S. at 12. Again, the Arizona supreme court in *Dann* and *Tinney* affirmed that Presiding Judges have no jurisdictional authority to engage in judicial acts when exercising the power of their administrative office.  A Presiding Judge lacks all personal jurisdiction over private parties, and lacks all subject matter jurisdiction over any and every adversarial matter per *Dann* and *Tinney*.  In sum, these facts and circumstances demonstrate a "clear absence of all jurisdiction", *Stump* v. *Sparkman,* 435 U. S. 349, 357 (1978), to perform judicial acts whenever Presiding Judges exercise their administrative office.  Put another way, no facts can alter Arizona law which holds Presiding Judges cannot perform judicial acts while exercising their administrative office's authority, even if the resulting paperwork appears "judicial" on its face.  The ultimate determination that "no Article III controversy exists because the challenged actions taken by the Presiding Judge were adjudicatory", (Doc. 100, p. 61), puts the district court in conflict with the Arizona supreme court and the Arizona constitution on matters of state law grounded in the state supreme court's interpretation of its own constitution, statutes, and rules.  "When interpreting state law, a federal court is bound by the decision of the highest state court." *In re Kirkland,* 915 F.2d 1236, 1238 (9th Cir. 1990).  The Court did not adhere to that edict.  This is clear error.  The Court should reconsider and issue an alternative order to avoid those conflicts.

## II. Requested Relief

The Court should reconsider on the forementioned grounds.  Plaintiff believes the result will be the denial of dismissal where Presiding Judge Gates will then concede the merits, allowing nearly all other federal and state claims to quickly resolve.  Should the Court have questions, it would be wise to consider issuing the Presiding Judge an Order

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

To Show Cause why the Court (1) should not find, as Plaintiff details, that settled Arizona law established in the state's highest court precludes sovereign immunity and judicial immunity; and (2) should not consider her refusal to defend the merits on appeal as an admission that the challenged statue violates the First Amendment.

DATED this 20th day of January 2026.

By: <u>//s//</u>
Phillip Potter
Plaintiff
Pro Se