**Case No. 25-7977**

---

## THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

---

Phillip Potter

*Plaintiff-Appellant,*

*v.*

ROBERT MEZA, in his private capacity; KARRIN TAYLOR ROBSON, in her private capacity; ALANE ORTEGA; KRISTIN K. MAYES, in her official capacity as Arizona Attorney General; JOSEPH WELTY, in his official administrative capacity as former Presiding Judge of the Maricopa County Superior Court; and PAMELA GATES, in her official administrative capacity as Presiding Judge of the Maricopa County Superior Court

*Defendants-Appellees.*

---

On Appeal from the United States District Court
for the District of Arizona

No. 2:25-cv-00663-PHX-DWL

---

## JUDGE PAMELA GATES' JOINDER TO THE ARIZONA ATTORNEY GENERAL'S RESPONSE IN OPPOSITION TO APPELLANT'S MOTION FOR INJUNCTION PENDING APPEAL

---

Kara Karlson (AZ Bar No. 029407)
OFFICE OF THE ARIZONA ATTORNEY
 GENERAL
2005 N. Central Ave. Phoenix, AZ 85004
(602) 542-3333
Kara.Karlson@azag.gov

*Counsel for Defendant-Appellee Superior Court
Judge Pamela Gates*

Maricopa County Superior Court Presiding Judge Pamela Gates ("Judicial Defendant") joins the arguments in sections I, II, and III.A.1. in the Arizona Attorney General's Response in opposition to Plaintiff Philip Potter's Motion for Injunction Pending Appeal ("Motion"). Plaintiff's Motion should be denied based on these arguments.

Additionally, the Eleventh Amendment and judicial immunity precludes federal jurisdiction over the Judicial Defendant. *Whole Woman's Health v. Jackson*, 595 U.S. 30, 40 (2021) ("Judges exist to resolve controversies about a law's meaning or its conformance to the Federal and State Constitutions, not to wage battle as contestants in the parties' litigation."). This Court may deny Plaintiff's Motion for this independent reason.

The Court should deny Plaintiff's motion for an injunction pending appeal.

Respectfully submitted this 5th day of January, 2026.

KRISTIN K. MAYES
ARIZONA ATTORNEY GENERAL

By /s/Kara Karlson
Kara Karlson
OFFICE OF THE ARIZONA
ATTORNEY GENERAL
2005 N. Central Ave.
Phoenix, AZ 85004

(602) 542-3333
Kara.Karlson@azag.gov

*Counsel for Defendant-Appellee Maricopa*
*County Superior Court Judge Pamela Gates*

## CERTIFICATE OF COMPLIANCE

1.  This joinder complies with the type-volume limitation of Circuit Rule 27-1(1)(d) because it contains 119 words.

2.  This brief complies with the typeface and typestyle requirements of Federal Rule of Appellate Procedure 32(a)(5) and (6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in fourteen-point Book Antiqua type style.

Dated this 5th day of January, 2026.

By */s/ Kara Karlson*

## CERTIFICATE OF SERVICE

I certify that I presented the above and foregoing for filing and uploading to the CM/ECF system which will send electronic notification of such filing to all counsel of record.

Dated this 5th day of January, 2026.

*/s/ Kara Karlson*

No. CV-25-7977

# In the United States Court of Appeals for The Ninth Circuit

PHILLIP POTTER,
*Plaintiff - Appellant,*

v.

ROBERT MEZA, in his private capacity; KARRIN TAYLOR ROBSON, in her private capacity; ALANE ORTEGA; KRISTIN K. MAYES, in her official capacity as Arizona Attorney General; JOSEPH WELTY, in his official administrative capacity as former Presiding Judge of the Maricopa County Superior Court; and PAMELA GATES, in her official administrative capacity as Presiding Judge of the Maricopa County Superior Court
*Defendants-Appellees.*

Appeal from the United States District Court
for the District of Arizona
Honorable Dominic W. Lanza
(2:25-cv-00663-PHX-DWL)

