Phillip Potter
2301 N. 66th Street
Scottsdale, Arizona 85257
Phone: 480.459.0310
E-Mail: phillip.t.potter@gmail.com
Plaintiff
Pro Se

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Phillip Potter,<br><br>                Plaintiff,<br><br>v.<br><br>Robert Meza, et al.,<br><br>                Defendants. | No. 2:25-cv-00663-PHX-DWL<br><br>**RESPONSE TO ALANE ORTEGA'S MOTION TO DISMISS SECOND AMENDED COMPLAINT**<br><br>(Oral Argument Requested) |

"Defendant Alane Ortega moves under Federal Rule of Civil Procedure 12(b)(1) to dismiss the Second Amended Complaint [Doc. 104] for lack of subject matter jurisdiction." She argues "this Court cannot have subject matter jurisdiction over any state law claims under 28 U.S.C. § 1332 because there is not complete diversity of citizenship. Nor does this Court have federal question jurisdiction over Potter's claims against Ortega because Potter does not assert any federal claims against her – he asserts only state law claims for abuse of process and aiding and abetting abuse of process by former Defendants Meza and Robson." (Doc. 108, p. 1). The Court should deny.

## ARGUMENT

"A court with jurisdiction has a 'virtually unflagging obligation' to hear and resolve questions properly before it." *Fed. Bureau of Investigation v. Fikre,* 601 U.S. 234, 240, 144 S. Ct. 771, 773, 218 L. Ed. 2d 162 (2024). "[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties." 28 U.S.C. § 1367(a). "By use of the word 'shall,' the statute makes clear that" Congress mandated a district court's initial exercise of supplemental jurisdiction, subject to any subsequent discretionary decision to decline that jurisdiction based on circumstances or events. *Exec. Software N. Am., Inc. v. U.S. Dist. Ct. for Cent. Dist. of California,* 24 F.3d 1545, 1555-56 (9th Cir. 1994). The Court has original jurisdiction and supplemental jurisdiction arising under 28 U.S.C. §§ 1331 and 1367, and Ms. Ortega offers no reason to decline to exercise supplemental jurisdiction. To the contrary, her and her co-defendants' efforts to split claims and cause

1

chaos, rather than address the merits, gives this Court reason to maintain original and supplemental jurisdiction over all defendants until the case has reached true finality.

I. The Court Has Original Jurisdiction and Should Exercise Supplemental Jurisdiction

"Plaintiff's federal claims ... are no longer pending. ... *For this reason alone*, the Court declines, pursuant to § 1367(c)(3), to exercise supplemental jurisdiction over Plaintiff's state-law claims against Ortega." (Doc. 100, p. 64). The Court is faced with, and will most likely be faced again with, deciding "Plaintiff's federal claims". Until those claims are fully extinguished through appeal, the Court should not rule in Ortega's favor.

A. Co-Defendants' Status

As a preliminary matter, Ortega points to co-defendants Robert Meza and Karrin Taylor Robson to support dismissal. Plaintiff agrees it is worthwhile to touch on the status of each co-defendant to inform the dismissal decision. Of general note, because the Court has not issued Fed. R. Civ. P. 54(b) final judgments dismissing any defendant in this multi-party case, all original defendants "remain parties to the case subsequent to the Court's nonfinal [dismissal] order". *Dooley v. United Technologies Corp.*, 152 F.R.D. 419, 424 (D.D.C.1993). As it stands, the dismissal orders are interlocutory and subject to modification. *Credit Suisse First Boston Corp. v. Grunwald*, 400 F.3d 1119, 1124 (9th Cir. 2005) ("Federal Rule of Civil Procedure 54(b) states that a district court can modify an interlocutory order 'at any time' before entry of a final judgment, and we have long recognized 'the well-established rule that a district judge always has power to modify or to overturn an interlocutory order or decision while it remains interlocutory.'").

