Attachment A

Clerk of the Superior Court
*** Electronically Filed ***
C. Cruz, Deputy
2/27/2026 7:55:02 PM
Filing ID 21563103

Phillip Potter
2301 N. 66th Street
Scottsdale, Arizona 85257
Phone: 480.459.0310
E-Mail: phillip.t.potter@gmail.com
Respondent

## IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

## IN AND FOR THE COUNTY OF MARICOPA

| | |
|---|---|
| In Re the Matter of: | Case No.: FC2020-090224 |
| **TASNEEM DOCTOR,** | **RESPONSE TO MOTION FOR CIVIL ARREST WARRANT** |
| Petitioner / Mother, | |
| and | (Assigned to the Hon. Rachel Hernandez) |
| **PHILLIP POTTER,** | (evidentiary hearing requested) |
| Respondent / Father. | |

Petitioner Tasneem Doctor, through counsel Timothy Ducar, filed a February 12, 2026 Motion for Civil Arrest Warrant on grounds that Respondent Phillip Potter did not attend a deposition based on "a Subpoena in a Family Case [] issued pursuant to the Arizona Rules of Family Law Procedure and personally served on Respondent". As Respondent explained to Mr. Ducar, the subpoena is facially defective and invalid for a host of reasons. Respondent asks the Court to schedule an evidentiary hearing, open discovery, and ultimately deny Petitioner's request in full. Petitioner's request, and the

1  improper purposes beyond it, provides additional evidence that the Court should grant

2  Respondent legal decision-making over the parties' minor child.

3                                  ARGUMENT

4  I. There Are No Grounds to Issue a Civil Arrest Warrant

5

6          Citing "Arizona Rules of Family Law Procedure Rule 52", Petitioner declares

7  grounds for Respondent's arrest exist because Respondent did not appear for an oral

8  deposition "on February 6, 2026, at 3:00 p.m. Arizona time" subsequent to a subpoena

9  "issued" on "January 28, 2026" and served "the 29th of January, 2026 at 3:31 pm" (*see*

10 February 2, 2026 Affidavit of Service).  Petitioner contends "Mr. Potter did not file a

11 written objection" but acknowledged three paragraphs later that "Mr. Potter sent written

12 correspondence stating that he would not comply with the subpoena and would not appear

13 for the examination."  As Respondent explained to Mr. Ducar (*see* Exhibit A), the

14 subpoena was deficient for a host of reasons including, but not limited to, its stated

15 reliance on Arizona Rules of Civil Procedure Rule 45, insufficient notice, the lack of a

16 petition applicable to the deposition's apparent subject matter, and subpoenas do not apply

17 to parties in family law matters.  To that last point, neither Arizona Rules of Civil

18 Procedure Rule 45 nor Arizona Rules of Family Law Procedure Rule 52 govern party

19

20 discovery in a family law case.  Arizona Rules of Family Law Procedure Rules 51 and 57

21 govern.  And per ARFLP 57(b)(1), "[u]nless all parties agree or the court orders

22 otherwise, a party who wants to depose a person must serve written notice to every other

23 party at least 10 days before the date of the deposition."  Petitioner admits serving

24

25

26

                                        2

Respondent on January 29th for a February 6th oral deposition – eight days prior to the scheduled date, not "at least 10". Petitioner's silence on this point speaks to the fact that the parties did not agree to the date chosen or to service occurring less than ten days prior. In addition, Respondent had never heard of Timothy Ducar given that Mr. Ducar failed to include a certificate of service in his deficient January 14, 2026 Notice of Appearance.[1] *See* ARFLP 43(b)(3) ("The date and manner of service must be noted on the last page of the original of the served document or in a separate certificate".).[2]

The only petition before the Court involves "the determination of legal decision-making" as counsel Alane Ortega described it in a January 28, 2026 Motion to Continue Evidentiary Hearing. That said, Mr. Ducar now declares for the first time in the instant motion that he seeks to conduct a "Judgment Debtor Examination". Taking Mr. Ducar at his word provides even more reasons to deny the motion. If Petitioner seeks to enforce a finalized judgment, then she will first need to file a proper "motion, petition or other pleading" and properly serve that document where ARFLP 23(a) and ARFLP 35(a) tell us a subpoena is not "a motion, petition or other pleading". *See* ARFLP 43(c) ("After the time for appeal from a judgment has expired or a judgment has become final after appeal, a motion, petition, or other pleading requesting to modify, vacate, or enforce that

---

[1] Mr. Ducar never accomplished service via any means. The Court should strike Mr. Ducar's Notice of Appearance from the record as procedurally deficient.

[2] Since there was no prior communication, the parties also did not agree to a deposition taking place by remote means. *See* ARFLP 57(b)(4) ("The parties may agree, or the court may order that a deposition be taken by telephone or other remote means.").

judgment must be served in the same manner that a summons and pleading are served under Rules 40(f)(1) or 41, as applicable.).  If Petitioner seeks to enforce a judgment now on appeal, then the Curt should note the appellate court has jurisdiction.  This case has now reached appeal for a third time where Respondent will argue, among other things, that Petitioner has knowingly engaged in long-standing factual misrepresentations[3] for numerous intentional improper purposes, as evidenced in small part below.

