Phillip Potter
2301 N. 66th Street
Scottsdale, Arizona 85257
Phone: 480.459.0310
E-Mail: phillip.t.potter@gmail.com
Plaintiff
Pro Se

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Phillip Potter,<br><br>　　　　　　　Plaintiff,<br><br>v.<br><br>Robert Meza, et al.,<br><br>　　　　　　　Defendants. | No. 2:25-cv-00663-PHX-DWL<br><br>**RESPONSE TO ARIZONA ATTORNEY GENERAL'S MOTION TO DISMISS SECOND AMENDED COMPLAINT**<br><br>(Oral Argument Requested) |

Plaintiff Phillip Potter has "go[ne] into a Federal court [], in a case involving a violation of the Federal Constitution, and [seeks to] obtain[] a judicial investigation of the problem[s], and pending its solution [to] obtain freedom from suits, civil or criminal, by a temporary injunction, and, if the question[s] be finally decided favorably to the contention of the [plaintiff], a permanent injunction restraining all such actions or proceedings." *Ex parte Young,* 209 U.S. 123, 149 (1908).  Defendant Arizona Attorney General Kris Mayes belongs to a "universe of potential complainants" who "collectively" have threatened, and continue to threaten, a combination of administrative, civil, and/or criminal enforcement of conduct arguably proscribed by A.R.S. § 13-2921.  These conditions give Plaintiff standing to sue every member of that "universe" of state officers and private parties authorized to enforce the challenged statute.  *Am. Encore v. Fontes,* 152 F.4th 1097, 1118 (9th Cir. 2025).  On the merits, Plaintiff challenges § 13-2921 as an unconstitutionally vague statute which "'abuts upon sensitive areas of basic First Amendment freedoms,' [and] 'operates to inhibit the exercise of [those] freedoms'", *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972).  Here, those First Amendment freedoms include the right to petition courts – a fundamental right Plaintiff plans to continue to exercise in ongoing, well-founded litigation.  The Court should deny the Fed. R. Civ. P. 12(b)(1) and (6) motion to dismiss (Doc. 110).

ARGUMENT

I. There Is No Basis For Rule 12(b)(1) Dismissal

   A. Plaintiff Has Standing to Sue The Attorney General

Mayes contends "Plaintiff lacks standing to challenge the harassment statute [A.R.S. § 13-2921] for two reasons.  First, Plaintiff has not shown that his conduct is proscribed by the statute.  Second, Plaintiff is under no credible threat of prosecution

1

under the statute." (Doc. 100, p. 12).  She reaches these erroneous conclusions by improperly disputing Plaintiff's factual allegations at the pleading stage, applying the wrong standards to decide pre-enforcement standing, and conflating the merits analysis with the standing analysis to confuse those discrete issues.  *See Mirabelli v. Olson*, 761 F. Supp. 3d 1317, 1324 (S.D. Calif. 2025) ('Standing is emphatically not a doctrine for shutting the courthouse door to those whose causes we do not like.  Nor can standing analysis, which prevents a claim from being adjudicated for lack of jurisdiction, be used to disguise merits analysis, which determines whether a claim is one for which relief can be granted if factually true.'").

### 1. Legal Standard

"To establish standing, ... a plaintiff must demonstrate (i) that she has suffered or likely will suffer an injury in fact, (ii) that the injury likely was caused or will be caused by the defendant, and (iii) that the injury likely would be redressed by the requested judicial relief."  *Am. Encore,* 152 F.4th at 1110.  "For pre-enforcement plaintiffs, the injury is the anticipated enforcement of the challenged statute in the future." *Peace Ranch, LLC v. Bonta,* 93 F.4th 482, 486-487 (9th Cir. 2024).  A pre-enforcement injury exists "if: '(1) [the plaintiff] ha[s] alleged 'an intention to engage in a course of conduct arguably affected with a constitutional interest;' (2) but the conduct is 'proscribed by a statute;' and (3) 'there exists a credible threat of prosecution'".  *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014).

### 2. Plaintiff Sufficiently Pleads a Pre-Enforcement Injury

"In assessing the *Driehaus* factors, the court is 'to take as true all material allegations in the complaint and construe the complaint in favor of the plaintiff.'" *Am. Encore v. Fontes*, No. CV-24-01673-PHX-MTL, 2024 WL 4333202, at *9 (D. Ariz. Sept.

