Phillip Potter
2301 N. 66th Street
Scottsdale, Arizona 85257
Phone: 480.459.0310
E-Mail: phillip.t.potter@gmail.com
Plaintiff
Pro Se

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Phillip Potter,<br><br>                          Plaintiff,<br><br>v.<br><br>Robert Meza, et al.,<br><br>                          Defendants. | No. 2:25-cv-00663-PHX-DWL<br><br>**RESPONSE TO DEFENDANT ALANE ORTEGA'S MOTION TO STRIKE THE EXHIBITS FROM PLAINTIFF'S RESPONSE TO HER MOTION TO DISMISS**<br><br>(Evidentiary Hearing Requested) |

Defendant Alane Ortega asks the Court "to strike and seal the exhibits[1] from Plaintiff's response, [Doc. 114-1] and [Doc. 114-2], to her most recent Motion to Dismiss," (Doc. 116, p. 1) because "[t]he exhibits appear to be included only to harass and embarrass Ortega" (Doc 117, p. 3; Doc. 116, p. 2).  The Court should not "strike" any entry or "seal" any "exhibit".  Instead, the Court should conduct an evidentiary hearing on Ms. Ortega's request to take judicial notice of Administrative Order 2023-159 (Doc. 108, p. 2; Doc. 114, pp. 9-10) and require her to testify regarding her (1) role in the pursuit and issuance of Administrative Order 2023-159; (2) actionable and sanctionable efforts "to influence or manipulate proceedings in one case in order to gain tactical advantage in another", *Fink v. Gomez*, 239 F.3d 989, 992-993 (9th Cir. 2001); and (3) ongoing efforts to intimidate Plaintiff via repeated threats of incarceration (*see* Doc. 104 at 85, 260).

ARGUMENT

Ms. Ortega, through co-counsels Trevor Cook and Jeffrey Silence, articulates no factual or legal grounds that would justify the Court sealing any record or striking any case entry.  Absent requisite factual analysis, her conclusory declarations provide insufficient justification for her requested relief.  This is a clear case of public concern involving government corruption and the extraordinary lengths to which Ms. Ortega, former State Representative Robert Meza, and former gubernatorial candidate Karrin

---

[1] Although Ms. Ortega references "exhibits", Plaintiff identifies these as "Attachment A" (Doc. 114-1) and "Attachment B" (Doc. 114-2) in his response (Doc. 114).

1

Taylor Robson went to jointly conceal Meza's trading of his public office for private gain. *See Snyder v. Phelps*, 562 U.S. 443, 453 (2011) (A First Amendment case "deals with matters of public concern when it can 'be fairly considered as relating to any matter of political, social, or other concern to the community,' or when it 'is a subject of general interest and of value and concern to the public.'"). Ms. Ortega did not, because she cannot, overcome the public's right to inspect judicial records and case entries.

I. The Court Should Deny Requests To Seal and To Strike Attachments A and B

"It is clear that the courts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents." *Nixon v. Warner Communications, Inc.,* 435 U.S. 589, 597 (1978). This "presumption of access is 'based on the need for federal courts, although independent – indeed, particularly because they are independent – to have a measure of accountability and for the public to have confidence in the administration of justice.'" *Cntr. for Auto Safety v. Chrysler Grp., LLC,* 809 F.3d 1092, 1096 (9th Cir. 2016) (citations omitted). The "presumption of public access 'promot[es] the public's understanding of the judicial process and of significant public events'". *Id.* The presumption is exceptionally difficult to overcome when, as here, the judicial process involves matters of "public interest", including allegations of government "corruption". *See Shane Group, Inc. v. Blue Cross Blue Shield of Michigan*, 825 F.3d 299 (6th Cir. 2016) ("[S]ecrecy insulates the participants, masking impropriety, obscuring incompetence, and concealing corruption. ... The greater the public interest in the litigation's subject matter the greater the showing necessary to

overcome the presumption of access".).  Here, Ms. Ortega has continually acted in concert with Meza since at least April 2020 to conceal Meza's well-documented corruption.  And she continues to engage in overt acts and abuse various judicial process to achieve that unlawful objective (Doc 14 at 1-98; Doc. 104 at 1-98).

A. The Court Should Deny The Request To Seal

1. Legal Standard

"'A party seeking to seal a judicial record [] bears the burden of overcoming this strong presumption by meeting the 'compelling reasons' standard.   Under this stringent standard, a court may seal records only when it finds 'a compelling reason and articulate[s] the factual basis for its ruling, without relying on hypothesis or conjecture." *Cntr. for Auto Safety,* 809 F.3d at 1096-1097 (quoting *Kamakana v. City & County of Honolulu,* 447 F.3d 1172, 1178 (9th Cir.2006)).

