Phillip Potter
2301 N. 66th Street
Scottsdale, Arizona 85257
Phone: 480.459.0310
E-Mail: phillip.t.potter@gmail.com
Plaintiff
Pro Se

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Phillip Potter,<br><br>                              Plaintiff,<br><br>v.<br><br>Robert Meza, et al.,<br><br>                              Defendants. | No. 2:25-cv-00663-PHX-DWL<br><br><br>**MOTION FOR<br>PRELIMINARY INJUNCTION<br>RE: A.R.S. § 13-2921**<br><br>Oral Argument Requested |

Per Fed. R. Civ. P. Rule 65, Plaintiff Phillip Potter moves for a preliminary injunction prohibiting Attorney General Kris Mayes from enforcing § 13-2921(A)(1), Arizona's criminal harassment statute, against him until the claim is finally decided.

OVERVIEW

The Court previously declared "it is unclear whether the act of filing court papers would qualify as 'conduct that is directed at a specific person,' as required under § 13-2921(E)." (Doc. 100, pp. 32-33). The Arizona supreme court recently took up the precise question of how "directed at" is to be interpreted, "conclud[ing] that statements made to third parties can be 'directed at' the victim when they are designed to provoke an adverse consequence against the victim." *Hernandez v. Loarca*, ___ Ariz. ___, 587 P.3d 1266, 1267 ¶¶ 1-2 (2026).[1] Based on "plain meaning", the term "directed at ... focuses on the target of the communication, not its immediate recipient." *Id* at ¶ 12. "If such communications are designed to provoke an adverse consequence for the victim that would seriously alarm, annoy, humiliate, or mentally distress a reasonable person in the victim's position, and in fact do so, they constitute harassment. § 13-2921(E). In short, § 13-2921(E) regulates conduct based on its target, not its transmission path." *Id*. That "path" includes speech and government petitioning, and it criminalizes the harassing effect of speech and petitioning "communication" regardless of intent,[2] including whether

---

[1] Federal courts are bound by a state supreme court's interpretation of its state's statutes. *See In re Kirkland*, 915 F.2d 1236, 1238 (9th Cir. 1990).

[2] To remind the Court, the Arizona Legislature modified § 13-2921(A)(1) in 2022, removed "intent to harass" language (Doc. 100, pp. 9-10), and broadened § 13-2921(A). Facial challenges pre-dating those legislative changes turned on the removed "intent to harass" language. *State v. Brown*, 207 Ariz. 231, 236, ¶¶ 9-10 (App. 2004) (Criminal statutes prohibiting "certain types of communication *and that contain a specific intent requirement* do not implicate the First Amendment.... [T]he statute's [previous] requirement that the communication must have been made with the specific 'intent to harass' § 13-2921(A) [excluded prosecution when a legitimate] underlying purpose for the

1

those First Amendment expressions are intended to be "made for legitimate [i.e., constitutional] purposes" to a government official. *Id* at ¶ 23. The Ninth Circuit holds that a legislative act which criminalizes "any activity by a person with the ... effect of ..., harassing" another person are unconstitutional. *Am. Encore v. Fontes*, 152 F.4th 1097, 1120 (9th Cir. 2025). In simple terms, laws which punish actions that have a "harassing effect", rather than a "harassing intent", violate the First Amendment. Section 13-2921(A)(1) makes all forms of "adverse consequence" speech and petitioning actionable regardless of the "legitimate purposes" behind, and the true facts underlying, that speech and government petitioning.[3] As the *Hernandez* court alluded, the lack of a § 13-2921(E)

---

communication" could be demonstrated). In other words, the term "intent to harass" subsumed the lack of any legitimate purpose behind a particular communication, leaving only potential improper purposes to be considered. *Cf. CrossFit Inc. v. Martin*, No. 2:14-CV-02277-PHX-JJT, 2017 WL 4236968 *8 (D. Ariz. Sept. 22, 2017) (Under federal rules, "the 'improper purpose' inquiry subsumes the 'frivolousness inquiry' ..., 'complaints are not filed for an improper purpose if they are non-frivolous.'").

