Phillip Potter
2301 N. 66th Street
Scottsdale, Arizona 85257
Phone: 480.459.0310
E-Mail: phillip.t.potter@gmail.com
Plaintiff
Pro Se

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Phillip Potter,<br><br>                              Plaintiff,<br><br>v.<br><br>Robert Meza, et al.,<br><br>                              Defendants. | No. 2:25-cv-00663-PHX-DWL<br><br>**AFFIDAVIT IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION RE: A.R.S. § 13-2921** |

I, Phillip Potter, hereby depose and state as follows:

1. I submit this affidavit pursuant to 28 U.S.C. § 1746 in support of Plaintiff's July 14, 2026 Motion for Preliminary Injunction Re: A.R.S. § 13-2921.

2. The statements set forth in this affidavit (the "Affidavit") are based on my own personal knowledge and investigation unless stated otherwise. These statements are true to the best of my knowledge and belief as of the date I signed this Affidavit.

3. I am the Plaintiff in the above-captioned civil case.

4. On April 14, 2024, Alane Ortega, acting as counsel for my ex-wife in Maricopa

County Superior Court case FC2020-090224, moved the Hon. David McDowell to issue "an Order that all financial information disseminated in this matter be limited to use in this family Court matter and not to be disseminated to third parties for any reason without order of the Court allowing such over threat of sanctions and finding of contempt" as a discovery protective order, which that court granted.

5. On information and belief, and the available evidence, Alane Ortega sought the Order to conceal evidence of her client's and Robert Meza's concerted financial crimes as outlined in the original and operative complaints (*see* Doc. 104, ¶¶1-42).

6. On May 5, 2025, Judge McDowell clarified that the Order precluded sharing records and information with "government officials" because the First Amendment does not guarantee "the right to share their former wife's financial information with government officials for ill-defined reasons. None of the cases he cites indicate that the prohibition on disseminating his former wife's financial records, without court authority, constitutes a prior restraint on protected speech. ... To be clear, the Court has not precluded any legislative or executive branch official, investigator, or representative from obtaining Ms. Doctor's personal financial information from her, making a request to the Court, or serving a subpoena on either party. This Court has also not precluded Mr. Potter from bringing specific and detailed information to the Court and seeking authority to release records." This is a classic prior restraint on speech and government petitioning.

7. On May 18, 2026, I moved the Hon. Rachel Hernandez, who now presides over FC2020-090224, to vacate or modify the Order as a violation of the Speech Clause and Petition Clause, including based on new facts (*see* Attachment). Alane Ortega opposed. And Judge Hernandez denied the request.

8. On June 2, 2026, my ex-wife testified at an evidentiary hearing in CV2021-

2

005501. She admitted under oath for the first time, and contradicting prior sworn testimony, that she had met Christine Ehrich ("CE" per the original and operative complaints) in 2017, not in 2019 as she had told me in November 2019 and as she previously testified. My ex-wife further testified on June 2nd that she and Christine Ehrich maintained a friendship and that Axis for Autism, LLC was indeed the product of my December 2, 2019 presentation to Christine Ehrich and the work I had put in to create and launch FountainSyde, LLC in 2019. *See* Doc. 104, ¶¶44-49, 60. Axis for Autism, LLC is now a thriving, but fraudulently obtained and maintained, business venture per press reports and financial documents.

9. Alane Ortega serves as counsel for my ex-wife in CV2021-005501. On information and belief, and the available evidence, Alane Ortega was aware of the material facts associated with Christine Ehrich and Axis for Autism, LLC at all points during her representation in FC2020-090224 and CV2021-005501, and permitted her client to make knowingly false statements of fact while never displaying requisite candor.

10. On June 24, 2026, the Arizona Court of Appeals dismissed the *Hernandez v. Loarca* appeal as moot following remand from the Arizona Supreme Court wherein the state's highest court interpreted the statutory language and scope of A.R.S. § 13-2921; the criminal harassment statute which Plaintiff facially challenges in Count Two here.

11. As explained in the Motion for Preliminary Injunction Re: A.R.S. § 13-2921, the statute reaches and criminally punishes government petitioning in all forms, including reports to state and federal law enforcement, regardless of whether that petitioning is "made for legitimate purposes". These holdings are entirely consistent with my interpretation and alleged scope which appear in my original and operative complaint.

12. I wish to speak with, and to petition, state and government law enforcement

3

officers, and staff members of federal legislative branch, regarding the alleged criminal activities referenced in the original and operative complaints, and herein.

13. I am refraining from exercising those constitutionally protected speech and petitioning rights based on the reasonable fear that Attorney General Kris Mayes will criminally prosecute me under A.R.S. § 13-2921, and my ex-wife, through Alane Ortega, will civilly prosecute me under A.R.S. §§ 13-2921 and 13-3602.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.  Executed on July 14, 2026.

