# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Phillip Potter,<br><br>     Plaintiff,<br><br>v.<br><br>Robert Meza, et. al.,<br><br>     Defendants. | No. 2:25-cv-00663-PHX-DWL<br><br>**[PROPOSED] ORDER GRANTING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION RE: A.R.S. § 13-2921** |

The Court, having considered Plaintiff Phillip Potter's July 16, 2026 Fed. R. Civ. P. 65 Motion for Preliminary Injunction Re: A.R.S. § 13-2921 (Doc. 124) involving a First Amendment facial challenge to the State of Arizona's criminal harassment statute (Doc. 14; Doc. 104), and having reviewed the record, finds Plaintiff has met his burden of demonstrating standing to sue Arizona Attorney General Kris Mayes for the purpose of facially challenge A.R.S. § 13-2921, and of demonstrating the need for, and the warranted entitlement to, an injunction preliminarily enjoining the Attorney General from in any way prosecuting Plaintiff under A.R.S. § 13-2921(A)(1), as follows.

COMMENT ON THE IMPACT OF *HERNANDEZ V. LOARCA* (2026)

The Court previously expressed concern that § 13-2921 did not reach First Amendment expression. *See* Doc. 100, pp. 32-33 ("it is unclear whether the act of filing court papers would qualify as 'conduct that is directed at a specific person,' as required under § 13-2921(E)."). However, the Arizona supreme court has since determined the statute "implicates' First Amendment speech and government petitioning regardless of whether such expressions are "made for legitimate purposes", which would include First Amendment expression. *Hernandez v. Loarca*, ___ Ariz. ___, ¶ 23, 587 P.3d 1266, 1271 (2026). Federal courts are bound by a state supreme court's interpretation of its state's statutes. *See In re Kirkland*, 915 F.2d 1236, 1238 (9th Cir. 1990). *Hernandez* informs the standing analysis and the merits analysis, and that case's interpretations and holdings are consistent with Plaintiff's well-pleaded allegations. (Doc. 104, ¶¶208-220).

## STANDING

The Court now explains its reasoning, beginning where it must, with an analysis of Article III jurisdiction; specifically, a determination of Plaintiff's standing to sue Attorney General Mayes for prospective declaratory and injunctive relief per *Ex parte Young*, 209 U.S. 123 (1908). "At the preliminary injunction stage, plaintiffs are required to show only that they are 'likely to establish each element of standing.'" *Los Angeles Press Club v. Noem*, 171 F.4th 1179, 1189 (9th Cir. 2026) (citation omitted). "Standing is a core component of the case-or-controversy requirement of Article III." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). "To establish standing, ... a plaintiff must demonstrate (i) that he has suffered or likely will suffer an injury in fact, (ii) that the injury likely was caused or will be caused by the defendant, and (iii) that the injury likely

2

would be redressed by the requested judicial relief." *Am. Encore v. Fontes*, 152 F.4th 1097, 1110 (9th Cir. 2025). "For pre-enforcement plaintiffs, the injury is the anticipated enforcement of the challenged statute in the future." *Peace Ranch, LLC v. Bonta*, 93 F.4th 482, 486-87 (9th Cir. 2024). Such an injury exists "if: '(1) [the plaintiff] ha[s] alleged 'an intention to engage in a course of conduct arguably affected with a constitutional interest;' (2) but the conduct is 'proscribed by a statute;' and (3) 'there exists a credible threat of prosecution'". *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014).

Under pre-enforcement theory, Plaintiff alleges he suffers "imminent" irreparable injuries sufficient to sue Attorney General Mayes and enjoin her from enforcing § 13-2921(A)(1), which he contends facially violates the First Amendment. (Doc. 104, ¶¶109-110, 208-220; Doc. 124). In pre-enforcement facial challenges, a pre-enforcement injury can be shown one of two ways. First, an "imminent injury" can be demonstrated via "a chilling of the exercise of First Amendment rights". *Libertarian Party of L.A. County v. Bowen*, 709 F.3d 867, 870 (9th Cir. 2013). Second, such an injury can be shown in a "bet the farm" scenario where the plaintiff is engaging in an exercise of First Amendment expression but has not yet been prosecuted. *Peace Ranch*, 93 F.4th at 487-490. Here, Plaintiff alleges both. He contends his First Amendment rights have been "chilled" because he has chosen not to speak with, or to petition, members of the legislative and executive branches of both the state government and the federal government out of fear that his actions will result in civil prosecution of § 13-2921(A)(1) by his ex-wife via § 13-3602 proceedings, and that there is a substantial risk those same actions will result in civil and/or criminal prosecution of § 13-2921(A)(1) by the Attorney General based on her state constitutional and statutory authorities to prosecute criminal code violations. (Doc. 124; Doc. 124-1). He also alleges he has "bet the farm" when continually exercising his

3

court petitioning rights to file court papers that result in his ex-wife repeatedly accusing him of harassment despite presenting claims and defenses with a sound basis in fact and law. (Doc. 124; Doc. 124-1).

