**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

Phillip Potter,

        Plaintiff,

v.

Robert Meza, et al.,

        Defendants.

No. CV-25-00663-PHX-DWL

**ORDER**

This case stems from an Arizona state court designation of *pro se* Plaintiff as a vexatious litigant. In his First Amended Complaint ("FAC"), Plaintiff sued five defendants (AG Mayes, the Presiding Judge, Meza, Robson, and Ortega) and asserted five causes of action. (Doc. 14.) In an order issued on January 6, 2026, the Court dismissed all claims in the FAC. (Doc. 100.) That order also authorized Plaintiff to file a Second Amended Complaint ("SAC") but clarified that the scope of leave to amend was narrow—Plaintiff was only authorized to amend his claim in Count Two against AG Mayes and to reassert his claims in Counts Four and Five against Ortega. (*Id.* at 66-67.) Additionally, any "changes [were] limited to attempting to cure the deficiencies that led to the dismissal of Count Two." (*Id.* at 67.) On January 20, 2026, Plaintiff filed the SAC. (Doc. 104.)[1]

---

[1]    The SAC reasserted all five of the claims that appeared in the FAC and identified, as defendants, all five of the individuals named as defendants in the FAC. (Doc. 113 at 1.) On February 4, 2026, the Court struck and dismissed without leave to amend Counts One and Three of the SAC, as well as Counts Four and Five of the SAC as against Meza and Robson. (*Id.* at 2.) The Court also re-dismissed the Presiding Judge, Meza, and Robson as defendants. (*Id.* at 3.) Accordingly, the only operative portions of the SAC are those that relate to Count Two against AG Mayes and Counts Three and Four against Ortega.

Now pending before the Court are four motions: (1) AG Mayes's motion to dismiss the claim against her in the SAC (Doc. 110); (2) Ortega's motion to dismiss the claims against her in the SAC (Doc. 108); (3) Ortega's motion to strike and seal portions of Plaintiff's response to her motion to dismiss (Doc. 116); and (4) Plaintiff's motion for a preliminary injunction (Doc. 124). For the reasons that follow, the motions to dismiss are granted, Ortega's motion to strike and seal is denied, and Plaintiff's motion for a preliminary injunction is denied as moot.

**BACKGROUND**

I.     Relevant Factual Background

The parties are familiar with the relevant facts of this case, which are outlined in the January 6, 2026 order dismissing the FAC ("the Order Dismissing the FAC") (Doc. 100) and remain largely unchanged from the FAC (Doc. 110-2 [redline of changes from FAC to SAC]).[2] The following "new" allegations were either added, reworded, or moved in the SAC:

"Reasonable persons experience distress when brought to suit. In Arizona, tens of thousands of new suits are filed each year, and it is reasonable to believe defendants experience distress as a result. Thus, the number of A.R.S. § 13-2921 violations committed when a plaintiff exercises his right to petition Arizona courts for redress of grievances and the opposing party experiences distress is substantial." (Doc. 104 ¶ 211.)

"The Arizona Secretary of State has accepted that a pro se litigant who files court papers that result in the opposing party experiencing (or at least expressing) emotional distress has violated A.R.S. §§ 13-2921 and 13-3602, that plaintiff violated A.R.S. §§ 13-2921 and 13-3602 when filing court papers absent leave of the court in active litigation, and that plaintiff's conduct qualifies him as an A.R.S. §§ 13-2921 and 13-3602

---

[2]     As the Court observed in a prior order, "although Plaintiff's failure to file a redlined version of the SAC indicating how it differs from the FAC, *see* LRCiv 15.1, makes it difficult to determine whether the changes in the SAC are, in fact, limited to attempting to cure the deficiencies that led to the dismissal of Count Two, . . . AG Mayes provides, as an exhibit to her motion to dismiss, a document that seemingly identifies those changes." (Doc. 113 at 2, citing Doc. 110-2.) Plaintiff has not objected to AG Mayes's redline, so the Court relies on it here to identify the changes made in the SAC.

perpetrator." (*Id.* ¶ 212.)

"From August 2025 through November 2025, Plaintiff's former spouse filed numerous court papers and hearings in cases FC2020-090224 and CV2021-005501 pointing to Plaintiff's vexatious litigant label to argue that she was enduring harassment in well-founded litigation when Plaintiff files court papers absent leave of the court." (*Id.* ¶ 213.)

"On June 3, 2025, [AG] Mayes declared in a written motion her belief that Plaintiff's litigation conduct reached § 13-2921, and admitted that both she and county prosecutors could prosecute conduct proscribed under A.R.S. § 12-3201(B) as an A.R.S. § 13-2921 violation." (*Id.* ¶ 214.)

"Fully knowledgeable of the former spouse's allegations and history of malicious prosecution of A.R.S. § 13-3602 and 13-2921 against plaintiff, and of the Arizona's Secretary of State's findings that plaintiff violated A.R.S. §§ 13-3602 and 13-2921, on November 28, 2025, in correspondence between Plaintiff and [AG Mayes's] counsel, [AG Mayes] expressly refused to disavow any form of administrative, civil, or criminal enforcement against Plaintiff for conduct proscribed under A.R.S. § 12-3201(B), including as an A.R.S. § 13-2921 violation or A.R.S. § 13-3601 predicate." (*Id.* ¶ 215.)

"Plaintiff's intended course of conduct, and specifically his intention to file pleadings, court papers, and other documents in active litigation (FC2020-090224, CV2021-005501, and CV2021-013210) absent leave of court is arguably proscribed by A.R.S. § 13-2921 under these facts and circumstances, as Plaintiff interprets the statute and as [AG Mayes] interprets the statute." (*Id.* ¶ 216.)

"[AG] Mayes is one of several state officers and statutorily authorized private persons who 'collectively' maintain a connection to the administrative, civil, and criminal enforcement of A.R.S. § 13-2921, including for supposed harassing conduct proscribed under A.R.S. § 12-3201(B)." (*Id.* ¶ 217.)

"Arizona state officers read A.R.S. § 13-2921 to invoke civil and criminal penalties for petitioning the judicial branch on the basis that the opposing party voices distress,

regardless of whether the petitioning serves a 'legitimate purpose.'" (*Id.* ¶ 218.)

"On January 6, 2026, the Hon. Dominic Lanza acknowledged he 'is unclear whether the act of filing court papers would quality as "conduct that is directed at a specific person," as required under § 13-2921(E).'" (*Id.* ¶ 219.)

II.     Procedural Background

On February 27, 2025, Plaintiff initiated this action. (Doc. 1.)

On May 12, 2025, Plaintiff filed the FAC. (Doc. 14.)

On May 14, 2025, Plaintiff moved for a temporary restraining order ("the First TRO Motion") to enjoin AG Mayes and the Presiding Judge from enforcing A.R.S. § 12-3201, Arizona's vexatious litigant statute, against him. (Doc. 23.)

On May 16, 2025, the Court issued an order to show cause why the action should not be dismissed for lack of subject-matter jurisdiction based on the *Rooker-Feldman* doctrine. (Doc. 26.)

On May 20, 2025, Plaintiff responded to the order to show cause. (Doc. 27.)

On June 2, 2025, AG Mayes responded to the First TRO Motion. (Doc. 37.)

On June 3, 2025, AG Mayes moved to dismiss. (Doc. 38.)

On June 6, 2025, Plaintiff filed a reply in support of the First TRO Motion. (Doc. 40.)

On June 20, 2025, the Court denied the First TRO Motion. (Doc. 47.)

On July 3, 2025, Plaintiff responded to AG Mayes's motion to dismiss. (Doc. 49.)

On July 11, 2025, Meza and Robson filed a joint motion to dismiss. (Doc. 51.) That same day, Ortega filed a motion to dismiss. (Doc. 52.)

On July 18, 2025, AG Mayes filed a reply in support of her motion to dismiss. (Doc. 53.)

On July 18, 2025, Plaintiff responded to Ortega's motion to dismiss. (Doc. 54.)

On July 23, 2025, Plaintiff responded to Robson's and Meza's joint motion to dismiss. (Doc. 55.)

On July 25, 2025, Ortega filed her reply in support of her motion to dismiss. (Doc.

56.) That same day, Plaintiff filed a motion to take judicial notice regarding AG Mayes's initial motion to dismiss. (Doc. 57.)

On July 28, 2025, Plaintiff filed a motion to take jurisdictional discovery from AG Mayes and Ortega. (Doc. 58.)

On July 30, 2025, Robson and Meza filed a joint reply in support of their joint motion to dismiss. (Doc. 59.)

On August 8, 2025, Plaintiff filed a motion to strike Robson's and Meza's joint motion to dismiss and reply. (Doc. 64.)

On August 11, 2025, Ortega responded to Plaintiff's motion to take jurisdictional discovery. (Doc. 66.) That same day, the Presiding Judge moved to dismiss. (Doc. 67.)

On August 14, 2025, Robson and Meza responded to Plaintiff's motion to strike. (Doc. 68.)

On August 15, 2025, AG Mayes filed a response to Plaintiff's motion to take jurisdictional discovery. (Doc. 69.)

On August 18, 2025, Plaintiff filed a reply in support of his motion to strike. (Doc. 71.) That same day, Plaintiff filed a reply in support of his motion to take jurisdictional discovery from AG Mayes and Ortega. (Doc. 72.)

On September 9, 2025, Plaintiff responded to the Presiding Judge's motion to dismiss. (Doc. 79.) And on September 24, 2025, the Presiding Judge replied. (Doc. 81.)

On October 9, 2025, Plaintiff filed a motion to take jurisdictional discovery from the Presiding Judge. (Doc. 84.)

On October 16, 2025, Plaintiff filed a second motion to take judicial notice regarding AG Mayes's initial motion to dismiss. (Doc. 85.)

On October 23, 2025, the Presiding Judge responded to Plaintiff's motion to take jurisdictional discovery. (Doc. 86.)

On October 30, 2025, Plaintiff filed a reply in support of his motion to take jurisdictional discovery from the Presiding Judge. (Doc. 88.) That same day, AG Mayes responded to Plaintiff's second motion to take judicial notice. (Doc. 87.)

On November 6, 2025, Plaintiff filed a reply in support of his second motion to take judicial notice. (Doc. 89.)

On November 9, 2025, Plaintiff filed a motion to take judicial notice regarding the Presiding Judge's motion to dismiss. (Doc. 90.) On November 24, 2024, the Presiding Judge responded (Doc. 91), and on November 27, 2025, Plaintiff replied (Doc. 92).

On December 1, 2025, Plaintiff filed a notice regarding AG Mayes's and the Presiding Judge's purported refusal to disavow enforcement of A.R.S. § 12-3201, Arizona's vexatious litigant statute. (Doc. 93.)

On December 12, 2025, Plaintiff filed a second motion for temporary restraining order ("the Second TRO Motion"). (Doc. 94.) Plaintiff also filed a notice for expedited consideration. (Doc. 95.) On December 16, 2025, the Court denied the Second TRO Motion. (Doc. 96.) And on December 19, 2025, Plaintiff filed a notice of interlocutory appeal to the Ninth Circuit regarding that ruling. (Doc. 97.)

On January 6, 2026, the Court issued the Order Dismissing the FAC, which (1) granted AG Mayes's motion to dismiss without leave to amend as to Count One and with limited leave to amend as to Count Two; (2) denied Plaintiff's first motion to take judicial notice relevant to AG Mayes's motion to dismiss; (3) granted in part and denied in part Plaintiff's second motion to take judicial notice relevant to AG Mayes's motion to dismiss; (4) granted Robson's and Meza's joint motion to dismiss without leave to amend; (5) denied Plaintiff's motion to strike; (6) granted Ortega's motion to dismiss with limited leave to reassert those claims; (7) denied Plaintiff's motion to take jurisdictional discovery from AG Mayes and Ortega; (8) granted the Presiding Judge's motion to dismiss without leave to amend; (9) denied Plaintiff's motion to take jurisdictional discovery from the Presiding Judge; and (10) granted in part and denied in part Plaintiff's motion to take judicial notice regarding the Presiding Judge's motion to dismiss. (Doc. 100.) Plaintiff was given limited leave to amend "to cure the deficiencies that led to the dismissal of Count Two" against AG Mayes and to "reassert Counts Four and Five against Ortega." (*Id.* at 67.)

On January 20, 2026, Plaintiff filed three motions for reconsideration of the Order Dismissing the FAC. (Docs. 101, 102, 103.) That same day, Plaintiff filed the SAC. (Doc. 104.)

