Phillip Potter
2301 N. 66th Street
Scottsdale, Arizona 85257
Phone: 480.459.0310
E-Mail: phillip.t.potter@gmail.com
Plaintiff
Pro Se

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Phillip Potter, | No. 2:25-cv-00663-PHX-DWL |
| Plaintiff, | |
| v. | **MOTION TO ALTER OR AMEND THE JUDGMENT; OR IN THE ALTERNATIVE, TO STAY THE JUDGMENT AND ISSUE AN INJUNCTION PENDING APPEAL REGARDING COUNT TWO** |
| Robert Meza, et al., | |
| Defendants. | |

Pursuant to Fed. R. Civ. P. 59(e), Plaintiff moves for reconsideration of the Court's July 20, 2026 Order dismissing a First Amendment facial challenge to A.R.S. § 13-2921 for lack of standing.  Reconsideration is warranted because the Order contains clear errors regarding current statutory language and the use of *Iqbal* standards, rather than the lower *Driehaus* standards, to analyze standing at the pleading stage.

ARGUMENT

"First Amendment cases raise 'unique standing considerations, ... that tilt[] dramatically toward a finding of standing.'  This is because 'a chilling of the exercise of First Amendment rights is, itself, a constitutionally sufficient injury.'"  *Am. Encore v. Fontes*, 152 F.4th 1097, 1113-1114 (9th Cir. 2025) (citations omitted).  "For pre-enforcement plaintiffs, the injury is the anticipated enforcement of the challenged statute in the future."  *Peace Ranch, LLC v. Bonta,* 93 F.4th 482, 486-487 (9th Cir. 2024).  This "chill" injury is the same whether a plaintiff "hold[s] [his] tongue" and fails to act, or "bets the farm" and does act, in the face of potential enforcement.  *Id*.  Because of the dilemma pre-enforcement plaintiffs face, the Supreme Court demands a "relaxed standing analysis".  *Canatella v. California*, 304 F.3d 843, 853 n.11 (9th Cir.2002); *Cal. Pro-Life Council, Inc. v. Getman,* 328 F.3d 1088, 1094 (9th Cir. 2003) ("'[T]he Supreme Court has dispensed with rigid standing requirements' for First Amendment" claims involving pre-enforcement injuries.") (citation omitted).  While "each element [of standing] must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation", *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561 (1992), at the dismissal stage of a First Amendment facial challenge, the "relaxed" analysis creates a much lower demand than what *Iqbal* requires of other cases.  A plaintiff needs only describe conduct

"arguably" protected by the First Amendment to meet *Driehaus* Factor One, need only present an "arguable" interpretation of the statute to meet *Driehaus* Factor Two, and need only allege that the "threat of enforcement is not chimerical"[1] to satisfy *Driehaus* Factor Three. *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158-164 (2014); *Am. Encore*, 152 F.4th at 1113-1120. Standards far higher than the "relaxed" standard were followed.

I. Good Reasons Exist to Reconsider the Order Regarding Count Two

The Order rests on clear errors of law regarding the legal standards applied, current § 13-2921(A)(1) language, and what is an insufficiently developed and out-of-date record given the Arizona supreme court's very recent opinion in *Hernandez* (Doc. 124, pp. 2-3). The cumulative result is an erroneous finding that Plaintiff lacked standing to bring a First Amendment claim for insufficiently pleading the "Second *Driehaus* Factor" (Doc. 125, pp. 19-27) and the "Third *Driehaus* Factor" (Doc. 125, pp. 27-34).

A. Legal Standard

A Fed. R. Civ. P. Rule 59(e) motion for "[r]econsideration is appropriate if the district court ... committed clear error, or ... there is an intervening change in controlling law." *Sch. Dist. No. 1J v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993).