**REPLY TO PRESIDING JUDGE PAMELA GATES' JOINDER TO
THE ARIZONA ATTORNEY GENERAL'S RESPONSE IN OPPOSITION
TO APPELLANT'S MOTION FOR AN INJUNCTION
PENDING APPEAL**

Phillip Potter
2301 N. 66th Street
Scottsdale, AZ 85257
480-459-0310
phillip.t.potter@gmail.com
Pro Se Plaintiff - Appellant

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................... ii

REBUTTAL ..................................................................................... 1

I. Appellant May Sue Presiding Judge Pamela Gates
Per *Ex Parte Young* ...................................................................... 2

   A. The Arizona Supreme Court Has Spoken;
   Federal Courts Must Abide ................................................. 3

     1. There Is No Sovereign Immunity ................................. 5

     2. There Is No Judicial Immunity .................................... 6

   B. There Is A "Case or Controversy;
   Article III Jurisdiction Is Satisfied ..................................... 7

## TABLE OF AUTHORITIES

**Cases**                                                                    **Pages**

*Brush & Nib Studio, LLC v. City of Phoenix*,
    247 Ariz. 269 (2019) ................................................................................. 5

*Clark v. Campbell*,
    219 Ariz. 66 (App. 2008) ......................................................................... 3

*Duvall v. County of Kitsap*,
    260 F.3d 1124 (9th Cir. 2001) ................................................................. 6

*Fellowship of Christian Athletes v. San Jose Unified Sch. Dist. Bd. of Educ.*,
    82 F.4th 664 (9th Cir. 2023) (en banc) ................................................. 2

*Forrester v. White*,
    484 U.S. 219 (1988) .............................................................................. 6, 8

*In re Kirkland*,
    915 F.2d 1236 (9th Cir. 1990) ................................................................. 7

*In re Shannon*,
    179 Ariz. 52, 76 (1994) ........................................................................... 3

*Looney v. Tierney*,
    776 F. Supp. 3d 868 (D. Mont. 2025) ................................................... 8

*LSO, Ltd. v. Stroh*,
    205 F.3d 1146 (9th Cir. 2000) ............................................................... 10

*Maldonado v. Harris*,
    370 F.3d 945 (9th Cir. 2004) ................................................................... 9

*Maricopa County v. Dann*,
    157 Ariz. 396, 400 (1988) ..................................................................... 3, 4

*Maricopa County v. Tinney*,
    183 Ariz. 412 (1995) ................................................................................ 4

*Matsumoto v. Labrador,*
    122 F.4th 787 (9th Cir. 2024) ........................................................ 6

*Mirabelli v. Olson*,
    761 F. Supp. 3d 1317 (S.D. Calif. 2025) .................................... 10

*Mireles v. Waco,*
    502 U.S. 9 (1991) .......................................................................... 6

*State ex rel. Andrews v. Superior Court,*
    39 Ariz. 242 (1931) ...................................................................... 4

*U.S. v. Hansen,*
    599 U.S. 762 (2023) ...................................................................... 1

*U.S. v. Sineneng-Smith,*
    590 U.S. 371 (2020) ...................................................................... 5

*Whole Woman's Health v. Jackson*,
    595 U.S. 30 (2021) ................................................................ 1, 8, 9

*Wolfe v. Strankman,*
    392 F.3d 358 (9th Cir. 2004) ................................................... 5, 8

Statutes

A.R.S. § 12-109(B)(1) .................................................................... 5

A.R.S. § 12-3201 ................................................................... 1, 2, 9

Constitution

Ariz. Const. art. 2, § 5 .................................................................... 5

Ariz. Const. art. 6, § 3 .................................................................... 3

Ariz. Const. art. 6, § 11 .................................................................. 3

REBUTTAL

Per her one-page "joinder" Response (Dkt. 7.1), Presiding Judge Pamela

Gates "joins the arguments in sections I, II, and III.A.1. in the Arizona Attorney

General's Response" (*see* Dkt. 6.1). She "[a]dditionally" posits that "Eleventh

Amendment [sovereign immunity] and judicial immunity preclude[] federal

jurisdiction over" her office while also calling to "*Whole Woman's Health v.