1. Robert Meza and Karrin Taylor Robson

On February 12th, Ms. Taylor Robson removed herself from the race to become

Arizona's Governor.[1] While her announcement surprised many, revelations brought to light in this suit regarding her knowing involvement in Meza's Medicaid fraud and political patronage scheme, coupled with headline-grabbing Medicaid fraud and political patronage schemes in Minnesota, California, and New York, helped drive her to withdraw. Ms. Taylor Robson continues to jockey for political power and retains value to her political party as a funder and fundraiser but, like Mr. Meza, her viability for elected office is forever compromised. Regardless, Plaintiff will continue to vindicate what he believes are legitimate claims against both Meza and Taylor Robson. As a state legislator and state actor, respectively, the Court dismissed those two defendants from Counts Three, Four, and Five on due to *Noerr-Pennington* immunity. (Doc. 100, p. 50). "The *Noerr-Pennington* doctrine protects the First Amendment 'right of <u>the people</u> ... to petition the Government for a redress of grievances.' U.S. Const. amend. I. Under *Noerr-Pennington,* 'those who petition any department of the government for redress are generally immune from statutory liability for their petitioning conduct.'" *Nunag-Tanedo v. East Baton Rouge Parish School Board,* 711 F.3d 1136, 1138-1140 (9th Cir. 2013) (emphasis added). Should a dismissal decision become final as to these two defendants, Plaintiff will argue on appeal that a state legislator acting in an official non-legislative capacity to conceal public records engages in government speech and petitioning, not constitutionally protected free speech and petitioning, meaning First Amendment protections do not apply. Indeed, a legislator's petitioning and "[s]peech pursuant to official duties is 'the government's own speech'". *Reges v. Cauce*, No. 24-3518, 2025 WL 3685613, at *25 (9th Cir. Dec. 19, 2025) (citing *Kennedy v. Bremerton Sch. Dist.,* 597 U.S. 507, 527 (2022)). Plaintiff believes the Ninth Circuit would find that "filing

---

[1] *See* https://x.com/KTaylorRobson/status/2022060693500178492

3

state court litigation in retaliation for the exercise of constitutionally protected rights" is actionable since it was Plaintiff, not Meza or Taylor Robson, who exercised the First Amendment right to petition. *Yelp Inc. v. Paxton,* 137 F.4th 944, 952 (9th Cir. 2025).

<u>2. Presiding Judge Pamela Gates</u>

The Court dismissed Presiding Judge Gates finding no case or controversy exists (Doc. 100, p. 61) while the December 16, 2025 denial of a preliminary injunction (Doc. 96) is now on appeal (Ninth Circuit No. 25-7977), and both the June 20, 2025 preliminary injunction denial (Doc. 47) and the nonfinal dismissal order (Doc.100) are subject to pendent appellate jurisdiction. *Arc of Cal. v. Douglas*, 757 F.3d 975, 993 (9th Cir. 2014); *Doe v. Regents of the Univ. of California*, 891 F.3d 1147, 1154 (9th Cir. 2018). The Presiding Judge's appellate motion papers show she now relies primarily on judicial immunity to avoid suit. Of note, she has refused to defend § 12-3201 on the merits in the Ninth Circuit and never defended the statute in this Court. In the end, Plaintiff believes the circuit court will find there exists an Article III case or controversy, and the Presiding Judge has no judicial immunity for acts taken in her administrative officer position per binding caselaw decided in the Arizona Supreme Court. *See Maricopa County v. Dann,* 157 Ariz. 396, 400 (1988) (Presiding Judges' "'administrative authority' does not include 'authority over' private parties'", meaning they lack "authority to compel persons outside the judiciary to" do, or to refrain from doing, anything); *Maricopa County v. Tinney,* 183 Ariz. 412, 414 (1995) (Presiding Judges have no jurisdictional authority over disputes between private parties, and it would be "inappropriate" to attempt to assert any such jurisdictional authority). A Presiding Judge acting in an official administrative capacity performs administrative acts, not judicial acts, and "a judge is not immune from liability for nonjudicial actions, i.e.*,* actions not taken in the judge's judicial capacity." *Mireles v.*

*Waco,* 502 U.S. 9, 11 (1991).  Presiding Judges also have no jurisdictional authority to engage in judicial acts when exercising the power of their administrative office, and "a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction."  *Id* at 12.  Plaintiff believes there is a strong chance the Ninth Circuit will overturn the "no case or controversy" decision.

### 3. Attorney General Kris Mayes

The Court dismissed the Attorney General as a defendant in the A.R.S. § 12-3201 First Amendment facial challenge ("Count One") while she was not dismissed as to the A.R.S. § 13-2921 vagueness challenge ("Count Two"). (Doc. 100, p. 66).  On appeal, it appears Mayes has conceded §§ 12-3201(E)(1)(b), (d), (e), and (f) are overbroad and/or vague as she has never defended any of those provisions despite ample opportunity.  This indicates a strong likelihood Count One will return to the district court on remand.