II. Respondent Requests An Evidentiary Hearing On the Judicial Notice Request

Petitioner asks the Court to "take judicial notice that Respondent Phillip Potter has previously been designated a vexatious litigant by Administrative Order of the Maricopa County Superior Court pursuant to A.R.S. § 12-3201.  See Administrative Order No. 2023-159 (Nov. 2, 2023)."  Judicial notice operates under Ariz. R. Evid. 201.  And Ariz. R. Evid. 201(e) guarantees "[o]n timely request, a party is entitled to be heard on the propriety of taking judicial notice and the nature of the fact to be noticed."  Respondent wishes to exercise that right and timely requests an evidentiary hearing be conducted on the propriety of taking judicial notice and on the nature of any facts to be noticed.   With discovery and party testimony, he will prove the judicial notice request fails for no less than eight reasons.  First, Ariz. R. Evid. 201(a) provides judicial notice can only be taken

---

[3] *See State v. Coddington*, 135 Ariz. 480, 481, 662 P.2d 155, 156 (App.1983)  (The term "misrepresentation" means the "concealment of what is true as well as. the assertion of what is false".); *Universal Health Services, Inc. v. U.S. ex rel.  Escobar*, 579 U.S. 176 (2016) ("[H]alf-truths – representations that state the truth. only so far as it goes, while omitting critical qualifying information – can be actionable misrepresentations.").

of "adjudicative facts" where "[a]djudicative facts are simply the facts of the particular

case", and "Administrative Order No. 2023-159" provides no "facts of this particular [FC

2020-090224] case". Second, Ariz. R. Evid. 201 requires noticeable facts to be relevant

to the dispute, and this manufactured dispute resolves on a deficient subpoena. Third,

Petitioner was required to identify what specific facts she sought to be noticed and ensure

"the court is supplied with the necessary information" per Ariz. Evid. 201(c)(2) but she

failed to do so. Fourth, judicial notice "is for cold, hard, undisputable facts", *CTC Glob.*

*Corp. v. Huang*, 2018 WL 4849715, *3 (C.D. Cal 2018), not administrative records.

Fifth, Respondent disputes every factual statement contained in that administrative order

and courts "may not take notice of disputed facts stated in public records." *Lee v. City of*

*Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001).[4] Sixth, under Arizona law, administrative

orders only apply to court personnel and not to private parties, meaning Administrative

Order No. 2023-159 has no lawful effect. *See Maricopa County v. Dann,* 157 Ariz. 396,

400 (1988) (Presiding Judges' "'administrative authority' does not include 'authority

over' private parties'", meaning they lack "authority to compel persons outside the

judiciary to" do, or to refrain from doing, anything); *Maricopa County v. Tinney,* 183

---

[4] Time has shown nearly every disputed fact was, in fact, wrong. For instance, the administrative record suggests then-active cases CV2021-005501, CV2021-013210, and CV2021-017889 were baseless but, as those court records show, Respondent has since secured non-nuisance financial settlements and favorable final judgments in those cases after surviving motions to dismiss. As a matter of law, those settlements prove each of those cases were neither baseless nor filed for an improper purpose. *See Relevant Grp., LLC v. Nourmand*, 116 F.4th 917, 933-938 (9th Cir. 2024).

Ariz. 412, 414 (1995) (Presiding Judges have no jurisdictional authority over disputes between private parties, and it would be "inappropriate" to attempt to assert any such jurisdictional authority).  <u>Seventh</u>, the referenced administrative order cannot be applied to Respondent as that would patently violate the Arizona Constitution.  *See* Ariz. Const. art. 2, § 5 ("The right of petition, ... , shall never be abridged.").  <u>Eighth</u>, Petitioner's reference to the inapplicable administrative order provides actionable and sanctionable evidence of an "improper purpose" through ongoing efforts "to influence or manipulate proceedings in one case in order to gain tactical advantage in another".  *Fink v. Gomez*, 239 F.3d 989, 992-993 (9th Cir. 2001).  Court records, discovery, and sworn testimony will show Petitioner and counsel Alane Ortega repeatedly asked courts to incarcerate Respondent and twice attempted to have Respondent found statutorily vexatious with no success as part of a concerted effort to conceal evidence of Petitioner's pervasive financial crimes.  Petitioner is responsible for those efforts, including through Mr. Ducar's latest request to incarcerate.  *See Panzino v. City of Phoenix*, 196 Ariz. 442, 445, ¶ 6, 999 P.2d 718, 721 (2000) ("Because the attorney-client relationship is governed by principles of agency, the principal is bound by his chosen agent's deeds".).