27, 2024) (quoting *Arizona v. Yellen*, 34 F.4th 841, 849 (9th Cir. 2022)).

### a. *Driehaus* Factor One Is Met and Conceded

The "concept of 'intention' [to engage in a course of conduct arguably affected with a constitutional interest] is more counterfactual than practical. That is to say, courts must ask whether the plaintiff would have the intention to engage in the proscribed conduct, were it not proscribed.'" *Am. Encore,* 152 F.4th at 1115. Plaintiff's alleged intent to file court pleadings and motion papers absent leave of the court in ongoing court cases deemed well-founded in state trial and appellate courts is factually sufficient to articulate a course of conduct arguably affected with a constitutional interest. (Doc. 104 at 98, 216). *Driehaus* Factor One is met.

### b. *Driehaus* Factor Two Is Met

To meet Factor Two, a "plaintiff must only show that their 'future conduct ... [is] 'arguably ... proscribed by [the] statute' it wishes to challenge.' And for the purposes of standing, we accept Plaintiffs' interpretation of the statute so long as it is an arguable interpretation." *Am. Encore,* 152 F.4th at 1116. Plaintiff's stated intention to file court papers as part of ongoing litigation absent prior court approval is arguably proscribed[1] by § 13-2921 on the face of the statute. (Doc. 104 at 98, 208-220). Indeed, the Court observed "it is unclear whether the act of filing court papers would qualify as 'conduct that is directed at a specific person,' as required under § 13-2921(E)." (Doc 100, pp. 31-33). This dispositive statement only confirms the statute is ambiguously worded such that there exists an arguable "debate" regarding whether the language impermissibly reaches, proscribes, or chills First Amendment court petitioning.[2] Plaintiff interprets the

---

[1] "Arguable" means "susceptible to debate, challenge, or doubt; questionable." *U.S. v. Rodriguez*, 398 F.3d 1291, 1304 (11th Cir. 2005).
[2] Under *Driehaus* Factor Two, the Attorney General tries to minimize Plaintiff's

3

challenged statute to impermissibly do all those things.  And the Court must "accept Plaintiff's interpretation".  *Am. Encore,* 152 F.4th at 1116.  *Driehaus* Factor Two is met.

### i. Plaintiff Does Not Need To Plead That He Will Commit A Crime

The Attorney General contends Plaintiff "has not added sufficient factual allegations to establish that his course of conduct specifically will be harassing ... Plaintiff has not shown his anticipated conduct would be proscribed by the statute because he does not allege facts showing what that conduct would be or why it would be illegal." (Doc. 110, p. 6).  This deficient "reasoning approximates requiring [Plaintiff] to admit to violating a law in order to have standing to challenge it, a prerequisite the Supreme Court has repeatedly rejected."  *Yellen*, 34 F.4th at 849; *see also Driehaus,* 573 U.S. at 163 ("Nothing in this Court's decisions requires a plaintiff who wishes to

---

allegations that a private party, who A.R.S. § 13-3602 statutorily authorizes to civilly enforce § 13-2921, convinced the Arizona Secretary of State, who A.R.S. § 41-161, *et seq*. statutorily authorizes to administratively enforce § 13-2921, to find Plaintiff violated the challenged statute by filing court papers in well-founded cases causing her emotional distress. (Doc. 104 at 92-98, 212-216).  It is of no moment to the Factor Two analysis "that the 'Secretary of State is not a prosecutor and is not responsible for initiating and pursuing harassment prosecutions'". (Doc. 110, p. 7).  That is the Supreme Court's view, not Plaintiff's.  For instance, in *Whole Woman's Health v. Jackson*, 595 U.S. 30 (2021), our nation's highest court allowed a challenge to proceed although the statute precluded many state officers from civilly or criminally enforcing it.  The Supreme Court found those medical providers had standing because they identified state officers with a sufficient connection to the challenged statute's enforcement via those defendants' "specific [administrative] disciplinary authority over medical licensees, including the petitioners".  *Id* at 44.  While the challenged statute proscribed certain conduct, the statute's enforcement effects existed downstream in the state's overall statutory scheme.  In *Am. Encore* terms, members of an administrative disciplinary committee were also members of the "universe of potential complainants" who could cause injuries after commission of the proscribed conduct.  At bottom, the Attorney General and the Secretary of State are <u>both</u> members of the "universe" of state officers and private parties who can cause, and has caused, injuries stemming from administrative, civil or criminal enforcement of the challenged statute sufficient to confer standing. (Doc. 104 at 217).

challenge the constitutionality of a law to confess that he will in fact violate that law."). Simply put, district courts "do not require [a plaintiff] to explicitly confess to intended future conduct that is violative of the law it seeks to challenge." *Yellen*, 34 F.4th at 849-850. Again, *Driehaus* Factor Two is met.