2. There Is No Factual Basis To Seal Records; Ortega Suffers No Actionable Embarrassment Or Harassment

Ms. Ortega provides no "compelling reasons" to seal and, therefore, cannot meet her "burden" to seal any records.  Instead, she offers (1) the unsupported conclusory statement that Attachment A contains "irrelevant personal financial information [] of multiple persons uninvolved in this litigation" and (2) "conjecture" that Attachment "B serves no other purpose than to harass and embarrass Ortega" (Doc. 116, p. 2) while (3) simultaneously acknowledging the records in question reside in the public domain as state court record entries.  *See* Doc. 116, pp. 1-2 ("Exhibit A is Plaintiff's response to a

motion in a state court case" FC2020-090224 while "Exhibit B is comprised of documents related to a judicial proceeding [Arizona Discipline Probable Cause Committee of the Supreme Court of Arizona File No. 20-0824] involving Ortega").

a. Attachment A Does Not Contain Irrelevant Personal Financial Information; Ms. Ortega's Attorneys Cannot Advocate for "Persons Uninvolved in this Litigation"

Ms. Ortega's name appears in Attachment A solely as an attorney of record in that state case. Her name does not constitute "personal financial information". Further, all account numbers contained in Attachment A are redacted, meaning the records contain no personal information of persons not party to this litigation.[2] Indeed, the Supreme Court long ago established that bank records, and the financial "information" contained therein, are not private records and therefore carry no privacy interests as a matter of law. *U.S. v. Miller*, 425 U.S. 435, 443 (1976) ("The depositor takes the risk, in revealing his affairs to another, that the information will be conveyed by that person to the Government."); *see also Carpenter v. U.S.*, 585 U.S. 296, 298 (2018) ("The third-party doctrine partly stems from the notion that an individual has a reduced expectation of privacy in information knowingly shared with another."). As a matter of law, no individual owns or controls records held by financial institutions, and no individual owns or controls information contained in such records to invoke a privacy interest. *U.S. v. Cormier,* 220 F.3d 1103, 1108 (9th Cir. 2000) ("[A] person does not possess a reasonable

---

[2] If non-parties wish to intervene, then Fed. R. Civ. P. 24 controls. Ms. Ortega's attorneys are only permitted to represent their client's interests, not any third parties' interests. The Court could deny the instant motion for lack of adherence to rules regarding non-parties.

4

expectation of privacy in an item in which he has no possessory or ownership interest.").

Regarding the characterization that Attachment A is irrelevant, "[r]elevance is a low bar".  *U.S. v. Marshall*, 544 F. Supp. 3d 1032, 1037 (D. Mont. 2021); *see also U.S. v. Wilder,* 87 F.4th 816, 819 (6th Cir. 2023).  Engaging in the same sort of professional misconduct during the same timeframe that caused "the Discipline Probable Cause Committee of the Supreme Court of Arizona" to find "that 'in several cases and in several forums', Ms. Ortega 'violated the following Rules of the Supreme Court of Arizona: Rule 42, Ariz. R. Sup. Ct., ERs, 1.2, 1.3, 3.1, 3.2, 3.4(c), and 8.4(d)'," and that resulted in "the Hon. John J. Tuchi issu[ing] an order admonishing her for knowingly 'furthering a [client's] falsehood'" (Doc. 114, p. 10, n.2), this case involves Ortega's continuous and ongoing misrepresentations in state cases. (Doc. 104 at 83-98, 102, 244-265).  Her most recent attempt in FC2020-090224 to intimidate Plaintiff and to threaten his arrest is simply a transactional continuation of the same actionable misconduct for which she was brought to suit here.  It is difficult to see how Ortega could suggest Attachment A is "irrelevant" to this case or to Plaintiff's response to her dismissal motion when FC2020-090224 appears prominently in the complaint.  Perhaps more importantly, she relies entirely on "conjuncture" to justify relief and does not adequately explain how the contents of Attachment A could be irrelevant.  *Cntr. for Auto Safety,* 809 F.3d at 1097.  The Court should deny Ortega's request as she has not carried her considerable burden to demonstrate compelling reasons to seal.  *See Foltz v. State Farm Mutual Auto Insurance Company,* 331 F.3d 1122, 1136 (9th Cir. 2003) (A litigant must "provide

5

'articulable facts' showing a compelling reason to seal".).

b. Attachments A and B Are Not For Embarrassment Or Harassment; Ms. Ortega Is A Legitimate Defendant, Not A Victim

"The mere fact that the production of records may lead to a litigant's embarrassment, incrimination, or exposure to further litigation will not, without more, compel the court to seal its records." *Kamakana,* 447 F.3d at 1178.  Again, a litigant must "provide 'articulable facts' showing a compelling reason to seal", *Foltz,* 331 F.3d 1136, but Ms. Ortega provides no reason to seal Attachment A or Attachment B, much less "a compelling reason".  If she believes information in either Attachment exposes her to criminal or civil liability, or to additional professional discipline, the Ninth Circuit does not consider those to be sufficient reasons to seal court records.  *Id* (Exposure to "additional liability and litigation" does not justify the sealing of records since "*a litigant is not entitled to the court's protection from this type of harm*.") (Emphasis added).