[3] To safeguard the Petition Clause, the Supreme Court "limited regulation to suits that were both objectively baseless *and* subjectively motivated by an unlawful purpose". *BE & K Constr. Co. v. N.L.R.B.*, 536 U.S. 516, 530-531 (2002) (emphasis original); *see Bill Johnson's Rests., Inc. v. N.L.R.B.*, 461 U.S. 731 (1983). Critically, the "two parts of the test operate in succession: Only if the suit is found to be objectively baseless does the court proceed to examine the litigant's subjective intent." *USS-POSCO Indus. v. Contra Costa Cnty. Bldg. & Const. Trades Council, AFL-CIO*, 31 F.3d 800, 810-811 (9th Cir. 1994); *see also Hudson v. Moore Business Forms, Inc.*, 836 F.2d 1156, 1159 (9th Cir.1987) ("[A] complaint that is found to be well-grounded in fact and law cannot be sanctioned as harassing, regardless of the attorney's subjective intent".); *Relevant Group, LLC v. Nourmand*, 116 F.4th 917, 933-938 (9th Cir. 2024) (Holding that "settlement indicates a lawsuit is not objectively baseless", meaning the suit cannot be considered to have been filed for any "improper purpose" such as "harassment," and enjoys "the ordinary protections afforded by the First Amendment".). (Doc. 104, ¶¶125). This two-part sequential "sham petitioning" test, *Id*, is also meant to apply to the executive and legislative branches, just as it applies to judicial branch petitioning. Case-in-point: "filing a criminal complaint with law enforcement officials constitutes an exercise of the First Amendment right to petition the government for the redress of grievances", *Entler v. Gregoire*, 872 F.3d 1031, 1043-1044 (9th Cir. 2017), but only a "*knowingly* false assertion

2

"saving clause" dooms the statute. (Doc. 104, ¶¶208-220).

## MEMORANDUM IN SUPPORT

"Because First Amendment freedoms need breathing space to survive, government may regulate in the area only with narrow specificity." *NAACP v. Button*, 371 U.S. 415, 433 (1963). Section 13-2921(A)(1) not only eliminates all required "breathing space" but it also patently abridges the Speech Clause and Petition Clause.[4] U.S. Const. Amend. I ("Congress shall make no law ... abridging the freedom of speech, ...; or the right of the people ... to petition the Government for a redress of grievances."). Section 13-2921(A) is far too broad and far too vague. *See U.S. v. Sineneng-Smith,* 590 U.S. 371, 381 (2020) (Thomas, J. concurring) ("As the overbreadth doctrine has developed, it has 'almost wholly merged' with the vagueness doctrine as applied to 'statutes covering [F]irst [A]mendment activities.'"). Regarding the Speech Clause, the Arizona supreme court factually noted "[i]n the fall of 2023, Hernandez was employed as a paraprofessional by Phoenix Legacy Traditional School, which Daughter also attended. Daughter's teacher told Hernandez that Daughter was struggling with reading and needed to improve her grades. According to Hernandez, she later mentioned this conversation to Loarca and commented that perhaps Daughter needed a more experienced teacher. Thereafter, Loarca met with Daughter's teacher at a parent-teacher conference" wherein, in an exercise of pure speech, he made a "statement to the teacher that Hernandez despised her and considered her incompetent" which resulted in "the principal conven[ing] a meeting to address the resulting conflict." *Hernandez,* 587 P.3d at ¶¶ 3, 21. Regarding the

---

made" to law enforcement can generate culpability. *Chaker v. Crogan,* 428 F.3d 1215, 1226 (9th Cir. 2005) (emphasis added).

[4] The "substantial overlap between the rights of speech and petition" justifies applying "Speech Clause precedents to Petition Clause" claims. *Borough of Duryea v. Guarnieri,* 564 U.S. 379, 384 (2011).

Petition Clause, "[i]n March 2024, [Loarca's] Daughter transferred to Goodyear Legacy Traditional School, and Hernandez started working there as a paraprofessional. Soon after, Daughter came to Hernandez during school hours concerning a book report Daughter was working on. According to Hernandez, Loarca had switched the book at the last minute, leaving Daughter stressed about her ability to complete the assignment on time. Consequently, Hernandez helped Daughter by giving her notes on the book and 'otherwise helping her finish the report.' Loarca found out. Rather than discussing the matter with Hernandez, he took Hernandez's notes and other information she had given to Daughter and sent it to the school principal, who supervised Hernandez. As a consequence, the principal provided Hernandez with a written warning for plagiarism, admonished Hernandez that she could not use 'company time' to help Daughter, and told her that she should not visit Daughter during school hours.". *Hernandez,* 587 P.3d at ¶ 4. Loarca's actions reflect government petitioning.[5] *See Guarnieri,* 564 U.S. at 389 ("The Petition Clause protects the right of individuals to communicate with all branches and subdivisions of the government."). Loarca presented accurate information to a school administrator who provided redress in the form of an admonishment to Hernandez who, in turn, filed an *ex parte* § 13-3602(A) petition for a domestic violence protection order accusing Loarca of criminally harassing her via government petitioning. The order was issued and later upheld at a contested hearing.