Phillip Potter

# ATTACHMENT

Clerk of the Superior Court
*** Electronically Filed ***
D. Araujo, Deputy
5/18/2026 7:53:34 PM
Filing ID 22063178

Phillip Potter
2301 N. 66th Street
Scottsdale, Arizona 85257
Phone: 480.459.0310
E-Mail: phillip.t.potter@gmail.com
Respondent

# IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

# IN AND FOR THE COUNTY OF MARICOPA

| | |
|---|---|
| In Re the Matter of: | Case No.: FC2020-090224 |
| **TASNEEM DOCTOR,** | **MOTION TO VACATE OR MODIFY ORDERS WHICH VIOLATE THE FIRST AMENDMENT** |
| Petitioner / Mother, | |
| and | (Assigned to the Hon. Rachel Hernandez) |
| **PHILLIP POTTER,** | (Oral Argument Requested) |
| Respondent / Father. | |

Respondent Phillip Potter asks the Court to vacate, or at least to modify, two orders (the "Orders") requiring him to obtain court approval before exercising his fundamental rights to speak with, and to petition, state and federal officials regarding Petitioner Tasneem Doctor's "financial information", including information contained in partially disclosed bank records and in judicial records.  The First Amendment forbids government officials, including state court judges, from placing prior restrictions on a person's fundamental right to speak with other government officials or to petition any government official through either the written or spoken word.  The Court of Appeals has established that such prior restraints are subject to "strict scrutiny" review and, in family law cases, may only be maintained should those restraints serve the specific "compelling government interest ... of [addressing] actual or threatened physical or emotional harm to the child" which Petitioner never even argued.  *Yanez v. Sanchez*, 548 P.3d 341, 346, ¶21 (2024).  There was never good cause to enter the Orders.  And the First Amendment prohibits the Orders from being "continued" in the face of new events per ARFLP Rule 53(d)(1)(A).

## BACKGROUND

Seeking to have partially disclosed financial records and associated financial information treated as confidential, Ms. Doctor asked the Hon. David McDowell on August 14, 2024 to issue an order to (1) permit her to avoid deposition questions regarding income derived from her single member limited liability company, especially business income and value resulting from agreements with "business associates" including "Robert Meza"; (2) prevent "[a]ny inquiries regarding the sale of real estate made by

1

members of her family or purchased by her parents"; and (3) secure "an Order that all financial information disseminated in this matter be limited to use in this family Court matter and not to be disseminated to third parties for any reason without order of the Court allowing such over threat of sanctions and finding of contempt." *See* Petitioner's August 14, 2024 "Mother's Request for Protective Order Re: Area of Inquiry for Improper Purpose", p. 4. Mr. Potter's August 27, 2024 Response highlighted Ms. Doctor's long overdue disclosure and discovery, Mr. Potter's need to document business activities to establish business-related income and business value as family law statutes and rules require, the settled law that bank records along with the financial information contained therein are not private, and that Ms. Doctor was asking the trial court to enjoin Mr. Potter from exercising his constitutional rights under the First Amendment.

On September 13, 2024, the Judge McDowell issued a "Ruling on Motion for Protective Order" finding: "Each party has a privacy interest in preventing their personal financial information from being disseminated beyond the parties in the case, particularly when it is provided pursuant to an order of the Court." He proceeded to grant Petitioner's request requiring "neither party in this case shall disseminate any financial information obtained by or about the other party to any person or entity other than the parties to this case and the counsel who have appeared in this case."

On March 3, 2025, Mr. Potter filed a "Motion to Vacate or Modify Order Per ARFLP Rule 53" asking Judge McDowell to vacate or modify the September 13, 2024 order, noting it could be read (1) to "stifle [Respondent's] ability to speak with

2

government officials" at both the state and federal levels; and (2) to serve as a "[p]rior restraint[] on speech [which is] the most serious and least tolerable infringement on First Amendment rights". Petitioner objected in her March 17, 2025 Response. Via counsel Alane Ortega, Petitioner declared Mr. Potter's "desire to take Mother's private financial disclosures received in the context of a family law matter and give those documents to an unknown governmental agency is not 'speech' protected by the First Amendment." Rather than cite a compelling government interest, Ortega argued that permitting Mr. Potter to exercise his fundamental rights would "circumvent Mother's 4th Amendment Protections requiring lawful search and seizure". She expressly asked the trial court to assume the role of government "gatekeeper".

On May 2, 2025, Judge McDowell ruled and wrote, "[t]he Court does not deny that Mr. Potter has a right to free speech, but the right to free speech is not boundless. Not all speech is protected and not all speech has the same level of protection. ... While he cites several cases about the right to share information with government officials, none give an individual the right to share their former wife's financial information with government officials for ill-defined reasons. None of the cases he cites indicate that the prohibition on disseminating his former wife's financial records, without court authority, constitutes a prior restraint on protected speech. ... To be clear, the Court has not precluded any legislative or executive branch official, investigator, or representative from obtaining Ms. Doctor's personal financial information from her, making a request to the Court, or serving a subpoena on either party. This Court has also not precluded Mr. Potter from

3

bringing specific and detailed information to the Court and seeking authority to release records." *See* Exhibit A.