The Attorney General, in turn, posits that standing does not confer because there is no credible threat of § 13-2921(A)(1) prosecution because, among other things, _she_ has not issued a "specific" threat to prosecute and because there is "no history of past prosecution" of anyone for engaging in First Amendment speech or government petitioning (Doc. 110, pp. 12-13). She also puts forth the merits defense that § 13-2921(A) does not reach First Amendment expression (Doc. 110, pp. 15-16).

Imminent Injury

Proceeding from the parties' framing of the dispute, the Court starts with the _Driehaus_ three-factor analysis to determine whether any "credible threat" exists.

_Driehaus_ Factor Once is met as there can be no real doubt that filing court papers in active contentious litigation, speaking with and/or petitioning law enforcement on alleged crimes, and speaking with the public on matters of public concern each present a "course of conduct arguably affected with a constitutional interest". The Attorney General's counterargument that Plaintiff's "specific theory" of the case, and that his plan to continue engaging in court petitioning under the circumstances is not "concrete" enough (Doc. 110, pp. 11-13) does not, and cannot, alter the Court's analysis of _Driehaus_ Factor One as outlined by the Supreme Court and as understood by the Ninth Circuit. "'The concept of 'intention' is more counterfactual than practical. That is to say, courts must ask whether the plaintiff would have the intention to engage in the proscribed conduct, were it not proscribed.' And here it is clear that Plaintiff intend[s] to engage in [petitioning and] speech of whatever nature the times and issues demand – [petitioning

4

and] speech that is protected by the First Amendment." *Am. Encore*, 152 F.4th at 1115 (citations omitted). *Driehaus* Factor One is met.

*Driehaus* Factor Two is also met given *Hernandez* confirms that § 13-2921(A)(1) more than arguably "proscribes" the courses of conduct per Plaintiff's description and interpretation. *Id* at 1116 ("for the purposes of standing, we accept Plaintiffs' interpretation of the statute so long as it is an arguable interpretation").

Regarding *Driehaus* Factor Three, the "history of prosecution" is not material to the consideration. But even if it were, that consideration favors Plaintiff, not the Attorney General, for at least two reasons. First, the statute is relatively new in its present form, so prosecution history does not weigh against Plaintiff's standing. *See e.g., California Pro-Life Council, Inc. v. Getman*, 328 F.3d 1088, 1095 (9th Cir. 2003). Second, and more importantly, the *Hernandez* case shows that an individual indeed has been prosecuted under §§ 13-2921(A)(1) and 13-3602 for engaging in First Amendment expression (Doc. 124), confirming those statutes permit Arizonans to be prosecuted based on the state supreme court's interpretation of the § 13-2921(A) "plain" language. *Hernandez*, 587 P.3d at 1269 ¶12. Moving on, it is of no moment that Attorney General Mayes has not issued a "specific" threat to prosecute Plaintiff because federal courts "look to 'the threat posed collectively by the entire 'universe of potential complainants'", not just the threat posed by any single authorized enforcer. *Am. Encore*, 152 F.4th at 1118-1119. And statutorily authorized private parties are part of that "universe". *Id*. The Attorney General is on record that she "will not disavow enforcing Arizona's harassment statute" (Doc. 123, p. 2), and she has never disavowed enforcing the statute against Plaintiff despite ample opportunity. As the Supreme Courtly recently observed, since the Attorney General "declined to disavow enforcement against [plaintiff]. ... no more is required under this