On January 23, 2026, the Court denied all three of Plaintiff's motions for reconsideration. (Doc. 105.)

On January 29, 2026, Plaintiff moved for an "administrative stay" of the portion of the Order Dismissing the FAC that dismissed Count One. (Doc. 106.) Plaintiff also filed a notice for expedited consideration. (Doc. 107.)

On February 2, 2026, Ortega filed the pending motion to dismiss. (Doc. 108.)

On February 3, 2026, because the SAC reasserted all claims that were dismissed from the FAC without leave to amend in the Order Dismissing the FAC, Robson moved to dismiss or strike the claims reasserted against her in the SAC. (Doc. 109.) That same day, Meza sought the same relief (Doc. 112), AG Mayes filed the pending motion to dismiss (Doc. 110), and the Court denied Plaintiff's motion for an administrative stay (Doc. 111).

On February 4, 2026, because the SAC "disregard[ed] the limited scope of leave to amend specified in" the Order Dismissing the FAC, the Court issued an order (1) striking and dismissing Counts One and Three of the SAC and striking and dismissing Counts Four and Five as against Robson and Meza; (2) dismissing the Presiding Judge, Meza, and Robson as defendants; and (3) denying as moot Robson's and Meza's renewed motions to dismiss. (Doc. 113.)

On March 4, 2026, Plaintiff responded to Ortega's motion to dismiss. (Doc. 114.)

On March 5, 2025, Plaintiff responded to AG Mayes's motion to dismiss. (Doc. 115.)[3]

On March 17, 2026, Ortega filed the pending motion to strike and seal (Doc. 116) and a reply in support of her motion to dismiss (Doc. 117).

On March 20, 2026, AG Mayes filed a reply in support of her motion to dismiss.

---

[3] Plaintiff requested oral argument on both of these motions. (Docs. 114, 115.) These requests are denied because the issues are fully briefed and oral argument would not assist the decisional process. *See* LRCiv. 7.2(f).

(Doc. 118.)

On March 27, 2026, Plaintiff filed a notice of supplemental authority. (Doc. 119.)

On March 31, 2026, Plaintiff filed a second notice of supplemental authority (Doc. 120) and responded to Ortega's motion to strike (Doc. 121).

On April 7, 2026, Ortega filed a reply in support of her motion to strike. (Doc. 122.)

On April 8, 2026, AG Mayes filed a response to Plaintiff's notices of supplemental authority. (Doc. 123.)

On July 16, 2026, Plaintiff filed a motion "for a preliminary injunction prohibiting [AG Mayes] from enforcing [A.R.S.] § 13-2921(A)(1), Arizona's criminal harassment statute, against him until the claim is finally decided." (Doc. 124 at 1.)

**DISCUSSION**

I.      Legal Standard

Rule 12(b)(1) of the Federal Rules of Civil Procedure provides that a defendant may move to dismiss an action for "lack of subject-matter jurisdiction." "[I]n reviewing a Rule 12(b)(1) motion to dismiss for lack of jurisdiction, we take the allegations in the plaintiff's complaint as true." *Wolfe v. Strankeman*, 392 F.3d 358, 362 (9th Cir. 2004), *overruled on other grounds by Munoz v. Super. Ct. of L.A. Cnty.*, 91 F.4th 977, 981 (9th Cir. 2024). However, "in ruling on a 12(b)(1) jurisdictional challenge, a court may look beyond the complaint and consider extrinsic evidence." *Warren v. Fox Fam. Worldwide, Inc.*, 328 F.3d 1136, 1141 n.5 (9th Cir. 2003). The plaintiff bears the burden of establishing that subject-matter jurisdiction exists. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).

II.     AG Mayes's Motion to Dismiss

In Count Two of the SAC, Plaintiff asserts a pre-enforcement First Amendment facial challenge to A.R.S. § 13-2921, Arizona's harassment statute, against AG Mayes. (Doc. 104 ¶¶ 208-20.) AG Mayes moves to dismiss Count Two, the only remaining claim brought against her, pursuant to Rules 12(b)(1) and 12(b)(6). (Doc. 110.)[4]

---

[4]     Because the Court concludes that it lacks subject-matter jurisdiction over Count

A.      **The Parties' Arguments**

AG Mayes argues that in the Order Dismissing the FAC, "the Court identified the following deficiencies" with respect to Count Two: "Plaintiff failed to establish that his course of conduct is proscribed by a statute, both because: (a) the [FAC] failed to include information about the expected content and frequency of Plaintiff's anticipated court filings, such that his anticipated course of conduct would be repeated and/or would cause a reasonable person to be seriously alarmed, annoyed, humiliated or mentally distressed; and (b) it is unclear whether the act of filing court papers would qualify as conduct that is directed at a specific person." (Doc. 110 at 1-2, cleaned up.) Separately, AG Mayes argues that in the Order Dismissing the FAC, the Court also found that "Plaintiff failed to allege facts demonstrating a credible threat of prosecution because: (a) Plaintiff has not established that his amorphous plan to file unspecified papers in pending lawsuits even qualifies as conduct that would violate the law in question; (b) the [FAC] does not allege that AG Mayes has threatened to prosecute Plaintiff under § 13-2921, nor is AG Mayes's failure to disavow enforcement relevant where the AG does not believe the harassment statute is applicable; and (c) Plaintiff fails to allege any instance in which AG Mayes or any other prosecutor has brought criminal harassment charges against a defendant solely based on the act of filing court papers in a pending lawsuit (or filing court papers in violation of a vexatious-litigant order)." (*Id.* at 2, cleaned up.) AG Mayes next outlines the "seven added allegations" in the SAC (*id.* at 3) and attaches to her motion a redlined copy of the SAC showing those changes (Doc. 110-2). AG Mayes argues that the SAC "does *not* contain any new allegations about Plaintiff's anticipated filings, except the case numbers in which they will be filed" and "does not address whether Plaintiff's anticipated conduct would be 'repeated' (aside from identifying more than one case in which he plans to file papers)." (Doc. 110 at 3-4.) AG Mayes also argues that the SAC "does not include allegations showing that his planned conduct would 'cause a reasonable person to be seriously alarmed, annoyed, humiliated or mentally distressed'" and "does not address

Two, it is unnecessary to reach AG Mayes's Rule 12(b)(6) dismissal arguments.

whether his filings will be 'designed to trigger actions directed at' any particular person." (*Id.* at 3-4, citations omitted.)  AG Mayes further argues that the SAC "does not contain facts sufficient to allege a 'specific warning or threat to initiate proceedings,'" and "[i]nstead, it contains allegations regarding the Secretary of State's interpretation." (*Id.* at 4, citation omitted.)  "And despite ample opportunity," AG Mayes argues that the SAC "does not identify a single case, from any jurisdiction, of a vexatious litigant (or anyone) being prosecuted for harassment solely as a result of filing papers without leave." (*Id.*)  Next, AG Mayes argues that "Plaintiff's amendments to his [SAC] fail to address the deficiencies that doomed his [FAC] and thus Plaintiff still fails the second and third *Driehaus* requirements." (*Id.* at 5-6, citing *Susan B. Anthony List v. Driehaus*, 573 U.S. 149 (2014).)  Beginning with the second *Driehaus* factor, AG Mayes argues that Plaintiff cannot satisfy it "because his anticipated conduct is not even arguably proscribed by the harassment statute." (*Id.* at 6.)  AG Mayes argues that in the SAC, Plaintiff added two "more specific allegations that the Secretary of State has 'accepted' that he 'violated A.R.S. §§ 13-2921 and 13-3602 when filing court papers absent leave of the court' . . . [a]nd that his ex-wife 'filed numerous court papers and hearings . . . pointing to Plaintiff's vexatious litigant label to argue that she was enduring harassment.'" (*Id.*, citing Doc. 104 ¶¶ 212-13.)  But AG Mayes argues that these allegations "remain[] insufficient to show a course of conduct arguably proscribed by the challenged statute" because Plaintiff "has not added sufficient factual allegations to establish that his course of conduct specifically will be harassing" and "cannot meaningfully plead that all litigation is harassment because Arizona courts reject that claim." (*Id.*)  AG Mayes argues that Plaintiff has not shown that his conduct will be "repeated" or "cause a reasonable person to be seriously alarmed, annoyed, humiliated or mentally distressed" because the SAC "contains no new information about the content or frequency of the filings," and although the SAC "does expand on the Secretary of State's alleged 'accept[ance]' of Plaintiff's theory that filing papers is or may be harassment . . . that 'acceptance' is not relevant, so expanding on it is of no moment." (*Id.* at 7.)  Next, AG Mayes argues that "Plaintiff has added allegations related to his ex-

wife's court filings and hearings, alleging that she argued for the theory he presents now" but that "those allegations, standing alone, do no establish anything about the content of the harassment statute or whether his actions are proscribed by it." (*Id.*) "For the same reasons," AG Mayes argues that "Plaintiff's new allegations also do not establish that his filings will be 'directed at' any particular person." (*Id.*) Specifically, AG Mayes argues that the SAC "still contains no allegations explaining what action he will seek from the courts in which he files papers, or against whom he would ask the courts to take that action." (*Id.* at 8.) AG Mayes next argues that "Plaintiff's real theory, in any case, is that all litigation is harassment under the statute, at least if a counterparty feels distress," but "this is a theory Arizona courts have rejected." (*Id.*) Specifically, AG Mayes argues that *State v. Musser*, 977 P.2d 131 (Ariz. 1999), and *State v. Brown*, 85 P.3d 109 (Ariz. Ct. App. 2004), support that the Arizona state courts would not interpret A.R.S. § 13-2921 to cover the mere filing of court papers. (*Id.* at 9-10.) Next, AG Mayes argues that Plaintiff "also fails to show the third *Driehaus* requirement" because "(1) Plaintiff has not added sufficient concreteness to his plans; (2) Plaintiff continues not to show a specific warning from AG Mayes to initiate proceedings against him; and (3) Plaintiff still presents no history of past prosecution under the harassment statute for the sole act of filing court papers." (*Id.* at 10.) As for the first subfactor, AG Mayes argues that Plaintiff has not rectified the deficiency identified in the Order Dismissing the FAC—namely, that Plaintiff's "amorphous plan to file unspecified papers in pending lawsuits" does not constitute a violation of the law in question. (*Id.* at 10-11.) As for the second subfactor, AG Mayes argues that "Plaintiff does not allege that AG Mayes made a specific warning or threat, as required. Instead, Plaintiff now alleges that AG Mayes stated in a motion that Plaintiff's conduct reached the harassment statute, and that both she and county prosecutors could prosecute this conduct under Arizona's vexatious litigant statute." (*Id.* at 11.) AG Mayes argues that "Plaintiff further alleges that AG Mayes has refused to disavow enforcement against Plaintiff." (*Id.*) AG Mayes presumes that Plaintiff is referring to her initial motion to dismiss (Doc. 38), but she argues "that motion was neither a charging

document nor a threat to prosecute Plaintiff" (Doc. 110 at 11). "As to disavowal," AG Mayes argues that the Court already noted that her "position is tantamount to disavowal of enforcement on *Plaintiff's specific theory*." (*Id.* at 11-12.) AG Mayes also argues that the allegation in paragraph 212 of the SAC "that the Arizona Secretary of State has 'accepted' [Plaintiff's] understanding of the harassment statute would be irrelevant even if anything followed from that Office's decision to allow Plaintiff's ex-wife to participate in the address confidentiality program" because the "Secretary of State is not a prosecutor and has no authority to prosecute violations of the harassment statute." (*Id.* at 12, citing A.R.S. §§ 41-121, - 121.02.) And AG Mayes argues that "[a]lso irrelevant is the fact, standing alone, that his ex-wife argued for that definition in court." (*Id.*) Next, AG Mayes argues that "Plaintiff has not satisfied the third subfactor because he still fails to 'identify any case in which AG Mayes, some other Arizona prosecutor, or even some prosecutor in some other jurisdiction has brought criminal harassment charges against a defendant solely based on the act of filing papers in a pending lawsuit (or filing court papers in violation of a vexatious-litigant order).'" (*Id.*)