B. Clear Error is Evident in Citation to the Pre-Amendment Version of § 13-2921(A)

Under *Driehaus* Factor Two, the Court determined the complaint "contained insufficient allegations to support that Plaintiff's anticipated course of conduct would be 'repeated[]' as required by § 13-2921". (Doc. 125, p. 19). Section 13-2921(A)(1), in its present form, however, does not rely exclusively on "repeated" acts. "A person commits harassment if the person knowingly and repeatedly commits an act or acts that harass

---

[1] A "chimerical" allegation is one that is "unrealistic or nonsensical" while a "plausible" allegation is one that has been "nudged across the line ... from conceivable to plausible"; two very different legal standards. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

another person *or* the person knowingly commits any one of the following acts in a manner that harasses: [] Contacts or causes a communication with another person by verbal, electronic, mechanical, telegraphic, telephonic or written means."  The provision is plainly violated one of two ways.  First, "[a] person commits harassment if the person knowingly and repeatedly commits an act or acts that harass another person".  "[O]r" second, "[a] person commits harassment if ... the person knowingly commits any one of the following acts in a manner that harasses: [including] by verbal ... or written means."  Reliance on the prior version of the statute which only proscribed "repeated" acts is, therefore, a clear error of law.  Plaintiff was not required to plead every word of every provision of § 13-2921(A) violates the Speech Clause and/or the Petition Clause to demonstrate standing.  He could ultimately vindicate his rights by proving certain phrases or provisions, but not every phrase or provision, violates the First Amendment.  *See e.g.*, *Barr v. American Association of Political Consultants, Inc.*, 591 U.S. 732 (2020) ("We cure that constitutional violation by invalidating the 2015 government-debt exception and severing it from the remainder of the statute.").  And in the end, the burden falls on Attorney General Kris Mayes to defend the entirety of a state statute, not on a plaintiff to attack every provision on the pleadings at the dismissal stage or on the proofs at various merits stages.  *NetChoice, LLC v. Bonta*, 113 F.4th 1101, 1118 (9th Cir. 2024) ("The State cannot insulate a specific provision of law from a facial challenge under the First Amendment by bundling it with other, separate provisions".).

C. Clear Error is Evident in Application of a Heightened *Iqbal* Standard Rather than a Relaxed *Driehaus* Standard to the Standing Inquiry in a First Amendment Case

Again, standing is analyzed "less stringently" in First Amendment cases.  *Imperial Sovereign Ct. of Mont. v. Knudsen,* 170 F.4th 820, 834 (9th Cir. 2026).  This is done to

3

promote "[f]acial challenges to overly broad statutes [which] are allowed not primarily for the benefit of the litigant, but for the benefit of society – to prevent the statute from chilling the First Amendment rights of other parties not before the court." *Secretary of State of Maryland v. Joseph H. Munson Co.*, 467 U.S. 947, 958 (1984); *United States. v. Hansen*, 599 U.S. 762, 769 (2023) (First Amendment facial "challenges are an 'exception to the usual rules governing standing,' a variation the Court has long permitted in recognition of the 'danger of tolerating, in the area of First Amendment freedoms, the existence of a penal statute susceptible of sweeping and improper application.'"). The Supreme Court instructs courts to analyze pre-enforcement standing under the "relaxed" *Driehaus* "arguable" standard judged from a plaintiff's perspective, *Am. Encore*, 152 F.4th at 1113-1118, rather than under the heightened *Iqbal* "plausible" standard judged from a court's perspective. *Iqbal*, 556 U.S. at 678 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."). Applying *Iqbal* to analyze whether Plaintiff's allegations met the *Driehaus* "arguable" standard effectively swallowed whole the "relaxed standing analysis" that the Supreme Court requires.

        1. *Driehaus* Factor Two

The Order includes clear errors of law where the *Iqbal* standard was applied to the Factor Two standing analysis; specifically, when holding that (1) "the allegation that a hypothetical reasonable person might experience distress when subjected to unspecified filings in unspecified other lawsuits sheds no light on whether it is *plausible* that Plaintiff's intended course of conduct would cause a reasonable person to be seriously alarmed, annoyed, humiliated, or mentally distressed" (Doc. 125, p. 20), and (2) "[e]ven in light of *Hernandez*, the Court remains *unconvinced* that the SAC contains sufficient