Jackson*, 595 U.S. 30, 40 (2021)" to float an Article III "case or controversy"

jurisdictional defense. Presiding Judge Gates makes no effort to develop her

defenses. Critically, her joinder goes no farther than "III.A.1" where Attorney

General Mayes argues "Appellant Lacks Standing" to sue the Attorney General's

office but makes no mention of standing relative to the Presiding Judge's office

(Dkt. 6.1, p. 12). Indeed, the record shows Presiding Judge Gates has never argued

Appellant lacks standing to sue her as means to challenge A.R.S. § 12-3201 for

overbreadth and vagueness, instead arguing that enjoining her administrative

enforcement of the statute would somehow improperly serve as "a vehicle for the

vindication of the value interests of concerned bystanders".[1] (ER-256). Further,

and to be clear, Presiding Judge Gates does *not* join with the Attorney General on

---

[1] "[T]he overbreadth doctrine allows a litigant (even an undeserving one) to
vindicate the rights of the silenced, as well as society's broader interest" in
safeguarding the First Amendment. *U.S. v. Hansen,* 599 U.S. 762, 770 (2023).
Plaintiff suffers his own particularized irreparable injury which the Presiding Judge
does not dispute.

any defense going to the merits.  She does _not_ take the position that "Appellant lacks a likelihood of success on the merits" (_Id_., III.A.2), "Appellant's reliance on _Noerr-Pennington_ fails" (_Id_, III.A.2.a), "The statute does not violate substantive due process guarantees" (_Id_, III.A.2.b), "The law does not violate the First Amendment" (_Id_, III.A.2.c), or "Appellant fails to show the remaining injunctive relief factors" (_Id_, III.B).  Hence, the Maricopa County Superior Court's chief executive officer[2] and Arizona's chief legal officer hold conflicting positions regarding the constitutionality of A.R.S. § 12-3201.  The Presiding Judge's joinder provides strong evidence – perhaps even an admission – that the statute violates the First Amendment.  Thus, the Court should find a "likelihood of success on the merits" of, or at least that Appellant "raises serious questions" going to, "a colorable First Amendment claim" such that all other injunctive "factors" are met. _Fellowship of Christian Athletes v. San Jose Unified Sch. Dist. Bd. of Educ.,_ 82 F.4th 664, 684-95 (9th Cir. 2023).  If two chief officers disagree on whether legislation violates the Petition Clause then "serious questions" surely exist.

## I. Appellant May Sue Presiding Judge Pamela Gates Per _Ex Parte Young_

"Case or controversy", sovereign immunity, and judicial immunity defenses all go to the common underlying question of whether a Presiding Judge acts in an

---

[2] Per the Arizona Supreme Court, "Presiding Judges in Arizona serve as the chief _executive_ officer of the county courts, having administrative authority over the courts, judicial officers, and court employees in their county."  (ER-285).

administrative capacity or in a judicial capacity when issuing administrative orders and making administrative decisions. Dispositively answering this question, the Arizona Supreme Court established that, when exercising their appointed office's authorities and power, Presiding Judges act exclusively in an administrative capacity and possess no authority to act in a judicial capacity.

A. The Arizona Supreme Court Has Spoken; Federal Courts Must Abide

"Article VI § 11 of the Arizona Constitution sets forth the powers of the [P]residing [J]udge." *Maricopa County v. Dann,* 157 Ariz. 396, 400 (1988). "The state constitution grants the [Arizona] supreme court 'administrative supervision over all the courts of the State.' Ariz. Const. art. 6, § 3. The [state] supreme court has authorized each county's presiding judge to 'exercis[e] general administrative supervision over the court and the judges thereof'. ... Administrative '[c]onnotes of or pertains to administration, especially management, as by managing or conducting, directing, or superintending, the execution, application or conduct of persons or things. Particularly, having the character of *executive* or ministerial action. In this sense, *administrative functions or acts are distinguished from such as are judicial*.' *In re Shannon,* 179 Ariz. 52, 76, [] (1994)". *Clark v. Campbell,* 219 Ariz. 66, 71 ¶ 20 (App. 2008) (emphasis added). Presiding Judges' administrative powers are confined to the power to "manag[e] the conduct of [elected, appointed, and hired] court personnel", *Id*, to manage "its own officers"