## B. Legal Standard

"[J]urisdiction over a federal-law claim brings with it supplemental jurisdiction over a state-law claim arising from the same facts."  *Royal Canin U.S.A., Inc. v. Wullschleger*, 145 S. Ct. 41, 48 (2025). "[28 U.S.C]. § 1367(c) explains that the supplemental jurisdiction [] is in some measure discretionary.  That subsection provides that a district court 'may decline to exercise supplemental jurisdiction' in three specific situations: (1) if the supplemental claim 'raises a novel or complex issue of State law'; (2) if the supplemental claim 'substantially predominates' over the claims within the court's original jurisdiction; and (3) if the district court 'has dismissed all claims over which it has original jurisdiction.'"  *Id* at 50.

## C. The Court Should Retain Supplemental Jurisdiction

There is no doubt the Court has original jurisdiction of claims arising under Article

III, including all claims pleaded as no dismissal order is yet final. "'Arising under' jurisdiction – more often known as federal-question jurisdiction – enables federal courts to decide cases founded on federal law. ... [T]he determination of jurisdiction is based only on the allegations in the plaintiff's 'well-pleaded complaint' – not on any issue the defendant may raise. That longstanding rule makes the complaint – the plaintiff's own claims and allegations – the key to 'arising under' jurisdiction. *Id* at 47. Plaintiff's claims create "federal-question jurisdiction" as Ms. Ortega acknowledges there is at least "one live federal claim" now. (Doc. 108, p. 4). Accordingly, the Court should treat Ms. Ortea's dismissal request are premature until no "live federal claim" remains after this Court's and the Ninth Circuit's federal question determinations on Counts One, Two, and Three ultimately become final. Before then, Ortega's request invites nothing but administrative chaos for state courts and federal courts. One can hardly imagine the waste of judicial resources if the Court declined to exercise supplemental jurisdiction during an appeal, only to have that appeal returned with instructions to adjudicate all claims as to all parties, including Ms. Ortega, where there has been a state suit launched in the interim.

### 1. There Is No Novel or Complex Question Of State Law

Ms. Ortega floats the empty argument that "factually intensive complex questions of intent and what constitutes 'judicial process' under Arizona law [present] novel or complex issues of State law". (Doc. 108, p. 7). There is nothing "novel or complex" about adjudicating the well-established elements for Abuse of Process and Aiding and Abetting claims.

### 2. The Supplemental Claim Does Not Predominate

The First Amendment facial challenges (Count One and Count Two) predominate in this action, as does the 42 U.S.C. § 1983 claim for damages (Count Three).

### 3. The District Court Has Not Dismissed All Claims Over Which It Has Original Jurisdiction

Again, Ms. Ortega acknowledges there is at least "one live federal claim". (Doc. 108, p. 4). And early indications from Ninth Circuit filings suggest the likelihood that the Court will be tasked on remand with deciding federal Counts One, Two, and Three.

### 4. Summary

In December, the Court denied a preliminary injunction (Doc. 96) that Plaintiff immediately appealed. Three months later, the Ninth Circuit has not granted Appellees' (Mayes and Gates) motion to dismiss the appeal for lack of jurisdiction as Appellees' have argued. Plaintiff is told this timing and pattern indicates the circuit court will find it has appellate jurisdiction and pendent appellate jurisdiction and will rule on the substantive motions. Further, just last month Ms. Taylor Robson abruptly ended her bid for the Office of the Governor as it became increasingly clear from appellate filings that (1) the Count One *Ex parte Young* state officer defendants (Mayes and Gates) had declined to defend the constitutionality of §§ 12-3201(E)(1)(b), (d), (e) and (f) in the district court or the circuit court; (2) the Attorney General's defense of §§ 12-3201(B) and (E)(1)(a) and (c) would fail when the Supreme Court's *BE & K* legal standards and the Ninth Circuit's *Sosa* legal standards delineating genuine petitioning from sham petitioning are applied (Doc. 100, pp. 46-47); and (3) the Ninth Circuit is unlikely to uphold the finding that a state legislator, acting in his official capacity, while defending a request to inspect public records may benefit from protections guaranteed under the First Amendment. With federal claims still pending per Fed. R. Civ. P. 54(b) and with those federal claims likely to return on appeal should they be finalized, it would be wise for the Court to deny Ortega's motion without prejudice pending the outcome of appellate decisions. Indeed,

nothing stops the Court from *sua sponte* declining to exercise supplemental jurisdiction after the Ninth Circuit has had a chance to provide the final word.