   To give context, Respondent has spent six years refusing to provide full financial disclosure that Arizona family law statutes and procedural rules require to establish her income and assets.  She has actively concealed (1) "business" dealings with "Robert Meza" which generated income from multiple sources; (2) financial and non-financial benefits derived from her company, EB Medical Consulting, LLC; and (3) "the sale of

real estate made by members of her family or purchased by her parents", although Petitioner actually purchased and legally owned the real estate.  *See* e.g., August 14, 2024 Mother's Request for Protective Order.

Robert Meza is a former State Representative / Senator forced to leave the legislature after *The Arizona Republic* published an article[5] implicating him in a public corruption and Medicaid fraud scheme.  Tasneem Doctor was integral to that scheme where, under the artifice of a benevolent legislator supporting his "constituents", Meza exploited his office to solicit discretionary public funds from state agency directors, state legislators, and the Governor on behalf of six nonprofit behavioral health organizations. But he fraudulently omitted the material fact from those funders that the nonprofits' complicit senior executives were covertly paying him to secure those funds.  The nonprofits immediately stopped paying Meza once the scheme came to light, and Meza left office once a legislative ethics committee chair publicly declared good cause existed to find his actions criminal.  Petitioner served as a senior executive or Board member for three of the six nonprofits where she knowingly facilitated Meza's financial payments.

In 2016, after Petitioner spent ten years as a state employee, Meza secured her employment with one of the nonprofits covertly paying him.  Simultaneously, Petitioner launched EB Medical Consulting, LLC.  Despite possessing no private business background or applicable professional experience, this single member LLC generated

---

[5] *See* https://tinyurl.com/2s3wedcf.

$147,085 in revenue from its four clients in eighteen months.  *See* <u>Exhibit B</u>.  Petitioner

purported to "procure value-based contracts with Managed Care MCO's"; i.e., A.R.S. §

36-2906.01(A) Arizona Health Care Cost Containment System (AHCCCS) "system

contractors" who administer the state's Medicaid system.  In truth, these "clients" were

paying Petitioner in return for Meza leveraging his public office and lobbying the MCOs'

executives to provide value-based contracts, enhanced rate services contracts, and block

grants.  One client secured hundreds of thousands of dollars in grants, contract advances,

and enhanced rate services contracts paying "135% of standard Medicaid rate"[6] but still

failed within one year forcing the MCO system contractor to "forg[i]ve contract advances

to [the EB Medical Consulting, LLC client] totaling $947,453".[7]  Rather than pay Meza

directly, those clients paid Petitioner via EB Medical Consulting, LLC.  Petitioner and her

father, Abdulla Doctor, used that revenue to acquire real property located at 3305 North

25th Place in Phoenix.  To compensate Meza, Petitioner and her father hired Meza's

husband as the buy and sell real estate agent.  In the end, this aspect of the scheme made

approximately $30,000 for Meza and $150,000 for Tasneem Doctor, and caused

AHCCCS to absorb a nearly $1,000,000 loss.

    In September 2019, Petitioner applied to Mattamy Home Funding, LLC for a

---

[6] *See* May 2018 edition of *Psychiatric Services* located online at
https://psychiatryonline.org/doi/10.1176/appi.ps.201700516.

[7] *See* 2018 AHCCCS System Contractor IRS Form 990 Schedule O, p. 26 located
online at
https://projects.propublica.org/nonprofits/organizations/861030444/2019024093493
00810/full.

$424,000 home mortgage for real property located at 2091 E. Wisteria Drive in Chandler, Arizona. Petitioner had no intention to live in that house but fraudulently obtained a mortgage based on false statements that the property would serve as her primary residence. Her parents planned to occupy that home as their primary residence but her father, Abdulla Doctor, did not want his name attached to the mortgage. Petitioner's mother, Brenda Doctor, had not worked in thirty years and had no personal assets to qualify for a mortgage. At her parents' request, Tasneem Doctor applied for the mortgage and defrauded the mortgage company to secure a lower interest rate. Appellee admitted her intent to defraud the mortgage company under oath on October 26, 2021, and detailed the agreement made with her parents to perpetrate that fraud. Per Petitioner's sworn statements: "So I put the mortgage in my name because I was getting a better interest rate. ... For the Wisteria home." She continued: "I was getting a better mortgage rate, but they paid the down payment and the fees to secure the home, whatever that -- you know, the down payment and whatever the -- the fees to whatever -- the $20,00 that was initially funded. I've never paid the mortgage. They reimbursed -- I -- I wired the money from my account, and they reimbursed me the same day. So I did not use any community funds to pay for that house. And -- and we -- this is just the evidence showing that the mortgage was paid through them and all the down payment and any fees that went through that house, and was paid through my parents." *See* Exhibit C.