### ii. *Musser* and *Brown* Do Not Preclude, and Do Not Inform, Standing

The Attorney General summarizes Plaintiff's position as "litigation is harassment under the statute, at least if a counterparty feels distress. *See* Doc. 100 at 33 n.17 (noting Plaintiff's theory is not limited to vexatious litigants filing without leave); Doc. 104 ¶¶ 211 ('Reasonable persons experience distress when brought to suit.'), 218 (Arizona state officers read A.R.S. § 13-2921 to invoke civil and criminal penalties for petitioning the judicial branch on the basis that the opposing party voices distress[.]')." (Doc. 110, p. 8). That said, Plaintiff has made it factually clear in the pleadings that the Arizona Secretary of State has administratively enforced the statute, finding Plaintiff violated A.R.S. § 13-2921 by filing court papers, and that his ex-wife, a statutorily authorized § 13-2921 enforcer, attempted to civilly enforce the statute against Plaintiff on her own in the past (Doc. 104 at 51-58) and continues to repeatedly threaten civil enforcement for filing court papers in well-founded litigation (Doc. 104 at 85, 228, 230, 259, 260). These facts, and Mayes' articulated understanding of the facts, suffice to meet *Driehaus* Factor Two.

To counter, Mayes points to *State v. Musser*, 977 P.2d 131 (Ariz. 1999) and *State v. Brown*, 85 P.3d 109 (Ariz. Ct. App. 2004). (Doc. 110, pp. 10-11). This argument fails at least four ways. First, and dispositively, pointing to caselaw is a Fed. R. Civ. 12(b)(6) merits defense, not a Fed. R. Civ. P. 12(b)(1) jurisdictional defense. Second, *Musser* and *Brown* were decided long before the present iteration of § 13-2921 where legislators revised the statute during the state's 2022 legislative session, removed "intent to harass"

as an element (Doc. 100, p. 9), and passed a statute with no "saving clause" to protect the First Amendment (Doc. 104 at 210).  Third, *Musser* was a criminal defendant who challenged A.R.S. § 13-2916, not A.R.S. § 13-2921, "on grounds that the statute is overbroad and infringes on constitutionally protected speech" while Plaintiff is a pre-enforcement civil litigant who challenges § 13-2921 on grounds that the statue is overly vague and abuts against constitutionally protected petitioning.  Fourth, *Brown* was a criminal defendant who challenged the prior iteration of § 13-2921 as unconstitutionally vague in violation of his "First Amendment right to freedom of speech" where the Arizona Court of Appeals found the statute constitutional specifically because of the presence of an "intent' element.  In sum, *Musser* and *Brown* are inapplicable and provide nothing of use to the standing determination.

### c. *Driehaus* Factor Three Is Met

Factor Three "is a 'quite forgiving' requirement that sets up only a 'low threshold'". *Antonyuk v. Chiumento*, 89 F.4th 271, 334 (2nd Cir. 2023).  The threshold is crossed when the threat from any statutorily authorized enforcer is not "imaginary or wholly speculative". *Driehaus,* 573 U.S. at 160.  Critically, when a credible threat is identified, a plaintiff has standing to sue every member of the "universe of potential complainants", including all state officers and private parties authorized to enforce the challenged statute. *Am. Encore,* 152 F.4th at 1118.  Indeed, as a defendant in *Isaacson*, Attorney General Mayes is personally aware that she can be brought to suit when she disavows enforcement of a challenged statute and even when she concurs with plaintiffs who seek a ruling that a statute is unconstitutionally vague.  That said, "[i]n determining whether a plaintiff has shown a credible or substantial threat of enforcement, we have identified a number of factors that may support the reasonableness of a plaintiff's fear of

prosecution. These include: (1) 'whether the enforcement authorities have 'communicated a specific warning or threat to initiate proceedings,'; (2) whether the enforcing authority has disavowed enforcement; [] (3) 'whether there is a history of past prosecution or enforcement,'" *Am. Encore,* 152 F.4th at 1118; and (4) whether sufficient "other circumstances" exist in First Amendment cases. *Tingley v. Ferguson,* 47 F.4th 1055, 1068 (9th Cir. 2022). "[T]he touchstone of our inquiry is whether Plaintiffs have adduced enough evidence to show that there is a realistic threat that the law in question may be enforced against them." *Am. Encore,* 152 F.4th at 1118.