c. Attachments A and B Are Already Matters Of Public Record

Ms. Ortega acknowledges that Attachment "A is Plaintiff's response to a motion in a state court case" while Attachment "B is comprised of documents related to a [discplinary] judicial proceeding involving Ortega."  (Doc. 116, pp. 1-2).  In other words, the two records are already available for public inspection where (1) Rule 70(A) of the Rules of the Supreme Court of Arizona establishes that "[e]xcept as otherwise provided in these rules, the state bar file, the record maintained by the disciplinary clerk, and all proceedings shall be open to the public"; and (2) "records relating to a dissolution

6

proceeding 'shall be maintained and disclosed in accordance' with Rule 123(c)(1) of the Rules of the Arizona Supreme Court, which in turn provides that court records 'are presumed to be open to any member of the public for inspection.'  While Arizona Rule of Family Law Procedure 13(d) allows the superior court to 'make any record of a family court matter closed or confidential or otherwise limit access to such records,' the court may issue such an order only upon' 'a finding that the confidentiality or privacy interests of the parties [or] their minor children ... outweighs the public interest in disclosure.'" *Nash v. Nash,* 232 Ariz. 473, 482, ¶ 40 (App. 2013).  Attachment A is obviously part of the FC2020-090224 record while Attachment B is obviously part of the Arizona State Bar's disciplinary records.  Ms. Ortega cites no authority that permits a federal court to seal any record that is already publicly available for inspection in state courts.

B. The Court Should Deny The Request To Strike

Per LRCiv 7.2(m)(1), "a motion to strike may be filed ... if it seeks to strike any part of a filing or submission on the ground that it is prohibited (or not authorized) by a statute, rule, or court order".[3]  Seeking to undermine that local rule, Ms. Ortega calls to the court's "inherent power to control their dockets, which 'includes the power to strike items from the docket as a sanction for litigation conduct.'" (Doc. 116, p. 2).  She asks the Court "to strike [] Exhibits A and B, [Doc. 114-1] and [Doc. 114-2], to Plaintiff's Response, as well as the footnote introduction to Exhibit B, Resp. at 10 n.2 beginning

---

[3] "The purpose of LRCiv 7.2(m)(1) is to require unitary briefs, including objections to evidence and to the propriety of arguments".  *Pruett v. Arizona,* 606 F.Supp.2d 1065, 1074 (D.Ariz.2009).

with the text, 'This would not be the first time ...,' as a sanction for Plaintiff's use of the Court's filing system for an improper purpose." (Doc. 116, p. 3). Ortega's obvious and insurmountable deficiency is that she points to no sanctionable litigation conduct, meaning she did not even approach meeting her burden to have entries stricken based on inherent powers to strike as a "sanction". Again, Attachment A and Attachment B contain publicly available information relevant to this case, relevant to Plaintiff's response to the dismissal motion, and relevant to his request for an evidentiary hearing as Fed. R. Evid. 201 permits. To be clear, Plaintiff pointed to Ms. Ortega's history of professional discipline as a material fact in pleadings (Doc. 14 at 102; Doc. 114 at 102). Had this defendant sought to strike references to those disciplinary matters, she should have filed a timely Fed. R. Civ. P. 12(f) motion to strike. She failed to do so.

CONCLUSION

The Court should deny Ms. Ortega's requests to seal and to strike Attachment A and Attachment B. The Court should also grant Plaintiff's request to be heard on the defendant's dismissal motion and her request to take judicial notice of Administrative Order 2023-159. (Doc. 114, pp. 9-10). Ms. Ortega, in turn, asks the Court to deny Plaintiff's requested hearing on the basis that "[t]he Court already took notice of the Order" although "it 'd[id] not take judicial notice of the truth of any of the statements contained in' the Order." (Doc. 117, pp. 3-4). This makes no sense. Judicial notice "is for cold, hard, undisputable facts", *CTC Glob. Corp. v. Huang*, 2018 WL 4849715, *3 (C.D. Cal 2018), not administrative records. Further, Plaintiff disputes every statement

of fact contained in that administrative order and courts "may not take notice of disputed facts stated in public records." *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001).[4]  In the end, a defendant is not entitled to their "version of the facts at the pleading stage". *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018).  And the record shows no defendant provided affidavits or sworn testimony regarding the veracity of any fact contained in Administrative Order 2023-159.  Ms. Ortega asked the Court to take judicial notice of that administrative order, meaning she opened herself to examination as to the facts and circumstances involved in pursuing, obtaining, and maintaining that order.  She cannot now backtrack and claim the issue of judicial notice is "moot". (Doc. 117, p. 3).

DATED this 31st day of March 2026.

By: <u>//s//</u>
Phillip Potter
Plaintiff
Pro Se

---

[4] Administrative Order 2023-159 found then-active cases CV2021-005501, CV2021-013210, and CV2021-017889 to be "baseless".  But as those court records show, Plaintiff has since secured non-nuisance financial settlements and favorable final judgments in those cases in March 2023 (CV2021-017889) and in June 2025 (CV2021-005501 and CV2021-013210). (Doc. 49, pp. 14-15, n.6; Doc. 49-1).  As a matter of law, those settlements prove those cases were neither baseless nor filed for an improper purpose. *See Relevant Grp., LLC v. Nourmand*, 116 F.4th 917, 933-938 (9th Cir. 2024).