On the facts and the law, § 13-2921(A)(1) criminalizes, and therefore abridges,

---

[5] Phoenix Legacy Traditional School and Goodyear Legacy Traditional School are "public charter school[s] in Arizona" (*see* https://legacytraditional.org/arizona). "Charter schools are public schools". A.R.S. § 15-181(A). And parents have well-established rights to petition public school administrators and teachers verbally or in writing for redress affecting their children. *See e.g., Mt. Healthy City School District Board of Education v. Doyle,* 429 U.S. 274 (1977); *Board of Education, Island; Farnan v. Capistrano Unified School District Citation,* 654 F.3d 975 (9th Cir. 2011).

4

constitutionally protected speech[6] and government petitioning.  Loarca spoke with and petitioned government officials, but the exercise of those First Amendment rights violated § 13-2921(A) based on the content of that speech, and Hernandez's emotional response to that content, where Loarca stated his opinion to a third-party teacher that Hernandez "despised" the teacher.  *See Milkovich*, 497 U.S. at 20-22 (The First Amendment protects "statement[s] of opinion".).  Loarca also engaged in constitutionally protected petitioning when he presented accurate facts in an email to, and in subsequent discussion with, the third-party Goodyear school administrator.  Despite receiving warranted redress, Loarca was found to have violated § 13-2921(A) because, in large part, of what he did *not* do and did *not* say.  *See Wooley v. Maynard*, 430 U.S. 705, 714 (1977) (The First Amendment protects "the right to refrain from speaking at all.").  State courts punished him under the statute's "directed at" and "in a manner" language because he "made no effort to resolve the issue with Hernandez or Daughter's teacher before going directly to the principal." *Hernandez,* 587 P.3d at ¶ 22.  Section 13-2921(A) is so extraordinarily broad that it compelled Loarca to speak with, and to show exemplary social graces when speaking to, the person deservedly admonished for diminishing his

---

[6] In that same free speech vein, the *Hernandez* court cited *Raber v. Wagner,* 571 P.3d 902 (Ariz. App. 2025), noting Wagner "repeatedly sent email messages to the plaintiff's relatives, work colleagues, and other contacts, asking them, variously, to speak with the plaintiff on her behalf, mediate a parenting dispute, and knock some sense into' the plaintiff." *Hernandez,* 587 P.3d at ¶ 15.  Despite Wagner's constitutionally protected request to "knock some sense" into Raber, the statute was violated because *Raber* "turned on whether the communications targeted the victim and were intended to provoke an adverse consequence. ... Here, the record supports a determination that Wagner, through her communications with third parties including Raber's relatives and work colleagues, sought to initiate direct actions toward, and communications with, Raber." *Id* at ¶ 16.  The content of Wagner's speech likely classified as opinion or hyperbole which are not actionable per the Speech Clause. *See Milkovich v. Lorain Journal Co.,* 497 U.S. 1, 20-22 (1990) (The First Amendment protects "loose, figurative, or hyperbolic" speech.).

child's education, while also permitting Hernandez to label Loarca a domestic violence perpetrator because Loarca did not demonstrate sufficient social graces or speak sufficiently kind words before presenting demonstrably true facts to a government official. The First and Fourteenth Amendments ensure Arizona "has no such authority to license one side of a debate to fight freestyle, while requiring the other to follow Marquis of Queensberry rules". *R.A.V. v. City of St. Paul,* 505 U.S. 377, 392 (1992). Although the *Hernandez* court found § 13-2921 "implicate[s] the free-speech [and petitioning] protections of our state and federal Constitutions", and tellingly called on the "Legislature ... to consider whether complaints made for legitimate purposes, even though designed to provoke an adverse consequence against another person, should nevertheless fall within the statute's reach", it did not decide any of those critical First Amendment issues. *Hernandez,* 587 P.3d at ¶ 23.[7] That decision is before this Court.