## NEW FACTS AND EVENTS

On February 12, 2026, Petitioner filed to have Respondent arrested for not appearing at a short-notice deposition. The underlying subpoena demanded Mr. Potter's appearance expressly to obtain information related to a confidential settlement agreement that Respondent obtained from Ms. Doctor's second lawyer in this case (*see* electronic court record for Petitioner's February 12, 2026 "Motion for Civil Arrest Warrant", Respondent's February 27th Response, and Petitioner's March 12th Reply). The Court denied Ms. Doctor's motion during an April 14th status conference. Prompted by these events, Mr. Potter investigated and learned counsel Alane Ortega had caused another subpoena to be issued to a third party on October 15, 2025 seeking access to privileged and confidential information (*see* electronic court record for Respondent's May 18, 2026 "Motion for Sanctions"). Evidence provided in Mr. Potter's May 18th filing shows Ortega provided no notice to Respondent of the third-party subpoena, never disclosed the fruits of that un-noticed discovery tool, and used the non-discoverable information obtained to threaten Mr. Potter with arrest for the fourth time since dissolution proceedings began.

## ARGUMENT

"A judicial order is a prior restraint when it forbids 'certain communications ... issued in advance of the time that such communications are to occur.'" *Yanez*, 548 P.3d at 346 ¶16. As a "prior restraint" on speech, Judge McDowell's "order is presumptively

4

unconstitutional." *Id* at 346 ¶18.  Positioning himself as the "gatekeeper" for Mr. Potter's right to speak with, and to petition, state and federal officials, Judge McDowell ordered Respondent to pre-authorize any exercise of his right to speak with third parties while non-party government officials would need to make a request to the Court should those officials wish to learn about Ms. Doctor's financial information.   "The order here restricts future speech and is thus a prior restraint" on free speech rights. *Id*.  Further, because Mr. Potter is prohibited from speaking with any local, state or federal law enforcement official absent prior court approval, the Orders also serve as a prior restraint on Mr. Potter's right to petition the government. *See Forro Precision, Inc. v. International Business Machines Corp.*, 673 F.2d 1045, 1060 (9th Cir. 1982) ("The interests embodied by the Petition Clause are served by ensuring the free flow of information to the police.  It would be difficult indeed for law enforcement authorities to discharge their duties if citizens were *in any way* discouraged from providing information.") (Emphasis added).  The Orders violate Mr. Potter's fundamental rights, and do not withstand strict scrutiny as no compelling government interest could be served in this instance, or was even alleged.

I. The Court Should Vacate or Modify the Orders

Per ARFLP Rule 53(d), "the party seeking confidentiality must show why a confidentiality order should be entered or *continued*" when a request to vacate or modify is made.  Ms. Doctor cannot show why the Orders should be maintained since, as a matter of law, the Orders impermissibly violate Mr. Potter's First Amendment's right to free speech and his right to petition the government, and fail strict scrutiny analysis.

5

A. Legal Standard

"A prior restraint of speech is subject to strict scrutiny review." *Yanez,* 548 P.3d at 345 ¶17. "Arizona courts recognize a heavy presumption that prior restraints are unconstitutional. That presumption can only 'be overcome if the restriction serves a compelling governmental interest, is necessary to serve the asserted compelling interest, is precisely tailored to serve that interest, and is the least restrictive means readily available for that purpose.'" *Id* (citing *Nash v. Nash,* 232 Ariz. 473, 482, ¶ 32, 307 P.3d 40, 49 (App. 2013)). In family law cases, "[t]o prove a compelling government interest for a prior restraint on a parent's right to free speech, the record must offer evidence of actual or threatened physical or emotional harm to the child." *Id* at 346, ¶21.

B. The Orders Do Not Withstand Strict Scrutiny

"Prior restraints on speech [and petitioning] are the most serious and least tolerable infringement on First Amendment rights." *Nash,* 232 Ariz. at 481, ¶ 32 (citing *Neb. Press Ass'n v. Stuart,* 427 U.S. 539, 559 (1976)). "A judicial order is a prior restraint when it forbids 'certain communications ... issued in advance of the time that such communications are to occur.'" *Yanez,* 257 Ariz. at 306, ¶ 16. The Orders each classify as a "prior restraint" forbidding Respondent from disseminating Petitioner's financial "information" to all non-parties, including government officials. *Nash,* 232 Ariz. at 481.

1. No Compelling Government Interest Justifies the Prior Restraint

"[P]roof of actual or threatened physical or emotional harm to a child" is the only "sort of proof" that serves a "compelling government interest" sufficient to "overcome the

6

presumption of unconstitutionality." *Yanez*, 257 Ariz. at 306, ¶¶ 19-20.  Ms. Doctor never presented or argued, and Judge McDowell never found, evidence of actual or threatened harm to the parties' child.  Judge McDowell instead found "[e]ach party has a privacy interest in preventing their personal financial information from being disseminated beyond the parties in the case, particularly when it is provided pursuant to an order of the Court."  Because the Orders lack any reference to the child's well-being or proof of any potential harms to the parties' child, they both fail "strict scrutiny" analysis as a matter of law.  *Id.*

### a. Petitioner Never Alleged, Nor Could She Allege, That the Child Would be Physically or Emotionally Harmed By Respondent Sharing Financial Information

The record shows Ms. Doctor never alleged, never provided evidence of, and never attempted to prove the parties' child would be harmed should Mr. Potter share financial information with state or federal government officials.  This fact is dispositive.