5

Court's precedents." *Chiles v. Salazar*, 607 U.S., ____ (2026) (slip op. at 4–5). On that basis alone, Plaintiff meets *Driehaus* Factor Three. This conclusion is further buttressed by the past, present, and ongoing actions of Plaintiff's ex-wife. Specifically, she prosecuted Plaintiff under §§ 13-2921 and 13-3602, only to see the resulting protection order vacated with an award to Plaintiff of attorney fees and costs. (Doc. 104, ¶58). She also caused the Arizona Secretary of State to enter official records declaring Plaintiff's court petitioning violated §§ 13-2921 and 13-3602, making her a "card" carrying domestic violence victim. (Doc. 104, ¶94). And the ex-wife continues to threaten Plaintiff's § 13-2921(A)(1) prosecution should he (1) continue to engage in court petitioning that she finds distressing, or (2) petition law enforcement officials regarding any alleged financial crimes, including any financial entanglement with Defendant Robert Meza, to the point that she asked a state court to issue a prior restraint prohibiting Plaintiff from petitioning any government official absent the court's prior approval.[1] (Doc. 124-1). Plaintiff's ex-wife poses a "credible" threat and "substantial risk" of enforcement, meaning *Driehaus* Factor Three is met. *See Driehaus*, 573 U.S. at 158 ("An allegation of future injury may suffice if the threatened injury is 'certainly impending,' or there is a 'substantial risk' that the harm will occur.") (citations omitted). That credible threat and substantial risk would persist even if the Attorney General disavowed enforcement. *See Isaacson v. Mayes*, 84 F.4th 1089, 1100 (9th Cir. 2023). *Driehaus* Factor Three is met.

Plaintiff has sufficiently demonstrated the existence of an "imminent injury". And

---

[1] Plaintiff does not seek to set aside or challenge any state court judgments or rulings. He has brought suit in federal court only to facially challenge state statutes. Accordingly, the *Rooker-Feldman* doctrine does not apply. *See Skinner* v. *Switzer*, 562 U.S. 521, 532 (2011) (*Rooker-Feldman* "does not bar a suit challenging a "statute or rule governing [any] [state-court] decision."). First Amendment facial challenges seek to overturn a state legislature's legislative acts, not a state court's judicial acts. *Reed* v. *Goertz*, 598 U. S. 230, 235 (2023).

there is no dispute that the causation and redressability elements are satisfied. Plaintiff has standing to sue Arizona Attorney General Kris Mayes. *See also LSO, Ltd. v. Stroh*, 205 F.3d 1146, 1154 (9th Cir. 2000) ("[W]hen the threatened enforcement effort implicates First Amendment rights, the inquiry tilts dramatically toward a finding of standing."). The Court has Article III jurisdiction to decide on the merits at this point whether to issue a preliminary injunction.

## PRELIMINARY INJUNCTION STANDARDS

A party seeking a preliminary injunction must establish "(1) he is likely to succeed on the merits of his claim, (2) he is likely to suffer irreparable harm absent the preliminary injunction, (3) the balance of equities tips in his favor, and (4) a preliminary injunction is in the public interest." *Baird*, 81 F.4th at 1040 (citing *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)). When the non-moving party is the government, the last two *Winter* factors "'merge.'" *Id*. Likelihood of success on the merits "is a threshold inquiry and is the most important factor." *Id*. "It is well-established that the first factor is especially important when a plaintiff alleges a constitutional violation and injury. If a plaintiff in such a case shows he is likely to prevail on the merits, that showing usually demonstrates he is suffering irreparable harm no matter how brief the violation." *Id*. "Likelihood of succeeding on the merits also tips the public interest sharply in [a plaintiff's] favor because it is 'always in the public interest to prevent the violation of a party's constitutional rights.'" *Id* (citation omitted).

Plaintiff is Likely to Succeed on the Merits; *Winter* Factor One

On the original and operative complaints, facts capable of judicial notice, and affidavits, Plaintiff is likely to succeed on the merits of two separate but complementary

7

reasons that § 13-2921 is overbroad and vague, and that § 13-2921 cannot withstand First Amendment scrutiny.

### Overbreadth and Vagueness

"As the overbreadth doctrine has developed, it has 'almost wholly merged' with the vagueness doctrine as applied to 'statutes covering [F]irst [A]mendment activities.'" *U.S. v. Sineneng-Smith,* 590 U.S. 371, 381 (2020) (Thomas, J. concurring). First Amendment facial challenges proceed along three "steps". *Matsumoto v. Labrador,* 122 F.4th 787, 806-814 (9th Cir. 2024). "The first step is to assess the statute's scope, because 'it is impossible to determine whether a statute reaches too far without first knowing what the statute covers.'" *Id* at 806. The second step "ask[s] whether the conduct swept into that scope is expressive and protected under the First Amendment." *Id* at 811. At the third "step, we must determine whether" the challenged statute's prohibitions or regulations are "unconstitutional in 'a substantial number of its applications ... judged in relation to [its] plainly legitimate sweep.'" *Id* at 814.