In response, Plaintiff argues that AG Mayes "belongs to a 'universe of potential complainants' who 'collectively' have threatened, and continue to threaten, a combination of administrative, civil, and/or criminal enforcement of conduct arguably proscribed by A.R.S. § 13-2921" and that "[t]hese conditions give Plaintiff standing to sue every member of that 'universe' of state officers and private parties authorized to enforce the challenged statute." (Doc. 115 at 1.) Plaintiff also argues that AG Mayes's motion "reaches . . . erroneous conclusions by improperly disputing Plaintiff's factual allegations at the pleading stage, applying the wrong standards to decide pre-enforcement standing, and conflating the merits analysis with the standing analysis to confuse those discrete issues." (*Id.* at 2.) Beginning with the first *Driehaus* factor, Plaintiff argues that his "alleged intent to file court pleadings and motion papers absent leave of court in ongoing court cases . . . is factually sufficient to articulate a course of conduct arguably affected with a constitutional interest." (*Id.* at 3.) As for the second *Driehaus* factor, Plaintiff argues that

he need only show that his anticipated conduct is *arguably* proscribed by the challenged statute, and that "for the purposes of standing," the Court must "accept Plaintiffs' interpretation of the statute so long as it is an arguable interpretation." (*Id.*, citation omitted.) Plaintiff argues that his "stated intention to file court papers as part of ongoing litigation absent prior court approval is arguably proscribed by § 13-2921 on the face of the statute." (*Id.*, footnote omitted.) Plaintiff emphasizes that the Order Dismissing the FAC stated that "it is unclear whether the act of filing court papers would qualify as 'conduct that is directed at a specific person,' as required under § 13-2921(E)" and that "[t]his dispositive statement only confirms the statute is ambiguously worded such that there exists an arguable 'debate' regarding whether the language impermissibly reaches, proscribes, or chills First Amendment court petitioning." (*Id.*, quoting Doc. 100 at 31-33.) Plaintiff also argues that AG Mayes "tries to minimize Plaintiff's allegations that a private party, who A.R.S. § 13-3602 statutorily authorizes to civilly enforce § 13-2921, convinced the Arizona Secretary of State, who A.R.S. § 41-161, *et seq.* statutorily authorizes to administratively enforce § 13-2921, to find Plaintiff violated the challenged statute by filing court papers in well-founded cases causing her emotional distress." (*Id.* at 3-4 n.2.) Plaintiff argues that "[i]t is of no moment to the Factor Two analysis that the Secretary of State is not a prosecutor and is not responsible for initiating and pursuing harassment prosecutions" because "[t]hat is the Supreme Court's view, not Plaintiff's." (*Id.* at 4 n.2.) Plaintiff argues that *Whole Woman's Health v. Jackson*, 595 U.S. 30 (2021), is instructive because the Supreme Court "allowed a challenge to proceed although the statute precluded many state officers from civilly or criminally enforcing it" because some of the defendants had "administrative disciplinary authority" to enforce the challenged statute. (*Id.*, cleaned up.) Plaintiff argues that "[w]hile the challenged statute [in *Whole Woman's Health*] proscribed certain conduct, the statute's enforcement effects existed downstream in the state's overall statutory scheme." (*Id.*) Plaintiff contends that AG Mayes and the Arizona Secretary of State "are *both* members of the 'universe' of state officers and private parties who can cause, and has caused, injuries stemming from administrative, civil or criminal

- 13 -

enforcement of the challenged statute sufficient to confer standing." (*Id.*) Next, Plaintiff rejects AG Mayes's argument that he must provide more specific factual allegations regarding his anticipated course of future conduct, arguing that the law does not require him "to admit to violating a law in order to have standing to challenge it, a prerequisite the Supreme Court has repeatedly rejected." (*Id.* at 4, citation omitted.) Next, Plaintiff argues that AG Mayes's reliance on *Musser* and *Brown* is misplaced because (1) "pointing to caselaw is a Fed. R. Civ. 12(b)(6) merits defense, not a Fed. R. Civ. P. 12(b)(1) jurisdictional defense"; (2) both of these cases "were decided long before the present iteration of § 13-2921 where legislators revised the statute during the state's 2022 legislative session, removed 'intent to harass' as an element, and passed a statute with no 'saving clause' to protect the First Amendment"; (3) "*Musser* was a criminal defendant who challenged A.R.S. § 13-2916, not A.R.S. § 13-2921"; and (4) "*Brown* was a criminal defendant who challenged the prior iteration of § 13-2921" and "the Arizona Court of Appeals found the statute constitutional specifically because of the presence of an 'intent' element." (*Id.* at 5-6.) Next, Plaintiff argues that he satisfies the third *Driehaus* factor because "when a credible threat is identified, a plaintiff has standing to sue every member of the 'universe of potential complainants', including all state officers and private parties authorized to enforce the challenged statute." (*Id.*, citation omitted). And he argues that under Ninth Circuit caselaw, AG Mayes "can be brought to suit when she disavows enforcement of a challenged statute and even when she concurs with plaintiffs who seek a ruling that a statute is unconstitutionally vague." (*Id.*) Next, Plaintiff argues that he "pleads a credible threat based on 'a specific warning or threat' from members of the 'universe of potential complainants', including his ex-spouse, *and* based on a 'history of past [administrative] prosecution or enforcement' from his ex-spouse and the Arizona Secretary of State." (*Id.* at 7.) Plaintiff reiterates that the "Secretary found Plaintiff violated § 13-2921 when filing court papers in well-founded litigation." (*Id.*) As such, Plaintiff argues that he "has standing to sue [AG Mayes], who civilly and criminally enforces the challenged statute, where Plaintiff sufficiently alleges the Arizona State Legislature crafted

an unconstitutionally vague statute that abuts against the exercise of First Amendment rights guaranteed under the Petition Clause" and that "no state officer or private party in the [*Am. Encore v. Fontes*, 152 F.4th 1097 (9th Cir. 2025)] 'universe of potential complainants' has emphatically disavowed enforcement of the challenged statute against Plaintiff." (*Id.* at 7-8.) Plaintiff argues that "[t]o deprive [him] of standing, [AG Mayes] would need to document that every potential complainant disavows enforcement, or she would need to possess the authority to control all potential complainants." (*Id.* at 8.) Next, Plaintiff rejects AG Mayes's argument that he has failed to identify a history of enforcement, arguing that "it is well-established that enforcement history alone is not dispositive." (*Id.*, cleaned up). Plaintiff also reiterates that "the current version of the challenged statute only went into effect in 2023, so the law is still 'relatively new', meaning the record of enforcement 'carries little weight' in the standing analysis." (*Id.* at 8-9, citation omitted.) And Plaintiff further argues that AG Mayes "was free to submit sworn affidavits that her office would never civilly or criminally prosecute anyone under the current version of A.R.S. § 13-2921 for exercising their court petition rights, but that affidavit is noticeably absent from the record." (*Id.* at 9.)

In reply, AG Mayes argues that the SAC "added only a handful of allegations, none sufficient to support standing" and that "Plaintiff does not dispute this" and instead "argues for a lower pleading requirement." (Doc. 118 at 1.) AG Mayes argues that Plaintiff's response does not identify any allegations in the SAC supporting that his anticipated conduct is "proscribed by a statute" or that he is under a "credible threat of enforcement." (*Id.*) AG Mayes reiterates that "plaintiff bears the burden to establish standing." (*Id.*) As for the second *Driehaus* factor, AG Mayes argues that Plaintiff has "plead[ed] no facts about his anticipated filings" and thus "he cannot show them to be even 'proscribed by' the harassment statute." (*Id.*) AG Mayes argues that instead of disputing this point, Plaintiff instead "first tries to lower the pleading bar, and next restates his theory that all litigation is harassment, so no facts are needed" but both theories "are legally incorrect." (*Id.* at 2.) AG Mayes argues that although "plaintiffs [are] free to deny that their actions

amount[] to a crime, [they] still need[] to plead those actions" and that "Plaintiff pled no facts about his proposed filings." (*Id.*) Next, AG Mayes argues that "Plaintiff continues his attempt to avoid pleading specific facts at all by maintaining that 'all litigation is harassment under the statute, at least if a counterparty feels distress.'" (*Id.* at 3, citation omitted). But AG Mayes argues that "[t]he Court has already rejected this argument" and "[s]o have the Arizona courts." (*Id.*) Next, AG Mayes argues that "*Brown* remain[s] relevant." (*Id.*) Specifically, AG Mayes argues that "Plaintiff points to the mens rea requirement" but that "both versions apply to a person who acts with a 'knowing' mental state" and so "these cases continue to demonstrate that Plaintiff's conduct here does not come within the statute." (*Id.*) AG Mayes also argues that "if filing papers was not harassment under the pre-2022 statute per *Brown*, it still is not harassment now under the 2022 version." (*Id.*) Next, as for the third *Driehaus* factor, AG Mayes argues that "Plaintiff does not point to allegations establishing" any of the subfactors and that, "[i]nstead, he turns to a recent Ninth Circuit case that he argues expands the universe of potential complainants whose actions would permit him to sue AG Mayes." (*Id.* at 4.) As for a "specific threat or warning," AG Mayes argues that "Plaintiff does not attempt to show any threat or warning from AG Mayes herself" and that he instead claims that "the Secretary of State has 'enforced' the statute against him" and that "the Secretary did this by granting address confidentiality to his ex-wife, who presented his vexatious litigant designation as evidence of harassment." (*Id.* at 4.) AG Mayes argues that this argument "is flawed for three reasons": (1) "ensuring someone else's confidentiality is not enforcement against Plaintiff"; (2) "the Secretary's actions do not indicate agreement with Plaintiff's theory, because granting address confidentiality does not carry the same standards as criminal prosecution"; and (3) "any acceptance by the Secretary of Plaintiff's theory would be irrelevant, as the Secretary is not a prosecutor and cannot prosecute violations of the statute." (*Id.* at 5.) AG Mayes also rejects Plaintiff's interpretation of *Am. Encore*. (*Id.*) AG Mayes argues that, in that case, the court found that the third *Driehaus* factor had been met "by virtue of the enforcement authority delegated by the Secretary to election

workers." (*Id.*, citation omitted.) AG Mayes argues that "Plaintiff appears to place AG Mayes here in the position of the Secretary in *American Encore*" but that "AG Mayes has not 'delegated' any 'enforcement authority' to the Secretary" with respect to § 13-2921. (*Id.*) AG Mayes also argues that Plaintiff's reliance on *Isaacson v. Mayes*, 84 F.4th 1089 (9th Cir. 2023), fails because "the Ninth Circuit held that AG Mayes's express disavowal of enforcing a statute did not fatally undermine a credible threat of prosecution" where, "[c]ritically, . . . at least one county attorney indicated an intent to enforce the statute in question despite AG Mayes's advice not to" and where state agencies would civilly enforce the statute. (*Id.* at 6.) AG Mayes argues that "no similar facts exist here." (*Id.*) And AG Mayes argues that "[a]dopting Plaintiffs' theory would allow suit against any individual, with or without authority to enforce the law, if another official (even one without any enforcement authority) takes action at all tangentially related to the law, even if it is not an enforcement action." (*Id.*) AG Mayes argues that "Plaintiff does not dispute the capaciousness of his theory" and instead "embraces it"—"[h]e argues that AG Mayes would need to document that every potential complainant disavows enforcement, or she would need to possess the authority to control all potential complaints to deprive Plaintiff of standing," and he also argues that "even this is not enough to deprive him of standing because no state constitutional provision or statute gives AG Mayes such authority." (*Id.*, cleaned up.) Last, AG Mayes reiterates that "Plaintiff fails to point to any case in which AG Mayes or some other Arizona prosecutor has brought charges against a defendant under the harassment statute for solely filing court papers." (*Id.*) AG Mayes rejects Plaintiff's argument "that the statute is too new for its history to guide the step three inquiry" and emphasizes that "the changes [to the statute] in 2022 are not relevant here." (*Id.*) Specifically, she argues that "[a]ny instance that could be prosecuted now, under the 'knowingly' standard, could have been prosecuted before 2022, under the disjunctive standard," and "[y]et Plaintiff has not presented one." (*Id.* at 6-7.)

B. **Analysis**

"[A] federal court generally may not rule on the merits of a case without first

- 17 -

determining that it has jurisdiction over the category of claim in suit (subject-matter jurisdiction) and the parties (personal jurisdiction). Without jurisdiction, the court cannot proceed at all in any cause; it may not assume jurisdiction for the purpose of deciding the merits of the case." *Sinochem Int'l Co. v. Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430-31 (2007) (cleaned up). Accordingly, the Court begins by determining whether it has subject-matter jurisdiction over Count Two as against AG Mayes.

"Article III standing is a necessary component of subject matter jurisdiction." *In re Palmdale Hills Prop., LLC*, 654 F.3d 868, 873 (9th Cir. 2011). "[T]he irreducible constitutional minimum of standing contains three elements. First, the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992) (cleaned up).