4

factual allegations to satisfy the 'directed at' requirement" (Doc. 125, p. 21). References to the *Iqbal* "plausible" standard and to the Court being "unconvinced" indicate Factor Two was analyzed from the Court's perspective, not from Plaintiff's perspective, where Plaintiff was wrongly not given "the benefit of any doubt." *See Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012) (Even after *Iqbal*, courts must still "construe [a *pro se* plaintiff's] pleadings liberally and ... afford the petitioner the benefit of any doubt."). Under the *Driehaus* standard, Plaintiff's task on Factor Two was to "only show that [his] 'future conduct ... [is] '*arguably* ... proscribed by [the] statute' [he] wishes to challenge. And for the purposes of standing, *we accept Plaintiffs' interpretation of the statute so long as it is an arguable interpretation*." *Am. Encore*, 152 F.4th at 1116 (emphasis added) (citations omitted). A "reasonable interpretation of the" statute is all that was required. *Id*. Plaintiff satisfied Factor Two when alleging his court petitioning in ongoing, contentious, politically charged litigation (Doc. 104, ¶¶ 1-98; Doc. 124-1) had resulted in his ex-wife repeatedly accusing him of § 13-2921 harassment and securing a finding from the Arizona Secretary of State that Plaintiff had violated § 13-2921 through court filings (Doc. 125, pp. 2-3, 14-16, 26-30, 33-34). Plaintiff provided an "arguable interpretation from the statute's text and from his perspective. That interpretation is consistent with the Arizona supreme court's findings in *Hernandez* that *one* spoken ("verbal") or "written" "communication" to a third party violates § 13-2921(A)(1) when "adverse consequences" are possible, even when that third party is a government official and the communication takes the form of government petitioning "made for legitimate purposes".[2] (Doc. 124, pp. 2-3). As such, Plaintiff's reading of the statute "is an arguable

---

[2] Under the proper legal standard, Plaintiff's allegations that he would continue filing court papers in ongoing, contentious family law and civil litigation, where his ex-wife repeatedly accused him of violating § 13-2921 for such filings, also more than arguably

reading, which satisfies our standing inquiry" on Factor Two. *Id* at 1117.

Further, it was clear error to look to obsolete language in *Brown* and *Musser* to salvage § 13-2921 (Doc. 125, pp. 22-27, 31), and to unfavorably apply "the constitutional savings canon" in anticipatory fashion to find Plaintiff lacked standing. (Doc. 125, p. 34). Beyond constitutional avoidance being a tool for deciding the merits *not* for analyzing standing, *Brown* and *Musser* were both issued prior to the statute's 2022 amendments and relied on terms not in the current statute (Doc. 125, p. 14). Arizona operates in line with the Supreme Court's holding that "[w]hen Congress amends a statute, we interpret the new version according to its terms." *U.S. v. Wells*, 519 U.S. 482, 492-493 (1997); *State v. Mixton,* 250 Ariz. 282, 302 ¶ 90 (2021) ("[W]hen a legislature amends a provision by making a significant change in language, we presume it intended a different meaning."). In addition, "[t]he canon of constitutional avoidance 'comes into play only when, after the application of ordinary textual analysis, the statute is found to be susceptible of more than one construction.'" *Jennings v. Rodriguez*, 583 U.S. 281, 296 (2018); *Am. Encore*, 152 F.4th at 1120 (citation omitted). "Under this canon, we 'may interpret 'ambiguous statutory language' to 'avoid serious constitutional doubts.' 'But that canon of construction applies only when ambiguity exists.' Here, the text of [§ 13-2921(A)(1)'s 'directed at' term] is unambiguous." *Id* (citations omitted). The record shows that the Arizona supreme court interpreted the term "directed at" according to "plain meaning", *Hernandez*, 587 P.3d at 1269, and "conclude[d] that communications may be 'directed at' a victim even when conveyed to a third party [government official] when they are designed to provoke an adverse consequence against the victim". "Reading subsection

---

met the definition of "repeatedly"; a word ordinarily meaning "again and again" according to Merriam-Webster's dictionary.