3

of the court (i.e. attorneys), *State ex rel. Andrews v. Superior Court,* 39 Ariz. 242, 248 (1931), and to manage court facilities and resources per Rules of the Arizona Supreme Court 92(a). Their "'administrative authority' does <u>not</u> include 'authority over' private parties'" since neither the Arizona Constitution nor the Arizona Supreme Court gave Presiding Judges jurisdictional "authority to compel persons outside the judiciary to" do, or to refrain from doing, anything. *Dann,* 157 Ariz. at 400 (emphasis added). Put another way, when acting in the capacity of their office, Presiding Judges lack judicial power to issue summons, enforce subpoenas, enter orders compelling litigants' action or inaction, grant any form of judicial relief, or even hear or decide any controversy. Indeed, the Arizona Supreme Court held it would be constitutionally, statutorily, and procedurally "inappropriate" for a Presiding Judge to conduct any form of "adversarial" proceeding or associated task.[3] *Maricopa County v. Tinney,* 183 Ariz. 412, 414 (1995). And while each

---

[3] Arizona's constitution and procedural rules require a Presiding Judge to, in essence, "take off the cap" of their appointed office and formally be assigned to a case as an everyday judicial officer in order to possess authority to act in a judicial capacity. In Arizona, these steps guarantee notice to litigants to give them an opportunity to request a change of judge as a matter of right. *See* Ariz. R. Civ. P. 42.1 ("In any action in superior court, ..., each side is entitled as a matter of right to a change of one judge."). "In civil and criminal matters we have long adhered to the notion that a party may disqualify one judge and have the case transferred to another judge. There is no procedure for change of judge in an administrative proceeding before the presiding judge. As we view the situation, such a procedure is not necessary because the presiding judge has <u>no authority</u> to compel persons outside the judiciary to become involved in such matters." *Dann,* 157 Ariz. at 400-01 (emphasis added).

state may establish their own general court procedures, the U.S. Constitution requires states to follow an "adversarial system of adjudication" for the substantive redress of grievances through those courts. *U.S. v. Sineneng-Smith,* 590 U.S. 371, 375 (2020). Perhaps that is why the Arizona Legislature statutorily restrained the judicial branch, on top of the state constitution's inherent restraints, to ensure administrative authorities and power could never be deployed to affect substantive rights.[4] *See* A.R.S. § 12-109(B)(1) ("[A]dministrative orders shall not do any of the following: 1. Abridge, enlarge or modify substantive rights of a litigant."). At bottom, when a Presiding Judge exercises her office's authority, the Arizona Supreme Court has established that she exclusively acts in an administrative capacity, meaning Appellant may bring action against Presiding Judge Gates.

    1. There Is No Sovereign Immunity

    "Since [Appellant] sued [Pamela Gates] in [her] administrative capacity as [Presiding Judge], we conclude that dismissal [for sovereign immunity] is not warranted". *Wolfe v. Strankman*, 392 F.3d 358, 365-66 (9th Cir. 2004). The Ninth Circuit decided this precise issue in Appellant's favor. It is of no moment that a

---

[4] Arizona's constitution broadens and zealously safeguards First Amendment rights perhaps more than any other state. *See e.g.*, *Brush & Nib Studio, LLC v. City of Phoenix*, 247 Ariz. 269, 281 ¶¶ 45-47 (2019) ("Whereas the First Amendment is phrased as a constraint on government ... our state's provision, by contrast, is a guarantee of the individual right"). Indeed, Arizona's founders framed the right to petition courts as an absolute such that "[t]he right of petition, ..., shall never be abridged." Ariz. Const. art. 2, § 5.

judicial administrator with administrative power to administratively enforce a statute also happens to be a judge.  To trigger the *Ex Parte Young* exception, "[a]ll that is required is a mere scintilla of enforcement by the relevant state official with respect to the challenged law."  *Matsumoto v. Labrador,* 122 F.4th 787, 803 (9th Cir. 2024).  This is a "low bar", *Id*, that Appellant easily clears.