II. Plaintiff Requests an Evidentiary Hearing on the Judicial Notice Request

Ms. Ortega asks the Court to take judicial notice of Administrative Order 2023-159. Per Fed. R. Evid. 201(e), "[o]n timely request, a party is entitled to be heard on the propriety of taking judicial notice and the nature of the fact to be noticed. If the court takes judicial notice before notifying a party, the party, on request, is still entitled to be heard." Plaintiff asks to be heard in oral argument as he disputes every fact contained in that administrative order, time has shown that order to be erroneous, and the order was obtained as part of a concerted effort "to influence or manipulate proceedings in one case in order to gain tactical advantage in another". *Fink v. Gomez*, 239 F.3d 989, 992-993 (9th Cir. 2001). Requiring Ms. Ortega to testify as to the facts and circumstances surrounding Administrative Order 2023-159 and her failed attempts in state courts to secure a similar order (Doc. 104 at 83-84, 260) are worthy of engaging the Court's truth-finding function. Plaintiff asks the Court to conduct an evidentiary hearing regardless of its ultimate decision on Ortega's motion to dismiss as other defendants made the same judicial notice request. Thus, Fed. R. Evid. 201(e) still applies. Plaintiff contends the pursuit of a vexatious litigant designation was fraudulently obtained for the improper purpose of manipulating proceedings in other cases, now including this case. He disputes all facts contained in that administrative order. The Court is in position to conduct an evidentiary hearing on the facts and circumstances surrounding the pursuit and grant of that order. Defendants requested judicial notice, meaning they invited the dispute and the evidentiary hearing that would accompany. Plaintiff is confident a hearing with defendant testimony would provide an expedited route to get to the truth and streamline this case.

## CONCLUSION

The Court should deny the motion outright or, in the alternative, should deny without prejudice pending decisions on federal claims now before the Ninth Circuit. In addition, the Court should order Ms. Ortega and her co-defendants to participate in an evidentiary hearing on disputes raised regarding what facts can be properly gleaned from the pursuit and grant of Administrative Order 2023-159, and how those facts were established to issue the order.[2]

---

[2] To aid in its decision, Plaintiff asks the Court to take judicial notice of undisputed facts that Ms. Ortega has referenced Administrative Order 2023-159 while participating in state court motion practice that asks Plaintiff to be arrested. The latest filing from February 27, 2026 is attached as Attachment A. Therein, Plaintiff provided evidence that Ms. Ortega has full knowledge of every element of her client's past and ongoing criminal activities, including intent to defraud. This Court should expect Ms. Ortega and her attorneys to display candor here, and has authority to evaluate Ortega's adherence to professional standards. *See In re Girardi,* 611 F.3d 1027, 1035 (9th Cir. 2010) ("[T]he court may consider codes of professional conduct in determining whether an attorney's conduct falls below the standards of the profession" sufficient to justify sanctions under the Court's inherent authority.). That inherent authority permits district courts to evaluate an attorney's "[r]ecklessness, when combined with an additional factor such as frivolousness, harassment, or an improper purpose", including an improper purpose to conceal a client's frauds or crimes. *Gomez v. Vernon*, 255 F.3d 1118, 1134 (9th Cir. 2001). Indeed, it is well-established that violations of professional standards are generally considered reckless actions knowingly performed. *Gadda v. Ashcroft,* 377 F.3d 934, 943 (9th Cir.2004) ("We have ... inherent power to suspend or disbar an attorney" as one of many sanctions for professional misconduct displayed in federal courts.). This would not be the first time Ms. Ortega has violated professional standards in Arizona's federal courts. "'[O]n April 14, 2021, the Discipline Probable Cause Committee of the Supreme Court of Arizona found that 'in several cases and in several forums', Ms. Ortega 'violated the following Rules of the Supreme Court of Arizona: Rule 42, Ariz. R. Sup. Ct., ERs, 1.2, 1.3, 3.1, 3.2, 3.4(c), and 8.4(d)', including in case cv-15-00357 before the U.S. District Court for the District of Arizona where, on December 5, 2016, the Hon. John J. Tuchi issued an order admonishing her for knowingly 'furthering a [client's] falsehood'". (Doc. 104 at 102; Attachment B). *See also Popovic v. Spinogatti*, No. CV-15-00357-PHX-JJT, 2016 WL 6996364 (D. Ariz. Dec. 5, 2016) also available online at https://www.casemine.com/judgement/us/5914f65cadd7b0493498f8cf.

DATED this 4th day of March 2026.

By: <u>//s//</u>
Phillip Potter
Plaintiff
Pro Se