Petitioner's admission that she "put the mortgage in [her] name because [she] was getting a better interest rate" confirmed her intent to fraudulently secure a lower interest

rate than would have been available had she truthfully submitted that the Wisteria property would not be her primary residence.  *See State v. Thompson,* 194 Ariz. 295, ¶ 13, 981 P.2d 595, 598 (App. 1999) ("[A]n intent to defraud is found where the defendant intends to cause a pecuniary loss or gain.").  Tasneem Doctor's admission provides undeniable evidence of the most difficult element to prove when it comes to mortgage fraud and bank fraud.  *See* A.R.S. § 13-2320; 18 U.S.C. § 1014; 18 U.S.C. § 1344.  Further, partially disclosed financial records show that, on October 7, 2019, Tasneem Doctor deposited $91,668.10 into her JPMorgan Chase account x0190.  *See* Exhibit D.  A "check details" image shows Brenda Doctor wrote Tasneem Doctor a check for $91,668.10 on October 7, 2019 from JPMorgan Chase account x1159.  *See* Exhibit E. That check lists "Brenda S. Doctor" and "Abdulla Doctor" as the account holders at "4786 W. Nogales Way, Eloy, AZ 85131-3072".  On October 8, 2019, Petitioner authorized a wire transfer of $91,668.10 from her JPMorgan Chase account x0190 to "First American Title Insurance" with reference to "Ref: File No: 435-5996484 Property Address: 2091 E Wisteria DR Chandler AZ 85286".  See Exhibit D.  As Tasneem Doctor admitted, Abdulla Doctor and Brenda Doctor made $3,331.21 mortgage payments to "Central Loan Administration and Reporting" from JPMorgan Chase account x0851 bank records registered to "Abdulla Doctor or Brenda Doctor" at "2091 E. Wisteria Dr., Chandler, AZ 85286-0307", as evidenced by an online payment made from that account on "11/25" per the parents' "November 21, 2019 through December 18, 2019" account statement. Exhibit F.  Appellee and her parents conspired to perpetrate, and did perpetrate, wire

fraud.  *See* 18 § U.S.C. 1343; 18 § U.S.C. 1349.

In sum, Tasneem Doctor's "financial information" is intertwined with her and her parents' fraudulent mortgage and real estate dealings, and with Robert Meza's trading of his public office for private gain.  Counsel Alane Ortega was, and is, fully aware of her client's financial activities.  Petitioner's motion practice, including the instant motion, to intimidate Respondent with the "threat of sanction and a finding of contempt" raises considerable ethical questions.  *See e.g.,* E.R. 3.3(b).  Her counsel's tactics, including the overt acts Ortega has taken, and continues to take, to conceal financial information and to intimidate Respondent with threats of incarceration are criminal acts in and of themselves. *See e.g.*, A.R.S. § 13-2409 ("A person who knowingly attempts by means of ... intimidation ... to obstruct, delay or prevent the communication of information or testimony relating to a violation of any criminal statute to a peace officer, magistrate, prosecutor or grand jury ... is guilty of a class 5 felony").

III. The Court Should Sanction Petitioner's Attorney Per A.R.S. § 12-349

A.R.S. § 12-349(A)(4) mandates "in any civil action commenced or appealed in a court of record in this state, the court shall assess reasonable attorney fees, expenses and, at the court's discretion, double damages of not to exceed five thousand dollars against an attorney or party, ..., if the attorney or party does any of the following: ... 4. Engages in abuse of discovery."  Subpoenas are tools of discovery.  ARFLP 52.  And it is a patent abuse of discovery for an attorney in a family law case to demand an opposing party appear at a deposition subsequent to a subpoena when the attorney (1) did not file a

procedurally compliant notice of appearance containing a certificate of service, (2) did not

contact the opposing party, (3) scheduled the oral deposition less than ten days in advance,

(4) did not act seek discovery based on an open petition, and (5) then asked a trial court to

arrest the opposing party for not providing discovery.  No reasonable attorney would

violate discovery rules in so many ways and then compound those errors into the instant

motion.  Per A.R.S. § 12-349(A)(4), the Court "shall" sanction Mr. Ducar.

CONCLUSION

The Court should conduct an evidentiary hearing and deny the motion.

**RESPECTFULLY SUBMITTED** this 27th day of February, 2026.

 /s/ Phillip Potter
Phillip Potter
Respondent/Father

**ORIGINAL** of the foregoing filed / e-filed
this 27th day of February, 2026 with:

Clerk of the Court
MARICOPA COUNTY SUPERIOR COURT

**CONFORMED COPY** automatically transmitted by
Superior Court Clerk, upon confirmation of electronic filing, to:

The Honorable Rachel Hernandez
JUDGE OF THE SUPERIOR COURT

**COPY** of the foregoing e-mailed and mailed
this 27th day of February, 2026 to:

Alane M. Ortega
ORTEGA & ORTEGA, PLLC
7227 North 16th Street, Suite 245
Phoenix, AZ 85020
arobylaw.efile@gmail.com
alane@ortegalawyers.com
*Attorney for Petitioner / Mother*

By: Phillip Potter
 /s/ Phillip Potter

# Exhibit A

 Gmail

## FC2020-090224

**Phil Potter** <phillip.t.potter@gmail.com>                                                Fri, Feb 6, 2026 at 2:54 PM
To: "tducar@azlawyers.com" <tducar@azlawyers.com>