      Plaintiff pleads a credible threat based on "a specific warning or threat" from members of the "universe of potential complainants", including his ex-spouse, <u>and</u> based on a "history of past [administrative] prosecution or enforcement" from his ex-spouse and the Arizona Secretary of State. The Secretary found Plaintiff violated § 13-2921 when filing court papers in well-founded litigation despite the U.S. Supreme Court having expressly "limited [statutory] regulation to suits that were both objectively baseless *and* subjectively motivated by an unlawful purpose." *BE & K Constr. Co. v. N.L.R.B.,* 536 U.S. 516, 530-31 (2002) (emphasis original).[3] (Doc. 104 at 125). As such, Plaintiff has standing to sue the Attorney General, who civilly and criminally enforces the challenged statute, where Plaintiff sufficiently alleges the Arizona State Legislature crafted an unconstitutionally vague statute that abuts against the exercise of First Amendment rights guaranteed under the Petition Clause. Further, no state officer or private party in the *Am. Encore* "universe of potential complainants" has emphatically disavowed enforcement of

---

[3] "The two parts of the [] test operate in succession: Only if the suit is found to be objectively baseless does the court proceed to examine the litigant's subjective intent." *USS-POSCO Indus. v. Contra Costa Cnty. Bldg. & Const. Trades Council, AFL-CIO*, 31 F.3d 800, 810-11 (9th Cir. 1994).

the challenged statute against Plaintiff. Indeed, "targeting' of the plaintiff and the [full universe of potential complainants] failure to disavow enforcement [a]re 'enough to substantiate the threat and satisfy the final *Driehaus* prong.'". *Planned Parenthood Great Nw.*, 122 F.4th at 838; *Isaacson*, 84 F.4th at 1100-01 ("The combination of these potential threats – from the county attorneys, [] and private parties – satisfies the third prong of *Driehaus*"); *Cal. Trucking Ass'n v. Bonta,* 996 F.3d 644, 653 (9th Cir. 2021) ("Here, the [universe of potential complainants'] refusal to disavow enforcement ... is strong evidence that the state intends to enforce the law and that [Plaintiff] face a credible threat."). To deprive Plaintiff of standing, the Attorney General would need to document that every potential complainant disavows enforcement, or she would need to possess the authority to control all potential complainants. But no state constitutional provision or statute gives her office such authority. *Isaacson*, 84 F.4th at 1101 ("That at least one [state officer or authorized private person has enforced or] intends to enforce [the challenged statute], even when the Attorney General has disavowed and advised against enforcement, is reason enough for Plaintiffs to fear that they too will be targeted."). *Driehaus* Factor Three is met.

The Attorney General counters that Plaintiff "fails to 'identify any case in which AG Mayes, some other Arizona prosecutor, or even some prosecutor in some other jurisdiction has brought criminal harassment charges against a defendant solely based on the act of filing papers in a pending lawsuit (or filing court papers in violation of a vexatious-litigant order).'". But it is well-established that "enforcement history alone is not dispositive". *Stroh,* 205 F.3d at 1155. Indeed, "[c]ourts have found standing where no one had ever been prosecuted under the challenged provision." *Id*. And, once again, the current version of the challenged statute only went into effect in 2023, so the law is

still "relatively new", meaning the record of enforcement "carries little weight" in the standing analysis. *Tingley*, 47 F.4th at 1069 ("[T]he history of enforcement, carries 'little weight when the challenged law is relatively new' and the record contains little information as to enforcement."). Further, the Attorney General was free to submit sworn affidavits that her office would never civilly or criminally prosecute anyone under the current version of A.R.S. § 13-2921 for exercising their court petitioning rights, but that affidavit is noticeably absent from the record. Instead, she has "not categorically disavowed a future prosecution of Plaintiff for harassment or domestic violence" (Doc. 110, pp. 11-12) and "declin[ed] to disavow enforcement" based on the unspecified belief that perhaps other statutes might better apply to "the situation". (Doc. 110, p. 13). These are the type of non-committal "general statements' that a "Plaintiff[] could reasonably interpret [] as a threat to investigate" and prosecute. *Isaacson*, 84 F.4th at 1101. And "when a state 'confirm[s] it will enforce' a challenged law 'as it enforces other restrictions,' it amounts to a credible threat of enforcement" sufficient to qualify as a credible threat under *Driehaus* Factor Three. *Id*.