## I. Plaintiff Qualifies for, and the Court Should Issue, a Preliminary Injunction

### A. Standing

#### 1. Legal Standard

"At the preliminary injunction stage, plaintiffs are required to show only that they are 'likely to establish each element of standing.'" *Los Angeles Press Club v. Noem,* 171 F.4th 1179, 1189 (9th Cir. 2026) (citation omitted). "Standing is a core component of the case-or-controversy requirement of Article III." *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560 (1992). "To establish standing, ... a plaintiff must demonstrate (i) that he has suffered or likely will suffer an injury in fact, (ii) that the injury likely was caused or will be caused by the defendant, and (iii) that the injury likely would be redressed by the requested judicial relief." *Fontes,* 152 F.4th at 1110. "For pre-enforcement plaintiffs, the

---

[7] *Hernandez* was remanded but dismissed as moot because a protective order had expired.

injury is the anticipated enforcement of the challenged statute in the future." *Peace Ranch, LLC v. Bonta,* 93 F.4th 482, 486-87 (9th Cir. 2024). Such an injury exists "if: '(1) [the plaintiff] ha[s] alleged 'an intention to engage in a course of conduct arguably affected with a constitutional interest;' (2) but the conduct is 'proscribed by a statute;' and (3) 'there exists a credible threat of prosecution'". *Susan B. Anthony List v. Driehaus,* 573 U.S. 149, 159 (2014).

### 2. Plaintiff Has Standing to Sue Arizona Attorney General Kris Mayes

Under pre-enforcement theory, Plaintiff alleges he suffers "imminent" irreparable injuries sufficient to sue Attorney General Mayes and enjoin her from enforcing § 13-2921(A)(1), which he contends facially violates the First Amendment. (Doc. 104, ¶¶109-110, 208-220; Affidavit). In pre-enforcement facial challenges, a pre-enforcement injury can be shown one of two ways. First, an "imminent injury" can be demonstrated via "a chilling of the exercise of First Amendment rights". *Libertarian Party of L.A. County v. Bowen,* 709 F.3d 867, 870 (9th Cir. 2013). Second, such an injury can be shown in a "bet the farm" scenario where the plaintiff is engaging in an exercise of First Amendment expression but has not yet been prosecuted. *Peace Ranch,* 93 F.4th at 487-490. Here, Plaintiff alleges both. He contends his First Amendment rights have been "chilled" because he has chosen not to speak with, or to petition, members of the legislative and executive branches of both the state government and the federal government out of fear that his actions will result in civil prosecution of § 13-2921(A)(1) by his ex-wife via § 13-3602 proceedings, and that there is a substantial risk those same actions will result in civil and/or criminal prosecution of § 13-2921(A)(1) by the Attorney General based on her state constitutional and statutory authorities to prosecute criminal code violations. He also alleges he has "bet the farm" when continually exercising his court petitioning rights

7

to file court papers that result in his ex-wife repeatedly accusing him of harassment despite presenting claims and defenses with a sound basis in fact and law. (Doc. 104, ¶¶67-98; *see attached* Affidavit).

The Attorney General posited that standing does not confer for lack of a credible threat of § 13-2921(A)(1) prosecution because _she_ has not issued a "specific" threat to prosecute, and there is "no history of past prosecution" for engaging in protected speech or government petitioning (Doc. 110, pp. 12-13).  The dispute over standing centers on whether Plaintiff has pleaded an "imminent injury" calling to a *Driehaus* analysis.

*Driehaus* Factor Once is met as there can be no real doubt that filing court papers in active contentious litigation, speaking with and/or petitioning law enforcement on alleged crimes, and speaking with the public on matters of public concern each present a "course of conduct arguably affected with a constitutional interest".  The Attorney General's counterargument that Plaintiff's "specific theory" of the case, and that his plan to continue engaging in court petitioning under the circumstances is not "concrete" enough (Doc. 110, pp. 11-13) does not, and cannot, alter the Court's analysis of *Driehaus* Factor One as understood by the Ninth Circuit.  "'The concept of 'intention' is more counterfactual than practical.  That is to say, courts must ask whether the plaintiff would have the intention to engage in the proscribed conduct, were it not proscribed.'  And here it is clear that Plaintiff intend[s] to engage in [petitioning and] speech of whatever nature the times and issues demand – [petitioning and] speech that is protected by the First Amendment." *Am. Encore*, 152 F.4th at 1115.  *Driehaus* Factor One is met.