### b. Ms. Doctor's Fourth Amendment Rights Are Not Implicated; Such Rights Can Provide No Compelling Government Interest to Justify a Prior Restraint

Ortega called only to "Mother's 4th Amendment" rights to justify the prior restraint.  *See* Petitioner's March 13, 2025 Response, p. 4.  The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."  *Camara v. Municipal Court of City and County of San Francisco,* 387 U.S. 523, 528 (1967).  The "basic purpose of this Amendment is to safeguard the privacy and security of individuals against arbitrary invasions by *governmental officials*."  *Id* (emphasis added).  Mr. Potter is not a

"government official", is not an agent of the government, has never professed to be an agent of the government, and cannot conduct any "searches and seizures".  Hence, Ms. Doctor maintains no Fourth Amendment interest and cannot seek to balance that non-existent interest against Mr. Potter's First Amendment interests.

i. There Is No Privacy Interest In Bank Records Or In The Financial Information Contained In Those Records

Judge McDowell found Petitioner maintained a privacy interest in her "financial information" and concluded protecting this privacy interest served a compelling government interest sufficient to issue a prior restraint.  No such privacy interest exists.  "[A] person does not have a privacy interest in information revealed to a third party and subsequently conveyed to governmental authorities, even if the information is revealed on the assumption that it will be used for a limited purpose and that the third party will not betray their confidence."  *U.S. v. Cormier*, 220 F.3d 1103, 1108 (9th Cir. 2000); *Nelson v. Nat. Aeronautics and Space Admin.*, 568 F.3d 1028, 1039 (9th Cir. 2009) ("The Supreme Court has consistently held that individuals do not have a legitimate expectation of privacy in information they voluntarily turn over to third parties.").  When Ms. Doctor utilized financial institutions, and then shared financial information contained in the institution's records during court proceedings, she had "take[n] the risk, in revealing h[er] affairs to another, that the information [would] be conveyed by that person to the Government."  *U.S. v. Miller*, 425 U.S. 435, 443 (1976).  To be clear, the Supreme Court long ago established that bank records, and the financial "information" contained therein,

are not private records and therefore carry no privacy interests. *Id* ("The depositor takes the risk, in revealing his affairs to another, that the information will be conveyed by that person to the Government."); *Carpenter v. U.S.*, 585 U.S. 296, 298 (2018) ("The third-party doctrine partly stems from the notion that an individual has a reduced expectation of privacy in information knowingly shared with another."). Ms. Doctor neither owns nor controls bank records held by financial institutions, and she does not own or control the financial information contained in those records. *See Cormier*, 220 F.3d at 1108. ("[A] person does not possess a reasonable expectation of privacy in an item in which he has no possessory or ownership interest."). Simply put, Ms. Doctor possesses no privacy interest in this "financial information". Accordingly, Judge McDowell erred when it deemed this information a protected privacy interest, and when it ordered Mr. Potter not to share this information with any third party, including government officials, absent prior approval.

ii. There Is No Privacy Interest In Financial Information Contained in Judicial Records

Ms. Doctor likewise maintains no privacy interest in financial information contained in court records. "[R]ecords relating to a dissolution proceeding 'shall be maintained and disclosed in accordance' with Rule 123(c)(1) of the Rules of the Arizona Supreme Court, which in turn provides that court records 'are presumed to be open to any member of the public for inspection.' While Arizona Rule of Family Law Procedure 13(d) allows the superior court to 'make any record of a family court matter closed or confidential or otherwise limit access to such records,' the court may issue such an order

9

only upon' 'a finding that the confidentiality or privacy interests of the parties [or] their minor children ... outweighs the public interest in disclosure.'" *Nash,* 232 Ariz. at 482, ¶ 40. Judge McDowell's authority is limited to a procedural authority to make "records" unavailable for public inspection upon a finding that doing so is necessary "to protect the best interests of a minor child, or to protect the parties from physical or emotional harm." Ariz. Fam. Law. P. Rule 13(a). "After making that finding, the court may order that any record of a family court matter be closed or deemed confidential or may otherwise limit access to those records." Ariz. Fam. Law. P. Rule 13(d). Again, per *Nash* and *Yanez,* family law courts have no authority to order litigants to withhold "financial information" from government officials.