*Hernandez* clarified "the statute's scope" (i.e., step one) which is exceptionally "broad", and definitively answered the question of whether "conduct swept into that scope is expressive and protected under the First Amendment" in the affirmative (i.e., step two). *See Hernandez,* 587 P.3d at ¶ 23 (Holding § 13-2921(A) is quite "broad" and "implicates" (i.e., reaches) the expression of First Amendment rights, including speech and government petitioning[2] "made for legitimate [i.e., constitutional] purposes,"). The *Hernandez* court's holdings dispensed Attorney General Mayes' merits defense that § 13-2921(A) does not reach First Amendment expression (Doc. 110, pp. 15-16), enabling the Court to quickly

---

[2] The "substantial overlap between the rights of speech and petition" justifies applying "Speech Clause precedents to Petition Clause" claims. *Borough of Duryea v. Guarnieri,* 564 U.S. 379, 384 (2011).

8

move to analyzing the third step.

While this last step often requires extensive discovery and a full actuarial analysis, *Moody v. NetChoice, LLC,* 603 U.S. 707, 721-724 (2024), comprehensive fact-finding is not necessary if the question can be answered largely on the law and indisputable facts at the preliminary injunction state. Applicable here, the Ninth Circuit recently affirmed preliminary injunctive relief is appropriate when an Arizona legislative act punished the "effect of ...harassing" another person rather than the "intent of ... harassing" provided statutory interpretation is not in dispute. *Am. Encore,* 152 F.4th at 1119. In *Am. Encore,* the Arizona Secretary of State "waived" any such argument, leading the trial court and circuit court to accept the plaintiff's interpretation on plain language. *Id* at 1120. Here, the Arizona supreme court settled any possible argument on statutory interpretation via *Hernandez,* which the Court and the parties must accept as definitive. For that reason, when the Arizona Legislature removed the "intent to harass" language from the statute in 2022 and added other language, the statute punished acts "directed at" others through any third party who could deliver an "adverse consequence" when the acts were done "in a manner that harasses"; a collection of words and terms which criminalized acts that had a "harassing effect" rather than acts driven by a "harassing intent". (Doc. 124, pp. 1-2, 13-15). Laws proscribing conduct which have the "effect of ... harassing" someone have no real limiting factors, including no First Amendment limitations. Accordingly, laws such as § 13-2921(A)(1), are void for "vagueness and overbreadth". *Am. Encore,* 152 F.4th at 1115. The Court is persuaded by Plaintiff's argument that § 13-2921(A)(1) facially violates the Speech Clause and the Petition Clause because it punishes First Amendment expression which has a "harassing effect" rather than non-expressive conduct which has a "harassing intent". (Doc. 124, pp. 1-2, 13-15). Under these circumstances, the Court finds

9

§ 13-2921(A)(1) "is likely unconstitutionally vague" and overbroad, *Id* at 1119-1120, meaning Plaintiff is likely to succeed on those claims.

*First Amendment Scrutiny*

Section 13-2921(A)(1) also cannot withstand First Amendment scrutiny. "[I]n the First Amendment context, the moving party bears the initial burden of making a colorable claim that its First Amendment rights have been infringed, or are threatened with infringement, at which point the burden shifts to the government to justify the restriction." *Id* at 1119. Plaintiff has made "colorable" First Amendment claim and, thus, carried his burden. *See also Hernandez,* 587 P.3d at ¶ 23 (Finding § 13-2921(A)(1) sweeps broadly and punishes First Amendment expression "made for legitimate purposes").

To carry her burden, Attorney General Mayes argues to § 13-2921(A)(1) is "content-neutral", meaning "intermediate scrutiny" applies[3] to the provision which speaks to "a communication with another person by verbal, electronic, mechanical, telegraphic, telephonic or written means." (Doc. 110, pp.16-17). On plain language this appears to be a presumptively unconstitutional content-based law since the content of any "verbal" or "written" "communication" would need to be examined to determine whether it was legal. Regardless, the Attorney General argues "[t]he state has an interest in not allowing its

---

[3] "Our precedents distinguish between two types of restrictions on protected [petitioning or] speech: content-based laws and content-neutral laws. 'Content-based laws – those that target speech [or petitioning] based on its communicative content – are presumptively unconstitutional and may be justified only if' they satisfy strict scrutiny. That standard requires that a law be 'the least restrictive means of achieving a compelling state interest.' Content-neutral laws, on the other hand, 'are subject to an intermediate level of scrutiny because in most cases they pose a less substantial risk of excising certain ideas or viewpoints from the public dialogue.' Under that standard, a law will survive review 'if it advances important governmental interests unrelated to the suppression of free speech [or petitioning] and does not burden substantially more speech [or petitioning] than necessary to further those interests.'" *Free Speech Coalition v. Paxton,* 606 U.S. 461, 472 (2025) (citations omitted).