First is the injury-in-fact requirement, which "helps to ensure that the plaintiff has a personal stake in the outcome of the controversy." *Driehaus*, 573 U.S. at 158 (cleaned up). In a pre-enforcement challenge such as this one, "a plaintiff satisfies the injury-in-fact requirement where he alleges [1] an intention to engage in a course of conduct arguably affected with a constitutional interest, [2] but proscribed by a statute, and [3] there exists a credible threat of prosecution thereunder." *Id.* at 159 (cleaned up) (brackets added).

### 1.    First *Driehaus* Factor

The first *Driehaus* factor is satisfied here because the SAC alleges that "Plaintiff plans to file court papers absent leave of the court in ongoing FC2020-090224 and CV2021-005501 litigation, and in this suit." (Doc. 104 ¶ 98.) As discussed in Order Dismissing the FAC, this "anticipated course of conduct is arguably affected with a constitutional interest under the Petition Clause." (Doc. 100 at 32.)

### 2.    Second *Driehaus* Factor

As for the second *Driehaus* factor, the Court agrees with AG Mayes that the SAC contains insufficient factual allegations to support that Plaintiff's anticipated course of conduct is even arguably "proscribed by" the harassment statute. In the Order Dismissing the FAC, the Court observed that "[u]nder § 13-2921, 'harassment' occurs when, *inter alia*, a 'person knowingly and repeatedly commits an act or acts that harass another person,' and the term 'harass' is defined as 'conduct that is directed at a specific person and that would cause a reasonable person to be seriously alarmed, annoyed, humiliated or mentally distressed and the conduct in fact seriously alarms, annoys, humiliates or mentally distresses the person.'" (Doc. 100 at 32, quoting A.R.S. § 13-2921(A), (E).) The Court identified various reasons why "the factual allegations in the FAC [were] insufficient to show that Plaintiff's anticipated course of conduct" was arguably proscribed by the harassment statute (*id.*), and the SAC fails to cure those deficiencies.

First, the Order Dismissing the FAC held that the FAC contained insufficient allegations to support that Plaintiff's anticipated course of conduct would be "repeated[]" as required by § 13-2921. (*Id.*) In an apparent effort to address this deficiency, the SAC adds the following allegation:

> Plaintiff's intended course of conduct, and specifically his intention to file pleadings, court papers, and other documents in active litigation (FC2020-090224, CV2021-005501, and CV2021-013210) absent leave of court is arguably proscribed by A.R.S. § 13-2921 under these facts and circumstances, as Plaintiff interprets the statute and as [AG Mayes] interprets the statute.

(Doc. 110-2 ¶ 216.) Although this allegation tacks the letter "s" onto the words "pleadings," "papers," and "documents" and identifies three different case numbers— features that might seem, at first blush, to suggest there will be repeated future court filings—it remains insufficient to show that Plaintiff's anticipated course of conduct would be "repeated[]" in the manner required under § 13-2921. The overarching problem is that paragraph 216 contains no factual details whatsoever about what Plaintiff intends to file. It is "a textbook example of the sort of conclusory, fact-free assertion that *Iqbal* forbids."

*Andrich v. Kostas*, 2020 WL 377093, \*5 (D. Ariz. 2020), *aff'd*, 2023 WL 6157407 (9th Cir. 2023).

Nor does the revised allegation appearing in paragraph 211 of the SAC cure this deficiency. It provides:

> Reasonable persons experience distress when brought to suit. In Arizona, tens of thousands of new suits are filed each year, and it is reasonable to believe defendants experience distress as a result. Thus, the number of A.R.S. § 13-2921 violations committed when a plaintiff exercises his right to petition Arizona courts for redress of grievances and the opposing party experiences distress is substantial.

(Doc. 110-2 ¶ 211.) This allegation does not support that Plaintiff's anticipated conduct will be "repeated" per § 13-2921 because it says nothing at all about what Plaintiff, specifically, intends to do or how often Plaintiff intends to do it.[5]

Second, the Order Dismissing the FAC further held that the FAC contained insufficient allegations to support that Plaintiff's anticipated course of conduct "would cause a reasonable person to be seriously alarmed, annoyed, humiliated, or mentally distressed." (Doc. 100 at 32.) The SAC remains deficient in this respect because it contains no information at all about the content of Plaintiff's anticipated future court filings. At most, the SAC alleges that "[r]easonable persons experience distress when brought to suit" and "[i]n Arizona, tens of thousands of new suits are filed each year, and it is reasonable to believe defendants experience distress as a result." (Doc. 110-2 ¶ 211.) But the allegation that a hypothetical reasonable person might experience distress when subjected to unspecified filings in unspecified other lawsuits sheds no light on whether it is plausible that *Plaintiff*'s intended course of conduct would cause a reasonable person to be seriously alarmed, annoyed, humiliated, or mentally distressed. Absent specific factual allegations regarding the substance and frequency of Plaintiff's anticipated future court filings, there

---

[5]   Moreover, this paragraph appears to suggest that any filing of court papers—even the filing of a single court paper—could be considered harassment. To the extent that is Plaintiff's argument, it is contrary to the plain terms of § 13-2921, which requires that harassing conduct be "repeated," and is also contrary to Arizona caselaw for the reasons discussed in more detail below.

is simply no way to know whether a reasonable person would be seriously alarmed, annoyed, humiliated, or mentally distressed by that activity. If, for example, Plaintiff simply intends to file change-of-address forms in the pending lawsuits identified in paragraph 216 of the SAC, it is difficult to see how such filings would cause reasonable persons to be seriously alarmed, annoyed, humiliated, or mentally distressed.

Third, the Order Dismissing the FAC further noted that § 13-2921 only proscribes conduct "that is directed at a specific person" and concluded that it was "unclear—at least based on the lack of allegations in the FAC on this point—whether the act of filing documents in a court case" would satisfy that requirement. (Doc. 100 at 32-33.) On the one hand, this portion of the Order Dismissing the FAC—which, again, simply identified one of multiple independent grounds for concluding that Plaintiff lacked standing—was decided without the benefit of the Arizona Supreme Court's April 2026 decision in *Hernandez v. Loarca*, 587 P.3d 1266 (Ariz. 2026), which held that courts should not construe § 13-2921's "directed at" requirement too narrowly because limiting the statute's application "to cases involving express solicitations would create an arbitrary loophole, permitting harassment through third-party communications designed to provoke adverse consequences so long as the speaker avoids expressly asking for those consequences." *Id.* at 1270. On the other hand, *Hernandez* acknowledged that "the statute is not boundless" and emphasized that, "[i]mportantly, not all communications to third parties that reveal unflattering information about another person are 'directed at' that person." *Id.*

Even in light of *Hernandez*, the Court remains unconvinced that the SAC contains sufficient factual allegations to satisfy the "directed at" requirement. Once again, this is a consequence of Plaintiff's utter failure to plead any factual detail about what he intends to file. Turning back to the example cited above, if Plaintiff's only anticipated future court filings are change-of-address forms, *see, e.g.,* 17C A.R.S. Super. Ct. Local Prac. Rules, Maricopa County, Rule 2.21 ("A self-represented party shall inform the court of his or her current address, telephone number, and email address (if any). The self-represented party has a continuing duty to advise the court of any change in address, telephone number, or

e-mail address (if any) and shall notify the court within ten (10) days of such changes."), it is difficult to understand how such filings could be viewed as "directed at" Plaintiff's litigation adversaries (as opposed to "directed at" the court).

Plaintiff's argument appears to be that he need not supply specific factual allegations because *any* filing of court papers in the course of a lawsuit constitutes harassment under § 13-2921. (Doc. 115 at 5. *See also* Doc. 104 ¶ 211.) To the extent this is Plaintiff's argument, it is inconsistent with common sense and Arizona law. In *Brown*, the Arizona Court of Appeals rejected the defendant's argument that a prior version of § 13-2921 "criminalize[d] any delivery of bad news, or delivery of a disturbing message regardless of fault[,] . . . the firing of an employee, because such conduct is alarming and annoying[,] . . . [and] the publication of information in a newspaper, because a reasonable person might be alarmed or annoyed by the prospect of war or economic losses." 85 P.3d at 115-16. The court held that "though Brown might conceive of some *impermissible applications* of the statute, he has provided no indication that any likelihood exists that the state would use the statute to reach such activities. Indeed, *interpreting the statutory language to permit prosecution for such activities would require the state and the courts to expand the statute's reach considerably beyond that which the legislature intended.* Accordingly, any misuse of the statute, if such occurs, can be addressed and cured through case-by-case analysis of specific facts." *Id.* at 116 (emphases added).[6]

Similarly, in *Musser*, the defendant challenged A.R.S. § 13-2916.A, a statute similar to § 13-2921 that made it unlawful "for any person, with intent to terrify, intimidate, threaten, harass, annoy or offend, to use a telephone . . . [to] threaten to inflict injury or

---

[6] Plaintiff attempts to distinguish *Brown* on the ground that it was decided before A.R.S. § 13-2921 was revised in 2022 to remove the subjunctive "intent to harass" element. (Doc. 115 at 5-6.) This argument is unavailing. In the relevant passage in *Brown*, the Arizona Court of Appeals first noted that the examples cited by the defendant did not qualify as conduct "undertaken with an 'intent to harass,' as the statute requires" but then "[a]dditionally" and more broadly held that harassment statutes should not be interpreted as encompassing protected conduct. 85 P.3d at 116. Nothing in *Brown* suggests that Arizona courts would only apply this principle when evaluating harassment statutes with an express intent-to-harass element.

physical harm." 977 P.2d at 131 n.1. "Musser argue[d] that the statute as written threatens protected speech because it could be interpreted as proscribing conduct such as *threatening to institute lawful civil proceedings*, to fire an employee for unsatisfactory performance, or to launch an economic boycott of a restaurant with racially discriminatory practices." *Id.* at 132 (emphasis added). The Arizona Supreme Court disagreed, holding that "[w]hile Musser has conceived of some impermissible applications of the statute, he has provided no indication that any likelihood exists that the state would use the statute to reach such activities. Indeed, interpreting the statutory language to permit prosecution for such activities would require the state and the courts to expand the statute's reach considerably beyond that which the legislature intended." *Id.* at 132-33. The court held that "[i]f the state attempt[ed] to apply the statute impermissibly," such as in one of the ways identified by Musser, that would be "an *invalid construction of the statute.*" *Id.* at 133 (emphasis added).

Finally, in *Hernandez*, the Arizona Supreme Court—albeit while acknowledging that § 13-2921 "is broadly written" and that "[a] broad application of this statute may also implicate the free-speech protections of our state and federal Constitutions, but that issue is not currently before us"—reaffirmed that Arizona courts may not apply the plain meaning of the statutory text of § 13-2921 if "doing so would produce an absurd result or a constitutional violation." 587 P.3d at 1269, 1271.

These authorities suggest that interpreting § 13-2921 to apply to the mere filing of any court paper—essentially the same interpretation that Plaintiff advances here—would be "impermissibl[e]" and an "invalid construction" of the statute. Therefore, although "for the purposes of standing, we accept Plaintiffs' interpretation of the statute so long as it is an arguable interpretation," *Am. Encore*, 152 F.4th at 1114, Plaintiff's interpretation of § 13-2921 is not an "arguable" one.