(E) to encompass third-party communications thus accords with the Legislature's evident intent to prohibit harassing conduct regardless of the means used to deliver it", *Id*, including via means of government petitioning.  (Doc. 124, pp. 3-7).  The current statute's plain language is unambiguous as to the term "directed at" (Doc. 125, pp. 21-22) and, therefore, not "susceptible" to the constitutional savings canon.[3]  The state's highest court also found the current language of "§ 13-2921(E) does not exclude from the definition of harassing behavior conduct or communications made for legitimate purposes ... which may implicate the free-speech [and court petitioning] protections of our state and federal Constitutions,".  *Hernandez v. Loarca*, 587 P.3d 1266, 1271 ¶ 23 (Ariz. 2026).  The *Hernandez* court's reading of the statute mirrors Plaintiff's, which confirms Plaintiff provided an "arguable" reading of the statute sufficient to meet Factor Two. Clear error occurred to conclude otherwise through an *Iqbal* analysis.

2. *Driehaus* Factor Three

Also applying *Iqbal*, the Order declared Plaintiff failed to plead *Driehaus* Factor Three because the ex-wife's repeated, ongoing, and well-documented threats to prosecute Plaintiff are immaterial to the collective threat analysis because (1) "§ 13-2921 ... enforcement authority is limited to AG Mayes and the county attorneys" (Doc. 125, p. 35) based on the statute's text (Doc. 125, p. 31); and (2) a private party's authorization to initiate "orders of protection ... are not the types of enforcement that the pre-enforcement framework conceptualizes" (Doc. 125, pp. 32-33, n.13).[4]  These are clear errors of law as

---

[3] Arizona is a strong textualist state that, like federal courts, relies on plain language when evaluating the constitutionality of state statutes and statutory provisions.  *See e.g., County of Apache v. Southwest Lumber Mills, Inc.*, 92 Ariz. 323 (1962); *Ruiz v. Hull*, 191 Ariz. 441, 957 P.2d 984 (1998); *Schires v. Carlat*, 251 Ariz. 127 (2021).

[4] *See also* Doc. 125, p. 30, n.11 ("Although § 13-3602 permits a private party to obtain an order of protection against a person who has committed domestic violence and § 13-2921 is a predicate offense for domestic violence, *see Hernandez*, 587 P.3d at 1269, § 13-3602

*Driehaus* held and as considerable circuit precedent interpreting *Driehaus* has held.  *See e.g., Isaacson v. Mayes*, 84 F.4th 1089, 1100 (9th Cir. 2023) (The Ninth Circuit has "taken a broad view of this factor".).

> a. It Is Clear Error to Conclude, Even If § 13-2921 Enforcement is Limited to the Attorney General, That the Attorney General Does Not Pose a Credible Threat

The Order contains clear error as it fails to apply the treatment of Factor Three as an "attitudinal factor" which presumes Attorney General Mayes will enforce state laws. *Peace Ranch*, 93 F.4th at 489-490.[5]  Relying on *Yellen*, the Court found "Plaintiff does not identify any case in which AG Mayes, some other Arizona prosecutor, or even some prosecutor in some other jurisdiction has brought criminal harassment charges against a defendant solely based on the act of filing papers in a pending lawsuit".  *See* Doc. 125, p. 33.  The Ninth Circuit's treatment of Factor Three as an "attitudinal factor" required the Attorney General to rebut those "attitudinal" presumptions via "express" statements

---

does not itself permit enforcement via 'penalties,' 'fines,' 'censures' or other forms of punishment like the statutes in *Isaacson*."); Doc. 125, p. 31 ("[O]rders of protection or address confidentiality programs [are not sufficiently] similar to private civil rights of action for violations of a statute.").