### 2. There Is No Judicial Immunity

"[A]bsolute judicial immunity does not apply to nonjudicial acts, i.e. the administrative, ... functions that judges may on occasion be assigned to perform." *Duvall v. County of Kitsap*, 260 F.3d 1124, 1134 (9th Cir. 2001); *Forrester v. White,* 484 U.S. 219, 227 (1988) ("Judicial immunity only applies to judicial acts.").  Presiding Judge Gates has no judicial immunity for two reasons.  First, a Presiding Judge acting in her official capacity performs administrative acts, not judicial acts, and "a judge is not immune from liability for nonjudicial actions, i.e.*,* actions not taken in the judge's judicial capacity."  *Mireles v. Waco,* 502 U.S. 9, 11 (1991).  Second, the Arizona Supreme Court in *Dann*, *Shannon*, and *Tinney* affirmed that Presiding Judges have no jurisdictional authority to engage in judicial acts when exercising the power of their administrative office, and "a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction."  *Mireles,* 502 U.S. at 12.  State law determines whether a state judge acts in a judicial capacity or in some other capacity.  *See Forrester* 484 U.S.

at 230 (determining judicial immunity did not apply "[u]nder Virginia law").

Under Arizona law, as the Arizona Supreme Court interpreted it, Presiding Judges

(1) act exclusively in an administrative capacity when exercising the authorities

and power of their office; and (2) lack all personal jurisdiction over private parties,

and lack all subject matter jurisdiction over any and every adversarial matter.  In

sum, each action a Presiding Judges takes through their appointed office classifies

as an act taken in an administrative capacity, not a judicial capacity, while there is

a "clear absence of all jurisdiction" to act in a judicial capacity whenever Presiding

Judges exercise their offices' authorities and powers.  "[F]ederal court[s] [are]

bound by the decision[s] of the highest state court", *In re Kirkland,* 915 F.2d 1236,

1238 (9th Cir. 1990), including on matters involving the nature and inherent limits

of actions a Presiding Judge has the authority to perform under state law.[5]

## B. There Is A "Case or Controversy"; Article III Jurisdiction Is Satisfied

Appellant will once again demonstrate an Article III "case or controversy"

and jurisdictional standing, as follows.  In her dismissal motion, Presiding Judge

Gates wrote, "'[j]udges exist to resolve controversies about a law's meaning or its

conformance to the Federal and State Constitutions, not to wage battle as

contestants in the parties' litigation.'" (ER-255).  She emphasized "*Ex Parte Young*

---

[5] Gates' immunity defense is really an attack on the Arizona Constitution and Arizona Supreme Court since a Presiding Judge's authorities derive from that supreme court's administrative authorities, as its decisions confirm.

did not countenance an injunction against a state court or its machinery." (ER-257). *Whole Woman's Health* did not break new legal ground, but only reiterated points made more than a century earlier in *Ex Parte Young*. Those points being that, to safeguard "the whole scheme of our Government", federal courts have no Article III authority to enjoin state court judges or personnel from acting in their respective judicial or quasi-judicial capacity. *Whole Woman's Health*, 595 U.S. at 40. This did nothing more than re-affirm state sovereignty where "in *Ex parte Young,* this Court recognized a narrow exception grounded in traditional equity practice – one that allows certain private parties to seek judicial orders in federal court preventing state executive officials from enforcing state laws that are contrary to federal law." *Id*. Questions of Federalism asking whether a federal suit would impact a state court's "machinery" can be answered by examining the named defendant and the relief requested. Again, a state court judge can be brought to suit provided their pertinent acts are non-judicial and the requested relief does not seek to enjoin state judicial operations. *Forrester*; *Looney v. Tierney*, 776 F. Supp. 3d 868 (D. Mont. 2025). A federal plaintiff may sue a state court judge who holds an administrative position provided the judge is named in their administrative capacity, the judge's administrative acts are pertinent to the claim, and the requested relief does not affect the state court's general functions. *Wolfe*, 392 F.3d at 365-66. Here, Appellant expressly brought action against