Mr. Ducar,
You served a "subpoena in a family case" (FC2020-090224) on January 29th purporting to command documents production and my appearance at a February 6th deposition.  I will not comply with the subpoena which is fatally deficient for a host of reasons including, but not limited to: I am a party to this family law case not a witness, the subpoena cites extensively to Ariz. Civ. P. 45 but the Arizona Rules of Family Law Procedure control, the subpoena was served less than ten days from demanded performance, there is no scheduling order which would permit this discovery, and it is even questionable to me whether you function as the counsel who represents Tasneem Doctor since Alane Ortega entered papers in FC2020-090224 after the subpoena was issued.  Please clarify your involvement in this matter.   And please provide me copies of any other subpoenas issued in this case, and any efforts to secure documents in any case to which I am party.
Regards,
Phillip Potter

Exhibit B



**1120S**  **Overflow Statement**  2017
Page 3

Name(s) as shown on return
EB Medical Consulting LLC

FEIN
5801

### Supplies

| Description | Amount |
| --- | --- |
| Office supplies | $ 490 |
| Total: | $ 490 |

### Telephone

| Description | Amount |
| --- | --- |
| Telephone | $ 1,750 |
| Total: | $ 1,750 |

### Travel

| Description | Amount |
| --- | --- |
| | $ 393 |
| Total: | $ 393 |

### ...lities

| Description | Amount |
| --- | --- |
| | $ 1,200 |
| Total: | $ 1,200 |

### Consulting Income

| Description | Amount |
| --- | --- |
| Itether | $ 72,703 |
| IMHR Epic... | 20,652 |
| Sojourner ...enter | 6,000 |
| David Lieb... | 5,000 |
| Total: | $ 104,355 |

### Overflow Statement

| Description | Amount |
| --- | --- |
| | $ 13,500 |
| | 28,011 |
| | 11,455 |
| Total: | $ 52,966 |

**1120S TAX RETURN COMPARISON**
2015 / 2016 / 2017

**2017**

Name(s) as shown on return
EB Medical Consulting LLC

Identifying number
5801

| Income | 2015 FEDERAL | 2016 FEDERAL | 2017 FEDERAL | DIFFERENCE BETWEEN 2016 & 2017 |
|---|---|---|---|---|
| Net receipts . . . . . . . . . . . . . | | 42,730 | 104,355 | 61,625 |
| Cost of goods sold . . . . . . . . . . | | | | |
| Gross profit . . . . . . . . . . . . | | 42,730 | 104,355 | 61,625 |
| Net gain/loss from 4797 . . . . . . . . . | | | | |
| Other income . . . . . . . . . . . . | | | | |
| Total income . . . . . . . . . . . . | | 42,730 | 104,355 | 61,625 |
| **Deductions** | | | | |
| Compensation of officers . . . . . . . . | | | | |
| Salaries and wages . . . . . . . . . . | | | | |
| Repairs and maintenance . . . . . . . | | 1,025 | | (1,025) |
| Bad debts . . . . . . . . . . . . . . | | | | |
| Rents . . . . . . . . . . . . . . . | | | | |
| Taxes and licenses . . . . . . . . . . | | | | |
| Interest . . . . . . . . . . . . . . | | | | |
| Net depreciation . . . . . . . . . . . | | | | |
| Depletion . . . . . . . . . . . . . . | | | | |
| Advertising . . . . . . . . . . . . . | | | | |
| Pension, profit-sharing . . . . . . . . . | | | | |
| Employee benefits . . . . . . . . . . | | | 2,161 | 2,161 |
| Other deductions . . . . . . . . . . . | | 825 | 55,591 | 4,766 |
| Total deductions . . . . . . . . . . . | | 850 | 57,752 | 5,902 |
| Ordinary business income(loss) | | | 46,603 | 55,723 |
| **Tax** | | | | |
| Total tax . . . . . . . . . . . . . . | | | | |
| **Payments** | | | | |
| Estimated taxes paid . . . . . . . . . | | | | |
| Total payments line 23d . . . . . . . . | | | | |
| **Results** | | | | |
| Amount owed . . . . . . . . | | | | |
| Overpayment . . . . . . . | | | | |
| Applied to estimate . . . . | | | | |
| Refund . . . . . . . . | | | | |

SCHEDULE K - Shareholders Share Items

| Income | | | | |
|---|---|---|---|---|
| Ordinary business income (loss) . . . | | (9,120) | 46,603 | 55,723 |
| Net rental real estate income (loss) . . . | | | | |
| Other net rental income (loss) . . . . . | | | | |
| Interest income . . . . . . . . . . . | | | | |
| Ordinary dividends . . . . . . . . . . | | | | |
| Qualified dividends . . . . . . . . . . | | | | |
| Royalties . . . . . . . . . . . . . . | | | | |
| Net short-term capital gain (loss) . . . . | | | | |
| Net long-term capital gain (loss) . . . . | | | | |
| Collectibles (28%) gain (loss) . . . . . | | | | |
| Unrecaptured section 1250 gain . . . . | | | | |
| Net section 1231 gain (loss) . . . . . . | | | | |
| Other income (loss) . . . . . . . . . | | | | |

| | 2015 | 2016 | 2017 | DIFFERENCE |
|---|---|---|---|---|

Exhibit C

IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

IN AND FOR THE COUNTY OF MARICOPA

TASEEM DOCTOR,

                  Petitioner,

vs.