All that said, the fatal flaw of Mayes' arguments are that she is part of a "universe of potential complainants" where members of that "universe" have prosecuted Plaintiff, and who continue to threaten to prosecute Plaintiff, should he engage in the same conduct that the Petition Clause protects. The Attorney General's attempts to distance herself from others in that "universe" are unavailing, and even immaterial to the question of standing as she learned first-hand in *Isaacson*. In sum, if Mayes truly wished to deprive Plaintiff of standing, she would submit affidavits showing she (1) expressly disavowed enforcement against Plaintiff; (2) notified the Secretary that his decision was manifestly erroneous, in violation of the Petition Clause, and must be rescinded and never repeated

to guarantee First Amendment protections; and (3) notified Plaintiff's ex-spouse explaining that she cannot prosecute Plaintiff. But even had she provided such affidavits, it still would not be enough to overcome Plaintiff's allegations on the pleadings because the Attorney General does not have authority over any state officer or private person to guarantee those potential complainants will not defy her instructions and prosecute Plaintiff regardless. Indeed, Mayes raises precisely the same meritless defenses that she raised, and that the Ninth Circuit rejected, in *Isaacson*. *Driehaus* Factor Three is met.

### d. Plaintiff Only Needs to Meet the *Driehaus* Factors, Not the *Thomas* Factors

Having lost the argument on the *Driehaus* analysis, the Attorney General turns to "*Arizona v. Yellen*, 34 F.4th 841, 850 (9th Cir. 2022)" to relitigate the pre-enforcement injury issue and achieve a different outcome. (Doc. 110, p. 10). *Yellen* traces back to *Thomas v. Anchorage Equal Rts. Comm'n,* 220 F.3d 1134, 1139 (9th Cir. 2000) (en banc) on injury "ripeness", not standing. "Though our circuit 'has toggled between' the *Thomas* and *Driehaus* formulations, we have 'adopt[ed] the Supreme Court's framework' in *Driehaus*". *Planned Parenthood Great Nw. v. Labrador*, 122 F.4th 825, 836 (9th Cir. 2024). *Driehaus* provides the proper framework to resolve this pre-enforcement injury dispute since the Attorney General challenges on standing, not ripeness. And while "[t]he constitutional component of ripeness overlaps with the 'injury in fact' analysis for Article III [pre-enforcement] standing" per *Wolfson v. Brammer*, 616 F.3d 1045, 1058 (9th Cir. 2010) (citing *Thomas*, 220 F.3d at 1138-1139), a state officer has declared Plaintiff to have violated § 13-2921. Ripeness cannot apply. *See LSO, Ltd. v. Stroh*, 205 F.3d 1146, 1156 (9th Cir. 2000) ("[A] reasonable threat of prosecution, for standing purposes, dispenses with any ripeness problem."). And Ninth Circuit tests for ripeness cannot supplant the Supreme Court's tests for standing when standing is the express

issue. The credible threat analysis begins and ends with *Driehaus*.

### e. Summary

"When the threatened enforcement effort implicates First Amendment rights, the inquiry tilts dramatically toward a finding of standing". *Stroh*, 205 F.3d at 1154-1155; *see Sable Commc'ns of California, Inc. v. FCC*, 827 F.2d 640, 644 (9th Cir.1987) (District courts are instructed to be "particularly liberal in allowing pre-enforcement challenges to statutes imposing criminal sanctions when the challenge is based on the first amendment".). "At the pleading stage, ... a plaintiff need not satisfy the *Iqbal/Twombly* plausibility standard" to demonstrate standing. *Mirabelli*, 761 F. Supp. 3d at 1324. And "[a]n Article III standing inquiry does not touch directly on the merits of the case. ... Rather, 'the jurisdictional question of standing precedes, and does not require, analysis of the merits.'" *Id* (citations omitted). Here, a proper standing analysis shows Plaintiff meets every *Driehaus* element. He has standing.