*Driehaus* Factor Two is also met given *Hernandez* confirms that § 13-2921(A)(1) more than arguably "proscribes" the courses of conduct per Plaintiff's description and interpretation.  *Id* at 1116 ("for the purposes of standing, we accept Plaintiffs'

8

interpretation of the statute so long as it is an arguable interpretation").

Regarding *Driehaus* Factor Three, the "history of prosecution" is not material to the consideration. But even if it were, that consideration favors Plaintiff, not the Attorney General, for at least two reasons. First, the statute is relatively new in its present form, so prosecution history does not weigh against Plaintiff's standing. *See e.g., California Pro-Life Council, Inc. v. Getman*, 328 F.3d 1088, 1095 (9th Cir. 2003). Second, and more importantly, the *Hernandez* case shows that an individual indeed has been prosecuted under §§ 13-2921(A)(1) and 13-3602 for engaging in First Amendment expression (Doc. 124), confirming those statutes permit Arizonans to be prosecuted based on the state supreme court's interpretation of the § 13-2921(A) "plain" language. *Hernandez*, 587 P.3d at 1269 ¶12. Moving on, it is of no moment that Attorney General Mayes has not issued a "specific" threat to prosecute Plaintiff because federal courts "look to 'the threat posed collectively by the entire 'universe of potential complainants'", not just the threat posed by any single authorized enforcer. *Am. Encore*, 152 F.4th at 1118-1119. And statutorily authorized private parties are part of that "universe". *Id.* The Attorney General is on record that she "will not disavow enforcing Arizona's harassment statute" (Doc. 123, p. 2), and she has never disavowed enforcing the statute against Plaintiff despite ample opportunity. As the Supreme Courtly recently observed, since the Attorney General "declined to disavow enforcement against [plaintiff]. ... no more is required under this Court's precedents." *Chiles v. Salazar*, 607 U.S., ____ (2026) (slip op. at 4–5). On that basis alone, Plaintiff meets *Driehaus* Factor Three. This conclusion is further buttressed by the past, present, and ongoing actions of Plaintiff's ex-wife. Specifically, she prosecuted Plaintiff under §§ 13-2921 and 13-3602, only to see the resulting protection order vacated with an award to Plaintiff of attorney fees and

costs. (Doc. 104, ¶¶58). She also caused the Arizona Secretary of State to enter official records declaring Plaintiff's court petitioning violated §§ 13-2921 and 13-3602, making her a "card" carrying domestic violence victim. (Doc. 104, ¶94). And the ex-wife continues to threaten Plaintiff's § 13-2921(A)(1) prosecution should he (1) continue to engage in court petitioning that she finds distressing, or (2) petition law enforcement officials regarding any alleged financial crimes, including any financial entanglement with Defendant Robert Meza, to the point that she asked a state court to issue a prior restraint prohibiting Plaintiff from petitioning any government official absent the court's prior approval.[8] (*see* Affidavit). Plaintiff's ex-wife poses a "credible" threat and "substantial risk" of enforcement, meaning *Driehaus* Factor Three is met. *See Driehaus*, 573 U.S. at 158 ("An allegation of future injury may suffice if the threatened injury is 'certainly impending,' or there is a 'substantial risk' that the harm will occur.") (citations omitted). That credible threat and substantial risk would persist even if the Attorney General disavowed enforcement. *See Isaacson v. Mayes*, 84 F.4th 1089, 1100 (9th Cir. 2023). *Driehaus* Factor Three is met.

In sum, Plaintiff has sufficiently demonstrated the existence of an "imminent injury". And there is no dispute that the causation and redressability elements are satisfied. Plaintiff has standing to sue Arizona Attorney General Kris Mayes. *See also LSO, Ltd. v. Stroh*, 205 F.3d 1146, 1154 (9th Cir. 2000) ("[W]hen the threatened enforcement effort implicates First Amendment rights, the inquiry tilts dramatically

---

[8] Plaintiff does not seek to set aside or challenge any state court judgments or rulings. He has brought suit in federal court only to challenge statutes. Thus, the *Rooker-Feldman* doctrine does not apply. *See Skinner* v. *Switzer*, 562 U.S. 521, 532 (2011) (*Rooker-Feldman* "does not bar a suit challenging a "statute or rule governing [any] [state-court] decision."). First Amendment facial challenges seek to overturn a state legislature's legislative acts, not a state court's judicial acts. *Reed* v. *Goertz*, 598 U. S. 230, 235 (2023).

toward a finding of standing.").