### iii. There Is No Compelling Government Interest in Protecting Financial Information Which Evidences Criminal Activity

To reiterate, any prior judicial restraint on the exercise of a litigant's constitutional rights must serve a compelling governmental interest which, in the family law context, is limited to preventing physical or emotional harm to a child. *Yanez,* 257 Ariz. at 306, ¶¶ 16-21. The motion papers Ortega filed on behalf of Ms. Doctor asking the trial court to issue and to maintain the Orders do not reference any potential harm to the parties' child. The child was never Petitioner's concern. Petitioner's and Ortega's express concern was always concealing financial activity which implicated Ms. Doctor's and former State Representative Robert Meza's concerted criminal conduct. Once more, Ms. Doctor specifically and repeatedly asked family law courts to sidestep mandatory financial

10

disclosures, to unlawfully limit disclosure and discovery on personal and business financial matters, and to order a prior restraint be entered on sharing what limited financial information was obtained regarding (1) her "business" dealings with "Robert Meza" which generated income from multiple sources; (2) financial and non-financial benefits derived from her company, EB Medical Consulting, LLC; and (3) "the sale of real estate made by members of her family or purchased by her parents".  Petitioner and Ortega wanted these three sources of financial information withheld from government officials because they individually, and collectively, reveal criminal conduct.[1]

Robert Meza: Robert Meza is a former State Representative / Senator who left the legislature after *The Arizona Republic* published an article[2] implicating him in a public corruption and Medicaid fraud scheme.  Ms. Doctor was part of that scheme where, under the artifice of a benevolent legislator supporting his "constituents", Meza exploited his office to solicit discretionary public funds from state agency directors, state legislators, and the Governor on behalf of six nonprofit behavioral health organizations.  But he fraudulently omitted the material fact from those funders that the nonprofits' complicit senior executives were covertly paying him to secure those funds.  The nonprofits immediately stopped paying Meza once the scheme came to light, and Meza left office once a legislative ethics committee chair publicly declared good cause existed to find his

---

[1] The facts detailed and quoted from this point forward are also found in Mr. Potter's February 27, 2026 "Response to Motion for Civil Arrest Warrant" (pp. 6-11), which he incorporates fully herein for brevity and efficiency.

[2] *See* https://tinyurl.com/2s3wedcf.

11

actions criminal. Petitioner served as a senior executive or Board member for three of the six nonprofits where she knowingly facilitated Meza's financial payments.

EB Medical Consulting, LLC: In 2016, after Ms. Doctor spent ten years as a state employee reviewing disability application files, Meza secured employment for Ms. Doctor with one of the nonprofits covertly paying him. Simultaneously, Ms. Doctor launched EB Medical Consulting, LLC. Despite possessing no private business background or applicable professional experience, this single member LLC generated $147,085 in revenue from its four clients in eighteen months. Ms. Doctor purported to "procure value-based contracts with Managed Care MCO's"; i.e., A.R.S. § 36-2906.01(A) Arizona Health Care Cost Containment System (AHCCCS) "system contractors" who administer the state's Medicaid system. In truth, these "clients" were paying Ms. Doctor in return for Meza leveraging his public office and lobbying the MCOs' executives to provide value-based contracts, enhanced rate services contracts, and block grants. One client secured hundreds of thousands of dollars in grants, contract advances, and enhanced rate services contracts paying "135% of standard Medicaid rate"[3] but still failed within one year forcing the MCO system contractor to "forg[i]ve contract advances to [the EB Medical Consulting, LLC client] totaling $947,453".[4] Rather than pay Meza directly, those clients

---

[3] *See* May 2018 edition of *Psychiatric Services* located online at https://psychiatryonline.org/doi/10.1176/appi.ps.201700516.

[4] *See* 2018 AHCCCS System Contractor IRS Form 990 Schedule O, p. 26 located online at https://projects.propublica.org/nonprofits/organizations/861030444/2019024093493 00810/full.

paid Ms. Doctor via EB Medical Consulting, LLC. Petitioner and her father, Abdulla Doctor, used that revenue to acquire real property located at 3305 North 25th Place in Phoenix, Arizona. To compensate Meza, the Doctors hired Meza's husband as the buy and sell real estate agent. In the end, this aspect of the scheme made $30,000 for Meza, made $150,000 for Ms. Doctor, and caused AHCCCS to absorb a $1,000,000 loss.

Family Members' Real Estate: In September 2019, Petitioner applied to Mattamy Home Funding, LLC for a $424,000 home mortgage for real property located at 2091 E. Wisteria Drive in Chandler, Arizona. Ms. Doctor had no intention to live in that house but fraudulently obtained a mortgage based on false statements that the property would serve as her primary residence. In truth, her parents, Brenda Doctor and Abdulla Doctor, planned to occupy that home as their primary residence. At her parents' request, Tasneem Doctor applied for the mortgage, served as a "straw buyer", and defrauded the mortgage company to secure a lower interest rate. Petitioner admitted her intent to defraud the mortgage company under oath on October 26, 2021, and detailed the agreement made with her parents to perpetrate that fraud. Per her sworn statements: "So I put the mortgage in my name because I was getting a better interest rate. ... For the Wisteria home." She continued: "I was getting a better mortgage rate, but they [Brenda Doctor and Abdulla Doctor] paid the down payment and the fees to secure the home, whatever that -- you know, the down payment and whatever the -- the fees to whatever -- the $20,00 that was initially funded. I've never paid the mortgage. They reimbursed -- I - - I wired the money from my account, and they reimbursed me the same day. So I did not