10

court system to become a messenger for messages designed, not to further justice, but to alarm or annoy others. ... That is not a suppressive interest [because] ... [a]ny incidental impact on the ability to petition is exactly what is essential to prevent such conduct, because the law only restricts conduct that it intended to, and does, anger or annoy others") (Doc. 110, p. 17).  This does not suffice.

Any purported "government interests" must be "important" in the sense that a challenged statute must "further ... *legitimate* interests." *McCullen v. Coakley,* 573 U.S. 464, 481 (2014) (emphasis added).  There is no "legitimate" government interest in enacting or enforcing laws that reach and criminalize First Amendment expression. *See* U.S. Const. Amend. I ("Congress shall make no law ... abridging the freedom of speech, ...; or the right of the people ... to petition the Government for a redress of grievances."). It was well-established from the moment of our country's founding that "a law imposing criminal penalties on protected speech [or petitioning] is a stark example of speech [or petitioning] suppression.".  *Ashcroft v. Free Speech Coalition,* 535 U.S. 234, 244 (2002). "The Government may not suppress lawful speech [or petitioning] as the means to suppress unlawful speech [or petitioning].  Protected speech [or petitioning] does not become unprotected merely because it resembles the latter. *The Constitution requires the reverse*." *Id* at 255 (emphasis added).  Section 13-2921(A)(1) fails intermediate scrutiny on the basis of First Amendment suppression alone.  Furthermore, the law's impact on the expression of First Amendment rights is not "incidental" because, contrary to the Attorney General's contentions, "the law [does not] only restrict[] conduct that it intended to, and does, anger or annoy others" as the *Hernandez* court noted throughout its opinion.  When the Arizona Legislature removed the "intent to harass" language and added other language, § 13-2921(A)(1) became a law which criminalized acts which had a harassing

11

effect, not acts which had a harassing intent. And for those reasons, § 13-2921(A)(1) "burden[s] substantially more speech [and petitioning] than necessary to further [the Attorney General's purported government] interests.'" *Free Speech Coalition,* 606 U.S. at 472. The Court finds Plaintiff is likely to succeed on the merits of his claim that § 13-2921 violates the Speech Clause and the Petition Clause because § 13-2921(A)(1) does not appear to withstand First Amendment scrutiny at any level, including the level of intermediate scrutiny.

Plaintiff is Likely to Suffer Irreparable Injury; *Winter* Factor Two

"Having 'demonstrat[ed] the existence of a colorable First Amendment claim,' Plaintiff[] 'can establish irreparable injury sufficient to merit the grant of [injunctive] relief.'" *Los Angeles Press Club*, 171 F.4th at 1190 (citations omitted). A finding of irreparable harm, such as the chilling of First Amendment rights, "follows inexorably" from a "conclusion that the government's current policies are likely unconstitutional." *Hernandez v. Sessions*, 872 F.3d 976, 995 (9th Cir. 2017). And it is "well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury'". *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (citation omitted); *Libertarian Party of L.A. Cnty. v. Bowen,* 709 F.3d 867, 870 (9th Cir. 2013) ("[A]s the Supreme Court has recognized, a chilling of the exercise of First Amendment rights is, itself, a constitutionally sufficient injury" to warrant injunctive relief). Since Plaintiff has demonstrated § 13-2921 reaches and likely violates the First Amendment, "'no further showing of irreparable injury is necessary.'" *Baird*, 81 F.4th at 1042. The second *Winter* factor decisively weighs in favor of granting preliminary injunctive relief.

Plaintiff Prevails on the Merged *Winter* Factors Three and Four

Plaintiff's "likelihood of success on the merits of [his] constitutional claim also tips

12

the merged third and fourth factors decisively in [his] favor." *Baird*, 81 F.4th at 1042. "[T]he Government's interest *is* the public interest." *Nken v. Holder*, 556 U.S. 418, 435 (2009) (emphasis original).  And "it is always in the public interest to prevent the violation of a party's constitutional rights". *Melendres*, 695 F.3d at 1002.  Further, a government defendant "cannot reasonably assert that [they are] harmed in any legally cognizable sense by being enjoined from constitutional violations." *Baird*, 81 F.4th at 1042.  Since Plaintiff has established his constitutional rights are likely being violated, he has thereby "also established that both the public interest and the balance of the equities favor a preliminary injunction". *Ariz. Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1069 (9th Cir. 2014).