The Eighth Circuit's decision in *Christian Action League of Minn. v. Freeman*, 31 F.4th 1068 (8th Cir. 2022), supports this outcome. There, the plaintiffs (anti-pornography activists) filed a pre-enforcement challenge to Minnesota's harassment statute under the

theory that they had "future plans" to "contact[] businesses by mail and email to persuade them to stop advertising in" a particular magazine and feared they would be prosecuted under the harassment statute for doing so. *Id.* at 1071. Minnesota's harassment statute, similar to Arizona's harassment statute, proscribed "repeated incidents of intrusive or unwanted acts, words, or gestures that have a substantial adverse effect or are intended to have a substantial adverse effect on the safety, security, or privacy of another, regardless of the relationship between the actor and the intended target." *Id.* (citation omitted). Even though the plaintiffs in *Christian Action League*, unlike Plaintiff here, provided a clear articulation of their anticipated course of conduct, and even though a state court judge had previously issued a civil temporary restraining order against the plaintiffs (based on the harassment statute) for engaging in similar conduct, the district court concluded they lacked standing due to their failure to satisfy the second *Driehaus* factor. *Id.* at 1070-71. The Eighth Circuit affirmed. Among other things, the court explained that the "constitutional savings canon" undermined the plaintiffs' theory that their planned conduct was arguably proscribed by the harassment statute, as their planned conduct was "core political speech" and the constitutional savings canon directs courts to avoid construing statutes in a manner that violates constitutional principles. *Id.* at 1073. The same consideration is present here—although Plaintiff has not provided any meaningful details about his planned future litigation activity, such activity is still presumptively protected by the First Amendment. *Cf. Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 934 (9th Cir. 2006) ("[T]o exercise its petitioning rights meaningfully, a party may not be subjected to liability for conduct intimately related to its petitioning activities. . . . Consistent with the breathing space principle, we have recognized that, in the litigation context, not only petitions sent directly to the court in the course of litigation, but also conduct incidental to the prosecution of the suit is protected by the *Noerr-Pennington* doctrine.") (cleaned up). And as noted above, Arizona courts must construe § 13-2921 in a manner that avoids "produc[ing] an absurd result or a constitutional violation." *Hernandez*, 587 P.3d at 1269. Additionally, the Eighth Circuit cited various decisions by "Minnesota's intermediate courts" in which Minnesota's

harassment statute was given a "narrow[]" construction so as to avoid criminalizing "constitutionally protected speech" and stated that those decisions qualified as "extra icing on a cake already frosted." *Christian Action League*, 31 F.4th at 1074 (citation omitted). Here, similarly, *Brown* and *Musser* qualify as extra icing on the cake.

Plaintiff's counterarguments lack merit. For example, Plaintiff argues that he does not need "to admit to violating a law in order to have standing to challenge it" and does not need "to explicitly confess to intended future conduct that is violative of the law [he] seeks to challenge." (Doc. 115 at 4-5, cleaned up.) It is true that a plaintiff asserting a pre-enforcement challenge need not "admit to violating a law in order to have standing to challenge it, a prerequisite the Supreme Court has repeatedly rejected." *Arizona v. Yellen*, 34 F.4th 841, 849 (9th Cir. 2022). But this case is a far cry from *Yellen*. There, the plaintiff provided detailed information regarding what it had done in the past, what it intended to do in the future, and why its anticipated course of future conduct would fall within the sweep of the challenged statute. *Id*. at 849-50 ("Arizona has accepted ARPA funds, certified that it will meet ARPA's conditions, and passed a $1.9 billion tax cut. The district court rejected Arizona's theory of standing under *Driehaus* because Arizona had not claimed that its tax cut will result in a reduction in its 'net tax revenue,' nor claimed to have 'directly or indirectly' used ARPA funds to offset the tax cut. On this point we diverge with the district court . . . . Presumably, a $1.9 billion tax cut will lead to a reduction in Arizona's net tax revenue; it is hard for us to imagine how a tax cut of this magnitude would not. This means that Arizona has taken all requisite steps to violate the Offset Provision short of using ARPA funds 'directly or indirectly' to offset a net revenue reduction from its tax cut. Unlike the district court, we do not require Arizona to explicitly confess to intended future conduct that is violative of the law it seeks to challenge."). Here, in contrast, Plaintiff's vague, conclusory, and essentially fact-free allegations make it impossible to determine what he plans to do and whether that unspecified course of conduct would even arguably implicate the challenged statute. Plaintiff, who bears the burden to show that subject-matter jurisdiction exists, has now failed twice to provide sufficient

factual allegations on this point.

Plaintiff also argues that he "has made it factually clear in the pleadings that the Arizona Secretary of State has administratively enforced the statute, finding Plaintiff violated A.R.S. § 13-2921 by filing court papers, that his ex-wife, a statutorily authorized § 13-2921 enforcer, attempted to civilly enforce the statute against Plaintiff on her own in the past and continues to repeatedly threaten civil enforcement for filing court papers in well-founded litigation." (Doc. 115 at 5.) In other words, Plaintiff's theory is that because the Secretary of State allowed Plaintiff's ex-wife to participate in Arizona's address confidentiality program, and Plaintiff's ex-wife's application to that program was predicated on the notion that Plaintiff's past acts of "filing court papers" qualified as harassment under § 13-2921, it follows that the Secretary of State implicitly accepted this interpretation of § 13-2921—which, in turn, shows that this interpretation of § 13-2921 is at least arguable.

There are at least two problems with this theory. First, even assuming Plaintiff's speculation about the Secretary of State's mindset is accurate, it doesn't follow that Plaintiff has met his burden of showing that his proffered interpretation of § 13-2921 is arguable. Section § 13-2921 does not authorize the Secretary of State, or Plaintiff's ex-wife, to engage in administrative or civil enforcement actions—by its plain terms, it is a criminal statute that may be enforced, if at all, by AG Mayes and/or county prosecutors. A plaintiff's objectively baseless interpretation of a criminal statute does not become arguable just because a state official with no authority to enforce the statute may have taken actions that inferentially reflect the same interpretation.[7] Second, and more important, it is something of an apples-to-oranges comparison to compare how the Secretary of State has administered Arizona's address confidentiality program with how AG Mayes and/or a county prosecutor might criminally enforce § 13-2921. When Plaintiff's ex-wife applied

_____

[7] For similar reasons, to the extent Plaintiff's argument is that his interpretation is arguable because his ex-wife has asserted in other pending civil litigation that Plaintiff's "filing of court papers" harasses her, that argument is without merit.

to the address confidentiality program, Plaintiff had no interest in the outcome. Thus, there would have been no reason for the Secretary of State to apply the canon of constitutional avoidance when evaluating whether the underlying acts on which the application was premised—which, again, Plaintiff characterizes as his past acts of "filing court papers"—qualified as harassment under § 13-2921. In contrast, in any criminal prosecution brought by AG Mayes and/or a county prosecutor under § 13-2921, that approach would be required—as evidenced by the Arizona Court of Appeals' reasoning in *Brown* and the Arizona Supreme Court's reasoning in *Musser*. This provides an additional reason why the Secretary of State's purported understanding of § 13-2921, as it relates to administration of the address confidentiality program, does not show that Plaintiff's proffered interpretation of how § 13-2921 may be criminally enforced is correct or even arguable.

### 3.   Third *Driehaus* Factor

As the Court observed in the Order Dismissing the FAC, "[a]lthough the analysis could end there, Plaintiff has also failed to satisfy the third *Driehaus* factor." (Doc. 100 at 34.) When addressing this factor, courts in the Ninth Circuit "consider (1) whether the plaintiffs have articulated a concrete plan to violate the law in question, (2) whether the prosecuting authorities have communicated a specific warning or threat to initiate proceedings, and (3) the history of past prosecution or enforcement under the challenged statute." *Yellen*, 34 F.4th at 850 (cleaned up).[8]

### a.   **Concrete Plan To Violate The Law In Question**

The first subfactor is not satisfied here for the reasons stated above and in the Order Dismissing the FAC—the SAC does not establish that Plaintiff's "amorphous plan to file unspecified papers in pending lawsuits even qualifies as conduct that would 'violate the law in question.'" (Doc. 100 at 34.)

---

[8]   Plaintiff appears to argue that he need not meet this set of subfactors from *Yellen*, which he claims derive from *Thomas v. Anchorage Equal Rts. Comm'n*, 220 F.3d 1134 (9th Cir 2000). (Doc. 115 at 10-11.) This argument is without merit. As discussed in the Order Dismissing the FAC, in *Yellen*, the Ninth Circuit applied this three-part test when evaluating the third *Driehaus* factor. (Doc. 100 at 34 n.18.)

b.       **Specific Warning Or Threat To Initiate Proceedings**

The second subfactor is satisfied if "the authorities in charge of enforcing the challenged law have communicated a specific warning or threat to initiate proceedings." *Tingley v. Ferguson*, 47 F.4th 1055, 1068 (9th Cir. 2022) (cleaned up). However, the SAC does not allege that AG Mayes or any county prosecutor—who are the "authorities in charge of enforcing" § 13-2921—have threatened to prosecute Plaintiff for filing court papers under § 13-2921.[9]

Plaintiff argues in his response brief that he has "plead[ed] a credible threat based on 'a specific warning or threat' from members of the 'universe of potential complainants', including his ex-spouse, *and* based on a 'history of past [administrative] prosecution or enforcement' from his ex-spouse and the Arizona Secretary of State." (Doc. 115 at 7.) But as noted in the Order Dismissing the FAC, "Plaintiff overlooks that the Arizona Secretary of State is not a prosecutor and is not responsible for initiating and pursuing harassment prosecutions under § 13-2921." (Doc. 100 at 35.) As discussed above, § 13-2921 is, by its plain terms, a criminal statute that is enforced, if at all, by AG Mayes and/or county prosecutors. Thus, neither the Secretary of State nor Plaintiff's ex-wife are "authorities in charge of enforcing the challenged law" such that their actions could be seen as communicating a specific warning or threat to enforce § 13-2921. *Tingley*, 47 F.4th at 1068. Additionally, as discussed above, any implied understanding of the Secretary of

---

[9]       Paragraph 214 of the SAC alleges that "[o]n June 3, 2025, [AG Mayes] declared in a written motion her belief that Plaintiff's litigation conduct reached § 13-2921, and admitted that both she and county prosecutors could prosecute conduct proscribed under A.R.S. § 12-3201(B) as an A.R.S. § 13-2921 violation." (Doc. 104 ¶ 214.) It appears that paragraph 214 of the SAC is referring to AG Mayes's initial motion to dismiss. (Doc. 38.) The Court has re-reviewed that motion, and nowhere does AG Mayes state "her belief that Plaintiff's litigation conduct reached § 13-2921," nor does AG Mayes's initial motion "admit[] that both [AG Mayes] and county prosecutors could prosecute conduct proscribed under A.R.S. § 12-3201(B) as an A.R.S. § 13-2921 violation," as the SAC contends. (Doc. 104 ¶ 214.) Given this backdrop, the Court is not required to accept paragraph 214 as true. *Gonzalez v. Planned Parenthood of Los Angeles*, 759 F.3d 1112, 1115 (9th Cir. 2014) ("Although we normally treat all of a plaintiff's factual allegations in a complaint as true, we need not . . . accept as true allegations that contradict matters properly subject to judicial notice . . . .") (cleaned up). Moreover, in other filings, AG Mayes has "made clear" that she believes § 13-2921 "does not apply to the act of filing papers in court without more, nor to 'unauthorized court filings.'" (Doc. 123 at 2.)

State regarding how § 13-2921 may be interpreted for purposes of administering Arizona's address confidentiality program is not a reasonable proxy for how § 13-2921 may be interpreted for purposes of criminal enforcement.

As acknowledged in the Order Dismissing the FAC (Doc. 100 at 35), even if there has been no direct warning or threat of prosecution, "the government's failure to *disavow* enforcement of the law . . . weigh[s] in favor of standing." *Tingley*, 47 F.4th at 1068. *See also Peace Ranch, LLC v. Bonta*, 93 F.4th 482, 489-90 (9th Cir. 2024) (third prong of *Driehaus* test "often rises or falls with the enforcing authority's willingness to disavow enforcement"). Once again, "this principle does not assist Plaintiff." (Doc. 100 at 35.) "Although AG Mayes has, understandably, not categorically disavowed a future prosecution of Plaintiff for harassment or domestic violence, her filings in this lawsuit indicate that she does not believe the harassment statute applies to unauthorized court filings." (*Id.*, citing Doc. 69 at 10, emphasis added ["Plaintiff . . . cannot shift the burden by positing that a violation of his order will be prosecuted under some other law and demanding AG Mayes disprove his claim. . . . The Attorney General is not going to disavow enforcement of harassment or domestic violence statutes. Instead, *those are simply not the right statutes for the situation.*"].) Since then, AG Mayes has reaffirmed that her "position is tantamount to disavowal of enforcement on *Plaintiff's specific theory.*" (Doc. 110 at 12.) And in AG Mayes's response to Plaintiff's notices of supplemental authority, AG Mayes unequivocally stated: "While AG Mayes will not disavow enforcing Arizona's harassment statute, she has made clear through her briefing in this matter that it does not apply to the act of filing papers in court without more, nor to 'unauthorized court filings.'" (Doc. 123 at 2.)[10]