[5] Other circuits describe this attitudinal presumption in slightly different terms but to the same effect.  *See Tweed-New Haven Airport Auth. v. Tong*, 930 F.3d 65, 71 (2d Cir. 2019) ("Where *a* statute specifically proscribes conduct, the law of standing does not place the burden on the plaintiff to show an intent by the government to enforce the law against it." Rather, courts "presume[] such intent in the absence of a disavowal by the government or another reason to conclude that no such intent existed."); *Mobil Oil Corp. v. Attorney General of Virginia*, 940 F.2d 73, 76 (4th Cir. 1991) ("We see no reason to assume that the Virginia legislature enacted this statute without intending it to be enforced.  Mobil has certainly alleged 'an actual and well-founded fear' that the law will be enforced, and has in fact 'self-censored' itself by complying with the statute, incurring harm all the while."); *Dream Defenders v. Governor of the State of Florida*, 57 F.4th 879, 887–88 (11th Cir. 2023) ("We have inferred the existence of a credible threat of prosecution when a plaintiff challenged the law soon after it was enacted and the state 'vigorously defended' the law in court. ... From this timing, along with [the officials'] vigorous defense of the statute, we infer 'an intent to enforce the challenged provisions.'").

beyond merely taking an ambiguous and indecisive "litigation position". *Peace Ranch*, 93 F.4th at 489-491.  She is on record that she "will not disavow enforcing Arizona's harassment statute" against Plaintiff (Doc. 123, p. 2), but made statements supposedly "tantamount to disavowal of enforcement on Plaintiff's specific theory" (Doc. 125, p. 29) only because of unsworn claims that she did "not believe the harassment statute is applicable" (Doc. 125, p. 9) to the course of conduct Plaintiff alleged.  "In this litigation, the state's Attorney General has rejected that [§ 13-2921(A)(1)] would criminalize [protected speech or government petitioning].  But this court has held that officials cannot inoculate laws from review if the disavowal is a 'mere litigation position.'  Outside of this case, the state has offered no official guidance limiting [§ 13-2921(A)(1)'s] reach, even though the state has been on notice that the provision is vague and potentially chilling speech.  The Attorney General's ... [statutory] interpretation will not bind its successor." *Arizona Alliance for Retired Americans v. Mayes*, 117 F.4th 582, 598 (9th Cir. 2024).

Further, the Arizona supreme court held in *Hernandez* that § 13-2921(A)(1) reaches and punishes protected speech and government petitioning, meaning the Attorney General's pre-*Hernandez* "beliefs" cannot control and the record is under-developed in this area.  Further still, the recently amended statute's documented "history of enforcement is negligible or nonexistent, [so] either a general warning of enforcement or a failure to disavow enforcement is sufficient to establish a credible threat of prosecution." *Matsumoto,* 122 F.4th at 797-798.

In sum, Plaintiff alleges his ex-wife generally, specifically, and repeatedly warns that she will civilly enforce the challenged statute against him as she is statutorily authorized to do.  At the same time, the Attorney General refuses to expressly disavow

enforcement against Plaintiff, her stated beliefs do not bind future Attorneys General to her pre-*Hernandez* reading of the statute, she has not "attempted to 'prevent county attorneys from enforcing the statute' [and she] is vigorously defending the constitutionality of the statute." *Imperial Sovereign Ct.,* 170 F.4th at 840 (quoting *Isaacson,* 84 F.4th at 1100 and *Matsumoto,* 122 F.4th at 798). "[N]o more is required under this Court's precedents" to find Factor Three is met. *Chiles v. Salazar,* 607 U.S. ___, ___, 146 S. Ct. 1010, 1015 (2026).

b. It Is Clear Error to Conclude § 13-2921 Enforcement is Limited to the Attorney General; The Ex-Wife Is Part of the Collective Threat of Enforcement

i. It Is Clear Error To Rely Exclusively on the Statute's Text

While it is true that § 13-2921's text does not mention former spouses as authorized enforcers, it is also true that the statute mentions no authorized enforcers. The simple reason for this is that Arizona's criminal statutes are not self-contained or self-executing. According to the Court's logic, if the ex-wife is not part of the collective threat because "§ 13-2921 does not contain a provision permitting a private civil right of action" (Doc. 125, p. 31) then the Attorney General is also not part of the collective threat because § 13-2921 contains no provision permitting government prosecutors to initiate a criminal action. In other words, a restrictive reading of Arizona's statutory scheme immunizes state officers from pre-enforcement actions facially challenging criminal statutes. That outcome is inconsistent with *Ex parte Young* and *Driehaus*. *Ex parte Young* made clear more than a century ago that sovereign immunity does not apply to a particular state officer who "has some connection with the enforcement of the act," and it is "immaterial" whether that connection "arises out of the general law, or is specially created by the act *itself*." 209 U.S. 123, 157 (1908) (emphasis added). When the "act