Presiding Judge Gates "in her official administrative capacity" seeking prospective declaratory relief and injunctive relief enjoining administrative enforcement of a statute challenged for violating the Petition Clause.  He does not seek to undo any judicial order, and his suit has no effect on the judicial "machinery".[6]  These dynamics fit the *Ex Parte Young* exception, meaning there is an Article III "case or controversy ... arising between adverse litigants".  *Whole Woman's Health*, 595 U.S. at 39-40.  The jurisdictional analysis thus turns to Appellant's standing to bring a First Amendment claim.

"At the pleading stage, a plaintiff must allege facts demonstrating each element of Article III standing.  But a plaintiff need not satisfy the *Iqbal/Twombly* plausibility standard.  An Article III standing inquiry does not touch directly on the merits of the case. ... Rather, 'the jurisdictional question of standing precedes, and does not require, analysis of the merits.'  'Standing is emphatically not a doctrine for shutting the courthouse door to those whose causes we do not like.  Nor can standing analysis, which prevents a claim from being adjudicated for lack of

---

[6] Appellant sits in a similar position to the *Maldonado v. Harris,* 370 F.3d 945 (9th Cir. 2004) plaintiff who found himself subject to a state judicial order and an administrative order arising from a common piece of state legislation.  He challenged that legislation on First Amendment grounds.  Maldonado did not challenge the judicial order, and he did not request relief that would enjoin the judicial machinery.  This Court identified an Article III "case or controversy", allowed Maldonado to proceed with his First Amendment claim, and found the *Rooker-Feldman* doctrine did not apply.  Likewise, Appellant only challenges A.R.S. § 12-3201, and §§ 12-3201(B) and (E) in particular.

jurisdiction, be used to disguise merits analysis, which determines whether a claim is one for which relief can be granted if factually true.'" *Mirabelli v. Olson*, 761 F. Supp. 3d 1317, 1324 (S.D. Calif. 2025) (citations omitted). "Government regulations that require or forbid some action by the plaintiff almost invariably satisfy both the injury in fact and causation requirements. So in those cases, standing is usually easy to establish." *Id.* And when the suit "'implicates First Amendment rights, the inquiry tilts dramatically toward a finding of standing". *LSO, Ltd. v. Stroh*, 205 F.3d 1146, 1154-55 (9th Cir. 2000). The injury Appellant alleges is a First Amendment injury where traceability and redressability are met as to the Presiding Judge. In fact, the record shows Presiding Judge Gates disputes no element of standing. The Court should find Plaintiff has standing to bring this First Amendment claim against the Presiding Judge, and grant relief.[7]

Respectfully submitted this 12th day of January 2026.

/s/ Phillip Potter
Phillip Potter
Pro Se
Appellant – Plaintiff

---

[7] Gates revealed Administrative Order 2023-159 in her dismissal motion (ER-264). Neither Appellant nor the Attorney General were aware of this Order which was referenced nowhere in Attorney General Mayes' dismissal motion (ER-330). The existence of this Order does not change the calculus, other than to provide possible grounds for an amended damages claim to compensate for ongoing irreparable injuries given Gates' plenary authority to rescind that Administrative Order. Regardless, Appellant is entitled to prospective declaratory and injunctive relief.

CERTIFICATE OF SERVICE

I hereby certify that on January 12, 2026, I electronically filed the

foregoing document with the Clerk of the United States Court of Appeals for the

Ninth Circuit by using the circuit's CM/ECF and ACMS system.  Appellant also

sent opposing counsel PDF copies of the attached documents / filings via email.

/s/ Phillip Potter

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing reply complies with the type-volume limitation of Fed. R. App. P. 27 because it contains 2,590 words and does not exceed 10 pages.  This reply complies with the typeface and the type style requirements of Fed. R. App. P. 27 because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 14-point Times New Roman typeface.

/s/ Phillip Potter