PHILLIP POTTER,

                  Respondent.

No. FC2020-090224

Phoenix, Arizona
October 26, 2021
8:31 a.m.

BEFORE THE HONORABLE LISA WAHLIN

TRANSCRIPT OF PROCEEDINGS

Family Court Trial

Proceedings recorded by electronic sound recording; transcript produced by eScribers, LLC.

AMANDA J. ORLANDO
Transcriptionist
CDLT-260



1          THE COURT:  Exhibit 37 will be admitted.

2      (Petitioner's Exhibit 37 Received)

3   BY MS. ORTEGA:

4      Q    Now, Exhibit Number 38, there's a bank statement from

5   you for October to November of 2019.  There's a bank statement

6   for your parents for the same time, and two checks written from

7   your parents.  Can you tell the Court what Exhibit Number 38

8   is?

9      A    So I put the mortgage in my name because I was

10  getting a better interest rate.

11     Q    For what -- what mortgage for what?

12     A    For the Wisteria home.

13     Q    Okay.

14     A    I was getting a better mortgage rate, but they paid

15  the down payment and the fees to secure the home, whatever

16  that -- you know, the down payment and whatever the -- the fees

17  to whatever -- the $20,00 that was initially funded.  I've

18  never paid the mortgage.  They reimbursed -- I -- I wired the

19  money from my account, and they reimbursed me the same day.  So

20  I did not use any community funds to pay for that house.

21  And -- and we -- this is just the evidence showing that the

22  mortgage was paid through them and all the down payment and any

23  fees that went through that house, and was paid through my

24  parents.  And this is just evidence of -- of all those

25  transactions that occurred.

1                        CERTIFICATE

2    eScribers has a current transcription contract with the

3    Maricopa County Superior Court under contract # 13010-001, as

4    such, eScribers is an "authorized Transcriber".

5

6    I, AMANDA J. ORLANDO, CDLT-260, a court-approved transcriber,

7    do hereby certify that the foregoing is a correct transcript

8    from the official electronic sound recording of the proceedings

9    in the above-entitled matter, to the best of my professional

10   skills and abilities.

11

12

13

14            /s/
     _____
15
     AMANDA J. ORLANDO, CDLT-260    March 24, 2022
16   Transcriber

17

18

19

20

21

22

23

24

25



Exhibit D

 **CHASE**

JPMorgan Chase Bank, N.A.
P O Box 182051
Columbus, OH 43218-2051

October 05, 2019 through November 06, 2019
Account Number:                0190



| CUSTOMER SERVICE INFORMATION | |
|---|---|
| Web site: | Chase.com |
| Service Center: | 1-800-935-9935 |
| Deaf and Hard of Hearing: | 1-800-242-7383 |
| Para Espanol: | 1-877-312-4273 |
| International Calls: | 1-713-262-1679 |

00153334 DRE 601 141 31119 NNNNNNNNNNN T 1 000000000 04 0000
TASNEEM DOCTOR
2301 N 66TH ST
SCOTTSDALE AZ 85257-1113

## We want to remind you about the overdraft service options that are available for your personal checking account(s)

We've included information on the last page of this statement to remind you of our overdraft services and associated fees.
You can find more information about these services and ways to avoid overdraft fees at **chase.com/overdraft-services**.

If you have questions, please call us at the number on your statement.

## CHECKING SUMMARY     Chase Premier Plus Checking

| | AMOUNT |
|---|---|
| Beginning Balance | $127,166.45 |
| Deposits and Additions | 98,505.45 |
| Checks Paid | -1,450.00 |
| Electronic Withdrawals | -100,020.14 |
| Fees | -35.00 |
| Ending Balance | $124,166.76 |
| | |
| Annual Percentage Yield Earned This Period | 0.01% |
| Interest Paid This Period | $1.16 |
| Interest Paid Year-to-Date | $10.26 |

## CHECKS PAID

| CHECK NUMBER | DATE PAID | AMOUNT |
|---|---|---|
| 217 ^ | 11/04 | $100.00 |
| 219 * ^ | 11/05 | 1,350.00 |
| **Total Checks Paid** | | **$1,450.00** |

If you see a check description in the Transaction Detail section, it means your check has already been converted for electronic payment. Because of this, we're not able to return the check to you or show you an image on Chase.com.
* All of your recent checks may not be on this statement, either because they haven't cleared yet or they were listed on one of your previous statements.
^ An image of this check may be available for you to view on Chase.com.