## II. There Is No Basis For Rule 12(b)(6) Dismissal

### A. Legal Standard

Courts are "to take as true all material allegations in the complaint and construe the complaint in favor of the plaintiff." *Yellen,* 34 F.4th at 849. Having done so, a district court must deny a Fed. R. Civ. P. 12(b)(6) motion if the plaintiff alleges "enough facts to state a claim to relief that is plausible on its face". *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

### B. Plaintiff Sufficiently Pleads A.R.S. § 13-2921 Is Unconstitutionally Vague

Plaintiff plausibly alleges § 13-2921 is void for vagueness because the statute "abuts upon sensitive areas of basic First Amendment freedoms [and] operates to inhibit the exercise of [those] freedoms", and "does not contain an 'and serves no legitimate

purpose' saving clause" to safeguard the Petition Clause (Doc. 104 at 210) which is necessary since "[r]easonable persons experience distress when brought to suit." (Doc. 104 at 211). And the statute's plain language shows the legislature considered and expressly protected some First Amendment rights, but not others. *See* A.R.S. § 13-2921(D) ("This section does not apply to any of the following: 1. A lawful demonstration, assembly or picketing."). Accordingly, "the number of A.R.S. § 13-2921 violations committed when a plaintiff exercises his right to petition Arizona courts for redress of grievances and the opposing party experiences distress is substantial." (Doc. 104 at 211). The Court observed "it is unclear whether the act of filing court papers would qualify as 'conduct that is directed at a specific person,' as required under § 13-2921(E)." (Doc 100, pp. 31-33). This admitted confusion strongly supports the position that Plaintiff plausibly pleads the law is overly vague since "laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, *judges*, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application.". (Doc. 104 at 219). And if judges are unsure whether the statute punishes First Amendment activities, then it surely cannot be said that the "law[] give[s] the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly". (Doc. 104 at 123, 219). The Fed. R. Civ. P. 12(b)(6) analysis should end here. Plaintiff plausibly pleads the statute violates the vagueness doctrine.

C. Attorney General Mayes' Dismissal Arguments Fail Entirely

"[I]t is the defendant's burden to demonstrate that plaintiff has failed to state a claim." *Shay v. Apple Inc.*, 512 F. Supp. 3d 1066, 1071 (S.D. Cal. 2021). A defendant must do more than "provide summary arguments and analyses seeking dismissal". *Id*.

And critically, disputes of statutory interpretation and applicable canons of statutory construction are not proper subjects for Fed. R. Civ. P 12(b)(6) motions on the pleadings. *See Lynch v. Rank,* 604 F. Supp. 30, 39 (N.D. Cal.), *aff'd,* 747 F.2d 528 (9th Cir. 1984).

### 1. The Federal Cases Mayes Cites Fail to Warrant Dismissal

Mayes provides what can only be described as deficient, inapplicable "summary arguments" to defeat the First Amendment vagueness claim. *Shay*, 512 F. Supp. 3d at 1071. Although not clearly articulated, it appears the Attorney General asks the Court to accept that the current version of § 13-2921's vagueness has been decided in some sort of law-of-the-case or preclusion argument. Specifically, Attorney General Mayes points to criminal cases involving defendants charged with "unlawful acquisition of food stamp coupons" in *U.S. v. Goyette*, 458 F.2d 992, 993 (9th Cir. 1972), "violent conduct motivated by racial animus" in *U.S. v. Makowski*, 120 F.3d 1078, 1080 (9th Cir. 1997), and "using, or aiding and abetting the use of, a hazardous or injurious device on federal land with the intent to obstruct a timber harvest" per *U.S. v. Wyatt*, 408 F.3d 1257, 1261 (9th Cir. 2005). (Doc. 110, pp. 16-18). Those defendants challenged federal statutes as "unconstitutionally vague as applied", *Id* at 1259, under "the Fifth Amendment due process clause", *Makowski*, 120 F.3d at 1080. In *Wyatt*, 408 F.3d at 1261, the challenged statute was found not vague because it required the perpetrator to act "with the *intent* to obstruct or harass the harvesting of timber." Likewise, the presence of "criminal *intent*" defeated vagueness allegations in *Goyette*, 458 F.2d at 993, while in *Makowski*, 120 F.3d at 1080, the statute was not vague because it "requires proof of the specific *intent* to interfere with a federally protected activity on the basis of race. ... [The] *intent* requirement thus limits the discretion of law enforcement and mitigates any perceived vagueness". In stark contrast, Plaintiff alleges a pre-enforcement injury sufficient to

challenge A.R.S. § 13-2921 as void for vagueness where that statute's "intent" element was stripped from its language, and the statue has not been challenged since those changes were made. Mayes' calling to three inapplicable federal cases fails to address First Amendment vagueness whatsoever.