### B. Preliminary Injunction

#### 1. Legal Standard

A party seeking a preliminary injunction must establish "(1) he is likely to succeed on the merits of his claim, (2) he is likely to suffer irreparable harm absent the preliminary injunction, (3) the balance of equities tips in his favor, and (4) a preliminary injunction is in the public interest." *Baird*, 81 F.4th at 1040 (citing *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)). When the non-moving party is the government, the last two *Winter* factors "'merge.'" *Id.* Likelihood of success on the merits "is a threshold inquiry and is the most important factor." *Id.* "It is well-established that the first factor is especially important when a plaintiff alleges a constitutional violation and injury. If a plaintiff in such a case shows he is likely to prevail on the merits, that showing usually demonstrates he is suffering irreparable harm no matter how brief the violation." *Id.* "Likelihood of succeeding on the merits also tips the public interest sharply in [a plaintiff's] favor because it is 'always in the public interest to prevent the violation of a party's constitutional rights.'" *Id* (citation omitted).

#### 2. The Court Should Issue a Preliminary Injunction

##### a. Plaintiff is Likely to Succeed on the Merits; *Winter* Factor One is Met

On the original and operative complaints, facts capable of judicial notice, and affidavits, Plaintiff is likely to succeed on the merits because § 13-2921 is (1) overbroad and vague; and (2) fails all First Amendment scrutiny.

###### i. Overbreadth and Vagueness

"As the overbreadth doctrine has developed, it has 'almost wholly merged' with the vagueness doctrine as applied to 'statutes covering [F]irst [A]mendment activities.'"

11

*U.S. v. Sineneng-Smith,* 590 U.S. 371, 381 (2020) (Thomas, J. concurring). First Amendment facial challenges proceed along three "steps". *Matsumoto v. Labrador,* 122 F.4th 787, 806-814 (9th Cir. 2024). "The first step is to assess the statute's scope, because 'it is impossible to determine whether a statute reaches too far without first knowing what the statute covers.'" *Id* at 806. The second step "ask[s] whether the conduct swept into that scope is expressive and protected under the First Amendment." *Id* at 811. At the third "step, we must determine whether" the challenged statute's prohibitions or regulations are "unconstitutional in 'a substantial number of its applications ... judged in relation to [its] plainly legitimate sweep.'" *Id* at 814.

*Hernandez* clarified "the statute's scope" (i.e., step one) which is exceptionally "broad", and definitively answered the question of whether "conduct swept into that scope is expressive and protected under the First Amendment" in the affirmative (i.e., step two). *See Hernandez,* 587 P.3d at ¶ 23 (Holding § 13-2921(A) is quite "broad" and "implicates" (i.e., reaches) the expression of First Amendment rights, including speech and government petitioning "made for legitimate [i.e., constitutional] purposes,"). The *Hernandez* court's holdings dispensed Attorney General Mayes' merits defense that § 13-2921(A) does not reach First Amendment expression (Doc. 110, pp. 15-16), enabling the Court to quickly move to analyzing the third step.

While this last step often requires extensive discovery and a full actuarial analysis, *Moody v. NetChoice, LLC,* 603 U.S. 707, 721-724 (2024), comprehensive fact-finding is not necessary if the question can be answered largely on the law and indisputable facts at the preliminary injunction state. Applicable here, the Ninth Circuit recently affirmed preliminary injunctive relief is appropriate when an Arizona legislative act punished the "effect of ...harassing" another person rather than the "intent of ... harassing" provided

12

statutory interpretation is not in dispute. *Am. Encore*, 152 F.4th at 1119. In *Am. Encore*, the Arizona Secretary of State "waived" any such argument, leading the trial court and circuit court to accept the plaintiff's interpretation on plain language. *Id* at 1120. Here, the Arizona supreme court settled any possible argument on statutory interpretation via *Hernandez*, which the Court and the parties must accept as definitive. For that reason, when the Arizona Legislature removed the "intent to harass" language from the statute in 2022 and added other language, the statute punished acts "directed at" others through any third party who could deliver an "adverse consequence" when the acts were done "in a manner that harasses"; a collection of words and terms which criminalized acts that had a "harassing effect" rather than acts driven by a "harassing intent". Laws proscribing conduct which have the "effect of ... harassing" someone have no real limiting factors, including no First Amendment limitations. Accordingly, laws such as § 13-2921(A)(1), are facially void for "vagueness and overbreadth". *Am. Encore*, 152 F.4th at 1115. Under these circumstances, § 13-2921(A)(1) "is likely unconstitutionally vague" and overbroad, *Id* at 1119-1120, meaning Plaintiff is highly likely to succeed on those claims.