13

use any community funds to pay for that house. And -- and we -- this is just the evidence showing that the mortgage was paid through them and all the down payment and any fees that went through that house, and was paid through my parents." Petitioner's admission that she "put the mortgage in [her] name because [she] was getting a better interest rate" confirmed her intent to fraudulently secure a lower interest rate than would have been provided had she truthfully submitted that the Wisteria property would not be her primary residence. *See State v. Thompson,* 194 Ariz. 295, ¶ 13, 981 P.2d 595, 598 (App. 1999) ("[A]n intent to defraud is found where the defendant intends to cause a pecuniary loss or gain."); A.R.S. § 13-2320; 18 U.S.C. § 1014; 18 U.S.C. § 1344. Further, financial records Petitioner partially disclosed show that, on October 7, 2019, Tasneem Doctor deposited a $91,668.10 check into her JPMorgan Chase account x0190. A "check details" image shows Brenda Doctor wrote Tasneem Doctor a check for $91,668.10 on October 7, 2019 from JPMorgan Chase account x1159. That check lists "Brenda S. Doctor" and "Abdulla Doctor" as the account holders at "4786 W. Nogales Way, Eloy, AZ 85131-3072". On October 8, 2019, Ms. Doctor authorized a wire transfer of $91,668.10 from her JPMorgan Chase account x0190 to "First American Title Insurance" with reference to "Ref: File No: 435-5996484 Property Address: 2091 E Wisteria DR Chandler AZ 85286". As Petitioner admitted, Abdulla Doctor and Brenda Doctor made $3,331.21 mortgage payments to "Central Loan Administration and Reporting" from JPMorgan Chase account x0851 bank records registered to "Abdulla Doctor or Brenda Doctor" at "2091 E. Wisteria Mr., Chandler, AZ 85286-0307", as evidenced by an online payment made from that account

14

on "11/25" per the parents' "November 21, 2019 through December 18, 2019" account statement. Ms. Doctor and her parents conspired to commit, and did commit, wire fraud. *See* 18 § U.S.C. 1343; 18 § U.S.C. 1349. Petitioner cannot lawfully ask the judicial system to silence Respondent or threaten him with contempt for exercising his First Amendment right to report evidence of criminal activity to any member of the legislative or executive branches of the state or federal governments. Indeed, counsel Ortega's professional duties prohibit her from making or defending such a request as a matter of constitutional law and the known facts behind the request. *See* Ariz. R. Sup. Ct. 42, ERs 1.16(a)(4), 1.2(e), 3.3(a)(1) 3.3(b), and 4.1(a)-(b).

### iv. Summary

Arizona courts look to the Ninth Circuit for guidance regarding orders going to information confidentiality. *See Ctr. For Auto Safety v. Goodyear Tire & Rubber Co.,* 454 Ariz. 567 (App. 2019) (Pointing to "*Kamakana v. City & Cty. of Honolulu,* 447 F.3d 1172, 1178 n.3 (9th Cir. 2006)" and "*Foltz v. State Farm Mut. Auto. Ins. Co.,* 331 F.3d 1122, 1138 (9th Cir. 2003)", while noting "[t]he federal and Arizona rules regarding protective orders are materially similar in that they require good cause."). Per ARFLP Rule 53(A), "the court for good cause may enter an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense". ARFLP Rule 53(d)(1) places the burden on "the party seeking confidentiality" to demonstrate good cause and "show why a

15

confidentiality order should be entered or *continued*". "A party asserting good cause bears the burden, for each document it seeks to protect, of showing that specific prejudice or harm will result if no protective order is granted. Broad allegations of harm will not suffice." *Ctr. For Auto Safety*, 247 Ariz. at 572, ¶ 20. "[T]he mere fact that the production of records may lead to a litigant's embarrassment, *incrimination*, or exposure to further litigation will not, without more, compel the court to" prohibit dissemination of information to other branches of the state or federal government. *Foltz*, 331 F.3d at 1138 (emphasis added).

### 2. The Orders Fail the "Least Restrictive Means" Test

"An order restricting release of information or materials to nonparties or intervenors must use the least restrictive means to maintain any needed confidentiality." ARFLP Rule 53(d)(3). Petitioner is required to "prove the prior restraint was narrowly tailored". *Yanez,* 548 P.3d at 346, ¶23. She cannot satisfy this requirement because the Orders constitute indiscriminate blanket restraints.

### II. Requested Relief

Respondent asks the Court to vacate the Orders or, in the alternative, to modify the Orders such that it is clear Mr. Potter may fully exercise his First Amendment rights without fear of recourse. *See* U.S. Const. art. VI, cl. 2 ("This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; ... , shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby,"); Ariz. Const. art.