## CONCLUSION

Section § 13-2921(A)(1) criminalizes constitutionally protected speech and petitioning regardless of any underlying constitutionally legitimate purpose – a textbook example that "[t]he comparative freedom to regulate conduct sometimes tempts political bodies to try to recharacterize speech [and petitioning] as conduct.  But hiding speech [and petitioning] restrictions in conduct rules is not only a 'dubious constitutional enterprise' – it is also *a losing constitutional strategy*." *Honeyfund.com v. Gov. of Fla.*, 94 F.4th 1272, 1281 (11th Cir. 2024) (emphasis added).  The Court finds A.R.S. § 13-2921(A)(1) likely violates the Speech Clause and the Petition Clause because of overbreadth and vagueness, and for not surviving First Amendment scrutiny.

## PRELIMINARY INJUNCTIVE ORDER

The Court, having considered Plaintiff Phillip Potter's July 16, 2026 Fed. R. Civ.

P. 65 Motion for Preliminary Injunction Re: A.R.S. § 13-2921 (Doc. 124) involving a First Amendment facial challenge to the State of Arizona's criminal harassment statute, and having reviewed the record, finds on a sufficiently developed record that Plaintiff has met his burden of demonstrating standing to sue Arizona Attorney General Kris Mayes for the purpose of facially challenging A.R.S. § 13-2921, and has met his burden of demonstrating the need for, and a warranted entitlement to, the requested preliminary injunction, and hereby **GRANTS** Plaintiff's Fed. R. Civ. P. 65 Motion for Preliminary Injunction Re: A.R.S. § 13-2921, as follows:

**IT IS HEREBY ORDERED** that Arizona Attorney General Kris Mayes is hereby preliminarily enjoined, until the Court instructs otherwise, from in any way prosecuting Plaintiff Phillip Potter, pursuant to A.R.S. § 13-2921(A)(1), for:

(1) Speaking with, or petitioning, any government official, to include any "communication" made to any federal, state, county, municipal or local government official[4] "by verbal, electronic, mechanical, telegraphic, telephonic or written means", regardless of whether that speech or government petitioning "in fact seriously alarms, annoys, humiliates or mentally distresses" any person who is not a direct party to that speech or petitioning "communication";

(2) Speaking with, or in any way engaging in a "communication" with, any person "by verbal, electronic, mechanical, telegraphic, telephonic or written means" on any matter of public concern, as the term "public concern" is broadly construed,

---

[4] The term "government official" is to be broadly construed, and includes all elected officials; all appointed officials, board members, and commissioners; all hired employees, staff, and personnel of any government agency, department, or office; all contractors, consultants, and independent contractors performing work for or on behalf of the government; and all agents, representatives, or persons acting under the direction or authority of any of any of the forementioned.

14

regardless of whether that speech or communication "in fact seriously alarms, annoys, humiliates or mentally distresses" any person who is not a direct party to the speech or communication.

IT IS FURTHER ORDERED, that Attorney General Mayes will make and forward a copy via email of this Order to the Office of the Maricopa County Attorney, and through which all State of Arizona County Attorney's offices and Plaintiff Phillip Potter will be electronically copied, and where a copy of that email will be forwarded to this Court within three (3) days from this Order entry date.

IT IS FURTHER ORDERED that Attorney General Mayes will make and forward a copy via email of this Order to Presiding Judge Pamela Gates in her official capacity as the Presiding Judge of the Maricopa County Superior Court, and through which Plaintiff Phillip Potter will be electronically copied, and where a copy of that email will be forwarded to this Court within three (3) days from this Order entry date.

IT IS FURTHER ORDERED that Attorney General Mayes and Plaintiff Phillip Potter will meet and confer within three (3) days from this Order entry date to discuss the scheduling of judicial proceedings to be conducted for the purpose of swiftly adjudicating all legitimate disputes regarding the First Amendment facial challenge to A.R.S. § 13-2921, and of swiftly issuing final orders, where those parties will jointly submit to the Court within ten (10) days from this Order entry date a stipulated or proposed scheduling order to include a stipulated or proposed discovery schedule.

DATED this _____ day of _____, 2026.

_____
The Hon. Dominic W. Lanza
United States District Judge

15