_____

[10]    Paragraph 215 of the SAC alleges that "on November 28, 2025, in correspondence between Plaintiff and Attorney General's counsel, the Attorney General expressly refused to disavow any form of administrative, civil, or criminal enforcement against Plaintiff for conduct proscribed under A.R.S. § 12-3201(B), including as an A.R.S. § 13-2921 violation or A.R.S. § 13-3601 predicate." (Doc. 104 ¶ 215.) That referenced correspondence was the subject of Plaintiff's December 1, 2025 notice. (Doc. 93.) But in that correspondence, Plaintiff did not ask AG Mayes to disavow enforcement of § 13-2921, the harassment statute. (Doc. 93-1 at 3.) Instead, Plaintiff "ask[ed] if [AG Mayes] would agree not to enforce A.R.S. § 12-3201 [the vexatious litigant statute] until the case is complete. For [AG Mayes], that would take the form of not civilly or criminally enforcing any perceived

Plaintiff argues that even in cases where the attorney general has expressly disavowed enforcement of a statute, a plaintiff nevertheless "has standing to sue every member of the 'universe of potential complainants', including all state officers and private parties authorized to enforce the challenged statute." (Doc. 115 at 6.) Specifically, relying on *Isaacson*, Plaintiff argues that AG Mayes "is personally aware that she can be brought to suit when she disavows enforcement of a challenge statute and even when she concurs with plaintiffs who seek a ruling that a statute is unconstitutionally vague." (*Id.*) But *Isaacson* is distinguishable. There, although AG Mayes had "expressly disavowed enforcement of the Reason Regulations," and the intervenors claimed that she would "prevent county attorneys from enforcing the statute," the Ninth Circuit held that the plaintiffs had nevertheless shown a credible fear of prosecution for several reasons. *Isaacson*, 84 F.4th at 1100. First, the Ninth Circuit acknowledged that "the Attorney General is only one of the many enforcers of the Reason Scheme—including the Arizona Department of Health Services, the Arizona Medical Boards, and the County Attorneys." *Id.* "The Arizona Medical Board and Department of Health Services may . . . impose various *penalties*, including monetary fines, suspension or revocation of licenses, or public censure, *for violation of the Reason Regulations*." *Id.* at 1094 (emphases added). In contrast, no Arizona statute permits private persons (such as Plaintiff's ex-wife) or the Secretary of State to penalize, fine, or censure Plaintiff for a violation of § 13-2921.[11] Second, the Ninth Circuit explained that although AG Mayes had herself disavowed enforcement of the Reason Regulations, AG Mayes had only stated that she would "advise" county attorneys not to prosecute violations of the Reason Regulations and "evidently

---

violation of § 12-3201(B), including any perceived violation of Administrative Order 2023-159." (*Id.*) AG Mayes's counsel then informed Plaintiff that AG Mayes would not agree "to not administratively, civilly, or criminally enforce *A.R.S. § 12-3201*," the vexatious litigant statute. (*Id.* at 1, 13, emphasis added.)

[11] Although § 13-3602 permits a private party to obtain an order of protection against a person who has committed domestic violence and § 13-2921 is a predicate offense for domestic violence, *see Hernandez*, 587 P.3d at 1269, § 13-3602 does not itself permit enforcement via "penalties," "fines," "censures," or other forms of punishment like the statutes in *Isaacson*.

believes that she lacks authority to bind county attorneys by her disavowal of enforcement, and Intervenors cite no statutory provisions contradicting that assessment." *Id.* at 1100. The Ninth Circuit emphasized, moreover, that "[t]here is reason to believe that one or more county attorneys agree that they are not bound by the Attorney General's disavowal and will attempt to enforce the Reason Regulations." *Id.* Specifically, "at least one county attorney *intends to enforce* restrictive abortion laws, even when the Attorney General has disavowed and advised against enforcement," and thus, there was "reason enough for Plaintiffs to fear that they too will be targeted." *Id.* at 1100-01 (emphasis added). In contrast, there is no indication in the record here that any county attorney has stated an intention to enforce § 13-2921 based on the mere filing of court papers despite AG Mayes's disavowal of that theory. Indeed, that prospect seems entirely unlikely given the decisions by the Arizona Supreme Court and the Arizona Court of Appeals indicating that § 13-2921 would not extend to simply filing court papers and that any attempt by the State to interpret the statute in that way would be improper. *Hernandez*, 587 P.3d at 1269; *Musser*, 977 P.2d at 132-33; *Brown*, 85 P.3d at 115-16. Third, the Ninth Circuit concluded that there was a credible threat of enforcement because the Reason Regulations provided for a private civil right of action. *Isaacson*, 84 F.4th at 1101. But § 13-2921 does not contain a provision permitting a private civil right of action. Nor are orders of protection or address confidentiality programs similar to private civil rights of action for violations of a statute. Ultimately, the *Isaacson* court held that "[t]he combination of these potential threats— from the county attorneys, the Arizona health agencies, and private parties—satisfies the third prong of *Driehaus* and is sufficient to allege an imminent future injury." *Id.* Plaintiff has not alleged an analogous "combination of . . . potential threats" here.[12]

Plaintiff also cites *American Encore*. At issue there were "two provisions" of the

---

[12] Although courts should "analyze[] the credibility of the threat of enforcement against the plaintiffs" by looking at "the threat posed *collectively* by the entire 'universe of potential complainants'" and not just those "named as defendants," *Matsumoto v. Labrador*, 122 F.4th 787, 798 (9th Cir. 2024), it is worth noting that in *Isaacson*, AG Mayes, the Arizona Department of Health Services, the Arizona Medical Board, and the Arizona county attorneys were all named as defendants. In contrast, Plaintiff has not named the Secretary of State, nor anyone else other than AG Mayes, as a defendant.

Arizona Secretary of State's Election Procedures Manual ("EPM"), which itself "has the force of law." 152 F.4th at 1105-06. When evaluating whether the plaintiffs had shown a credible threat of enforcement as to one of those provisions, the Speech Provision, the Ninth Circuit held that "although the Attorney General disavowed Plaintiff's interpretation of the Speech Provision, . . . Plaintiffs have still shown a credible threat of adverse government action by virtue of the enforcement authority delegated by the Secretary to election workers." *Id.* at 1118. In the EPM itself, the "Secretary charges election workers with the responsibility to 'prevent and promptly remedy any instances of voter intimidation.' To fulfill that duty election poll workers must 'preserve order and remove disruptive persons from the voting location.' The Secretary instructs election poll workers to enforce the EPM at polling stations and to rely upon the Speech Provision in assessing whether to call the police or permit individuals in or around the polling place." *Id.* at 1119 (EPM citations omitted). The Ninth Circuit stated that "in evaluating the threat of enforcement, we look to the threat posed *collectively* by the entire universe of potential complainants." *Id.* at 1118 (cleaned up). In light of this express delegation of enforcement authority, the Ninth Circuit held that "Plaintiffs have shown that there is a credible or substantial risk of enforcement of the Speech Provision against them. Poll workers may call the police or remove individuals from voting centers based on the Speech Provision alone." *Id.* at 1119. As AG Mayes correctly notes, that analysis is distinguishable here for the obvious reason that she "has not 'delegated' any 'enforcement authority' to the Secretary" with respect to § 13-2921. (Doc. 118 at 5. *See also* Doc. 105 at 4 ["[I]n *American Encore*, the Secretary (unlike here) was named as a defendant and had also delegated 'enforcement authority' of the Speech Provision to others."].) Indeed, § 13-2921 does not delegate any enforcement authority to the Secretary of State, private persons, or anyone else.[13]

---

[13]    In his argument regarding the second *Driehaus* factor, Plaintiff cites *Whole Woman's Health* and argues that this case, too, supports his standing theory based on a "universe of potential complainants" that can enforce § 13-2921 against him. (Doc. 115 at 3-4 n.2.) But *Whole Woman's Health* is distinguishable. There, the petitioners challenged the Texas Heartbeat Act (also known as S. B. 8), which "prohibits physicians from knowingly performing or inducing an abortion on a pregnant woman if the physician

c.    **History Of Past Prosecution Or Enforcement**

The third subfactor is "the history of past prosecution or enforcement under the challenged statute." *Yellen*, 34 F.4th at 850. "[E]vidence of past instances of enforcement," although "not dispositive," is "important in a standing inquiry." *LSO, Ltd. v. Stroh*, 205 F.3d 1146, 1155 (9th Cir. 2000). As previously noted, "[t]his subfactor also undermines Plaintiff's claim to standing. Plaintiff does not identify any case in which AG Mayes, some other Arizona prosecutor, or even some prosecutor in some other jurisdiction has brought criminal harassment charges against a defendant solely based on the act of filing papers in a pending lawsuit (or filing court papers in violation of a vexatious-litigant order). Again, Plaintiff's only attempt to address this subfactor is his speculation regarding the Arizona Secretary States's basis for accepting his ex-wife's application to participate in the address protection program. But this is not the sort of history of past prosecution

detected a fetal heartbeat for the unborn child unless a medical emergency prevents compliance." 595 U.S. at 35 (cleaned up). S. B. 8 "generally does not allow state officials to bring criminal prosecutions or civil enforcement actions" and "instead . . . directs enforcement through private civil actions culminating in injunctions and statutory damages against those who perform or assist prohibited abortions." *Id.* (cleaned up). Among others, the petitioners named as defendants several individuals who were "executive licensing official[s] who may or must take enforcement actions against the petitioners if they violate the terms of Texas's Health and Safety Code, including S. B. 8." *Id.* at 45-46. The Supreme Court held that "sovereign immunity does not bar the petitioners' suit against these named defendants at the motion to dismiss stage." *Id.* at 46. The majority rejected the argument that "the licensing-official defendants lack authority to enforce S. B. 8 because that statute says it is to be 'exclusively' enforced through private civil actions '[n]otwithstanding . . . any other law.'" *Id.* The majority emphasized that S. B. 8 also contains a "saving clause" providing that the law "may not be construed to . . . limit the enforceability of any other laws that regulate or prohibit abortion.'" *Id.* The majority found the saving clause to be "significant because, as best we can tell from the briefing before us, the licensing-official defendants *are* charged with enforcing 'other laws that regulate . . . abortion.'" *Id.* For example, the majority noted that Texas Occ. Code. § 164.055 provides that the Texas Medical Board "shall take an appropriate disciplinary action against a physician who violates . . . Chapter 171, Health and Safety Code,' a part of Texas statutory law that *includes* S. B. 8." *Id.* In other words, "Texas law imposes on the licensing-official defendants a duty to enforce a law that 'regulate[s] or prohibit[s] abortion,' a duty expressly preserved by S. B. 8's saving clause." *Id.* The majority therefore held that "at least based on the limited arguments put to [it] at this stage of the litigation, it appears that the licensing defendants do have authority to enforce S. B. 8." *Id.* Here, in contrast, Plaintiff has pointed to no analogous "saving clause" in § 13-2921 that permits enforcement of the harassment statute by others, such as the Secretary or his ex-wife. Nor has Plaintiff alleged that any other law imposes a duty on the Secretary of State or others to discipline or punish a person who violates § 13-2921. Again, all that Plaintiff points to are statutes authorizing orders of protection and address confidentiality programs, which are not the types of enforcement that the pre-enforcement framework conceptualizes.

that the pre-enforcement standing inquiry contemplates." (Doc. 100 at 35-36.)[14]

Plaintiff argues that "enforcement history alone is not dispositive" and because "the current version of the challenged statute only went into effect in 2023, . . . the law is still 'relatively new', meaning the record of enforcement 'carries little weight' in the standing analysis." (Doc. 115 at 8-9, citations omitted.)  As an initial matter, the revised A.R.S. § 13-2921 became effective September 24, 2022—nearly three-and-a-half years before the filing of the SAC  and nearly two-and-a-half years before Plaintiff initiated this action.[15] Plaintiff has not pointed to a single case within that time period in which AG Mayes or any other prosecutor has charged a person with violating § 13-2921 for filing court papers. Plaintiff has also not pointed to a single instance in which AG Mayes (or any other prosecutor) has charged a person with violating the prior version of § 13-2921 based upon the mere filing court papers.  The prior version of A.R.S. § 13-2921 was effective from September 26, 2008 to September 23, 2022.  Thus, the third subfactor does not support a finding of a credible threat of enforcement.

### 4. Summary Of *Driehaus* Factors

Because the allegations in the SAC are insufficient to satisfy the second and third *Driehaus* factors, Plaintiff lacks standing to pursue Count Two as against AG Mayes.