10

itself" contains no enforcement provision, courts look for an enforcement connection in "the general law"; i.e., the larger statutory scheme. *Id.* In Arizona, pre-enforcement injuries traced to criminal statutes arise from companion statutes found in that larger scheme (i.e., "the general law") which, for purposes of the standing analysis, animates the "operation *or* enforcement" of the challenged statute. *Babbitt v. Farm Workers,* 442 U.S. 289, 298 (1979) ("A plaintiff who challenges a statute must demonstrate a realistic [i.e., 'not chimerical'] danger of sustaining a direct injury as a result of the statute's operation *or* enforcement.") (Emphasis added). And it is that "operation *or* enforcement" of the challenged statute, effectuated through various companion statutes, which causes First Amendment injuries. *Id.* Here, companion statutes through which § 13-2921 "operates" include § 41-193(A) for the Attorney General, § 11-532(A) for county attorneys, and § 13-3602(A) for the ex-wife which collectively serve to catalogue "the universe of potential complainants" (Doc. 125, p. 12), giving the Attorney General, county attorneys, and former spouses a connection to the statute's enforcement and independent authority to prosecute § 13-2921(A)(1) violations. "As we recently explained in *Matsumoto*, 'when a statute distributes enforcement authority across multiple actors, and a plaintiff brings a pre-enforcement challenge, the threat of that enforcement is properly analyzed as a collective assessment of the threat posed by *all* the potentially enforcing authorities, together.'" *Imperial Sovereign Ct.,* 170 F.4th at 840 (emphasis original). Based on Ninth Circuit precedent and Supreme Court precedent, the ex-wife should be included in the "collective" credible threat analysis given her status as a member of the "universe of potential complainants".

ii. It Is Clear Error to Conclude Civil Protective Orders Do Not Present the Type of Threat Contemplated by First Amendment Pre-Enforcement Framework

Despite recognizing § 13-3602 authorized the ex-wife to civilly prosecute Plaintiff for violating § 13-2921, and that she had repeatedly threatened to do so for filing court papers, the Court excluded the ex-wife from the Factor Three analysis because "orders of protection ... are not the types of enforcement that the pre-enforcement framework conceptualizes" (Doc. 125, pp. 32-33, n.13).  In Arizona, orders of protection are civil injunctive orders.  *See* § 13-3602(G)(1); *Mahar v. Acuna*, 230 Ariz. 530, 287 (Ariz. Ct. App. 2012).  That point made, the Supreme Court expressly held that "private" parties' statutory authority to obtain "court-ordered injunctions", and those parties' conduct in the exercise of that authority, must be assessed as part of the pre-enforcement framework.

Here, "the threat of future enforcement of [§ 13-2921] is substantial. ... The credibility of that threat is bolstered by the fact that authority to file [a § 13-2921] complaint with the [superior court] is *not limited to a prosecutor or an agency*.  ... Instead, [§ 13-3602] allows "any [former spouse] person" with knowledge of the purported [§ 13-2921] violation to file a complaint.  Because *the universe of potential complainants is not restricted to state officials* who are constrained by explicit guidelines or ethical obligations, there is a real risk of complaints from, for example, ... a *private complainant* [former partner motivated to gain unfair advantages in litigation or in public opinion]. ... We take the threatened [] proceedings into account because administrative [or civil] action, like arrest or [criminal] prosecution, may give rise to harm sufficient to justify pre-enforcement review. ... 'In addition to the threat of criminal sanctions, the prospect of issuance of an administrative cease-and-desist order or a [civil] *court-ordered injunction* against such prohibited conduct provides substantial additional support for the

conclusion that [Plaintiff]'s challenge ... is justiciable'". *Driehaus*, 573 U.S. at 160-161 (emphasis added) (quoting *Babbitt*, 442 U.S. at 302 n.13). At bottom, the Supreme Court directly addressed and expressly found that a "private complainant" legislatively authorized to file a non-criminal complaint going to the challenged statute's "prohibited conduct" and which triggers government action, including action that may result in a "court-ordered injunction", is a member of the "universe of potential complainants" which makes their conduct part of the collective "credible threat" analysis.