Page 1 of 4

Plaintiff Exh. 000569

# CHASE ⬡

October 05, 2019 through November 06, 2019
Account Number: — — —    0190

## TRANSACTION DETAIL

| DATE | DESCRIPTION | AMOUNT | BALANCE |
|---|---|---|---|
| | Beginning Balance | | $127,166.45 |
| 10/07 | Deposit    1899031728 | 91,668.10 | 218,834.55 |
| 10/08 | 10/08 Domestic Wire Transfer Via: Fst Am Tr CO Sana/122241255 A/C: First American Title Insurance CO Ref: File Number: 435-5996484Property Address: 2091 E Wisteria DR Chandler AZ 85286 Imad: 1008B1Qgc05C001479 Trn: 6770600280Es | -91,668.10 | 127,166.45 |
| 10/08 | Domestic Wire Fee | -35.00 | 127,131.45 |
| 10/11 | 37005 Q Point He Dir Dep    PPD ID: 2364227403 | 3,746.96 | 130,878.41 |
| 10/15 | Quickpay With Zelle Payment To Shahzad 8747337480 | -350.00 | 130,528.41 |
| 10/21 | 10/20 Online Transfer To Chk ...0151 Transaction#: 8771972452 | -5,000.00 | 125,528.41 |
| 10/21 | 10/20 Payment To Chase Card Ending IN 2305 | -2,488.29 | 123,040.12 |
| 10/21 | 10/20 Payment To Chase Card Ending IN 1173 | -513.75 | 122,526.37 |
| 10/25 | 37005 Q Point He Dir Dep    PPD ID: 2364227403 | 3,089.23 | 125,615.60 |
| 11/04 | 11/02 Check    # 217 | -100.00 | 125,515.60 |
| 11/05 | Check    # 219 | -1,350.00 | 124,165.60 |
| 11/06 | Interest Payment | 1.16 | 124,166.76 |
| | Ending Balance | | $124,166.76 |

A monthly Service Fee was **not** charged to your Chase Premier Plus Checking account. Here are the two ways you can continue to avoid this fee during any statement period.

* Have an average qualifying deposit and investment balance of $15,000.00 or more
  (Your average qualifying deposit and investment balance was $129,828.00)

* **OR**, authorize us to make automatic payments to your qualifying Chase mortgage from your Chase account.
  (You do not have a qualifying Chase mortgage)

**IN CASE OF ERRORS OR QUESTIONS ABOUT YOUR ELECTRONIC FUNDS TRANSFERS:** Call us at 1-866-564-2262 or write us at the address on the front of this statement (non-personal accounts contact Customer Service) immediately if you think your statement or receipt is incorrect or if you need more information about a transfer listed on the statement or receipt.
For personal accounts only: We must hear from you no later than 60 days after we sent you the FIRST statement on which the problem or error appeared. Be prepared to give us the following information:
* Your name and account number
* The dollar amount of the suspected error
* A description of the error or transfer you are unsure of, why you believe it is an error, or why you need more information.
We will investigate your complaint and will correct any error promptly. If we take more than 10 business days (or 20 business days for new accounts) to do this, we will credit your account for the amount you think is in error so that you will have use of the money during the time it takes us to complete our investigation.

**IN CASE OF ERRORS OR QUESTIONS ABOUT NON-ELECTRONIC TRANSACTIONS:** Contact the bank immediately if your statement is incorrect or if you need more information about any non-electronic transactions (checks or deposits) on this statement. If any such error appears, you must notify the bank in writing no later than 30 days after the statement was made available to you. For more complete details, see the Account Rules and Regulations or other applicable account agreement that governs your account. Deposit products and services are offered by JPMorgan Chase Bank, N.A. Member FDIC

 JPMorgan Chase Bank, N.A. Member FDIC

Plaintiff Exh. 000570

Exhibit E

Check Details - chase.com

3/1/20, 8:20 PM

## -$91,668.10
Total

Oct 7, 2019
Post date

1159
Check #

**BRENDA S. DOCTOR**
**ABDULLA DOCTOR**
4786 W NOGALES WAY
ELOY, AZ 85131-3072

91-2/1221

1159

DATE 10/7/2019

PAY TO THE
ORDER OF ___Tarreen  Doctor_____    $ 91,668.10

___Fifty One Thousand Six Hundred Sixty Eight + a 10/100_____

**CHASE**
JPMorgan Chase Bank, N.A.
www.Chase.com

MEMO _____

1159

Plaintiff Exh. 000571

Exhibit F

# CHASE ◯

JPMorgan Chase Bank, N.A.
P O Box 182051
Columbus, OH 43218-2051

November 21, 2019 through December 18, 2019
Primary Account ██████████ 0851

## CUSTOMER SERVICE INFORMATION

| | |
|---|---|
| Web site: | Chase.com |
| Service Center: | 1-800-935-9935 |
| Deaf and Hard of Hearing: | 1-800-242-7383 |
| Para Espanol: | 1-877-312-4273 |
| International Calls: | 1-713-262-1679 |