<u>2. The State Cases Mayes Cites Also Fail to Warrant Dismissal; the Court Must Interpret and Construe the Statute to Decide Vagueness on the Merits</u>

With it clear no reasonable argument can be made for dismissal based on federal cases, the Attorney General switches her focus to state cases. She posits Plaintiff has not plausibly pleaded vagueness because "Arizona appellate courts reject this theory. *See Brown*, 85 P.3d at 110 ¶ 1 (rejecting First Amendment and vagueness challenges to the statute). Ordinary conduct such as delivering bad news is not criminal harassment even if repeated because it is not undertaken with an 'intent to harass,' as the statute requires." *Id.* at 115–16 ¶ 21; *see also Musser*, 977 P.2d at 132–33 ¶¶ 5–7 (rejecting First Amendment challenge to similar statute). ... *Brown*, 85 P.3d at 116 ¶ 21 (requiring individual showing of intent before statute is satisfied)." (Doc. 110, p. 15). But, once again, the state legislature removed the "intent to harass" element from this version of the statute long before *Brown* or *Musser*. So, while citation to *Musser* is entirely misplaced because it adjudicated A.R.S. § 13-2916, not § 13-2921, the citation to *Brown* is also misplaced because it applied to the previous version of § 13-2921 where the "intent to harass" element decided the issue. As the state's chief legal officer, the Attorney General did not, because she could not, defend this version of A.R.S. § 13-2921 where Plaintiff contends the harassment statute abuts against, and chills, petitioning rights while inviting

arbitrary enforcement from state officials.[4]

### D. Count Two Must Proceed to Discovery and Adjudication on the Merits

Plaintiff plausibly pleads A.R.S. § 13-2921 violates the vagueness doctrine. The Attorney General now must defend the statute on the merits where "[w]hen First Amendment freedoms are at stake, courts apply the vagueness analysis more strictly, requiring statutes to provide a greater degree of specificity and clarity than would be necessary under ordinary due process principles." *Cal. Teachers Ass'n v. State Bd. of Educ.,* 271 F.3d 1141, 1149-50 (9th Cir. 2001); *Tucson v. City of Seattle,* 91 F.4th 1318, 1323 (9th Cir. 2024) ("[A] law is void for vagueness if it 'lack[s] any ascertainable standard for inclusion and exclusion,' thereby authorizing or encouraging 'the authorities [to] arbitrarily prosecute" for ambiguously proscribed conduct.).

### CONCLUSION

There is no basis for Rule 12(b)(1) or (6) dismissal. The Court should deny the motion in full.

---

[4] The Attorney General conducts an overbreadth analysis (Doc. 110, pp. 15-16) although Plaintiff challenges A.R.S. § 13-2921 as a vague statute which impacts fundamental rights guaranteed under the Petition Clause. That said, "[a]s the overbreadth doctrine has developed, it has 'almost wholly merged' with the vagueness doctrine as applied to 'statutes covering [F]irst [A]mendment activities.'" *U.S. v. Sineneng-Smith,* 590 U.S. 371, 380 (2020) (Thomas, J., concurring). Disputing overbreadth, Mayes declares the "[t]he state has an interest in not allowing its court system to become a messenger for messages designed, not to further justice, but to alarm or annoy others". (Doc. 110, p. 16). This does not suffice as a significant or compelling government interest. A fundamental right under the First Amendment, like court petitioning in well-founded litigation, cannot be threatened with criminal punishment and "cannot be restricted simply because it is upsetting". *Snyder v. Phelps*, 562 U.S. 443, 458 (2011); *Reges v. Cauce*, No. 24-3518, slip op. at 36 (9th Cir. Dec. 19, 2025) ("[T]he power to restrict [court petitioning] in the name of avoiding distress [for the person sued] is a surefire way to silence unpopular or controversial [petitioning] that the First Amendment robustly protects.").

DATED this 5th day of March 2026.

By: <u>//s//</u>
Phillip Potter
Plaintiff
Pro Se