### ii. First Amendment Scrutiny

Section 13-2921(A)(1) also cannot withstand First Amendment scrutiny. "[I]n the First Amendment context, the moving party bears the initial burden of making a colorable claim that its First Amendment rights have been infringed, or are threatened with infringement, at which point the burden shifts to the government to justify the restriction." *Id* at 1119. Plaintiff has made a "colorable" claim and, thus, carried his burden. *See also Hernandez*, 587 P.3d at ¶ 23 (Finding § 13-2921(A)(1) sweeps broadly and punishes First Amendment expression "made for legitimate purposes").

To carry her burden, Attorney General Mayes declares § 13-2921(A)(1) is

13

"content-neutral", meaning "intermediate scrutiny" applies[9] to the provision which speaks to "a communication with another person by verbal, electronic, mechanical, telegraphic, telephonic or written means." (Doc. 110, pp.16-17). On plain language this provision appears to be a presumptively unconstitutional content-based law since the content of any "verbal" or "written" "communication" would need to be examined to determine whether it was legal. Regardless, the Attorney General argues "[t]he state has an interest in not allowing its court system to become a messenger for messages designed, not to further justice, but to alarm or annoy others. ... That is not a suppressive interest [because] ... [a]ny incidental impact on the ability to petition is exactly what is essential to prevent such conduct, because the law only restricts conduct that it intended to, and does, anger or annoy others") (Doc. 110, p. 17). This does not suffice.

Any purported "government interests" must be "important" in the sense that a challenged statute must "further ... *legitimate* interests." *McCullen v. Coakley,* 573 U.S. 464, 481 (2014) (emphasis added). There is no "legitimate" government interest in enacting or enforcing laws that reach and criminalize First Amendment expression. It was well-established at our country's founding that "a law imposing criminal penalties on protected speech [or petitioning] is a stark example of speech [or petitioning]

---

[9] "Our precedents distinguish between two types of restrictions on protected [petitioning or] speech: content-based laws and content-neutral laws. 'Content-based laws – those that target speech [or petitioning] based on its communicative content – are presumptively unconstitutional and may be justified only if' they satisfy strict scrutiny. That standard requires that a law be 'the least restrictive means of achieving a compelling state interest.' Content-neutral laws, on the other hand, 'are subject to an intermediate level of scrutiny because in most cases they pose a less substantial risk of excising certain ideas or viewpoints from the public dialogue.' Under that standard, a law will survive review 'if it advances important governmental interests unrelated to the suppression of free speech [or petitioning] and does not burden substantially more speech [or petitioning] than necessary to further those interests.'" *Free Speech Coalition v. Paxton,* 606 U.S. 461, 472 (2025).

suppression.". *Ashcroft v. Free Speech Coalition,* 535 U.S. 234, 244 (2002). Section 13-2921(A)(1) takes direct aim at First Amendment expression under a state legislature's collective belief that certain "verbal" or "written" "communication" should be deemed criminal provided those communications cause someone to experience "mental distress". But the law fatally makes no exception for constitutionally protected speech and government petitioning which surely result in "annoyance" and "adverse consequences" on many occasions.[10] "The Government may not suppress lawful speech [or petitioning] as the means to suppress unlawful speech [or petitioning]. Protected speech [or petitioning] does not become unprotected merely because it resembles the latter. *The Constitution requires the reverse*." *Id* at 255 (emphasis added). Section 13-2921(A)(1) fails intermediate scrutiny on the basis of First Amendment suppression alone. Furthermore, the law's impact on the expression of First Amendment rights is not "incidental" because, contrary to the Attorney General's contentions, "the law [does not] only restrict[] conduct that it intended to, and does, anger or annoy others" as the *Hernandez* court noted throughout its opinion. When the Arizona Legislature removed the "intent to harass" language and added other language, § 13-2921(A)(1) became a law which criminalized acts which had a harassing effect, not acts which had a harassing intent. And for those reasons, § 13-2921(A)(1) "burden[s] substantially more speech [and petitioning] than necessary to further [the Attorney General's purported government] interests.'" *Free Speech Coalition,* 606 U.S. at 472. The Court should find

---

[10] "[F]iling a criminal complaint with law enforcement officials constitutes an exercise of the First Amendment right to petition the government for the redress of grievances. ... It matters not who files the criminal complaint or who the complaint is against." *Entler v. Gregoire,* 872 F.3d 1031, 1043-1044 (9th Cir. 2017). It should not be lost on the Court that anyone who reports a crime in Arizona becomes subject to § 13-2921(A)(1) charges regardless of the "legitimate purposes" behind the report since police are capable of delivering "adverse consequences". The Court cannot let such a law stand.