16

2, § 3 ("The Constitution of the United States is the supreme law of the land to which all government, state and federal, is subject."); Ariz. Const. art. 2, § 5 ("The right of petition, ... , shall never be abridged."); *Lott v. Andrews Center*, 259 F. Supp. 2d 564, 568 (E.D. Tex. 2003) (Filing a "criminal complaint with law enforcement officials constitutes an exercise of the First Amendment right" to petition the government for redress.); *Boquist v. Courtney*, 32 F.4th 764 (9th Cir. 2022) (Holding that the Speech Clause and the Petition Clause protects citizens who wish to speak with members of the legislative branch).

CONCLUSION

*Nash* and *Yanez* make it clear that no statutory or procedural authority permits Ms. Doctor to frame her "financial information" as a privacy or confidentiality interest, much less an interest that can overcome Mr. Potter's First Amendment rights to speak with, and to petition, state and federal officials regarding past and ongoing criminal activity. The Court should vacate the Orders.

**RESPECTFULLY SUBMITTED** this 18th day of May, 2026.

/s/ Phillip Potter<br>
Phillip Potter<br>
Respondent/Father

17

**ORIGINAL** of the foregoing filed / e-filed
this 18th day of May, 2026 with:

Clerk of the Court
MARICOPA COUNTY SUPERIOR COURT

**CONFORMED COPY** automatically transmitted by
Superior Court Clerk, upon confirmation of electronic filing, to:

The Honorable Rachel Hernandez
JUDGE OF THE SUPERIOR COURT

**COPY** of the foregoing mailed and e-notified
this 18th day of May, 2026 to:

Alane M. Ortega
ORTEGA & ORTEGA, PLLC
7227 North 16th Street, Suite 245
Phoenix, AZ 85020
arobylaw.efile@gmail.com
alane@ortegalawyers.com
*Attorney for Petitioner / Mother*

By: Phillip Potter
 /s/ Phillip Potter

18

# Exhibit A

Clerk of the Superior Court
*** Electronically Filed ***
05/02/2025 8:00 AM

## SUPERIOR COURT OF ARIZONA
## MARICOPA COUNTY

FC 2020-090224                                                     05/01/2025

|                                        | CLERK OF THE COURT |
|----------------------------------------|--------------------|
| HONORABLE DAVID MCDOWELL                | T. Burns           |
|                                        | Deputy             |

IN RE THE MARRIAGE OF
TASNEEM DOCTOR                          ALANE ORTEGA

AND

PHILLIP POTTER                          PHILLIP POTTER
                                        2301 N 66TH ST
                                        SCOTTSDALE AZ  85257


                                        JUDGE MCDOWELL


### RULING ON MOTION TO VACATE OR MODIFY ORDER

Pending before the Court is Respondent Phillip Potter's March 3, 2025 *Motion to Vacate or Modify Order per ARFLP Rule 53;* Petitioner's Tasneem Doctor's March 17, 2025 *Response to Respondent's Motion to Vacate or Modify Mother's Protective Order Made pursuant to ARFLP Rule 53;* and Phillip Potter's March 27, 2025 *Reply to Motion to Vacate or Modify Order per ARFLP Rule 53.*

This motion seeks to modify or set aside this Court's September 14, 2024 Order which provides:

> IT IS ORDERED neither party in this case shall disseminate any financial information obtained by or about the other party to any person or entity other than the parties to this case and the counsel who have appeared in this case.

To be clear, this Court has entered no orders related to the disclosure of Robert Meza's information. Mr. Meza is not a party to this case, and he has not sought any orders from this Court. This Court's only orders relate to the disclosure of Mr. Potter and Ms. Doctor's financial information. While Mr. Potter's arguments conflate a purported investigation into Mr. Meza with the need to disclose Ms. Doctor's private financial information, he has failed to establish the nexus between the two.

In this *Motion to Vacate or Modify*, Mr. Potter seeks authority to share Ms. Doctor's private

Docket Code 019                         Form D000D                          Page 1

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

FC 2020-090224                                            05/01/2025

financial information with "investigators and prosecuting attorneys" among others. He asserts sharing Ms. Doctor's private financial information furthers a public interest of investigating the actions of Robert Meza. Nowhere in his seventeen-page *Motion* or his eleven-page *Reply* does he state the following with any specificity:

- Who is conducting the alleged criminal investigation for "financial activities and interactions"
- What is meant by "financial activities and interactions"
- The focus of the purported criminal investigation
- Whether Ms. Doctor is the subject of the alleged criminal investigation
- Whether he has been asked to share Ms. Doctor's private financial information with the purported investigators
- What information he was allegedly asked to share
- Who allegedly asked him to share information
- When the alleged request was made
- Why Ms. Doctor's private financial information would demonstrate her involvement in a scheme involving public funds
- Which alleged members of the "executive and legislative branches have expressed an interest in Mother's career progression" or why.