### C. **Plaintiff's Notices Of Supplemental Authority**

On March 27 and 31, 2026, Plaintiff filed notices of supplemental authority regarding *Imperial Sovereign Ct. of Montana v. Knudsen*, 170 F.4th 820 (9th Cir. 2026), and *Chiles v. Salazar*, 146 S. Ct. 1010 (2026). (Docs. 119, 120.)  The Court agrees with AG Mayes that "neither of the cases cited changed the requirements for standing" and that they "simply repeat existing law" such that they do not alter the standing analysis discussed

---

[14]   There is no merit to Plaintiff's argument in his motion for a preliminary injunction that *Hernandez* "shows that an individual indeed has been prosecuted under §§ 13-2921(A)(1) and 13-3602 for engaging in First Amendment expression." (Doc. 124 at 9.) As discussed elsewhere in this order and in prior orders in this case, an ex parte order of protection predicated on allegations of a violation of a predicate statute is not the type of "enforcement" that the pre-enforcement framework contemplates.

[15]   *Isaacson*, 84 F.4th at 1099 n.7 ("Standing is evaluated based on the facts at the time of filing.").

above.  (Doc. 123 at 1.)

As for *Imperial Sovereign Court*, Plaintiff argues that this case "supports [his] arguments that he has pre-enforcement standing (1) to bring an action against [AG Mayes] and [the Presiding Judge] to challenge A.R.S. § 12-3201 for overbreadth and vagueness; and (2) to bring action against [AG Mayes] to challenge A.R.S. § 13-2921 for vagueness." (Doc. 119 at 1.)  As an initial matter, to the extent Plaintiff argues that this case supports his claim against AG Mayes and the Presiding Judge challenging A.R.S. § 12-3201, Arizona's vexatious litigant statute, Plaintiff is improperly attempting to relitigate a claim that has already been dismissed without leave to amend.  (Doc. 100.)

Nor does *Imperial Sovereign Court* support Plaintiff's claim of standing as to Count Two.  Most of the quotations that Plaintiff provides from *Imperial Sovereign Court* are simply quotations from other prior cases.  In other words, *Imperial Sovereign Court* does not change the law on pre-enforcement challenges, it simply restates it.   Plaintiff also appears to view *Imperial Sovereign Court* as supporting his argument that because AG Mayes is one of several persons who can "enforce" § 13-2921, "[f]or Plaintiff to lack standing, every possible enforcing member of 'the Government', including authorized private party enforcers, must affirmatively declare Plaintiff will not in any way be administratively, civilly or criminally prosecuted for A.R.S. § 12-3201(B) filing court papers absent prior court approval, including for A.R.S. § 13-2921 harassment based on filing court papers absent court approval." (Doc. 119 at 1-2.)  But as discussed above, Plaintiff misunderstands who can "enforce" § 13-2921.   Section 13-2921 does not "distribute[] enforcement authority across multiple actors." (*Id.* at 2, citation omitted.) Instead, enforcement authority is limited to AG Mayes and the county attorneys.  Nor do § 13-3602 or the address confidentiality program under § 41-161 *et seq.* constitute "enforcement" by others of § 13-2921.

As for *Chiles*, Plaintiff argues that it "supports [his] arguments that he has sufficiently demonstrated pre-enforcement standing (1) to bring action against [AG Mayes] and [the Presiding Judge] in a First Amendment facial challenge to A.R.S. § 12-3201 for

overbreadth and vagueness; and (2) to bring action against [AG Mayes] to challenge A.R.S. § 13-2921 for vagueness affecting the First Amendment." (Doc. 120 at 1.) As an initial matter, large portions of Plaintiff's second notice appear to be directed at arguing why his claim challenging § 12-3201, Arizona's vexatious litigant statute, has merit. (*Id.* at 1-2.) But as discussed above, this is improper because Count One has already been dismissed without leave to amend. (Doc. 100.) Moreover, in *Chiles*, the Supreme Court only addressed standing in a footnote, agreeing that Chiles had standing and had shown a credible threat of enforcement because "Colorado has fought this suit through three courts over three years and, at argument here, expressly declined to disavow enforcement against Ms. Chiles." 146 S. Ct. at 1019 n.*. The Court agrees with AG Mayes that *Chiles* does not alter the pre-enforcement standing framework and that *Chiles* is distinguishable because, "[w]hile AG Mayes will not disavow enforcing Arizona's harassment statute, she has made clear through her briefing in this matter that it does not apply to the act of filing papers in court without more, nor to 'unauthorized court filings.'" (Doc. 123 at 2.)

III.    Plaintiff's Request For An Evidentiary Hearing And Ortega's Motion To Strike

Before turning to Ortega's pending motion to dismiss (Doc. 108), the Court first addresses whether it should strike and seal certain portions of Plaintiff's response to Ortega's motion, including certain attachments to that response. (Doc. 116.)

    A.    **The Parties' Arguments**

In his response to Ortega's motion to dismiss, Plaintiff requests an evidentiary hearing on Ortega's request to take judicial notice of Administrative Order 2023-159, which designated Plaintiff as a vexatious litigant in Arizona state court. (Doc. 114 at 8.) "Plaintiff asks to be heard in oral argument as he disputes every fact contained in that administrative order, time has shown that order to be erroneous, and the order was obtained as part of a concerted effort to influence or manipulate proceedings in one case in order to gain tactical advantage in another." (*Id.*, cleaned up.) "Plaintiff asks the Court to conduct an evidentiary hearing regardless of its ultimate decision on Ortega's motion to dismiss as other defendants made the same judicial notice request." (*Id.*) "To aid in its decision,

Plaintiff asks the Court to take judicial notice of undisputed facts that Ms. Ortega has referenced Administrative Order 2023-159 while participating in state court motion practice that asks Plaintiff to be arrested." (*Id.* at 9 n.2.)[16]  In support of his request for an evidentiary hearing, Plaintiff attaches two documents. (*Id.*)  Attachment A is a copy of a document entitled "Response to Motion for Civil Arrest Warrant" that Plaintiff filed in an unrelated case in Arizona state court between Plaintiff and his ex-wife. (Doc. 114-1.)  In that document, Plaintiff lodged several accusations against Ortega and attached several financial documents allegedly involving financial transactions between persons who are not parties to this case. (*Id.*)  Attachment B is an "Order of Admonition with Probation, (CLE), and Costs" from the Attorney Discipline Probable Cause Committee of the Supreme Court of Arizona that was entered against Ortega several years ago. (Doc. 114-2.)

In her reply in support of her motion to dismiss, Ortega objects to Plaintiff's request for an evidentiary hearing regarding Administrative Order 2023-159, arguing that "[t]he Court already took notice of the Order after noting that Plaintiff cited it in his briefing and did not dispute it." (Doc. 117 at 2, citing Doc. 100.)  Ortega also emphasizes that the Court stated in the Order Dismissing the FAC that it "d[id] not take judicial notice of the truth of any of the statements contained" in Administrative Order 2023-159. (*Id.* at 2-3, quoting Doc. 100 at 19 n.11.)  Ortega argues that "[t]he Court should deny Plaintiff's request for a hearing because he already had the opportunity to be heard on the issue and neither disputed the Order nor sought a hearing about its judicial notice.  And the Court notice[d] the Order without taking notice of the statements contained therein, so Plaintiff's specific arguments

---

[16]    To the extent Plaintiff is asking the Court to take judicial notice of the fact that Ortega has asked other state courts to take judicial notice of Administrative Order 2023-159, the Court denies that request because the fact sought to be noticed "can[not] be accurately and readily determined" from Attachment A, which Plaintiff provides to support his request. Fed. R. Evid. 201(b)(2). Attachment A is *Plaintiff's* response brief in a case in Arizona state court. (Doc. 114-1.)  In that response brief, *Plaintiff asserts* that Ortega asked the state court to take judicial notice of Administrative Order 2023-159, but he does not attach or cite the document in which that alleged request was made by Ortega. (*Id.* at 5.)  The Court cannot "accurately and readily determine[]" that Ortega made that request based solely on Plaintiff's own assertion that this occurred.

for opposing its judicial notice are moot." (*Id.* at 3.)  Last, Ortega argues that Attachment A and B are "[a]busive" and asks that they "be struck and removed from the record." (*Id.*)

Ortega also separately moves to "request[] that the Court exercise its inherent authority to strike and seal" Attachments A and B, "as well as the footnote introduction to [Attachment] B" in footnote 2 of Plaintiff's response brief.  (Doc. 116 at 1-2.)  As for Attachment A, Ortega argues that it "contains exhibits including personal financial information of persons uninvolved in this litigation." (*Id.*) As for Attachment B, Ortega argues that it "is comprised of documents related to a judicial proceeding involving Ortega unrelated to this litigation." (*Id.* at 2.)  Ortega argues that "[d]istrict courts have the inherent power to control their dockets, which includes the power to strike items from the docket as a sanction for litigation conduct." (*Id.*, cleaned up).  Ortega argues that *Edwards v. Coury*, 2025 WL 2468645 (D. Ariz. 2025), *reconsideration denied*, 2025 WL 2800057 (D. Ariz. 2025), supports her request because, there, the court "use[d] its inherent authority to strike and seal motions and an exhibit as a sanction for using the Court's filing system for an improper purpose." (*Id.*)  Specifically, Ortega argues that the *Edwards* court "found the motions and exhibit to be 'unrelated to the issues' and concluded they were 'being used as vehicles to vent a private spite against various judges' and were being filed as 'personal attacks' rather than 'legal documents.'" (*Id.*, citation omitted.)  Ortega argues that, similarly here, "Plaintiff's exhibits are entirely irrelevant to the question of whether the Court should grant his request for an evidentiary hearing." (*Id.*)  And Ortega further argues that "Plaintiff attaches [Attachment A] in reckless disregard of the irrelevant personal financial information it contains of multiple persons uninvolved in this litigation" and Attachment B "serves no purpose other than to harass and embarrass Ortega." (*Id.*)  Ortega argues that the Attachments, and the footnote in Plaintiff's brief describing them, "are nothing more than vehicles to vent Plaintiff's spite and are more personal attacks than legal documents." (*Id.*)

In response, Plaintiff argues that Ortega "articulates no factual or legal grounds that would justify the Court sealing any record or striking any case entry." (Doc. 121 at 1.)

Plaintiff argues that "Ortega did not, because she cannot, overcome the public's right to inspect judicial records and case entries." (*Id.* at 2.) And Plaintiff argues that the "presumption of access" "is exceptionally difficult to overcome when, as here, the judicial process involves matters of 'public interest', including allegations of government 'corruption'." (*Id.*) Citing the sealing standard from *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172 (9th Cir. 2006), Plaintiff argues that "Ortega provides no 'compelling reasons' to seal and, therefore, cannot meet her 'burden' to seal any records." (*Id.* at 3.) Plaintiff further argues that Ortega "acknowledg[es] the records in question reside in the public domain as state court record entries." (*Id.*) As for Attachment A, Plaintiff argues that "Ortega's name appears in Attachment A solely as an attorney of record" and that "[h]er name does not constitute 'personal financial information.'" (*Id.* at 4.) Plaintiff emphasizes that "all account numbers contained in Attachment A are redacted, meaning the records contain no personal information of persons not party to this litigation." (*Id.*) And Plaintiff also argues that "Ortega's attorneys are only permitted to represent their client's interests, not any third parties' interests" and "[t]he Court could deny the instant motion for lack of adherence to rules regarding non-parties." (*Id.* at 4 n.2, citing Fed. R. Civ. P. 24.) Next, Plaintiff argues that relevance is "a low bar" and that Attachment A is relevant to his claims because Attachment A purportedly shows that Ortega is "[e]ngaging in the same sort of professional misconduct" as alleged in the SAC and that "this case involves Ortega's continuous and ongoing misrepresentations in state cases." (*Id.* at 5, citation omitted.) Next, Plaintiff argues that "Attachments A and B are not for embarrassment for harassment" and that if Ortega "believes information in either Attachment exposes her to criminal or civil liability, or to additional professional discipline, the Ninth Circuit does not consider those to be sufficient reasons to seal court records." (*Id.* at 6, cleaned up.) Plaintiff then reiterates that "Attachments A and B are already matters of public record." (*Id.*, cleaned up.) Next, Plaintiff argues that the Court should deny the request to strike per LRCiv 7.2(m)(1) and argues that Ortega seeks "to undermine that local rule" by "call[ing] to the court's inherent power to control their

dockets." (*Id.* at 7, cleaned up.)  Plaintiff argues that Ortega "points to no sanctionable litigation conduct" and reiterates that "Attachment A and Attachment B contain publicly available information relevant to this case, relevant to Plaintiff's response to the dismissal motion, and relevant to his request for an evidentiary hearing as Fed. R. Evid. 201 permits." (*Id.* at 8.)  Plaintiff argues that had Ortega "sought to strike references to those disciplinary matters, she should have filed a timely Fed. R. Civ. P. 12(f) motion to strike" but that "[s]he failed to do so." (*Id.*)