The "private complainant" in this case repeatedly threatens to file, and previously did file, a § 13-3602 complaint, and she obtained an administrative finding that Plaintiff violated § 13-2921 for repeated court filings (Doc. 125, pp. 2-3). Complaints like these trigger judicial proceedings for the purpose of obtaining a finding that § 13-2921(A)(1) harassment occurred and securing a *Driehaus*, 573 U.S. at 161 "court-ordered injunction". As a matter of law, § 13-3602 injunctions carry a substantial risk of arrest and lasting "collateral consequences", including "reputational" harm, the creation of a legal record, interference with family association and child legal decision-making, and formal registration on the Brady List. *Cardoso v. Soldo*, 230 Ariz. 614, 616-618 ¶¶ 9-13 (App. 2012); A.R.S. § 13-3602(G). Those potential consequences,[6] together with the specific and ongoing threats made by Plaintiff's ex-wife (Doc. 124-1; Doc. 125, pp. 3, 14-16, 26-30, 33-34) who has been working in concert with a State Legislator since 2020 to conceal questionable acts the legislator performed in elected office (Doc. 125, p. 42), constitute the type of First Amendment injury referenced in *Driehaus*, 573 U.S. at 161 and *Babbitt*, 442 U.S. at 302 n.13.[7] To satisfy Factor Three, a plaintiff need only allege

---

[6] The Arizona supreme court described such consequences as "adverse consequences". *Hernandez v. Loarca*, 587 P.3d 1266, 1268 ¶ 2 (Ariz. 2026).

[7] The Court found support for its reasoning and conclusions in *Yellen*. (Doc. 125, pp. 25-

that he experiences a threat from the "universe of potential complainants" is not "imaginary or wholly speculative", where that "universe" includes "state officials" and any authorized "private complainant". *Driehaus*, 573 U.S. at 160.   Plaintiff's allegations satisfy Factor Three as a matter of law.

D. Requested Relief

Plaintiff asks the Court to reconsider the Order based on the above-outlined clear errors of law and the new controlling law in *Hernandez* to find Plaintiff has demonstrated standing, and to grant the recently requested preliminary injunction (Doc. 124).

---

27).  *Yellen* traces back to *Thomas v. Anchorage Equal Rts. Comm'n,* 220 F.3d 1134, 1138-1139 (9th Cir. 2000) on the issue of "ripeness" rather than "standing" where the action was based on alleged violations of "the Spending Clause".  *Arizona v. Yellen,* 34 F.4th 841, 845 (9th Cir. 2022).  Shortly after *Driehaus* was issued in 2014, the Ninth Circuit held that *Thomas* was still good law to help evaluate *Driehaus* Factor Three when the challenge was based on constitutional provisions outside the First Amendment such as "the Commerce Clause, the Spending Clause, or Congress' taxation power." *Coons v. Lew,* 762 F.3d 891, 896 (9th Cir. 2014).  So, while the Ninth "circuit 'has toggled between' the *Thomas* and *Driehaus* formulations, we have 'adopt[ed] the Supreme Court's framework' in *Driehaus*" in the context of threats to abortion rights, *Planned Parenthood of Idaho, Inc. v. Wasden*, 376 F.3d 908, 936 (9th Cir. 2004), and in the context of threats to First Amendment rights.  *Matsumoto v. Labrador,* 122 F.4th 787, 797-798 (9th Cir. 2024); *Am. Encore v. Fontes*, 152 F.4th at 1113-1119; *Imperial Sovereign Ct.,* 170 F.4th at 834-840.  Because this case presents a First Amendment challenge and because such cases demand courts "appl[y] the requirements of ripeness and standing less stringently", *Twitter, Inc. v. Paxton,* 56 F.4th 1170, 1173 (9th Cir. 2022), *Driehaus* provides the proper framework to analyze Factor Three at the dismissal stage.  It was clear error to apply *Yellen/Thomas* when the Ninth Circuit uses *Driehaus* to evaluate First Amendment facial challenges since even the "chill" of those rights suffices to demonstrate a "concrete and particularized" pre-enforcement injury.  *See Driehaus*; *Pleasant Grove City v. Summum*, 555 U.S. 460 (2009); *TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021).  The only case Plaintiff was able to find wherein the Ninth Circuit took *Thomas* or *Yellen* into account when analyzing standing at the dismissal stage in the First Amendment context, *Thomas* and *Yellen* were cited to confirm *Driehaus* Factor Three was met.  *See Tingley v. Ferguson*, 47 F.4th 1055, 1067-1069 (9th Cir. 2022).