00004380 DRE 601 211 35319 NNNNNNNNNNNN  1 000000000 13 0000

ABDULLA \DOCTOR
OR BRENDA S \DOCTOR
2091 E WISTERIA DR
CHANDLER AZ 85286-0307

## CONSOLIDATED BALANCE SUMMARY

### ASSETS

| Checking & Savings | ACCOUNT | BEGINNING BALANCE THIS PERIOD | ENDING BALANCE THIS PERIOD |
|---|---|---|---|
| Chase Premier Plus Checking | 0851 | $51,642.38 | $33,066.35 |
| Chase Plus Savings | 6261 | 25.93 | 25.93 |
| Total | | $51,668.31 | $33,092.28 |

### TOTAL ASSETS

| | | |
|---|---|---|
| | $51,668.31 | $33,092.28 |

## CHASE PREMIER PLUS CHECKING

ABDULLA \DOCTOR

OR BRENDA S \DOCTOR

Account Number: ██████████ 0851

## CHECKING SUMMARY

| | AMOUNT |
|---|---|
| Beginning Balance | $51,642.38 |
| Deposits and Additions | 13,207.01 |
| Checks Paid | -528.34 |
| Electronic Withdrawals | -31,254.70 |
| Ending Balance | $33,066.35 |
| | |
| Annual Percentage Yield Earned This Period | 0.01% |
| Interest Paid This Period | $0.30 |
| Interest Paid Year-to-Date | $1.45 |

# CHASE ◯

## DEPOSITS AND ADDITIONS

| DATE | DESCRIPTION | | AMOUNT |
|------|-------------|---|--------|
| 11/27 | SSA Treas 310   Xxsoc Sec | PPD ID: 9031036360 | $2,312.00 |
| 11/29 | 8417 *1391487098 Net=Pay | PPD ID: 1621767955 | 3,890.60 |
| 12/09 | Deposit | | 3,013.51 |
| 12/13 | 8417 °0001354155 Net=Pay | PPD ID: 1621767955 | 3,890.60 |
| 12/16 | Venmo        Cashout | PPD ID: 5264681992 | 100.00 |
| 12/18 | Interest Payment | | 0.30 |
| **Total Deposits and Additions** | | | **$13,207.01** |

## CHECKS PAID

| CHECK NO. | DESCRIPTION | DATE PAID | AMOUNT |
|-----------|-------------|-----------|--------|
| 1168 ^ | | 12/09 | $278.34 |
| 1169 ^ | | 12/13 | 250.00 |
| **Total Checks Paid** | | | **$528.34** |

If you see a description in the Checks Paid section, it means that we received only electronic information about the check, not the original or an image of the check. As a result, we're not able to return the check to you or show you an image.
^ An image of this check may be available for you to view on Chase.com.

## ELECTRONIC WITHDRAWALS

| DATE | DESCRIPTION | | AMOUNT |
|------|-------------|---|--------|
| 11/25 | 11/25 Online Payment 8896832273 To Central Loan Administration And Reportin | | $3,331.21 |
| 11/27 | 11/27 Online Payment 8869580640 To Synchrony Bank | | 241.00 |
| 12/02 | 12/02 Payment To Chase Card Ending IN 9877 | | 21,992.40 |
| 12/02 | 12/02 Payment To Chase Card Ending IN 3918 | | 121.22 |
| 12/02 | Venmo       Payment   2799276856      Web ID: 3264681992 | | 161.00 |
| 12/03 | Barclaycard US  Creditcard 673357270      Web ID: 2510407970 | | 500.00 |
| 12/04 | Barclaycard US  Creditcard 672000391      Web ID: 2510407970 | | 500.00 |
| 12/09 | 12/07 Payment To Chase Card Ending IN 9877 | | 3,000.00 |
| 12/11 | 12/11 Payment To Chase Card Ending IN 9379 | | 0.89 |
| 12/11 | 12/11 Payment To Chase Card Ending IN 8883 | | 69.00 |
| 12/12 | 12/12 Online Payment 8856521881 To Acura Financial Services | | 603.46 |
| 12/17 | 12/17 Payment To Chase Card Ending IN 3918 | | 160.73 |
| 12/18 | 12/17 Online Payment 8979230042 To A Always Clean Pool | | 95.00 |
| 12/18 | 12/17 Online Payment 8979230050 To City of Chandler Utilties - AZ | | 78.45 |
| 12/18 | 12/18 Online Payment 8927047216 To Auto Loan 4301 | | 400.34 |
| **Total Electronic Withdrawals** | | | **$31,254.70** |

A monthly Service Fee was **not** charged to your Chase Premier Plus Checking account. Here are the two ways you can continue to avoid this fee during any statement period.
* **Have an average qualifying deposit and investment balance of $15,000.00 or more**
  (Your average qualifying deposit and investment balance was $40,298.00)

* **OR,** authorize us to make automatic payments to your qualifying Chase mortgage from your Chase account.
  (You have not authorized us to make automatic payments to your qualifying Chase mortgage from your Chase account)

Plaintiff Exh. 000573