Plaintiff is likely to succeed on the merits of his claim that § 13-2921 violates the Speech Clause and the Petition Clause because § 13-2921(A)(1) does not withstand First Amendment scrutiny at any level, including the level of intermediate scrutiny.

### b. Plaintiff is Likely to Suffer Irreparable Injury; *Winter* Factor Two is Met

"Having 'demonstrat[ed] the existence of a colorable First Amendment claim,' Plaintiff[] 'can establish irreparable injury sufficient to merit the grant of [injunctive] relief.'" *Los Angeles Press Club*, 171 F.4th at 1190 (citations omitted). A finding of irreparable harm, such as the chilling of First Amendment rights, "follows inexorably" from a "conclusion that the government's current policies are likely unconstitutional." *Hernandez v. Sessions*, 872 F.3d 976, 995 (9th Cir. 2017). And it is "well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury'". *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (citation omitted); *Libertarian Party of L.A. Cnty. v. Bowen*, 709 F.3d 867, 870 (9th Cir. 2013) ("[A]s the Supreme Court has recognized, a chilling of the exercise of First Amendment rights is, itself, a constitutionally sufficient injury" to warrant injunctive relief). Since Plaintiff has demonstrated § 13-2921 reaches and likely violates the First Amendment, "'no further showing of irreparable injury is necessary.'" *Baird*, 81 F.4th at 1042. The second *Winter* factor decisively weighs in favor of granting preliminary injunctive relief.

### c. The Merged *Winter* Factors Three and Four are Met

Plaintiff's "likelihood of success on the merits of [his] constitutional claim also tips the merged third and fourth factors decisively in [his] favor." *Baird*, 81 F.4th at 1042. "[T]he Government's interest *is* the public interest." *Nken v. Holder*, 556 U.S. 418, 435 (2009) (emphasis original). And "it is always in the public interest to prevent the violation of a party's constitutional rights". *Melendres*, 695 F.3d at 1002. Further, a

government defendant "cannot reasonably assert that [they are] harmed in any legally cognizable sense by being enjoined from constitutional violations." *Baird*, 81 F.4th at 1042. Since Plaintiff has established his constitutional rights are likely violated, he "also established that both the public interest and the balance of the equities favor a preliminary injunction". *Ariz. Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1069 (9th Cir. 2014).

II. The Court Would Be Wise to Issue a Preliminary Injunction on the Developed Record

With the *Hernandez* holding that § 13-2921(A)(1) "implicate[s] the free-speech [and petitioning] protections of our state and federal Constitutions", *Hernandez*, 587 P.3d at ¶ 23, the record is sufficiently developed on pleadings, motions, judicial notice, and affidavits to preliminarily enjoin the Attorney General without additional proceedings. Should the Court wish to conduct additional proceedings, Plaintiff asks the Court to expeditee proceedings.

CONCLUSION

Section § 13-2921(A)(1) criminalizes constitutionally protected speech and petitioning regardless of any underlying constitutionally legitimate purpose – a textbook example that "[t]he comparative freedom to regulate conduct sometimes tempts political bodies to try to recharacterize speech [and petitioning] as conduct. But hiding speech [and petitioning] restrictions in conduct rules is not only a 'dubious constitutional enterprise' – it is also *a losing constitutional strategy*." *Honeyfund.com v. Gov. of Fla.*, 94 F.4th 1272, 1281 (11th Cir. 2024) (emphasis added). The Arizona Legislature enacted an unconstitutional law that has been pointed directly and maliciously at Plaintiff's First Amendment rights, causing irreparable injuries. The Court should waive any Fed. R. Civ. P. 65(c) security which Plaintiff hereby requests, and should issue the requested preliminary injunction which is warranted on the developed record

17

DATED this 16th day of July 2026.

By: _//s//_
Phillip Potter
Plaintiff
Pro Se