He alleges he has been approached by "investigators, prosecutors, legislators" expressing an interest in Ms. Doctor's financial information, he also alleges that members of the press have expressed an interest in Ms. Doctor's financial information, but he fails to state:

- Who
- When
- The purpose of their inquiry
- Whether he initiated the inquiry
- What information they sought
- The purpose of their inquiry

The Court is unpersuaded by vague statements and generalities. Phillip Potter provides no specifics about what information he desires to share, to whom it will be shared, or the purpose of sharing Ms. Doctor's financial information. Phillip Potter has not identified how Ms. Doctor's personal financial information will further the alleged investigation (by unnamed individuals and agencies) into Robert Meza or anyone else. While he asserts sharing Ms. Doctor's financial information is in the public interest and is intended to address "government fraud" he has provided no specific information with which this Court can determine if the information he intends to share is in furtherance of the public interest or merely furthers the vendetta Mr. Potter has pursued through this family court case and the civil cases he has filed against Ms. Doctor and anyone associated with her. Instead of specific information he makes wide-ranging allegations that she was complicit in Mr. Meza's laundering and kickback scheme and she "fears" her records will demonstrate her involvement in this scheme.

Phillip Potter argues the Court's order precluding him from using the personal financial information of Ms. Doctor outside of this proceeding violates his right to free speech. Assuming,

Docket Code 019                      Form D000D                              Page 2

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

FC 2020-090224                                                    05/01/2025

arguendo that sharing one's former spouse's personal financial information with others is speech, Phillip Potter has failed to establish that speech is protected speech or that anything other than a rational basis must be stated to impose a reasonable restriction on that speech. Here a rational basis exists because Mr. Potter has demonstrated a pattern of baseless complaints to federal and state agencies about Ms. Doctor and initiating baseless litigation against Ms. Doctor and anyone associated with her.

The Court does not deny that Mr. Potter has a right to free speech, but the right to free speech is not boundless. Not all speech is protected and not all speech has the same level of protection. Phillip Potter has not demonstrated that his protected speech rights have been impermissibly infringed by this Court's order. The Court does not agree that sharing his former wife's personal financial information implicates his right to protected speech or that the reasonable restriction on the dissemination of her personal financial information offends the Constitution. While he cites several cases about the right to share information with government officials, none give an individual the right to share their former wife's financial information with government officials for ill-defined reasons. None of the cases he cites indicate that the prohibition on disseminating his former wife's financial records, without court authority, constitutes a prior restraint on protected speech.

Phillip Potter argues his victim's rights are infringed by his inability to disseminate Ms. Doctor's financial information to others, but he fails to establish that he has been the victim of any crime giving rise to victim's rights.

He also argues his petition right is infringed because he cannot disclose the private financial information of Ms. Doctor to state and federal legislative or executive branches. But, as addressed above, he has failed to provide any specificity of the information he seeks to disclose or the purpose of the disclosure.

He argues his rights as a parent are infringed because he cannot share his former wife's financial records with executive and legislative branch officials. He fails to establish how his parental rights are infringed by his inability to share his former wife's personal financial information with governmental officials or how his parenting time, legal decision-making, or child support would be affected by such sharing.

Phillip Potter argues that Court records are public records. That is correct, but documents obtained in discovery are not Court records. Further exhibits admitted at a hearing in a family court case are rarely available to the public and the Court has the ability to protect those records from public disclosure under Rules 13 and 17 of the Ariz.R.Fam.L.Proc.

The Court will not entertain a request to release Ms. Doctor's private financial information that is so lacking in specificity that it fails to identify what information would be disclosed, to whom, for what purpose, whether a request has been made for the disclosure, or whether Mr. Potter is approaching individuals intending to offer Ms. Doctor's private financial information in the hopes of initiating an investigation. Mr. Potter has demonstrated he will pursue investigations (including a federal investigation into allegations of genital mutilation) and lawsuits against Ms. Doctor without any legal or factual basis. This Court's decisions are based upon evaluation of specific

Docket Code 019                          Form D000D                          Page 3

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

FC 2020-090224                                          05/01/2025

information, not wide-ranging speculation and conjecture. Mr. Potter has produced no such specific information to support his request.

To be clear, the Court has not precluded any legislative or executive branch official, investigator, or representative from obtaining Ms. Doctor's personal financial information from her, making a request to the Court, or serving a subpoena on either party. This Court has also not precluded Mr. Potter from bringing specific and detailed information to the Court and seeking authority to release records. This Court's order only precludes the parties from voluntarily disclosing the private financial information of the other party.

**IT IS ORDERED** denying Phillip Potter's March 3, 2025 *Motion to Vacate or Modify Order Per ARFLP Rule 53.*

**IT IS ORDERED** signing this minute entry as a formal order of the Court.

_____
HONORABLE DAVID MCDOWELL
JUDGE OF THE SUPERIOR COURT

All parties representing themselves must keep the Court updated with address changes. A form may be downloaded at: https://superiorcourt.maricopa.gov/llrc/fc_gn9/

Docket Code 019                    Form D000D                    Page 4