In reply, Ortega reiterates that Attachments A and B "and their accompanying introductory text" in footnote 2 "serve no legitimate purpose" and that "Plaintiff seeks only to harass and embarrass Ortega." (Doc. 122 at 1.)  Ortega also argues that "Plaintiff's filing [was not] authorized to be filed by any statute, rule, or court order." (*Id.*)  Ortega argues that "[t]he Court should exercise its rules-based and inherent authority to strike and seal the items at issue." (*Id.*)  Ortega argues that Plaintiff's request for an evidentiary hearing "was improper for at least two reasons": first, "he raised it in a response brief to a motion to dismiss"; and second, the Court already took judicial notice of Administrative Order 2023-159 and in doing so stated "explicitly" that it did "*not* take judicial notice of the truth of any of the statements contained in [the Order]." (*Id.* at 2, citing Doc. 100 at 19 n.11.)  Ortega argues that Plaintiff's "only reason for requesting a hearing on the Court's noticing the Order was because he disputes every fact contained in the Order, a moot point given that the Court did not notice the truth of any of the statements within it." (*Id.*, cleaned up).  Next, Ortega argues that "[e]ven if Plaintiff's request for the hearing were proper, the Irrelevant Items are irrelevant to the request." (*Id.*)  Ortega also reiterates that "[n]o statute, rule, or court order authorized Plaintiff to file exhibits entirely irrelevant to the briefing they accompany—couched with an improper request unrelated to *both* the briefing and the exhibits—that flaunt nonparties' financial information and seek to embarrass a defendant." (*Id.*)  Next, Ortega argues that "Plaintiff devotes most his Response to Ortega's Motion to Strike reciting the standards for sealing judicial records, but that standard does not apply here" because "Ortega is not seeking to file the Irrelevant Items under seal.  Instead, she

argues they are improper such that they should not be part of the record of this case. But Plaintiff already filed them, and they are now judicial records." (*Id.* at 3.) Last, Ortega argues that "[i]f the Court finds their filing was improper and they should be struck, then it should also seal them for the same reasons—as it did in [*Edwards*]—regardless of whether they are otherwise publicly available." (*Id.*)

B.    **Analysis**

As an initial matter, Plaintiff's request for an evidentiary hearing on Ortega's request to take judicial notice of Administrative Order 2023-159 (Doc. 114 at 8-9) is denied. The Court has already taken judicial notice of Administrative Order 2023-159 in the Order Dismissing the FAC. (Doc. 100 at 19 & n.12.) Plaintiff's request for an evidentiary hearing is based on the fact that "he disputes every fact contained in that administrative order, time has shown that order to be erroneous, and the order was obtained as part of a concerted effort to influence or manipulate proceedings in one case in order to gain tactical advantage in another." (Doc. 114 at 8.) In other words, Plaintiff seeks an evidentiary hearing to dispute the truth of the statements contained within Administrative Order 2023-159. But in previously taking judicial notice of Administrative Order 2023-159, the Court acknowledged that Plaintiff does not "dispute the authenticity of Administrative Order 2023-159" and that "*the Court does not take judicial notice of the truth of any of the statements contained in this Administrative Order*." (Doc. 100 at 19 nn. 11 & 12, emphasis added.)

Turning to Ortega's request to strike and seal, the Court shares in Ortega's frustration regarding Plaintiff's decision to use a large portion of his response brief to relitigate an issue already resolved by the Court as an apparent means of antagonizing Ortega. Plaintiff is well aware that the Court has already taken judicial notice of Administrative Order 2023-159. (Doc. 100 at 19.) Plaintiff is also well aware that, in taking judicial notice of Administrative Order 2023-159, the Court explicitly stated that it "does not take judicial notice of the truth of any of the statements contained in this Administrative Order." (*Id.* at 19 n. 11.) Nevertheless, Attachments A & B *do* appear to

have at least some marginal relevance to Plaintiff's request for an evidentiary hearing and to his claims against Ortega in the FAC and SAC. Although improper, Plaintiff's request for an evidentiary hearing is based on his belief that Administrative Order 2023-159 was the culmination of a concerted effort between Meza, Robson, and Ortega to have him deemed a vexatious litigant per A.R.S. § 12-3201 so they could gain a litigation advantage in other cases. Indeed, Counts Four and Five of the SAC allege that Ortega engaged in abuse of process, and aiding and abetting abuse of process, by "filing A.R.S. § 12-3201(A) motions in CV2021-005501 and CV2021-013210 per agreement with Meza" (Doc. 104 ¶ 260) and by "each substantially assist[ing] and encourag[ing] each one another to commit their primary torts as evidenced by (1) Meza's and Ortega's August 2021 communications on the specific topic of filing A.R.S. § 12-3201(A) motions; [and] (2) Ortega's two unsuccessful A.R.S. § 12-3201(A) motions filed in CV2021-013210" (*id.* ¶ 271). Paragraph 102 of the SAC further alleges that "Defendant Alane Ortega . . . has an extensive disciplinary record. For instance, on April 14, 2021, the Discipline Probable Cause Committee of the Supreme Court of Arizona found that 'in several cases and in several forums', Ms. Orega [sic] 'violated the following Rules of the Supreme Court of Arizona: Rule 42, Ariz. R. Sup. Ct., ERs, 1.2, 1.3, 3.1, 3.2, 3.4(c), and 8.4(d)', including in case cv-15-00357 before the U.S. District Court for the District of Arizona where, on December 5, 2016, the Hon. John J. Tuchi issued an order admonishing her for knowingly 'furthering a [client's] falsehood.'" (*Id.* ¶ 102.) Attachment B is simply a copy of the April 2021 Discipline Order already referenced in paragraph 102 of the SAC (Doc. 114-2), and the information that Ortega seeks to have stricken from footnote 2 is nearly identical to the information that appears in paragraph 102 of the SAC (Doc. 114 at 9 n. 2).[17] Thus, this case is unlike *Edwards*, where the court exercised its in "inherent power to control [its] docket . . . includ[ing] the power to strike items from the docket as a sanction for litigation conduct" where the plaintiff's motion "contain[ed] graphic language that [was] *unrelated to the issues in the complaint*." 2025 WL 2468645 at *1 (emphasis added).

---

[17] Ortega has made no request to strike paragraph 102 of either the FAC or SAC.

This case is also unlike *Edwards* for another reason. There, the plaintiff "gratuitously attached to both motions a document he obtained through *unknown means* that purports to be the *private information* of another judge, including her home address." *Id.* at \*1 (emphases added). In contrast, Plaintiff argues (Doc. 121 at 8), and Ortega does not appear to dispute (Doc. 122 at 3), that Attachments A and B are publicly available documents. In other words, they do not contain "private information" akin to a judge's home address, nor were they "obtained through unknown means."[18]

Accordingly, Ortega's motion to strike and seal is denied.

## IV.    Ortega's Motion to Dismiss

In the Order Dismissing the FAC, the Court declined, pursuant to 28 U.S.C. § 1367(c)(3), to exercise supplemental jurisdiction over Plaintiff's state-law claims against Ortega after dismissing all federal claims from the FAC. (Doc. 100 at 64.) But "because Count Two [was] being dismissed at least in part based on insufficiently detailed factual allegations, the Court . . . err[ed] on the side of caution and grant[ed] leave to amend as to that claim." (*Id.* at 66.) And "because Plaintiff's claims against Ortega in Counts Four and Five [were] only being dismissed due to the absence of a federal claim," the Court permitted Plaintiff to reassert those state-law claims when filing the SAC and permitted Ortega to reassert her dismissal arguments. (*Id.*)

The Court has now determined that Count Two of the SAC, the only remaining federal claim, should be dismissed. Therefore, the same analysis from the Order

---

[18]    Although Ortega argues that Attachment A contains "personal financial information of persons uninvolved in this litigation" (Doc. 122 at 2), it appears that Attachment A was already publicly filed in Arizona state court, such that the information isn't actually "private." *Cf. TriQuint Semiconductor, Inc. v. Avago Techs. Ltd.*, 2012 WL 1432519, \*2 (D. Ariz. 2012) ("There is thus an inherent logical dilemma underlying the parties' requests because information that has already entered the public domain cannot in any meaningful way be later removed from the public domain."); *Gambale v. Deutsche Bank AG*, 377 F.3d 133, 144 n.11 (2d Cir. 2004) ("[W]hen information that is supposed to be confidential . . . is publicly disclosed . . . it necessarily remains public. . . . Once the cat is out of the bag, the ball game is over.") (cleaned up); *L.S. v. Henderson*, 2021 WL 5149067, \*1 (N.D. Cal. 2021) ("As to Exhibits D and E, both declarations appear to be available on the public docket of [another federal case] in the Central District of California . . . . No good cause exists to seal documents that are already publicly available elsewhere."). At any rate, confidential information such as account numbers in Attachment A appears to have been redacted.

Dismissing the FAC applies to the state-law claims against Ortega in the SAC. (Doc. 100 at 63-65.) Counts Four and Five are dismissed against Ortega pursuant to § 1367(c)(3).

Finally, there is no merit to Plaintiff's suggestion (Doc. 114 at 2, 6) that the Court must wait until after it issues a final judgment, and until after the Ninth Circuit determines the issue on appeal, before declining to exercise supplemental jurisdiction over Count Four and Five. *See, e.g.*, *Gesell v. City of Cottonwood*, 2025 WL 928885, *12 (D. Ariz. 2025) (declining to exercise supplemental jurisdiction over remaining claims once the federal claim was dismissed earlier in the same order).

V.    Leave to Amend

Plaintiff did not request leave to amend in his response briefs. Nevertheless, the rule in the Ninth Circuit is that "[a] district court should not dismiss a pro se complaint without leave to amend unless it is absolutely clear that the deficiencies of the complaint could not be cured by amendment." *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012) (cleaned up). "[B]efore dismissing a pro se complaint the district court must provide the litigant with notice of the deficiencies in his complaint in order to ensure that the litigant uses the opportunity to amend effectively." *Ferdik v. Bonzelet*, 963 F.2d 1258, 1261 (9th Cir. 1992), as amended (May 22, 1992).

In the Order Dismissing the FAC, the Court specifically instructed Plaintiff regarding the deficiencies in the FAC, and "because Count Two [was] being dismissed at least in part based on insufficiently detailed factual allegations, the Court . . . err[ed] on the side of caution and grant[ed] leave to amend as to that claim." (Doc. 100 at 65-66.) The Court further instructed Plaintiff that any "changes shall be limited to attempting to cure the deficiencies that led to the dismissal of Count Two." (*Id.* at 67.) Plaintiff has failed to cure those deficiencies in the SAC, and the Court concludes that Plaintiff would not be able to cure those same deficiencies if given yet another opportunity to do so. *Ferdik*, 963 F.2d at 1261 (affirming dismissal with prejudice where district court had instructed *pro se* plaintiff regarding deficiencies in prior order dismissing claim with leave to amend); *Ascon Props., Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1160 (9th Cir. 1989) ("The district court's

discretion to deny leave to amend is particularly broad where plaintiff has previously amended the complaint.").  Thus, the Court will dismiss the SAC without leave to amend.

VI.     Plaintiff's Motion For A Preliminary Injunction

Plaintiff seeks "a preliminary injunction prohibiting [AG Mayes] from enforcing A.R.S. § 13-2921(A)(1), Arizona's criminal harassment statute, against him until the claim is finally decided."  (Doc. 124 at 1.)  In light of the conclusion above that Plaintiff lacks standing to pursue Count Two, Plaintiff's motion for a preliminary injunction fails on the merits.  Additionally or alternatively, that motion is moot now that Count Two has been dismissed. *Skydiving Sch., Inc. v. GoJump Am., LLC*, 703 F. Supp. 3d 1215, 1228 (D. Haw. 2023), *aff'd*, 2025 WL 502491 (9th Cir. 2025) (denying as moot motion for preliminary injunction premised on counts that the court dismissed earlier in the same order).

Accordingly,

**IT IS ORDERED**  that:

1.     AG Mayes's motion to dismiss (Doc. 110) is **granted**.

2.     Ortega's motion to dismiss (Doc. 108) is **granted**.

3.     Ortega's motion to strike and seal (Doc. 116) is **denied**.

4.     Plaintiff's motion for a preliminary injunction (Doc. 124) is **denied as moot**.

5.     The Clerk shall enter judgment accordingly and terminate this action.

Dated this 20th day of July, 2026.

_____
Dominic W. Lanza
United States District Judge