II. In the Alternative, the Court Should Stay the Judgment Pending Appeal

The *Hernandez* ruling provides greater support for a finding of standing, making Plaintiff's allegations even more arguable and credible on the record, while further establishing the Attorney General's unsworn beliefs are not the final word on standing.

A. Legal Standard

When evaluating a stay, a "court considers four factors: '(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.'" *Nken v. Holder*, 556 U.S. 418, 426 (2009).

B. Plaintiff Meets Criteria for a Stay

Based on the above, Plaintiff has made a "clear showing" that he is likely to establish First Amendment standing under the *Driehaus* standards. *See Townley v. Miller*, 722 F.3d 1128, 1133 (9th Cir. 2013); *Los Angeles Press Club v. Noem*, 171 F.4th 1179, 1189 (9th Cir. 2026). With standing established, the record shows Plaintiff meets all *Nken* stay criteria for the Court to grant a stay.

1. Plaintiff Makes a Strong Showing He is Likely to Succeed on the Merits

"'Likelihood of success on the merits is a threshold inquiry and is the most important factor.' '[I]n the First Amendment context, the moving party bears the initial burden of making a colorable claim that its First Amendment rights have been infringed, or are threatened with infringement, at which point the burden shifts to the government to justify the restriction.'" *Am. Encore*, 152 F.4th at 1119 (citations omitted). To carry his burden, Plaintiff fully incorporates herein arguments made above and made in his Motion for Preliminary Injunction re: A.R.S. § 13-2921 (Doc. 124, pp. 12-17). The Attorney

15

General cannot carry her burden because, among other things, § 13-2921(A)(1) is a content-based law subject to strict scrutiny which cannot be justified under the Speech Clause or the Petition Clause according to the *Hernandez* interpretation.  But even if the provision is "content-neutral", it "impos[es] criminal penalties on protected speech [and petitioning which] is a [too] stark example of speech [and petitioning] suppression" to survive intermediate scrutiny.  *Ashcroft v. Free Speech Coalition,* 535 U.S. 234, 244 (2002).  *See* Doc. 124, pp. 14-16.  Because the statute cannot survive strict scrutiny analysis or intermediate scrutiny analysis as a matter of constitutional law, Plaintiff "has made a strong showing that he is likely to succeed on the merits".

2. Plaintiff Will Be Irreparably Injured Absent a Stay

Plaintiff fully incorporates herein the arguments made in his Motion for Preliminary Injunction re: A.R.S. § 13-2921 (Doc. 124, p. 17) which demonstrate that he has been, and will continue to be, irreparably injured absent a stay.

3. The Merged Factors Are Met

Plaintiff fully incorporates herein the arguments made in his Motion for Preliminary Injunction re: A.R.S. § 13-2921 which demonstrate the merged third and fourth stay factors are met. (Doc. 124, pp. 17-18).

REQUESTED RELIEF

Plaintiff respectfully requests that the Court reconsider its Order, correct clear errors of law, find Plaintiff has standing, and grant the requested preliminary injunction (Doc. 124; Doc. 124-1).  In the alternative, he asks the Court to issue an order staying the judgment and granting an injunction pending appeal.

DATED this 5th day of August 2026.

By: <u>//s//</u>
Phillip Potter
Plaintiff
Pro Se